```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA


   UNITED STATES OF AMERICA

              vs.                       Criminal No. 18-292

        ROBERT BOWERS

                            -----

    Transcript of Proceedings held on Wednesday, June 12, 2019,
    in the United States District Court, 700 Grant Street,
    Pittsburgh, PA  15219, before Honorable Donetta W. Ambrose,
    United States District Judge.

                            -----

 APPEARANCES:

    For the Government:    U.S. Attorney's Office
                           by Soo C. Song, Esq.


    For the Defendant:     Federal Public Defender's Office
                           by Michael J. Novara, Esq., and
                           Elisa A. Long, Esq.


    Court Reporter:        Noreen A. Re, RMR, CRR
                           700 Grant Street
                           Suite 5300
                           Pittsburgh, PA  15219




       Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.
```

1            P R O C E E D I N G S
2                    -----
3         THE COURT:  Good morning.
4         MS. SONG:  Good morning.
5         MR. NOVARA:  Good morning.
6         MS. LONG:  Good morning.
7         THE COURT:  There are several things that I wanted to
8   impart to you this morning while considering the defense
9   motion for corrective action.  And I know one of my clerks
10  indicated to me that Mr. Novara was going to file a reply by
11  Friday, and that's fine.  But I want to tell you all what I
12  think.
13        Having read the response and the motion, it appears
14  to me that there was no communication between the parties
15  before this motion was filed; is that correct?
16        MS. SONG:  That's correct.
17        MR. NOVARA:  That's correct.
18        THE COURT:  You know what?  I have a court reporter
19  in here.  Please say your name before you respond.  Okay?
20        MR. NOVARA:  Sure.  This is Michael Novara.
21        MS. SONG:  This is Soo Song.
22        THE COURT:  And, Mr. Novara, is it correct that there
23  was no reaching out to the government before the motion for
24  corrective action was filed?
25        MR. NOVARA:  That is correct, Your Honor.

1    THE COURT:  Okay.  Well, I want to refer you all to
2 our local Criminal Rule 16.  It's "Discovery and Inspection."
3 And the relief sought by the Defendant in this case is
4 discovery.  Local Criminal Rule 16-E obliges counsel to confer
5 and attempt to resolve issues before a motion is filed with
6 the Court.  So that has to be done in the future.
7    The second thing I want to say is this.  This motion
8 cannot be resolved without the defense sharing the ex parte
9 filing with the government.  Because, obviously, you are on
10 two complete different pages here.  There has to be that
11 sharing.  And if there isn't, then there's no resolution.  The
12 submission will be stricken.
13    Thirdly, it also cannot be resolved without an
14 evidentiary hearing.  And I'm not really sure that you want to
15 do that, but it would have to be done.  There's no question
16 about that.
17    So these are the things that I wanted to say to you.
18 If either side has anything to say, I certainly will listen to
19 you now.  I will receive whatever comes from the defense this
20 weekend on Friday.  I hope that you would talk to each other.
21 I'm very disappointed that there was no contact before the
22 motion was filed.  Because I think maybe there could have been
23 a better understanding of at least the contention of what was
24 going on here.
25    MR. NOVARA:  Thank you, Judge.

1        MS. SONG:  We would be willing to engage with the
2   defense and await their contact with us, if that's what they
3   intend to do.
4        THE COURT:  Mr. Novara, something you wanted to say?
5        MR. NOVARA:  Yes, Judge.  But, first, I think it's
6   clear we would all like to have conferred prior to filing; and
7   that's what we've been doing; and that's what we would like to
8   do.  We didn't feel it was possible in this particular case
9   because of the nature of what went on and that we thought it
10  needed to be presented and preserved before there was any
11  further action taken by the government or the FBI that would
12  somehow impact the proceeding here.
13       But as to your first point, Judge, this is really not
14  a discovery matter.  We have mentioned and asked for discovery
15  as a collateral remedy to perhaps fix the problem that is the
16  actual basis and the crux of the matter.
17       We don't necessarily care about the discovery.  This
18  is about inappropriate interference with our ability to access
19  witnesses.  It's not about 302s.  And what we set forth in the
20  motion clearly indicates that.
21       Now, I understand the government is throwing out some
22  what I perceive as distractions to avoid addressing the real
23  issue here.  But this is not discovery.  That local rule
24  doesn't apply.  That's why we didn't feel compelled to do
25  that.

