IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.        )<br>)<br>ROBERT BOWERS  ) | Criminal No. 18-292 |

**REPLY TO GOVERNMENT OPPOSITION TO MOTION FOR CORRECTIVE ACTION REGARDING FBI INTERFERENCE WITH DEFENSE ACCESS TO POTENTIAL WITNESSES**

Robert Bowers, through counsel, submits this Reply to the Government's Opposition to Motion for Corrective Action Regarding FBI Interference with Defense Access to Potential Witnesses. In the Motion, undersigned counsel asked the Court to take corrective action to address FBI interference with the defense team's access to potential witnesses. (Doc. 60.) Counsel supported the allegations in the Motion with an *ex parte* and under seal filing to protect the privacy of the potential witnesses involved. (Docs. 64-65.) At the status conference held on June 12, 2019, the Court made clear to the parties that it could not proceed on the motion without disclosing the *ex parte* filing and holding a hearing. (Doc. 68.) Following the status conference, the parties met and conferred and have reached a Joint Stipulation and Agreement Regarding Access to Witnesses ("Joint Stipulation") filed contemporaneously with this Reply.

This Reply is necessary to address an aspect of the government's opposition to the Motion for Corrective Action, and to assure both the Court and the victims that the right of victims to be treated with fairness, respect, and dignity have been and will continue to be honored by the defense. *See* 18 U.S.C. §3771(a)(8). Specifically, in Section IV of its

1

response, the government notes that Susan Casey has been retained by the defense to serve as the Defense-Victim Outreach (DVO) specialist and alleges that "the role and motivation" of Ms. Casey "can be confusing and easily misapprehended by victims." (Doc. 66, at 11.) The prosecution further claims that Ms. Casey's work may "blur the very clear obligation of the defense attorneys to represent their client . . . ." (*Id*. at 11-12.)

The parties now agree that, in defense counsel's introductory letter to congregational leaders in the victim community, attached as Exhibit 1, defense counsel appropriately identified Susan Casey and her role as the Defense-Victim Outreach specialist in this case. The parties also now agree that, in her introductory letter to the same individuals, attached as Exhibit 2, Ms. Casey appropriately identified herself and her role. Although the Joint Stipulation addresses this issue, the government's original allegations nevertheless threaten to undermine the important and appropriate work of DVO in this case. Any line of communication between victims and the defense is, by its nature, fragile. Very little is needed to disrupt it once the suggestion is made, as it was here in the government's response, that the defense acted improperly in communicating with the victims. The goal of the Joint Stipulation is to make clear that potential witnesses, including victim-impact witnesses, have equal access to both the defense and the prosecution without interference. Without further information about Defense-Victim Outreach, this goal cannot be achieved.

Counsel for Mr. Bowers began the process of outreach by sending a letter to congregational leaders in the victim community. In that letter, counsel expressed sympathy for the loss and suffering of the members of the congregations and a desire to

be sensitive and respectful. (Letter from Defense Counsel to Congregation Leaders, attached as Exhibit 1, at 1.) Counsel informed the leaders that they had retained Susan Casey, a Defense-Victim Outreach Specialist, to assist counsel in hearing the concerns of the victims, answering their questions, and providing information that might be helpful. (*Id*.) The letter makes clear that Ms. Casey "serve[s] as a liaison with the defense team and people in [the] communities who might find that helpful." (*Id*.) Finally, counsel notified the leaders that Ms. Casey would be writing to them separately to more fully explain her role and provide additional information about how she might be able to assist. (*Id*.)

      Ms. Casey then sent a follow-up letter that provides an introduction to DVO and her role in the case. (Letter from Susan Casey to Congregation Leaders, attached as Exhibit 2.) Ms. Casey's letter begins by explaining that DVO is based upon restorative justice concepts, which focus on addressing the needs and concerns of those who have suffered harm. Ms. Casey states that she "assist[s] defense attorneys with outreach to families and survivors, offering them the opportunity to engage with the defense team . . . ." (*Id*. at 1.)

> Ms. Casey describes her role throughout her letter:
>
> [The defense attorneys] have asked me to assist them in offering a safe and respectful avenue of communication to those who may be interested. My role is to assist you and your congregants throughout the legal proceedings by getting answers to your questions, giving voice to your concerns to the defense team, offering responses and information, and trying to meet your needs within this process in any other ways that I can.

