The Honorable Donetta W. Ambrose
United States District Court
Western District of Pennsylvania
700 Grant Street
Pittsburgh, PA 15219

June 18, 2019

Dear Judge Ambrose,

We write to share with you our experiences of engaging with the defense team for James Degorski, one of the two men who killed our parents and five of their employees. In 1993, our parents, Richard and Lynn Ehlenfeldt, owned a Brown's Chicken & Pasta franchise in Palatine, Illinois. After their arrest, almost nine years after the crime, Degorski and Juan Luna told the police they intended to kill the staff after the restaurant closed to see how it felt to kill people. They killed seven innocent, hardworking people.

Suddenly, we (along with our sister, Jennifer) found ourselves without parents due to senseless violence. Despite all the support we received from our extended family, the community, and the prosecutor's office, there were gaps of information – no real opportunities to ask questions about the defendants, or to tell the defense team about our loss and about the nine years of waiting for an arrest to be made and even longer for the two men to go to trial.

Mr. Degorski's attorneys hired a Defense-Victim Outreach (DVO) Specialist to work with our family and the other families. This opportunity was important to us as we felt responsible to the families of the other victims and wanted to respect their interests in the outcome of the case, while at the same time knowing that we wanted more information and engagement with the legal proceedings than we were being given. Working with the DVO Specialist gave us a sense of control that we hadn't yet felt in the pretrial legal proceedings.

Although our parents were killed and our lives were turned upside down, we felt like spectators who had no voice in the legal proceedings. Meeting with the DVO Specialist allowed us ask questions of the defense team and to feel more a part of the process. We were able to express our frustrations at how long the pretrial proceedings were taking and how angry we were with the defense attorneys' arguments about their client, the evidence, or anything that seemed to create a delay in going to trial. Surprising to us, the DVO Specialist simply listened. She didn't defend or justify the defense attorneys' actions and she made us feel like our opinions and experiences mattered. This is not to say that she was able to change the attorneys' actions or behavior, but things did get better. We noticed small changes and we got more information about certain issues that were important to us than we ever thought possible.

It was very important to our family to have a good relationship with the prosecution. They worked tirelessly to help our family achieve a sense of judicial closure. We did not want to lose that relationship, but we felt constrained that somehow we – the daughters who lost our parents – were not freely able to talk with anyone involved in the case that could help us understand the entire case and listen to what was important to us. Rather, we were expected

Exhibit 4

to remain quiet throughout the years of pretrial proceedings, take what was given to us, and wait until we were granted permission to speak.

With the DVO Specialist, we were able to communicate our concerns and get answers to our questions when it mattered to us. She worked on our behalf on matters that were important to us – and she did this in ways that were respectful to our relationship with both the prosecutors and with the other families. Throughout the pretrial proceedings and the trial, we never felt that we had to choose sides – something that victims' family members of should never have to do.

Today, our family continues to work on behalf of crime victims to know that their interests matter. We know that every victim has different experiences, needs, and concerns, and that each of them should have access to both the prosecution and the defense. And we value the ability to be seen and heard in the court process that DVO offers – because we experienced it ourselves.

Yours truly,

Dana Sampson

Joy Ehlenfeldt

Exhibit 4