IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                       ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS             ) | |

**RESPONSE IN OPPOSITION TO GOVERNMENT PROPOSED
SCHEDULING ORDER AND SEPTEMBER 2020 TRIAL DATE**

Defendant, Robert Bowers, through undersigned counsel, respectfully files this Response in Opposition to the prosecution's request for a comprehensive scheduling order that will produce a trial in mid-September 2020. The prosecution's proposal is unrealistic because it fails to account for both the time-consuming work of investigating and presenting the history and background of a person on trial for his life, and the complexity of the interrelated legal issues that the Court must address and resolve before trial.

These considerations aside, the prosecution's proposal that the Court begin selecting a jury on September 14, 2020 would result in trial proceedings during the Jewish autumnal holidays, including the High Holy Days, and a likely penalty phase at or about the time of the second anniversary of the shootings at issue. It would place most or all of the trial in the climactic final weeks of a Presidential election in which Pennsylvania will likely be a critical battleground, and in which President Trump –

1

having already publicly called for our client's execution[1] – may be expected to politicize this case again – polluting the potential jury pool. Against these hazards of a September-October 2020 trial, the government invokes the rights of crime victims to be free from unreasonable delay. The Court's view of this invocation of rights should be informed by the fact that this case would already be over – and interests in a speedy resolution vindicated – had the government accepted the defendant's offer to plead guilty as charged and to be sentenced to life in prison without the possibility of release. Instead, and against the publicly expressed request of two of the congregations to resolve this case without a trial, the government has insisted on pursuing the death penalty.

**The prosecution's proposed deadlines are unrealistic.** The prosecution's proposed scheduling order sets forth an aggressive series of densely packed deadlines that do not adequately take into account the fact that many issues are interrelated and should be addressed in a logical order. Nor does the government's proposed schedule recognize

---

[1] *See, e.g.,* Carla Herreria, "Trump Touts Death Penalty After Pittsburgh Synagogue Shooting," HUFFINGTON POST, October 27, 2018 ("'When people do this, they should get the death penalty,' Trump said. 'Anybody that does a thing like this to innocent people that are in temple or in church – we've had so many incidents with churches – they should be suffering the ultimate price.'"); Katie Rogers and Jeffery C. Mays, "Trump Calls for Unity After Synagogue Shooting, Then Swiftly Denounces Democrats," NEW YORK TIMES, Oct. 27, 2018) ("At his rally, the president ended comments about the synagogue shooting by reiterating his belief that shooting suspects who target Jewish people should be put to death. 'Those seeking their destruction,' Mr. Trump said, 'we will seek their destruction.'").

the defense's need for further investigation and expert assistance before it can address certain issues.[2]

The government seeks to have the Court order the defense to file any Rule 12.2 notices in December 2019 and March 2020. These deadlines fail to recognize the amount of work that the defense must complete before deciding whether to present mental health evidence. "Creating a competent and reliable mental health evaluation consistent with prevailing standards of practice is a time-consuming and expensive process." American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases,* 31 Hofstra L. Rev. 913, 956 (2003) (Commentary, Guideline 4.1). A large part of the task of providing constitutionally adequate assistance to a defendant in a capital case involves the investigation and presentation of mental health evidence, whether at the guilt phase, the penalty phase, or both. It is a multi-step process requiring investigation of the client's biological, psychological and social history, and the selection and retention of appropriate experts, before the defense is even in a position to begin mental health testing and assessment. Only when this process is substantially completed can defense counsel decide whether and what mental health evidence to present, and to provide notice of that decision under Rule 12.2. Simply put, this process takes more time that the government's proposed schedule would allow.

---

[2] Notably, the government has had possession of the physical evidence for almost a year, and still has not completed significant forensic evaluations. We point this out not to criticize the government, but simply to underscore that the investigation and analysis involved in *this* case are time consuming – even for the prosecution, with the vast resources at its disposal.

Here, counsel have been representing Mr. Bowers for less than a year.  Much of that time has been consumed by the capital authorization process, and by defense counsel's efforts to achieve a prompt resolution of the case way of guilty pleas to life in prison without the possibility of release.  Counsel continue to work diligently to complete the investigation that is necessary before they can select and retain expert assistance.[3]

The prosecution's proposal also provides little to no time to resolve preliminary motions before filing others that logically turn on how the prior motions are resolved.  Nor does it recognize that discovery remains an issue.  For example, certain discovery-related motions (*e.g*., motion for an informative outline of death-penalty-related allegations in the Notice of Intent, motion for Jury Selection and Service Act data, and motion for notice under Rule 12(b)(4)) should produce information necessary to subsequent motions to suppress, challenges to the indictment, and motions regarding jury selection.  In addition, counsel cannot evaluate venue issues without further investigation and likely expert assistance.

