IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

### MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER PURSUANT TO RULE 16(d)(1)

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby moves this Court to enter the following Supplemental Protective Order given the graphic, sensitive nature of certain discovery in this criminal case. A Supplemental Protective Order is necessary to protect the right of crime victims to be "treated with fairness," and with respect for their "dignity and privacy." 18 U.S.C. § 3771(a)(8).

A. Procedural History

On October 27, 2018, the defendant, Robert Bowers, drove to the Tree of Life Synagogue and entered the building carrying multiple firearms. The defendant opened fire, killing 11 congregants and injuring additional members of the Tree of Life, Dor Hadash and New Light congregations. While inside the Tree of Life Synagogue, the defendant made statements indicating his desire to "kill Jews." Law enforcement officers responded to the scene and the defendant also opened fire upon them, injuring four public safety officers. Doc. No. 1 at 1.

As alleged in the 63-count Superseding Indictment, prior to October 27, 2018, the defendant, using his account on the website gab.com, posted his belief that "jews are the children of satan," and authored several other posts that referred to Jewish people using anti-Semitic slurs,

1

demonstrated deep animosity toward those of the Jewish faith, and applauded violence and death. See Doc. No. 44 at 1.

In conjunction with the investigation, the FBI and other law enforcement agencies processed the crime scene, resulting in the production of graphic images, and acquired 911 calls placed by victims from inside the Synagogue. Other photographs document autopsies that were conducted by the Medical Examiner's Office of the 11 deceased victims. Many of these photographs depict the victims' badly mutilated bodies.

Pursuant to a request by the defense, on February 13, 2019, the United States made graphic scene evidence and 911 calls available to the defense team for review at the U.S. Attorney's Office. Subsequently, on February 15, 2019, the vast majority of scene photographs and 911 calls were copied (on more than 13 separate computer discs) and then provided to defense counsel as Rule 16 material. Only the most sensitive, graphic images and only four 911 calls, those that depicted or recorded deceased victims, were not included in these productions. They were instead retained at the U.S. Attorney's Office and offered to the defense for further in-person review at their convenience. The defense team was additionally notified that they could make arrangements to view the autopsy images, which they have not yet done. The autopsy reports themselves were provided to the defense team on March 13, 2019. Accordingly, the subset of discovery materials that have been designated as the most sensitive and graphic, and therefore in need of additional protection from unnecessary dissemination and disclosure, is a small fraction of the overall number of images and recordings that have already been produced to defense counsel.

On September 6, 2019, in written correspondence, the defense requested copies of those images which had been retained at the U.S. Attorney's Office. The parties met in person on September 17, 2019, to discuss outstanding discovery concerns, including the graphic crime scene

and autopsy images. Following that meeting, on September 19, 2019, the United States affirmed its willingness to provide copies of even the most graphic, sensitive images and recordings, under the following conditions, given their sensitivity: "1) the sensitive images and 911 calls will remain on an external storage drive and will not be further copied or saved to a computer server; 2) review of the sensitive images and 911 calls will be limited to counsel of record and, if needed, investigators employed by the Federal Public Defender in Pittsburgh; and, 3) the sensitive images and 911 calls will not be shown to your client unless or until they have been identified as trial exhibits and such review is necessary for trial preparation."

On September 30, 2019, defense counsel counter-proposed to maintain the evidence on two external drives, one in Pittsburgh and one in San Diego, and offered to limit review of the images "to members of the defense team who have either been appointed by the court or retained by the FPD office." They left open the prospect of making additional copies of the images pursuant to an *ex parte* application and order by the Court. Most important, defense counsel was not willing to further discuss or agree upon restrictions in showing graphic scene photos of victims to the defendant, Robert Bowers.

While the United States is willing to agree that the images can be provided on two external drives, it will not agree to *ex parte* proceedings about further copying and disseminating these most sensitive images. The United States also strongly objects to the defendant having unfettered access to numerous, graphic images of the victims of his crimes, the majority of which will not be trial exhibits. Accordingly, the parties are at an impasse and a Supplemental Protective Order is necessary to protect the rights of victims and their surviving family members.

