**WARNING: AT LEAST ONE DOCUMENT COULD NOT BE INCLUDED!**
**You were not billed for these documents.**
**Please see below.**

| Document Number | Document Description | Pages | Document Error |
|---|---|---|---|
| Document 157 attachment | Attachment | 1 | **DOCUMENT COULD NOT BE RETRIEVED! However, it may still be viewable individually.** |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        )
                                )
        v.                      )        Criminal No. 18-292
                                )
ROBERT BOWERS                   )


**MOTION FOR INFORMATIVE OUTLINE OF AGGRAVATING FACTORS**

Robert Bowers, through counsel, moves this Court for an order directing the government to provide an informative outline of the statutory and non-statutory aggravating factors it intends to present to the jury in the event of a penalty phase in this matter. An informative outline is required so that Mr. Bowers may prepare his case in rebuttal to the alleged statutory and non-statutory aggravating factors, including conducting necessary investigation and making appropriate legal challenges to the government's claims and evidence. As they stand, the superseding indictment and notice of intent provide insufficient notice of the bases on which the government will seek to put Mr. Bowers to death.

**ARGUMENT**

**I.      Under the Federal Death Penalty Act, the accused is entitled to meaningful notice of the aggravating factors against which he must defend.**

The penalty phase of a capital trial functions like an ordinary criminal trial in certain respects: the government must prove aggravating factors beyond a reasonable doubt, the jury must find aggravating factors unanimously, and the death penalty may not be imposed unless the government proves certain elements of the capital offense (the

defendant's age, his intent, and at least one statutory aggravating factor). As in any trial, the accused requires meaningful notice to prepare and present a defense, including any legal or evidentiary challenges. Unlike an ordinary case, however, the ultimate sanction is at stake. As a result, a heightened standard of reliability applies and counsel face stringent performance obligations. To ensure that the accused receives adequate protection under these circumstances, courts have required the government to plead the details of alleged aggravating factors, usually by informative outline, as described below.

### A.  Meaningful notice is required.

The Federal Death Penalty Act of 1994 ("FDPA") provides that, if a defendant has been found guilty of a death-eligible homicide offense, the court conducts a separate sentencing hearing at which a jury determines the punishment to be imposed. 18 U.S.C. § 3593(b). At the sentencing hearing, the jury considers, among other evidence, "any information relevant to an aggravating factor for which notice has been provided." 18 U.S.C. § 3593(c). The jury then considers "all the information received during the hearing," and returns "special findings" identifying the statutory and non-statutory aggravating factors it has found unanimously to exist beyond a reasonable doubt. 18 U.S.C. § 3593(c)–(d). If no statutory factor is found beyond a reasonable doubt, "the court shall impose a sentence other than death." 18 U.S.C. § 3593(d).

The jury may only consider aggravating factors "for which notice has been given." 18 U.S.C. § 3592(c). "[A]t a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and prepare his case in rebuttal." *United States v. Wilson*, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006). *See also*

2

*United States v. Kaczynski*, No. CR S–96–259, 1997 WL 34626785, at *18 (E.D. Cal. Nov. 7, 1997) (same); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1057 (D.N.D. 2005) (calling defendant's ability to defend his case a "hallmark[]" of due process).

"Whether rooted directly in the Due Process Clause . . . or in the Compulsory Process or Confrontation clauses . . ., the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citation omitted). "This opportunity would hardly be 'meaningful' if the defense were forced to confront sentencing phase evidence without any notice of what that evidence might be." *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001). *See also United States v. Duncan*, No. CR07–23, 2008 WL 656036, at *5 (D. Idaho Mar. 6, 2008) (same). As one court warned: "Absent further revelations by the government, Defendant may be forced to defend against these allegations for the first time during the prosecutor's case-in-chief at sentencing. This raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty." *Rodriguez*, 380 F. Supp. 2d at 1057.

