IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|    -vs- | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS, | ) | |
| | ) | |
|    Defendant. | ) | |

AMBROSE, Senior District Judge

## OPINION AND ORDER

### Synopsis

The Defendant moves to strike the death penalty on the grounds that the Federal Death Penalty Act ("FDPA") is unconstitutional under the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002) and the Fifth and Eighth Amendments. The Government counters that numerous courts have considered and rejected similar arguments. The Court has reviewed the Defendant's Motion and the Government's Response. *See* ECF Docket Nos. 163 and 183. For the reasons set forth below, the Motion is denied.

### Opinion

The Defendant challenges the constitutionality of the FDPA. He contends that, although the Constitution requires that the elements of capital murder be presented to a grand jury and charged in an indictment, the FDPA does not allow for this. He does not dispute that all of the relevant statutory aggravating factors *actually were* alleged in the indictment in accordance with *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002). Rather, he insists, the FDPA is unconstitutional because it *does not require* that those factors be presented to the grand jury or alleged in the indictment. He avers that the FDPA

1

explicitly reserves the selection and notice of the aggravating factors necessary for a capital offense to the exclusive discretion of the prosecution. Relying on the Supreme Court's decision in *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209 (1968), he further contends that neither the Government nor the Court can fix this constitutional defect by allowing for the process of submitting the elements to a grand jury. The Defendant urges that such action would run afoul of the separation of powers and non-delegation doctrine. In the alternative, he argues that even if the FDPA is constitutional, the Government did not obtain an indictment consistent with the Fifth Amendment.

The Defendant's primary argument is premised upon the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428 (2002). In *Ring*, the Court considered Arizona's death penalty statute. The statute provided that, after a jury determined a defendant to be guilty of first-degree murder, the trial judge alone assessed the applicability of the aggravating factors required for the imposition of the death penalty. In ruling the statute unconstitutional, the Court explained that the statutory aggravating factors operated as "the functional equivalent of an element of a greater offense" and, therefore, the Sixth Amendment required that they be found by a jury. *Ring,* 536 U.S. at 609 (*quoting, Apprendi v. New Jersey,* 530 U.S. 466, 494 n.19 (2000). The Court reasoned that "[c]apital defendants, no less than noncapital defendants … are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589.

Because the *Ring* case arose in the context of a state statute, the Fifth Amendment's Indictment Clause was not at issue. Consequently, the Supreme Court did not address any grand jury and indictment implications. Nevertheless, courts have

understood the *Ring* decision to require that statutory aggravating factors be presented to a grand jury and charged in the indictment. *See United States v. Allen*, 406 F.3d 940, 942-43 (8th Cir. 2005); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); and *United States v. Jackson*, 327 F.3d 273, 286-87 (4th Cir. 2003). The Government concedes as much. *See* ECF Docket No. 183, at 5.

Relying on *Ring*, the Defendant urges that the FDPA is unconstitutional because the statutory scheme grants the prosecutor the authority to determine the aggravating factors and does not require or expressly permit the grand jury to consider such factors. In considering this argument, I start with the premise that statutes enacted by Congress are presumed to be constitutional. *See INS v. Chadha*, 462 U.S. 919, 944, 103 S. Ct. 2764 (1983). Consequently, the Defendant bears the burden of proving that the FDPA is unconstitutional. *See Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 121 S. Ct. 1446 (2001).

The Defendant has not discharged this burden. He has not identified a single case holding that the FDPA is unconstitutional. Further, courts have uniformly rejected his contention. See *U.S. v. Sampson*, 486 F.3d 13, 21 (1st Cir. 2007) ("The FDPA does not, as Sampson suggests, grant to prosecutors exclusive authority for determining the likely existence of aggravating factors. No provision of the FDPA prohibits a grand jury from considering those factors necessary for imposition of a death sentence. The statute simply is silent with respect to the function of the grand jury. It thus is not rendered facially unconstitutional by *Ring*."); *United States v. Allen*, 406 F.3d 940, 949 (8th Cir. 2005) ("[The defendant] argues that the Act is unconstitutional after *Ring* because it directs the government to charge aggravating factors and the requisite mental state in a notice of

intent to seek the death penalty rather than in an indictment. We disagree. While it is true that the FDPA directs the government to charge these factors in a notice of intent to seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment. This is the practice that the Department of Justice has adopted after *Ring*, and it preserves the constitutionality of FDPA prosecutions."); *United States v. LeCroy*, 441 F.3d 914, 921 (11th Cir. 2006) ("Every circuit court of appeals which has addressed this argument has rejected it. We agree with our sister circuits. The major flaw in LeCroy's argument is that nothing in the Act forbids, or is inconsistent with, prosecutors' taking the additional step of including the statutory factors in the indictment and submitting same to the grand jury. Indeed, a statute will seldom expressly provide for submitting elements of an offense to the grand jury. It is simply well-established law – the background against which statutes are enacted – which indicates that elements of a crime should be submitted to the grand jury."); *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004) ("Although Robinson is correct to point out that nothing in the FDPA requires prosecutors to charge aggravating factors in an indictment, he fails to note that there is nothing in that law inhibiting such a charge. The government can easily comply with both its constitutional obligations (by first going to the grand jury) and its statutory obligations (by later filing a § 3593(a) notice of intention to seek the death penalty). As a result, the statute is not facially unconstitutional."); *United States v. Barnette*, 390 F.3d 775, 789 (4th Cir. 2004), *vacated on other grounds by* 546 U.S. 803, 126 S. Ct. 92 (2005) ("One flaw in Barnette's reasoning is the assumption that the Federal Death Penalty Act precludes the grand jury from charging aggravating factors

4

in the indictment. A review of the statute itself reveals no language that restricts the government from submitting aggravating factors to the grand jury.").

The Defendant urges that each of these decisions is flawed because it fails to address the Supreme Court's caution against judicially amending a statute, as announced in *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209 (1968). In *Jackson*, the Court found the death penalty provision of the Federal Kidnapping Act to be unconstitutional. *Jackson*, 390 U.S. at 572. The Act allowed for the death penalty only in those cases where the defendant exercised his/her right to a jury trial. Those defendants who entered a guilty plea or consented to a bench trial avoided a death sentence. The government urged that the court could "cure" the constitutional defects via a number of alternative constructions of the statute. The Court declined, noting that:

> [i]t is one thing to fill a minor gap in a statute – to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statue from a charge of unconstitutionality.

*Id.* at 580.

I reject the Defendant's contention that the *Jackson* decision is analogous to the situation here or that this case presents a separation of powers issue. I note that the Defendant has not cited to a single court so finding. "Unlike the Supreme Court in *Jackson*, this case does not require the Court to 'create from whole cloth a complex and completely novel procedure.' In fact, there is no new 'procedure' that the Court must graft onto the FDPA." *United States v. Mills*, 393 F.Supp.3d 650, 662 (E.D. Mich. 2019). I find persuasive the many courts that have rejected similar arguments. *See United States v. Sampson*, 486 F.3d 13, 22 (1st Cir. 2007) (distinguishing *Jackson* and finding that "the

rule against massive judicial rewriting of statutes simply is not implicated" with respect to the FDPA); *United States v. Con-Ui*, Crim. No. 13-123, 2016 WL 9331115, at * 9-10 (M.D. Pa. January 28, 2016) (following the *Sampson* court's reasoning in distinguishing *Jackson*); *United States v. Williams*, Crim. No. 8-70, 2013 WL 1335599, at * 12 (M.D. Pa. Mar. 29, 2013) ("[T]he Court is not persuaded by the Defendant's reliance on *Jackson*"); *United States v. McCluskey*, Crim. No. 10-2734, 2012 WL 13076173, at * 5 (D.N.M. Sept. 24, 2012) ("*Jackson* presents an entirely different scenario, and its reasoning is inapplicable to this case"); and *United States v. Diaz*, Crim. No. 5-167, 2007 WL 656831, at * 5 (N.D. Cal. Feb. 28, 2007).

Because this Court finds that the FDPA does not prohibit statutory aggravating factors from being included in an indictment, this Court is not judicially amending a statute. As such, the Defendant's "non-delegation" argument is unpersuasive. *See e.g., United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003) (the FDPA "does not delegate a legislative function to the prosecutor") and *Mills*, 393 F. Supp.3d at 662 ("neither the non-delegation doctrine nor the separation-of-powers doctrine is implicated here"). Further, because the FDPA is not unconstitutional, the Court need not entertain the Defendant's contentions regarding severability or constitutional avoidance.

The Defendant urges, in the alternative, that, if the FDPA is constitutional, the indictment violates the Fifth Amendment. He reasons that the grand jury should have been informed of the sentencing consequences of its "Special Findings." I disagree. "The role of the grand jury is not to find or recommend a sentence of punishment or even to consider such, but rather to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary." *Con-Ui*, 2016 WL

9331115, at *13; *see also* United States v. Haynes, 269 F. Supp.2d 970, 981 (W.D. Tenn. 2003) ("The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual," rather it is to make an "independent factual determination of the existence of probable cause for the essential elements of the charged offense") (*citations omitted*). Consequently, "[p]rosecutors are not required to inform a grand jury that the decision to return 'special findings' as to aggravating factors will make a defendant eligible for capital punishment." United States v. Green, Crim. No. 6-19, 2008 WL 4000902, at *6 (W.D. Ky. Aug. 26, 2008); *see also* *United States v. Mills*, 393 F. Supp.3d at 665 ("The Fifth Amendment does not require the Government to inform the grand jury of the potential punishment arising out of the grand jury's special findings") and United States v. Troya, Crim. No., 6-80171, 2008 WL 4327004, at *8 (S.D. Fla. Sept. 22, 2008) ("The case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the special findings").

Nor do I find support for the Defendant's contention that the grand jury should have weighed the sentencing factors under § 3593(e). *See* ECF Docket No. 163, at 38-39. He has not identified a single case endorsing such an approach. I find persuasive the Eighth Circuit's observation in United States v. Purkey, 428 F.3d 738, 750 (8th Cir. 2005) that:

> it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a 'consideration,' 18 U.S.C. § 3593, - that is, the lens through which the [petit] jury must focus the facts that it has found to produce an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence."

*Purkey*, 428 F.3d at 750 (*quoting Tuilaepa v. California*, 512 U.S. 967, 972 (1994)); *see also Con-Ui*, 2016 WL 9331115, at *13 (*citing Purkey*, and stating, "the grand jury does not weigh the factors, the trial jury in the sentencing phase does") and *Williams*, 2013 WL 1335599, at *16 (*citing Purkey* with approval, stating that "the Government fulfilled its obligation to include statutory aggravating factors in the indictment and was not required to present evidence of mitigating factors or require the grand jury to engage in the weighing process mandated by 18 U.S.C. § 3593(e)").

     Finally, the Defendant cites to the decision rendered in *United States v. Green*, 372 F.Supp.2d 168 (D. Mass. 2005), in support of his contention that non-statutory aggravating factors must be pled in the indictment. Because they were not included in the indictment here, he insists that the death notice must be dismissed. Again, this argument has been considered and rejected. *See Con-Ui*, 2016 WL 9331115, at *13-14 (rejecting the defendant's citation to *Green*, stating "[p]roof of the nonstatutory aggravating factors are not required under the FDPA to find a defendant eligible for the death penalty, but are only considered after a defendant has been deemed death eligible are the aggravating and mitigating factors weighed to determine whether the death penalty will be imposed. Therefore, nonstatutory factors do not increase the maximum penalty to which a defendant may be subjected.") (*citing United States v. LeCroy*, 441 F.3d 914, 922 (11th Cir. 2006) ("We hold that nonstatutory aggravating factors need not be included in the indictment. Nonstatutory factors are considered only after a defendant has been rendered death-eligible by a finding – from both the grand and petit juries – of the normal elements of the crime (including *mens rea*) and at least one statutory aggravating factor. Nonstatutory factors do not operate to increase the potential punishment of a

defendant….") and *Williams*, 2013 WL 1335599, at *16 (rejecting the defendant's argument under *Green*, noting that "[n]o appellate court … has held that non-statutory aggravating factors must be set forth in the indictment").

Based on the sound approach taken by these courts, which I adopt, the Defendant's Motion (ECF No. 163) is denied.

Date: April 6, 2020

BY THE COURT:

*Donetta F. Ambrose*

_____
Donetta W. Ambrose
United States Senior District Judge