IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| -vs- | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

**MEMORANDUM ORDER OF COURT**

Pending before the court is the Defendant's Motion to Strike the Death Penalty as a Sentence Option on the Ground that it is Unconstitutional as Administered under the Federal Death Penalty Act ("FDPA"). (ECF No. 164). The Defendant has filed a Brief and Exhibits in Support thereof. (ECF Nos. 165, 166). The Government has filed a Response, and the Defendant has filed a Reply and Supplement . (ECF Nos. 184, 199, 213). The Motion is now ripe for review.

On January 29, 2019, the Superseding Indictment charged the Defendant with multiple capital-eligible and non-capital offenses. (ECF No. 44). On August 26, 2019, the Government filed its Notice of Intent to Seek the Death Penalty. (ECF No. 86). The Superseding Indictment alleges defendant's age, the statutory threshold factors in 18 U.S.C. §3591(a)(2), and four statutory aggravating factors: 1) grave risk of death to additional person, 18 U.S.C. §3592(c)(5); 2) substantial planning and premeditation, 18 U.S.C. §3592(c)(9); 3) vulnerable victims, 18 U.S.C. §3592(c)(11); and 4) multiple killings or attempted killings, 18 U.S.C. §3592(c)(16). Additionally, the Government alleges five non-statutory aggravating factors: 1) victim impact; 2) killings motivated by religious animus; 3) selection of site; 4) lack of remorse; and 5) injury to surviving victims.

The Defendant moves this Court to strike the death penalty as a sentencing option under the FDPA on the ground that it constitutes cruel and unusual punishment prohibited by the Fifth and Eighth Amendments. (ECF Nos. 164, 165). To that end, the Defendant asserts that the death penalty, as a sentencing option, is marked by four constitutional violations on its face: 1) it

1

is demonstrably unreliable; 2) it is imposed arbitrarily and capriciously; 3) its imposition is marked by invidious racial disparity in bias against people of color accused of homicide and persons accused of killing white women; and 4) unconscionably long delays dilute the death penalty's penological purpose and subject death row inmates to torturous terms of solitary confinement for decades.  The Defendant's arguments are cogent and thoroughly briefed.  He raises important issues. After careful review, however, I find I am unpersuaded by the same.

To begin with, I am not swayed by the Defendant's argument that the death penalty is unreliable because an innocent person might be sentenced to death, jurors are unable to understand and apply jury instructions, and death-qualified jurors are more prone to convict.  The Defendant cites to various sources in support of his position.  I find that the reasoning and rationales set forth in the long line of federal cases holding that the death penalty is not unconstitutional under the Eighth Amendment based on the mere possibility that an innocent person might be sentenced to death are sound and adopt the same.  *U.S. v. Honken,* 541 F.3d 1146, 1174 (8th Cir. 2008); *U.S. v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007); *U.S. v. Sampson,* 486 F.3d 13, 27-28 (1st Cir. 2007); *U.S. v. Robinson,* 367 F.3d 278, 290 (5th Cir. 2004); *U.S. v. Arnold*, 412 F. Supp. 3d 732,  739-40 (E.D. Mich. 2019); *U.S. v. Ofomata,* Crim. Action No. 17-201, 2019 WL 527696, at *5-6, No. 18-201 (E.D. La. Feb. 11, 2019).

In terms of jury comprehension, "jury instructions are constitutional where they 'are phrased in conventional and understandable terms,' and do not have a 'reasonable likelihood' of misleading the jury to sentence a defendant to death."  *U.S. v. Roof,* 225 F. Supp.3d 413, 415 (D.S.C. 2016) (citations omitted).  There is an "almost invariable assumption of the law that jurors follow their instructions…." *Richardson v. Marsh,* 481 U.S. 200, 206 (1987); *U.S. v. Llera Plaza,* 179 F. Supp.2d 444, 450 n. 5 (E.D. Pa. 2001) (studies "do not establish that the concepts of aggravating and mitigating factors as used in the FPDA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury

instructions"); *Roof,* 225 F.Supp.3d at 415 n.2 (rejecting claims of juror confusion). I adopt this rationale as it relates to the FDPA.[1]

With regard to the Defendant's argument that death-qualified jurors are more prone to convict, I find Supreme Court cases rejecting similar challenges controlling. *Morgan v. Illinois,* 504 U.S. 719, 728-29 (1992) ("A juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do."); *see also Buchanan v. Kentucky,* 483 U.S. 402 (1987); *Lockhart v. McCree,* 476 U.S. 162 (1986). The selection system affords protections, as a juror who will never vote for capital punishment or a juror who will always vote for capital punishment is not impartial and must be removed for cause. *Id.*

> In *Wainwright v. Witt*, the Supreme Court held that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment ... is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). The Supreme Court later held "that a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Morgan v. Illinois*, 504 U.S. 719, 728, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

*Roof*, 225 F.Supp.3d at 416. Based on the same, I find no merit to this argument.

Moreover, after consideration, I am not persuaded by the Defendant's argument that the federal death penalty is arbitrary because of the lack of frequency with which it is sought or imposed. *See Gregg v. Georgia,* 428 U.S. 153,187 (1976); *Sampson,* 486 F.3d at 23-24; *Mitchell*, 502 F.3d at 983. The fact that the death penalty is rarely sought or imposed does not make the FDPA unconstitutional. *Sampson,* 486 F.3d at 23-24; *Mitchell,* 502 F.3d at 983. The FDPA is a carefully drafted statue with adequate information and guidance such that it is not in jeopardy of being imposed in an arbitrary or capricious manner simply because it is not sought or imposed

---

[1] Counsel will be permitted to submit and object to proposed jury instructions based on the knowledge gained from any of the cited sources at the appropriate time.

frequently. As such, I find the Defendant's argument in this regard does not support a conclusion that the FDPA is unconstitutional.

The Defendant's argument that the FDPA is unconstitutionally arbitrary because its imposition is marked by racial disparity and bias against males and minorities accused of homicide and persons accused of killing white females, also lacks merit. *See McCleskey v. Kemp,* 481 U.S. 279, 314-20 (1987); *Sampson,* 486 F.3d at 26-27.

> The Eighth Amendment is not limited in application to capital punishment, but applies to all penalties. *Solem v. Helm,* 463 U.S. 277, 289–290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983); see *Rummel v. Estelle,* 445 U.S. 263, 293, 100 S.Ct. 1133, 1149, 63 L.Ed.2d 382 (1980) (POWELL, J., dissenting). Thus, if we accepted McCleskey's claim that racial bias has impermissibly tainted the capital sentencing decision, we could soon be faced with similar claims as to other types of penalty. Moreover, the claim that his sentence rests on the irrelevant factor of race easily could be extended to apply to claims based on unexplained discrepancies that correlate to membership in other minority groups, and even to gender. Similarly, since McCleskey's claim relates to the race of his victim, other claims could apply with equally logical force to statistical disparities that correlate with the race or sex of other actors in the criminal justice system, such as defense attorneys, or judges. Also, there is no logical reason that such a claim need be limited to racial or sexual bias. If arbitrary and capricious punishment is the touchstone under the Eighth Amendment, such a claim could—at least in theory—be based upon any arbitrary variable, such as the defendant's facial characteristics, or the physical attractiveness of the defendant or the victim, that some statistical study indicates may be influential in jury decisionmaking. As these examples illustrate, there is no limiting principle to the type of challenge brought by McCleskey. The Constitution does not require that a State eliminate any demonstrable disparity that correlates with a potentially irrelevant factor in order to operate a criminal justice system that includes capital punishment. As we have stated specifically in the context of capital punishment, the Constitution does not "plac[e] totally unrealistic conditions on its use." *Gregg v. Georgia,* 428 U.S., at 199, n. 50, 96 S.Ct., at 2937, n. 50.
>
> Second, McCleskey's arguments are best presented to the legislative bodies. It is not the responsibility—or indeed even the right—of this Court to determine the appropriate punishment for particular crimes. It is the legislatures, the elected representatives of the people, that are "constituted to respond to the will and consequently the moral values of the people." *Furman v. Georgia,* 408 U.S., at 383, 92 S.Ct., at 2800 (Burger, C.J., dissenting). Legislatures also are better qualified to weigh and "evaluate the results of statistical studies in terms of their own local conditions and with a flexibility of approach that is not available to the courts," *Gregg v. Georgia, supra,* 428 U.S., at 186, 96 S.Ct., at 2931.

*McCleskey,* 481 U.S. at 315-19 (footnotes omitted). Furthermore, the Defendant does not argue that his race, the geographic location of this prosecution, or the race or gender of the alleged

4

victims were considerations in the Government's determination to seek the death penalty against him. *United States v. Mills,* 393 F. Supp.3d 650, 681 (E.D. Mich 2019) ("[T]he use of such a generalized statistical disparity, without evidence of its applicability to Defendants, was foreclosed by the Supreme Court in *McCleskey.*").  "[R]aw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants.*" *U.S. v. Bass,* 536 U.S. 862, 864 (emphasis in original).

Additionally, contrary to the Defendant's arguments, prosecutorial discretion is limited by the FDPA and is guided by safeguards set forth in a formal Protocol in selecting cases for capital prosecution.  Justice Manual §§ 9-10.000 to 9-10.200, https://www.justice.gov/jm/jm-9-10000-capital-crime. According to that protocol, "[a]rbitrary or impermissible facts—such as a defendant's race, ethnicity, or religion-will not inform any stage of the decision-making process." J.M. § 9-10.030.  "[B]ias for or against an individual based upon characteristics such as race or ethnic origin play no role in any recommendation or decision as to whether to seek the death penalty." J.M. § 9.10.140A.  Further, the Defendant has failed to show that the Government employed or considered any discriminatory reason for prosecuting him as a capital defendant. As such, I find the Defendant's argument in this regard does not support a conclusion that the FDPA is unconstitutional.

Furthermore, I find that delays in imposing the death penalty and solitary confinement do not render the death penalty unconstitutional.  *Knight v. Florida*, 528 U.S. 990 (1999) (Thomas, J., concurring in denial of certiorari) ("I write only to point out that I am unaware of any support in the American constitutional tradition or in this Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed.").  Delays sought by a defendant to ensure a fair trial do not support a constitutional challenge.  Likewise, the potential for solitary confinement does not support a constitutional challenge.  Such arguments go to the manner of confinement and not whether the death penalty is a cruel and unusual punishment under the Eighth Amendment.

Finally, I find the Defendant's argument that "evolving standards of decency" have rendered the death penalty *per se* cruel and unusual in violation of the Eighth Amendment to be unavailing given that the U.S. Constitution, Amendment V, expressly authorizes the death penalty as a form of punishment and the Supreme Court has repeatedly recognized its constitutionality. *Bucklew v. Precythe,* 139 S. Ct. 1112, 1122 (2019) (holding "[t]he Constitution allows capital punishment"); *Baze v. Rees,* 553 U.S. 35, 47 (2008); *Gregg v. Georgia,* 428 U.S. 153 (1976) (capital punishment is not a *per se* violation of the Eighth Amendment); *Mitchell,* 502 F.3d at 982 (rejecting argument that "capital punishment is incompatible with society's values or otherwise categorically violates the Eighth Amendment"); *Glossip v. Gross,* 135 S. Ct. 2726, 2732 (2015).

Based on the above, I find that the Defendant has failed to meet his burden of establishing that the federal death penalty as a sentencing option is an unconstitutional punishment as administered under the Federal Death Penalty Act.

THEREFORE, this 6th day of April, 2020, it is ordered that the Defendant's Motion to Strike the Death Penalty as a Sentence Option on the Ground that it is Unconstitutional as Administered under the FDPA (ECF No. 164) is denied.[2]

                                            BY THE COURT:

                                            Donetta W. Ambrose
                                            United States Senior District Judge

---

[2] Defendant requests a hearing to resolve conflicts of fact. I find a hearing is not necessary as I do not believe it will not advance the issues at hand. Therefore, Defendant's request is denied.