IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION TO DISMISS COUNTS 23-33, 38-39 AND 52-63 OF THE
INDICTMENT CHARGING THE USE OF A FIREARM IN CONNECTION
WITH A CRIME OF VIOLENCE**

1001 Liberty Avenue
Suite 1500
Pittsburgh, PA 15222
(412) 644-6565

Judy Clarke
Clarke Johnston Thorp & Rice, PC

Michael J. Novara
First Assistant Federal Public Defender

Elisa A. Long
Supervisory Assistant Federal Public
Defender

Attorneys for Defendant,
Robert Bowers

# Table of Contents

I.   An offense only qualifies as a crime of violence under § 924(c) if has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." ............................................................................................................... 2

II.   The categorical approach applies in determining whether an offense is a crime of violence pursuant to § 924(c). ................................................................................... 3

III.   The 924(c) counts must be dismissed because § 249(a)(1) and § 247(a)(2) are not crimes of violence.................................................................................................... 4

    A.   Violent physical force is required. ........................................................... 4
    B.   Force against the person or property of another is required. ................................. 5
    C.   The conduct must be intentional. ............................................................. 6
    D.   Section 249(a)(1) categorically fails to qualify as a crime of violence. ............... 7
    E.   Section 247(a)(2) categorically fails to qualify as a crime of violence. ............... 9

IV.   Section 924(c) is void for vagueness....................................................................... 11

V.   To the extent that each § 924(c) count is not supported by an independent "use of a firearm," it must be dismissed. ....................................................................... 12

VI.   Counts 23 through 33, charging §§ 924(c) and 924(j) and exposing Mr. Bowers to the death penalty, are multiplicitous in violation of double jeopardy principles. ............. 14

VII.   Counts 23 through 33, charging §§ 924(c) and 924(j) and exposing Mr. Bowers to the death penalty, are multiplicitous in violation of, the Eighth Amendment, and the Federal Death Penalty Act. ....................................................................... 15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION TO DISMISS COUNTS 23-33, 38-39 AND 52-63 OF THE INDICTMENT CHARGING THE USE OF A FIREARM IN CONNECTION WITH A CRIME OF VIOLENCE**

Robert Bowers, through undersigned counsel, moves the Court to dismiss the counts of the indictment alleging violations of 18 U.S.C. § 924(c).

Counts 23-33, 38-39, and 52-63 of the superseding indictment charge Mr. Bowers with the use of a firearm in connection with a crime of violence, in violation of 18 USC § 924(c)(1)(A)(i)-(iii). The underlying crimes of violence alleged are hate crimes, 18 USC § 249(a)(1), and religious obstruction, § 247(a)(2). These counts should be dismissed for the following reasons:

- § 249(a)(1) and § 247(a)(2) categorically do not qualify as crimes of violence under applicable law.

- § 924(c) is void for vagueness.

- To the extent that each § 924(c) count is not supported by separate and independent "use of a firearm," the counts must be dismissed.

- Counts 23 through 33, charging §§ 924(c) and 924(j) and exposing Mr. Bowers to the death penalty, are multiplicitous in violation of double jeopardy principles.

1

- Counts 23 through 33 are multiplicitous in violation of the Eighth Amendment and the Federal Death Penalty Act.

I. **An offense only qualifies as a crime of violence under § 924(c) if has "as an element the use, attempted use, or threatened use of physical force against the person or property of another."**

Section 924(c)(1)(A) prohibits any person "who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . . ." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1)(A) sets forth graduated penalties of up to life imprisonment; Section 924(j) provides additional penalties, including death, if, in the course of a violation of 924(c), a person causes the death of another through the use of a firearm.

The relevant portion of § 924(c) defining a "crime of violence" provides:

[T]he term "crime of violence" means an offense that is a felony and –

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The first clause – § 924(c)(3)(A) – is commonly referred to as the force clause. To qualify, an offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The second portion of § 924(c) – § 924(c)(3)(B) – is commonly referred to as the residual clause. The Supreme Court recently held that the residual clause is unconstitutionally vague. *See United States Davis*, 139 S. Ct. 2319, 2336 (2019). Thus,

2

following *Davis*, a conviction for § 249 or § 247 cannot qualify as a "crime of violence" under the now defunct residual clause, § 924(c)(3)(B).

## II.   The categorical approach applies in determining whether an offense is a crime of violence pursuant to § 924(c).

In the process of holding the residual clause of § 924(c) unconstitutionally vague, the Supreme Court in *Davis* reaffirmed that the categorical approach applies to crime-of-violence determinations under the statute.[1] Under the categorical approach, courts focus solely on the elements of the offense of conviction to find whether the offense necessarily requires the use, attempted use, or threatened use of physical force. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). "Elements" are what the jury must find unanimously and "beyond a reasonable doubt to convict the defendant." *Mathis*, 136 S. Ct. at 2248. The categorical approach requires courts to "look only to the statutory definitions – i.e., the elements" of the offense, and "not the particular facts" of the offense. *Descamps v. United States*, 570 U.S. 254, 260 (2013) (internal quotation marks omitted). As the Supreme Court has instructed, the "elements" are "the constituent parts of a crime's legal definition – the things the prosecution must prove to sustain the conviction." *Mathis*, 136 S. Ct. at 2248 (internal quotation marks omitted).

---

[1] *Davis* abrogated the Third Circuit's decision in *United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016), which did not apply the categorical approach in the 18 USC § 924(c) context. The Third Circuit is poised to reverse *Robinson* in the consolidated cases of *Copes* and *United States v. Monroe*, Appeal No. 16-4384.

3

Applying the categorical approach, courts must examine the elements of the offense "to ascertain the least culpable conduct hypothetically necessary to sustain a conviction under the statute." *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016) (internal quotation and citation omitted); *see Moncrieffe v. Holder*, 569 US 184, 190-191 (2013) (least culpable conduct test); *Johnson v. United States*, 559 U.S. 133, 136-37 (2010) (requiring consideration of the "the least of [the] acts" prohibited). A statute does not have force "as an element" if there is "any set of facts" sufficient to support a conviction that does not involve the intentional use of violent physical force. *United States v. Hernandez-Hernandez*, 817 F.3d 207, 211 (5th Cir. 2016).

## III.   The 924(c) counts must be dismissed because § 249(a)(1) and § 247(a)(2) are not crimes of violence.

The 924(c) counts fail to state an offense because the "crime of violence" element cannot be satisfied here. Sections 249(a)(1) and 247(a)(2) do not qualify as "crimes of violence" as a matter of law under § 924(c)'s force clause.

### A.  Violent physical force is required.

In *Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court held that the "force" in the force clause of the Armed Career Criminal Act means "violent force . . . strong physical force . . . capable of causing physical pain or injury to another person." 556 U.S. at 140.[2]  In so holding, the Court indicated *de minimis* force is not violent

---

[2] "Precedent ... requires the application of case law interpreting 'violent felony' in [the] ACCA to 'crime of violence' in [Guideline] § 4B1.2[ ] because of the substantial similarity of the two sections." *United States v. Marrero*, 743 F.3d 389, 395 n.2 (3d Cir.

4

physical force. *United States v. Castleman*, 572 U.S. 157, 165-66 (2014) (citing *Johnson*, 559 U.S. at 140).

The force clause also requires an affirmative act, not injury caused by omission. *United States v. Mayo,* 901 F.3d 218, 227 (3d Cir.2018) (aggravated assault is not a qualifying offense because it could be satisfied by "deliberate failure to provide food or medical care"); *United States v. Scott*, 954 F.3d 74, 84-88 (2d Cir. 2020) (prior conviction for first-degree manslaughter does not qualify as a "violent felony" because the minimum criminal conduct required is an omission, despite a duty to act; an omission does not satisfy the force clause); *United States v. Gomez,* 690 F.3d 194, 201 (4th Cir.2012) (child-abuse statute with "physical injury" element not qualifying offense because it could be violated by "neglecting to act").

### B.  Force against the person or property of another is required.

The force clause's plain language further requires force against the person or property "of another." 18 U.S.C. § 924(c)(3)(A). If applying force to one's own property violates a statute, it does not qualify. Accordingly, the Supreme Court held any arson offense that can be committed by "destruction of one's own property" categorically is not a crime of violence under 18 U.S.C. § 16's identical force clause. *Torres v. Lynch*, 136 S.Ct. 1619, 1630 (2016); *see Tran v. Gonzales,* 414 F.3d 464, 469 (3d Cir. 2005) (state

---

2014). The "crime of violence" definition in USSG § 4B1.2 is identical to the definition in 18 U.S.C. § 924(c).

burning/exploding statute does not categorically fit under § 16(a) force clause, since one element permits "intentionally starting a fire on one's own property or that of another"); *United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018) ("Both parties agree that the first definition, known as the "elements clause," does not apply here because § 844(i) arson does not require, as an element, the use of force against the property "of another"; for example, § 844(i) may apply to a person who destroys his or her own property.")

### C.  The conduct must be intentional.

Finally, the force clause requires intentional use of force. In *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2014), the Supreme Court held the identical force clause in 18 U.S.C. § 16 to require "a higher *mens rea*" than "accidental or negligent conduct." Indeed, it requires that the force be intentionally applied. *See Leocal*, 543 U.S. at 9-10; *see also Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005) (construing identical force clause in 18 U.S.C. § 16(a)).

Following *Leocal*, the Third Circuit, along with most other Courts of Appeals, have held that recklessness is insufficient to satisfy the force clause. *See United States v. Chapman*, 866 F.3d 129, 133 (3d Cir. 2017) (the term "use of physical force" in § 4B1.2(a)(1) "involves the **intentional employment** of something capable of causing physical pain or injury to another person," even though the actor need not directly strike the victim. (emphasis added)); *United States v. Lee*, 612 F.3d 170, 196 (3d Cir. 2010) (holding, in light of language in the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), that "a conviction for mere recklessness cannot constitute a

6

crime of violence" for purposes of a career offender enhancement); *see also See Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005); *Tran v. Gonzales*, 414 F.3d 464, 470– 72 (3d Cir. 2005); *Oyebanji v. Gonzales*, 418 F.3d 260, 264 (3d Cir. 2005).[3]

As set forth below, Section 249(a)(1) can be violated by *de minimis* force or no force, and Section 247(a)(2) can be violated by *de minimis* force or force against one's own property. Although both offenses have a "death results" element, that does not require violent physical force nor does it require a heightened *mens rea*.

### D.  Section 249(a)(1) categorically fails to qualify as a crime of violence.

Section 249(a)(1) is not a crime of violence because it can be committed by *de minimis* force, no force, or unintentional force. Section 249(a)(1) penalizes one who "willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person." If "death results" or the offense "involves an attempt to kill," the maximum penalty is a sentence of death. 18 USC § 249(a)(1)(B).

Section 249(a)(1) has four elements: (i) the defendant willfully causes (ii) bodily injury to any person (iii) because of his or her actual or perceived race, color, or national

---

[3] In *United States v. Santiago*, No. 16-4194, the Third Circuit, sitting *en banc,* is poised to decide whether *United States v. Voisine*, 136 S.Ct. 2272 (2016), abrogated its long-standing precedent that offenses with a *mens rea* of reckless cannot satisfy the force clause. On March 20, 2020, the Third Circuit stayed *Santiago* pending the Supreme Court's resolution of *Borden v. United States*, S.Ct. No. 19-5410.

origin, and (iv) death results. *Cannon,* 750 F.3d at 505. "Bodily injury" includes a cut, an

abrasion, a bruise, or "any other injury to the body, no matter how temporary." 18 U.S.C.

§ 249(c)(1) (cross-referencing 18 USC § 1365(h)(4)). But "a bruise," which can be

caused by mere "squeeze of the arm," does not require violent force. *Castleman*, 572 U.S.

at 165. "Bodily injury" includes unwanted touching that may inflict temporary pain but

does not require violent force. And "bodily injury" could encompass a nurse's removal of

painkiller from a syringe in a hospital because of patient's race. *See United States v.*

*Cunningham*, 103 F.3d 553 (7th Cir. 1996) (discussing the definition of "bodily injury" in

18 U.S.C. § 1365(h)(4)). "Bodily injury" can also be accomplished by omission such as a

physician's failing to provide life-saving medication to a patient because of her religion

or a caregiver's withholding food to a child because of his color. *See, e.g.,*

https://www.health.harvard.edu/blog/racism-discrimination-health-care-providers-

patients-2017011611015 (noting disparities of treatment by health care providers on the

basis of race). These acts (or omissions) do not require any physical force—let alone

violent physical force. *See Mayo*, 901 F.3d at 227; *Gomez*, 690 F.3d at 201; *Scott*, 954

F.3d 84-88.

      The "death results" element of Section 249(a)(1) does not change the result for

two reasons. First, it does not require any particular *mens rea*. *See United States v.*

*Mayhew*, 380 F. Supp.2d 936,  959-60 (S. D. Ohio 2005) (finding that kidnapping

resulting in death was not qualifying offense under force clause); *United States v.*

*Woodlee*, 136 F.3d 1399 (10th Cir. 1998) ("death results" element of 18 U.S.C. § 245(b),

prohibiting violent interference with enjoyment of public facility based on race, does not require intent to kill); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'"). Although Section 249(a)(1) has a "willfulness" *mens rea*, that *mens rea* does not attach to the "death results" element. It only requires intentional infliction of "bodily injury," which as explained above, can be accomplished by *de minimis* force or no force at all. Second, just like "bodily injury," the "death results" element can be satisfied by an omission (like depriving someone of medical care or food) that requires no force.

### E.  Section 247(a)(2) categorically fails to qualify as a crime of violence.

Like 18 U.S.C. § 249(a)(1), § 247(a)(2) penalizes one who "intentionally obstructs, by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so." If "bodily injury results" or "death results," the penalties vary from not more than 20 years to a sentence of death. 18 U.S.C. § 247(d)(1)-(3).

Section 247(a)(2) does not satisfy the force clause because it may be accomplished with (1) *de minimis* force and (2) force against one's own property. The "death results" element of Section 247(a)(2), for the same reasons as the "death results" element in Section 249(a)(1), does not affect this analysis.

First, although the statute criminalizes obstruction "by force or threat of force," "force" is a term of art that includes *de minimis* force. Indeed, legislative

history demonstrates the statute was intended to cover "simple vandalism," including defacing a religious building with graffiti or defacing a religious text. H.R. Rep. No. 99-820 at 1-2 (Sept. 12, 1986); Cong. Rec. at 25349 (Sept. 22, 1986). Thus, Congress intended Section 247(a)(2) to criminalize conduct involving only *de minimis* force.

Second, Section 247(a)(2) criminalizes use of force against one's own property. The statute defines "religious real property" broadly to include "any church, synagogue, mosque, religious cemetery, or other religious real property." 18 U.S.C. §247(f). Like the definition of "property" under the Pennsylvania burning statute and the federal arson statute, the definition of "religious real property" does not require harm to someone else's property. *See Tran,* 414 F.3d at 469; *Salas,* 889 F.3d 681. For example, a defendant violates Section 247(a)(2) if she burns her own cross in front of an African-American church. Or a disillusioned member of a religious group may damage property belonging to the group. *See, e.g., Andrade v. United States*, 116 F.Supp.2d 778, 785 (W.D. Tex. 2000) (members of Branch Davidian religious sect set fire to their own compound); *see also United States v. Miller,* 767 F.3d 585, 589-91 (6th Cir. 2014) (members of Amish community engaged in assaultive conduct against other members of the community). Where such conduct interferes with another's exercise of religion, it would violate Section 247(a)(2), but it does not require force against property of another. Therefore, like the Pennsylvania reckless burning statue at issue in *Tran* and the federal arson

10

statute in *Salas*, Section 247(a)(2) categorically fails to qualify as a crime of violence.

**IV.    Section 924(c) is void for vagueness.**

As noted above, Section 924(c)(1)(A) prohibits any person "who, during and in relation to any crime of violence . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . ." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1)(A) sets forth graduated penalties of up to life imprisonment; Section 924(j) provides additional penalties, including death, if, in the course of a violation of 924(c), a person causes the death of another through the use of a firearm.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). "It is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.' A criminal statute is therefore invalid if it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.' So too, vague sentencing provisions may post constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979) (internal citations omitted).

As then-Circuit Judge Gorsuch, writing for the Tenth Circuit *en banc*, observed, "Few statutes have proven as enigmatic as 18 U.S.C. § 924(c)." *United States v. Rentz*, 777 F.3d 1105, 1106 (10th Cir. 2015). Judge Gorsuch described the language of the

11

statute, punishing "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," as "bramble of prepositional phrases" that has "certainly kept the federal courts busy." *Id*. (quoting 18 U.S.C. § 924(c)).

In *United States v. Diaz*, 592 F.3d 467, 473 (3d Cir. 2010), the Third Circuit concluded that "§ 924(c)'s statutory text may reasonably be susceptible of differing interpretations," describing the statutory language as "ambiguous." Other Circuits have similarly held that the statute is ambiguous. *E.g., United States v. Anderson*, 59 F.3d 1323, 313 U.S. App. D.C. 335 (D.C. Cir. 1995); *United States v. Lindsay*, 985 F.2d 666, 673 (2d Cir. N.Y. 1993); *United States v. Phipps*, 319 F.3d 177, 187-88 (5th Cir. 2003). Given the nearly universal acknowledgement among courts of the statute's ambiguity and susceptibility to differing interpretations, § 924(c) fails to state an offense with "sufficient clarity" and is thus void for vagueness. Accordingly, Mr. Bowers requests that the Court dismiss the counts of the superseding indictment charging him with violations of § 924(c), Counts 23-33, 38-39, and 52-63.

## V.   To the extent that each § 924(c) count is not supported by an independent "use of a firearm," it must be dismissed.

The Third Circuit has determined that, for each separate § 924(c) count, the government must prove a separate "crime of violence" or "drug trafficking crime." *Diaz*, 592 F.3d at 473. In *Diaz*, the parties did not dispute that the government had alleged only one underlying offense to support multiple § 924(c) charges. Thus, the Court in *Diaz* did

not address whether, in addition to proving a separate "crime of violence" or "drug trafficking crime" for each § 924(c) count, the government must **also** prove a separate "use," "carry," or "possession." In other words, *Diaz* did not resolve whether "courts must look **both** at the offense upon which a § 924(c) charge rests **and** § 924(c)'s express language linking a firearm to the predicate offense—the defendant's use, carry, or possession." *United States v. Vichitvongsa*, 819 F.3d 260, 268–69 (6th Cir. 2016); *see United States v. Hodge*, 870 F.3d 184, 197 & n.10 (3d Cir. 2017) ("Regardless of what constitutes the unit of prosecution, Hodge engaged in multiple uses of a firearm to commit multiple crimes . . . .").

Several Courts of Appeals that have addressed this question have held that the government must prove a separate predicate crime for each § 924(c) count as well as a separate "use, "carry" or possession of a firearm. *E.g.*, *Rentz*, 777 F.3d. 1107; *United States v. Vichitvongsa*, 819 F.3d 260, 267 (6th Cir. 2016) ("[I]n each robbery, [the defendant] took **one** affirmative firearm act (brandishing a handgun) while simultaneously committing **two** predicate offenses (conspiring to commit Hobbs Act robbery and to traffic drugs), and this does not support *two* § 924(c) convictions.); *United States v. Jackson*, 918 F.3d 467, 493 (6th Cir. 2019) ("[T]he record supports that Jackson made a single choice to use a firearm. He therefore can only be convicted of a single § 924(c) charge."); *United States v. Cureton*, 739 F.3d 1032, 1043 (7th Cir. 2014) ("Because Cureton only used a firearm once, in the simultaneous commission of two predicate offenses, we agree with him that he may only stand convicted of one violation

13

of § 924(c)."); *United States v. Finley,* 245 F.3d 199, 206–08 (2d Cir.2001); *United States v. Phipps,* 319 F.3d 177, 186–89 (5th Cir.2003);  *United States v. Wilson,* 160 F.3d 732, 748–49 (D.C.Cir.1998).

In Mr. Bowers' case, to the extent that the 25 § 924(c) counts do not allege 25 separate "independent act[s] of using a firearm," those counts are multiplicitious and should be dismissed.

### VI.    Counts 23 through 33, charging §§ 924(c) and 924(j) and exposing Mr. Bowers to the death penalty, are multiplicitous in violation of double jeopardy principles.

Mutiplicity occurs when an indictment charges a single offense in more than one count in the indictment. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Because § 247(a)(2) and § 249(a)(1) do not require proof of any additional facts not proved in § 924(c), the counts are multiplicitous.

Counts 1-11 of the superseding indictment charge Mr. Bowers with eleven counts of religious obstruction, in violation of 18 U.S.C. § 247(a)(2), and Counts 12-22 charge eleven counts of hate crimes, in violation of 18 U.S.C. § 249(a)(1). Counts 23 through 33 charge Mr. Bowers with an offense that includes all of the elements of either § 247(a)(2) or § 249(a)(1), plus additional elements (*i.e*., using or carrying a firearm in furtherance of either § 247(a)(2), as alleged in Counts 1-11, or § 249(a)(1), as alleged in Counts 12-22). As such, the indictment is multiplicitous in violation of double jeopardy principles.

14

However, a multiplicitous indictment does not violate double jeopardy "[w]here Congress intended . . . to impose multiple punishments." *Albernaz v. United States,* 450 U.S. 333, 344 (1981). This Court in *United States v. Berrios*, 676 F.3d 118, 140-144 (3d Cir. 2012), held that Congress intended to impose a consecutive punishment for §924(j) offenses over and above the punishment prescribed for underlying predicates. This is in conflict with the Eleventh Circuit's holding in *United States v. Julian,* 633 F.3d 1250, 1253 (11th Cir. 2011), that a consecutive sentence for a § 924(j) violation is not required. Due to this Circuit split, Mr. Bowers preserves the claim that the multiplicitous indictment violates double jeopardy.

## VII.    Counts 23 through 33, charging §§ 924(c) and 924(j) and exposing Mr. Bowers to the death penalty, are multiplicitous in violation of the Eighth Amendment and the Federal Death Penalty Act.

Independent of double jeopardy principles, exposing Mr. Bowers to multiple punishments for the same act has the potential to render any jury determination of punishment unreliable in violation of the Eighth Amendment and the Federal Death Penalty Act (18 U.S.C. § 3593(c)). The danger of a multiplicitous indictment is that "the repeated assertion of the details of a single course of conduct in multiple counts will prejudice the defendant and confuse the jury by suggesting that not one but several crimes have been committed." *United States v. Hearod*, 499 F.2d 1003, 1005 (5th Cir. 1974). This risk of confusion is especially concerning with respect to evaluation of the critical life-or-death question, because jurors may get the faulty impression that just

15

because there are multiple counts, the crime is worse or the defendant more culpable —

and therefore more deserving of a sentence of death.

"[T]he qualitative difference of death from all other punishment requires a

correspondingly greater degree of scrutiny of the capital sentencing determination."

*California v. Ramos,* 463 U.S. 992, 998-99 (1983). The Eighth Amendment requires an

"individualized determination on the basis of the character of the individual and the

circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879 (1983). Here, the jurors

will have to consider the same "circumstances of the crime" repeatedly in their

deliberations — on Count 1-22 and again in Counts 23-33 — likely concluding that the

offense was more serious because it qualified for 22 death sentences.

Jurors should not weigh duplicate aggravating circumstances if one of those

circumstances "necessarily subsumes" the other. *Cf. Jones v. United States,* 527 U.S. 373,

398 n.13 (1999) (citing *Cooks v. Ward,* 165 F.3d 1283, 1289 (10th Cir. 1989)). In Mr.

Bowers' case, the religious obstruction counts and the hate crimes counts were subsumed

under § 924(j), which required proof of a purported act of violence (religious obstruction

or a hate crime). This is even more prejudicial than double counting duplicate

aggravating circumstances because of the risk of double-counting the charges and the

corresponding aggravating circumstances. This duplication may unfairly tilt the scales

toward a death sentence. *Stringer v. Black*, 503 U.S. 222, 232 (1992).

16

**Conclusion**

For the reasons set forth above, this Court should dismiss Counts 23-33, 38-39, and 52-63 of the superseding indictment. First, because § 249 and § 247 categorically fail to qualify as "crimes of violence" under applicable law, these counts should be dismissed. Second, § 924(c) is void for vagueness. Third, to the extent that each § 924(c) count is not supported by separate and independent "use of a firearm," the counts must be dismissed. Fourth, Counts 23 through 33, charging §§ 924(c) and 924(j) and exposing Mr. Bowers to the death penalty, are multiplicitous in violation of double jeopardy principles. Finally, Counts 23 through 33 are multiplicitous in violation of the Eighth Amendment and the Federal Death Penalty Act.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender

17