IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>)<br>ROBERT BOWERS   ) | Criminal No. 18-292<br>**UNDER SEAL** |

## MOTION TO EXTEND DEADLINE
## FOR FILING MOTION TO CHANGE VENUE

The defendant, Robert Bowers, through counsel, moves this Court to extend the deadline for filing a Motion to Change Venue to a date 60 days after this Court's resolution of the motions to suppress. Mr. Bowers files this request under seal to limit public knowledge of the defense venue investigation, which will include a venue survey in the Western District of Pennsylvania. Public awareness that a party – or the specific party – is sponsoring a venue survey would likely result in biased results.[1]

1. Counsel advised the Court during the June 25, 2020 telephonic status conference that the defense had done preliminary work that indicates it should conduct a venue investigation. A venue investigation involves the collection of media coverage and surveys (telephonic) of a statistically significant sample size to assess potential bias in the

---

[1] *See, e.g., American Society of Trial Consultants Professional Code*, Venue Surveys: Professional Standards, p. 9, section E ("Respondents should not be told that the survey is being conducted in connection with a motion to change venue as that information might result in biased responses.") (https://www.astcweb.org/Resources/Pictures/Venue%2010-08.pdf)

Western District of Pennsylvania, as well as a comparison media collection and survey in one or more alternative venues. Complementing the surveys, the defense would conduct a content analysis of media coverage to identify more precisely the source of any bias identified in the surveys. If, after this investigation, the defense determines that a motion to change venue is warranted, it must obtain a written expert analysis of the survey data and media coverage as support for the motion.

2. Federal Rule of Criminal Procedure 21 governs motions for change of venue in federal criminal cases. *Skilling v. United States*, 561 U.S. 358, 378 n. 11 (2010). Rule 21(a) provides that

> [u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

The venue question is not yet before this Court and may never be, depending on whether Mr. Bowers, based on an investigation and analysis of reliable data, chooses to present the issue to the Court. What Mr. Bowers seeks is an opportunity to investigate and obtain the most reliable and up-to-date data to evaluate the issue.

3. The Supreme Court has recognized that the timing of prejudicial publicity is a significant factor in determining the seriousness and imminence of the threat to a defendant's right to fair trial. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1044 (1991)("A statement which reaches the attention of the venire on the eve of voir dire might require a continuance or cause difficulties in securing a impartial jury," ... while "exposure to the same statement six months prior to trial would not result in prejudice,

the content fading from memory long before the trial date."). *See also Conley v. Chaffinch*, No. 04-1394-GMS, 2005 WL 2678954, at *1 (D. Del. Mar. 4, 2005)(defendants' pretrial motion for an order limiting pretrial publicity denied without prejudice; defendant's concern for the impairment of his right to a fair trial was not warranted "at the present time", "especially true in light of the fact that the court has not yet determined a trial date for this case.")(citing *Gentile*)

4.      In considering a motion for change of venue, the trial court must consider a number of factors, including "'the time frames in which the bulk of the coverage occurred,' including such incidents as the crimes themselves, any arrests, periods encompassing a guilty plea, or periods encompassing an unusual event, such as a jailbreak, and the time of those events relative to the time of trial" *United States v. Johnson*, 354 F. Supp. 2d 939, 982 (N.D. Iowa 2005)(quoting *United States v. Allee*, 299 F.3d 996, 1000 (8th Cir. 2002)).  In *Johnson*, a federal capital case, the district court denied a motion for change of venue made five months advance of trial, but it did so without prejudice, pointing out that

> the court is mindful that pretrial publicity in Johnson's case is on-going; indeed, it is likely that such publicity will intensify as the date for trial approaches. Similarly, the court is mindful that post-trial publicity in [the severed co-defendant's] case may arise between now and the time for Johnson's trial, as the court has post-trial motions pending in that case and cannot predict precisely when a ruling on those motions may issue or some other incident may bring that case back into the public eye. Thus, the court must be vigilant to monitor the drumbeat of publicity to ensure that Johnson can receive a fair trial, either in this or another district.

*Johnson,* 354 F. Supp. 2d at 982.

The court in *Johnson* noted that "the Eighth Circuit Court of Appeals has 'often stated that it is preferable for the trial court to await voir dire before ruling on motions for a change of venue,' because, at that point, 'the trial court has the information necessary to conduct the due process analysis.'" *Id*. at 986 (quoting *United States v. Green*, 983 F.2d 100, 102 (8th Cir.1992)) (citing cases). Nevertheless, the *Johnson* court rejected this approach, ruling that "[t]his court, however, suggests that waiting until voir dire to rule on any motion to change venue can be unduly wasteful of the resources of the parties, impose upon potential jurors, and ultimately delay a trial." *Id*. at 986. The court continued that "there are interim measures that can be taken to determine whether the court can, indeed, presume the kind of prejudice, at the first tier of the analysis, that requires transfer of this case to a different district, before voir dire even begins." *Id*.

The first interim measure the court considered is relevant to the present motion, as it involved the defendant's proposal to conduct a public opinion survey. The court "agree[d] that, had Johnson raised the issue of a poll months ago, and had such a poll been authorized to start soon after the verdicts in [the co-defendant's] case, so that it included the impact of that case, a poll might have been appropriate." *Id*. at 987. This is precisely what Mr. Bowers seeks here: to conduct a public opinion survey sufficiently in advance of trial, but also at a time most likely to capture the intensified pretrial publicity that will ensure as the case moves closer to trial.[2]

---

[2] The second interim measure considered and adopted in *Johnson* was the court's own proposal to use special jury questionnaires to access the effects of pretrial publicity throughout the district. Under this proposal, "the court and the parties should submit questionnaires to 600 potential jurors in the Eastern Division of the Northern District of

Allowing a later filing of the motion for change of venue is in the best interests of justice and of judicial efficiency. Any motion for change of venue filed at the present time, based on a jury survey conducted in August, will necessarily exclude from consideration the impact of any prejudicial publicity that will occur between August and the date of trial. As in *Johnson*, "pretrial publicity in [this] case is on-going; indeed, it is likely that such publicity will intensify as the date for trial approaches." As a result, this Court will not be able to definitively resolve any motion for change of venue until much closer to the time of trial. *See United States v. Matusiewicz*, No. 13-CR-00083, 2015 WL 1069340, at *2 (D. Del. Mar. 10, 2015), aff'd sub nom. *United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018)(renewed motion to transfer based on new prejudicial publicity properly raised the issue of "whether there is a change of circumstance because of media coverage since the earlier motions to transfer were denied" and required that the court

---

Iowa (including the Cedar Rapids, Waterloo, and Dubuque subdivisions), where Cedar Rapids is the likely place for an intradistrict transfer of the trial, and questionnaires to another 600 potential jurors in the Western Division of the Northern District of Iowa, where this is the division in which trial is currently set. The purpose of such questionnaires would be to determine the extent, if any, to which potential jurors have actually formed strong or fixed opinions about Johnson's case. Based on the jurors' responses, the court would reconsider Johnson's motion for a change of venue based on more complete information about what potential jurors actually know and think about the case." *Id*. at 987.

This approach is not relevant here, where a defense motion filed 60 days after the court's suppression decision provides sufficient time for a public opinion survey to be conducted prior to the filing of any motion for change of venue and at a time closer to trial.

"take into account the effect of publicity since [the earlier] order denying transfer, and assess that cumulatively with media attention focused on this case when that order was entered.")

5.   As set forth in the attached declaration of Steven Penrod, Ph.D., to accurately measure the effects of pretrial publicity occurring up to the point of the start of voir dire, public opinion surveys should be conducted close in time to the commencement of trial. (Declaration of Dr. Steven Penrod, Ph.D., hereafter "Penrod Declaration," attached as Exhibit A, at ¶ 8).   Such timing increases the reliability of the results by accounting for the possibility of intervening events affecting public opinion and allowing for the effects of accumulating pretrial publicity to be measured (Penrod Declaration ¶ 8, ¶ 9).

6.   This Court has made it clear that this case will proceed with dispatch, but that it does not plan to set a trial date until completion of pre-trial (Rule 12) motions. However, the venue motion Mr. Bowers will be investigating is not a motion challenging "improper venue" under Fed. R. Crim. P. 12(b)(3);[3] rather, it is grounded in the Sixth Amendment and Fed. R. Crim. P. 21, and need not be filed prior to any pretrial motions deadline.

7.   Suppression motions are currently scheduled to be filed October 1, 2020 with responses and replies due November 2 and November 16, 2020. (ECF 247).  The

---

[3] A Rule 12(b)(3)(A)(i) "improper venue" motion seeks dismissal when venue is "wrong" or "improper" in the forum in which it was brought. *See Atlantic Marine Const. Co., Inc. v. U.S. District Court for the Western Dist. of Texas*, 571 U.S. 49, 55 (2013).

government has acknowledged that an evidentiary hearing on the suppression motions will be required (Tr. Status Conf., 6/25/2020, at 13), which will likely generate media coverage. The Court's scheduling also order anticipates that jury records should be provided to the parties by August 3, 2020, with challenges to the jury plan due within 30 days. (*Id*.). Any challenge to the jury plan may also require an evidentiary hearing. Thus, it is anticipated that there will be ongoing litigation of pretrial motions throughout the fall of 2020. The global pandemic and recent surge in COVID cases and deaths in the United States – including in the Pittsburgh area – continues to affect the preparation of the defense, particularly in the areas of mental health and mitigation investigation, as well as many other aspects of the case.

8.   To meet an October 1, 2020 filing deadline, venue surveys would need to be conducted in August 2020 to permit time for analysis and review necessary to a decision whether to seek a change of venue. As Dr. Penrod advises "[i]t is extremely likely that the *Bowers* case will receive additional media attention in coming months, both due to events that might generate press about the case, including potentially being mentioned during the fall election [ ] and the more general increase in publicity we would expect to occur as a trial date approached." (Penrod Declaration ¶ 9). Thus, while surveys conducted in August 2020 would be a reliable baseline indicator of public opinion at that time, they would not capture the effects of intensified publicity that will inevitably be generated as a trial date approaches. If Mr. Bowers is required to file a venue challenge in October, additional investigation that will capture those effects, and another motion addressing venue, will be required as the case proceeds.

## CONCLUSION

For the foregoing reasons, and based on the attached declaration of Dr. Steven Penrod, Ph.D., Mr. Bowers asks that this Court extend the date for filing any Rule 21 motion to change venue to a date 60 days from the Court's resolution of the motions to suppress.


Dated: July 19, 2020                               Respectfully submitted,

                                                   */s/ Judy Clarke*
                                                   Judy Clarke
                                                   Clarke Johnston Thorp & Rice, PC

                                                   */s/ Michael J. Novara*
                                                   Michael J. Novara
                                                   First Assistant Federal Public Defender

                                                   */s/ Elisa A. Long*
                                                   Elisa A. Long
                                                   Supervisory Assistant Federal Public Defender