IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

## MOTION TO RESCHEDULE THE STATUS CONFERENCE
## SCHEDULED FOR AUGUST 24, 2020

Robert Bowers, through undersigned counsel, asks the Court to reschedule the August 24, 2020 status conference to a date within the next 60 to 90 days to address whether COVID-19 continues to impair the ability of the defense to move forward safely and competently with a mental health and life history investigation and its ability to discuss the timing of mental health notices and related procedures in a meaningful way.[1] The defense has previously explained the constitutionally required process it must undertake, as well as the impediments to that process created by COVID-19. (*See* Doc. 196 (setting forth the multi-step process for a constitutionally competent capital investigation); Docs. 227, 243 (detailing the impact of the pandemic on the defense work with mental health experts and the ability of experts to meet with and evaluate Mr.

---

[1] The Court's June 25, 2020 Order advised that "[t]he parties shall be prepared to discuss the timing of mental health notices and related procedures during the August 24, 2020 telephone conference. Deadlines regarding mental health notices shall be set on that date." (Doc. 247.)

1

Bowers); Doc. 264 (noting that the pandemic directly affects the ability of the defense to conduct constitutionally required investigation and that it is disingenuous for government counsel to suggest otherwise).)

The defense diligently continues its work to the extent practicable and safe during the COVID-19 pandemic. The review, analysis, research, drafting, and preparation that the defense team can do without jeopardizing the health and safety of themselves or others – that which does not require in person contact – has been proceeding apace. However, since the last status conference on June 25, 2020, the defense has been unable to move forward with the aspects of the defense case that require face-to-face interaction, including the life history field investigation and the mental health investigation. Given these circumstances, the defense will not be able to discuss in a meaningful way the timing of mental health notices and related procedures on August 24, 2020.[2]

    **I.**    **The defense continues to work diligently on those aspects of the case that may proceed according to the guidance of public health and safety officials.**

    1.    During the pandemic, Mr. Bowers has filed a number of substantial motions and replies to the government's opposition to those motions:

- Motion to Dismiss Counts 23-33, 38-39, and 52-63 of the Indictment Charging the Use of a Firearm in Connection with a Crime of Violence (Doc. 237);

---

[2] To assist the Court, the defense is prepared to provide a factual summary of the status of its mental health investigation, including the specific impediments to that investigation, in an *ex parte* filing.

2

- Motion to Dismiss Counts of the Indictment Charging Offenses Under the Hate Crimes Prevention Act and the Church Arson Act (Doc. 239);

- Motion to Strike Mental State Eligibility and Aggravating Factors from the Notice of Intent To Seek The Death Penalty (Doc. 241); and

- Motion for Reconsideration regarding Order on Motion to Compel Forensic Data and "Case File" Discovery, with an expert affidavit attached (Doc. 244).

2. After consulting with an expert, the defense also filed a Motion to Extend the Venue Challenge Deadline, attaching his expert affidavit to the motion. (Doc. 257.) After full briefing, the Court granted the motion and terminated the deadline, indicating that it would be reset at a later date. (Doc. 271.)

3. During the pandemic, the defense also filed a Motion to Amend the Order Regarding Disclosure of Jury Records (Doc. 231), and three detailed status reports apprising the Court of the progress of the defense work and the impact of COVID-19 on its ability to conduct investigation, including the mental health investigation (Docs. 218, 227, 243).

4. Over the past several months, the defense sent seven letters to the prosecution, most of which seek materials in the government's possession. The government's production of those materials would allow the defense to further its investigation without the need for in person contact, particularly its investigation into forensic matters. The government has, in large part, refused to provide these materials, delaying the preparation of the case, the work of defense experts who will analyze the materials, and the filing of motions challenging the forensic evidence.

3

5. During the pandemic, the defense has retained or continued its work with a number of experts, including those with proficiency in the venue, jury selection, forensic sciences, and mental health fields.

6. The defense has received five additional installments of discovery, which it has reviewed or is currently reviewing, not one of which can be shared safely with Mr. Bowers due to the restrictions in the Protective Order. (Doc. 24.)

7. The defense is awaiting receipt of the Western District of Pennsylvania jury records requested in his December 18, 2019 Motion for Disclosure. The Court granted his request on February 25, 2020 (Doc. 206), but disclosure by the Clerk's Office has been delayed due to the COVID-19 pandemic. (Doc. 247.) The Court has "recognize[d] the Clerk of Court's difficulty in producing such documents given the nature of the pandemic and the teleworking status of its employees." (Doc. 247.)

8. Under the current scheduling order, once the Clerk's Office is able to produce the records, Mr. Bowers will have 30 days to file any motion challenging the jury plan. (Doc. 247.) While awaiting production of the jury data, the defense continues to gather materials and undertake the relevant research to prepare for filing the motion on the schedule currently set by this Court. In this regard, the defense

anticipates filing a motion to compel the production of relevant data from other governmental entities on or by August 24, 2020.[3]

9.  The current briefing schedule also sets October 1, 2020, as the date by which Mr. Bowers must file any motions to suppress. The government has obtained approximately 30 search warrants in this case, beginning in October 2018 and continuing until February 2020. As such, the work of the defense to review each warrant and to research and draft meritorious challenges – work that may proceed without in person contact – is substantial and ongoing. The defense expects to file a number of motions to suppress by the October 1, 2020 deadline.

10. The defense anticipates that the government will oppose each motion to suppress, and Mr. Bowers' replies to the government's responses are due on November 16, 2020.

**II.  Since this Court scheduled the August 24, 2020 status conference, the Western District of Pennsylvania has experienced a resurgence of COVID-19 cases.**

11. After initially seeming to manage the COVID-19 outbreak, Western Pennsylvania experienced a rapid rise in cases during mid-June and into July. On

---

[3] The defense has been notified that a response from a Pennsylvania Open Records Officer to its request for records will be delayed until September 17, 2020. Under ordinary circumstances, the defense would first review the data produced by the Clerk of Court before seeking additional materials; however, to expedite the work, the defense has begun to seek materials from other entities, as well as draft a motion to compel the production of data from those entities requiring a court order.

5

June 30, for the first time, Allegheny County recorded over 100 new cases. Two days later, the daily count rose above 200.[4] The Director of the Allegheny County Department of Public Health noted the "sudden and sustained increase in cases beginning June 22nd . . . ."[5] Establishments were permitted to open, but then forced to close or significantly limit operations, due to the surge.[6]

12. From late June until the filing of this motion, there were 7,287 new cases, 503 hospitalizations, and 92 deaths in Allegheny County.[7] As summer ends, the

---

[4] Ryan Deto, "Allegheny County assistant district attorney dies of COVID after alleging that coronavirus protocols were too lenient," *Pittsburgh City Paper*, Aug. 12, 2020, https://www.pghcitypaper.com/pittsburgh/allegheny-county-assistant-district-attorney-dies-of-covid-after-alleging-that-coronavirus-protocols-were-too-lenient/Content?oid=17807195; Campbell Robertson and Sarah Mervosh, "Pittsburgh Seemed Like a Success Story. Now Cases are Surging," *The New York Times*, July 12, 2020, https://www.nytimes.com/2020/07/12/us/coronavirus-pittsburgh-pennsylvania.html

[5] Allegheny County Department of Public Health, *Order of the Director of the Allegheny County Health Department to Help Prevent the Spread of COVID-19*, July 17, 2020, https://www.alleghenycounty.us/uploadedFiles/Allegheny_Home/Health_Department/Resources/COVID-19/Docs/071720_Order%20of%20the%20Director%20of%20ACHD%20to%20Help%20Prevent%20the%20Spread%20of%20COVID-19.pdf

[6] Campbell Robertson and Sarah Mervosh, *supra* n.4.

[7] Allegheny County Department of Public Health, Allegheny County COVID-19 Information, https://tableau.alleghenycounty.us/t/PublicSite/views/AlleghenyCountyCOVID-19Information_15912788131180/Cases?iframeSizedToWindow=true&%3Aembed=y&%3AshowAppBanner=false&%3Adisplay_count=no&%3AshowVizHome=no&%3Aorigin=viz_share_link.

beginning of flu season poses an increasing risk for a resurgence in cases and a flood of illnesses that could again overwhelm health providers.[8]

13. The courthouse remains in phase one of a four phase plan for the federal judiciary. In order to move from phase one to phase two, there must be a sustained downward trend of cumulative daily COVID-19 case counts over a 14-day period.[9] As recently as August 13, 2020, Allegheny County experienced an increase in the daily number of cases.[10]

14. On June 25, 2020, the Chief Judge of the United States District Court for the Western District of Pennsylvania issued an order renewing its findings and extending its order of March 30, 2020 for another 90 days, or until September 23, 2020. *Renewed Findings of the Chief Judge and Renewed Administrative Order*

---

[8] Kyle Mullins, "An autumn overlap of COVID-19 and influenza could be deadly, experts warn," *Pittsburgh Post-Gazette*, Apr. 29, 2020, https://www.post-gazette.com/news/health/2020/04/29/autumn-confluence-overlap-COVID-19-pandemic-influenza-flu-deadly-warnings-health/stories/202004290087; Rachel Treisman, "CDC Director Warns This Fall Could Be The Worst Ever For Public Health," *National Public Radio*, Aug. 13, 2020, https://www.npr.org/sections/coronavirus-live-updates/2020/08/13/902388083/cdc-director-warns-this-fall-could-be-the-worst-ever-for-public-health
[9] Administrative Office of the United States Courts, *Federal Judiciary COVID-19 Recovery Guidelines,* May 7, 2020, https://www.uscourts.gov/news/2020/07/02/coronavirus-covid-19-response-and-recovery.
[10] https://tableau.alleghenycounty.us/t/PublicSite/views/AlleghenyCountyCOVID-19Information_15912788131180/Cases?iframeSizedToWindow=true&%3Aembed=y&%3AshowAppBanner=false&%3Adisplay_count=no&%3AshowVizHome=no&%3Aorigin=viz_share_link

*Regarding the Use of Video and Teleconferencing Technology in Certain Criminal Proceedings*, No. 2:20-mc-466-MRH, Doc. 2 (June 25, 2020). The Order renews the finding that in person proceedings cannot occur without "seriously jeopardizing public health and safety." *Id.* at 1-2.

15. The Administrative Order issued by the Chief Judge of the United States District Court for the Western District of Pennsylvania on May 29, 2020 remains in effect until August 27, 2020. The Order recognizes the impact of COVID-19 not only on jury trials, all of which have been continued to at least September 8, 2020, but also on the defense function. *In Re: Administrative Order Concerning Jury Trials and Certain Other Proceedings Relative to COVID-19 Matters*, No. 2:20-mc-00394-MRH, Doc. 12 (May 29, 2020). Specifically, the Administrative Order recognizes the impairment and/or curtailment of the ability of defense counsel to engage in case and field investigations, as well as the limitations on consultation, trial preparation, and the full engagement by the charged individuals in the defense of their case. *Id*. at 2-3. These impediments are magnified in a capital case given the heightened duty of defense counsel to investigate mitigating evidence and to develop a social history sufficient for mental health experts to rely upon in making their assessments. *See Andrus v. Texas*, No. 18-9674, __ U.S.__, 2020 WL 3146872 (June 15, 2020) (per curiam) (defense counsel provided constitutionally deficient performance in failing to investigate mitigating evidence and failing to rebut aggravating evidence).

16. The American College of Trial Lawyers has similarly recognized the adverse impact of the pandemic on the work of the defense:

> The COVID-19 pandemic and the impact of social distancing and other protective measures present serious impediments to the very bedrock of criminal defense: the relationship of trust and candor between attorney and client. The pandemic also presents barriers to counsel's ability to effectively perform many of the tasks required in order to meet professional and constitutional standards, such as the ability to conduct a defense investigation, to prepare for cross-examination of lay and expert witnesses and the ability to prepare and evaluate testimony by the defendant and defense witnesses.

American College of Trial Lawyers, Task Force on Advocacy in the 21st Century, *Constitutional Protections Implicated by the Reopening of Criminal Courts in the Face of the COVID-19 Pandemic, Interim Guidelines*, July 29, 2020.[11]

17. The risks of in person contact have hit close to home. By July 6, 2020, at least six employees at the Allegheny County Courthouse had tested positive, some requiring hospitalization. The Steelworkers Union, which represents employees of the District Attorney's Office and the Public Defender's Office, called for the closure of the Allegheny County Courthouse. Allegheny County District Attorney Russ Broman contracted COVID-19 in late June while working in the courthouse. After

---

[11] Available at: https://www.actl.com/docs/default-source/default-document-library/position-statements-and-white-papers/2020---constitutional-protections-in-reopening-of-criminal-courts-in-the-pandemic.pdf?sfvrsn=cfe61769_6.

efforts to save his life over the past several weeks failed, ADA Broman died a few days ago.[12]

18. Recognizing the dangers posed by COVID-19 and its impact on the work of defense counsel, several federal courts in capital cases have made accommodations. For example, a federal court in California equitably tolled the limitations deadline under 28 U.S.C. § 2244 for the filing of a federal habeas petition in a capital case. *Cowan v. Ronald Davis*, Warden of the California State Prison at San Quentin, No. 1:19-cv-745, ECF 30 (E.D.CA., Aug. 13, 2020). The court explained:

> The COVID-19 pandemic undoubtedly presents an extraordinary circumstance impacting petitioner's right to the assistance of appointed habeas counsel in preparing his federal petition. . . . This court finds the unprecedented and ongoing COVID-19 pandemic may be analyzed accurately and in a non-speculative manner prospectively . . . . Given these established facts and for the reasons explained above, the court concludes petitioner has shown that notwithstanding the continuing exercise of clearly reasonable diligence, the COVID-19 pandemic makes it unlikely and very well impossible that a complete federal habeas petition in this case can be completed and filed prior to the requested, as tolled, deadline [].

*Id*. at 10-11; *see United States v. Smith*, No. 16-cr- 00086-SLG-1, Doc. 806 (D. Alaska, March 24, 2020) (vacating the trial date and jury selection dates in a federal capital case and continuing them to "dates to be determined").

---

[12] Ryan Deto, "Allegheny County assistant district attorney dies of COVID after alleging that coronavirus protocols were too lenient," *supra*.

19. Government counsel's persistent attempts to push the Court to impose deadlines in this case are out of step with federal prosecutors in other districts. For example, in *United States v. Chavez, et al.*, No. 15-0285, ECF 848 (N.D. Cal., June 9, 2020), the government in a federal capital case **stipulated** that "[t]he COVID-19 pandemic has truly changed the landscape of our world. The parties also have concerns about greater difficulties in the Fall if, as medical experts have warned, there is an increase in the spread of COVID-19 when the weather cools, schools reopen, and many more people return to their traditional work environments." In that case, the defense and the government **agreed** that is was appropriate for the Court to continue the July 9, 2021 trial date to May 2, 2022 and to vacate the scheduling order in its entirety. *Id*. The court granted the request. *Id*. at 5.

20. In *United States v. Saipov*, No. 17-cr-722, Doc. 326 (S.D.N.Y. April 30, 2020), another federal capital case, the government **concurred** that a continuance was "necessary in light of the COVID-19 health crisis, and to allow the parties to continue their preparation for trial." The parties subsequently **agreed** that "in light of the COVID-19 pandemic and given the defendant's ongoing preparations for trial," an adjournment until August 17, 2020 was appropriate. *Id*., Doc. 340 (July 16, 2020). The court granted both requests. *Id*. at Docs. 326 & 340.

### III.     Conclusion

Since the last status conference on June 25, 2020, the defense has moved forward in a deliberate and diligent way with those aspects of the case that do not require person-to-person interaction and where administrative offices remain open and able to respond to requests for documents. However, because the life history field investigation and the mental health investigation require in person contact, the defense is unable to have a meaningful discussion on August 24, 2020 regarding the timing of mental health notices and related procedures.

Mr. Bowers respectfully requests that the Court reschedule the status conference to a date within the next 60 to 90 days to address whether COVID-19 continues to impair the ability of the defense to move forward safely and competently with a mental health and life history investigation and its ability to discuss the timing of mental health notices and related procedures.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 18-292 |
| | ) |
| ROBERT BOWERS | ) |

### ORDER OF COURT

Upon consideration of the Motion to Reschedule the Status Conference of August 24, 2020, it is hereby ORDERED that the motion is GRANTED and the status conference of August 24, 2020 is VACATED. The Court will hold a status conference on _____ at _____ to discuss whether COVID-19 continues to impair the ability of the defense to move forward safely and competently with a mental health and life history investigation and its ability to discuss the timing of mental health notices and related procedures.

_____   _____
Date                                            Donetta W. Ambrose
                                                     United States Senior District Judge

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 18-292 |
| | ) |
| ROBERT BOWERS | ) |

## **ORDER OF COURT**

Upon consideration of the Motion to Reschedule the Status Conference of August 24, 2020, it is hereby ORDERED that the motion is GRANTED and the status conference of August 24, 2020 is VACATED. The Court will hold a status conference on _____ at _____ to discuss whether COVID-19 continues to impair the ability of the defense to move forward safely and competently with a mental health and life history investigation and its ability to discuss the timing of mental health notices and related procedures.

_____  _____
Date                                                              Donetta W. Ambrose
                                                                       United States Senior District Judge

13