IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION TO SUPPRESS EVIDENCE SEIZED DURING SEARCHES OF
TARGET RESIDENCE, TARGET P.O. BOX, and TARGET VEHICLE
(MOTION TO SUPPRESS NO. 1)**

Defendant Robert Bowers, through counsel, moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the U.S. Constitution, to suppress evidence seized during three searches of the residence at ██████████████████████████████ ("Target Residence"), one search of ████████████████████████████████████ ████████ ("Target P.O. Box"), and one search of ████████████████████ ████████████████████ ("Target Vehicle"). Government agents obtained search warrants and executed searches in violation of the Fourth Amendment.

The affidavits agents submitted in support of applications for warrants to search failed to establish probable cause that the locations would uncover evidence of criminal activity. Additionally, the search warrants lacked the particularity required under the Fourth Amendment, and agents conducted multiple searches after the warrants expired. For these independent reasons, this Court should suppress the ill-gotten evidence.

1

**BACKGROUND**

Late in the day on October 27, 2018, after taking Mr. Bowers into custody, ██████

████████████████████. Later that same day, █████████████████████████

█████████████████████████████. Exhibits A–C. █████████

███████████████████████████████████████

███████████████████████████████████████

████████████████. Exhibits D–H. In the affidavit, dated the same date as the offense,

the affiant, ██████████, asserted that ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████ Exhibit I at 2, ¶ 6. The affidavit ████████████████████████

████████████████████████████████████

████████████████████████.

The affidavit ████████████████████████████████████

████████████████████████████ Exhibit I at 4, ¶ 15.

███████████████████████████████████████

██████████████████████ *Id.* ████████████████

████████████████████████ *Id.* at 4, ¶ 16. It did not note

how many weapons Mr. Bowers left at the scene or had in his possession at the time of

his arrest but did ████████████████████████████████████



██████████████████████████████████████ *Id.* at 4, ¶ 18. The affidavit ████████

████████████████████████████████████████████████████████

██████████████████████ *Id.* at 5, ¶ 19. But it did not state whether the ATF confirmed whether the firearms belonged to Mr. Bowers or were bought by him, the address listed for the purchaser, the phone number listed for the purchaser, or the address connected to any phone number listed for the purchaser.

The affidavit ████████████████████████████████

████████████████████████████████████ Exhibit I at 3, ¶ 12. It ████████████████████████████████████████

██████████████████████████ *Id.* at 3–4, ¶ 12. It ████████████

████████████████████████████████████████████████████████

██████████████████████████ *Id.* The affidavit further claimed that ████████████

████████████████████████████████████████████████████████

██████████████████████████ *Id.* at 4, ¶ 13. It did not indicate the source of this information or ████████████████████████████████

████████████

Finally, with respect to the shooting incident, the affidavit ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Exhibit I at 5, ¶ 20. The affidavit did not offer any further information or details about

██████████████████████████████ The affiant concluded ████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████ *Id.*

The affidavit additionally ████████████████████████

█████████████████████████████████████████████████

███████ It alleged ██████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████ Exhibit I at 7, ¶ 23(b). The affidavit

did not include any information that █████████████████████████

█████████████████████████████████████████████████

██████████████████

The affidavit listed in separate attachments, which ultimately were attached to the separate warrants, items the government sought to seize. For the Target Residence, the government sought the following:



Exhibit A at 3, § II, ¶ 1. With respect to ██████████████████████

█████████████████████████████████████████████



The affidavit did not limit the seizure to records or information connected to the shooting incident.

For the Target Vehicle and the Target P.O. Box, the affidavit ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit B at 2; Exhibit C at 2–5.

Government agents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Exhibit D at 2. The search warrants authorizing the first search and seizure of evidence at the Target Residence, and the searches and seizures at the Target P.O. Box and Target Vehicle, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ Exhibit A at 1; Exhibit B at 1; Exhibit C at 1.

Government agents obtained a second warrant for the Target Residence, which directed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit J at 1. The third warrant for the Target Residence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit K at 1. Agents searched ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮

**ARGUMENT**

The warrant affidavits for the Target Residence (the first search), Target P.O. Box, and Target Vehicle were deficient in multiple ways.[1] Below, Mr. Bowers challenges the warrant affidavits and warrants on the following grounds: (I) lack of probable cause: (A) the first warrant affidavit for the Target Residence failed to establish probable cause; and (B) the warrant affidavit for the Target P.O. Box failed to establish probable cause; (II) lack of particularity: (A) the warrants lacked particularity because they failed to tie the searches to any specific crimes or criminal behavior; (B) the warrants lacked particularity in authorizing searches of the Target Residence, Target P.O. Box, and Target Vehicle; and (III) multiple searches of ▮▮▮▮▮▮▮▮ contained within the Target Residence and Target Vehicle occurred after the warrants' expirations. For these independent reasons, the fruits of the illegal searches must be suppressed.

**I.    The search warrant affidavit for the Target Residence and Target P.O. Box failed to establish probable cause to search.**

The warrant affidavit failed to establish probable cause that a search of the Target Residence and Target P.O. Box would uncover evidence of a crime. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 96 (2006) (citation omitted). There must exist "a nexus between" the particular place, such as the defendant's home, "and the crime under investigation." *United States v. Stearn*, 597 F.3d

---

[1] The defense challenges the lack of probable cause in the affidavits in support of the second and third warrants to search the Target Residence in a separate motion.

540, 560 (3d Cir. 2010); *see United States v. Zimmerman*, 277 F.3d 426, 431 (3d Cir. 2002) (citation omitted) ("One's home is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed.'").

The government agent preparing the affidavit must "spell out the complete factual basis for a finding of probable cause within the affidavit's four corners." *Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011). Embedded in the question of a nexus between the defendant's home or other private space and criminal activity is a two-part inquiry: whether the items sought are connected with criminal activity; and, if so, whether those items are likely to be found in the defendant's home or other private space. *See United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (internal quotation marks and citations omitted) ("[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'"). The issue here is that the affidavit failed to provide facts to establish probable cause that the items the government sought to seize were connected with criminal activity and, even if so, that those items would be found at Mr. Bowers' residence or P.O. Box.

This Court exercises "plenary review" of the Magistrate's decision to issue a warrant, determining whether the Magistrate "had a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 431 (3d Cir. 2002). The Court "is restricted to viewing only the information confined by the 'four

corners' of the affidavit before the magistrate." *United States v. Burnett*, No. 16-185,

2019 WL 109333, at *2 (W.D. Pa. 2019) (citing *United States v. Whitner*, 219 F.3d 289,

295–96 (3d Cir. 2000)). While "[t]he decision of the magistrate 'should be paid great

deference,' [t]his . . . 'does not mean that reviewing courts should simply rubber stamp a

magistrate's conclusions.'" *Zimmerman*, 277 F.3d at 431 (internal citations omitted).

Below, the defense presents the following challenges to the warrant affidavits for

the Target Residence and Target P.O. Box: (A) the first warrant affidavit for the Target

Residence failed to provide a substantial basis for probable cause to search and seize; and

(B) the warrant affidavit for the Target P.O. Box failed to provide a substantial basis for

probable cause to search and seize.

> **A.** **The affidavit in support of the first warrant to search the Target**
> **Residence failed to establish probable cause to search and seize**
> **the items sought.**

The government sought to search the Target Residence to seize a variety of items.

Specifically, it sought:



Exhibit A at 3, § II, ¶ 1.

The items the government sought to seize fit into the following two categories:

(i) items that the warrant affidavit fails to connect to criminal activity, which include:



(ii) items that the warrant affidavit fails to connect to the Target Residence, which include:

Exhibit A at 3, § 2. Below, the defense discusses each category of evidence the government sought to seize and explains why the warrant affidavit fails to establish a nexus between the specific item and criminal activity or between the specific item and the Target Residence.

(i) **The warrant affidavit fails to establish a nexus between certain items the government sought to seize and criminal activity.**

███████████████████████████████████████████
███████████████████████████████

Electronic devices such as computers and cell phones are much more than devices used to word process, search the internet, or make phone calls: they are portable devices capable of storing an ever-increasing amount of deeply personal data. People are seldom far from their electronic devices, and the devices chronicle every aspect of a person's existence. Computers and cell phones track every website that the owner visited. They can record exactly where the owner was on a particular day, and for how long. They store intimate photographs and videos that the owner has taken. They contain a record of the owner's private communications. In short, computers and cell phones are windows into their owner's entire life.

With scant evidence that Mr. Bowers used a computer or cell phone in connection with criminal activity, agents sought and obtained a warrant to ████████████████████ ██████████████████████████ The warrant was not based on probable cause.

The singular assertion in the warrant affidavit that attempts to link the criminal activity described to electronic devices is the affiant's uncorroborated claim that Mr. Bowers ███████████████████████████████████████████████ ███████████████████████████████████ Exhibit I at 4, ¶ 13. The affiant provides no information about the basis of his claim. He provides no information about the claim's source. Within the four corners of the warrant affidavit, the affiant provides no basis on which the Magistrate could test the reliability of the claim

10

that Mr. Bowers ████████████████████████████████████ He does not

indicate whether he personally observed ████████, whether his expertise suggests

that those who commit these crimes typically ████████, whether he spoke to a

fellow law enforcement agent who observed █████, whether he spoke to an identified

non-law enforcement source whose reliability he attests to, or whether he spoke to an

anonymous source who personally saw █████ and whose reliability the affiant affirms.

The law requires the affiant to attest to the source of his information, and absent the

affiant providing the source, the information lacks the reliability required to form any part

of a probable cause finding. *See Giordenello v. United States*, 357 U.S. 480, 486 (1958)

(affirming complaint lacks probable cause where it "contains no affirmative allegation

that the affiant spoke with personal knowledge of the matters contained therein," "does

not indicate any sources for the complainant's belief," and "does not set forth any other

sufficient basis upon which a finding of probable cause could be made," and "these

deficiencies could not be cured by the Commissioner's reliance upon a presumption that

the complaint was made on the personal knowledge of the complaining officer").

Considering the complete absence of any information about the source of the

affiant's assertion, his assertion is akin to, but even less informative than, the

uncorroborated claim of an unidentified, anonymous informant. Courts require that an

affiant sourcing a claim to an anonymous informant provide further information to

establish the informant's reliability. Did the affiant corroborate the claims by personally

verifying the information? Or does the affiant have experience with the tipster suggesting

reliability in this instance? In what context did any anonymous informant observe the alleged internet posts?

Absent answers to these questions, the Third Circuit recognizes that a claim sourced to an anonymous informant cannot establish probable cause. *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993) (noting "where the information tendered consisted solely of the uncorroborated report of an anonymous informer," probable cause could be found "where a law enforcement officer was able to say that the informant had provided reliable information in other matters" or where "the affidavit offers affirmative evidence that the source of the affiants' information was akin to the proverbial 'disinterested witness' whose reliability has been celebrated through the years in countless closing arguments and jury instructions."). Here, the affidavit provides no "affirmative evidence" that suggests the reliability of the affiant's assertion. Such a barebones claim not only fails to establish probable cause, but also is so lacking in indicia of reliability that an officer cannot in good faith rely on any warrant issued based on such a claim. *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005) ("Where corroboration or independent investigation after receipt of an anonymous tip is lacking—and thus the predictive value of the tip goes untested before a warrant is issued—courts have found officers' subsequent reliance on the warrant unreasonable.").

There was no reliable basis on which the Magistrate could conclude, as the affiant claimed, that Mr. Bowers ███████████████████████████████████ and that therefore Mr. Bowers' ███████████████████████████████████████ ██████████ The affidavit therefore failed to establish probable cause to search the Target

12

Residence for ████████████████████████████████████████████

█████████

████████████████

     The warrant affidavit sought permission for agents to seize ███████████

from the Target Residence. In one instance the affidavit sought permission to seize

████████████████████████████ which the defense challenges below in

section (I)(A)(ii)(a), but in another instance the affidavit sought to seize ████████

████████ Exhibit A at 3, § II, ¶ 1 ████████████████████ Here,

the defense challenges the latter request to seize ████████████████

     The affidavit fails to connect ███████████ to criminal activity. There are

only two sets of ████████████ alleged in the warrant affidavit. First, that Mr.

Bowers ████████████████████████████████████

████████████████████████████████ Exhibit I at 3, ¶ 12.

And, second, that Mr. Bowers ████████████████████████

██████████████████████████████████████████████

Exhibit I at 4, ¶ 13.

     The alleged ██████████████████████ are already captured.

The affiant's statement that Mr. Bowers █████████████████████████

████████████ does not provide probable cause that there are additional

████████████████████████ The only information in the affidavit

that could suggest additional ████████████████████ is the

affiant's allegation that Mr. Bowers ████████████████████████

████████████████████████████████████████████████████

████████ But as noted above in section (I)(A)(i)(a), there was no reliable basis on which

the Magistrate could conclude, as the affiant claimed, that Mr. Bowers ████████████

████████████████████████████ Therefore, the affiant's claim cannot provide

probable cause that there existed ████████████████ related to the offense

conduct. In sum, the affidavit provided no basis to conclude that there existed

████████████ subject to seizure that were connected to criminal activity.

████████████████

Nothing in the affidavit links any ████████ to criminal activity. There is no

mention of Mr. Bowers having called anyone before, during, or after the offense. There is

no mention of any ████████ having been found on his person at the time of his arrest.

There is no mention of any information that any ████████ was in any way connected to

the criminal activity described. Simply put, there is no nexus between any ████████ and

criminal activity. The only tenuous link to a ████████ was the uncorroborated allegation

from an unknown source that Mr. Bowers posted anti-Semitic statements on the internet.

As noted above in section (I)(A)(i)(a), the Third Circuit recognizes that such

uncorroborated claims from unknown sources cannot form the basis for probable cause.

The affidavit provided no basis on which to connect any cell phone to criminal activity.

████████████████

The affidavit fails to provide any basis to conclude that Mr. Bowers' ████████████

████████ were connected to criminal activity. There is no reference in any way to any

████████████ The only reference is to the internet generally: ████████████████

14

████████████████████████████████████████████████████████

███████████ *See United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993); *United States v.*

*Ritter*, 416 F.3d 256, 263 (3d Cir. 2005); *see also* section (I)(A)(i)(a) above (citing cases

and discussing the unreliability of the unsubstantiated claim that ███████████████

███████████████████████. But even if that claim were reliable, it does not in any way

establish that ███████████████████ are in any way relevant to criminal activity. There

are numerous ways that ████████████████████████████████, completely

unconnected with social media accounts. The affiant provides the Magistrate no basis on

which to test the reliability of the claim that Mr. Bowers' ██████████████████ are

connected to criminal activity. Therefore, no probable cause exists to seize such ██████

███████████

███████████████████

       The affidavit does not establish a nexus between the Target Residence and

criminal activity, and therefore there existed no probable cause to seize ████████████

██████████████████ The affidavit includes statements that █████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████ But the affidavit fails to provide

any indication that ████████████████████████████████████████

████████████████████████. Nor does the affidavit suggest that █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

The affidavit provides no factual basis for concluding that Mr. Bowers' ███████ was in any way connected to the criminal activity described. As the Third Circuit in *United States v. Rowland*, 145 F.3d 1194, 1205–06 (3d Cir. 1998), explained, the affidavit must include facts linking the specific residence, as opposed to other locations, to criminal activity:

> In this case, a magistrate could infer from the affidavit that Rowland would be unlikely to view or store the video tapes at his place of employment. A further possible inference was that, after removing the tapes from his workplace, Rowland would take the tapes home to view or store. Rowland's home, however, was but one of an otherwise unlimited possible sites for viewing or storage. The Carr affidavit provided no basis to either limit the possible sites or suggest that Rowland's home was more likely than the otherwise endless possibilities. As a consequence, the possible inference that Rowland would take the tapes home, in and of itself, is insufficient to provide a substantial basis for concluding there was probable cause to believe the contraband would be in Rowland's home at the time the search was to take place. . . . Given the absence of any facts in the affidavit linking the contraband to Rowland's home, the magistrate had no information from which to determine, at the time he issued the warrant, there was probable cause to believe the contraband would be at Rowland's residence when the search was to take place.

Similar to the circumstances described in *Rowland*, here too, there are numerous places where Mr. Bowers may have stored firearms or other accessories to his alleged criminal conduct. *See United States v. Loy*, 191 F.3d 360, 366 (3d Cir. 1999) ("Although it may have been reasonable for the magistrate judge to infer that Loy would not view the videotape at the storage facility, there was no basis for finding that he would view it at his home as opposed to some other location.").

The affidavit provided no basis to conclude that it was more probable that ███ ██████████████, rather than other locations, was the storehouse for criminal activity.

As with the affidavit in *Rowland*, here, there was a complete absence in the affidavit of any facts linking criminal activity to ████████████. There existed no basis to seize ████████████.

      (ii)   **The first warrant affidavit for the Target Residence failed to establish a nexus between certain items the government sought to seize and the Target Residence.**

████████████████████████████████████████████████

The affidavit provided no factual basis to conclude that the Target Residence contained evidence of ████████████████████████████ ████████████████████████ As discussed in section (I)(A)(i)(e) above, the affidavit failed to provide any basis for concluding a nexus between criminal activity and ████████████.

While clearly firearms were used in the criminal activity the affidavit described, the affidavit lacked facts connecting firearms or firearm-related material to the Target Residence. The affiant noted that agents ████████████████████ ████████████████████████████ ████████████████ The affidavit further failed to indicate whether Mr. Bowers ████████████████████ ████████████████████████████ ████████████████ The Magistrate had no facts on

which to infer that ████████████████, as opposed to other locations, would yield evidence related to the firearms used in the criminal activity. *See United States v. Rowland*, 145 F.3d 1194, 1205–06 (3d Cir. 1998); *United States v. Loy*, 191 F.3d 360, 366 (3d Cir. 1999); *see also* section (I)(A)(i)(e) above.

While the Magistrate did not have cause to conclude that ████████████████ contained evidence of firearms or firearms-related material, at least the Magistrate could conclude ██████████████████████████████████ The affidavit provided no basis, however, to even conclude that the criminal activity involved ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████

With respect to ██████████████████████ the affiant baldly asserted, ████████████████████████████████████ ██████████████████████████████ Exhibit I at 5, ¶ 20. No facts described the alleged ██████████████ No facts were alleged that suggested ████████████████████ No source was provided for the claim; nor did the affiant rely on his experience to convey to the Magistrate that based upon his experience, this type of crime typically involved ██████████████████ The Magistrate had no basis on which to test the reliability of the claim that Mr. Bowers████████████████ ████████████

Similarly, the affiant provided no factual basis for the claim that there existed evidence of ████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ While the affiant noted that Mr.

Bowers ███████████████████████████████████████ the unsupported

conclusory assertion, which is even less informative than "the uncorroborated report of

an anonymous informer," does not provide a factual basis for probable cause. *United

States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993); *see* section (I)(A)(i)(a) above. The only

credible claim about motive was the affiant's assertion that Mr. Bowers ████████████

██████████████████████████████████████████████████████████████

████████████████ But the affidavit provided no factual basis to conclude that there

existed any other █████████████████████████████████████████████████████

████████████████████

     At least with firearms, the Magistrate could conclude that the crime involved

firearms. But with respect to evidence of ████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████, the

affidavit failed even to connect those items to the criminal activity described. And,

furthermore, as with ████████████████████████████, the affidavit failed to connect

those items to the Target Residence. The affiant provided the Magistrate with no facts

indicating that evidence of ███████████████████████████████ would be

found at the Target Residence.

     The only claim suggesting that these items would be found at the Target

Residence was the affiant's bald general assertion: ████████████████████████████████

██████████████████████████████████████████

████████████████████████ Exhibit I at 5, ¶ 20. But the affiant's bare assertion is not a basis

for probable cause to search the Target Residence. *See United States v. Kortright*, No. 10

Cr. 937, 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011) (finding no probable cause

to search defendant's residence based on the agent's opinion that it is common for drug

traffickers to store contraband at their residence); *United States v. Guzman*, No. S5 97 CR

786, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (quoting *United States v. Rosario*,

918 F. Supp. 524, 531 (D.R.I. 1996)) ("Permitting 'a search warrant based solely on the

self-avowed expertise of a law enforcement agent, without any other factual nexus to the

subject property, would be an open invitation to vague warrants authorizing virtually

automatic searches of any property used by a criminal suspect.'"); *see also United States

v. Rowland*, 145 F.3d 1194, 1205 n.5 (3d Cir. 1998) ("In arguing the warrant was

supported by probable cause, the government also asserts that a magistrate may consider

an affiant's experience and expertise in making the probable cause determination, and

notes the affidavit in this case described Inspector Carr's training and investigative

experience in the area of child sexual exploitation and child pornography. The affidavit

did not, however, set out any facts suggesting that, based on Carr's experience, there was

reason to believe Rowland would be likely to view or store such materials at his home,

rather than viewing or storing the materials at another location. Therefore, we reject this

argument.").

    The government may argue that the criminal activity itself suggests that ████████████

████████████ would contain evidence of criminality, even absent facts directly linking

criminal activity to the ███████████ But the Third Circuit has found this argument

persuasive only in specific circumstances, circumstances not present in this case. *See,*

*e.g.*, *United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000) ("In the case of drug

dealers, a number of other courts of appeals have held that evidence of involvement in the

drug trade is likely to be found where the dealers reside. . . . The rationale underlying the

foregoing line of cases is that evidence associated with drug dealing needs to be stored

somewhere, and that a dealer will have the opportunity to conceal it in his home.");

*United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) ("Admittedly most of the

information in the affidavit served to link the defendants to the crime in general.

However, this connection in conjunction with the other facts in the affidavit which we

discuss below provided a sufficient link between the defendants' homes and the crime to

allow the magistrate judge to issue the warrants. . . . The affidavit revealed that the crime

involved large amounts of cash and that the defendants had an opportunity (almost two

weeks) to hide the cash in their residences. Both of these factors are important for cash is

the type of loot that criminals seek to hide in secure places like their homes."); *United*

*States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993) ("The normal inferences which can be

drawn from the facts presented in the affidavit could lead a magistrate to reasonably link

the illegal pay-offs made at the various locations to the premises located at 930 Sawmill

Run Blvd. Detective Bosetti's affidavit described in detail that the official permits listed

930 Sawmill Run Blvd. as the address of the owner of the machines which were being

used for illegal gambling."). Here, there is nothing about the nature of the criminal

activity that suggests that evidence associated with the crime would be found at the

██████████████   The criminal activity described is not akin to involvement in the drug

trade; nor is the criminal activity alleged to have involved large amounts of cash that

needed to be hidden over the course of weeks; and nor are there any facts, as in *Conley*,

linking ████████████████ to any of the otherwise legal items, such ████████, used to

commit the crime.

Simply put, there is no factual basis to conclude that the Target Residence contains

████████████████████████████████████████████████████████

████████████████████████████   Therefore, the affidavit failed to establish

probable cause to seize any of those items from the Target Residence.

████████████████████████

Social media accounts exist on the computer server of a company; the evidence of

such accounts may exist on a computer hard drive located within a residence but it is

nonsensical for a warrant affidavit to request authorization, as the affidavit in this case

did, to seize ████████████████ from a residence. On this basis alone, the Court

should find no probable cause to seize ████████████████ from the Target Residence.

To the extent that the warrant affidavit could be read to seek seizure of any evidence of

████████████████████████████ within the Target Residence, as

noted above in section (I)(A)(i)(a), the affidavit failed to provide facts linking ████████

████████ to the criminal activity described. *See also* section (I)(A)(i)(d) above (noting the

affidavit's failure to link ████████████████ generally to criminal activity).

████████████████████

The affidavit sought authorization to seize ███████████████ with no further

specificity provided, from the Target Residence. It did not indicate even generally the

category of █████████████ concerned. Without more specific information, it was

impossible for the Magistrate to test the reliability of the claim that █████████████

were at the Target Residence. *See* section (II)(B) below (discussing lack of particularity

in warrant). To the extent that ███████████████ could be inferred to refer to ██████

███████████████ as noted above in section (I)(A)(ii)(a), the Magistrate had no facts

on which to infer that the Target Residence, as opposed to other locations, would yield

evidence related to the firearms used in the criminal activity. *See United States v.*

*Rowland*, 145 F.3d 1194, 1205–06 (3d Cir. 1998); *United States v. Loy*, 191 F.3d 360,

366 (3d Cir. 1999); *see also see* section (I)(A)(i)(e) above. The affidavit did not provide a

substantial basis to conclude that Mr. Bowers kept any ███████████████████ at

all, let alone at his residence.

**B.      The warrant affidavit for the Target P.O. Box failed to establish probable cause to search.**

With respect to the Target P.O. Box, agents sought to seize the following items,

which were a subset of the items agents sought to seize from the Target Residence:



Exhibit B at 2, § II. The issue here is whether there existed a substantial basis to conclude that these items were connected to criminal activity and, if so, whether there existed a substantial basis to conclude these items would be found at the Target P.O. Box. The latter issue is dispositive, as the affidavit provided absolutely no basis to conclude that any of these items would be found at the Target P.O. Box.

The affidavit in support of the first warrant to search the Target Residence also had been submitted in support of the warrant to search the Target P.O. Box. Agents relied on one affidavit in support of search warrants for both.

In the affidavit, the government offered a single assertion in support of the warrant to search the Target P.O. Box: ███████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████ Exhibit I at 5, ¶ 20. There is absolutely no other reference to the Target P.O. Box in the portion of the affidavit asserting facts related to probable cause. There is no reference to Mr. Bowers ever having visited the UPS Store at any time whatsoever, let alone at any time near to the time of the criminal activity described. There is no reference to any allegation whatsoever concerning the Target P.O. Box. The affiant's single generalized assertion, unsupported by any facts, cannot support probable cause to search and seize items from Mr. Bowers' private P.O. Box. *See United States v. Guzman*, No. S5 97 CR 786, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (quoting *United States v. Rosario*, 918 F. Supp. 524, 531 (D.R.I. 1996)) ("Permitting 'a

search warrant based solely on the self-avowed expertise of a law enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.'"); *see also* section (I)(A)(ii)(a) above. Any evidence seized from the Target P.O. Box must be suppressed.

## II.   The search warrants for the Target Residence, Target Vehicle, and Target P.O. Box failed to satisfy the Fourth Amendment's particularity requirement.

The Fourth Amendment provides that any warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The purpose of the particularity requirement is to prevent "a general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A valid warrant ensures that "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see United States v. Wecht*, 619 F. Supp. 2d 213 (W.D. Pa. 2009) (holding warrant lacked particularity in violation of Fourth Amendment because it failed to specify the subset of files the government was authorized to search and seize).

Here, the search warrants lacked particularity for two reasons: (A) the warrants failed to tie the searches to any crimes or criminal behavior; and (B) the authorization to search and seize certain categories of items lacked particularity—namely

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████ *See* Exhibit A at 3–5, § II, ¶¶ 1, 2(f), 2(i), 2(m), and 2(n); Exhibit B at 2, §

II; and Exhibit C at 3–5, § II, ¶¶ 1, 2(f), 2(i), 2(m), and 2(n). Because the warrants were

general warrants prohibited under the Fourth Amendment, all evidence obtained pursuant

to the warrants must be suppressed. *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d

Cir. 2006) ("[T]he only remedy for a general warrant is to suppress all evidence obtained

thereby.").

> ### A. The search warrants for the Target Residence, Target Vehicle, and Target P.O. Box failed to tie the searches to any crimes and therefore the warrants were unlawful general warrants.

A warrant satisfies the Fourth Amendment's particularity requirement where,

among other things, it identifies the criminal conduct for which a judge found probable

cause. *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) (warrant satisfies

particularity requirement where, among other things, it "specified that agents were

searching for evidence of several specifically enumerated federal crimes"). A warrant

may not permit a search "for any unspecified criminal offense." *Mink v. Knox*, 613 F.3d

995, 1011 (10th Cir. 2010). Rather, the warrant must "tie[] the listed items to [a]

particular crime." *Id*.; *see id*. (holding warrant "clearly invalid under the particularity

clause of the Fourth Amendment" where it failed to identify a specific crime); *United

States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (ruling warrant lacked particularity

where "[n]othing on the face of the warrant tells the searching officers for what crime the

search is being undertaken"); *Andresen v. Maryland*, 427 U.S. 463, 480–81 (1976).

26

Here, the three search warrants for the Target Residence as well as the search warrants for the Target Vehicle and Target P.O. Box all failed to tie the searches and seizures of the items to any specific crime or criminal behavior. There was no mention of any crime or criminal behavior on the face of any of the warrants, or in the attachments incorporated by reference into the warrants. Exhibits A–C, J–K. The fact that the supporting affidavits specified particular crimes and criminal behavior is of no relevance; none of the warrants incorporated by reference the affidavits.

The Fourth Amendment "requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982) (noting that the "recognized exception" to the "general rule . . . that a particularized affidavit cannot be used to cure a general warrant" is "[w]hen a warrant is accompanied by an affidavit that is incorporated by reference"); *Wecht*, 619 F. Supp. 2d at 228 ("Because the Penn Avenue Warrant did not incorporate Agent Orsini's application or supporting affidavit, I must view in isolation its description of items to be seized").

The search warrants for the Target Residence (all three), Target Vehicle, and Target P.O. Box incorporated by reference attachments labeled as Attachments A, B, or C but neither the face of any of the warrants nor Attachments A, B, or C incorporated by reference the affidavits in support of the warrants. And neither the face of any of the warrants nor Attachments A, B, or C described in any way, let alone by reference to statute, the criminal behavior at issue such that there was sufficient particularity to guide the police officers in executing the warrants. Exhibits A–C, J–K. The warrants are

27

prohibited general warrants and all evidence obtained during the execution of searches

pursuant to the warrants must be suppressed. *Yusuf*, 461 F.3d at 393 n.19 ("[T]he only

remedy for a general warrant is to suppress all evidence obtained thereby.").

**B.** **The requests to search and seize**  **lacked the particularity required under the Fourth Amendment, and therefore all evidence obtained as a result of the general warrants must be suppressed.**

The "fundamental problem" with the search warrants for the Target Residence

(first and third warrants), Target Vehicle, and Target P.O. Box were that they "fail[ed] to

make clear" that the items the government "wanted to seize" were only those limited

subset of items, within the larger expanse of items identified, connected to the criminal

behavior alleged. *United States v. Wecht*, 619 F. Supp. 2d 213, 229 (W.D. Pa. 2009). The

warrants at issue lacked direction to the officers executing the warrants and instead

vested them with limitless discretion. *See id*. at 226 ("In determining whether a warrant is

general, courts focus on the level of direction given to the executing officers and the level

of discretion required of them in conducting the search."). Permitting the police to search

for ▮▮▮▮▮▮▮▮ for example, "provided no meaningful guidance which would

have allowed the officers executing the warrant to distinguish those items of evidentiary

value [that is, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮] from those items with no evidentiary value [that is, ▮▮▮▮▮▮

28

██████████████████████████████████████████████████████████████████████ ].” *Id*. at 229.

In *Wecht*, the District Court suppressed evidence, holding that the warrant lacked particularity where it failed to set forth appropriate “limiting criteria.” *Id*. at 230. The defendant in *Wecht* was “a renowned forensic pathologist and former Coroner of Allegheny County.” *Id*. at 217. He had been accused of misusing county resources in service of his private pathology business. Related to the search warrant at issue, he was accused of concealing evidence by moving files reflecting his private autopsy work from the county coroner’s office to his business office. The warrant authorized seizure of “[b]oxes (approximately 20) and contents containing private autopsy files” from the defendant’s business office. *Id*. at 228. The District Court found the warrant “fail[ed] to make clear that the boxes of private autopsy files which the Government wanted to seize were *those which had been removed from the [county coroner’s office]* as an alleged act of concealment of evidence.” *Id*. at 229 (emphasis in original). Those specific boxes containing evidence of criminality were a subset of a multitude of boxes; after all, the District Court noted, the defendant operated a private pathology business office “where one might naturally expect to find an abundance of boxes containing private autopsy files.” *Id*. In other words, the warrant failed to limit the search and seizure to only those items connected with criminal activity and instead left to the discretion of the police officer which boxes to rummage through and seize. *See Yusuf*, 461 F.3d at 395 (warrants sufficiently particular where warrants were “limited” by reference to “several specifically enumerated federal crimes,” “limited in time to evidence” within certain dates, and

"limited to records pertaining to" specifically named corporations, principals, and employees).

There is no difference between the warrant the District Court in *Wecht* held invalid and the warrants at issue in this case. Here, too, in permitting the police to search and seize ███████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████ ████████████ the warrant failed to limit the search and seizure to only those items connected to the criminal behavior described in the affidavit. With respect to the search of ██████████████████████████████████████████ ███████████████████████████████ as noted above in section (II)(A), the warrant failed to tie the search to any specific criminal behavior, so the phrase ██████████ ████████████ did not in any way limit the search and seizure.

As in *Wecht*, "there was nothing unlawful *per se*" about Mr. Bowers' possessing the items the government sought to seize. *Wecht*, 619 F. Supp. 2d at 229. The items "could not be viewed as objects that are, by their very nature, contraband." *Id*. Therefore, "greater precision was required in order to ensure that only those items which could be considered fruits, instrumentalities, or evidence of a crime . . . were targeted for seizure." *Id*. Like the warrant in *Wecht* but unlike the warrant in *Yusuf*, the warrant here did not limit the search and seizure to specific crimes; it did not limit the search and seizure in

time to evidence within certain dates; and it did not limit the search and seizure to any

specifically identified subsets of records. *See Yusuf*, 461 F.3d at 395. Rather, the warrant

vested in police officers the authority to rummage and seize whatever subset of

███████████████████████████████████████████ for example, that

the officer himself determined constituted evidence of a crime. The warrants lacked the

particularity required under the Fourth Amendment because they failed to leave "nothing

. . . to the discretion of the officer executing the warrant[s]." *Marron v. United States*, 275

U.S. 192, 196 (1927).

### III.  Multiple searches of electronic records contained within the Target Residence and Target Vehicle occurred after the warrants' expirations.



During the search of the Target Vehicle, agents ████████████████████

████████ Exhibit F. During searches of the Target Residence, agents ██████████

███████████████████████████ Exhibit D. The search warrant for

the Target Vehicle and the first search warrant for the Target Residence expired on

████████████████ fourteen days from the date the Magistrate signed the warrant on

███████████ The second and third warrants for the Target Residence expired ███

███████ Government agents conducted searches of the electronic evidence seized well

after the warrants expired.

The face of each warrant clearly identified the date that the warrant expired, and

officers executing the warrants must comply with that date. *See Groh v. Ramirez*, 540

U.S. 551, 557 (2004) (discussing in the context of particularity that the "Fourth

Amendment by its terms requires particularity in the warrant, not in the supporting

documents"). The government's flagrant violation of the warrants violated Mr. Bowers'

Fourth Amendment rights. The violations were not a result of mere clerical errors or

inadvertent oversights. *See, e.g.*, *United States v. Wygant*, No. 18-167, 2019 WL 2928925

(W.D. Pa. 2019) (stating "violations of Rule 41 do not necessarily rise to the level of a

constitutional violation" and citing cases discussing one-day delay, three-day delay, and

hours-long delay in executing warrants). The Court should suppress the evidence of

electronic records searched and seized after the warrants' expirations.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender