IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION TO SUPPRESS EVIDENCE OF VEHICLE LOCATION DATA**
**(MOTION TO SUPPRESS NO. 15)**

Defendant Robert Bowers, through counsel, moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the U.S. Constitution, to suppress evidence of the location and movement of Mr. Bowers' vehicle. Government agents obtained this evidence in violation of the Fourth Amendment.

**I.     Introduction**

The government conducted a search of a database containing the location and movement data of Mr. Bowers' vehicle without a warrant. The database contains the date, time, GPS coordinates, and license plate numbers of all vehicles that come within the view of specialized cameras. In *Carpenter v. United States,* 138 S. Ct. 2206 (2018), the Supreme Court concluded that the warrantless search of call detail records to find location information associated with cellphones violated the Fourth Amendment. Because the government's warrantless search of the license plate location database is the equivalent of a warrantless search of historical cell site location data, the location evidence obtained must be suppressed.

1

## II. Relevant Statement of Facts

Automated License Plate Readers, or ALPRs, which "consist[] of high-speed cameras and related equipment mounted on vehicles or in fixed locations that automatically and without direct human control locate, focus on, and photograph license plates and vehicles that come into range of the device," are used by local, state and federal authorities as well as private companies. *See Privacy Impact Assessment for the CBP License Plate Reader Technology* (July 6, 2020) at 1.[1] The license plate number is converted into a computer-readable format and uploaded to a searchable database. *See id.* ALPR systems may also capture a digital image of the license plate, the vehicle's make and model, the state or province of registration, the coordinates of the vehicle, and the date and time of the capture. *Id.* The systems "may also capture (within the image) the environment surrounding a vehicle, which may include drivers and passengers." *Id.* This information is stored in databases and may be converted into reports.

In Allegheny and surrounding counties, there are more than 350 ALPRs operated by the Office of the Allegheny County District Attorney ("District Attorney"). *See* Kira Lerner, With Vast Surveillance Network, Pittsburgh D.A. Has 'Created a Dystopian Reality", The Appeal (Sept. 20, 2019), https://theappeal.org/with-vast-surveillance-network-pittsburgh-d-a-has-created-a-dystopian-reality/ (last visited Sept. 30, 2020). On October 29, 2018, the District Attorney, at the request of the FBI, conducted "a full

---

[1] Available at https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp049a-cbplprtechnology-july2020.pdf (last visited Sept. 30, 2020).

historical query of LPR data from all sites for" the license plate associated with Mr. Bowers' car. Exhibit A.

Ultimately, the District Attorney provided a significant amount of data to the FBI regarding the location and movement of Mr. Bowers' vehicle. The authority by which the FBI obtained this material remains unknown. This includes a photograph of the license plate, and a database output which includes the license plate number, that it was a Pennsylvania plate, the GPS coordinates of the camera, the vehicle's direction of travel, the time of capture, and the vehicle's make, model and color. Moreover, the District Attorney's office provided high quality videos for 36 of these events. Mr. Bowers' license plate was captured on 106 occasions in thirty-three unique locations between June 1 and October 18, 2018. This map shows a location of the cameras at issue:



This information was provided in the absence of a warrant.

### III.   *Carpenter v. United States*

In *Carpenter v. United States,* 138 S. Ct. 2206, 2211 (2018), the Court considered the following question: "[W]hether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." The Court answered the question affirmatively. *Id.* at 2233.

In reaching this conclusion, the Court highlights several fundamental Fourth Amendment "guideposts." 138 S. Ct. at 2214. For instance, it explained, "a central aim of the Framers was 'to place obstacles in the way of a too permeating police surveillance.'" *Id.* (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948)). To this end, "[a]s technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure[ ] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" *Id.* (quoting *Kyllo v. United States*, 533 U.S. 27, 34 (2001)).

The Court determined that given the Fourth Amendment implications, "the acquisition of [] CSLI[2] was a search," and "conclude[d] that the Government must generally obtain a warrant supported by probable cause before acquiring such records." 138 S. Ct. at 2221. The government, however, "acquired the cell-site records pursuant to a court order issued under the [Secured Communications Act], which required the Government to show 'reasonable grounds' for believing that the records were 'relevant

---

[2] "CSLI" is Cell Site Location Information.

and material to an ongoing investigation.'" *Id* (quoting 18 U.S.C. § 2703(d)). And "[t]hat showing [fell] well short of the probable cause required for a warrant." *Id*.

The Court, therefore, held that "an order issued under Section 2703(d) of the Act is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant." 138 S. Ct. at 2221.

The opinion then turned to the dissent's contention "that the warrant requirement simply does not apply when the Government acquires records using compulsory process." 138 S. Ct. at 2221. According to the dissent, "[u]nlike an actual search, [] subpoenas for documents do not involve the direct taking of evidence; they are at most a 'constructive search' conducted by the target of the subpoena." *Id.* at 2252-53. In the dissent's view, "this Court's precedents set forth a categorical rule . . . subjecting subpoenas to lenient scrutiny without regard to the suspect's expectation of privacy in the records." *Id.*

The majority flatly rejected this view: "this Court has never held that the Government *may subpoena third parties for records in which the suspect has a reasonable expectation of privacy*." 138 S. Ct. at 2221 (emphasis added). Indeed, "[i]f the choice to proceed by subpoena provided a categorical limitation on Fourth Amendment protection, no type of record would ever be protected by the warrant requirement." *Id.* at 2222. This was untenable. The Court held a warrant is required "where the suspect has a legitimate privacy interest in records held by a third party." *Id.*

Finally, Carpenter ended with an important reminder: "the Court is obligated—as

5

'[s]ubtler and more far-reaching means of invading privacy have become available to the Government'—to ensure that the 'progress of science' does not erode Fourth Amendment protections. Here the progress of science has afforded law enforcement a powerful new tool to carry out its important responsibilities. At the same time, this tool risks Government encroachment of the sort the Framers, 'after consulting the lessons of history,' drafted the Fourth Amendment to prevent." 138 S. Ct. at 2223 (citations omitted). The Court, therefore, "decline[d] to grant the state unrestricted access to a wireless carrier's database of physical location information." *Id.*

Turning to the specific issues before it, the court focused on the need to protect "a person's expectation of privacy in his physical location[.]" 138 S. Ct. at 2215. That privacy interest, however, had to be reconciled with the Court's "third-party doctrine" – *i.e.*, "that 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" *Id.* at 2216 (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)).

The solution was straightforward. The Court simply declined to extend the third-party doctrine to Cell Site Location Information ("CSLI") records: "the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection. Whether the Government employs its own surveillance technology . . . or leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." 138 S. Ct. at 2217.

Of note, the Court found that that there was a reasonable expectation of privacy in

the CSLI despite the fact that the information was voluntarily provided to a third-party. The Court rejected the government's "primary contention" that, under the third-party doctrine, "cell-site records are fair game because they are 'business records' created and maintained by the wireless carriers." 138 S. Ct. at 2219. This position "fail[ed] to contend with the seismic shifts in digital technology[.]" *Id.* In particular, unlike other information, which "reveal[s] little in the way of 'identifying information,'" "the Government fail[ed] to appreciate that there are no comparable limitations on the revealing nature of CSLI." *Id.*. "The Court has in fact [] *shown special solicitude for location information in the third-party context*." *Id.* (emphasis added).

### IV.  The Warrantless Database Search Violated the Fourth Amendment.

This Court should employ the framework set forth in *Carpenter* and find that the warrantless search of the ALPR database violates the Fourth Amendment. The Court should reach this conclusion because Mr. Bowers' reasonable expectation of privacy in his location and movements is the same reasonable expectation of privacy deemed worthy of protection in *Carpenter*. The search of such data requires a warrant, and therefore the government's warrantless search of the database violated the Fourth Amendment. The appropriate remedy is suppression of the evidence.

### A.  Mr. Bowers Had a Reasonable Expectation of his Privacy in his Location and Movements.

Mr. Bowers had an expectation of privacy in his location and movement data during the five months the state collected and maintained his ALPR data. Driving on public roads does not relinquish a person's Fourth Amendment rights: "[a] person does

not surrender all Fourth Amendment protection by venturing into the public sphere." *Carpenter*, 138 S. Ct. at 2217. Moreover, "individuals have a reasonable expectation of privacy in the whole of their physical movements" because of the "privacies of life" those movements can reveal. *Carpenter*, 138 S. Ct. at 2217 (citing *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring in judgment); *id.* at 415 (Sotomayor, J., concurring)).

As is relevant here, in *Carpenter*, the Court held that a Fourth Amendment search occurs when the government tracks an individual's movements by accessing seven or more days of location data. 138 S. Ct. at 2220. The Court recognized that the expectation of privacy at issue was not about "using a phone," but rather in the record of a person's location and movements revealed by data generated by use of the phone. Here, Mr. Bowers' expectation of privacy was not in individual aspects of his car or its license plate, but in the record of his location and movement data over a five-month period as revealed by ALPR data.

As Justice Alito explained in *Jones*, "[i]n the precomputer age, the greatest protections of privacy were neither constitutional nor statutory, but practical. Traditional surveillance for any extended period of time was difficult and costly and therefore rarely undertaken." 565 U.S. at 429 (Alito, J., concurring in judgment). But technological advancements such as ALPR now allow the government to surveil those who come within their jurisdiction 24 hours a day. And these records are stored, which allows law enforcement to review months and sometimes years' worth of location and movement

data. Because of the volume and amount of data stored and later searched by the government, Mr. Bowers had an expectation of privacy in his location and movements.

### B. The Search of ALPR Database Infringed upon Mr. Bowers' Expectation of Privacy.

In *Carpenter*, the Court discussed the following factors in finding that the use of historical cell site location information implicates the Fourth Amendment: (i) the detailed nature of the data collected, (ii) the indiscriminate nature of the data collection, and (iii) the ability to conduct retrospective searches. ALPR data implicates all of these factors. Moreover, unlike the data at issue in *Carpenter*, the primary purpose of ALPR data is to determine the precise location and movement data of a vehicle at a specific time. This and the other factors provided in *Carpenter* demonstrate that the search of the ALPR database requires a warrant.

First, in *Carpenter*, the Court noted that "like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled." 138 S. Ct. at 2216. The ALPR database searched by the government in this case has these same characteristics. The cameras at issue are on day and night, they record not only the license plates of vehicles, but also people in the vehicles and pedestrians nearby. From there, the system converts the data into a computer readable format that can be searched by law enforcement. Once law enforcement officials type in the license plate, the system returns reports which include the location and direction of travel at a specific date and time. This type of data is more precise and comprehensive that the CSLI data at issue in *Carpenter*.

Second, an equally important factor in *Carpenter* was the recognition that cell phone tracking allows the government to track essentially any person at any time. "[T]his newfound tracking capacity runs against everyone," the Court wrote, and "[o]nly the few without cell phones could escape this tireless and absolute surveillance." 138 S. Ct. at 2218. The same holds true for ALPRs. Here, the District Attorney alone has approximately 350 ALPR cameras situated in Allegheny and surrounding counties. And that does not take into account the thousands of ALPR cameras operated by private companies throughout the United States; companies which allow the government access to their databases.[3] Thus, like cell phone records, ALPR data allows the government to determine the location of movements of everyone who comes within the range of a camera.

Third, in distinguishing CSLI from traditional law enforcement surveillance, the *Carpenter* Court noted "the retrospective quality of the data" which "gives police access to a category of information otherwise unknowable." 138 S. Ct. at 2218. As the Court explained, CSLI is akin to a time machine that allows law enforcement to look at a suspect's past movements, something that would be physically impossible without the aid

---

[3] According to the *Privacy Impact Assessment for the CBP License Plate Reader Technology* at 2, "A number of commercial services collect and aggregate LPR data from both private and public sources and make it available on a fee-for-service basis. Typically, LPR vendors collect license plate image information from private businesses (*e.g.*, parking garages), local governments (*e.g.*, toll booth cameras), law enforcement agencies, and financial institutions via their contracted repossession companies. The LPR commercial aggregator services store, index, and sell access to the images, along with the time and location of the collection. CBP will only have access to images from U.S. based cameras that are part of the commercial aggregator's services." These records are likewise available for other state and federal law enforcement agencies.

of technology: "[i]n the past, attempts to reconstruct a person's movements were limited by a dearth of records and the frailties of recollection. With access to CSLI, the Government can now travel back in time to retrace a person's whereabouts, subject only to the retention polices of the wireless carriers." *Id.* At a minimum, ALPR records provide equivalent capabilities. And with CSLI, at best it indicates that a phone was used by someone, not necessarily who used the phone. ALPR cameras have the ability to capture not only the license plate number but also an image of the driver. Thus, it is more invasive that CSLI.

The *Carpenter* Court concluded that the warrantless review of location data violated Mr. Carpenter's reasonable expectation of privacy. 138 S. Ct. at 2217 to 2218. Here, the government obtained five months' worth of location data without a warrant. As was the case in *Carpenter*, this Court should find that the warrantless review of Mr. Bowers' location and movement data violated his reasonable expectation of privacy.

   **C.** **A search of the ALPR Database Required a Warrant.**

Here, the government searched the ALPR database without a warrant. As was the case in *Carpenter*, the Court concluded that the search of CSLI constituted a search under the Fourth Amendment. 138 S. Ct. 2219 ("Accordingly, when the Government accessed CSLI from the wireless carriers, it invaded Carpenter's reasonable expectation of privacy in the whole of his physical movements."). The same should hold true here: the search of ALPR database should require a warrant as well.

Moreover, warrantless searches "undertaken by law enforcement officials to discover evidence of criminal wrongdoing" are typically unreasonable absent limited and

11

specific exceptions. *Carpenter*, at 2221 (citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995)). None of those exceptions applies here. Accordingly, the search of the ALPR database to determine Mr. Bowers' location and movements violates his reasonable expectation of privacy.

### D. Suppression is the Appropriate Remedy.

This Court should suppress the ALPR data obtained by the government because the search of the database occurred without a warrant. As *Carpenter* explained: "We decline to grant the state unrestricted access to a wireless carrier's database of physical location information. In light of the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection." 138 S. Ct. at 2223. The same should hold true here. Therefore, this Court should find, as did the Court in *Jones*, that the appropriate remedy for the warrantless tracking of vehicles is suppression. 565 U.S. at 413.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender