IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION TO SUPPRESS EVIDENCE SEIZED
DURING SEARCH OF RECORDS FROM MEDICAL RECORDS FACILITIES
IDENTIFIED AS TARGET LOCATION 1 AND TARGET LOCATION 2
(MOTION TO SUPPRESS NO. 14)**

Defendant Robert Bowers, through counsel, moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the U.S. Constitution, to suppress evidence seized during searches of records from Target Location 1 and Target Location 2 associated with Mr. Bowers' 2015 and 2017 medical examination related to the Department of Transportation Commercial Driver's License application and certification. Government agents obtained search warrants in violation of the Fourth Amendment.

The affidavit in support of the warrants failed to establish probable cause. Even if probable cause existed, with respect to the 2017 medical examination, the affidavit relied on illegally obtained evidence and therefore the warrant at least for the records associated with the 2017 medical examination was invalid. Also, both search warrants lacked the particularity required under the Fourth Amendment because they failed to tie the searches to any crime or criminal behavior. For these reasons, this Court should suppress the ill-gotten evidence.

1

## BACKGROUND

On February 10, 2020, the government submitted an affidavit in support of separate warrants to search and seize records from medical records facilities operated by Concentra, a national health care provider. The affidavit described Mr. Bowers' actions on October 27, 2018 at the Tree of Life Synagogue, in which he shot and killed eleven individuals and wounded others. It noted that law enforcement officers heard him make "audible statements indicating an animus towards people of the Jewish faith." Exhibit A at 3, ¶ 8.

The affidavit alleged probable cause to believe that Mr. Bowers committed various federal criminal offenses and that the "elements of these offenses require the United States prove that the defendant acted intentionally and/or willfully and, therefore, the defendant's mental health will be at issue in this prosecution at both the guilt and penalty phases of the case." *Id*. at 2, ¶ 3. The affidavit stated that "the TARGET LOCATIONS have records, more fully described herein and in Attachment B, that are relevant and probative of the defendant's mental health." *Id*.

In the affidavit, the affiant indicated that he photographed two items of evidence, one item was included in a wallet recovered from the Synagogue and the other was a document recovered from the execution of a search warrant for Mr. Bowers' residence. Exhibit A at 3–4, ¶ 11. The items consisted of two medical certificates related to Mr. Bowers' Commercial Driver's License ("CDL"), one medical certificate from 2015 (presumably from the wallet) and one from 2017 (presumably from the documents recovered during the warrant search of the residence). Exhibit A at 4, ¶12. The affiant

stated that "[o]pen source research" revealed that applicants for CDLs must complete a U.S. Department of Transportation medical certification form, "wherein the applicant is asked about his/her medical history, including but not limited to the following questions: a. 'Do you have or have you ever had . . . [a]nxiety, depression, nervousness, other mental health problems'[;] b. 'Have you used an illegal substance within the past two years?'[; and] c. 'Have you ever failed a drug test or been dependent on an illegal substance?'" Exhibit A at 4–5, ¶ 13. The government attached to its affidavit a sample medical certification form. Exhibit A at 7–15.

The affiant indicated that he spoke with a Concentra employee who confirmed that Mr. Bowers was a patient in 2015 and 2017 in connection with obtaining the medical certificates required for his CDL, that Concentra "maintains the 'DOT Long Forms,' which are the forms related to the patients' medical history, which the healthcare provider reviews in conjunction with the patient's visit to obtain his/her medical certification for his/her CDL," and that the records related to Mr. Bowers are located at Target Location 1 and Target Location 2. Exhibit A at 5, ¶¶ 14–18. The records related to the 2017 medical certificate were at Target Location 1. *Id.* at 5, ¶ 18.

On February 10, 2020, the Magistrate issued warrants for Target Location 1 and Target Location 2. *See* Exhibit A at 18–25. The warrants incorporated by reference Attachments A and B. Attachment A provided the addresses for Target Location 1 and Target Location 2. Exhibit A at 20 and 24. Attachment B stated that the "Records and Other Information to be Disclosed" are "[a]ny and all records related to Robert Bowers (DOB: 09/04/1972) pertaining to Bowers' 2015 and 2017 medical examination in

3

accordance with the Department of Transportation Commercial Driver' s License application and certification." Exhibit A at 21 and 25. The warrants did not specify any federal criminal statutes or criminal acts.

## ARGUMENT

The affidavit in support of the search warrants for Target Location 1 and Target Location 2 failed to establish probable cause to search. The affidavit failed to establish a nexus between the items sought and criminal activity. Independent of whether the affidavit established probable cause on the facts alleged, should the Court grant the defense's motion to suppress evidence obtained from Mr. Bowers' residence, the Court must excise from the affidavit here the evidence of the year 2017 medical certificate. Absent that evidence, the affidavit failed to establish probable cause for records associated with the 2017 medical examination at Target Location 1.

Finally, the warrants are invalid because they are prohibited general warrants. The warrants failed to tie the searches to any crime or criminal behavior. For these reasons, the Court should suppress the ill-gotten evidence.

> **I.       The affidavit in support of the search warrants for Target Location 1 and Target Location 2 failed to establish a nexus between the items sought and criminal activity.**

"Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 96 (2006) (citation omitted). There must exist "a nexus between" the particular place "and the crime under investigation." *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010).

The government agent preparing the affidavit must "spell out the complete factual basis for a finding of probable cause within the affidavit's four corners." *Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011). Embedded in the question of a nexus between the defendant's home or other private space and criminal activity is a two-part inquiry: whether the items sought are connected with criminal activity; and, if so, whether those items are likely to be found in the defendant's private space. *See United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (internal quotation marks and citation omitted) ("[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'"). The issue here is that the affidavit failed to provide facts to establish probable cause that the items the government sought to seize were connected with criminal activity.

This Court exercises "plenary review" of the Magistrate's decision to issue a warrant, determining whether the Magistrate "had a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 431 (3d Cir. 2002). The Court "is restricted to viewing only the information confined by the 'four corners' of the affidavit before the magistrate." *United States v. Burnett*, No. 16-185, 2019 WL 109333, at *2 (W.D. Pa. 2019) (citing *United States v. Whitner*, 219 F.3d 289, 295–96 (3d Cir. 2000)). While "[t]he decision of the magistrate 'should be paid great deference,' [t]his . . . 'does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.'" *Zimmerman*, 277 F.3d at 431 (internal citations omitted).

Here, the focal point of the warrant affidavit is its claim that Mr. Bowers' answers in February 2015 and February 2017 to questions about his mental health and drug use when he was filling out a Commercial Driver's License application somehow are relevant to establishing that he acted intentionally or willfully on October 27, 2018 in committing the offenses. Exhibit A at 2, ¶ 3. The Third Circuit instructs that to prove a defendant acted intentionally, the government "must prove beyond a reasonable doubt either that (1) it was (name's) conscious desire or purpose to act in a certain way or to cause a certain result, or that (2) (name) knew that (he) (she) was acting in that way or would be practically certain to cause that result." United States Court of Appeal for the Third Circuit Model Criminal Jury Instruction 5.03 (Apr. 2015). To prove that a defendant acted willfully, the government "must prove beyond a reasonable doubt that (name) knew (his) (her) conduct was unlawful and intended to do something that the law forbids." United States Court of Appeal for the Third Circuit Model Criminal Jury Instruction 5.05 (Apr. 2015).

The government claims that Mr. Bowers' answers to the following questions in February of 2015 and 2017 somehow shed light on whether he acted on October 27, 2018 intentionally or willfully as defined by the Third Circuit:

> a. "Do you have or have you ever had . . . [a]nxiety, depression, nervousness, other mental health problems?"
> b. "Have you used an illegal substance within the past two years?"
> c. "Have you ever failed a drug test or been dependent on an illegal substance?"

Exhibit A at 4–5, ¶ 13.

Any answer to the question regarding specific or general "mental health problems" would not yield evidence proving intent or willfulness on October 27, 2018. Had Mr. Bowers answered affirmatively or negatively, that he did or did not have a mental health problem before 2015 or 2017, it is unclear how that fact would make it more likely that he acted intentionally or willfully on the date of the offense. The government's fishing expedition concerning Mr. Bowers' own assessment of his mental state months and years before the offense is untethered to any legal—or commonsense—understanding of relevance. Any farfetched relevance that the questions may have relate to negating the *mens rea* element—intent or willfulness—rather than establishing that element. *See United States v. Pohlot*, 827 F.2d 889, 905–06 (3d Cir. 1987) ("District courts should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea."). The evidence would be relevant, if at all, only to undermining the government's proffered reason for the warrants. The evidence is not at all relevant to establishing proof of intent or willfulness; it is only relevant, if at all, to negating proof. Consequently, the affidavit failed to establish probable cause that Mr. Bowers' answers in 2015 and 2017 to whether he had mental health problems would yield evidence "in support of establishing the commission" of the offenses. Exhibit A at 6, ¶ 20.

The government also similarly sought to obtain Mr. Bowers' answers to whether he had *ever* failed a drug test or been dependent on an illegal substance. And it sought to obtain his answers to whether he had used an illegal substance in the past two years. These questions are even more flimsily connected to proof of Mr. Bowers' intent or

willfulness to commit the crimes on October 27, 2018. Had Mr. Bowers answered "yes" to both questions, the answers would not yield evidence of proof of his intent or willfulness. Rather, the affirmative answers would be relevant, if at all, to negating proof of those elements, which is the precise opposite of what the affiant proffered as the purpose of the warrants. Had Mr. Bowers answered "no" to both questions, the answers would not yield proof of his intent or willfulness on October 27, 2018. The fact that Mr. Bowers had not used illegal substances from February 2013 through February 2017, or that he had not ever failed a drug test or been dependent on drugs up until those points, does not tend to make it more probable that he acted intentionally or willfully on October 27, 2018. The inference is not supported by fact, law, or commonsense. It is simply absurd and nonsensical to suggest otherwise. It is not a reasonable inference.

In sum, the Magistrate lacked a "substantial basis" for finding that there existed a nexus between Mr. Bowers' answers in February 2015 and February 2017 to questions about mental health and drug use and proof of his intent and willfulness in committing the crimes on October 27, 2018. Mr. Bowers' answers would not tend to make it more probable that he acted intentionally and willfully on October 27, 2018, which was the sole basis of the affidavit in support of probable cause. The Court should suppress the evidence obtained.

    **II.**    **To the extent that probable cause existed, absent illegally obtained evidence, the affidavit failed to establish probable cause for records associated with the 2017 medical examination at Target Location 1.**

The affiant indicated that he photographed two items of evidence, one located inside a wallet recovered from the Synagogue and the other among documents recovered

from the execution of a search warrant for Mr. Bowers' residence. Exhibit A at 3–4, ¶ 11. The items consisted of two medical certificates related to Mr. Bowers' Commercial Driver's License ("CDL"), one medical certificate from 2015 (presumably from the wallet) and one from 2017 (presumably from the documents recovered during the warrant search of the residence). *Id.* at 4, ¶ 12. The affiant sought authority to seize Mr. Bowers' records related to the 2015 and 2017 medical certificates. The records related to the 2017 medical certificate were located at Target Location 1. *Id.* at 5, ¶ 18.

The defense has filed a motion to suppress evidence obtained from Mr. Bowers' residence. *See* Motion to Suppress Evidence Seized During Searches of Target Residence, Target P.O. Box, and Target Vehicle (Motion to Suppress No. 1). Should the Court grant the defense's motion to suppress evidence obtained from Mr. Bowers' residence, the Court must excise from the affidavit here the evidence of the year 2017 medical certificate. *See United States v. Herrold*, 962 F.2d 1131 (3d Cir. 1992). In *Herrold*, in assessing whether an affidavit based partly on an illegal first search established probable cause, the Third Circuit "excise[d] the references to the first entry and the fruits thereof in examining the affidavit upon which the warrant was based to determine if there was probable cause for the warrant." *Herrold*, 962 F.2d at 1138. Absent the evidence of the illegally obtained 2017 medical certificate, the affiant had no reason to question the Concentra employee about Mr. Bowers' 2017 visit and to inquire about records related to that visit. That is, the affiant's access to the 2017 medical certificate is what "prompted" him to ask the Concentra employee about records related

to that certificate. *Id*. at 1144; *see id.* at 1143 ("The critical question in this regard is whether the first search prompted the officers to obtain a warrant . . . .").

The 2017 certificate itself and the affiant's questions to the Concentra employee about it are fruits of the illegal search of Mr. Bowers' residence. After excising the information related to the 2017 medical certificate—both the fact of the certificate and the affiant's questions to the Concentra employee about records related to that certificate and the employee's answers—the affidavit failed to establish probable cause for records associated with the 2017 certificate. The search warrant for Target Location 1 was invalid. The Court should suppress the ill-gotten evidence.

### III. To the extent probable cause existed, the search warrant was overbroad in authorizing a search and seizure of *all* records associated with the 2015 and 2017 medical examination report forms.

In the affidavit, the affiant identified three questions from the medical examination report forms that he claimed were relevant to establishing proof of intent or willfulness. *See* above at 3, 6. He argued that the "elements of the TARGET OFFENSES require the United States prove that the defendant acted intentionally and/or willfully and, therefore, the defendant's mental health will be at issue." Exhibit A at 5–6, ¶ 19. The affiant argued that "the records described herein and in Attachment B will contain information and/or evidence in support of establishing the commission of the TARGET OFFENSES." *Id.* at 6, ¶ 20. The affiant sought authorization to search and seize the totality of the information in the 2015 and 2017 medical examination report forms.

Should the Court determine that there existed probable cause for records from the 2015 and 2017 medical examination report forms, that probable cause extended only to

10

information relevant to establishing proof of intent or willfulness. The affiant defined information relevant to proof of intent or willfulness as information concerning Mr. Bowers' mental health. While the defense argues that none of the information from the medical examination forms was relevant to proof of intent or willfulness, to the extent that the Court rules that information concerning mental health was relevant, the forms contained a multitude of information that had nothing to do with Mr. Bowers' mental health status. *See* Exhibit A at 7–15.

For example, the forms contained information about past surgeries, medications, health history unrelated to mental health, blood pressure, urinalysis, vision, hearing, physical examination questions concerning normality of the body, and other questions entirely unrelated to mental health or any indicia of intent or willfulness. *Id.* Therefore, even if the Court were to find a substantial basis for the Magistrate's decision to authorize a search and seizure of information concerning proof of intent and willfulness, that probable cause did not extend to the totality of information in the 2015 and 2017 medical examination report forms. Should the Court find a substantial basis for probable cause that the evidence of Mr. Bowers' answers to questions about his mental health status and drug use are relevant to proof of his intent and willfulness in committing the charged crimes, the Court still should suppress the evidence of his responses to all other questions on the 2015 and 2017 medical examination report forms.

**IV. The search warrants for Target Location 1 and Target Location 2 failed to satisfy the Fourth Amendment's particularity requirement because they failed to tie the searches to any crime and therefore were unlawful general warrants.**

The Fourth Amendment provides that any warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The purpose of the particularity requirement is to prevent "a general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A valid warrant ensures that "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see United States v. Wecht*, 619 F. Supp. 2d 213 (W.D. Pa. 2009) (holding warrant lacked particularity in violation of Fourth Amendment because it failed to specify the subset of files the government was authorized to search and seize).

A warrant satisfies the Fourth Amendment's particularity requirement where, among other things, it identifies the criminal conduct for which a judge found probable cause. *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) (warrant satisfies particularity requirement where, among other things, it "specified that agents were searching for evidence of several specifically enumerated federal crimes"). A warrant may not permit a search "for any unspecified criminal offense." *Mink v. Knox*, 613 F.3d 995, 1011 (10th Cir. 2010). Rather, the warrant must "tie[] the listed items to [a] particular crime." *Id.*; *see id.* (holding warrant "clearly invalid under the particularity clause of the Fourth Amendment" where it failed to identify a specific crime); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (ruling warrant lacked particularity where "[n]othing on the face of the warrant tells the searching officers for what crime the search is being undertaken"); *Andresen v. Maryland*, 427 U.S. 463, 480–81 (1976).

Here, the search warrants for Target Location 1 and Target Location 2 failed to tie the searches and seizures of the items to any specific crime or criminal behavior. There was no mention of any crime or criminal behavior on the faces of the warrants, or in Attachments A and B incorporated by reference into the warrants. *See* Exhibit A at 18–21 and 22–25. The fact that the supporting affidavit specified particular crimes and criminal behavior is of no relevance; the warrants did not incorporate by reference the affidavit.

The Fourth Amendment "requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982) (noting that the "recognized exception" to the "general rule . . . that a particularized affidavit cannot be used to cure a general warrant" is "[w]hen a warrant is accompanied by an affidavit that is incorporated by reference"); *Wecht*, 619 F. Supp. 2d at 228 ("Because the Penn Avenue Warrant did not incorporate Agent Orsini's application or supporting affidavit, I must view in isolation its description of items to be seized").

The search warrants for Target Location 1 and Target Location 2 incorporated by reference Attachments A and B, but neither the face of the warrants nor Attachments A and B incorporated by reference the affidavit in support of the warrants. And neither the face of the warrants nor Attachments A and B described in any way, let alone by reference to statute, the criminal behavior at issue such that there was sufficient particularity to guide the police officers in executing the warrants. The warrants are prohibited general warrants and all evidence obtained pursuant to the warrants must be

suppressed. *Yusuf*, 461 F.3d at 393 n.19 ("[T]he only remedy for a general warrant is to suppress all evidence obtained thereby.").

                                      Respectfully submitted,

                                      */s/ Judy Clarke*
                                      Judy Clarke
                                      Clarke Johnston Thorp & Rice, PC

                                      */s/ Michael J. Novara*
                                      Michael J. Novara
                                      First Assistant Federal Public Defender

                                      */s/ Elisa A. Long*
                                      Elisa A. Long
                                      Supervisory Assistant Federal Public Defender