IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION TO SUPPRESS EVIDENCE SEIZED DURING SEARCH AND SEIZURE FROM INTERNET SERVICE PROVIDER INFORMATION ASSOCIATED WITH TARGET ACCOUNTS AND TARGET IMEI (MOTION TO SUPPRESS NO. 7)**

Defendant Robert Bowers, through counsel, moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the U.S. Constitution, to suppress evidence seized during the search and seizure from Google of information associated with email accounts ODGPhone@gmail.com and onedingo@gmail.com ("Target Accounts") and the International Mobile Equipment Identity (IMEI) number 35527308f064040 ("Target IMEI"). Government agents obtained a search warrant and executed the search and seizure in violation of the Fourth Amendment.

The affidavit the government submitted in support of the application for a warrant to search and seize failed to establish probable cause that any search and seizure would uncover evidence of criminal activity. Additionally, to the extent that any probable cause existed, the search warrant was overbroad in failing to limit the information seized to that for which there may have existed probable cause.

1

## BACKGROUND

On October 30, 2018, a few days after the shooting at Tree of Life Synagogue, the government submitted an affidavit in support of a warrant to search and seize records from Google. Exhibit B. In the affidavit, the affiant asserted that the affidavit "is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter." *Id.* at 2, ¶ 4. The affidavit described an investigation into Mr. Bowers' alleged conduct in shooting and killing multiple individuals and wounding others at the Tree of Life Synagogue. It sought authorization to search and seize "certain records pertaining to onedingo@gmail.com and ODGPhone@gmail.com ["Target Accounts"] and International Mobile Equipment Identity (IMEI) number 355273083064040 ["Target IMEI"] and related Google services provided by the web-based electronic mail and remote computing service provider known as Google." *Id.* at 3, ¶ 7. The affidavit sought seizure of records for certain date ranges: (i) for the email address ODGPhone@gmail.com, it sought seizure of certain records from August 27, 2018 to October 27, 2018; (ii) for the email address onedingo@gmail.com, it sought seizure of certain records from December 2007 to March 3, 2008; and, (iii) for the Target IMEI, it sought seizure of certain records from August 27, 2018 to October 27, 2018. Exhibit B at 1, ¶ 1; Exhibit A at 4.

The affidavit alleged that during the shooting, Mr. Bowers "made audible statements indicating an animus towards people of the Jewish faith." Exhibit B at 3, ¶ 12. It quoted a statement by Mr. Bowers to law enforcement that "they're committing genocide to my people" and "I just want to kill Jews." Exhibit B at 3–4, ¶ 12. It alleged

that Mr. Bowers "repeated comments regarding genocide, his desire to kill Jewish people, and that Jewish people needed to die." *Id.* The affidavit further claimed that Mr. Bowers "has made numerous anti-Semitic statements on internet posts, indicating that [Mr. Bowers] had access to the internet and/or internet capable devices." *Id.* at 4, ¶ 13. It did not indicate the source of this information or provide any description of statements allegedly made on internet posts.

The affidavit noted "[e]vidence recovered and/or identified by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) at the scene" and described three handguns recovered. Exhibit B at 4, ¶¶ 17–20. It alleged that "[e]arly indications through the investigation are that [Mr. Bowers] engaged in planning and premeditation prior to executing the killings and injury associated with this crime." *Id.* at 4, ¶ 21. The affidavit did not offer any further information or details about alleged planning and premeditation. It noted that "FBI agents determined that a cellular device belonging to BOWERS, a T-Mobile Smartphone, has the International Mobile Equipment Identity (IMEI) number 355273083064040 - the TARGET IMEI." *Id.* at 5, ¶ 23. But it did not indicate what connection, if any, the T-Mobile Smartphone had to the criminal activity described or the crime scene. It noted that agents learned the Target IMEI through a "search warrant [that] was issued on October 28, 2018 for historical cellsite information for cell phone numbers linked to Bowers." *Id.*

The affidavit included information gleaned from interviews of Mr. Bowers' family members. One family member "provided FBI agents with the email address ODGPhone@gmail.com and stated that the email address belonged to and was used by"

3

Mr. Bowers. Exhibit B at 5, ¶ 24. That family member also stated that when Mr. Bowers "was employed as a truck driver, he often utilized ODGPhone@gmail.com to communicate." *Id.* The family members stated that the email address "was synced to" Mr. Bowers' cellular telephone. *Id.* Agents also spoke with Mr. Bowers' mother and step-father, who provided agents "with email addresses R.Bowers@lDingo.com and ODGPhone@gmail.com as email accounts utilized by" Mr. Bowers. *Id.* at 5, ¶ 25. The affidavit noted that agents "conducted open source database checks which exposed a connection between ROBERT BOWERS and 'onedingo,'" including "a Twitter account listed as Robert Bowers @onedingo" and a link between the "email address onedingo@gmail.com" and "a Kiwi Farms forum profile for ROBERT BOWERS." *Id.* at 5–6, ¶ 26. The affidavit included no further information about Mr. Bowers' use of the email addresses.

## ARGUMENT

The evidence must be suppressed for two reasons: first, the affidavit the government submitted in support of the application for a warrant to search and seize failed to establish probable cause that any search and seizure would uncover evidence of criminal activity; and, second, to the extent that any probable cause existed, the search warrant was overbroad in failing to limit the information seized to that for which there may have existed probable cause.

> **I.     The search warrant affidavit for information from Google related to the Target Accounts and Target IMEI failed to establish probable cause to search and seize.**

The warrant affidavit failed to establish probable cause that a search and seizure of records from Google related to the Target Accounts and Target IMEI would uncover evidence of a crime. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 96 (2006) (citation omitted). There must exist "a nexus between" the particular place—the defendant's private space—"and the crime under investigation." *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010).

The government agent preparing the affidavit must "spell out the complete factual basis for a finding of probable cause within the affidavit's four corners." *Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011). Embedded in the question of a nexus between the defendant's private space and criminal activity is a two-part inquiry: whether the items sought are connected with criminal activity; and, if so, whether those items are likely to be found in the defendant's private space. *See United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) ("[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'") (internal quotation marks and citations omitted). The issue here is that the affidavit failed to provide facts to establish probable cause that the items the government sought to seize—that is, information associated with the Target Accounts and Target IMEI—were connected with criminal activity.

5

This Court exercises "plenary review" of the Magistrate's decision to issue a warrant, determining whether the Magistrate "had a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 431 (3d Cir. 2002). The Court "is restricted to viewing only the information confined by the 'four corners' of the affidavit before the magistrate." *United States v. Burnett*, No. 16-185, 2019 WL 109333, at *2 (W.D. Pa. 2019) (citing *United States v. Whitner*, 219 F.3d 289, 295–96 (3d Cir. 2000)). While "[t]he decision of the magistrate 'should be paid great deference, ' [t]his . . . 'does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.'" *Zimmerman*, 277 F.3d at 431 (internal citations omitted).

The warrant affidavit here failed to provide a substantial basis to conclude that evidence of criminality would be found in the Google records associated with the Target Accounts and Target IMEI. No facts provided a substantial basis for connecting the Target Accounts and Target IMEI to criminal behavior.

While the affidavit details Mr. Bowers' alleged acts of killing and injuring multiple individuals at a synagogue, it fails to allege any facts to link the criminal acts to the email addresses or cellular phone with the Target IMEI. Regarding the cellular phone with the Target IMEI, the affidavit fails to note where agents found the phone or how it was used such that it could be connected to the criminal activity. Was it on Mr. Bowers' person at the time of his arrest? Was it found at the crime scene and then later linked to Mr. Bowers? Or was the phone found in another location unrelated to the crime scene? When was the last time Mr. Bowers even used that phone? Did anyone provide any information that Mr. Bowers ever used the phone in any way related to the criminal

behavior described? Answers to one or more of these questions may have served to connect the phone, and therefore the Target IMEI, to the criminal acts at the synagogue. But the complete absence of any answers, and the mere declaration that the phone, at some point in time, belonged to Mr. Bowers, cannot provide a substantial basis for concluding a nexus between the phone, and therefore the Target IMEI, and criminal activity.

The affidavit similarly fails to link the criminal acts to the Target Accounts, the email addresses ODGPhone@gmail.com and onedingo@gmail.com. The affidavit simply provides facts indicating that the email addresses belonged to Mr. Bowers and that he used them. No facts indicated, however, that the email addresses were in any way connected to the criminal acts described. The facts the affiant actually chose to include in the affidavit fail to provide a nexus between the Target Accounts and criminal activity.

The government may suggest that the affiant's following assertions are sufficient to link the Target Accounts and cell phone with Target IMEI to the criminal acts described: the assertions that Mr. Bowers "has made numerous anti-Semitic statements on internet posts, indicating the individual has access to the internet and/or internet capable devices" and that "early indications through the investigation are that [Mr. Bowers] engaged in planning and premeditation prior to executing the killings and injury associated with this crime." But these assertions add little to nothing to connect the criminal behavior described to the Target Accounts and Target IMEI.

In merely asserting that Mr. Bowers "has made numerous anti-Semitic statements on internet posts," the affiant provides no information about the basis of his claim. He provides no information about the claim's source.

Within the four corners of the warrant affidavit, the affiant provides no basis on which the Magistrate could test the reliability of the claim that Mr. Bowers made numerous anti-Semitic statements on internet posts, let alone that any of those postings are connected to the Target Accounts or Target IMEI. He does not indicate whether he personally observed the internet posts, whether his expertise suggests that those who commit these crimes typically post on the internet, whether he spoke to a fellow law enforcement agent who observed the posts, whether he spoke to an identified non-law enforcement source whose reliability he attests to, or whether he spoke to an anonymous source who personally saw the posts and whose reliability the affiant affirms. The law requires the affiant to attest to the source of his information, and absent the affiant providing the source, the information lacks the reliability required to form any part of a probable cause finding. *See Giordenello v. United States*, 357 U.S. 480, 486 (1958) (affirming complaint lacks probable cause where it "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," "does not indicate any sources for the complainant's belief," and "does not set forth any other sufficient basis upon which a finding of probable cause could be made," and "these deficiencies could not be cured by the Commissioner's reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer").

Considering the complete absence of any information about the source of the affiant's assertion, his assertion appears to be akin to, but even less informative than, the uncorroborated claim of an unidentified, anonymous informant. Courts require that an affiant sourcing a claim to an anonymous informant provide further information to establish the informant's reliability. Did the affiant corroborate the claims by personally verifying the information? Or does the affiant have experience with the tipster suggesting reliability in this instance? In what context did any anonymous informant observe the alleged internet posts?

Absent answers to these questions, the Third Circuit recognizes that a claim sourced to an anonymous informant cannot establish probable cause. *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993) (noting "where the information tendered consisted solely of the uncorroborated report of an anonymous informer," probable cause could be found "where a law enforcement officer was able to say that the informant had provided reliable information in other matters" or where "the affidavit offers affirmative evidence that the source of the affiants' information was akin to the proverbial 'disinterested witness' whose reliability has been celebrated through the years in countless closing arguments and jury instructions."). Here, the affidavit provides no "affirmative evidence" that suggests the reliability of the claim. Such a barebones claim not only fails to establish probable cause, but also is so lacking in indicia of reliability that an officer cannot in good faith rely on any warrant issued based on such a claim. *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005) ("Where corroboration or independent investigation after receipt of an anonymous tip is lacking—and thus the predictive value

of the tip goes untested before a warrant is issued—courts have found officers' subsequent reliance on the warrant unreasonable.").

The affidavit here provided even less basis than an anonymous tip that at least connects the item to be searched to criminal activity. Even if the Court were to find a substantial basis for the Magistrate's decision to credit the affiant's assertion that Mr. Bowers posted anti-Semitic statements on the internet, no facts connected the Target Accounts or cell phone with the Target IMEI to those postings. No facts suggested that Mr. Bowers' email addresses are even relevant to social media postings; and, also, no facts suggested that the cell phone with the Target IMEI was the hardware through which Mr. Bowers made the postings. Therefore, the affidavit lacked a substantial basis for concluding that Mr. Bowers used the Target Accounts or cell phone with the Target IMEI in relation to any social media postings connected to the criminal acts described.

The affidavit similarly provided no basis, let alone a substantial basis, to conclude that Mr. Bowers "engaged in planning and premeditation prior to executing the killings and injury associated with this crime." No facts described the alleged "[e]arly indications." No facts were alleged that suggested "planning and premeditation." No source was provided for the claim; nor did the affiant rely on his experience to convey to the Magistrate that based upon his experience, this type of crime typically involved planning and premeditation. The Magistrate had no basis on which to test the reliability of the claim that Mr. Bowers engaged in planning and premeditation. As with evidence of social media postings, even if the Court were to credit the claim that Mr. Bowers engaged in planning and premeditation, no facts suggest that the Target Accounts or the cell phone

10

with the Target IMEI were in any way used in any planning or premeditation; the affidavit utterly failed to provide any facts on which to conclude a nexus between planning and premedication and the Target Accounts or Target IMEI.

In sum, the affidavit failed to provide a substantial basis for finding probable cause that records from Google associated with the Target Accounts and Target IMEI would yield evidence of criminal activity. For this reason, the ill-gotten evidence must be suppressed.

## II. To the extent that the Court finds a substantial basis for the Magistrate's determination of probable cause, the warrant was overbroad in failing to limit the search and seizure to information between August 27, 2018 and October 27, 2018.

Should the Court determine that there existed a substantial basis for the Magistrate's probable cause finding, any such probable cause extended only to those materials relatively close in time to the criminal acts. The warrant authorized the search and seizure of records from August 27, 2018 to October 27, 2018 associated with the email account ODGPhone@gmail.com and the Target IMEI. The warrant also authorized, however, the search and seizure of records associated with the email account onedingo@gmail.com from December 2007 to March 3, 2008. To the extent that any probable existed for the records from August 27, 2018 to October 27, 2018, that probable cause did not extend to the search and seizure of records dated from December 2007 to March 3, 2008.

No facts in the affidavit suggested that any purported "planning and premeditation" extended to ten years before the shooting at the Synagogue. And no facts

11

suggested that Mr. Bowers made social media postings indicating bias toward Jews ten years before the shooting. Simply put, no facts provided a substantial basis for concluding that records from Google ten years before the shooting would yield evidence related to criminal activity. At a minimum, the Court should suppress any seizure of records associated with the email account onedingo@gmail.com from December 2007 to March 3, 2008.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender