IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| v. | | Criminal No. 18-292 |
| ROBERT BOWERS | | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTION TO COMPEL THE PRODUCTION OF FURTHER RECORDS IN SUPPORT OF AN ANTICIPATED JURY COMPOSITION MOTION**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files its response in opposition to defendant's motion to compel the production of records from third parties: the Department of State for the Commonwealth of Pennsylvania, the Electronic Registration Information Center, Inc. (ERIC), and the Administrative Office of Pennsylvania Courts, in support of an "anticipated jury composition motion," (Doc. No. 280). Notably, defendant Bowers filed his Motion on August 28, 2020, weeks before the Clerk of Courts had provided the requested jury composition information already ordered by the Court, and prior to any defense assessment of whether those records affirm that juries in this district represent a fair cross-section of the population. See Doc. No. 206 (Court Order for document production from Clerk of Courts). At this stage of the proceedings, the defendant's request, particularly as it pertains to data held by third parties, is without legal support, dramatically exceeds that which he has a right to demand, and runs a significant risk of unwarranted, further delay of the prosecution.

## I.    **SUMMARY**

The current "Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors," which became effective on March 2, 2020, after approval by the Chief Judge and Judicial Council of the Third Circuit Court of Appeals, unequivocally asserts: "Voter registration lists represent a fair cross section of the community in each division of the Western District of Pennsylvania."[1]  Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors, (March 2020), https://www.pawd.uscourts.gov/sites/pawd/files/ Jury_Plan_Final_2020.pdf.  Like the Western District of Pennsylvania, the Middle and Eastern judicial Districts draw solely from voter registration lists and include virtually the same affirmation in their jury plans: "Voter registration lists represent a fair cross-section of the community in Eastern/Middle District of Pennsylvania."  U.S. Dist. Ct. for Eastern Dist. of Pennsylvania, Plan for the Random Selection of Grand and Petit Jurors § 3 (adopted 2017);  Juror Selection Plan U.S. Dist. Ct. for Middle Dist. of Pennsylvania § 401 (adopted 1999).  These sole-source jury plans have not been found to violate the Constitution or federal statute by the United States Court of Appeals for the Third Circuit or any federal district court.  In fact, in a recent capital prosecution, the Third Circuit explicitly upheld the Eastern District's long-standing practice of drawing its

---

[1] The 2020 Plan is nearly identical to the plan that had been in effect since April 1, 2009.  A substantively new and additional provision in the 2020 plan appears in Section 9: "Additionally, for each juror qualification mailing returned by the Post Office as undeliverable and/or for each person who fails to complete and/or respond to the juror qualification questionnaire within 21 days of the date of mailing, the Clerk shall draw at random, the name of a resident whose address is in the same zip code to which this original juror qualification mailing had been sent. The Clerk shall then mail a paper version of the juror qualification questionnaire to that resident and, thereafter, follow the procedures set forth in this section of the Plan with respect to that new prospective juror."  Compare, "Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors" adopted on March 20, 2009, and effective on April 1, 2009.

potential jurors exclusively from voter registration lists. <u>United States v. Savage</u>, 970 F.3d 217, 252-62 (3d Cir. 2020).

In this context, defendant Bowers has filed a 115-page motion to compel a vast array of materials that he asserts are essential to file an anticipated challenge to the jury selection procedure for the United States District Court for the Western District of Pennsylvania. The motion is rooted in two assumptions: that using voter registration lists as the sole source for jury selection is inherently flawed and violates the Jury Selection and Service Act and the Sixth Amendment of the Constitution; and, that Bowers is entitled to unfettered access to all documents and information that could conceivably be relevant to his anticipated challenge. Neither contention is supported by the law. Bowers's motion to compel, filed almost nine months after this Court's deadline for discovery pretrial motions, fails to cite a single authority that supports his expansive requests for massive tranches of personal voter data – requests directed to Pennsylvania election authorities and entities that are currently preparing for a national, heavily litigated election. Moreover, the case upon which the defendant most heavily relies, <u>United States v. Savage</u>, does not stand for the propositions that Bowers offers. <u>Savage</u> nowhere establishes the defendant's right to compel the third-party materials he seeks, and instead indicates that a fair cross-section challenge in this case will likely fail.

As important, pursuant to this Court's Order of February 25, 2020, (Doc. No. 206), the Clerk's Office has already provided Bowers with copies of, or access to, extensive information, data, and jury records pertaining to the Master Jury Wheels and Qualified Jury Wheels in the Western District since May 1, 2015. Bowers should be required to preliminarily examine and utilize that information and data to establish at least a <u>prima facie</u> violation of his right to a jury drawn from a fair cross-section of the community. Only then should this Court consider granting

access to the broad categories of information and materials sought in the defendant's motion to compel.

## II.     **FAIR CROSS-SECTION**

The Sixth Amendment and the Jury Selection and Service Act of 1968 ("the JSSA") afford criminal defendants "the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."  Berghuis v. Smith, 559 U.S. 314, 319 (2010).  Even so, a defendant has no right to a venire or petit jury of any particular composition.  United States v. Weaver, 267 F.3d 231, 236 (3d Cir. 2001).

> The Supreme Court in Duren v. Missouri "established a three-part test for determining whether a jury selection process passes constitutional muster" under the fair cross-section requirement: "In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

United States v. Hernandez-Estrada, 749 F.3d 1154, 1159 (9th Cir. 2014) (quoting United States v. Miller, 771 F.2d 1219, 1228 (9th Cir. 1985) and Duren v. Missouri, 439 U.S. 357, 364 (1979)).

In enacting the JSSA, "Congress determined that the principal source of names for the random selection should be either 'the voter registration lists or the lists of actual voters.'"  Weaver, 267 F.3d at 236, quoting 28 U.S.C. § 1863(b)(2).  The JSSA directs each judicial district to devise and execute "a written plan for random selection of grand and petit jurors" in accordance with the statute's requirements.  18 U.S.C. § 1863(a).  In the Western District of Pennsylvania, like the districts in most states, jurors must be selected from voter lists.  See 28 U.S.C. § 1863(b)(2).

Courts have repeatedly affirmed the legality of the Western District's jury plan, as well as the virtually identical plans of the Eastern and Middle Districts of Pennsylvania.  See, e.g., United

States v. Green, 2011 WL 4737601 (W.D. Pa. Oct. 6, 2011) (Diamond, J.) (upholding plan employed in the Western District of Pennsylvania); Weaver, 267 F.3d at 237 (Western District of Pennsylvania); United States v. Rinaldi, 2020 WL 4589037 (M.D. Pa. Aug. 10, 2020) (Mariani, J.) (Middle District of Pennsylvania plan upheld); United States v. Mortimer, 1999 WL 504560 (E.D. Pa. July 14, 1999) (Hutton, J.) (Eastern District Plan upheld, also finding that the absence of minorities on a particular venire is irrelevant to a jury plan challenge); United States v. Ortiz, 897 F. Supp. 199 (E.D. Pa. 1995) (Bartle, J.) (finding two-year study introduced by defense insufficient to invalidate Eastern District Plan); United States v. Diaz, 1993 WL 85764, at *8 (E.D. Pa. March 25, 1993) (Yohn, J.) (adding in relation to Eastern District Plan: "The defendant attacks the jury panel make-up solely on the observation that there were no Hispanics on the jury panel that was drawn from a population containing Hispanics. Absent any additional statistical analysis, the court finds that the defendant's sole observation fails to show a systematic exclusion as required by Duren.") (referencing Duren v. Missouri, 439 U.S. at 364). See also Ramseur v. Beyer, 983 F.2d 1215 (3d Cir. 1992) (rejecting a challenge to state system use of voter rolls on both Sixth Amendment and equal protection grounds).

### III. UNITED STATES v. SAVAGE DOES NOT SUPPORT DEFENDANT'S POSITION

The Third Circuit issued its decision in United States v. Savage, 970 F.3d 217 (3d Cir. 2020), less than three weeks before the defendant filed his motion to compel. Although the defendant attempts to extract reasoning from Savage to support his motion—primarily through selective reading and parsing of the opinion—the decision actually provides ample justification for rejecting the defendant's position. An honest reading of Savage reflects that the Third Circuit applied long-standing and now well-settled fair cross-section jurisprudence to reject Savage's

challenge to the jury composition in his case.  Savage makes clear that Bowers's motion to compel is unavailing.

    A.    <u>The Fair Cross-Section Analysis Is the Same Under the Sixth Amendment and the JSSA</u>

Savage reinforced that there is only one test for fair cross-section claims, regardless of whether they are raised under the Sixth Amendment or the JSSA.  Id. at 254 n.32 (citing Weaver, 267 F.3d at 236-37).  The Third Circuit made this clear almost 20 years ago in Weaver: "Claims under the Act are analyzed using the same standard as a Sixth Amendment fair cross-section claim."  267 F.3d at 236 (citing United States v. Test, 550 F.2d 577, 584-85 (10th Cir. 1976) (en banc) (noting that the Act's fair cross-section standard is "functional equivalent of the constitutional 'reasonably representative' standard")).  In other words, if a defendant cannot satisfy Duren's three-part test to establish a Sixth Amendment fair cross-section claim, he likewise cannot establish a cognizable violation of the JSSA.  See id. at 237 ("In order to establish a prima facie violation of the fair cross section requirement of the Sixth Amendment and the Act, the defendant must [satisfy the Duren test]." (emphasis added)).  There is no other test.

In his motion, the defendant emphasizes that Savage failed to raise a JSSA claim and argues that he is entitled to gather all of the records that Savage could have, but did not, obtain to press a distinct statutory claim.  Doc. No. 280 at 4.  In support of that position, the defendant selectively quotes only the first sentence of a two-sentence footnote in Savage:

> Savage forfeited the opportunity to pursue a JSSA claim here by failing to raise it in the District Court.  See United States v. Baxter, 951 F.3d 128, 136 (3d Cir. 2020), petition for cert. filed, No. 20-5133 (July 14, 2020).  But because the fair-cross-section standard is equivalent for claims under the Sixth Amendment and the JSSA, Weaver, 267 F.3d at 236–37, excluding the JSSA claim makes little difference to our analysis.

Savage, 970 F.3d at 254 n.32.  The sentence the defendant omitted from his motion makes clear that the outcome in Savage would have been the same regardless of whether the defendant had raised a JSSA claim in addition to his constitutional claim—i.e., his fair cross-section claim failed under the single applicable test outlined in Duren.  Id. at 254-61 (applying Duren and concluding that the defendant's argument failed at both the second and third prong).  As such, Savage's failure to raise a JSSA claim does not support the proposition that defendant Bowers is somehow entitled to compel the production of third-party records to mount his own statutory challenge.

Notwithstanding the Third Circuit's repeated holding that the Duren test is the only relevant test for evaluating a fair cross-section challenge, the defendant seems to have constructed his own statutory test.  He then demands materials from third parties that he believes would establish a violation of that test.  Specifically, the defendant argues that the third-party materials are necessary to show that the source lists used in the Western District of Pennsylvania—voter registration lists—are:

> (1) 'insufficiently representative';[2] (2) unreliable and inaccurate; (3) so riddled with duplicates that the requirements of randomness and proportionality cannot be met; (4) less complete and up to date than other readily available representative lists; and/or (5) creating a good deal of useless mailing of qualification forms to nonexistent addressees.

Doc. No. 280 at 64-65.  Only then, Bowers argues, will he be able to establish a violation of the "language and purposes of the JSSA."  Id. at 65.  Not surprisingly, the defendant cites no case to demonstrate that his test is a recognized analytical framework for raising a fair cross-section challenge under the JSSA.  There is no such case, no such test, and, likewise, no basis for obtaining compelled discovery from third parties.  Savage simply reinforces the principle that any fair cross-

---

[2] This would-be prong of the defendant's test appears to be pulled from a statement made by the JSSA's sponsor in the House of Representatives during a legislative session in 1968.  Doc. No. 280 at 48.

section challenge must be analyzed under the Duren test, and that there is no separate statutory test for which the defendant may seek compelled disclosures.

B.     Any Fair Cross-Section Claim Raised by the Defendant Likely Fails Duren's Second Prong, and the Court Would Not Be Required to Consider the Third Prong

As in Savage, the defendant's fair cross-section argument is likely to fail at the second prong in the Duren analysis.  The Third Circuit in Savage reiterated that a defendant must make a prima facie showing under all of the Duren prongs:  "[The defendant] has the burden to establish a violation of his fair-cross-section rights by identifying (1) 'a "distinctive" group in the community' (2) that was 'not fair[ly] and reasonab[ly]' represented among potential jurors compared with its representation in the community (3) because of 'systematic exclusion of the group in the jury-selection process.'"  970 F.3d at 254 (quoting Duren, 439 U.S. at 364).  Although Savage satisfied the first prong by identifying a "distinctive" group in the community (Black residents) that was allegedly underrepresented, the Third Circuit concluded that he failed to carry his burden under the next prong.

Specifically as to the second prong, the Savage court "look[ed] to statistics to assess the degree, if any, to which Blacks were underrepresented" among potential jurors.  Id. at 255 (citing Weaver, 267 F.3d at 240 (noting the inquiry is "at least in part, a mathematical exercise, and must be supported by statistical evidence")).  Likewise, the court focused its statistical analysis on the composition of the qualified jury wheel, noting that "[p]recedent reinforces that the qualified wheel is a valid option for assessing a fair-cross-section claim."  Id. at 256 (citing Duren, 439 U.S. at 363-64; United States v. Savage, 547 F.2d 212, 214 (3d Cir. 1976) (construing cross-section challenge as targeting qualified wheel)).

The court noted that "Blacks represented 16.82% of the Eastern District population, but only 8.37% of the qualified wheel," and then "evaluate[d] the significance of this shortfall by

calculating two metrics: absolute and comparative disparities." Id. "Absolute disparity is simply the difference between [the] two statistical inputs," and "[c]omparative disparity is the quotient of the absolute disparity and the population percentage." Id. (citations omitted). Applying these metrics, the absolute disparity for Black prospective jurors in Savage was 8.45% and the comparative disparity was 50.24%. Id.[3]

The Savage court had little trouble concluding that these disparities—viewed in isolation or in combination—failed to make the requisite showing under the second prong of Duren. As to absolute disparity, the court reasoned that "8.45% is only slightly higher than the absolute disparities that fell short in Howell[ v. Superintendent Rockview SCI, 939 F.3d 260 (3d Cir. 2019)] and other cases where a minority group's population percentage was comparable to that of Blacks within the Eastern District." Savage, 970 F.3d at 257 (citing Howell, 939 F.3d at 268 (absolute disparity of 5.83%; population percentage of 10.7%); United States v. Davis, 854 F.3d 1276, 1295 (11th Cir. 2017) (absolute disparity of 6.7%; population percentage of 12.1%); United States v. Grisham, 63 F.3d 1074, 1078-79, 1081 (11th Cir. 1995) (absolute disparity in one instance of 4.72%; relevant population percentage of 18.31%); United States v. Clifford, 640 F.2d 150, 154-55 (8th Cir. 1981) (absolute disparity of 7.2%; population percentage of 15.6%)).

Likewise, the defendant in Savage fared no better with respect to comparative disparity, with the court concluding that "the 50.24% figure here is similar to those deemed insufficient in other cases, especially Howell." 970 F.3d at 258 (citing Howell, 939 F.3d at 268 (comparative disparity of 54.49%; population percentage of 10.7%); United States v. Orange, 447 F.3d 792, 796, 798-99 (10th Cir. 2006) (comparative disparities "rang[ing] from 38.17% to 51.22%"; population

---

[3] The court noted that the Third Circuit "continues to use both absolute and comparative disparity methods because, when applied together, one method can be reasonably expected to offset the shortcomings of the other. Nevertheless, taking our cues from Duren and persuasive authority, we have shown some solicitude for absolute disparity." Savage, 970 F.3d at 256-57 (citations omitted).

percentages ranging from 1.64% to 8.63%); United States v. Chanthadara, 230 F.3d 1237, 1256–57 (10th Cir. 2000) (comparative disparities of 40.89% and 58.39%; population percentages of 7.9% and 2.74%, respectively)); cf. Weaver, 267 F.3d at 240, 243 (considering comparative disparities of 40.01% and even 72.98% to be "of questionable probative value" due to particularly small population percentages of 3.07% and 0.97%, respectively).

In light of the statistical analysis in Savage—and the disparities deemed permissible there—any fair cross-section argument advanced by Bowers is similarly likely to fail under the second Duren prong. On September 13, 2020, after the defendant filed his motion to compel, the Clerk's Office produced to the parties various records in compliance with the Court's Order concerning the defendant's access to jury records. See Doc. No. 206. Notably, the Clerk produced a "Report on Operation of the Jury Selection Plan" for the master wheel that was filled on February 7, 2017 (hereinafter, the "Report," provided to counsel for the defense and the government as file name CR18-292_Doc.206_No.2,3.pdf). The Report provided statistical breakdowns for each of the three divisions of the Western District of Pennsylvania, including a demographic breakdown of the qualified wheels and census data concerning the representation of various demographic groups in each division. According to the Report, Black or African American individuals accounted for 6.90% of the citizen population in the Pittsburgh Division as of the date of the Report, Report at 11, and 3.38% of the qualified wheel. Report at 15. These statistics reflect an absolute disparity of 3.52% (i.e., 6.90% minus 3.38%) and a comparative disparity of 51.01% (i.e., 3.52% divided by 6.90%). Both figures are well within the range of permissible disparities addressed in Savage and the cases upon which it relied. Savage, 970 F.3d at 257-58. In fact, on the basis of the records provided, the absolute disparity of Black representation on the Pittsburgh

Division's qualified jury wheel is less than half the corresponding disparity in Savage (3.52% vs. 8.45%), and the comparative disparity is almost exactly the same (51.01% vs. 50.24%).

In short, applying the same analytical framework approved in Savage, and considering the same range of permissible disparities under Duren and its progeny, it is likely that any fair cross-section challenge mounted by the defendant concerning underrepresentation of Black prospective jurors or other "distinctive" groups[4] will fail under Duren's second prong. Moreover, once a court concludes that a defendant has failed to make a prima facie showing under one prong of the analysis, there is no need to consider any remaining prongs. Indeed, the Savage court only addressed the question of systematic exclusion in the alternative after holding that "[b]ecause Savage has not satisfied Duren's second prong, he cannot establish a violation of his fair-cross-section rights." 970 F.3d at 259. Such is the case here: were the Court to conclude that the defendant cannot meet his burden under the second prong, there would be no need to analyze the third prong.

C.    Voter Registration Lists Remain Presumptively Valid Source Lists and Savage Does Not Endorse Third-Party Discovery Under the JSSA

The central focus of the defendant's motion to compel is the argument that he needs third-party materials to establish that the Western District of Pennsylvania's source lists—voter

_____

[4] Although the defendant devotes much of his 115-page motion to the historic underrepresentation of Blacks, and to a lesser extent Hispanics, on juries, see, e.g., Doc. No. 280 at 53-64, he states in passing that he "is also looking into underrepresentation of other cognizable groups, such as men, women, . . . Asians, groups defined by economic status, and religious groups." Doc. No. 280 at 11 n.4. Focusing on these groups is not likely to get the defendant past Duren's second prong either. Indeed, review of the Clerk's report reveals that women (53.69% in the wheel vs. 52.00% in the citizen population) and Asians (1.03% in the qualified wheel vs. .90% in the citizen population) were actually overrepresented in the qualified wheel. Report at 11, 15. Hispanics made up 1.10% of the Pittsburgh Division's citizen population and .80% of the qualified wheel, resulting in an absolute disparity of only .30% and a comparative disparity of just 27.27%. Id. A fair cross-section claim focusing on men would fare even worse for the defendant. Men made up 48.00% of the citizen population compared to 45.77% of the qualified wheel, yielding an absolute disparity of 2.23% and a comparative disparity of a meager 4.65%. Id. The defendant provides no further detail as to what group he might identify based on "economic status," which religious groups he might choose, or how any meaningful statistical analysis could take place as to these demographic groups, since juror questionnaires do not require disclosure of economic or religious information (even assuming whatever category the defendant chooses is sufficient to satisfy the first prong's "distinctive" group requirement).

registration lists—are deficient, such that there is "systematic exclusion of [a distinctive] group in the jury-selection process." Duren, 439 U.S. at 364. In other words, the validity of voter registration lists is only relevant as to Duren's third and final prong. This point is underscored by the fact that the Savage court resolved the statistical analysis under the second prong without addressing whether sole reliance on voter registration lists was appropriate. Thus, because the defendant's anticipated challenge likely fails under Duren's second prong, the production of third-party records should not be necessary for the court to resolve any eventual jury composition motion.

In addition, although the defendant goes to great lengths to argue what he believes are the many flaws in the use of voter registration lists, Savage reiterated that "[a] selection process that is facially neutral is unlikely to demonstrate systematic exclusion." 970 F.3d at 259 (quoting Howell, 939 F.3d at 269). The court further noted that the Eastern District's selection process "relies exclusively on voter registration lists, consistent with other facially neutral processes this Circuit has upheld." Id. at 259-60 (citing Howell, 939 F.3d at 269 (voter registration lists and driving records); Weaver, 267 F.3d at 237, 244-45 (voter registration lists); Ramseur, 983 F.2d at 1229, 1235 (voter registration and licensed driver lists); Savage, 547 F.2d at 215 (voter registration list). Thus, while facial neutrality of voter registration lists may not be sufficient standing alone to defeat a claim of "systematic" underrepresentation, nothing in Savage undermines the general principle that such lists are presumptively valid.[5]

---

[5] The Third Circuit emphasized in Savage, that "[i]t is presumably the Eastern District's institutional role—not the role of Savage or the District Judge in this case—to conduct a study and make findings before deciding that voter registration lists must be supplemented with other sources. After all, the responsibility to create a jury-selection plan consistent with § 1861, and to modify it as needed, resides firmly with the respective district court under the supervision of a reviewing panel comprised of the circuit's judicial council and the district's chief judge or designee. 28 U.S.C. § 1863(a)." 970 F.3d at 261 n.46.

Finally, <u>Savage</u> provides no support for Bowers's contention that he is entitled to a court order compelling the production of whatever records he thinks may be useful to him, regardless of where the records reside, to make a showing under <u>Duren</u>'s third prong. To the extent that the Third Circuit made short work of the sources Savage put forward to demonstrate "systematic" underrepresentation, the court's analysis relied simply on the fact that certain of the materials represented "point-in-time" evidence at best (and not evidence of underrepresentation over time), while other material was not sufficiently specific to the Eastern District of Pennsylvania. <u>See id.</u> at 260-61 nn.43-45; <u>see also id.</u> at 260 ("<u>Howell</u> . . . stat[ed] flatly that a study of underrepresentation '<u>must</u> have demonstrated ongoing discrimination over a sufficient period of time.'" (quoting <u>Howell</u>, 939 F.3d at 269) (emphasis added in <u>Savage</u>)).

But it is a non sequitur for the defendant to argue that any weakness in <u>Savage</u> somehow entitles Bowers to obtain whatever materials he thinks might make a stronger argument in his case. <u>See</u> Doc. No. 280 at 26-27. Nowhere in the Third Circuit's analysis did the court craft a discovery mechanism for defendants to seek compulsion orders directed at third parties. Rather, the court merely stated that the materials Savage put forward were insufficient to meet his burden under <u>Duren</u>'s third prong.

Notably, in the Third Circuit's recitation of the case's procedural history, the court specifically referenced the fact that Savage had obtained discovery from the district court pursuant to the JSSA's discovery provision, 28 U.S.C. § 1867(f), including spreadsheets of the race and ethnicity of potential jurors on three sets of master and qualified wheels, the grand jurors who returned Savage's superseding indictment, and certain petit jurors. <u>Savage</u>, 970 F.3d at 253. But discovery under § 1867(f) is limited to "[t]he contents of records or papers <u>used by the jury commission or clerk in connection with the jury selection process</u>." 28 U.S.C. § 1867(f) (emphasis

added).[6]  Those are exactly the types of materials Savage obtained in the district court, and nowhere in the Third Circuit's analysis of <u>Duren</u>'s third prong did the court endorse an expansion of this statutory discovery mechanism to materials in the possession of third parties.  Having previously cited the statute, the court certainly could have addressed it again.  It did not, and Bowers's attempt to insert an expanded discovery right into <u>Savage</u>'s alternative holding concerning systematic underrepresentation fails.

In sum, the Third Circuit's recent decision in <u>Savage</u> substantially undermines the arguments he advances in support of his motion to compel, which focuses on material that is only relevant, if at all, under <u>Duren</u>'s final prong, which this Court likely will not need to reach.

## IV.    NO LEGAL SUPPORT FOR MOTION TO COMPEL

In addition to <u>Savage</u> and the ample authority cited above, defendant's motion is governed by 28 U.S.C. § 1867(f).  By statute, disclosure of the Clerk's "records or papers" used in "connection with the jury selection process" is prohibited unless either (1) allowed by the District's plan or (2) "necessary" to prepare a motion challenging the District's jury selection procedures.  Section 15(b), the only provision in the Western District's Jury Plan allowing disclosure of such records closely mirrors the wording of 28 U.S.C. § 1867(f).  Western District Plan § 15(b) ("The contents of records or papers used by the Clerk in connection with the jury selection process shall not be disclosed except pursuant to this Plan or as may be necessary in the preparation or presentation of a motion challenging compliance with the selection procedures of

---

[6] The defendant attempts to sidestep the limitations on the scope of discovery under § 1867(f) by invoking a separate subsection of the JSSA—§ 1867(d).  Under subsection (d), a defendant is "entitled to present in support of [a fair cross-section] motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence."  But contrary to the defendant's argument, Doc. No. 280 at 110, the fact that the JSSA permits a party to <u>present</u> "any other relevant evidence" is not the same as a statutory mandate authorizing a defendant to compel the production of such evidence from third parties.

the district court Plan"); see generally Western District Plan (making no other provision for disclosure).[7]

Despite recognizing an "unqualified" right to inspect certain jury lists under § 1867(f), Test v. United States, 420 U.S. 28 (1975), federal courts have uniformly refused to allow a defendant unfettered access to all jury-related documents and records.  See, e.g., United States v. Savage, 2013 WL 797417, *3, *6 (E.D. Pa. March 5, 2013) (defendant not entitled to unencumbered access to juror information and noting court's concern "that Defendant has embarked on a fishing expedition"); United States v. Rice, 489 F. Supp. 2d 1312, 1316-17 (S.D. Ala. 2007) ("if certain records or papers are not reasonably necessary for preparation of a motion under the Act, then the Act does not authorize access to those records or papers."); United States v. Diaz, 236 F.R.D. 470, 482 (N.D. Cal. 2006) ("[t]he right to discovery by the Act and Test is not limitless."); United States v. Carlock, 606 F. Supp. 491, 492 (W.D. La.1985) ("the right of access involved here is not without limitations"); United States v. Gotti, 2004 WL 2274712, *6 (S.D.N.Y. Oct.7, 2004) ("Gotti II") (defendant making § 1867(f) request "is not entitled to unencumbered access to juror information"); United States v. Causey, 2004  WL 1243912, *9, *18 (S.D. Tex. May 25, 2004) (collecting cases for proposition that while a criminal defendant has an essentially unqualified right to inspect the master list from which members of his grand and/or petit jury were selected, access to other jury records can be restricted); United States v. Gotti, 2004 WL 32858, *11 (S.D.N.Y. Jan. 6, 2004) ("Gotti I") ("Moving defendants do not have an absolute right of access to all materials relating to the grand jury selection...").  Contrary to Bowers's suggestion, the JSSA is not a license for defendants to search through all jury-related records maintained by the Clerk of

---

[7] Two provisions in the Western District's Plan also prohibit disclosure of grand juror names without "special order of the Court," § 15(c), and restrict timing for disclosure to the public or media of the names of potential petit jurors, § 15(a).

Court.  See United States v. Davenport, 824 F.2d 1511, 1515 (7th Cir. 1987) ("to give the defendant an absolute right of routine access to all materials would be an amendment of the Act" given that "defendant is making a claim that appears to us to lack any bona fide basis, a frivolous exploration").

A.       Compulsion is not Warranted under the JSSA

In his motion, Bowers contends that compulsion is appropriate under the JSSA, which authorizes the disclosure of "the contents of records or papers used by the … clerk in connection with the jury selection process" as provided by the "the district court plan or as may be necessary in the preparation or presentation of a [fair cross-section] motion." 28 U.S.C. § 1868(f) (emphasis added).

1.  The AOPC and ERIC Records Sought are not Used by The Clerk in Connection with the Jury Selection Process

By its plain language, the JSSA only authorizes the release of those records that are "used by" the Clerk's Office in composing the Master Wheel.  28 U.S.C. § 1868(f).  The defendant asks this Court to compel the AOPC and ERIC—third parties who are far removed from this case—to produce records that the defendant readily acknowledges are not used in composing the Master Jury Wheel in this district.  Similarly, Items 2 through 10—which the defendant seeks to compel from the Secretary of State—are not "used by" the Clerk in composing the Master Wheel. Nonetheless, the defendant claims that "records that are not technically 'used by the jury commission or clerk,' but which could and should be used, … are relevant evidence of an available reform measure and therefore should be disclosed."  Doc. No. 280 at 110.  But the JSSA simply does not authorize the disclosure of records that "could and should be used."  Thus, having failed to meet the most basic requirement for production under the JSSA, the defendant's demand for these records should be denied.

2. The Records Sought are Not Necessary in the Preparation or Presentation of the Defendant's Motions

The defendant further has failed to establish that the AOPC and ERIC records are necessary for his motion. While the defendant correctly states that efforts to increase the representation of specific groups on jury lists have <u>some</u> relevance to whether a group's representation is 'fair and reasonable,'" Doc. No. 280 at 22, 30, citing <u>Ramseur v. Beyer</u>, 983 at 1235, it does not follow that the defendant has a cognizable necessity to personally analyze the underlying data of those organizations.

In addition, the voter list records ("Item 1") sought from the Secretary of State are not necessary for the preparation or presentation of the defendant's motions under the JSSA. 28 U.S.C. § 1867(f). This Court has already ordered that the Clerk's office provide the defendant with the source data for the Master Jury Wheel, Doc. No. 206 at ¶ 12, and has already twice concluded that providing the source data material sought (both in the form of additional voter lists and personal information) directly to the defendant is not necessary for the defendant's motion. <u>See</u> Doc. Nos. 158, 206, 231, and 236. At the time of filing of the instant motion, the defendant had not even received nor reviewed the records available to him.[8]

---

[8] As of the date of this filing, the Clerk's office has provided some electronic data to both parties. The Government is unaware whether the defendant has conducted any in-person review of jury record data. Even if the defendant were to now make a threshold showing that the data provided to him pursuant to the Court's order of February 25, 2020, is somehow inadequate for purposes of his motion, the remedy is <u>not</u> to seek such records from a third party, i.e., the State, who holds the same information as the Clerk's office. Rather, the defendant should provide reasons based on the data that is available to him now as to why additional data from the Clerk's office is needed. At most, <u>Savage</u> may support the proposition that Bowers should be granted access to Clerk's Office data pertaining to one more master and qualified wheel (i.e., the master and qualified wheel utilized prior to May 2015), as the Third Circuit's analysis in <u>Savage</u> addressed a fair cross-section challenge where the district court had granted discovery of Clerk's Office data pertaining to three master and qualified wheels. 970 F.3d at 253.

Similarly, because Items 2 through 10 sought by the defendant are not "used" by the Clerk of Courts, it is not necessary for the defendant to access and/or review those materials in preparation for this motion.

B.     Compulsion is not Warranted under the NVRA

To the extent that the defendant is seeking any information from AOPC or ERIC via the National Voter Registration ACT (NVRA), that statute limits its disclosure mandates to states. 52 U.S.C. § 20507(i).  The AOPC and ERIC are not "states" covered by the NVRA, and the Court should deny the defendant's motion as to these two entities.

The defendant did provide documentation that he requested information from the Secretary of State via the Right to Know Act, the NVRA, and other state statutory authority.  Doc. No. 280-5.  It is noteworthy that defendant Bowers materially altered the attestation in the affidavit required to obtain the voter lists which he sought from the state in an attempt to shoehorn his request within the scope of this state statutory authority.  Doc. No. 280-5 at 9 (adding statement by Federal Public Defender Lisa Freeland that the information is sought for a purpose related to "law enforcement").

In any case, the defendant's detailed five-page, ten-point demand for records, Doc. No. 280-14, seems to far exceed the scope of the NVRA.  The NVRA has its own statutory scheme for litigating what materials fall under the statute and whether the state must produce them.  See e.g., Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 340 (4th Cir. 2012); Pub. Interest Legal Found. v. Boockvar, 370 F.Supp.3d 449 (M.D. Pa. 2019) (finding that public interest organization was in "zone of interest" of NVRA but had not given appropriate notice under NVRA, and dismissing suit); Pub. Interest Legal Found. v. Boockvar, 431 F. Supp. 3d 553 (M.D. Pa. 2019).  Given that separate, statutory cause of action, the defendant's discovery demands pursuant to the NVRA should not be litigated via a motion to compel in this criminal matter.  See Doc. No. 280

at 97-98 (detailing NVRA enforcement action pending in this district); see also Project Vote, 682 F.3d 331. The Court should deny the defendant's motion to compel the Secretary of State to produce items 2 through 10. Doc. No. 280-14. The defendant's conclusory motion to compel, without a showing of necessity, should not serve as an end-run around pending, complex civil litigation.[9]

### C.    Compulsion is not Warranted under Other Authority

The defendant also relies upon a Pennsylvania statute, 42 Pa.C.S. § 4521.1(d)(2), as authority to compel the production of the AOPC records. As the defendant acknowledges, however, the statute only authorizes disclosure to the Clerk of a United States District Court, upon said Clerk's request. 42 Pa.C.S. § 4521.1(d)(2); Doc. No. 280 at 111. Bowers attempts to circumvent this portion of the state statute by implying that the Court should order the Clerk to make such a request and then, in turn, order the Clerk of Court to disclose said material to the defendant. Doc. No. 280 at 111 ("There is no prohibition in the statute … from releasing the list to the parties in a pending case once the Court has taken possession of the list, which could be done under an order …"). The defendant cites no authority for such orders and instead cites a case related to jury questionnaires – materials that are easily distinguishable from AOPC records, as the AOPC records are held by a third party and are wholly unrelated to jury selection in this district. Section 4521.1(d)(2) clearly does not authorize the disclosure of the AOPC materials to the defendant. Cf. United States v. Desage, 229 F. Supp. 3d 1209, 1215 (D. Nev. 2017).

---

[9] The disclosure of some of the materials sought by the defendant in Items 2 through 10 are subject to a pending NVRA suit in the Middle District. See generally Pub. Interest Legal Found., 431 F. Supp. 3d 553. Should this Court be inclined to order the production of any documents in possession of these third parties, the third parties should be provided an opportunity to be fully heard as to any interests they may have in the materials sought and any burden or security risks that producing such materials may impose upon them.

## V.    CONCLUSION

For the reasons herein stated, the United States opposes the defendant's Motion to Compel

Further Records in Support of an Anticipated Jury Composition Motion and requests that this court

deny the motion in its entirety at this stage of the proceedings.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:    s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475