IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
   -vs-          )          Criminal No. 18-292
                               )
ROBERT BOWERS,          )
                               )
      Defendant.          )

AMBROSE, Senior District Judge

## OPINION
## AND
## ORDER OF COURT

### SYNOPSIS

On January 29, 2019, the Government filed a superseding indictment charging Defendant, in part, with Obstruction of Free Exercise of Religious Beliefs Resulting in Death in violation of 18 U.S.C. §§ 247(a)(2) and 247(d)(1) (Counts 1-11) and Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), and 924(j)(1) (Counts 23-33). [ECF No. 44]. On August 26, 2019, the Government filed a Notice of Intent to Seek the Death Penalty as to these counts ("Notice of Intent"). [ECF No. 86]. The Notice of Intent enumerates the statutory gateway factors and statutory and non-statutory aggravating factors that the Government proposes to prove as justifying a sentence of death. Id. Defendant has filed a Challenge to the Notice of Intent and Memorandum of Support seeking to strike mental state eligibility and aggravating factors pursuant to Article I and the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, 18 U.S.C. §§ 3592, et seq., and case law. [ECF No. 241]. The Government filed a Response in Opposition and Defendant filed a Reply. [ECF Nos. 250, 253]. For the reasons set forth below, the Challenge is denied.

**OPINION**

**I. THE FEDERAL DEATH PENALTY ACT**

The Federal Death Penalty Act, 18 U.S.C. §§ 3591, et seq. ("FDPA"), gives federal prosecutors discretion to determine whether the United States will seek the death penalty for capital offenses. See 18 U.S.C. § 3593(a). If the government intends to seek the death penalty in a case involving a capital offense, it must file a notice "a reasonable time before trial" both stating that intent and "setting forth the aggravating factor or factors that [it], if the defendant is convicted, proposes to prove as justifying a sentence of death." Id.

If a defendant is convicted of a death-eligible offense, the case moves into the penalty phase. During the penalty phase, the government must first establish that the defendant had the mental state described in at least one of four gateway intent factors set forth in 18 U.S.C. § 3591(a)(2)(A)-(D), specifically that the defendant:

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim dies as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

Id. Here, the Government proposes to prove all four of these gateway mental-state factors in the Notice of Intent. [ECF No. 86, at 1-2].

Next, the Government must prove the existence of at least one statutory aggravating factor listed in 18 U.S.C. § 3592(c). The statutory aggravating factors identified in the Notice of Intent and relevant to Defendant's challenge here include: grave risk of death to additional persons, 18 U.S.C. § 3592(c)(5); substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); vulnerability

of victims, 18 U.S.C. § 3592(c)(11); and multiple killings or attempted killings, 18 U.S.C. § 3592(c)(16). [ECF No. 86, at 3].

If the government proves at least one gateway intent factor and at least one statutory aggravating factor, the jury then weighs the existence of the statutory aggravating factors and any non-statutory aggravating factors for which notice has been given[1] against any mitigating factors in order to arrive at a recommended sentence. 18 U.S.C. § 3593(e). The challenged non-statutory aggravating factors contained in the Notice of Intent include: (1) victim impact; (2) injury to surviving victims; (3) lack of remorse; (4) selection of site; and (5) killings motivated by religious animus. [ECF No. 86, at 3-5].

Defendant raises numerous challenges to the Government's Notice of Intent, the mental state eligibility factors, and various statutory and non-statutory aggravating factors enumerated therein. I address each of Defendant's arguments in turn.

## II.   MENTAL STATE ELIGIBILITY FACTORS

The Notice of Intent lists each of the four gateway mental state eligibility factors set forth in 18 U.S.C. § 3591(a)(2) as factors the Government proposes to prove to justify a sentence of death with regard to Counts 1-11 and 23-33 of the Superseding Indictment. [ECF No. 86]. Defendant argues that all of these gateway eligibility factors except the one alleging an intentional killing pursuant to 18 U.S.C. § 3591(a)(2)(A) should be stricken. [ECF No. 241, at 5-11]. Defendant contends that the "intentional killing" factor subsumes the second factor ("intentionally inflicted seriously bodily injury" resulting in death) and, therefore, that the second factor should be stricken as duplicative. Id. Defendant further alleges that the third and fourth factors set forth in § 3591(a)(2)(C) and (D) should be stricken because they are premised on an aiding and abetting

---

[1] The term "nonstatutory aggravating factor" is used to refer to any aggravating factor that is not specifically described in 18 U.S.C. § 3592. Section 3592(c) provides that the jury may consider "whether any other aggravating factor for which notice has been given exists." Id. Pursuant to § 3593(a), the Government must provide notice of all the aggravating factors that it proposes to prove as justifying a sentence of death. Jones v. United States, 527 U.S. 373, 377–78 & n.2 (1999).

theory that has not been advanced in this case. Id. In addition, Defendant asserts that permitting the allegations to stand would violate § 3593(c) and the Fifth, Sixth, and Eighth Amendments because it would allow the Government to artificially inflate the mental state gateway factors, confusing the jury and resulting in unfair prejudice. Id. at 10-11. After careful consideration, Defendant's request to strike the gateway mental state eligibility factors other than "intentional killing" from the Notice of Intent is denied.

Defendant relies on cases such as United States v. McCullah, 76 F.3d 1087, 1111-12 (10th Cir. 1996), United States v. Tipton, 90 F.3d 861, 898 (4th Cir. 1996), and their progeny in support of his argument that the use of duplicative mental state factors creates an unconstitutional skewing of the death penalty weighing process. [ECF No. 241, at 6-11]. As the Government notes in its response, McCullah and Tipton are not FDPA cases, but, rather, addressed a since-repealed statutory scheme under which the jury considered intent as an aggravating factor to be weighed in the final sentencing determination. [ECF No. 250, at 18-19 and cases cited therein]. In contrast, under the FDPA, the intent factors are not aggravating factors to be weighed, but, rather, threshold questions of *eligibility* for the death penalty. As such, the intent factors do not implicate Defendant's concerns. See United States v. Webster, 162 F.3d 308, 355 (5th Cir. 1998) ("§ 3591(a) does not set forth aggravating factors, but rather serves as a preliminary qualification threshold. The fact that a defendant could satisfy more than one of these via the same course of action does not, therefore, constitute impermissible double counting."); United States v. Jackson, 327 F.3d 273, 300-01 (4th Cir. 2003) (distinguishing Tipton and holding that the court did not err in submitting all four types of intent under § 3591 to the jury because "[w]hether the jury found one type of intent or all four would not, under the instructions given, skew the weighing process. The weighing process involved only aggravating and mitigating circumstances which were distinct from the intent finding."); United States v. Bolden, 545 F.3d 609, 629-30 (8th Cir. 2008) (disagreeing that submission of all four mental states to the jury enhanced the risk that the jurors would inflate the weight of mental state evidence during the penalty phase); United States v.

Minerd, 176 F. Supp. 2d 424, 445 (W.D. Pa. 2001) ("[E]ven if the jury finds that more than one of the intentions have been established, this cannot tip the balance towards a sentence of death because the gatekeeping factors under the FDPA are not weighed."); United States v. Cooper, 91 F. Supp. 2d 90, 109-10 (D.D.C. 2000); United States v. Montgomery, 10 F. Supp. 3d 801, 815-16 (W.D. Tenn. 2014). Because the intent factors set forth in § 3591 are threshold factors that do not play any role in the weighing process under the FDPA, there is no danger of prejudicial skewing or double counting. Defendant's arguments to the contrary are without merit.

Defendant's request that the intent factors in § 3591(a)(2)(C) and (D) be stricken  because the Government does not assert an aiding and abetting theory likewise is misplaced. Defendant does not cite any persuasive authority to support this proposition. The language of these two intent factors is not limited to accomplices only. Although an aider or abettor could not be liable under the language of (A) and (B), the converse is not necessarily true regarding a single actor under (C) and (D).[2] As the Government points out, it does not yet know Defendant's trial defense strategies, including whether Defendant intends to deny specific intent. Thus, it would be premature at this stage of the proceedings to constrain the Government's ability to assert any potentially applicable gateway factor that would render Defendant eligible for the death penalty.

For these reasons, Defendant's request to strike all of the gateway eligibility factors except the one alleging an intentional killing pursuant to 18 U.S.C. § 3591(a)(2)(A) is denied.

### III. CONSTITUTIONALITY OF NON-STATUTORY AGGRAVATING FACTORS

Defendant argues that the non-statutory aggravating factors set forth in the Notice of Intent should be stricken in their entirety as unconstitutional. Specifically, Defendant contends that: (1) the FDPA's incorporation of non-statutory aggravating factors into the capital sentencing scheme creates a process that does not limit or guide the discretion of the jury and, thus, permits arbitrary

---

[2] The Government notes in its Response examples of instances in which the United States has alleged all four threshold intent factors as to a single actor and juries have returned verdicts as to the same. [ECF No. 250, at 19-22 & n.6 (citing United States v. Roof, No. 2:15-cr-00472-RMG (D.S.C. 2015); United States v. Christensen, No. 17-cr-20037-JES-JEH, 2019 WL 1793135, at *2 (C.D. Ill. Apr. 24, 2019))].

and capricious death sentences in violation of the Eighth Amendment; (2) permitting the DOJ to define non-statutory aggravating factors after the crime but before trial violates Article I's prohibition of *ex post facto* laws; and (3) the FDPA's grant of authority to the executive branch to create non-statutory aggravating factors violates the non-delegation doctrine. [ECF No. 241, at 11-22]. After careful consideration, and for the reasons below, I disagree.

### A.    Eighth Amendment

Defendant urges that the FDPA's authorization of non-statutory aggravating factors violates the Eighth Amendment because it grants the Government permission to "put its thumb on death's side of the scale" and injects an unconstitutional arbitrariness into the federal capital sentencing process. [ECF No. 241, at 14-15]. Defendant further asserts that the FDPA fails to provide guidance to prosecutors for the selection and definition of non-statutory aggravating factors, resulting in a system "operated on caprice" that does not limit the factors that can be used to persuade jurors to impose death in a given case with constitutionally satisfactory "clear and objective" criteria. Id. Numerous courts have considered and rejected this broad Eighth Amendment challenge to non-statutory aggravators. These cases emphasize that the function of non-statutory factors is not to narrow the class of defendants eligible for the death penalty, but to help individualize the selection of the appropriate sentence after eligibility has been determined. See, e.g., United States v. Higgs, 353 F.3d 281, 320 (4th Cir. 2003) ("Once a defendant has been rendered eligible for the death penalty by the jury's finding of a statutory aggravating factor, the use of non-statutory aggravating factors serves only to individualize the sentencing determination." (citing Zant v. Stephens, 462 U.S. 862, 878-79 (1983))); United States v. Smith, 378 F. Supp. 3d 790, 794-95 (D. Alaska 2019) (same); United States v. Mills, 393 F. Supp. 3d 650, 672 (E.D. Mich. 2019); Christensen, 2019 WL 1793135, at *5-6; United States v. Andrews, Criminal No. 1:12CR100-1, 2015 WL 1191146, at *5 (N.D. W.Va. Mar. 16, 2015); United States v. Williams, No. 4:08-cr-00070, 2013 WL 1335599, at *21 (M.D. Pa. Mar. 29, 2013).

Defendant has not provided any persuasive reason to deviate from the overwhelming weight of authority on this issue. Accordingly, for the same reasons set forth in the case law cited above, Defendant's Eighth Amendment challenge to the validity of non-statutory aggravating factors is rejected.

### B. *Ex post facto* Clause

Defendant argues that permitting the DOJ to define non-statutory aggravating factors after the crime but before trial violates the Constitutional prohibition of *ex post facto* laws. [ECF No. 241, at 16-19]. Defendant contends that § 3592's grant of authority to the Government to "create aggravating factors out of thin air **after** a crime has been committed" and to apply those factors retroactively to impose a more severe sentence is "inherently antithetical" to Article I of the Constitution's pronouncement that "[n]o *ex post facto* law shall be passed." Id. Again, this argument has been roundly considered and soundly rejected. See, e.g., United States v. Allen, 247 F.3d 741, 759 (8th Cir. 2001) (dismissing *ex post facto* argument because the statutes under which defendant was convicted "make clear that a sentence of death is authorized, and non-statutory aggravating factors are not used to determine *eligibility* for the death penalty. Thus, proposing non-statutory aggravating factors to the jury does not in any way alter the definition of the underlying crime for which [defendant] was convicted, nor does it increase the punishment to which [defendant] is subjected."), vacated on other grounds by 536 U.S. 953 (2002); Mills, 393 F. Supp. 3d at 673; Smith, 378 F. Supp. 3d at 796; Christensen, 2019 WL 1793135, at *6 ("Because non-statutory aggravating factors do not increase the punishment for a death-eligible defendant, they do not violate the ex post facto clause."); Montgomery, 10 F. Supp. 3d at 820-21; United States v Llera Plaza, 179 F. Supp. 2d 444, 455-56 (E.D. Pa. 2001); Minerd, 176 F. Supp. 2d at 433-34; United States v. Frank, 8 F. Supp. 2d 253, 267 (S.D.N.Y. 1998); United States v. Nguyen, 928 F. Supp. 1525, 1537-38 (D. Kan. 1996); United States v. Bradley, 880 F. Supp. 271, 284 (M.D. Pa. 1994). I find the reasoning of these courts persuasive and similarly reject Defendant's arguments here.

To the extent Defendant further urges that the Supreme Court's 2016 decision in <u>Hurst v. Florida</u>, 136 S. Ct. 616, extends <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), to require that non-statutory aggravating factors be treated as the equivalent of elements of the offense to which the *ex post facto* clause would apply [ECF No. 241, at 16-19], I again agree with the majority of courts that have addressed this issue and rejected such an extension of <u>Hurst</u>. <u>See, e.g.</u>, <u>Garcia v. Davis</u>, 704 F. App'x 316, 324 (5th Cir. 2017); <u>Dallas v. Dunn</u>, 2:02-CV-777-WKW, 2017 WL 3015690, at *19-31 (M.D. Ala. July 14, 2017), <u>aff'd</u>, 964 F.3d 1285 (11th Cir. 2020); <u>Smith</u>, 378 F. Supp. 3d at 796-97 ("<u>Hurst</u> did not involve an *ex post facto* claim, it did not alter the holdings of <u>Apprendi</u> or <u>Ring</u>, and it did not change non-statutory aggravators into functional elements of a capital crime.").

Accordingly, I find that the use of non-statutory aggravating factors does not violate the *Ex Post Facto* Clause, and I decline to strike those factors from the Notice of Intent on those grounds.

**C. <u>Non-Delegation Doctrine</u>**

"The non-delegation doctrine is rooted in the principle of separation of powers . . . [and] mandate[s] that Congress generally cannot delegate its legislative power to another Branch." <u>Mistretta v. United States</u>, 488 U.S. 361, 371-72 (1989). Congress, however, can seek assistance from coordinate branches as long as in so doing, it provides "an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." <u>Id.</u> at 372 (alteration in original). Defendant argues that the FDPA's delegation of power to the executive to establish additional elements of a greater offense in the form of non-statutory aggravating factors without any guiding principle violates the non-delegation doctrine. [ECF No. 241, at 19-22]. Many courts have rejected similar arguments. <u>See, e.g.</u>, <u>United States v. Lawrence</u>, 735 F.3d 385, 419-20 (6th Cir. 2013) (noting that "the express recognition in § 3592(c) of the sentencer's freedom to consider non-statutory aggravating factors is hardly a delegation of legislative power" and that the

FDPA sentencing scheme contains safeguards[3] that are sufficient to limit the prosecutor's power and render any delegation of discretion to charge non-statutory aggravating factors constitutional); United States v. Jones, 132 F.3d 232, 239-40 (5th Cir 1998); Paul, 217 F.3d at 1003; Bradley, 880 F. Supp. at 284.[4] This rationale is sound. Accordingly, I find that the FDPA does not improperly delegate congressional authority to the executive branch and decline to strike the non-statutory aggravating factors from the Notice of Intent on that basis.

## IV. CHALLENGES TO INDIVIDUAL AGGRAVATING FACTORS

The information that may be submitted during the penalty phase is not without limits. Both statutory and non-statutory aggravating factors are subject to challenge on grounds of vagueness, overbreadth, and relevance. First, an aggravator must not be so vague that it lacks "some common-sense core of meaning . . . that criminal juries should be capable of understanding." Tuilaepa v. California, 512 U.S. 967, 973 (1994); see also Robinson v. Beard, 762 F.3d 316, 331 (3d Cir. 2014). Second, aggravating factors may not be overly broad such that a penalty-phase juror "fairly could conclude that that an aggravating circumstance applies to every defendant eligible for the death penalty." Arave v. Creech, 507 U.S. 463, 474 (1993); Jones, 527 U.S. at 401. A statutory aggravating factor is overbroad if it fails to narrow the class of offenders eligible for the death penalty. See Zant, 462 U.S. at 877. Non-statutory aggravating factors are not overbroad "[s]o long as [they] direct the jury to the individual circumstances of the case." Jones, 527 U.S. at 402; United States v. Fields, 516 F.3d 923, 945 (10th Cir. 2008). Third, an aggravating factor must be "particularly relevant to the sentencing decision." Gregg v. Georgia, 428 U.S. 153,

---

[3] Such safeguards include: the requirement that the government provide the defendant notice of the non-statutory aggravators on which it intends to rely; the court's  gatekeeping responsibility to limit admission of unfairly prejudicial information; existing Supreme Court jurisprudence; and the requirement that juries find the eligibility factors before considering non-statutory aggravating factors. See United States v. Paul, 217 F.3d 989, 1003 (8th Cir. 2000); Lawrence, 735 F.3d at 419-20.

[4] Defendant's suggestion that the recent dissenting opinion in Gundy v. United States, 139 S. Ct. 2116 (U.S. 2019), calls into question these non-delegation principles is unpersuasive. [ECF No. 241, at 21-22]. Even if this dissent advocates re-examination of the "intelligible principle" standard as Defendant contends, it remains a dissenting opinion and does not reflect the holding in Gundy or otherwise justify re-consideration of the non-delegation issue.

192 (1976). In addition, during the penalty phase, "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

Here, Defendant urges me to strike certain statutory and non-statutory aggravating factors from the Notice of Intent or to consolidate some of those factors to the extent they are duplicative. I address each of Defendant's arguments in turn.

### A. Statutory Aggravating Factors

#### 1. Grave Risk of Death to Additional Persons

The "grave risk of death to additional persons" statutory aggravator applies when "[t]he defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense." 18 U.S.C. § 3592(c)(5). Defendant argues that I should strike this aggravating factor because it is inconsistent with the superseding indictment; it is vague and overbroad; and it is duplicative of the "multiple killings or attempted killings" aggravator where the two aggravators are established by the same evidence. [ECF No. 241, at 30-36]. After careful consideration, and as set forth below, I decline to do so.

First, Defendant contends that the phrase "and in escaping apprehension for the violation of the offense" must be stricken from the Notice of Intent because that phrase is not contained in the Superseding Indictment and, thus, impermissibly expands the findings of the grand jury in violation of Defendant's Sixth Amendment and due process rights. Id. at 30-32. I disagree. Both the Superseding Indictment and the Notice of Intent limit this factor to the *responding* public safety officers enumerated by initials therein. [ECF Nos. 44, 86]. Moreover, the relevant finding in the Superseding Indictment specifically cites the applicable statutory aggravator, 18 U.S.C. 3592(c)(5). The Notice of Intent merely tracks the language contained in this aggravator. Thus, the factor as set forth in the Notice of Intent does not expand the findings of the grand jury. Rather, it simply makes explicit what was implicit in the language of Superseding Indictment.

Second, Defendant argues that the phrase "a grave risk of death to one or more persons in addition to the victim of the offense" is unconstitutionally vague and overbroad. [ECF No. 241, at 32-34]. I disagree. As Defendant acknowledges in his brief, other courts addressing the issue have routinely rejected this identical challenge. Id. at 32 (citing United States v. Cheever, 423 F. Supp. 2d 1181, 1202-03 (D. Kan. 2006), and cases collected therein); see also, e.g., Allen, 247 F.3d at 786; United States v. Barnette, 211 F.3d 803, 819-20 (4th Cir. 2000); United States v. McVeigh, 944 F. Supp. 1478, 1490 (D. Colo. 1996); Robinson, 762 F.3d at 331-32 (rejecting vagueness and overbreadth challenge to similarly worded "grave risk" aggravating factor in Pennsylvania death penalty statute and noting, inter alia, that "[t]he Supreme Court has routinely rejected vagueness challenges to aggravating circumstances, including the standard 'grave risk' aggravating circumstance"). I concur with these courts that the FDPA's "grave risk" statutory aggravator is not facially vague or overbroad, and find that it is not vague as applied to the facts in this case as set forth in the superseding indictment. Moreover, any vagueness concerns can be cured at trial through, among other things, arguments of counsel and carefully crafted jury instructions. See Cheever, 423 F. Supp. 2d at 1202-03 (citing cases). I am confident here that the parties and the court can draft instructions that will adequately define "grave risk" for the jury.[5]

Third, Defendant asserts that the "grave risk" factor as pled in the Notice of Intent is impermissibly vague and open-ended  because it includes language that the grave risk of death extends "to one or more persons in addition to the victim of the offense, **to include** [12 named] responding public safety officers." [ECF No. 241, at 34-35 (emphasis added by Defendant)]. Defendant argues that the phrase "to include" impermissibly permits the Government to expand its theory at trial to "as yet unnamed persons." Id. This argument is without merit. The Government has never indicated that it intends to expand the evidence on which it intends to rely to support

---

[5] Contrary to Defendant's assertions, the fact that the Third Circuit's Model Jury Instructions do not contain capital sentencing instructions is of no moment. I trust that the parties and this court are more than capable of crafting appropriate jury instructions that accurately reflect the law and are tailored to the facts.

this aggravating factor beyond the persons identified in the Notice of Intent. See ECF No. 250, at 26. To the contrary, the Government, in a prior filing, affirmed that, although Defendant arguably created a grave risk of death to substantially more responding law enforcement officers, it was limiting the grave risk allegation to those individuals listed in the superseding indictment and Notice of Intent. See ECF No. 178 (Response to Defendant's Motion for Informative Outline of Aggravating Factors) at 18. Thus, any potential uncertainty surrounding the phrase "to include" is not present in this case.

Fourth, Defendant argues that the grave risk statutory aggravator is impermissibly duplicative of the Notice of Intent's fourth enumerated statutory aggravator, that Defendant "intentionally killed and attempted to kill more than one person in a single criminal episode." [ECF No. 241, at 35-36]. The majority of courts that have considered similar arguments have rejected them. For example, in United States v. Robinson, 367 F.3d 278, 293 (5th Cir. 2004), the Court of Appeals for the Fifth Circuit held:

> Both factors challenged by Robinson are legitimate. Congress determined, in § 3592(c)(5), that a murderer is deserving of greater condemnation if he knowingly created a grave risk of death to one or more persons in addition to the victim; and, in § 3592(c)(16), that greater condemnation is warranted if the perpetrator intentionally killed or attempted to kill more than one person in a single episode. We see no reason to second-guess Congress's judgment that murders bearing those attributes are deserving of enhanced punishment, and under *Jones* their use is none the worse in tandem.

See also, e.g., United States v. Le, 327 F. Supp. 2d 601, 613 (E.D. Va. 2004); United States v. Bin Laden, 126 F. Supp. 2d 290, 300 (S.D.N.Y. 2001) (finding that the two aggravators are distinct because "[t]he first relates to Defendants' mental state with respect to persons who were not the intended victims of the bombings" while "[t]he second focuses on Defendants' particular desire that there be multiple victims, rather than just one—i.e., the sheer magnitude of the crime"); see also Jones v. United States, 527 U.S. 373, 398 (1999) (clarifying that the Supreme Court has not held that statutory aggravating factors could be duplicative so as to render them constitutionally

invalid). I find this reasoning persuasive and, accordingly, find the grave risk statutory factor is not impermissibly duplicative of the fourth enumerated statutory aggravator.

Finally, Defendant argues that the "grave risk" aggravating factor is improperly duplicative because the Government also relies on § 3591(a)(2)(D) (intentional engagement in conduct that Defendant knew would create a grave risk of death to a person other than one of the participants in the offense) as one of the gateway intent factors. [ECF No. 241, at 36]. As Defendant himself proceeds to acknowledge, however, courts have routinely rejected similar claims because gateway intent findings are not weighed during the penalty phase. See id. (citing United States v. O'Reilly, No. 05-80025, 2007 WL 2420830, at *5  (E.D. Mich. Aug. 23, 2007)). As set forth above, I do not share Defendant's lack of faith in the jury's ability to follow proper instructions in reaching a decision as to whether to impose the death penalty, and I agree with the weight of authority on this issue.

### 2. Substantial Planning and Premeditation

The  "substantial planning and premeditation" statutory aggravator applies when "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism." 18 U.S.C. § 3592(c)(9). Defendant challenges this component of the Notice of Intent on the grounds that it is unconstitutionally vague and overbroad. [ECF No. 241, at 37-45]. Defendant argues that the factor can apply to any premeditated killing and, therefore, fails to narrow the class of murderers eligible for the death penalty. He contends the modifier "substantial" is insufficiently narrow and specific to adequately inform the jury what it must find to impose the death penalty, and thus does not cure this problem. Id. I disagree.

As with many of the issues set forth in Defendant's objections to the Notice of Intent, courts routinely have denied challenges to the breadth and specificity of the substantial planning and premeditation aggravating factor. See, e.g., United States v. Flores, 63 F.3d 1342, 1373-74 (5th Cir 1995) (citing additional cases); United States v. Mitchell, 502 F.3d 931, 978 (9th Cir. 2007); United States v. Davis, 609 F.3d 663, 689-90 (5th Cir. 2010); Jackson, 327 F.3d at 301;

Christensen, 2019 WL 1793135, at *14 (citing cases and noting that "[e]very other federal court to consider the issue is in agreement" that the substantial planning and premeditation aggravator is not unconstitutionally vague). These courts concur that the aggravator sufficiently narrows the class of persons eligible for the death penalty because not every murderer plans and premeditates his or her killing, let alone "substantially" does so. See Mills, 393 F. Supp.3d at 675-77. As the Government notes in its opposition, although the Court of Appeals for the Third Circuit has not addressed this specific issue, numerous district courts within the Circuit have considered and rejected it. See ECF No. 250, at 33 (collecting cases). Moreover, as previously stated, carefully crafted jury instructions can assist the jury's understanding of the issues involving aggravating factors, including, in this case, Defendant's vagueness concerns regarding the meaning of the term "substantial."[6]

For all of these reasons, Defendant's challenge to the substantial planning and premeditation aggravator set forth in the Notice of Intent is rejected.

### 3. Vulnerable Victims

The "vulnerable victims" statutory aggravator applies when "[t]he victim was particularly vulnerable due to old age, youth, or infirmity." 18 U.S.C. § 3592(c)(11). Here, the Notice of Intent asserts that Defendant committed the offense against victims who were particularly vulnerable due to old age and infirmity. [ECF No.86 (citing Counts 1, 3, 7-10, 23, 25, 29-32 (old age) and 5, 6, 27, 28 (infirmity)]. Defendant asks that I strike this component of the Notice of Intent because the Government has applied an arbitrary age cut off and has not made any showing that the victims' vulnerabilities were connected to the killings. [ECF No. 241, at 45-53]. After careful review, it is apparent that Defendant's arguments, to the extent not already addressed elsewhere in this opinion, challenge the sufficiency of the Government's evidence in support of this

---

[6] To the extent that Defendant also summarily argues that this aggravating factor is impermissibly duplicative of the crimes charged in the superseding indictment and/or the gateway intent factors [ECF No. 241, at 44-45], I already have addressed this contention and reject it again here for the same reasons previously set forth herein.

aggravator as opposed to the sufficiency of the Notice of Intent. Such challenges are more properly addressed at or closer to trial. Cf. McVeigh, 944 F. Supp. at 1490 (rejecting vagueness challenge to this factor as premature and stating that the court must await the evidence at trial before determining whether and to what extent a penalty phase jury would be allowed to consider the factor).

For all of the above reasons, I find that the Government has properly alleged each of the statutory aggravators and Defendant's challenges to those factors are denied.

### B. Non-Statutory Aggravating Factors

#### 1. Victim Impact

The Supreme Court has held that the introduction of victim impact evidence during the sentencing phase of capital proceedings is permissible. See Payne v. Tennessee, 501 U.S. 808, 827 (1991) (overruling Booth v. Maryland, 482 U.S. 496 (1987), which had prohibited states from allowing such evidence); Jones, 527 U.S. at 395. Likewise, the FDPA expressly provides that the aggravating factors set forth in the Notice of Intent "may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." 18 U.S.C. § 3593(a)(2).

The "victim impact" non-statutory aggravating factor set forth in the Notice of Intent asserts that Defendant "caused injury, harm, and loss" to the eleven deceased victims "as well as to the family, friends, and co-workers of those individuals." [ECF No. 86, at 3-4]. Despite the language of the FDPA and the Supreme Court precedent permitting this factor, Defendant challenges the aggravator as unconstitutionally vague and overbroad. Specifically, Defendant contends that: (1) the inclusion of "friends, associates, and co-workers" exceeds the factor's parameters; (2) it relies on testimony from so many categories of people that a juror could fairly conclude that the factor applies to every defendant eligible for the death penalty; and (3) the terms "injury, harm, and loss"

are too vague to provide guidance to the sentencing body. [ECF No. 241, at 48-49]. Defendant's contention is without merit.

As an initial matter, I disagree that Payne and the FDPA categorically restrict victim impact evidence to the victim and the victim's family. Payne involved victim impact evidence that, by its terms, included only victims and victims' families. See Payne, 501 U.S. at 814-16 (challenged material included grandmother's testimony and prosecutor's argument about impact on victim's young son). Thus, the Court never considered whether, or held that, an aggravator that extends beyond that scope is necessarily prohibited.[7] See United States v. Whitten, 610 F.3d 168, 187 (2d Cir. 2010) ("At issue in Payne was testimony from a family member of the victims; but while the holding of Payne is therefore expressed in those terms, nothing in the Court's reasoning suggests that the principle is so limited."). Similarly, while the FDPA acknowledges, consistent with Payne, that non-statutory aggravating factors "may include" factors concerning the effect of the of the offense on the victim and the victim's family, it nowhere excludes evidence from non-family members. See Whitten, 610 F.3d at 188 ("We read this passage as language of inclusion, not exclusion."). As the Government notes in its brief, multiple circuits have permitted victim impact evidence from or pertaining to persons other than family members. See ECF No. 250, at 52-53 and cases cited therein. In Lawrence, for example, the appeals court rejected an argument that evidence of the impact on the victim's community, co-workers, and friends went beyond the scope of the FDPA and Eighth Amendment. In so finding, the court noted that "[c]ourts have interpreted Payne and the FDPA to permit similarly situated witnesses, i.e., family members, friends, and co-workers to give victim-impact testimony" and held, consistent with those authorities, "that the victim impact evidence from [the victim's] family members and fellow police

---

[7] For similar reasons, the other capital cases Defendant cites limiting the victim impact aggravator to family members are non-dispositive. See ECF No. 241, at 51 (citing United States v. Solomon, 05-385 (W.D. Pa.); United States v. Hanner, 05-385 (W.D. Pa.) (co-defendant in Solomon); United States v. Minerd, 99-215 (W.D. Pa.)). In those cases, the Government chose to limit victim impact evidence to family members in the Notice of Intent. This does not mean it could not have chosen otherwise. See ECF No. 250, at 52 (citing examples of Notices of Intent asserting an intention to rely on non-family victim impact evidence).

officer was neither improper nor excessive." 735 F.3d at 405-06 (citing cases); see also Montgomery, 10 F. Supp. 3d at 833-36 (citing cases).

Because the victim-impact aggravator here, as written, does not exceed the boundaries of Payne or the FDPA, I decline to strike the challenged language from the Notice of Intent at this time. To the extent Defendant fears that the specific victim impact evidence the Government intends to introduce will turn out to be overly broad or unduly prejudicial so as to implicate Defendant's due process rights, that argument is premature, and I pass no judgment on it here.[8]

### 2. Injury to Surviving Victims

The "Injury to Surviving Victims" aggravator asserts that Defendant "caused serious physical and emotional injury, including maiming, disfigurement, permanent disability, severe psychological impacts, and grievous economic hardship to individuals who survived the offense, to include: 1) physically injured civilian survivors, D.L. and A.W.; 2) otherwise injured civilian survivors, C.B., D.D., J.C., L.F., A.G., M.G., J.M., J.P, D.R.2, A.D., J.S., S.W., and B.W.; 3) physically injured law enforcement survivors, A.B., T.M., D.M., J.P, and M.S.; and otherwise injured law enforcement survivors, J.C., J.G., J.H., A.M., J.R., M.S.2, and C.T." [ECF No. 86, at 4-5]. Defendant charges that I should strike this aggravator as unconstitutionally duplicative, overly broad, and vague. [ECF No. 241, at 53-59].

First, Defendant argues that this aggravator is impermissibly duplicative of the "victim impact" aggravator because the two factors merely divide the evidence of deleterious consequences of the shooting between surviving victims and deceased victims in order to "ratchet up the number of aggravating factors" and skew the weighing process, creating a risk that the death penalty will be imposed arbitrarily. Id. at 53-54 (citing Bin Laden, 126 F. Supp. 2d 290). I

---

[8] Defendant's additional argument that this aggravating factor as written is impermissibly vague because the words "injury, harm, and loss" do not give adequate notice to Defendant is without merit. Defendant previously raised a similar argument in its Motion for Informative Outline of Aggravating Factors [ECF No. 157] which I denied. See ECF No. 205 (ruling that "[t]he Government's filings are sufficient to give Defendant the required notice"). I decline to revisit that ruling here.

disagree. As an initial matter, the Supreme Court in <u>Jones</u> called into question the "double counting" theory that Defendant advances. <u>See Jones</u>, 527 U.S. at 398 (noting that the Supreme Court has "never before held that aggravating factors could be duplicative so as to render them constitutionally invalid"). Even accepting that theory, I do not agree that the victim impact aggravator in this case necessarily subsumes the surviving victims aggravator. If anything, combining the two aggravators here would arguably broaden the surviving victims factor because, unlike the victim impact aggravator, the surviving victims aggravator as written does not extend to injury, harm, and loss to family, friends, co-workers, or associates of the surviving victims. <u>See</u> ECF No. 86, at 3-5. Further, Defendant's concerns in this regard can be addressed by appropriate instructions directing the jury to consider the weight and value of each aggravator and mitigator rather than simply counting them up and reaching a decision based on which number is greater. <u>See Jones</u>, 527 U.S. at 398-400.[9]

Second, Defendant argues that the "surviving victims" aggravator is impermissibly vague and overly broad because its categories of harm are not specific or limited and it applies across four categories of victims. Again, I disagree. The Supreme Court has stated that "review of aggravating factors for vagueness is 'quite deferential' and that, '[a]s long as an aggravating factor has a core meaning that criminal juries should be capable of understanding, it will pass constitutional muster.'" <u>Montgomery</u>, 10 F. Supp. 3d at 826 (quoting <u>Jones</u>, 527 U.S. at 400); <u>see also Tuilaepa</u>, 512 U.S. at 973. Non-statutory aggravators are not overbroad as long as they "are used to direct the jury to the individual circumstances of the case." <u>Id.</u> at 402. Here, the "surviving victims" aggravator has a "core meaning" that directs the jury to the specific individuals who

---

[9] Although the case on which Defendant relies, <u>United States v. Bin Laden</u>,126 F. Supp. 2d 290, did find that the surviving victims aggravator in that notice of intent was subsumed by, and thus duplicative of, the victim impact aggravator, it did not hold that surviving victim evidence was inadmissible. Rather, the court ordered only that the two aggravators be consolidated to avoid the risk of "double-counting" or otherwise skewing the weighing process. <u>Id.</u> at 300-301. In so doing, the court stressed that "the striking of such a duplicative aggravating factor does nothing to exclude the *evidence* that would otherwise have been proffered in support of the rejected factor." <u>Id.</u> at 299.

survived the shooting and delineates the type of harm these individuals suffered. Accordingly, I find that the factor is not unconstitutionally vague or overbroad. As the Government aptly observes in its response, "[i]f the factor 'casts a wide net,' as Bowers alleges, it is because his conduct caused wide-spread, varied harm to numerous individuals and categories of victims." [ECF No. 250, at 61].

Third, Defendant suggests that the FDPA does not permit consideration of "injury to surviving victims" as an aggravating factor justifying a sentence of death. [ECF No. 241, at 56-59]. Rather, in Defendant's view, victim impact testimony must relate to the homicide victims not to the surviving victims to whom the capital counts do not relate. See id. This argument lacks support in the caselaw and I decline to adopt it here. See Whitten, 610 F.3d at 188 (Section 3593(a) contains "language of inclusion, not exclusion"); United States v. McVeigh, 153 F.3d 1166, 1216 (10th Cir. 1998) (permitting testimony from three injured survivors of the Oklahoma City bombing and noting that the government could have called additional witnesses to testify "about the 168 victims who died in the blast and the impact of the explosion on the *numerous injured victims*" (emphasis added)).

### 3. Lack of Remorse

The "Lack of Remorse" aggravating factor asserts that Defendant "demonstrated a lack of remorse for the offenses charged in the Superseding Indictment as evidenced by his statements and actions during the course of and following the commission of the offenses." [ECF No. 241, at 59-62]. Defendant contends that I should strike this factor because it violates Defendant's Fifth Amendment right not to testify against himself. Id.

In part, Defendant finds fault with the Government's expressed intention to use his statements and actions **during the course of** and following the commission of the offenses to prove this factor. Defendant argues that "remorse" is a "retrospective emotion" or "after-arising state of mind." Thus, in Defendant's view, it would be inconsistent to characterize any alleged statements made during the commission of the offense as an absence of remorse. Id. at 60.

19

Defendant also asserts that relying on statements made during the offense "duplicat[es] by inversion" the Government's second non-statutory aggravating factor – "Killings Motivated by Religious Animus." Id. Finally, Defendant states that reliance on statements made during the commission of the act could apply to almost every person convicted of intentional homicide, and, thus, the factor does nothing to narrow the application of the death penalty or otherwise meet the heightened standard of reliability required for non-statutory aggravating factors. Id. at 61.

These arguments are unpersuasive. As the Government notes in response, multitudes of courts have routinely rejected challenges to "lack of remorse" aggravating factors supported, as the Government proposes here, by evidence of Defendant's affirmative statements and conduct.[10] See ECF No. 250, at 60-63 and cases collected therein. Defendant's semantic argument that "remorse," by definition, can only apply to post-offense statements and conduct also lacks support. See, e.g., United States v. Fackrell, 368 F. Supp. 3d 1010, 1015-16 (E.D. Tex. 2018) (declining to strike "lack of remorse" aggravator using similar language from notice of intent); United States v. George, Criminal Action No. 17-201, 2019 WL 277261, at *1 (E.D La. Jan. 22, 2019) (same); see also ECF No. 250, at 64-65 (citing cases acknowledging conduct during the crime as probative of lack of remorse). Here, in addition to Defendant's affirmative statements after the crime, the Government points to several "course of conduct" actions to demonstrate lack of remorse. [ECF No. 250, at 65]. For example, the Government asserts that Defendant's alleged actions in continuing to locate and shoot additional victims establishes a lack of remorse for each prior killing. It also cites Defendant's attacks on law enforcement officers who responded to the

---

[10] Some courts have questioned whether a defendant's silence, as opposed to affirmative statements or conduct, may be used to support the "lack of remorse" aggravator. Others have found the factor to be duplicative of the "future dangerousness" aggravating factor. Neither of these concerns is relevant in this case because the Government has not included a "future dangerousness" factor in the notice of intent and intends only to rely on Defendant's affirmative statements and actions. See ECF No. 86 (Notice of Intent); ECF No. 178, at 42 (Government response representing that it does not intend to rely on Defendant's right to remain silent to establish lack of remorse).

shooting. See id. To the extent Defendant challenges the sufficiency of this evidence or its prejudicial value, such arguments are premature.

Defendant's remaining arguments – that the aggravator does nothing to narrow the application of the death penalty and that it "duplicat[es] by inversion" the religious animus aggravating factor – are similarly without merit. As set forth previously, while statutory factors perform a narrowing function in determining the class of individuals eligible for the death penalty, non-statutory factors serve to individualize the sentencing determination. See Montgomery, 10 F. Supp. 3d at 828-29. Thus, whether or not the "lack of remorse" aggravator serves a narrowing function is without moment. Further, the fact that different aggravators may rely on the same or similar evidence does not mean that they are impermissibly duplicative. See United States v. Basciano, 763 F. Supp. 2d 303, 351–52 (E.D.N.Y. 2011), aff'd, 634 F. App'x 832 (2d Cir. 2015); United States v. Fell, 531 F.3d 197, 236 (2d Cir. 2008) ("Two factors are not duplicative merely because they are supported by the same evidence."); Montgomery, 10 F. Supp. 3d at 829. Here, "lack of remorse" speaks to Defendant's character or attitude about the killings whereas "religious animus" delves into his reason for carrying out the killings. Conceivably, a defendant motivated to kill by religious animus still could feel remorse about actually carrying out those killings. Conversely, a defendant could demonstrate a lack of remorse for killings not motivated by religious animus. Because neither of these aggravators necessarily subsumes the other, I decline to strike either as duplicative.[11]

---

[11] The few cases that Defendant cites in support of striking a "lack of remorse" factor are both factually distinguishable and unpersuasive. For example, the primary case on which Defendant relies, United States v. Davis, 912 FT. Supp. 938 (E.D. La. 1996), permitted the challenged evidence to come in under the future dangerousness aggravator, a factor the Government does not allege here. Moreover, subsequent cases have distinguished Davis in upholding the "lack of remorse" factor. See, e.g., George, 2019 WL 277261, at *3 ("Since Davis was decided, however, numerous courts have permitted the government to introduce evidence demonstrating a defendant's lack of remorse during sentencing."); United States v. Johnny Davis, No. CR.A. 01–282, 2003 WL 1873088, at *9 (E.D. La. Apr. 10, 2003) (distinguishing Davis and declining to strike "lack of remorse" factor from notice of intent).

For all of these reasons, and consistent with the clear consensus of federal courts, I will not strike the lack of remorse aggravating factor from the Notice of Intent in this case.

### 4. Selection of Site

The "Selection of Site" aggravating factor asserts that Defendant "targeted men and women participating in Jewish religious worship at the Tree of Life Synagogue, located in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania, which is home to one of the largest and oldest urban Jewish populations in the United States, in order to maximize the devastation, amplify the harm of his crimes, and instill fear within the local, national, and international Jewish communities." [ECF No. 86, at 4]. Defendant contends that I should strike this factor because it is overly broad, vague, and prohibited by the FDPA. [ECF No. 241, at 62-68].

First, Defendant argues that this factor is impermissibly duplicative of the "victim impact" and "injury to surviving victim" factors because it asks the jury to "measure the victim impact effect around the world." Id. Defendant claims that by "[m]aking the global Jewish community the victim," the aggravator is overly broad. Id. This argument is without merit. As the Government notes, the focus of this factor is not on victim impact, but on Defendant's motivation for choosing the Tree of Life Synagogue as his target. [ECF No. 250, at 66-67]. Moreover, the Government asserts that the evidence it intends to introduce to support this factor differs from its victim impact evidence. See id. Even if the supporting evidence is similar, however, the mere fact that multiple aggravators may rely on the same or similar evidence does not render those factors impermissibly duplicative. Here, the reasons Defendant chose Tree of Life would be relevant even if the crime did not have the desired impact. Because this factor neither subsumes nor is subsumed by another, striking the factor on the grounds of duplication or overbreadth is unwarranted.

Second, Defendant argues that the syntax of the factor as written creates multiple stacked elements each of which is unconstitutionally vague and indeterminate. [ECF No. 241, at 63-65]. Specifically, Defendant contends that, by using the conjunctive "and", the aggravator requires ten distinct findings and, with so much complexity, the factor is incapable of properly channeling the

jury's discretion. Id. Defendant also asserts that the terms "devastation," "harm," and "fear" are vague and lack a common-sense core of meaning. Id. Again, I disagree. It is not uncommon for jurors to be called upon to determine a defendant's intent and/or motive, and the language of this factor is phrased in conventional and understandable terms. Even if this aggravator proves complicated to apply, such difficulty does not render the factor vague. See Tuilaepa, 512 U.S. at 977. ("[D]ifficulty in application is not equivalent to vagueness."). To the extent Defendant disagrees that Squirrel Hill has one of the oldest and largest urban Jewish populations in the United States, that is a factual dispute that the jury can resolve based on the evidence presented to it. Defendant cannot complain generally that the Government has not sufficiently disclosed the facts on which it intends to rely, and then object on complexity grounds when it does provide such details. See United States v. Caro, No. 1:06-CR-00001, 2006 WL 1594185, at *7 (W.D. Va. Jun. 2, 2006) ("[T]he defendant cannot have it both ways.").

Third, Defendant avers that the "selection of site" factor is impermissible because it is too far removed from the considerations Congress set forth as relevant. [ECF No. 241, at 65-67]. Defendant states that this aggravator diverts so far from the lethal effects and human trauma involved in the shootings at the synagogue that it does not address a relevant issue. Id. at 66. This assertion is without merit, and the cases Defendant cites in support thereof are distinguishable. For example, in Bin Laden, the court struck a factor asserting that the defendant (an embassy bomber) "caused  disruption  to important governmental functions" because it found that, while serious, the factor was not "sufficiently indicative of a defendant's disdain for human life as to warrant submission as an aggravating factor " 126 F. Supp. 2d at 303; see also id. at 302 ("[A]s the continuing effects of a crime ripple outwards from its core locus of human suffering, the rationale in favor of execution wanes."). The factor at issue here, however, focuses closely on the "human suffering" that Defendant sought to cause and his alleged intention to select a location that would maximize that suffering. The factor likewise focuses on Defendant's motivation in choosing the site and is not dependent on whether that choice had the desired effect. See United

States v. Ciancia, Case No. CR 13-902 PSG, 2015 WL 13798677, at *5-*6 (C.D. Cal. Sept. 8, 2015) (distinguishing Bin Laden and upholding factor asserting that Defendant murdered an officer "with the intent to terrorize federal employees and dissuade them from the performance of their duties" because, inter alia, the factor focused on the defendant's motivation for committing the crime and not on the effect).[12] Because the selection of site factor focuses on Defendant's disdain for human life and his intent to choose a location designed to maximize human suffering, it does not impermissibly stray from the purpose of the FDPA.

To the extent Defendant further alleges that the Government's evidence does not support the selection of site aggravating factor, that argument is premature.

### 5. Motivated by Religious Animus

Defendant briefly challenges the "Motivated by Religious Animus" aggravating factor. [ECF No. 241, at 68-69]. This aggravator asserts that Defendant "expressed hatred and contempt toward members of the Jewish faith and his animus toward members of the Jewish faith played a role in the killings . . . ." [ECF No. 86, at 4]. Defendant contends that I should strike this factor because Congress rejected the death penalty for hate crimes motivated by religion. [ECF No. 241, at 68-69]. In support, Defendant cites the Hate Crimes Prevention Act, which provides up to life imprisonment for killings motivated by a person's race, color, religion, or national origin. See id. (citing 18 U.S.C. § 249). Defendant posits that because Congress provided a penalty of life in prison and not death for such crimes, the Government cannot make religious animus a basis for a death sentence here. Id.

---

[12] Conversely, the Ciancia court struck a different factor asserting that the defendant "terrorized numerous airline passengers and airport employees by causing them to fear for their lives and experience severe emotional distress" because the factor focused on the repercussions, not the motive, of the crime. 2015 WL 13798677, at *6-*7. In striking down this factor, the Ciancia court also noted that the factor did not suggest the defendant chose to target LAX in order to terrorize airline patrons. Id. at *7. The "selection of site" factor in this case, in contrast, expressly asserts that Defendant targeted the Tree of Life Synagogue in Squirrel Hill, Pennsylvania, for the express purpose of instilling fear in the Jewish community. [ECF No. 86].

Defendant does not provide any authority directly supporting this proposition, and, after careful review, I disagree that Defendant's reasoning merits striking this aggravator from the Notice of Intent. Again, unlike statutory aggravators, non-statutory aggravators do not perform a narrowing function or otherwise determine eligibility for the death penalty. Rather, the purpose of non-statutory aggravators is to individualize the jury's sentencing after eligibility for the death penalty has been established. See Montgomery, 10 F. Supp. 3d at 828-29. Proper non-statutory factors relate to the character of the defendant or the circumstances of the crime. See Zant, 462 U.S. at 878-79 ("What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime."). Moreover, as previously set forth, a defendant's motive is an appropriate consideration for the jury in determining what sentence should apply.

## V. CONCLUSION

For all of the reasons set forth in this Opinion, the Defendant's challenge to the Notice of Intent is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
    -vs-          )          Criminal No. 18-292
              )
ROBERT BOWERS,          )
              )
    Defendant.          )

AMBROSE, Senior District Judge.


**ORDER OF COURT**

AND NOW, this 29th day of October, 2020, it is hereby ORDERED, ADJUDGED, and

DECREED that Defendant's Challenge to the Notice of Intent to Seek the Death Penalty [241] is

DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge