IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**REQUEST TO FILE DOCUMENT CONCERNING CONFIDENTIAL DEFENSE
MENTAL HEALTH INVESTIGATION INFORMATION
UNDER SEAL AND *EX PARTE***

Defendant, Robert Bowers, through counsel, respectfully requests an Order permitting him to file a document setting forth confidential defense work product regarding the defense mental health investigation and expert evaluation under seal and *ex parte*. In support of this request, counsel state as follows:

1. On January 22, 2020, the government filed a Motion to Set Deadlines for mental health notice(s) (Doc. 180), requesting that any notice be filed by April 23, 2020.

2. After an unsuccessful "meet and confer" (Doc. 194), on February 14, 2020, the defendant responded that the government's motion was premature and asked the Court to schedule a status conference to discuss the issues in August 2020, or at a date following the anticipated completion of the already scheduled three rounds of pretrial motions. (Doc. 196). In support of the request to set a status hearing on mental health issues for August, the defense advised the Court of the (pre-COVID pandemic) 22 month average time between the filing of a Notice of Intent to Seek Death and Rule 12.2

notice(s) and 20 month average time between the Notice of Intent and an *Atkins* notice. (Doc. 196 at 8).

3.   On February 25, 2020, the Court denied the government's motion for an April 23, 2020 deadline and scheduled a status conference for June 25, 2020. The Court's Order set forth the expectation that the defense would make productive use of the four months in the interim. (Doc. 208). Three weeks later, the uncontrolled spread of COVID necessitated that in-person meetings and fieldwork, including travel for both, be stopped.

4.   To be clear, the defense has made productive use of time since being appointed to represent Mr. Bowers, and it substantially intensified those efforts after the Attorney General rejected Mr. Bowers' offered guilty pleas to life in prison without the possibility of release and directed that the death penalty be sought. Indeed, by the time of the Court's February 25, 2020 Order, the defense had filed several pretrial motions, continued to seek and review discovery, and was actively investigating Mr. Bowers' life history in accordance with Guidelines promulgated by the American Bar Association for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. Feb. 2003), the Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, and relevant case law. The multi-generational investigation is time consuming and requires in-person interviews as well as extensive record collection, which cannot happen unless the agencies which maintain those records are open and sufficiently staffed to respond to requests, something that many governmental and non-governmental entities still cannot manage due to COVID.  In-person interviews cannot

yet be safely restarted, especially now, as the number of new cases per day is peaking, the positive test rate remains high, and the death toll continues to rise. Restrictions on travel and gatherings are again increasing rather than decreasing.

5. Despite making the best use of time and pressing forward in other areas less impacted by COVID (*see* Status Report, filed contemporaneously with this motion, at Part V), the defense has been unable to investigate critical components of Mr. Bowers' life history. As explained in prior filings, the defense relies on that biopsychosocial history in order to select appropriate experts with the necessary training and specialization, and the mental health experts depend on the biopsychosocial history in order to tailor their assessments to the individual and to interpret the data they obtain in the context of genetic and social determinants of mental illness. Based on the work of the experts, the defense typically identifies additional investigative work which needs to be pursued, requiring further interviews and record collection. The experts the defense began to work with in Mr. Bowers' case pre-COVID were engaged in this iterative process with the defense team when the global pandemic shut down the country.

6. In anticipation of the first status conference after the national shutdown due to COVID, the defense sought permission to file a document under seal and *ex parte* regarding "the defense team's investigation and work with experts." (Doc. 217). Following the April 14, 2020 telephonic status conference, during which the prosecution objected to the Court receiving the *ex parte* information, the Court denied the defense request, finding it was moot. (Doc. 220). In each status conference report pleading since,

the defense has offered, albeit without filing a formal request, to provide the Court with an *ex parte* pleading specifically focused on confidential defense work with experts. (Doc. 227, n. 1; Doc. 243, n. 4; Doc. 273, n. 2). The government repeatedly objects to such an *ex parte* filing, although it does not dispute that it is not entitled to the confidential information it contains.

7. Contemporaneous with this Request, the defense is filing a public status report regarding ongoing pandemic-related impediments to effectively defend Mr. Bowers in this capital prosecution, including the inability to safely conduct field investigation and mental health expert evaluations. However, because of the Court's plans to discuss mental health evidence, (Doc. 279) and the prosecution's ongoing, unsupported insistence that the defense is simply delaying for the sake of delay, the defense seeks again to provide the Court – *ex parte* – with specifics regarding the state of its mental health investigation and expert work.

8. The document will provide the Court with additional details regarding the status of the defense investigation as it pertains to the defense's work with mental health experts and the challenges to moving forward while COVID continues to present a serious safety risk to the work of the defense. The document must be provided *ex parte* and under seal because the government, as it concedes, is not entitled to defense confidential work product or attorney-client protected information.

9. The defense also requests permission to file the document under seal without also filing a redacted version.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender

5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 18-292 |
| | ) |
| ROBERT BOWERS | ) |

**ORDER OF COURT**

Upon consideration of Robert Bowers' Motion for Leave to File Document Concerning Confidential Defense Mental Health Investigation Information Under Seal and *Ex Parte*, it is hereby ORDERED that the Motion is GRANTED.

It is further ORDERED that Mr. Bowers is not required to file a redacted version of the document.

The document shall remain sealed until further Order of the Court.

_____  _____
Date                                                         Donetta W. Ambrose
                                                                    United States Senior District Judge