IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 18-292 |
| ROBERT BOWERS | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE SEIZED DURING
SEARCH OF RECORDS ASSOCIATED WITH GEOLOCATION
DATA AND EMAIL ADDRESS (MOTION TO SUPPRESS NO. 13)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Trial Attorney, Civil Rights Division, and submits this Response in Opposition to Defendant Robert Bowers's Motion to Suppress Evidence Seized During Search of Records Associated with Geolocation Data and Email Address (Motion to Suppress No. 13) (Doc. No. 300).

**I.    SUMMARY**

The defendant seeks to suppress ▓▓▓▓ Account information (the "▓▓▓▓ Account") and records associated with the email address ▓▓▓▓" (the "▓▓▓▓ Account") on the grounds that: (1) the ▓▓▓▓ Account warrant is overbroad in that the affidavit fails to establish probable cause to obtain the records for any date other than October 27, 2018; and (2) the ▓▓▓▓ Account affidavit fails to establish probable cause that a search would yield evidence of criminal activity. For the reasons explained below, the Court should deny the defendant's motion, because the defendant has no privacy interest in the records returned by ▓▓▓▓ and almost all of the ▓▓▓▓ records, because the affidavit provides the magistrate judge with a substantial basis for concluding that there was probable cause, and because

the ▇▇▇ warrant is sufficiently particularized.  Finally, even if this Court were to find that the defendant had a reasonable privacy interest in the records obtained and/or that there was some defect in the warrants, the good faith exception applies and the searches should be upheld.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2018, defendant Robert Bowers drove to the Tree of Life Synagogue and entered the building carrying multiple firearms, including an assault-style rifle and multiple handguns.  See Doc. No. 300, Exh. A (Affidavit) at ¶ 5.  The Synagogue housed three separate Jewish congregations, and at the time the defendant entered the building, people had already gathered within the building or were arriving to engage in religious services and worship.  The defendant opened fire, killing 11 worshipers and wounding others.  See id. at ¶ 7. Law enforcement officers responded to the scene and the defendant also opened fire upon them, injuring ▇▇ officers.  Id.

While inside the Tree of Life Synagogue, the defendant made statements indicating his desire to "kill Jews."  Id. at ¶ 8. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████

On October 27, 2018, ████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
███████████████████████████, in order to uncover evidence of, among other things, the defendant's planning and premeditation, racial bias and motive, and possible co-conspirators, investigators sought a search warrant for account information and stored communications associated with the ████ Account. See id. at ¶¶ 3, 28-32. ██████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████████

On ████████████, the government also sought and obtained authorization to seize subscriber and location records related to the ██████ Account. Doc. No. 300, Exh. B. ██
██████████████████████████████████
██████████████████████████████████

3

███████████████████████████████████████

████████████████████████████

### III. LEGAL STANDARD AND ANALYSIS

#### A. The Defendant Does Not Have Standing to Challenge Recovery of Subscriber and Account Information; He Has No Reasonable Privacy Interest in Such Records

The Fourth Amendment "protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). A defendant may invoke the exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993) (citation omitted). It is the defendant's burden to establish that he had a reasonable expectation of privacy in the property searched and the item seized. Minnesota v. Olson, 495 U.S. 91, 95–97 (1990); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Stearn, 597 F.3d 540, 553 (3d Cir. 2010) (lower court "erred in ordering the suppression of evidence without regard to defendants' ability to demonstrate legitimate expectations of privacy in the locations searched"). This requires the defendant to demonstrate both that he had a "subjective expectation of privacy in the area searched and that his expectation was objectively reasonable." United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014). A defendant cannot rely on the government's intention to link him to an account. See, e.g., United States v. Gatson, 744 F. App'x 97, 100 (3d Cir. 2018); United States v. Watson, 404 F.3d 163, 166–67 (2d Cir. 2005).

Accordingly, the Fourth Amendment does not protect subscribers from the production of subscriber records by third-party service providers, and no court considering the issue has found otherwise. United States v. Perrine, 518 F.3d 1196, 1202 (10th Cir. 2008) (surveying cases);[1]

---

[1] See Perrine, 513 F.3d at 1204-05 ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation"), citing Guest v. Leis, 255 F.3d 325, 336 (6th Cir.2001); United States v. Hambrick, 225 F.3d 656 (4th Cir.2000) (unpublished), affirming United States v. Hambrick, 55 F. Supp. 2d 504, 508–09 (W.D. Va. 1999); United States v.

United States v. Christie, 624 F.3d 558, 573-74 (3d Cir. 2010) (citing Perrine with approval for proposition that there is no reasonable privacy expectation in subscriber information and finding that defendant "had no reasonable expectation of privacy in his IP address and so cannot establish a Fourth Amendment violation"); United States v. Stanley, 2012 WL 5512987, at *17 (W.D. Pa., November 14, 2012) (Conti, J.) (acknowledging case law that no privacy interest exists in subscriber information and IP address records and finding that defendant had no "reasonable expectation of privacy in the signal which he voluntarily conveyed to a third party"), aff'd, 753 F.3d 114 (3d Cir. 2014); United States v. Morel, 922 F.3d 1, 9 (1st Cir. 2019), cert. denied, 140 S. Ct. 283 (2019) (no privacy interest in IP address information).

There is also no reasonable expectation of privacy in communications between a subscriber and the service provider as ordinarily, once an item has been received by the intended recipient ▮▮▮▮▮▮ the sender's reasonable expectation of privacy in the item terminates. See, e.g., United States v. King, 55 F.3d 1193, 1196 (6th Cir. 1995) (sender's expectation of privacy in letter "terminates upon delivery"); United States v. Horowitz, 806 F.2d 1222, 1224-26 (4th Cir. 1986) (defendant had no reasonable privacy interest in email recovered from recipient's computer); see also Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001) (stating that sender of email "would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient; at this moment, the e-mailer would be analogous to a letter-writer, whose 'expectation of privacy ordinarily terminates upon delivery' of the letter"); United States v. Charbonneau, 979 F. Supp. 1177, 1184 (S.D. Ohio 1997) (stating that a sender of an email "cannot be afforded a reasonable expectation

---

D'Andrea, 497 F. Supp. 2d 117, 120 (D. Mass. 2007); Freedman v. America Online, Inc., 412 F. Supp. 2d 174, 181 (D. Conn. 2005); United States v. Sherr, 400 F. Supp. 2d 843, 848 (D. Md. 2005); United States v. Cox, 190 F. Supp. 2d 330, 332 (N.D.N.Y. 2002); United States v. Kennedy, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000), and referencing United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2008); United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004).

5

of privacy once that message is received.").

Because the defendant has no legitimate privacy interest in the ▮▮▮▮ subscriber and account records obtained pursuant to the search warrant (and he does not allege otherwise), his motion must be denied as to such records. See, e.g., Christie, 624 F.3d at 574; Perrine, 518 F.3d at 1204-05 (surveying cases). The defendant similarly has no reasonable privacy interest in the other materials produced by ▮▮▮▮: a publicly available user's manual and communications between himself and ▮▮▮▮. King, 55 F.3d at 1196; Horowitz, 806 F.2d at 1224-26; Guest, 255 F.3d at 333; Charbonneau, 979 F. Supp. at 1184. Given that ▮▮▮▮ only produced materials in which the defendant has no reasonable expectation of privacy, the defendant's motion should be denied in whole as to the ▮▮▮▮ warrant.

Similarly, with the exception of one text message (which is addressed below), the defendant has no legitimate privacy interest in the materials produced by ▮▮▮▮, which consist of straight-forward account-holder information, and which are duplicative of materials already obtained by subpoena. The defendant has no reasonable privacy interest in ▮▮▮▮ text messages as these are communications from ▮▮▮▮ to him. Cf. King, 55 F.3d at 1196; Horowitz, 806 F.2d at 1224-26; Guest, 255 F.3d at 333; Charbonneau, 979 F. Supp. at 1184.

**B.  Probable Cause is a Commonsense Determination and Preference is to be Accorded to Warrants**

The Fourth Amendment protects against "unreasonable searches and seizures," mandating that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. Amend. IV. Federal Rule of Criminal Procedure 41 – which governs the issuance, execution, and return of federal search warrants – further provides that "[a]fter receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize" the property. Fed. R. Crim. P 41(d)(1).

6

Probable cause is a "commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." United States v. Laville, 480 F.3d 187, 196 (3d Cir. 2007) (citing Ornelas v. United States, 517 U.S. 690, 695 (1996)) (internal quotations marks omitted); United States v. Gates, 462 U.S. 213, 231 (1983) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). A magistrate judge's probable cause determination thus involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Stearn, 597 F.3d at 554 (citing Gates, 462 U.S. at 238). Indeed, "statements in an affidavit may not be read in isolation – the affidavit must be read as a whole." United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1993) (citations omitted). In making the probable cause determination, the judge is permitted to draw reasonable inferences from the facts set forth in an affidavit. United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993).

A magistrate judge's conclusions regarding probable cause "are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005). The reviewing court may not conduct a de novo review of a probable cause determination. Gates, 462 U.S. at 236. It must instead cabin its "after-the-fact scrutiny" to whether the magistrate judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing[.]" Id. (internal quotations and modifications omitted); Stearn, 597 F.3d at 554; United States v. $92,422.57, 307 F.3d 137, 146 (3d Cir. 2002) ("a deferential standard of review is applied in determining whether the magistrate judge's probable cause decision was erroneous"). In conducting this review, the court is limited to the facts that were before the magistrate judge – that is, the "four corners" of the

7

warrant affidavit. Jones, 994 F.2d at 1055; United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000). If the magistrate judge's finding "was made consistent with the minimal substantial basis standard[,]" the court must uphold that finding. Conley, 4 F.3d at 1205. This is so even if the reviewing court, or a different magistrate judge, might not have found probable cause in that particular case. Id.; Stearn, 597 F.3d at 554.

Thus, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). Moreover, where portions of a warrant are invalid, the offending phrases may be stricken, and the materials seized pursuant to those phrases may be suppressed, such that the warrant need not fail as a whole. United States v. Beatty, 437 F. App'x 185, 187 (3d Cir. 2011); $92,422.57, 307 F.3d at 149.

An overbreadth challenge is "closely intertwined" with a probable cause challenge. See United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1106 (3d Cir. 1989). "[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate." United States v. Yusuf, 461 F.3d 374, 395 (3d Cir. 2006). An overly broad warrant "can be cured by redaction, that is by 'striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." $92,422.57, 307 F.3d at 149 (citation omitted). Therefore, even if a court determines that some provisions of a warrant are impermissibly overbroad, the fruits of those portions of the search can be excised and the remainder preserved.

1. The Scope of the ▇▇▇ Warrant was not Overly Broad

Even if the defendant had a legitimate Fourth Amendment privacy interest, which he did not, the affidavit establishes probable cause to obtain all of the records related to the ▇▇▇ Account. Despite half-heartedly conceding that the government established probable cause to obtain records for October 27, 2018, the defendant backtracks and demands that the government "spell out" the relevance of the ▇▇▇ Account records from that day. The defendant further takes issue with the government's assertion that the defendant engaged in premeditation and planning, and that the information associated with this account "will contain information and/or evidence in support of establishing the commission of the crimes" under investigation. While the defendant argues that the affidavit contains "no facts" supporting probable cause, he actually demonstrates (and concedes) that, when read as a whole and in context and allowing for reasonable inferences, as required by law, there was probable cause for the issued search warrant:

> [B]ecause Mr. Bowers drove to the Synagogue on October 27th in the ▇▇▇ vehicle, the ▇▇▇ account would provide evidence of where he drove from, the route that he took, the time it took him to travel, and other information that would enable agents to reconstruct the crime.

See Doc. No. 300 at 8. This admission alone confirms that this Court should uphold the magistrate judge's conclusion that the affidavit establishes probable cause.

In a weak attempt at arguing that the warrant was overbroad, the defendant asserts that the warrant "contained no date limitation, thus allowing the government to seize records from when the ▇▇▇ Account was activated to the present." Id. at 7. But the warrant does not seek records as voluminous as the defendant implies. Attachment A to the warrant notes that the records are sought for a ▇▇▇. Id., Exh. A at 12. Applying a "commonsense, nontechnical" interpretation of the warrant based upon the "factual and practical considerations of everyday life,"

9

Laville, 480 F.3d at 196, the warrant is clearly limited to an approximately ▮▮▮▮ period.

It was reasonable for the magistrate judge to find a reasonable probability that evidence of the enumerated offenses would be found in the ▮▮▮▮ Account during that time period. The affidavit establishes ▮▮▮▮

▮▮▮▮

▮▮▮▮ Contrary to the defendant's assertion, the "issuing … magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." Whitner, 219 F.3d at 296. The affidavit establishes that ▮▮▮▮

▮▮▮▮. The government need not divine the exact date when the defendant began his planning and when he formed his anti-Semitic bias. Agents reasonably sought additional information to help understand the defendant's formation of his plan and bias in an appropriately limited manner — and even though no Fourth Amendment protections apply to the information obtained.

Finally, even if this Court were to find that a ▮▮▮▮ period of time was overly broad, that overbreadth would serve only to limit location records (which were not produced in any event). See $92,422.57, 307 F.3d at 149 (overbreadth "can be cured by redaction, that is by 'striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment.") (quoting Christie, 687 F.2d at 754). This is because, again, the defendant has no reasonable privacy interest in the account records, Christie, 624 F.3d at 574, due to the fact that these types of records are qualitatively different than location information.

2.  There was Probable Cause to Believe that the ▊ Account Held Evidence of the Enumerated Offenses

As set forth above, the defendant has no privacy interest in the ▊ records and the ▊ text messages from ▊ to the defendant, leaving at issue only one text message recovered pursuant to the ▊ warrant. Reading the affidavit as a whole, as the law requires, the magistrate judge reasonably found that there was a fair probability that evidence of the enumerated offenses – which require proof that the offense was motivated by a victim's actual or perceived religion or race, involved the use of a firearm, resulted in bodily injury, resulted in death, or involved an attempt to kill – could be found within the ▊ Account. The affidavit establishes that ▊

▊ Seeking relevant evidence of the defendant's motive and religious animus, how he planned and executed the attack, and any co-conspirators or other planned attacks, agents obtained a warrant to access the defendant's ▊ Account.

The affidavit also establishes that ▊

It was reasonable to conclude that ▊

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████  Considering the above and all reasonable inferences flowing therefrom, the magistrate judge reasonably concluded that these facts established a fair probability that agents would find evidence of the defendant's motive and planning in his ██████ Account. Giving appropriate deference to this determination, the Court should uphold the warrant.

The defendant nonetheless argues that "[t]he affidavit failed to … to connect the email address … to criminal activity" and that "[n]o facts indicat[e] that Mr. Bowers used the ██████████████ email address in any other manner" than "██████████████ ██████████████  Doc. No. 300 at 11-12. In the first instance, this ignores that the facts set forth in the affidavit create a reasonable inference that the defendant ██████████ ██████████████████████████████████████  Furthermore, the government was not required to establish a direct link to criminality, that the defendant "ever used" the account in question to communicate animus or bias, or that evidence would definitively be found in the search location. Rather, the government was only required to show "a fair probability" that evidence of the defendant's crimes would be found in the records sought. Gates, 462 U.S. at 238 (probable cause finding is "a practical, common-sense decision" based upon "all the circumstances set forth in the affidavit … there is a fair probability that … evidence of a crime will be found in a particular place"); see also Jones, 994 F.2d at 1056 (A search warrant need not contain "direct evidence linking the place to be searched to the crime.").[2] In any case, the affidavit

---

[2]   While the defendant attempts to heighten this standard by citing to a Sixth Circuit case for the proposition that a direct link must be established between the search location and the crime, Doc. No. 300 at 11, it is clear that the

sets forth sufficient facts for the magistrate judge to reasonably conclude that it was fairly probable the ▮▮▮ Account could have evidence that ▮▮▮



The defendant's allegation that the affidavit contains insufficient facts establishing a nexus is patently wrong, and the Court should not entertain his attempted misdirection. The magistrate judge had a substantial basis to believe that the agents' search of the ▮▮▮ Account records would yield evidence of the defendant's crimes.

    C.    **The ▮▮▮ Warrant was Sufficiently Particularized**

This Court should also reject the defendant's particularity challenge, which argues that "the search warrant for Mr. Bowers' ▮▮▮ Account failed to tie the search and seizure of the items to any specific crime or criminal behavior." Doc. No. 300 at 10.

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched." U.S. Const. Amend. IV. The particularity requirement "not only prevents general searches, but also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" Ritter, 416 F.3d at 265 (quoting United States v. Chadwick, 433 U.S. 1, 9 (1977)). "A warrant offends the particularity requirement when it amounts to a 'general warrant' or one that is unconstitutionally overbroad." United States v. Dewald, 361 F. Supp. 3d 413, 416 (M.D. Pa. 2019). The Third Circuit explained that a warrant is not unconstitutionally general "unless it can be said to 'vest the executing officer with unbridled discretion to conduct an exploratory

---

Sixth Circuit used this language to convey the well-established probable cause standard and in no way meant to heighten such standard. United States v. Abernathy, 843 F.3d 243, 249 (6th Cir. 2016) (in setting forth probable cause standard, citing and quoting Gates, 462 U.S. at 238). In any case, the Third Circuit has clearly stated that no such direct link need be established. Jones, 994 F.2d at 1056.

rummaging . . . in search of criminal evidence.'" United States v. Leveto, 540 F.3d 200, 211 (3d Cir. 2008) (quoting United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982)).

Where a warrant sets forth the items to be seized with sufficient particularity, the failure to cite the offense being investigated is not fatal to the warrant.  See In re 309 Primrose Lane Hanover, Pennsylvania 17331, 2007 WL 9775647, at *7 (M.D. Pa. Aug. 13, 2007), aff'd, No. 07-3689, 2009 WL 762417 (3d Cir. Mar. 24, 2009); United States v. Fumo, 565 F. Supp. 2d 638, 644 (E.D. Pa. 2008) (rejecting particularity challenge "because a search warrant need not specify the particular crimes for which evidence is sought"); United States v. Kofsky, No. 06–392, 2007 WL 2480971, at *16 (E.D. Pa. Aug. 28, 2007) ("[T]here is no per se requirement that a search warrant describe the criminal activity alleged" (citing United States v. Slaey, 433 F. Supp. 2d 494, 495 n. 1 (E.D. Pa. 2006)); United States v. Johnston, 2006 WL 359934, at *11-12 (D. Ariz. Feb. 15, 2006); cf. United States v. Meek, 366 F.3d 705, 713 (9th Cir. 2004) ("Because the affidavit established probable cause as to a violation of California law and the items sought under the warrant corresponded to that probable cause determination, the [fact that the wrong statute was specified] in the affidavit is not fatal to the warrant's validity.").  Indeed, the Fourth Amendment sets forth no such requirement.  It specifies only two matters that must be described with particularity: "the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV; United States v. Grubbs, 547 U.S. 90, 97 (2006) (noting that the Fourth Amendment contains no general particularity requirement, that it specifies only two matters that must be particularly described, and that the Supreme Court has "rejected efforts to expand the scope of this provision to embrace unenumerated matters").

The magistrate judge found that there was probable cause to believe that all of the records sought were evidence of the enumerated offenses and could be disclosed to the government

14

without further parsing. Doc. No. 300, Exh. A. In response to the warrant, ███ ███ ███. The search here is readily distinguishable from the search of a home, the execution of which agents necessarily exercise discretion to determine what items should be seized and which discretion can be guided by language in the warrant specifying categories of evidence or specifying for which offenses evidence should be located. The agents had no part of the warrant's execution and no power to expand the body of the records obtained. In other words, the concerns raised by general warrants are completely absent here. See Doc. No. 300 at 9 (raising concern that warrant should not permit "a general exploratory rummaging in a person's belongings" and that valid warrant leaves "nothing [] to the discretion of the officer executing the warrant"). Reference to hate crimes, criminal interference with religious exercise, or the possession or use of a firearm is thus unnecessary to aid a common-sense reading of the warrants and guide the seizure of items listed therein. The warrant was therefore sufficiently particularized and the defendant's motion should be denied.

> D. **The ███ Materials Would Have Been Inevitably Discovered**

Even if this Court were to find no probable cause supports the warrant for the ███ Account (which the United States does not concede), the defendant's motions to suppress the ███ records must still be denied. The government already had some of the information in its possession from an independent source, and the remaining information would have been inevitably discovered. The exclusionary rule does not apply when the prosecution has an independent, untainted source of the evidence or when the evidence would have been inevitably discovered. Murray v. United States, 487 U.S. 533, 537 (1988); Nix v. Williams, 467 U.S. 431, 443 (1984). Under the inevitable discovery doctrine, evidence obtained through a constitutional violation is

still admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." <u>Nix</u>, 467 U.S. at 444.



Accordingly, the government, through this independent source, was aware that there was a fair probability that relevant communications would be found in the ▆ Account. Thus, the ▆ would have been inevitably discovered. The Court should deny the motion as to the ▆ records for this reason as well.

### E. The Good Faith Exception Applies to Both Warrants

The extraordinary remedy of suppression is not appropriate here even if the Court were to find the warrants deficient in some respect. "Whether to suppress evidence under the exclusionary rule is a separate question from whether the United States has violated an individual's Fourth Amendment rights." <u>United States v. Katzin</u>, 769 F.3d 163, 170 (3d Cir. 2014) (citing <u>Hudson v. Michigan</u>, 547 U.S. 586, 591-92 (2006)). A defendant thus has no constitutional right to

suppression, and it "is not an automatic consequence of a Fourth Amendment violation." Herring v. United States, 555 U.S. 135, 137 (2009).

Courts have long recognized that the exclusionary rule imposes "substantial social costs" by hiding often crucial evidence and hindering the courts' truth-seeking function. United States v. Leon, 468 U.S. 897, 907 (1984). As a result, they have repeatedly affirmed that suppression "has always been our last resort, not our first impulse." Hudson, 547 U.S. at 591; Herring, 555 U.S. at 140; Katzin, 769 F.3d at 170. The police conduct at issue "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144 (The exclusionary rule is meant only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). Where there is "an objectively reasonable good-faith belief that [the conduct] is lawful, or when [the] conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." United States v. Franz, 772 F.3d 134, 145 (3d Cir. 2014) (quoting Davis v. United States, 564 U.S. 229, 238 (2011), and citing Herring, 555 U.S. at 137, Leon, 468 U.S. at 919, Katzin, 769 F.3d at 171).

Deciding whether the exclusionary rule applies thus requires a careful balancing of suppression's significant costs against the possible value of deterrence. Relying on Supreme Court precedent, the Third Circuit has demanded a case-by-case cost-benefit analysis, rather than a categorical approach, when evaluating whether officers acted with objectively reasonable good-faith belief in their actions. Franz, 772 F.3d at 145. This "fact-specific analysis is required," and "the need to weigh the costs and benefits of exclusion is constant." Id. at 146. Using this approach, the Third Circuit has declined to categorically exclude evidence, even where officers relied on warrants that were facially deficient by failing to particularize the items to be seized. See, e.g.,

Franz, 772 F.3d 134; United States v. Wright, 777 F.3d 635 (3d Cir. 2015). The Third Circuit instead affirmed the need to examine the totality of the circumstances, such as the officer's conduct and knowledge, noting that the Supreme Court has "suggested that the absence of culpability is dispositive." Franz, 772 F.3d at 147 (citing Davis, 564 U.S. at 238).

"[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has 'acted in good faith in conducting the search.'" Leon, 468 U.S. at 922 (internal quotations omitted). Accord Stearn, 597 F.3d at 561 ("Ordinarily, the 'mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'") (citations omitted). "Suppression therefore is inappropriate where an officer executes a search in objectively reasonable reliance on a warrant's authority." Leon, 468 U.S. at 922.

Here, in the wake of a mass shooting event, investigators sought more information about why the defendant committed his violent crimes and whether he coordinated with anyone. They determined that he had used the internet to communicate his animus in the past. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ agents sought a warrant to search associated records for further evidence of the crimes. They also sought information held by ▮▮▮ which could shed light on his possible planning and reconnaissance. This is the preferred process the Fourth Amendment dictates in order to preclude unreasonable searches.

The defendant does not allege that the affiant provided false information or that law enforcement engaged in any misconduct in executing the search. He only alleges that the facts presented in the affidavit, in his strained interpretation, failed to establish a sufficient basis for the magistrate judge to issue the warrants. Also, as discussed, the affidavit and attachments to the warrants restrict the locations to be searched and the data that can be seized, so they are not facially

18

deficient for lack of particularity. If the Court should find any aspect of the defendant's flawed arguments compelling enough to question the warrants, it should also find that agents relied in good faith on the warrants when conducting their searches. There is no evidence of any misconduct to deter, so suppression is an inappropriate remedy for any flaw the Court finds.

F. **An Evidentiary Hearing is Not Required**

The defendant does not request an evidentiary hearing to resolve this motion. Nor is he entitled to one, where his claims lack merit and he raises no disputed issues of material fact.

An evidentiary hearing on a suppression motion is not presumed as a matter of course. United States v. Hines, 628 F.3d 101, 104-05 (3d Cir. 2010). Courts have recognized that an evidentiary hearing on a suppression motion is required only if the motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." Hines, 628 F.3d at 105 (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)); see also United States v. Brown, No. CR 15-182, 2017 WL 3593883, at *11 (W.D. Pa. Aug. 21, 2017) (to seek suppression hearing, defendant must state a colorable legal claim, identify material facts, show facts are disputed, and request a hearing to resolve the dispute (citing Hines, 628 F.3d at 108)); United States v. Solomon, No. CR 05-385, 2007 WL 9702871, at *3 (W.D. Pa. June 26, 2007) (denying hearing in capital prosecution where defendant did not demonstrate the need). This widely-accepted standard is justified by the need to avoid convening unnecessary evidentiary hearings that waste scarce judicial resources and misuse the hearing as a tool to preview the trial evidence.

The defendant's objections to the warrants present no disputes of material fact. He does not lay out any factual disagreement over the process for obtaining and executing the warrants,

and he does not contest the factual allegations contained in the warrant affidavits.  See Hines, 628 F.3d at 106 (affirming denial of evidentiary hearing where the defendant's motion agreed with government's version of events); Brown, 2017 WL 3593883, at *11-12 (denying suppression motion hearing because defendant did not raise a material fact or dispute government affidavit's version of events).  Instead, the defendant's suppression motions present solely legal claims – primarily, whether the undisputed facts at issue satisfy the Fourth Amendment's probable cause and particularity requirements.  Accordingly, the defendant's suppression motion fails to provide any basis to require an evidentiary hearing.  Each of his claims raise legal (not factual) challenges that can and should be denied on the briefing alone.

**IV.    CONCLUSION**

For the reasons herein stated, the government opposes the defendant's Motion to Suppress evidence obtained pertaining to the ▮▮▮▮▮▮▮▮▮▮ Accounts, Doc. No. 300, and said Motion should be denied in its entirety.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Trial Attorney
Civil Rights Division
NY ID No. 4949475