IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTIONS TO
SUPPRESS EVIDENCE SEIZED DURING SEARCHES OF TARGET RESIDENCE,
TARGET P.O. BOX, and TARGET VEHICLE
(MOTIONS TO SUPPRESS NOS. 1 and 2)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United

States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant

United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil

Rights Division, and hereby files its response in opposition to defendant Robert Bowers's motions

to suppress evidence seized during the execution of warrants at the defendant's residence, Post

Office Box, and vehicle (Doc. Nos. 288, 289).

I.   **SUMMARY**

In his motions, Bowers argues that the Court should suppress evidence seized from these

locations because the underlying search and seizure warrants are deficient in four respects: (1) the

warrants are not supported by probable cause; (2) the second and third residence warrants relied

entirely on an invalid first residence search; (3) the warrants do not describe the items to be seized

with sufficient particularity; and (4) the government searched electronic evidence after the

warrants expired.

The defendant's arguments lack merit: he urges a piecemeal, myopic, and hyper-technical

approach to reading warrants that courts have repeatedly rejected.  Here, the challenged warrant

applications provide a clear and specific list of the items authorized to be seized.  The supporting affidavits set out facts that, read as a whole and in a manner consistent with governing law, establish "a fair probability" that the searches would yield evidence of Bowers's use of weapons to carry out a premeditated, bias-motivated synagogue attack.  Moreover, the searches and seizures pursuant to those warrants were conducted in straightforward compliance with the law and Federal Rules of Criminal Procedure.  The motions should be denied.

## II.      RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the morning of October 27, 2018, defendant Robert Bowers, armed with multiple firearms, entered the Tree of Life Synagogue.  The Synagogue housed three separate Jewish congregations, and at the time Bowers entered the building, people had already gathered within the building or were arriving to engage in religious services and worship.  Once inside the Synagogue, Bowers opened fire, killing or injuring several congregants, and wounding multiple law enforcement officers.  The defendant also made repeated statements expressing anti-Semitic beliefs, suggesting that his actions were motivated by animus toward Jewish people.  See Doc. No. 44 (Superseding Indictment).

The government's investigation of the attack indicated that Bowers's conduct violated 18 U.S.C. §§ 247 (Obstruction of Free Exercise of Religious Beliefs), 249 (Hate Crime Acts), and 924 (Use of a Firearm in Connection with a Crime of Violence).  Relevant here, such violations variously require proof that the offense was motivated by a victim's actual or perceived religion or race, involved the use of a firearm, resulted in bodily injury, resulted in death, or involved an attempt to kill.  See, e.g., 18 U.S.C. §§ 247(d)(1), (d)(3); 249(a)(1); 924(c), (j).

██████████████████████████, the government submitted warrant applications seeking authorization to search and seize evidence from the defendant's vehicle, which was ███

2

████████████████████████ during the attack, his residence in ████████████████, and his Post Office Box (P.O. Box) in ██████████████████. Doc. No. 288, Exhs. A, B, C. The warrant applications are supported by a 13-page affidavit from the FBI Special Agent. The affidavit details that ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████. See Doc. No. 288, Exh I. Each warrant application is supported by attachments, ██████████████████ into the warrant, listing the places to be searched and items to be seized. Doc. Nos. 288, Exh. A at 2-5; Exh. B at 2; Exh. C at 2-5.

The magistrate judge signed the warrants on ████████████. Pursuant to those warrants, government agents searched the defendant's vehicle, residence, and P.O. Box ██████████. The agents obtained a number of items from the vehicle, including ████████████████████ ██████████████████████████████. Doc. No. 288, Exh. F. During the search of Bowers's residence, agents seized ████████████████████████████████████████ ████████████████████████████████████████████████. Doc. No. 288, Exh. D. Only ███ items – ██████████████████████████████ – were seized from the defendant's P.O. Box. Doc. No. 288, Exh. E.

Subsequent to the execution and return of those warrants, the government submitted a second warrant application for the defendant's residence, to search for and seize ████████████ ████████████████████████. Doc. No. 289, Exh A. That application is supported by an affidavit containing ████████████████████████████████████████████, with an addition: ████████████████████████████████████████████████████



████████████████████████████████████████████████.  Id. at 5.
The magistrate judge signed the warrant ██████████████████ Bowers's attack.  Id.
at 1.

The government later submitted a third warrant application for the residence, seeking

████████████████████████████████████████████████

██████████.  Doc. No. 289, Exh. B at 4.  The supporting affidavit contains ████████████████

███████████████████████████████.  It adds, however, that ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████.  The affidavit also notes that ██

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████.  Id. at 9-11.  The magistrate judge signed that warrant on

████████████████.  Id. at 1.

On October 31, 2018, a federal grand jury returned a 44-count Indictment, charging that
Bowers violated 18 U.S.C. §§ 247(a) and (d), as well as §§ 924(c) and (j).  Doc. No. 10.  On
January 29, 2019, the grand jury returned a 63-count Superseding Indictment that charged Bowers
with violating 18 U.S.C. § 249 in addition to §§ 247 and 924.  Doc. No. 44.

Defendant Bowers filed the instant motions on October 1, 2020, seeking to suppress
evidence seized during searches of his residence, P.O. Box, and vehicle.  The defendant asks this
Court to suppress several categories of evidence listed in the warrant applications; he does not
request an evidentiary hearing to resolve the motions.  Doc. Nos. 288, 289.

### III. <u>LEGAL STANDARD</u>

The Fourth Amendment protects against "unreasonable searches and seizures," mandating that "no warrants shall issue, but upon probable cause, supported by oath or affirmation."  U.S. Const. Amend. IV.   Federal Rule of Criminal Procedure 41 – which governs the issuance, execution, and return of federal search warrants – provides that "[a]fter receiving an affidavit or other information, a magistrate judge … must issue the warrant if there is probable cause to search for and seize" the property.   Fed. R. Crim. P 41(d)(1).

Probable cause is a "fluid concept" that turns on the "assessment of probabilities in particular factual contexts" and is "not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983).  It is a "commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." <u>United States v. Laville</u>, 480 F.3d 187, 196 (3d Cir. 2007) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996)) (internal quotations marks omitted); <u>Gates</u>, 462 U.S. at 231 (citing <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949)).

A magistrate judge's probable cause determination thus involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>United States v. Stearn</u>, 597 F.3d 540, 554 (3d Cir. 2010) (citing <u>Gates</u>, 462 U.S. at 238).  The judge must read a warrant's supporting affidavit "in its entirety and in a common sense, nontechnical manner." <u>United States v. Miknevich</u>, 638 F.3d 178, 182 (3d Cir. 2011); <u>United States v. Conley</u>, 4 F.3d 1200, 1206 (3d Cir. 1993).  Indeed, "statements in an affidavit may not be read in isolation – the affidavit must be read as a whole." <u>Conley</u>, 4 F.3d at 1208 (citations omitted).  This totality-of-the-circumstances approach requires that a judge "focus on what the affidavit includes, not what

is missing." Miknevich, 638 F.3d at 184. Furthermore, in making the probable cause determination, the judge is permitted to draw reasonable inferences from the facts set forth in an affidavit. See United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993).

A magistrate judge's conclusions regarding probable cause "are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005). The reviewing court may not conduct a de novo review of a probable cause determination. Gates, 462 U.S. at 236. It must instead cabin its "after-the-fact scrutiny" to whether the magistrate judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing[.]" Id. (internal quotations and modifications omitted); Stearn, 597 F.3d at 554; United States v. $92,422.57, 307 F.3d 137, 146 (3d Cir. 2002) ("a deferential standard of review is applied in determining whether the magistrate judge's probable cause decision was erroneous"). In conducting this review, the court is limited to the facts that were before the magistrate judge – that is, the "four corners" of the warrant affidavit. Jones, 994 F.2d at 1055; United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000). If the magistrate judge's finding "was made consistent with the minimal substantial basis standard[,]" the court must uphold that finding. Conley, 4 F.3d at 1205. This is so even if the reviewing court, or a different magistrate judge, might not have found probable cause in that particular case. Id.; Stearn, 597 F.3d at 554.

Thus, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). Moreover, where portions of a warrant are invalid, the offending phrases may be stricken, and the materials seized

pursuant to those phrases may be suppressed, such that the warrant need not fail as a whole.  United

States v. Beatty, 437 F. App'x 185, 187 (3d Cir. 2011); $92,422.57, 307 F.3d at 149.

IV.     **ANALYSIS**

Defendant Bowers challenges the vehicle, P.O. Box, and three residence warrants based on

an alleged lack of probable cause, lack of particularity, and delay in execution.  Doc. Nos. 288;

289.

As a preliminary matter, the defendant fails to assert any privacy interest in the targets of

these searches.  See United States v. Padilla, 508 U.S. 77, 81 (1993) (A defendant may invoke the

exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by

the challenged search or seizure.").  The defendant has the burden to establish standing.  United

States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014) (citing Minnesota v. Olson, 495 U.S. 91, 95-

97 (1990)).  To do so, he may not simply rely on the government's attributions or on allegations

in its pleadings; he must identify specific evidence in the record.  See e.g., United States v. Gatson,

744 F. App'x 97, 100 (3d Cir. 2018) (rejecting reliance on government attribution to defendant,

who must establish his expectation of privacy), cert. denied, 140 S. Ct. 124 (2019); United States

v. Watson, 404 F.3d 163, 166–67 (2d Cir. 2005); United States v. Zermeno, 66 F.3d 1058, 1062

(9th Cir. 1995) (defendant may not rely on government's assertions to establish standing).

Bowers makes only passing reference to "his residence" in his motion to suppress the first

searches.  Doc. No. 288 at 7, 10, 15, 16, 17, 23.  He refers to "his" P.O. Box just once, id. at 7, and

he never asserts ownership or use of the vehicle.  Bowers's motion to suppress the second and

third residence searches is completely silent on whether he resided or even spent time at that

property.  The defendant does not contend, in either motion, that he has a legitimate expectation

of privacy in the target residence, P.O. Box, or vehicle.  Such omission leaves the defendant far

7

short of his burden to establish a personal, reasonable expectation of privacy in the property searched and the items seized.  See Stearn, 597 F.3d at 553 (finding "egregious error" in court "ordering the suppression of evidence without regard to the defendants' ability to demonstrate legitimate expectations of privacy in the locations searched").  For this reason alone, the Court should deny the motions to suppress.

Moreover, though the P.O. Box items were obtained pursuant to a validly-issued warrant and would inevitably have been discovered during the government's extensive investigation, the government does not intend to introduce ███ of the items seized in its case in chief.  The defendant's challenge to the P.O. Box warrant is thus moot.  Cf. United States v. Leon, 468 U.S. 897, 910 (1984) (Unconstitutionally-obtained evidence is "inadmissible in the prosecution's case in chief [but] may be used to impeach a defendant's direct testimony.").  Consequently, the government's response focuses on the defendant's probable cause, particularity, and timing arguments as to the vehicle and residence searches only.  For the reasons discussed below, even assuming his standing to challenge the searches, Bowers falls short in each of those claims.

A.      **The First Residence Warrant Is Supported by Probable Cause**

The bulk of defendant Bowers's challenge is to the probable cause supporting the first warrant for his residence.  He argues that the affidavit failed to establish probable cause that certain items sought (1) were relevant to Bowers's criminal activity, and (2) would likely be found at the residence.  See Doc. No. 288 at 9.  Notably, the defendant fails to identify any particular item of evidence that he alleges was improperly seized.  He instead focuses his claims on the basis to search for and seize several categories of evidence, regardless of whether any such evidence was actually obtained.

Bowers makes his arguments only by parsing the language of the affidavit, viewing its assertions in isolation, and positing that the affidavit is deficient because additional facts could have provided direct evidence.  That approach, however, has been roundly rejected by courts in the probable cause analysis, which requires consideration of "the whole picture" and "recognize[s] that the whole is often greater than the sum of its parts – especially when the parts are viewed in isolation." District of Columbia v. Wesby, 138 S.Ct. 577, 588 (2018); see also United States v. Yusuf, 461 F.3d 374, 390 (3d Cir. 2006) (noting that the Third Circuit and Supreme Court have both "warned against the practice of overly compartmentalizing the determination of probable cause"); Conley, 4 F.3d at 1208 ("The district courts should focus not on what information an affidavit does not include, but rather on the information it does contain.").

### 1.   The Items Sought Are Relevant to the Defendant's Criminal Activity

Bowers first argues that the warrant affidavit does not establish a nexus between his criminal activity and the following categories of evidence: ███████████████████ ██████████████████████████████.  Doc. No. 288 at 10-16.  And though his motion frames it differently, the defendant mounts the same challenge to evidence of ████████████████████████. Id. at 18 (alleging failure to show "the criminal activity involved ██████████████████████████████████, or [evidence] indicating ███████████████████████████").  Taken as a whole, however, the affidavit offers more than a "fair probability" that these categories of items would contain

---

[1]     The defendant suggests that this Court should also find no probable cause to seize his ███████████ because such ██████ "exist on the computer server of a company" and not within a residence. Doc. No. 288 at 22. When read in a straightforward, common-sense manner, the warrant plainly seeks evidence of the ██████ not their native-format system storage.  To nit-pick phraseology when the meaning is clear disregards the directive to eschew "[t]echnical requirements of elaborate specificity . . .." Conley, 4 F.3d at 1207 (also acknowledging that "[a]ffidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation'") (quoting Ventresca, 380 U.S. at 108).  Bowers does not contest the connection between this evidence and his residence in any other way.

evidence of criminality.  See Conley, 4 F.3d at 1205 ("[A] reviewing court is to uphold the warrant

as long as there is a substantial basis for a fair probability that evidence will be found.").

First, with regard to ███████████████████████████████████████

██████████████, the affidavit asserts that ██████████████████████████

████████████████████████████.  Doc. No. 288, Exh. I at 4.  The affidavit

then makes the obvious deduction that ████████████████████████████████

████████████████████████.  Id.  Common sense suggests that Bowers made these

███████████████████  prior to the assault, given that he remained ███████████████████.

Id. at 4.  Indeed, it is a reasonable inference that this ██████████████████████

████████████████████████.  See id. at 5.  The affidavit further provides

detailed information about ████████████████████████████████████

████████████████████████████.  It explains that █████████████

██████████████████████████████████████████████████

████████████████████.  Id. at 5-6.  These assertions, taken together, support the natural

conclusion that Bowers had access to, and used, ████████████████████████

██████████████  in the lead-up to his attack, to plan his crimes or to espouse his anti-Semitic bias.

And it is reasonable to suspect that he ████████████████████████████  as part of

this process.  Indeed, the affidavit makes explicit that █████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Id. at 9.  That evidence is directly relevant to proving the charges specified in the affidavit, which

require proof of specific intent and of bias motivation.

Second, though Bowers questions the probable cause to seize ███████████ Doc. No. 288 at 14, the entirety of his argument addresses ██████ only.  See id. (alleging, e.g., "[n]othing in the affidavit links any ██████ to criminal activity," and that "there is no nexus between any ██████ and criminal activity." (emphasis added)).  Bowers fails to differentiate these categories in any way, and he does not specify any evidence seized that might assist the distinction.  The government's probable cause analysis regarding ████████ thus applies equally to the defendant's arguments regarding ████████  In view of the affidavit's assertions about the ██████████████████████ ██████████████████████, it is reasonable to conclude that ████████ might provide relevant information about that conduct.

Third, evidence of ████ is directly linked to the defendant's alleged criminal conduct.  The warrant seeks any and all such evidence ██████████████ ██████████████████████ ████████████████ Doc. No. 288, Exh. I at 3.  In support, the affidavit makes clear that ████████████ ████████, statutes that cover interference with religious exercise and violence motivated by religious or racial bias.  As described above, the affidavit stated that ████████ ██████████████████████ ████████.  At least some of these ████████████ ██████████████████. Doc. No. 288, Exh. I at 4.  The affidavit offers more facts showing that ████████████ ██████████████████████ ████████████████. Id. at 3.  Together, these facts

support the reasonable inference that the defendant's anti-Semitic views were deeply held and freely articulated, and that additional expressions of those views might be found in the ███ ███ sought pursuant to the warrant.  Cf. Jones, 994 F.2d at 1057 (In a search for evidence of a robbery, the presence of some stolen property in defendant's residence "could have suggested to the magistrate judge that other contraband was not far away.").  Because the statutory violations at issue require proof of bias motivation and of violent interference with religious worship, such items plainly supply proof of criminality.

This reasoning extends to evidence of other ███████  The facts asserted in the affidavit show that ██████████████████████████████████████████ ████████████████████████████████████ ████████████████ Doc. No. 288, Exh. I at 3.  Bowers used ████████████ ████████████████████████████████████████ ███████████████ id. at 4, referencing a larger group to which he belonged.  In light of the affidavit's assertion that █████████████████████████████████, and reading the affidavit as a whole, it is reasonable to infer that the planning, preparation, and execution of Bowers's attack may have involved ██████████████.  See Yusuf, 461 F.3d at 390 ("The probable cause determination is to be made only after considering the totality of the circumstances, which requires courts to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." (citing United States v. Arvizu, 534 U.S. 266, 275 (2002)).  The affidavit thus provides a substantial basis for the magistrate judge to conclude that other ██████████ would likely provide relevant evidence of Bowers's crimes.

The facts connecting evidence of ███████████████████████ to the defendant's criminal activity are also robust.  In describing that ████████████████████ ███████████████████████████, id. at 4, the affidavit shows that defendant Bowers had the means to ███████████████████████████ in preparation for his crimes.  It sets forth several facts demonstrating that Bowers likely did ██████████████ ████████████████.  For example, the fact that Bowers ███████████████████████ ███████████████████, id. at 4, supports an inference that he did not just happen upon the building, but purposefully ████████.  The timing of Bowers's attack – on the morning of Saturday, October 27, 2018, when several congregants were in attendance, id. at 3 – suggests that he knew when Jewish religious services would take place.  And Bowers's ███████████████████████ ██████████████████████, id., reasonably implies some familiarity with the Synagogue that could have been gained through ████████████████.  In combination with the defendant's ███████████████████████, id. at 5, these facts provide ample indication that Bowers ███████ ██████████████████ in order to carry out his deadly attack.

Finally, the defendant contests the probable cause to search for and seize ████████ ██████.  Much of his argument on this point concerns his challenge to the nexus between the target residence and evidence of criminality, which the government addresses below.  To the extent Bowers challenges the connection between ███████████████ and his criminal conduct, the residence need not itself be used to commit the crimes under investigation for such evidence to be relevant.  Cf. Jones, 994 F.2d at 1056 (no requirement of "direct evidence linking the place to be searched to the crime").  As the affidavit suggests, ████████████ could provide corroborating information about Bowers's use or control of other evidence seized from within the residence.  See Doc. No. 288, Exh. I at 8 (█████████████████████████████████████████

13

███████████████████████████). It is plain to see how such evidence would corroborate that Bowers did, in fact, live at the residence and had purchased or used any ███████ ████████████████ or other evidence of criminality found therein. Cf. United States v. Blakeney, 942 F.2d 1001, 1027 (6th Cir. 1991) (items tending to prove identity of owners/occupants of premises containing evidence of the crime is relevant to determining perpetrators of that crime).

2.   The Affidavit Links the Items Sought and the Residence

Defendant Bowers next challenges the magistrate judge's probable cause finding by claiming that the warrant affidavit fails to link certain categories of items – █████████████

███████████████████████████████████████████ –

to the defendant's home.[2]  Doc. No 288 at 17-23.  Because it was reasonable for the magistrate judge to infer that these items could be found in the residence of the defendant, who was alleged to have ████████████████ a bias-motivated mass shooting at a synagogue, this Court should decline to suppress the evidence on these grounds.

Third Circuit precedent makes clear that "direct evidence linking the [defendant's] residence to criminal activity is not required to establish probable cause" to search the residence. United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002); Jones, 994 F.2d at 1056.  The "fluid concept" of probable cause turns on "the assessment of probabilities in particular factual contexts." Gates, 462 U.S. at 232.  For instance, "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime

---

[2]      Bowers does not make this claim as to ████████████████████
██████.  And, as discussed above, he does not make this claim as to ████████████ where, as is plainly the case here, that phrase refers to evidence of such ████████ rather than to original account data stored on a company server.

increases." Jones, 994 F.2d at 1055-56.  Accordingly, probable cause may "be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." Burton, 288 F.3d at 103.  It "can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide" evidence. Id. (internal quotations omitted); Hodge, 246 F.3d at 305-06 (a magistrate judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.").  Overall, "an issuing court need only conclude that it would be reasonable to seek the sought-after objects in the place designated in the affidavit; a court need not determine that the evidence is in fact on the premises." Ritter, 416 F.3d at 263 (citing Conley, 4 F.3d at 1205).

The affidavit describes a ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████.  The magistrate could naturally infer that, in order to carry out this criminal conduct, Bowers had both the need and the opportunity to conduct his ████████ – which could include online research to identify the target, timing, and mode of his attack, as well as purchasing or amassing firearms, ammunition, and other paraphernalia to carry out the attack – from a secure, private location like his residence. See Jones, 994 F.2d at 1056 (firearms are "the type[] of evidence likely to be kept in a suspect's residence"); see also United States v. Golden, No. CR 19-545, 2020 WL 2848183, at *3, *5 (E.D. Pa. June 2, 2020) (citing Jones and listing Fourth, Sixth, and Eighth Circuit cases "permitt[ing] magistrates to infer that firearms are commonly kept within a suspect's residence when determining whether there is probable cause to issue a search warrant").  The magistrate could further deduce that a person, like Bowers, with strong, violent anti-Semitic views

would likely have other items reflecting that bias at his residence.  And because the defendant was ██████████████████████████, the magistrate could find Bowers had ample opportunity to gather these items at his residence as he prepared for the assault, but no chance to remove or destroy them afterward.  Cf. Jones, 994 F.2d 1056 (probable cause where defendants had opportunity to hide evidence in their homes and that evidence was "the type of loot that criminals seek to hide in secure places like their homes").

Moreover, the affidavit links the residence to the defendant and the criminal conduct.  It indicates that ██████████████████████████████████████████, supporting a sensible inference that he ████████████ from the place where he lived ████ ██.  See Doc. No. 288, Exh. I at 3-4 (███████████████████████████).  Although the defendant points out that he could have ████████████████████ ████████████████████ Doc. No. 288 at 17, the affidavit defines ████████████ ██████████████████, id., Exh. I at 5.  In this context, the affidavit concludes that, ████████████████████████████████████████████████████████ ██████.  Id. at 5.

The Third Circuit has affirmed a magistrate judge's probable cause determination that was premised on this combination of reasonable inferences and an affiant's educated conclusions.  In United States v. Hodge, the court acknowledged that the challenged warrant affidavit provided no direct evidence that the evidence sought (in that case, drugs or drug paraphernalia) would be located at the defendant's home.  246 F.3d at 306.  Yet it affirmed probable cause to search the home, based largely on inferential evidence that the defendant would keep the items there.  The Hodge court pointed to several facts in the affidavit suggesting that the defendant was an experienced drug dealer "who would need to store evidence of his illicit activities somewhere."

16

Id.  It also noted that the defendant's home was in the same city as the drug delivery in question, and that probable cause existed to arrest the defendant on drug-related charges, increasing the likelihood of drug evidence in his home.  Id. at 307.  The court additionally found that the magistrate "was entitled to give considerable weight to the conclusions of [an] experienced law enforcement officer" who believed that the defendant's home would likely contain evidence of his drug activities.  Id.

The Third Circuit has never limited such inferences to certain types of cases.  In fact, reiterating that probable cause requires a practical, fact-specific analysis, it has applied or approvingly cited the application of these inferences in a variety of contexts.  See Jones, 994 F.2d at 1056 (residence warrant in robbery case seeking cash, firearms, and clothing); id., citing, e.g., United States v. Jacobs, 715 F.2d 1343 (9th Cir. 1983) (per curiam) (residence warrant in robbery case seeking clothing), United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (residence warrant for guns); Stearn, 597 F.3d at 558 (residence warrant in drug distribution case).

Nor has the Circuit required an affidavit to show that the evidence sought is more likely to be found at the defendant's residence than anywhere else.  Bowers cites United States v. Rowland, 145 F.3d 1194 (10th Cir. 1998) – a Tenth Circuit case he incorrectly portrays as Third Circuit precedent – and United States v. Loy, 191 F.3d 360 (3d Cir. 1999), to argue that a warrant's probable cause showing must link evidence to the residence at the exclusion of other locations. Doc. No. 288 at 16.  But both cases addressed concerns particular to anticipatory warrants for evidence of child pornography.  Unlike traditional search warrants, those anticipatory warrants were conditioned on evidence arriving at the defendant's residence after the warrant issued. Because warrants must be supported by probable cause at the time of issue, the courts required the issuing judge to find probable cause that the contraband would be at the residence by the time the

warrant was executed there.  <u>Loy</u>, 191 F.3d at 365 (citing <u>Rowland</u>, 145 F.3d at 1202).  Such concerns are simply not present with the traditional residence warrant at issue here, and the Third Circuit has rejected the notion that inferential evidence cannot support probable cause to search a residence "if another location is an equally likely repository of evidence."  <u>Stearn</u>, 597 F.3d at 560.

Natural inferences about the type of crimes committed and the items sought, coupled with the affidavit's factual allegations and the conclusions of an ███████████████████ affiant, support the magistrate's finding that Bowers's residence would likely contain the evidence listed in the warrant.

3.   <u>The Affidavit's Assertions Are Credible and Corroborated</u>

The defendant seeks to weaken the affidavit by isolating two highly-relevant factual assertions – ██████████████████████████████████████████████████ ██████████████████████████ – and dismissing those facts as "barebones" or unreliable assertions akin to anonymous informant tips.  Doc. No. 288 at 11-12, 18.  Because the affidavit sets forth credibly-sourced and corroborated facts, this comparison is unpersuasive.

Courts have often regarded tips from anonymous informants as distinct from other categories of information alleged in a warrant affidavit.  <u>See, e.g.</u>, <u>Yusuf</u>, 461 F.3d at 384 (noting that "[c]ourts have routinely recognized a distinction between information provided by an informant and that provided by a law enforcement officer or other government agency").  Contrary to the defendant's suggestion, however, courts do not require a strict showing of an informant's basis for knowledge and reliability.  Rather, as the Supreme Court has directed, such considerations may contribute to the common-sense, "totality-of-the-circumstances analysis that traditionally has guided probable cause determinations …."  <u>Gates</u>, 462 U.S. at 233 (rejecting a rigid test for an informant tip in favor of a totality-of-the-circumstances approach).  And in contrast to anonymous

tips, courts have agreed that a magistrate judge issuing a warrant "may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found …." Whitner, 219 F.3d at 296; cf. Yusuf, 461 F.3d at 385 ("[I]nformation received from other law enforcement officials during the course of an investigation is generally presumed to be reliable.").

Here, the affidavit's assertions are made by an ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████. In those capacities, the affiant has ███████████ ███████████████████████████████████████████████. Doc. No. 288, Exh. I at 1. The affidavit additionally sets forth ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Id. at 2, 5. Nowhere does the affidavit reference an anonymous tip or source. Rather, context makes clear that the witnesses credited are largely ███████████████████████████████████████ ███████████████. See id. at 4 (██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████); see also Ventresca, 380 U.S. at 111 (noting that affidavits may rely on hearsay information, and rejecting "unduly technical and restrictive reading" when, read as a whole, affidavit rested on observations of fellow officers). The magistrate judge could reasonably consider these sources to be reliable.

The challenged assertions bear further indicia of reliability because they are thoroughly corroborated by other facts in the affidavit. See United States v. Williams, 3 F.3d 69, 73 (3d Cir. 1993) (magistrate could find informant's assertions credible based on corroboration, apparent

disinterest of informant, and absence of suggestion of unreliability).  That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is supported by the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The indication of animus is further buttressed

by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The assertion of ▮▮▮▮▮▮

▮▮▮▮▮▮ is, in turn, corroborated by facts supporting an inference that ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Doc. No.

288, Exh. I at 3.

The concerns that have led courts to treat anonymous tips with special caution are simply

not present here, where the source of the information alleged is known, is largely based on ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and is roundly corroborated.  As a result, Bowers's

comparison of the affiant's factual allegations to those of an anonymous source is inapt.

### B.   The Second and Third Residence Warrants Are Supported by Probable Cause and Are Not the Product of Illegally-Obtained Evidence

Defendant Bowers next challenges the second and third warrants to search his residence,

claiming that the supporting affidavits impermissibly relied on evidence obtained during an illegal

first residence search and, without that evidence, fail to provide probable cause.  Doc. No. 289.

The subsequent residence warrants may rely on the first residence search, however, because (as

explained above) that search and the warrant authorizing it were valid.  Moreover, because they

are independently supported by probable cause, and because the government would have obtained

a warrant to search and seize these items in any case, the second and third residence searches are constitutionally sound even without reference to the first.

Assuming the invalidity of the first residence warrant only for the sake of argument, the magistrate judge still had a substantial basis to find probable cause for the second and third warrants. Where an affidavit contains "tainted" information, Third Circuit precedent provides for "striking from it those severable phrases and clauses that are invalid … and preserving those" that satisfy the Fourth Amendment. <u>Beatty</u>, 437 F. App'x at 187, <u>quoting</u> <u>United States v. Christine</u>, 687 F.2d 749, 754 (1982). After excising all reference to the first residence search and the resulting evidence seized, it is clear that the subsequent warrants still stand.

Probable cause to seize ███████████████████ under the second warrant need not (and does not) rest on agents having actually viewed the items in Bowers's home. The affidavit's remaining allegations, and reasonable inferences drawn therefrom, establish the "fair probability" necessary to search for the evidence. <u>Ritter</u>, 416 F.3d at 263 (court need only find it reasonable to look for evidence in the place designated, not that evidence is in fact there). The affidavit describes that ██████████████████████████████████████ ████████████████████████. The attack was extensive enough to kill 11 people, wound others, and involve a gunfight with law enforcement. During the assault, Bowers repeatedly expressed his desire to kill ██████████████████████████████████████ ██████████████████████████████. Doc. No. 289, Exh. A at 3-4. On those facts alone, the magistrate had a substantial basis to believe the defendant's residence could include additional items – ███████████████████ – related to preparing for and carrying out such mass killing and injury.

Probable cause to seize the ▮▮▮▮▮ sought by the third warrant also does not disappear after any allegedly invalid phrases are redacted.  In addition to describing ▮▮▮▮▮▮▮▮▮ ▮▮▮▮, the warrant affidavit references ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Doc. No. 289, Exh. B at 9.  It further states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  <u>Id.</u> at 10.  And it adds that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  <u>Id.</u>  Noting ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the affidavit concludes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  <u>Id.</u> at 11.  These facts, too, are enough to support the magistrate's probable cause finding.

None of the information described above is sourced to the first search of Bowers's residence.  It thus provides an independent basis to uphold the warrants.  <u>See</u> <u>United States v. Herrold</u>, 962 F.2d 1131, 1141 (3d Cir. 1992) (approving warrant where affidavit contains probable cause apart from invalid information); <u>United States v. Price</u>, 558 F.3d 270, 281 (3d Cir. 2009) (independent source doctrine is an exception to the exclusionary rule).  Simply because executing officers observed or obtained relevant evidence during the first residence search does not make that search the sole prompt for subsequent ones.  Assertions in the first residence warrant affidavit reveal that the government was already focused on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  As its investigation progressed, the government gathered more evidence – independent of the first search – that would have naturally prompted the ensuing residence searches.  <u>See, e.g.</u>, Doc. No. 289, Exh. B at 9-10 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Against this backdrop, "[i]t is inconceivable" that the government would not have sought a warrant to search Bowers's residence.  Herrold, 962 F.2d at 1140 (finding, without regard to original warrantless entry, it was "inconceivable" that police would not have searched the defendant's residence); United States v. Carter, 530 F. App'x 199, 204 (3d Cir. 2013) ("It is inconceivable the police would not have applied for a warrant to search" defendant's home irrespective of an allegedly illegal search.); Price, 558 F.3d at 282; Murray, 487 U.S. at 537.  The government would have applied for a residence warrant in any event, and the affidavits for the challenged subsequent warrants contain probable cause apart from any reference to the first search. The Court should therefore deny the defendant's motion to suppress the second and third residence warrants.

### C.     The Residence and Vehicle Warrants Are Sufficiently Particular

The defendant next argues that all three residence warrants and the vehicle warrant were impermissible general warrants because they failed (1) to specify the crimes under investigation or (2) to particularize the items to be searched and seized.  Doc. No. 288 at 25-26.

The Fourth Amendment requires that a warrant issued "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  To meet this requirement, warrants should describe the place to be searched and the items to be seized so that "it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging" through a defendant's belongings.  Christine, 687 F.2d at 753.  A central value animating this particularity requirement is that the warrant should meaningfully aid officers in executing the warrants and identifying items of evidence.  United States v. Wecht, 619 F. Supp. 2d 213, 229 (W.D. Pa. 2009).  A court should thus undertake its review from a practical, common-sense perspective, as "the level of specificity required [in each warrant] is case-specific and

23

depends upon the circumstances at hand." <u>Wecht</u>, 619 F. Supp. 2d at 228 (citing <u>Yusuf</u>, 461 F.3d at 395); <u>see</u> <u>United States v. American Investors of Pittsburgh, Inc.</u>, 879 F.2d 1087, 1106 (3d Cir. 1989) (particularity determination must view warrant "in a common sense fashion"); <u>see also</u> <u>United States v. Thurman</u>, 625 F.3d 1053, 1057 (8th Cir. 2010) ("The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." (citations and internal quotations omitted)).

In context, the lists of items to seize contain sufficient description to guide the executing agents.  <u>See</u> <u>United States v. Johnson</u>, 690 F.2d 60, 64 (3d Cir. 1982) (evaluating particularity requires reading warrant "as a whole" (citing <u>Andresen v. Maryland</u>, 427 U.S. 463 (1976))).  Read in a holistic, common-sense fashion, the warrants make clear that they seek items pertaining to ███████████████████████████████████████████████████████████████.  For instance, the warrant attachments specifically describe that they seek ████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████  Doc. No. 288, Exhs. A at 3, C at 2-3, K at 4.  The vehicle and initial residence attachments include reference to straightforwardly-understood items, such as ████████ ████████████.  They also detail that for evidence of ██████████████, such items should pertain to ████████████████████.  Doc. No. 288, Exhs. A at 3, C at 3.  All the warrant attachments provide highly detailed descriptions of the information sought from ██████████████ and further defined terms such as █████████████████████████████████ ██████████  The search warrant returns show that the searches were, in fact, conducted with precision, resulting in the seizure of items that fall well within the particularized categories delineated in the warrants, that are undoubtedly relevant to Bowers's criminal conduct, and for which there was probable cause to seize.

1.   <u>The Warrants Need Not Cite the Crimes Under Investigation</u>

The defendant argues that such detail is insufficient because the warrants must cite a specific crime for the items sought.[3]  Doc. No 288 at 26.  The Fourth Amendment sets forth no such requirement to note a specific criminal statute or offense.  It specifies <u>only two</u> matters that must be described with particularity: "the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV; <u>United States v. Grubbs</u>, 547 U.S. 90, 97 (2006) (noting that the Fourth Amendment contains no general particularity requirement, that it specifies only two matters that must be particularly described, and that the Supreme Court has "rejected efforts to expand the scope of this provision to embrace unenumerated matters"); <u>see also</u> LaFave, Search and Seizure § 4.6(a) (6th ed. 2020) ("The Fourth Amendment's particularity requirement does not 'require particularity with respect to the criminal activity suspected.").   The Federal Rules of Criminal Procedure echo these requirements, adding just that the warrant also specify "the magistrate judge to whom it must be returned."  Fed. R. Crim. P. 41(e)(2) (warrant must identify person or property to be searched, person or property to be seized, and magistrate judge for warrant return).

Moreover, the Third Circuit and district courts therein have upheld warrants without such technical citation.  <u>In re 309 Primrose Lane Hanover, Pennsylvania 17331</u>, No. 1:05-MC-0151, 2007 WL 9775647, at *7 (M.D. Pa. Aug. 13, 2007), <u>aff'd</u>, No. 07-3689, 2009 WL 762417 (3d Cir. Mar. 24, 2009).   In <u>United States v. $92,422.57</u>, the Circuit considered a warrant that failed to specify even the "generic types of crimes" to which the items sought pertained.  The court found

---

[3]      The defendant cites distinguishable Second Circuit and Ninth Circuit cases to support his argument.  Doc. No. 288 at 26 (citing <u>Mink v. Knox</u>, 613 F.3d 995 (10th Cir. 2010), and <u>United States v. George</u>, 975 F.2d 72 (2d Cir. 1992)).  He identifies no Third Circuit precedent on point.  His citation to the Supreme Court's decision in <u>Andresen v. Maryland</u>, 427 U.S. 463 (1976), is unavailing, as the passage cited simply counsels that a warrant's phrases and clauses should be read all together.  <u>See Johnson</u>, 690 F.2d 60, 64 (3d Cir. 1982) (concluding, based on the same passage in <u>Andresen</u>, that "[c]learly," its "most important teaching is that a warrant must be read as a whole").

that the warrant was sufficiently particular because reference to the criminal conduct would not have usefully delimited the scope of the search.  307 F.3d at 150.

Applying this reasoning, courts in this Circuit have upheld warrants that likewise do not cite the crime alleged.  In Primrose Lane, the Middle District of Pennsylvania considered a warrant that omitted mention of the tax evasion violations investigated but that authorized seizure of general categories of items like tax returns, bank account documents, and evidence of concealment of money.  2007 WL 9775647, at *7.  Rejecting that the warrant need specify the crime alleged, the district court found that a reasonable agent could infer "the alleged crime was tax-related and involved the secreting of income . . .."  Id.  Deeming that inference constitutionally "sufficient" to "guide the scope" of the executing agents' search and to limit their discretion, the court upheld the warrant against a particularity challenge.  Id.  The Eastern District of Pennsylvania has held similarly.  See United States v. Fumo, 565 F. Supp. 2d 638, 644 (E.D. Pa. 2008) (rejecting particularity challenge "because a search warrant need not specify the particular crimes for which evidence is sought"); United States v. Kofsky, No. 06-392, 2007 WL 2480971, at *16 (E.D. Pa. Aug. 28, 2007) ("[T]here is no per se requirement that a search warrant describe the criminal activity alleged" (citing United States v. Slaey, 433 F. Supp. 2d 494, 495 n.1 (E.D. Pa. 2006)).

Here, though the warrants do not provide statutory citation, they lead a reasonable executing officer to conclude that this was bias-motivated conduct involving religious or racial animus.  The vehicle and initial residence warrants also reflect that ███████████████████ ████████████████████████████████████████████████████████ ███████████████████████.  See United States v. Johnston, No. CR03-1167, 2006 WL 359934, at *11 (D. Ariz. Feb. 15, 2006) ("If []items [sought] are described with sufficient particularity, the warrant is valid despite not including the alternative list of the crimes for which

26

[the defendant] was being investigated."). Reference to hate crimes, criminal interference with religious exercise, or the possession or use of a firearm is thus unnecessary to aid a common-sense reading of the warrants and to guide the seizure of items listed therein.

2. <u>The Warrants Seek Specific Categories of Evidence</u>

Reference to criminal conduct aside, defendant Bowers argues that the warrants are not sufficiently particular because they do not limit seizure to a "subset of items" in some of the categories of evidence listed. Doc. No. 288 at 28. This argument is similarly unpersuasive. The items are described in a straightforward manner, and the warrants' overall context makes clear the nature of items sought.

That the warrants may authorize the seizure of a large number or broad array of items does not invalidate them. <u>Leveto v. Lapina</u>, No. CR 98-143, 2000 WL 331902, at *11 (W.D. Pa. Feb. 5, 2000), <u>aff'd</u>, 258 F.3d 156 (3d Cir. 2001) ("Warrants may include phrases that call for the seizure of entire classes of items . . . ."). The Third Circuit has upheld warrants authorizing the search and seizure of categories of evidence. <u>See, e.g.</u>, <u>United States v. Karrer</u>, 460 F. App'x 157, 161 (3d Cir. 2012) (finding a "warrant's authorization to search and seize virtually all computer-related items in [defendant's] home does not invalidate the warrant"); <u>$92,422.57</u>, 307 F.3d at 149-50 (warrant to seize items like receipts, correspondence, and computers was "indubitably broad," but not unconstitutionally general). This is true even where the language of a warrant is broader than that of the supporting affidavit. <u>Am. Inv'rs of Pittsburgh, Inc.</u>, 879 F.2d at 1106. A search should not be invalidated, therefore, "merely because it cannot be performed with surgical precision." <u>Christine</u>, 687 F.2d at 760.

Bowers incorrectly suggests that this district's invalidation of a warrant in <u>United States v. Wecht</u>, compels the same result here. <u>Wecht</u> considered the unique situation of an investigation

27

into the Allegheny County Coroner's alleged use of county resources for "his own personal and private gain" in support of his own private pathology business.  619 F. Supp. 2d at 217-18.  In that case, law enforcement received information that the defendant, upon learning of the government's investigation, had directed 20 private autopsy files be moved from county offices to his private pathology office.  Id. at 225.  Agents obtained a search warrant for that private pathology business in order to seize those specific 20 files.  Despite making that clear in the supporting affidavit, the warrant, on its face, described the items to be seized only as "[b]oxes (approximately twenty) and contents containing private autopsy files."  Id. at 226.  The Wecht court found that this language failed the particularity requirement: it specified 20 boxes but did not provide officers with guidance to differentiate those specific files from others at the private pathology business – a "place where one might naturally expect to find an abundance of boxes containing private autopsy files" – and it "omitted several descriptive features" set forth in the affidavit that would have helped make that distinction.  Id. at 229-30.  Wecht thus stands for the unremarkable proposition that a warrant seeking certain individual items should clarify which specific items the agents are authorized to seize.

Unlike in Wecht, however, the warrants here did not leave the executing officers with "unbridled discretion."  Instead, they permit the agents to seize categories of evidence (███████ ███████████████████) relevant to ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████.  By specifying that they authorize seizure of ██████ items within the ensuing list of categories, the warrants use clear, inclusive language to describe categories of evidence.  See, e.g., Doc. No. 288, Exh. A at 3 (████████████████████████████████████████ ███████████████████████████████████████).  Courts have upheld warrants that

describe items using such "specific and inclusive generic terms" against particularity challenges. Christine, 687 F.2d at 753; see also, e.g., United States v. Rankin, 442 F. Supp. 2d 225, 230 (E.D. Pa. 2006) (finding warrant authorizing seizure of items within "clearly delineated categories" rather than providing "a more precisely enumerated list of items" was not a general warrant); United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999) (permissible warrant categories included "[r]ecords, documents, receipts," as well as "any and all … correspondence").  Indeed, that the executing agents were not granted such "unbridled discretion" is supported by the very fact that they sought two subsequent residence warrants to seize additional specific items.  These requests for further search and seizure authorization confirm that "the magistrate, rather than the [executing agents], determined what was to be seized."  Christine, 687 F.2d at 753.

Furthermore, and again unlike in Wecht, the warrant affidavits in this case do not contain other "descriptive features" that would meaningfully limit the items listed in the warrant.  See Am. Inv'rs of Pittsburgh, Inc., 879 F.2d at 1106 (no "more precise language in the affidavit could have limited the scope of the search authorized by the magistrate," though warrant language was broader than affidavit).  Much descriptive information was not known, or could not be known, prior to the execution of the warrants.  Christine, 687 F.2d at 760 (The "use of generic classifications in a warrant is acceptable when a more precise description is not feasible."); Leveto, 2000 WL 331902, at *11 (probable cause does not demand all details of the crime be known, and particularity does not require "all the documents likely to be evidence of [a] crime be specified beforehand").  For instance, without knowledge of the operating system and setup of any computers seized, the warrants could not provide greater specificity for the ███████████████████████████

██████████████████████.  Doc. No. 288, Exhs. A at 5, I at 9 (███████████████████

███████████████████████████████████████████████████████████████████████████

█████ ).  Based on the context of this case and the available information as reflected in the affidavit, the warrants provide specific, inclusive descriptions of the evidence sought.

At most, the defendant's claim amounts to an undeveloped argument that the items listed in these warrants are over-inclusive.  That claim is easily defeated by a contextual reading of the warrant and the affidavit, which supplied the magistrate with a substantial basis to find probable cause for the items sought.  It is also defeated by the fact that the actual searches produced nothing outside the scope of the affidavits, even if those affidavits were unincorporated.  See, e.g., Doc. No. 288, Exh. D (search warrant return); United States v. Leveto, 540 F.3d 200, 211 (3d Cir. 2008) (overbroad warrant can be cured by more particularized unincorporated affidavit).  At any rate, the appropriate remedy for an overly broad warrant is to excise the invalid portion of the warrant and, even then, the good faith exception applies here to save any affected evidence from suppression.  See $92,422.57, 307 F.3d at 149.

The challenged warrants appropriately confined and guided the executing officers' search, precluding their "unbridled discretion" over what to seize.  As a result, the warrants are sufficiently particular.  This Court should not suppress the evidence obtained.

### 3.   The Automobile Exception Applies to the Vehicle Warrant

It is worth noting that a search of the defendant's car would have been permissible even without a warrant.  "The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if probable cause exists to believe it contains contraband."  Burton, 288 F.3d at 100–01 (citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (internal quotations omitted)).  Under this exception, the government may search a vehicle even after it has been impounded or otherwise secured, and that search may extend to every part

of the vehicle and its contents that may conceal the object of the search.  United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (citing cases).

As laid out in the vehicle warrant affidavit, probable cause to search Bowers's vehicle is clear.  See, e.g. Doc. No. 288, Exh. I at 4 (███████████████████████████████████ ████████████████████████████████████████████████████).  The defendant does not contest it.  A permissible warrantless search of Bowers's car would have uncovered exactly the same items as seized pursuant to the vehicle warrant.  Because the government would inevitably have seized this evidence, either as authorized by the warrant or under the automobile exception, the evidence must not be suppressed.

### D.    The Warrants Were Timely Executed

Defendant Bowers's final challenge is to the timeliness of the government's electronic evidence search.  Bowers alleges that agents searched a ███████████ seized from his vehicle, as well as ██████████████████████████ seized from his residence, after the execution deadline for those warrants had passed.  Doc. No. 288 at 31.  The defendant offers no further support for this claim, and he neglects to describe what these challenged searches entailed or the dates they occurred.  To the extent Bowers seeks to invalidate the forensic imaging, review, and analysis of electronic evidence seized from his vehicle or residence, that effort fails.  Even assuming such imaging, review, or analysis occurred after the warrants' execution deadline, the government properly followed a two-step approach: it seized the evidence before the deadline and thereafter performed an off-site review to secure the information listed in the warrant attachments.  This process was appropriate under the plain language of Rule 41 and relevant precedent.

The Fourth Amendment "contains no requirements about when [a] search or seizure is to occur or the duration."  United States v. Syphers, 426 F.3d 461, 469 (1st Cir. 2005) (quoting United

States v. Gerber, 994 F.2d 1556, 1559–60 (11th Cir. 1993) (emphasis in original)).   When electronic evidence is seized, the Fourth Amendment is similarly silent on any time limitations for forensic examination of that evidence.   United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 66 (D. Conn. 2002).

Federal Rule of Criminal Procedure 41(e)(2)(B), however, addresses warrants for the seizure of electronically stored information.  The Rule explicitly presumes a later, off-site review that extends beyond the warrant's execution deadline by providing that "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant.  The time for executing the warrant … refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review."  Fed. R. Crim. P. 41(e)(2)(B) (referencing deadline for warrant execution described in Rule 41(e)(2)(A) and (f)(1)(A)) (emphasis added).  The phrase "consistent with the warrant" in this Rule refers to the parameters of the search set forth in the attachments and supporting affidavit application.  It does not require that the face of the warrant identify a completion date for off-site copying or review.  To the contrary, Rule 41 is unambiguous that, "unless otherwise specified," the warrant's execution deadline refers only to the initial step of seizing or copying the electronic evidence.  Id.

Indeed, the Advisory Committee Notes to Rule 41 explain that this two-step process is "inherent in searches for electronically stored information." Fed. R. Crim. P. 41, Advisory Committee Notes (2009 amend.).  The Notes acknowledge that electronic evidence "commonly contain[s] such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location."  Id.  The two-step process thus recognizes the "substantial amount of time … involved in the forensic imaging

and review of information.   This is due to the sheer size of the storage capacity of media,

difficulties created by encryption and booby traps, and the workload of the computer labs."  Id.

This process accounts for the rationale behind a warrant execution deadline, which is to

"prevent the execution of a stale warrant."  Syphers, 426 F.3d at 469.  As the warrant affidavits

note, ███████████████████████████████████████████████████████████████████████████

███.  Doc. No. 288, Exh. I at 5-6.  This obviates the staleness concerns that might be present

with other materials and avoids any problem with "unreasonable delay in the execution of a

warrant that results in the lapse of probable cause [that] will invalidate a warrant."  Syphers, 426

F.3d at 469 (quotations omitted); United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975)

("Timeliness of execution should not be determined by means of a mechanical test with regard to

the number of days from issuance" but instead "functionally measured in terms of whether

probable cause still existed at the time the warrant was executed.").

With these practical considerations in mind, federal courts have routinely found months-

long off-site forensic analyses and reviews to comply with Rule 41 and the Fourth Amendment.[4]

See United States v. Stabile, 633 F.3d 219, 234 (3d Cir. 2011) (noting that "the practical realities

of computer investigations preclude on-site searches" and that computer searches "cannot be

---

[4]      The cases cited by defendant Bowers in support of his argument are not instructive on this issue.  The
defendant cites this Court's decision in United States v. Wygant, No. CR 18-167, 2019 WL 2928925, at *1 (W.D. Pa.
July 8, 2019).  That case, however, addressed the timing of a warrant's initial execution, and the Court found no Rule
41 or constitutional violation where government agents entered a residence to conduct a search the day after the
warrant's execution deadline.  Id. at *3.  The Court did not have the occasion to address the seizure or search of
electronic evidence, the permissible timing of such evidence reviews, or the scope of Rule 41(e)(2)(B) and case law
governing later, off-site review of electronic media.
         Groh v. Ramirez, 540 U.S. 551 (2004), which Bowers also cites, is similarly unhelpful on this point.  There,
as the defendant acknowledges, the Supreme Court addressed only the Fourth Amendment's requirement that a
warrant particularly describe "the place to be searched" and the "things to be seized."  Id. at 557.  The Supreme Court
found that a warrant describing the residence to be searched but failing to list any items therein to be seized did not
satisfy the particularity requirement.  Id. at 558.  The opinion did not touch on electronic evidence searches, the timing
of such searches, or the permissibility of later, off-site review.

rushed by a cursory on-site search"); <u>United States v. Mutschelknaus</u>, 592 F.3d 826, 829-30 (8th Cir. 2010) (analysis within 60-day execution extension); <u>United States v. Brewer</u>, 588 F.3d 1165, 1173 (8th Cir. 2009) (finding "several months' delay" in forensic analysis did not violate the Fourth Amendment); <u>United States v. Winther</u>, No. 11-CR-212, 2011 WL 5837083, at *10-12 (E.D. Pa. Nov. 18, 2011) (approving delayed forensic search and rejecting argument that Rule 41's two-step process violates the Fourth Amendment); <u>United States v. Pinto-Thomaz</u>, 352 F. Supp. 3d 287, 311-13 (S.D.N.Y. 2018) (allowing phone de-encryption efforts up through trial preparation); <u>United States v. Gorrell</u>, 360 F.Supp.2d 48, 55 n.5 (D.D.C. 2004) (ten-month delay).

The search warrants here are no different.  The vehicle warrant and first residence warrant specify ███████████████████████████████████████████████████████. Doc. No. 288, Exhs. C at 1, A at 1.  Pursuant to Rule 41(e)(2)(B), the warrant affidavit explicitly contemplates ███████████████████████.  Doc. No. 288, Exh. I at 5, 11.  It further explains that ██████████████████████████████████████████████████████████ ████████████████████████████████████████████.  <u>Id.</u> at 10-11.  The third[5] residence warrant specifies ████████████████████████████████ ██████████████.  Doc. No. 289, Exh. B at 1.  The supporting affidavit similarly explains that, under Rule 41(e)(2)(B), the warrant ████████████████████████████████ ███████████████████████████████████████████.  <u>Id.</u> at 12, 17-19.

Consistent with Rule 41 and governing caselaw, electronic evidence was initially seized pursuant to these warrants and prior to their execution deadline.  That evidence included ████ ████████████████████████████████████████████.  Any imaging and/or analysis conducted at

---

[5]     In his challenge to the electronic evidence search timing, the defendant makes passing reference to the second residence search warrant, which set forth ██████████████████████████████████████████ ████████.  Doc. No. 289, Exh. A at 1.  That warrant did not seek any electronic evidence.

a later date (again, the defendant does not cite to any specific process in his motion) was done to permit a careful and accurate review.  In asking this Court to find any such process to be an unconstitutional "flagrant violation of the warrants," Doc. No. 288 at 32, Bowers invites the Court to ignore the Federal Rules and well-settled case law by placing a time limit on forensic examination.  The Court should decline that invitation and deny the defendant's claim.

### E.    The Good Faith Exception Applies

The extraordinary remedy of suppression is not appropriate here even if the Court were to find the warrants deficient in some respect.  "Whether to suppress evidence under the exclusionary rule is a separate question from whether the Government has violated an individual's Fourth Amendment rights."  United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (citing Hudson v. Michigan, 547 U.S. 586, 591-92 (2006)).  A defendant thus has no constitutional right to suppression, and it "is not an automatic consequence of a Fourth Amendment violation."  Herring v. United States, 555 U.S. 135, 137 (2009).

Courts have long recognized that the exclusionary rule imposes "substantial social costs" by hiding often crucial evidence and hindering the courts' truth-seeking function.  Leon, 468 U.S. at 907.  As a result, they have repeatedly affirmed that suppression "has always been our last resort, not our first impulse."  Hudson, 547 U.S. at 591; Herring, 555 U.S. at 140; Katzin, 769 F.3d at 170.  The police conduct at issue "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144 (The exclusionary rule is meant only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").  Where there is "an objectively reasonable good-faith belief that [the conduct] is lawful, or when [the] conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force,

and exclusion cannot pay its way." United States v. Franz, 772 F.3d 134, 145 (3d Cir. 2014) (quoting Davis v. United States, 564 U.S. 229, 238 (2011), and citing Herring, 555 U.S. at 137, Leon, 468 U.S. at 919, Katzin, 769 F.3d at 171).

Deciding whether the exclusionary rule applies thus requires a careful balancing of suppression's significant costs against the possible value of deterrence.  Relying on Supreme Court precedent, the Third Circuit has demanded a case-by-case cost-benefit analysis, rather than a categorical approach, when evaluating whether officers acted with objectively reasonable good-faith belief in their actions.  Franz, 772 F.3d at 145.  This "fact-specific analysis is required," and "the need to weigh the costs and benefits of exclusion is constant."  Id. at 146.  Using this approach, the Third Circuit has declined to categorically exclude evidence, even where officers relied on warrants that were facially deficient because they failed to particularize the items to be seized.  See, e.g., Franz, 772 F.3d 134; United States v. Wright, 777 F.3d 635 (3d Cir. 2015).  The Circuit has instead affirmed the need to examine the totality of the circumstances, such as the officer's conduct and knowledge, noting that the Supreme Court has "suggested that the absence of culpability is dispositive."  Franz, 772 F.3d at 147, citing Davis, 564 U.S. at 238.

Defendant Bowers mounts no serious or convincing argument that the high costs of exclusion are warranted.  The circumstances of this case do not suggest a deliberate, reckless, or grossly negligent disregard for Fourth Amendment protections; nor do they indicate any systemic or recurring negligence.  Exclusion would secure no deterrence benefit here.  It would instead inflict the significant cost of suppressing highly probative evidence that is plainly within the scope

of the warrants and supporting affidavits, and that the government could have obtained in any case.[6]

First, Bowers's challenge to the magistrate judge's probable cause determinations is unavailing on this front. Given each warrant's detailed factual allegations and reasonable inferences drawn from those allegations, Bowers has not "demonstrated that a reasonably well-trained officer would have known that the search was illegal, despite the magistrate's authorization." Am. Inv'rs of Pittsburgh, Inc., 879 F.2d at 1107, citing Leon, 468 U.S. at 919, n. 20. Indeed, the Supreme Court has held that "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search" such that the exclusionary rule should not apply. Leon, 468 U.S. at 922 (internal quotations omitted). Accord Stearn, 597 F.3d at 561 ("Ordinarily, the 'mere existence of a warrant … suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'") (citations omitted). This is so because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." Williams, 3 F.3d at 74 (quoting Leon, 468 U.S. at 921). It was reasonable here for the magistrate to find the warrants

---

[6]       As discussed above, the government's search of Bowers's vehicle would have been authorized under the vehicle exception to the warrant requirement. Similarly, a search of the defendant's residence, even without a warrant, would have been supported by exigent circumstances. United States v. Mallory, 765 F.3d 373, 383 (3d Cir. 2014) (warrantless searches permitted where justified by probable cause and exigent circumstances).
        When the residence warrant was obtained and executed, Bowers had committed a large-scale attack that left 11 people dead and others, including law enforcement, severely wounded. The nature and timing of the deadly assault indicated planning and premeditation. Bowers arrived at the Synagogue heavily armed, with ███████████████

███████████████████████████████████████
        These actions (and others described in the affidavits) establish probable cause to search Bowers's residence and exigent circumstances to support that search. ████████████
████████████████████████████████████ See United States v. Jones, 155 F. App'x 62, 66 (3d Cir. 2005) (determining exigent circumstances requires reviewing facts available to the officers at the time and considering the totality of circumstances).

supported by probable cause and, in turn, for agents executing those warrants to rely on that finding.  At most, even if the warrant affidavits "presented a close call," then "[o]nce the magistrate judge made that call, it was objectively reasonable for the officers to rely on it."  Hodge, 246 F.3d at 309.

Bowers's particularity challenge also fails to justify exclusion.  Although the warrant attachments do not cite the specific statutes under investigation, the agents' conduct in obtaining, executing, and relying on the warrants was nonetheless objectively reasonable.  The affiant agent put together a detailed warrant packet, which he presented to a neutral magistrate.  The warrant attachments make clear that the items to be seized relate to ███████████████████ ███████████████████████████████████████████████ ███████████.  See, e.g., Doc. No. 288, Exhs. A, C.  The supporting affidavits reinforce this understanding.  In fact, they explicitly state that ████████████████████████████ ███████████████████████████████████████████████ ████   Doc. No. 288, Exh. I at 2.  The warrant face sheets reference ████████████████ ████████████████████████████████████ Doc. No. 288, Exhs. A, C.  The affidavits were not incorporated into the warrant attachments simply because ████████████ ████.  There is no indication that any agent deliberately, recklessly, or with gross negligence attempted to broaden the scope of their searches or to vest themselves with "unbridled discretion" to search.  Quite the opposite: in executing these warrants, the agents only seized evidence well within the scope of the (albeit unincorporated) affidavits, and they returned to the magistrate for two subsequent residence warrants to obtain express authorization to seize additional items.  See Franz, 772 F.3d at 147-48 (applying good faith exception to a particularity challenge where agent

obtained a valid warrant in consultation with federal prosecutors, and his conduct on the whole was objectively reasonable).

The circumstances of this case provide nothing compelling to outweigh the burdens of exclusion. Should the Court find the warrants deficient in some respect, the good faith exception applies and the evidence seized should not be suppressed.

**F.**     **An Evidentiary Hearing Is Not Warranted**

The defendant does not request an evidentiary hearing to resolve these motions. Nor is he entitled to one, where his claims lack merit and he raises no disputed issues of material fact.

An evidentiary hearing on a suppression motion is not presumed as a matter of course. United States v. Hines, 628 F.3d 101, 104-05 (3d Cir. 2010). Courts have recognized that an evidentiary hearing on a suppression motion is required only if the motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." Hines, 628 F.3d at 105 (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)); see also United States v. Brown, No. CR 15-182, 2017 WL 3593883, at *11 (W.D. Pa. Aug. 21, 2017) (to seek suppression hearing, defendant must state a colorable legal claim, identify material facts, show facts are disputed, and request a hearing to resolve the dispute (citing Hines, 628 F.3d at 108)); United States v. Solomon, No. CR 05-385, 2007 WL 9702871, at *3 (W.D. Pa. June 26, 2007) (denying hearing in capital prosecution where defendant did not demonstrate the need). This widely-accepted standard is justified by the need to avoid convening unnecessary evidentiary hearings that waste scarce judicial resources and misuse the hearing as a tool to preview trial evidence.

Bowers's objections to the warrants present no material factual disputes.  He does not lay out any factual disagreement over the process for obtaining and executing the warrants, and he does not contest the factual allegations in the warrant affidavits.  See Hines, 628 F.3d at 106 (affirming denial of evidentiary hearing where the defendant's motion agreed with government's version of events); Brown, 2017 WL 3593883, at *11-12 (denying suppression motion hearing because defendant did not raise a material fact or dispute government affidavit's version of events).

Instead, the defendant's suppression motions present solely legal claims – primarily, whether the undisputed facts at issue satisfy the Fourth Amendment's probable cause and particularity requirements.  To the extent it is even a colorable claim, the defendant's perfunctory argument that the electronic evidence searches were conducted "well after the warrants expired" does not raise a factual dispute: the claim fails as a matter of law irrespective of the search timing. See Doc. No. 288 at 31; Voigt, 89 F.3d at 1067 (A claim is "colorable" only if it consists "of more than mere bald-faced allegations of misconduct." (citation omitted)).

Accordingly, Bowers's suppression motions fail to provide any basis to require an evidentiary hearing.  Each of his claims raise legal (not factual) challenges that can and should be denied on the briefing alone.

## V.    <u>CONCLUSION</u>

For the reasons stated herein, the United States opposes the defendant's Motions to Suppress Nos. 1 and 2, Doc. Nos. 288 and 289, and requests that this Court deny both motions.

<div style="margin-left: 50%;">

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:    <u>s/Troy Rivetti</u>
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

<u>s/Soo C. Song</u>
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

<u>s/Julia Gegenheimer</u>
JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475

</div>