1       THE COURT: Well, you certainly did ask for
2   discovery. You did. I mean, there's no question about it.
3   That's what you asked for in the order, the proposed order.
4       MR. NOVARA: Well, we have two proposed orders.
5       THE COURT: Right.
6       MR. NOVARA: And what we really want is the Court to
7   announce and make clear that if there is any action and
8   statements made that either directly through implication or
9   had the result, as we now know it did, in a witness not
10  wanting to communicate with us, that that is improper and
11  should be fixed.
12      Now, the way of fixing it may be a public
13  announcement. It may be a letter. It may be something, but
14  we asked for the discovery just to make sure that the people
15  who would be potentially impacted by this would ultimately
16  learn of what the resolution is here.
17      And to be clear, when we asked for 302s, we're not
18  asking for the government's conversations or general
19  discussions with victims. What we're asking for is a very
20  limited thing, which is we wanted conversations that took
21  place that actually addressed whether or not people should
22  talk to the defense.
23      And just so you know, Judge, we've already had a
24  number of conversations asking for communication between the
25  government and the witnesses; and they've made it clear that

1	they would not give that to us.  So it's not like we're asking
2	in a vacuum here and just out of the blue asking for this.
3	            MS. SONG:  Right.  And this is Soo.  And the defense
4	has asked for the government's communications with the
5	victims, which they are not entitled to.  It is not discovery.
6	And we have said no.  And then this motion was filed seeking
7	exactly the communications that we said we wouldn't disclose.
8	            MR. NOVARA:  No, we're not.  We're asking for a
9	conversation that took place between the FBI and witnesses
10	about whether or not they should talk to us.  And we have more
11	than a good faith basis for knowing that there was this
12	conversation.
13	            THE COURT:  But the government has no idea what
14	you're talking about, obviously, from their response.
15	            MR. NOVARA:  Okay.  Well, let's talk about that.
16	Because it's not so obvious to me.  Noticeably, Judge, they
17	didn't ask for this information in their response.  Nor did
18	they dispute ever that it was factually correct.
19	            What they specifically said is "The government has no
20	knowledge of the contents of the ex parte submission."  Yeah.
21	They don't know exactly what we submitted to the Court, but
22	they certainly know what it's all about.  And we basically
23	quoted everything in our motion, anyway.
24	            And if they don't know which FBI agents talked to
25	witnesses and got them to at the last minute cancel a meeting

1   with us, we have a lot bigger problems than the one that we're
2   even presenting.
3           THE COURT:  Well, I can't assume any of that.  I
4   don't know that to be the fact.  And, as I said, I think that
5   this cannot be resolved without sharing this particular ex
6   parte communication and without an evidentiary hearing.
7           MS. SONG:  This is Soo.  We unambiguously and
8   unequivocally deny the factual basis of the misstatement,
9   Michael.  There was no interference.  We absolutely deny that
10  that occurred.
11          MR. NOVARA:  Okay.  So you're denying that a witness
12  interpreted something that was said to them as advising
13  against meeting with us and then cancelled the meeting?
14          MS. SONG:  And how in the world are you going to get
15  into the head of all of these witnesses to discern what they
16  interpreted?  You know, what they said, why they said it.  I
17  mean, how in the world would you do that?
18          MR. NOVARA:  Well, that's a good question.
19          MS. SONG:  You know that the FBI exceeds the legal
20  obligations upon them in terms of what they advise victims
21  about whether they can talk to the defense.  You absolutely
22  know that.
23          MS. LONG:  And this is Elisa Long.  Can you tell us
24  what the advice is or that is given that seems to have been
25  misinterpreted?

1           MS. SONG:  Absolutely not.  Those are private
2   communications that are not subject to discovery between the
3   victims and the FBI.  You are not entitled to that.  We exceed
4   the legal standard through the FBI.
5           THE COURT:  Well, look, I can't say this again or too
6   many times.  This is not something that I can just speculate
7   about.  This would require an evidentiary hearing.  It would
8   require testimony.  And then I could resolve it.
9           But the government has to know what the Defendant is
10  talking about.  Because it's very different for an agent to
11  say, "You don't have to talk to someone if you don't want to,
12  and I advise you not to talk to him."
13          MR. NOVARA:  That would be clearly improper; correct?
14          THE COURT:  Well, I think --
15          MS. SONG:  This is Soo.  It is permissible.  And I'm
16  not saying -- again, we're not representing -- we exceed what
17  the law requires.  The law makes clear that you can request
18  witnesses, practice discretion.  If asked, they can advise
19  about their absolute right not to talk to them.  They can make
20  a recommendation.  You cannot order, restrict or prevent
21  access.
22          MR. NOVARA:  They can't advise against it.  That is
23  just wrong.  That's not -- I mean, they can say you have a
24  right to talk; you have a right not to talk.  You know, these
25  are the considerations.  But they can't take that extra step,

1   which we believe is clear in this case.  And we have a total
2   disconnect on what the law requires, because that's just
3   wrong.  What is it that they -- what is left after they say
4   what you said?  "And if you talk to them, we'll lock you up?"
5   I mean, what else --
6           MS. SONG:  Oh, come on.  It's not necessary to engage
7   in hyperbole.  I'm just telling you that the legal standard is
8   clear, and we're not even close to it with how the FBI has
9   conducted themselves with the witnesses.
10          THE COURT:  Well, again, I don't know exactly what is
11  involved.  And I would have to look at this.  But I think
12  there is a big difference between telling someone "You don't
13  have to talk to them" or "I advise you do not talk to them."
14          MR. NOVARA:  Exactly.
15          MS. SONG:  We agree, Judge.
16          MR. NOVARA:  Judge, can I ask you --
17          MS. SONG:  There is a difference in those
18  advisements.  The law is very clear.
19          THE COURT:  I'm sorry.  What did you say?
20          MR. NOVARA:  Say that again.
21          MS. SONG:  This is Soo.  I agree that qualitatively
22  those two statements would be different.  But the law permits
23  a wider berth.  I'm not saying -- I'm saying that the FBI is
24  not close to that.  But the cases are very clear about what
25  witnesses can be advised.

1        THE COURT:  And you're saying that there are cases
2   that clearly say it is fine for the FBI to advise people not
3   to talk to defense counsel?
4        MS. SONG:  No.  That's not exactly what I'm saying.
5   We cite a lot of language in our brief for those cases that
6   anticipate what is permissible.
7        THE COURT:  Right.
8        MS. SONG:  For witnesses to be counseled when they're
9   asking whether I should talk to the other side.
10       THE COURT:  Yes.  And I would agree.  You did cite a
11  lot of cases, and none of them addressed what Mr. Novara is
12  talking about.  I think you're both talking about different
13  things.  I don't know if you want to talk to each other now.
14       I don't know if you -- actually, I have a meeting at
15  noon.  I don't know.  What's the best -- I'm telling you what
16  I think.  And nothing that has been said here today changes my
17  mind.  This information has to be shared with the government,
18  and I would have to have an evidentiary hearing.
19       MR. NOVARA:  Can I ask one question, Judge?  In terms
20  of the sharing with the government, would it be sufficient if
21  we shared a redacted version that only focused on the very
22  last communication?
23       THE COURT:  I think the whole thing is very
24  important, quite frankly.  I think the whole thing is very
25  important.  I don't want to get into it, in case you don't

1    want to share it and in case I'm not using it and I'm striking
2    it.  But I think the context of the whole thing is very
3    important in terms of who initiated things.  I think it's very
4    important.
5              And, you know, the evidentiary hearing, as I said, do
6    you really want to do that?  Something on the record.  I mean,
7    I don't know if you really want to do it or not.  There would
8    have to be an evidentiary hearing, because there's no way that
9    I can make a decision without witnesses telling me what
10   actually happened from both sides.
11             MR. NOVARA:  Right.  Well, Judge, what I'd like is
12   I'd like to talk with the defense team.  It might be today.
13   You know, we'll be talking today.  And we can possibly
14   consider talking to the government.  But, you know, we'll
15   address this in some way.  This adds a few wrinkles to this.
16   We still hope to file a response by Friday, because --
17             THE COURT:  Oh, sure.  Nothing I have said here today
18   -- I don't want you to think that anything I have said will
19   preclude you from filing that.
20             MR. NOVARA:  We might even need an additional day or
21   so to consider this, now that we have this to consider.  I'm
22   sure the Court would be okay with it and the government.
23             Let me ask.  You obviously hit upon some issues,
24   Judge, about whether or not we want a public hearing.  Is
25   there a way that we could have a nonpublic hearing in this

1      matter?

2              THE COURT: I don't think so. I don't know of any

3      way. No. I'm not comfortable with that at all.

4              MR. NOVARA: Okay. All right. Well, we will meet

5      here on our side. We'll be in contact with the government one

6      way or the other about whether further communication is

7      fruitful. We will be filing something, hopefully by Friday,

8      but it may take an additional day or two now that we have --

9              THE COURT: You can have the time. Just let us know

10     when you're going to file it so we can know to be looking for

11     it. Okay?

12             MR. NOVARA: Sure. Thank you.

13             THE COURT: And if you need to get back with me, we

14     can do it by phone. We can certainly do it. You just let my

15     office know; and it can be arranged, for sure.

16             MS. LONG: Your Honor, this is Elisa Long again. The

17     issue, I'm sure you can appreciate, with the public hearing is

18     that it probably will only discourage further people from

19     talking or reaching out.

20             THE COURT: Well, I don't know. I don't know. I

21     don't know. But I'm telling you this case, as you all know,

22     has great public interest. And I am just not comfortable with

23     having secret hearings. I'm not comfortable with doing

24     anything in secret. That's why I have a court reporter here

25     now for this phone conference, because I want it to be

```
 1   preserved.  I want everything we do to be preserved.
 2           MR. NOVARA:  Thank you.
 3           THE COURT:  Okay.  All right.  I'll wait to hear from
 4   you.
 5           MS. SONG:  On behalf of the government, we'll await
 6   communication from the defense.
 7           THE COURT:  Is there anything else, Miss Song, for
 8   the government?  Or are you okay with what's going on here?
 9           MS. SONG:  Just, you know, to emphasize what
10   Miss Long said is that certainly all of these victims and
11   witnesses have a statutory right to privacy.  Those are the
12   issues that the defense has put squarely at issue.  We await
13   their communication.
14           THE COURT:  Okay.  All right.  And I'll wait to hear
15   from all of you, and I'll wait for your response.
16           MS. SONG:  Think, Judge.
17           MS. LONG:  Thank you, Judge.
18           THE COURT:  Okay.  Thank you all.  Bye.
19                            -----
20           (Whereupon, the above-captioned matter was
21   concluded.)
22                            -----
23
24
25
```

```
 1
 2                       C E R T I F I C A T E
 3              I, NOREEN A. RE, RMR, CRR, certify that the
        foregoing is a correct transcript from the record of
 4      proceedings in the above-entitled case.
 5

 6      S\ Noreen A. Re                      June 14, 2019
        NOREEN A. RE, RMR, CRR            Date of Certification
 7      Official Court Reporter
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```