(*Id*.) Ms. Casey writes that her role is not to defend Mr. Bowers, but rather to offer

>a safe and respectful avenue for you and your congregants to communicate with the defense team, should you and they choose to do so. How these communications might evolve is guided solely by each person's wishes.

(*Id.*)

Ms. Casey is a lawyer and has worked as a defense attorney, including representing capital clients in federal habeas corpus proceedings. The government's suggestion that her prior work is "of concern" (Doc. 66, at 11) is unfounded. Indeed, Ms. Casey came to the work of Defense-Victim Outreach as a result of her work as an attorney, after she saw first-hand the failure of the judicial system generally, and defense lawyers specifically, to help crime victims obtain answers to their questions, voice their concerns, and have their needs met within the legal process. Since 2007, Ms. Casey has worked with defense attorneys throughout the United States by providing DVO assistance in federal cases, state cases, and in the Military Commissions Tribunal.

Ms. Casey brings a wealth of professional and personal experience to her work as a DVO specialist, more than what is possible to convey in an introductory letter. As a lawyer, she understands the important distinction between serving as an advocate and working as a DVO specialist. In her DVO work, Ms. Casey has shared with family members, survivors, and community members how her experience as a lawyer inspired and informs the work she does now.

In its opposition, the government also took issue with Ms. Casey's statement regarding the victim advocate in the United States Attorney's Office. (Doc. 66, at 11.) The government asserts, "[d]espite drawing a parallel to the U.S. Attorney victim advocates, Ms. Casey cannot offer the types of assistance and services that are required to

4

be offered by victim advocates, such as counseling, crime victims fund compensation or restitution." (Doc. 66, at 11.) But Ms. Casey's letter did not suggest that she would undertake any of those services; instead, it clearly indicated that her work would ***add to*** the services already being provided. She wrote: "My work is complementary to that of the victim advocate in the United States Attorney's Office, expanding the options available to family members by providing access to both legal parties in the criminal justice system." (Exh. 2, at 2.) As she explained:

> We have learned that some families find it uniquely helpful to have a relationship with both the defense and the prosecution through their respective liaisons. Some family members have questions that can only be answered by the defense attorneys or the defendant. Others want to express their concerns, beliefs, frustrations, and anger directly to the defense. And still others want specific information about what to expect from the legal process, including the trial and later appeals.

(Exh. 2, at 2.)

The statements in the government's response about Ms. Casey's role and that of DVO risks foreclosing a useful and established path to information for those who have been harmed.

Over the past two decades, Defense-Victim Outreach has become common practice in federal capital cases. As demonstrated in the attached letters, DVO work, and access to the defense, has proven critically important for family members who have experienced the murder of their loved ones. (*See* Letter from Terry Rockefeller, attached as Exhibit 3; Letter from Dana Sampson and Joy Ehlenfeldt, attached as Exhibit 4; Letter from the Reverend Cathy Harrington, attached as Exhibit 5; Letter from Professor Howard Zehr, attached as Exhibit 6; and Letter from Sheryl Wilson, attached as Exhibit

7.) The common thread in these letters is the importance of access to the defense team, often facilitated by a DVO specialist.

Terry Rockefeller, whose sister Laura was murdered in the 9/11 attacks, offered these observations:

> Through the seven years of pre-trial hearings, I have found it most helpful to have access to both the prosecution and the defense, to consider their different perspectives and analysis, and to learn from both sides. . . . And since the prosecution and the defense differ significantly on many issues, it would be unduly limiting to hear only one side or the other.

(Exh. 3.)  Ms. Rockefeller adds that she is grateful to have had access to all the attorneys in the Military Commissions, but notes that "it would have been most helpful if the court/Military Commissions had explicitly and publicly stated that family members were free to be in touch with both the prosecution and the defense, and informed us how to do so."  (Exh. 3.) She concludes:

> It is important, I believe, that in the pursuit of truth and justice, no one should make assumptions about what family members and survivors want or need. In my experience, people's questions and needs can change dramatically over time, especially where a crime is as horrific and incomprehensible as the 9/11 attacks.  Giving people easy and open access to attorneys on both sides of a case, and making it clear to all that contact with the defense will in no way compromise a case is the wise course to follow.

(Exh. 3.)

Dana Sampson and Joy Ehlenfeldt, whose parents were murdered at the restaurant they owned, along with five of their employees, described the importance of defense access to them:

> Despite all the support we received from our extended family, the community, and the prosecutor's office, there were gaps of information –  no real opportunities to ask questions about the defendants, or to tell the defense

> team about our loss and about the nine years of waiting for an arrest to be made and even longer for the two men to go to trial. . . .
>
> With the DVO Specialist, we were able to communicate our concerns and get answers to our questions when it mattered to us. She worked on our behalf on matters that were important to us – and she did this in ways that were respectful to our relationship with both the prosecutors and with the other families. . . .
>
> We know that every victim has different experiences, needs, and concerns, and that each of them should have access to both the prosecution and the defense. And we value the ability to be seen and heard in the court process that DVO offers – because we experienced it ourselves.

(Exh. 4.)

Reverend Cathy Harrington's daughter Leslie, and Leslie's roommate Adrienne, were murdered in 2004. Reverend Harrington describes how a DVO specialist helped her and her family begin to feel that they had some control over their lives:

> Our DVO took no side except our own and listened to our concerns. She spent hours researching and talking with the defense team to find answers to every question that we had. She helped us understand the judicial process and empowered us to ask for what we needed and wanted. She never told us how we should feel or react. . . . The adversarial judicial system only hurts victim's families when it ignores their needs.  The DVO specialist met those needs and my family and I are forever grateful to her for giving us our lives back.

(Exh. 5.)

Professor Howard Zehr, the pre-eminent scholar in the field of restorative justice, has worked with victims of crimes over many decades. Professor Zehr offered these conclusions about what he has learned:

> Through my experience and research, I have found that among the many needs of crime victims are a cluster of what I have termed "justice needs." When these needs are not addressed in some way, victims' journeys to transcend their experiences are much more difficult than when they are involved and given choices in meeting these needs. In short form, these needs

7

> include the need for answers to their questions, opportunities to tell their stories, their "truths" and have them heard, opportunities to be empowered through involvement and choices, and an experience of vindication and validation.

(Exh. 6.) These "justice needs" are best satisfied when victims have the opportunity to communicate with the defense and the prosecution:

> In order to meet these needs, in my experience, it is essential that crime victims have access to both prosecution and defense. Often the defense team has essential elements of the information they need, and victims often find it helpful to ask questions, to express their feelings and wishes, to both "sides." Trained defense-based victim outreach specialists, working from clear boundaries and guidelines, can be incredibly helpful to those going through these painful processes.

(Exh. 6.)

Sheryl Wilson, the current board president of the National Association of Community and Restorative Justice and a DVO practitioner, similarly describes her experiences working with victims and survivors:

> I have learned how important it is to provide as many choices as possible in a matter that they did not initiate – meaning that they should be allowed access to any information that is legally obtainable concerning the loss of their loved ones. Having the choice to meet with defense team members is one of the ways that many victims/survivors get information and find answers to questions that only a defendant may know.

(Exh. 7.) Ms. Wilson explains that, in her experience, both the defense and the prosecution "have the potential to offer information and provide an avenue for healing and restoration in the face of tragedy." (*Id*.) Ms. Wilson concludes her letter by offering, "It is incumbent upon our justice system to encourage and not impede victims/survivors as they make their way forward." (Exh. 7.)

These lay and professional voices offer valuable guidance to those operating within the judicial system about what is most important to victims of violent crime. The defense team here engaged Susan Casey – an experienced DVO specialist – to assist by creating the opportunity for dialogue and discussion between the defense team and the victims. This dialogue and discussion can benefit all parties by offering the victims an opportunity to gather information from and communicate with the advocates for both parties, and by increasing the opportunity for a fair and measured resolution of the legal case.

Defense-Victim Outreach work is intended to assist victims by expanding the options available to them within the judicial process.  Victims, including victim-impact witnesses, should be free to obtain information from as many sources as possible, including the defense. This is precisely what the defense team and Ms. Casey sought to do in their letters to the congregational leaders to provide a safe and respectful avenue for victims to communicate with the defense, should they choose to do so. Such efforts are guided solely by each victim's wishes and are fundamentally in accord with the goal of providing more opportunities for victims to engage in the legal process.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Assistant Federal Public Defender