While some courts have entered early scheduling orders that include trial dates, many have not.[4]  Moreover, experience teaches that trial dates set long in advance are

---

[3] Should the Court wish a more detailed picture of the additional work required before the defense can address outstanding issues in this case and prepare a case in mitigation, defense counsel request an opportunity to make an *ex parte* filing addressing those work-product-related issues.

[4] Several of the pending federal capital cases initiated by the Trump Administration do not have trial dates set – signifying that no scheduling order was entered after the government filed its Notice of Intent (NOI) or informed the court of its intent to seek the death penalty.  *E.g*., *United States v. Jordan,* Cr. No. 15-404 (WDMO) (NOI filed 12/20/18); *United States v. Tartaglione,* Cr. No. 16-632 (SDNY) (NOI filed

rarely adhered to. For example at least ten of the now pending or recently completed trial settings during the Trump Administration reflect continuances of previously set trial dates.[5] Of course, others may be continued as trial dates approach.  Rather than trying to compress necessary pretrial litigation into an unrealistic schedule in the service of a probably unattainable trial date, only to find a continuance necessary on the eve of trial, it would be prudent and appropriate to resolve pretrial issues through a logical process based on what actually must be done before trial, with the trial date being set only when a realistic and practicable date can be ascertained.

The prosecution cites two high-profile cases, *United States v. Tsarnaev* and *United States v. Roof,* as examples of cases where scheduling orders were set and trials commenced within 21 and 17 months from indictment (or approximately 11 and 6 months from the Notices of Intent) respectively.  The prosecution may not be aware, or at least does not acknowledge, that the defense in *Tsarnaev* strenuously objected to the originally scheduled date, and obtained a continuance shortly before trial was scheduled

---

4/19/19); *United States v. Nesbitt and Burkhalter*, Cr. No. 18-36 (WDMO) (NOI filed 7/30/18); *United States v. Wiggins*, Cr. No. 19-194 (MDTN) (NOI filed 8/8/19); *United States v. Rebolledo*, Cr. No. 18-119 (NDCA) (NOI filed 10/2/19); and *United States v. Brown*, Cr. No. 17-567 (SDTX) (court notified of government's intention to seek the death penalty 10/29/18, ECF 128).

[5] *See, e.g. United States v. Christensen,* Cr. No.17-20037 (CDIL*)* (continuance granted); *United States v. Owle & Laurel*, Cr. No. 17-00039 (NDWV) (continuance granted); *United States v. Council*, Cr. No. 17-866 (DSC) (continuance granted); *United States v. Smith*, Cr. No. 16-00086 (DAK*)* (continuance granted); *United States v. George, Ofomata & Johnson*, Cr. No. 17-201 (EDLA) (continuance granted); *United States v. Skates,* Cr. No. 15-285 (NDCA) (continuance granted); *United States v. Saipov*, Cr. No. 17-722 (SDNY) (continuance granted).

to begin. In *Roof*, it was the *defense* that proposed the early trial date – for *sui generis* reasons that are inapplicable here – and the Court set the trial schedule *by agreement of the parties* after the defense advised on the record that it could be ready.  From the standpoint of trial management, in other words, *Roof* is an outlier that provides no useful measure for gauging how or when to set a trial date in this case.

In requesting a trial date 385 days after the filing of the Notice of Intent in this case, the prosecution also seems unaware, or neglects to acknowledge, that *none* of the defendants currently pending trial whose death prosecutions were authorized by the Trump Administration have had trials set that quickly.  Nor does the government acknowledge that the average time for all authorized cases from Notice of Intent to trial date (at least as of January 22, 2019) is 16.9 months or 514 days.[6]  Indeed, under the Trump Administration (as can be seen from the number of days from Notice of Intent to trial in the cases listed here), the average time from Notice of Intent to scheduled trial dates is 743 days, or roughly 24.4 months. *See United States v. Christensen,* Cr. No.17-20037(CDIL*)* (Notice of Intent (NOI) filed 1/19/18, trial 6/3/19; elapsed time from NOI to trial, 500 days); *United States v. Arnold,* Cr. No. 15-20652 (EDMI) (NOI: 1/18/18, trial 9/22/20, 978 days); *United States v. Owle & Laurel*, Cr. No. 17-00039 (NDWV) (NOI: 5/2/18, trial 9/13/21, 1240 days); *United States v. Mills & Wilson*, Cr. No. 16-20460 (EDMI) (NOI 3/1/18, trial 4/20/20, 781 days); *United States v. Council*, Cr. No. 17-866

---

[6]https://fdprc.capdefnet.org/sites/cdn_fdprc/files/Assets/public/project_declarations/time/preparation_time_declaration_1.23.19.pdf.

(DSC) (NOI 3/21/18, trial 9/9/19, 537 days); *United States v. Smith*, Cr. No. 16-00086 (DAK*)* (NOI 6/19/18, trial 5/26/20, 707 days); *United States v. George, Ofomata & Johnson*, Cr. No. 17-201 (EDLA) (NOI 8/31/18, trial 9/14/20, 745 days); *United States v. Skates,* Cr. No. 15-285 (NDCA) (NOI 9/11/18, trial 7/9/21, 1032 days); *United States v. Saipov,* Cr. No. 17-722 (SDNY) (NOI 9/28/18, trial 4/13/20, 580 days); *United States v. Hardison*, Cr. No. 17-00124 (MDTN) (NOI 11/9/18, trial 10/1/20, 692 days); *United States v. Madison*, Cr. No. 17-cr-15-37 (MDFL) (NOI 12/19/17, trial 1/7/19, 384 days; trial setting vacated when defendant found incompetent).[7]

**The defense proposal provides a reasonable and logical series of deadlines.** The defense proposal, discussed in principle with the prosecutors, is to schedule motions in successive rounds, first resolving issues on which ensuing motions will necessarily be predicated. This approach to scheduling is consistent with the general practice in the Western District of Pennsylvania, would allow the Court time to consider and rule on the complex issues this case will likely raise, and will provide for a probable trial date in the late spring of 2021.

Specifically, the defense proposes the following deadlines:

**November 4, 2019**: Government to confirm production of all Rule 16/*Brady* in its possession, including forensic reports.

**December 18, 2019**: Defendant to file discovery-related motions (including motions for *Brady* and Rule 16 discovery, Jury Selection and Service Act data,

---

[7] The single-defendant cases averaged more than 541 days (or almost 18 months) from Notice of Intent to the scheduled (or rescheduled) trial date.

7

informative outline for several of the alleged aggravating factors, and Rule 12(b)(4) and Rule 404(b) notices).[8]

Resolution of these discovery-related issues is a necessary predicate to subsequent motions to challenge the indictment (*e.g*., the Commerce Clause as a jurisdictional basis, the composition of the grand jury), motions to suppress, as well as motions addressing challenges to the alleged aggravating factors.

**March 23, 2020**:  Defendant to file motions to suppress.

**April 20, 2020**:   Defendant to file motions challenging the indictment, the jury plan, the Federal Death Penalty Act, and Notice of Intent.[9]

**August 10, 2020**:  Status conference to set further dates for litigation relating to venue issues; evidentiary issues, including *Daubert* challenges; jury selection procedures; jury instructions for both guilt and penalty phases; Rule 12.2 notice; and other matters that may arise.[10]

## Conclusion

For the foregoing reasons, the defendant requests that this Court decline to adopt the prosecution's proposed scheduling order, but rather proceed as recommended in the defense proposal.

---

[8] The parties have met, conferred, and corresponded regarding discovery issues over the course of many months.  While many issues have been resolved, it has become clear there is a fundamental disagreement regarding the government's discovery obligations in this capital case.

[9] The March 23, 2020 and April 20, 2020 deadlines anticipate full briefing, any necessary hearings, and resolution of discovery-related motions by mid-February 2020.

[10] The suggested August 10, 2020 date for a status conference anticipates full briefing, any necessary hearings, and resolution of the motions to suppress and challenges to the death penalty and the indictment by early August 2020.

Dated: October 15, 2019						Respectfully submitted,

							*/s/ Judy Clarke*
							Judy Clarke
							Clarke Johnston Thorp & Rice, PC

							*s/ Michael J. Novara*
							Michael J. Novara

							*s/ Elisa A. Long*
							Elisa A. Long
							Assistant Federal Public Defenders