On November 5, 2018, this Court entered a Protective Order memorializing general controls and protective measures upon discovery that were the product of negotiation and

agreement between the United States and defense counsel.  Doc. No. 24.  The United States now seeks the following additional protections, in the form of a Supplemental Protective Order, that will govern only those materials that have been designated as the most sensitive and graphic, including scene images that depict deceased victims, autopsy images of deceased victims, and certain 911 calls from victims:

a. sensitive, graphic discovery will be produced to defense counsel on two external storage drives, one which will be maintained in Pittsburgh and another which will be maintained in San Diego, California.  The content on the external drives will not be further copied or saved to a computer server or shared account;

b. review of the sensitive, graphic discovery will be limited to counsel of record and, if needed, investigators employed by the Federal Public Defender in Pittsburgh and court-appointed experts;

c. the defendant shall not have access to the sensitive, graphic discovery unless or until items have been identified as trial exhibits and such review is necessary for trial preparation;

d. nothing in the Supplemental Protective Order shall prevent any party from seeking modification of this protective order or from objecting to discovery that it believes to be otherwise improper.  No party shall seek modification of this Supplemental Protective Order *ex parte*.[1]

II.     Law in Support

The nature of the allegations and evidence in this case compels heightened controls to prevent the unnecessary exposure, duplication, or release of the most graphic scene photos. Further, allowing the defendant to repeatedly review images that depict severe and lethal bodily

---

[1] The proposed language in subsection (d) regarding modifications is exactly the same as the language in the November 5, 2018, Protective Order entered by this Court.  Doc. No. 24 at 2.

injury, which he is charged with inflicting, to victims that he targeted because they were Jewish, risks needless pain and harm to surviving family members and victims.  There is no legitimate need for the defendant to personally view hundreds of graphic photos or replay the final moments of victims he killed.

Under the Crime Victims Rights Act, victims are guaranteed the right to be "treated with fairness," and with respect for their "dignity and privacy."  18 U.S.C. § 3771(a)(8).  When crime victims are deceased, their rights survive and may be assumed by family members, legal guardians or other representatives.  See 18 U.S.C. § 3771(e).

Rule 16 permits a defendant to inspect and copy items such as photographs if the items are within the government's control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E).  Importantly, Rule 16 of the Federal Rules of Criminal Procedure provides:  "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  "The court may permit a party to show good cause by a written statement,"[2] id., and that statement should show good cause with particularity.  See United States v. Wecht, 484 F.3d 194, 211 (3d Cir. 2007).  "The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause."  Id.  Some statutes provide express authority for the entry of a protective order in specific circumstances, including 18 U.S.C. App. 3 § 3 (the Classified Information Procedures Act (CIPA)), 18 U.S.C. § 3509(d)(3) (the Child Victim's Rights Act), and 18 U.S.C. § 1835 (involving trade secrets).

---

[2]   Rule 16(d)(1) also contemplates that a party may show good cause to deny, restrict or defer discovery by a written statement that the court may inspect *ex parte*.  There is no need for *ex parte* review here.

5

The Supreme Court has sanctioned the use of protective orders: "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." Alderman v. United States, 394 U.S. 165, 185 (1969). The Third Circuit, in the context of civil settlement, has acknowledged that "[i]t is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir.1994). "Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously." Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv.L.Rev. 427, 432–33 (1991) (cited in Pansy, 23 F.3d at 787). Depending upon the nature of the discovery at issue, courts may issue protective orders that restrict discovery to "attorney eyes only" to protect trade secrets or patents. Layne Christensen Co. v. Purolite Co., 271 F.R.D. 240, 242-43 (D. Kan. 2010) (upholding the designation of some discovery as for attorney eyes only in patent infringement case).

Restrictions on a defendant's access, or even defense counsel's access, to certain sensitive discovery is firmly grounded in precedent. In the context of national security prosecutions, district courts have the power to restrict and deny defendants and defense counsel access to classified material under Rule 16(d)(1), given the sensitivity of the subject matter and in furtherance of national security. In fact, the Classified Information Procedures Act (CIPA) presumes that discovery itself and access to discovery by the defendant and his counsel may be severely limited or foreclosed entirely. 18 U.S.C. App. 3 §§ 3, 4; United States v. Younis, 867 F.2d 617 (D.C. Cir. 1989). In some instances, a court may restrain an individual defendant's access to discovery as

long as defense counsel has access to the material.  See In re: Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 125 (2d Cir. 2008) (upholding district court's mandatory security clearance policy regarding classified discovery which had the effect of barring defendant from access).  The Second Circuit has opined that the "production of materials to a party's attorney alone falls within the common meaning of 'discovery.'" Id. at 126.  The D.C. Circuit, in United States v. Mejia, rejected the defendant's Sixth Amendment Confrontation Clause challenge to restrictions on classified discovery and clarified that the Confrontation Clause protects only a defendant's trial rights "and does not create a right to pretrial discovery," 448 F.3d 446, 458 (D.C. Cir. 2006) (citing Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987)).

In addition, the Supreme Court has recognized the government's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957); see also McCray v. Illinois, 386 U.S. 300 (1967); United States v. Jiles, 658 F.2d 194 (3d Cir. 1981).  Given the public interest in encouraging the flow of information to law enforcement, the contents of an informant's communications, if they would reveal the informant's identity, may also be withheld particularly when there is a high risk of danger and harm.  See United States v. Valles, 41 F.3d 355 (7th Cir. 1994); Jiles, 658 F.2d at 198; see also, e.g., United States v. Pelton, 578 F.2d 701, 706-07 (8th Cir. 1978) (court properly issued a protective order preventing defendant's access to tape recordings in light of government's concern for the safety of cooperating sources whose identity was disclosed in the recordings).

In child exploitation prosecutions, neither defense counsel nor the defendant are able to retain copies of the sexually explicit images in preparation for trial, and detained defendants do not access or review sexually explicit images prior to trial.  See 18 U.S.C. § 3509(m) (requiring

that all child pornography "remain in the care, custody, and control of either the government or the court"). Section 3509(m) explicitly restricts Rule 16, by instructing that "a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography ... ." 18 U.S.C. § 3509(m)(2)(A). A justification for this significant restriction is that each viewing of a sexually explicit image of a child compounds the exploitation and harm and essentially re-victimizes that child. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2002). Similar concerns exist in this case.

As a threshold matter, the very graphic scene and autopsy photos, and certain 911 calls, while they may be material to the preparation of a defense, have not been categorically identified for use in the government's case-in-chief. They have not been obtained from nor do they belong to the defendant. Because, under the proposed Supplemental Protective Order, defense counsel would possess unlimited ability to review any of the most graphic evidence, and to describe and discuss those items with the defendant, any material impact upon the preparation of the defense due to restrictions on the defendant's access would be marginal and temporary. The United States acknowledges that, while it may remain unsettling to victim families, once the Court has set a trial date and exhibits have been identified for use at trial, the defendant will have access to review the trial exhibits. Thus, the defendant's restricted access would be in place until a subset of the most graphic evidence items have been identified as trial exhibits. There is absolutely no countervailing public interest in allowing the defendant himself to view images that document the grievous physical harm and death that he intentionally inflicted upon the victims.

III.    Conclusion

The requested Supplemental Protective Order is necessary to prevent "unnecessary" and "serious pain" to victim families and to accord the ongoing rights of privacy and dignity to deceased victims and their families.  See Pansy, 23 F.3d at 787; 18 U.S.C. § 3771(a)(8).  In light of the compelling interest in victim privacy and dignity, and given the extremely violent crimes with which this defendant is charged, this Court has good cause to adopt and approve the reasonable, temporary controls sought in the Supplemental Protective Order to protect the most sensitive, graphic evidence.  A proposed order is attached.

    Respectfully submitted,

    SCOTT W. BRADY
    United States Attorney

By:    s/Troy Rivetti
    TROY RIVETTI
    Assistant U.S. Attorney
    PA ID No. 56816

    s/Soo C. Song
    SOO C. SONG
    Assistant U.S. Attorney
    DC ID No. 457268

    s/Julia Gegenheimer
    JULIA GEGENHEIMER
    Special Litigation Counsel
    Civil Rights Division
    NY ID No. 4949475