Requiring the government to provide advance notice of facts and evidence it will use to establish aggravating factors also helps the trial court serve its essential "gatekeeping function." 18 U.S.C. § 3593(c).[1] By mandating disclosure now, the Court

---

[1] The FDPA's gatekeeping provision is stricter than the one in the Federal Rules of Evidence. It provides: "[I]nformation may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). *Compare* Fed. R. Evid. 403 ("substantially outweighed").

can make reasoned, deliberate choices as it "screen[s]" the government's aggravation evidence, a task "essential in channeling, directing and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty." *United States v. Solomon*, 513 F. Supp. 2d 520, 526 (W.D. Pa. 2007). *See also United States v. Hammer*, No. 4:96-CR-239, 2011 WL 6020157, at *3 (M.D. Pa. Dec. 1, 2011) (same). It also ensures that the government's case for death meets the Eighth Amendment's "heightened reliability" requirement. *Cf. Gardner v. Florida*, 430 U.S. 349, 358–59 (1977) (requiring disclosure to defendant of all information contained in confidential presentence investigation report in sufficient time to allow defendant a meaningful opportunity for response).

**B.  Courts routinely order the government to provide an "informational" or "informative" outline—analogous to a bill of particulars—to advise the defense of the theories and facts underlying the aggravating factor allegations in the indictment and NOI.**

Defense counsel are held to the highest standard of care in capital sentencing proceedings. Those standards are described in the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases. *See Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (citing ABA Guidelines as establishing the governing "norms"). In particular, the Court in *Wiggins* referenced the ABA Guideline which governs the investigatory duties of counsel with respect to the penalty phase of a capital trial, quoting the requirement that counsel "'discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" *Wiggins*, 539 U.S. at 524 (quoting ABA Guidelines 11.4.1(C), p. 93). Since

*Wiggins*, these Guidelines have been revised to be even more exacting insofar as they require counsel "to seek information that . . . rebuts the prosecution's case in aggravation," Guideline 10.11(A), and to "determine at the earliest possible time what aggravating factors the prosecution will rely upon in seeking the death penalty and what evidence will be offered in support thereof." *Id*. at 10.11(H). *See also United States v. Karake,* 370 F. Supp. 2d 275, 280–81 (D.D.C. 2005). Armed with this information, defense counsel should investigate whether the government's evidence "can be excluded, rebutted, or undercut." Guideline 10.11 cmt. "Where possible, counsel should move to exclude aggravating evidence as inadmissible, and, if that fails, rebut the evidence or offer mitigating evidence that will blunt its impact." *Id*.; *see Rompilla v. Beard*, 545 U.S. 374, 387 (2005) ("We long have referred to these ABA Standards as guides to determining what is reasonable.").

Counsel cannot perform this function—and therefore cannot provide the constitutionally required effective assistance—without advance notice of the government's evidence. Numerous courts agree that "[i]n order for the government's evidence to be subjected to the crucible of meaningful adversarial testing, the [notices of intent], in conjunction with the indictment, must inform the defendants of the theories and facts that the government will use to establish each aggravating factor." *Llera Plaza*, 179 F. Supp. 2d at 472. *See also Duncan*, 2008 WL 656036, at *5. Citing the commands of due process, and relying on their "inherent authority," courts frequently order the government to provide defendants, ahead of sentencing, with more than bare minimum notice. *See, e.g.*, *United States v. Glover*, 43 F. Supp. 2d 1217, 1222 (D. Kan. 1999).

These courts direct the government to provide additional information about the evidence it will use to establish its aggravating factors *See, e.g.*, *United States v. Jacques*, No. 2:08-cr-117, 2011 WL 1675417, at *29 (D. Vt. May 4, 2011), *overruled in part on other grounds*, 684 F.3d 324 (2d Cir. 2012); *Glover*, 43 F. Supp. 2d at 1222; *United States v. Montgomery*, 10 F. Supp. 3d 801, 830 (W.D. Tenn. 2014) (listing cases); *Rodriguez*, 380 F. Supp. 2d at 1058; *Kaczynski*, 1997 WL 34626785, at *19; *Wilson*, 493 F. Supp. 2d at 376; *Karake*, 370 F. Supp. 2d at 280–81; *United States v. Gooch*, No. 04-128-23, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006); *United States v. Lujan*, No. CR 05-924, 2008 WL 11359151, at *23 (D.N.M. June 26, 2008).

This "additional information" typically takes the form of an "informational outline," *Hammer*, 2011 WL 6020157, at *2, or "informative outline," *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001). *See United States v. Diaz*, No. CR 05-0167, 2007 WL 4169973, at *3 n.1 (N.D. Cal. Nov. 20, 2007) ("In the interest of protecting defendants' right to prepare an adequate defense, most federal district decisions have required an informative outline of the underlying facts the government plans to use to prove the aggravating factors indicated in Section 3593(a)."). This outline advises the defendant of "the general nature of the evidence [the government] will seek to introduce in support of the threshold findings and specified aggravating factors." *Hammer*, 2011 WL 6020157, at *3; *see United States v. O'Reilly*, No. 05-80025, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007) (explaining that informative outline provides defendant with "more specific information" about the government's proposed aggravating factors).

Because aggravating factors support imposing a death sentence, the government

may not shift the burden to the defense to discern their meaning. Thus, it is no

argument against the need for an informative outline that sentencing information has

been disclosed in discovery, especially when the discovery is voluminous. To the

contrary, extensive discovery reinforces the need for an informative outline:

> [T]he fact that the precise acts and/or events may have been disclosed in the
> course of discovery does not obviate the need for a more specific notice. Even
> if the government has provided Defendant with documents detailing specific
> acts, the government has not yet indicated which acts and/or events it intends
> to use at sentencing. In fact, the characterization of the discovery provided
> as extensive lends further support for requiring the government to identify
> the particular acts upon which it will rely. Extensive discovery could make it
> difficult for Defendant to ascertain which precise discovery will be used
> against him.

*Rodriguez*, 380 F. Supp. 2d at 1057–58; *see Kaczynski*, 1997 WL 34626785, at *19

(same); *Diaz*, 2007 WL 4169973, at *5 ("Merely referring to a range of several hundred

pages (or thousands in some cases) in discovery is not an informative outline. . . . [T]oo

much is left to guesswork. Notice means notice. It does not mean a scavenger hunt for

clues in discovery, including in redacted pages.").[2]

---

[2] In resisting defense counsel's informal request for an informative outline, the
government cited to *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003). However,
*Higgs* found the defendant was not entitled to notice of the **specific evidence** to be used.
That court did not suggest the government can discharge its obligation to provide notice
by simply quoting the language of § 3592(c) and leaving it to the defendant to guess at
the facts that might support the aggravating factors. The other circuits to address the
notice question have essentially held similarly. *See United States v. LeCroy*, 441 F.3d
914, 930 (11th Cir. 2006) (government not obligated to outline the **specific pieces of
evidence** it planned to use to support the aggravating factors); *United States v. Lee*, 274
F.3d 485, 495 (8th Cir. 2001) (no right to advance notice of the **specific evidence** the
government would use to prove aggravating factors). The Third Circuit has not addressed
this notice issue.

## C.  The superseding indictment and the NOI require elaboration to serve any constitutional, statutory, or practical function.

Together, the superseding indictment and NOI identify four statutory aggravating factors, and five non-statutory aggravating factors on which the government intends to rely at sentencing. (ECF No. 44; ECF No. 86). The superseding indictment's descriptions of the statutory factors are limited to a bare recitation of the language of § 3592(c), and the NOI's descriptions of the statutory and non-statutory factors contain only skeletal factual allegations, where factual allegations appear at all. Because these pleadings do not provide sufficient information to satisfy Mr. Bowers' Fifth, Sixth, and Eighth Amendment rights—and because the Court cannot exercise its gatekeeping function based on these bare-bones pleadings—the Court should order the government to prepare and file an informative outline as to each aggravating factor.

### 1.  Statutory Aggravating Factors

The superseding indictment and NOI set forth four separate statutory aggravating factors. None of the allegations provide adequate notice.

#### a.  Substantial planning and premeditation

The government's notice of this aggravating factor is barebones, alleging only that Mr. Bowers "committed the offense after substantial planning and premeditation to cause the death of a person." (ECF Nos. 44 at 12–13 and 86 at 3.) No facts are provided; no information beyond the statutory language appears. This is not the kind of notice that satisfies due process or enables Mr. Bowers' counsel to mount a defense; nor does this

barebones notice enable this Court to screen the evidence and guard against the arbitrary and capricious imposition of the death penalty.

Neither the superseding indictment nor the NOI explain the alleged substantial planning and premeditation. What acts constituted substantial planning and premeditation? Mr. Bowers cannot meaningfully contest this factor—and the Court cannot screen the evidence pertaining to it—without additional information about how the government intends to prove "substantial planning and premeditation." Other courts have directed the government to produce an informative outline regarding this factor. *See, e.g.*, *Hammer*, 2007 WL 6020157, at *3 (ordering the government "to provide Defendant with Informational Outlines of the information it plans to present in support of . . . the statutory aggravating factor of substantial planning and premeditation."); *United States v. Diaz*, No. CR 05-00167, 2007 WL 196752, at *4 (C.D. Cal. 2015) ("The government must provide an informative outline of the factual basis on which it intends to show that the planning and premeditation were substantial."); *United States v. Con-Ui*, No. 3:CR-13-123, 2016 WL 9331115, at *18 (M.D. Pa. Jan. 28, 2016) (ordering government to provide defense with informational outline on substantial planning aggravator, specifying witnesses the government intends to call and evidence it intends to present); *United States v. Ciancia*, No. CR 13-902, 2015 WL 13798674, at *4 (C.D. Cal. Sept. 4, 2015) (ordering government to provide defense with "an informational outline as to the factual basis on which the Government intends to show that Defendant's planning and premeditation were substantial.").

### b. Vulnerable victim

The government alleges that Mr. Bowers committed the offense against "a victim" who was "particularly vulnerable due to old age . . . and infirmity." (ECF No. 86 at 3), and references several counts. The allegation fails to describe how any infirmity or age rendered a victim "particularly vulnerable;" that is, more vulnerable than a typical victim. The government must establish a nexus between the alleged vulnerability and the offense committed upon the victim. *See United States v. Savage*, Nos. 07–550–03, 07–550–04, 07–550–05, 2013 WL 1934531, at *9 (E.D. Pa. May 10, 2013) (recognizing that "the vulnerable victim aggravating factor requires some nexus between the vulnerability and the criminal offense"); *United States v. Jacques*, No. 2:08–cr–117, 2011 WL 1675417, at *21 (D. Vt. July 9, 2012), *vacated on other grounds in United States v. Jacques*, 684 F.3d 324 (2d Cir. 2012) (quoting 1 L. Sand, Modern Federal Jury Instructions ¶ 9A.14) (noting that there "must be 'a connection between the victim's vulnerability and the offense committed upon the victim.'"); *United States v. Johnson,* 136 F. Supp. 2d 553, 560 (W.D. Va. Mar. 1, 2001) (striking vulnerable victim aggravating factor where there was no evidence that victim's pregnancy or condition made her particularly susceptible to instantaneous death by explosive device). The notice fails to provide notice of any nexus between the alleged vulnerability and the charged offenses.

The barebones notice hinders Mr. Bowers' ability to defend against this aggravating factor; the defense is unable to prepare appropriate challenges for this Court's consideration and therefore this Court will not be able to perform its proper

10

gatekeeping function. Because "evidence of victim vulnerability . . . in a particular case is inherently individualized," *United States v. Green*, No. 5:06CR–19, 2008 WL 4000870, at *19 (W.D. Ky. Aug. 26, 2008), more detailed information is crucial to Mr. Bowers' ability to contest this aggravator and the Court's ability to decide admissibility challenges. The Court should order the government to provide an informative outline detailing the age and infirmity and describing how any infirmity or old age rendered a victim "particularly vulnerable."

### c. Grave risk of death to additional persons

The government alleges that Mr. Bowers "in the commission of the offense, and in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense, **to include** responding public safety officers A.B., J.C., J.G., J.H., T.M., D.M., A.M., J.P., J.R., M.S., M.S.2 and C.T." (emphasis added). (ECF No. 86 at 3.) The language suggests there may be others ("in addition") that were at grave risk, which leaves the proof open ended. Also, there is no notice about how Mr. Bowers "knowingly" placed the identified officers at grave risk of death. This information is needed to meaningfully prepare to defend against the government's allegation; and for the Court to consider any evidentiary challenges to this particular aggravating factor.[3]

This Court should follow the lead of other courts and order the Government to produce an informative outline as to the "grave risk of death to additional persons"

---

[3] The question of adequate notice is compounded by the substantial redactions contained in the FBI 302s produced in discovery.

aggravator. *See, e.g.*, *Llera Plaza*, 179 F. Supp. 2d at 473 (ordering production of informative outline where "neither the indictment nor the NOIs specify which 'additional persons' the defendants are alleged to have put at risk during their alleged crimes"); *Diaz*, 2007 WL 196752, at *4 (ordering informative outline because "[t]he government did not explain in its briefs or at oral argument who was put at grave risk, what the grave risk was, or how the defendant 'knowingly' created the risk"); *United States v. Savage*, Nos. 07–550–03, 07–550–04, 07–550–05, 2013 WL 1934531, at *12 (E.D. Pa. May 10, 2013) ("Nowhere in the Revised Notice of Intent or in the Indictment does the Government allege any individuals, other than the victims, who were exposed to 'grave risk' during the commission of the charged murders. The Government shall submit an outline of the evidence it intends to use at the sentencing phase with respect to this aggravating factor.").

### d.  Multiple killings or attempted killings

The government alleges that Mr. Bowers "intentionally killed and attempted to kill more than one person in a single criminal episode." (ECF No. 86 at 3.) It then references Counts One through 11 and Twenty-Three through Thirty-Three, which identify eleven victims killed. The NOI does not indicate whether the government will be pursuing both the "intentionally killed" and "intentionally . . . attempted to kill" prongs of this factor, or just the former. If the government intends to prove both, it must identify whom it alleges Mr. Bowers attempted to kill. Absent this information, Mr. Bowers is unable to lodge arguments to ensure that the evidence in support of this

aggravating factor is narrowed to only those facts relevant to prove the aggravator, and this Court will be unable to appropriately screen the evidence.

### 2.  Non-statutory aggravating factors

#### a.  Victim impact—"injury, harm, and loss"

The NOI alleges that Mr. Bowers "caused injury, harm, and loss to J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y., as well as to the family, friends, and co-workers of those individuals. The injury, harm, and loss caused by ROBERT BOWERS with respect to each deceased victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family, friends, associates, and co-workers." (ECF No. 86 at 3–4.)

 "That the range of human suffering—whether physical, emotional, or economic—is vast goes without saying." *Bin Laden*, 126 F. Supp. 2d at 304; *see Wilson*, 493 F. Supp. 2d at 378 ("The category of 'victim impact' is vast."); *United States v. Green*, No. 5:06CR–19, 2008 WL 4000870, at *21 (W.D. Ky. Aug. 26, 2008) (same). An "oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide [the defendant's] vital task of preparing for the penalty phase of trial." *Bin Laden*, 126 F. Supp. 2d at 304. It also hamstrings this Court's performance of its gatekeeping role in considering any objections Mr. Bowers may raise to this sensitive and emotionally fraught aspect of the case.

Faced with similarly conclusory notices, courts in other cases have ordered the government to "more specifically articulate the nature of this aggravator." *Glover*, 43 F. Supp. 2d at 1225. One court directed the government to specify "which members of the

[victim's] family have suffered, the nature of their suffering, and the nature of the 'permanent harm,'" for example, "whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm." *Id.* Other courts have entered similar orders. *See, e.g., United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) ("[T]he government shall amend its notice of intent . . . to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove."); *United States v. Pleau*, No. 10–184–1, 2013 WL 1673109, at *4 (D.R.I. Apr. 17, 2013) (ordering government to "provide an outline of its victim impact evidence"); *United States v. Talik*, No. 5:06CR51, 2007 WL 4570704, at *9 (N.D.W. Va. Dec. 26, 2007) (same); *Llera Plaza*, 179 F. Supp. 2d at 475 (same); *Duncan*, 2008 WL 656036, at *8 (same); *Green*, 2008 WL 4000870, at *20 (same); *O'Reilly*, 2007 WL 4591856, at *5 (same); *United States v. Williams*, No. 4:08–cr–00070, 2013 WL 1335599, at *40 (M.D. Pa. Mar. 29, 2013) (same).

"The propriety of providing a defendant with such information is further underscored by the particular danger of eliciting an emotional reaction inherent in victim impact evidence." *United States v. Casey*, No. 05-277, 2013 WL 12190487, at *2 (D.P.R. Mar. 1, 2013); *see Jackson v. Dretke*, 450 F.3d 614, 621–22 (5th Cir. 2006) (noting that victim impact evidence can be particularly prejudicial (citing *Payne v. Tennessee*, 501 U.S. 808 (1991)). Victim impact testimony has "unsurpassed emotional power . . . on a jury." *United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa

2005). One federal judge has described such testimony as "the most forceful, emotionally powerful, and emotionally draining evidence that [he has] heard in any kind of proceeding in any case, civil or criminal, in [his] entire career as a practicing trial attorney and federal judge spanning nearly 30 years." *Id.*

Given the "heightened degree of reliability" required of fact-finding in capital cases, *United States v. Bernard*, 299 F.3d 467, 475 (5th Cir. 2002), courts have recognized that defendants in death cases specially need to know the nature of victim impact evidence well before sentencing:

> [T]he mantra that "death is different" really applies here. Presenting information about victim impact to a jury that has convicted a defendant of a capital crime is different than presenting such information to a judge months after a trial is completed and at a time when the parties (and jury) are no longer exhausted from trial and no longer have frayed nerves from deliberations.

*Gooch*, 2006 WL 3780781, at *23; *see Montgomery*, 10 F. Supp. 3d at 830 (same). This Court, like those, should therefore "order the Government to outline the type and scope of the 'loss, injury, and harm' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim that it intends to prove." *Gooch*, 2006 WL 3780781, at *23; *see Con-Ui*, 2016 WL 9331115, at *19 (ordering informational outline on victim-impact aggravator specifying list of personal characteristics of victim, whether any testimony will be introduced from persons not named in the NOI, particularized categories of harm and loss that government intends to present, and any other pertinent information defendant would need to adequately prepare to respond.); *Pleau*, 2013 WL 1673109, at **4, 6 ("[T]he

Court hereby orders the government to provide an outline of its victim impact evidence . . . .").

### b. Killings motivated by religious animus

The government alleges that Mr. Bowers "expressed hatred and contempt toward members of the Jewish faith and his animus toward members of the Jewish faith played a role in the killings." (ECF No. 86 at 4.) The notice provides no detail, however, of the particular acts by Mr. Bowers that constitute the evidence of hatred and contempt or the particular acts that establish how any alleged hatred or contempt played a role in the killings.

The allegation that hatred towards members of the Jewish faith played a role in the offense is emotionally fraught in ways similar to victim impact evidence. Like victim impact evidence, evidence of killings motivated by hatred towards a particular religious group, especially a mainstream religious group, is potentially "so inflammatory as to risk a verdict impermissibly based on passion, not deliberation." *Payne v. Tennessee*, 501 U.S. 808, 836 (1991) (Souter and Kennedy, JJ., concurring).

The government should be required to list each act or statement that it intends to allege in support of this aggravating factor that (1) proves Mr. Bowers' hatred and contempt toward members of the Jewish faith and (2) proves that his animus toward members of the Jewish faith played a role in the killings. An informative outline is necessary to permit the defense "a meaningful opportunity to review, investigate, and challenge those acts." *United States v. Smith*, No. 3:16-00086, ECF No. 295 at 2 (D. Alaska Jan. 18, 2019).

### c. Selection of site

The government alleges that Mr. Bowers "targeted men and women participating in Jewish religious worship at the Tree of Life Synagogue, located in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania, which is home to one of the largest and oldest urban Jewish populations in the United States, in order to maximize the devastation, amplify the harm of his crimes, and instill fear within the local, national, and international Jewish communities." (ECF No. 86 at 4.)

Breaking down the allegation reveals the following components: (1) that Mr. Bowers targeted a particular group, specifically Jews; (2) that those individuals were at the time of the offense participating in Jewish religious worship at the Tree of Life Synagogue located in the Squirrel Hill neighborhood; (3) that the Squirrel Hill neighborhood is home to one of the largest and oldest urban Jewish populations in the United States; (4) that he targeted the individuals at Tree of Life Synagogue in order to (a) maximize devastation; (b) amplify the harm of his crimes; (c) instill fear within the local Jewish community; (d) instill fear within the national Jewish community; and (e) instill fear within the international Jewish community.

The allegation as written is broad, and this broadness necessitates an informative outline identifying the facts the government will offer in support of each component of this aggravating factor. Only after the government produces an informative outline will the defense will be in a position to review, investigate, and challenge this aggravator.

### d. Lack of remorse

The government alleges that Mr. Bowers "has demonstrated a lack of remorse for the offenses charged in the Superseding Indictment, as evidenced by his statements and actions during the course of and following the commission of the offenses." (ECF No. 86 at 4.) The NOI fails to provide a time frame for statements "following" the offense.

"Lack of remorse is a subjective state of mind, difficult to gauge objectively since behavior and words don't necessarily correlate with internal feelings." *Glover*, 43 F. Supp. 2d at 1226. Without knowing the statements or time frame for the statements, Mr. Bowers cannot prepare to rebut alleged statements and actions—which may, in context, reflect states of mind that are less "difficult to gauge."

Moreover, "guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt." *Id.* Lack-of-remorse evidence therefore "has a substantial possibility of encroaching on [a] defendant's constitutional right to remain silent." *United States v. Cooper*, 91 F. Supp. 2d 90, 113 (D.D.C. 2000). Because of this "substantial possibility," Mr. Bowers must be able to move before trial to exclude any lack-of-remorse evidence that "implicate[s his] constitutional right to remain silent." *United States v. Nguyen*, 928 F. Supp. 1525, 1542 (D. Kan. 1996). He cannot do so, however, unless he has notice of the specific actions and statements the government intends to introduce to establish lack of remorse. The government should therefore be required to produce an informative outline on this aggravating factor. *See, e.g.*, *Kaczynski*, 1997 WL 34626785, at *20; *United States v. Diaz*, No. CR 05-00167, 2007 WL 196752, at *7 (N.D. Cal. Jan. 23,

2007) (ordering the government to "detail the specific 'statements and actions' it intends to use to support the 'lack of remorse'" factor).

### e. Injury to surviving victims

The final non-statutory aggravating factor in the NOI alleges that Mr. Bowers caused the following:

> [S]erious physical and emotional injury, including maiming, disfigurement, permanent disability, severe psychological impacts, and grievous economic hardship to individuals who survived the offense, to include: l) physically injured civilian survivors, D.L. and A.W.; 2) otherwise injured civilian survivors, C.8., D.D., J.C., L.F., A.G., M.G., J.M., J.P., D.R.2, A.S., J.S., S.W., and B.W.; 3) physically injured law enforcement survivors, A.B., T.M., D.M., J.P. and M.S.; and 4) otherwise injured law enforcement survivors, J.C., J.G., J.H., A.M., J.R., M.S.2, and C.T.

(ECF No. 86 at 4–5.)

The allegation is broad, lacks detail, and consequently fails to enable the defense to review, investigate, and challenge the scope of the evidence. The allegation fails to link specific victims with particular injuries, and fails to identify the particular "severe psychological impacts" and "grievous economic hardship" allegedly suffered. This "injury to surviving victims" aggravating factor is another form of victim impact evidence, discussed above, which, by its nature, risks overwhelming a jury. It is a sensitive and emotionally fraught aggravator, and this Court's review of the facts the government intends to rely upon is essential to protecting Mr. Bowers' Eighth Amendment rights.

The Court should order the government to submit an informative outline specifying the nature, extent, and scope of the serious physical injury, serious emotional injury,

and/or grievous economic hardship suffered by each individual.

## II.      Conclusion

To protect Mr. Bowers' Fifth, Sixth, and Eighth Amendment rights and to ensure that this Court can properly perform its gatekeeping role, the Court should order the government to produce an informative outline detailing the facts that establish the aggravating factors it has alleged.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender