IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 18-292 |
| ROBERT BOWERS | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTION TO SUPPRESS EVIDENCE FROM TARGET DEVICE (MOTION TO SUPPRESS NO. 4)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files its response in opposition to defendant's motion to suppress evidence seized during search of the Target Device, (Motion to Suppress No. 4), ███████████, ████████████████████████████████ (Doc. No. 291).

## I.  SUMMARY

Defendant Bowers advances two arguments in support of his motion: (1) that the warrant is overbroad with respect to the search of any records other than communications through social media accounts from the ████████; and (2) that the warrant fails for probable cause because ██████████ the affidavit, which included information from a purportedly warrantless search ████████, must be excised.  In his motion, defendant usurps the role of judicial review – re-imagining the well-established probable cause analysis as a hyper-technical exercise and making ill-founded pronouncements about the legality of certain social media information.

The defendant's motion to suppress evidence seized from ████████████ must be denied because the information contained within the four corners of the warrant amply establishes

probable cause to search the ███████████ for the enumerated records that relate to the defendant's crimes.  Further, the defendant's attempt to link the fate of the ██████████ search warrant, ████████████, to the search warrant for the defendant's ███████████████ account, ███████████, also fails.  Doc. No. 291, Exhs. A, B, and C.  There was no government search of ████████, much less an impermissible warrantless search, that gave rise to the information in ████████████ the affidavit.  In any event, the search warrant for the defendant's ████████████ remains valid and supported by sufficient probable cause without the inclusion of limited account information █████████████████.

In addition to the fact that the defendant fails to assert a threshold possessory basis for standing, the doctrine of inevitable discovery and the good faith exception provide alternative bases for upholding the warrant.

## II.    RELEVANT FACTUAL AND PROCEDURAL SUMMARY

On October 27, 2018, the defendant, Robert Bowers, drove to the Tree of Life Synagogue and entered the building carrying multiple firearms, including a high-powered AR-15 rifle.  The defendant opened fire, killing 11 congregants and injuring additional members of the Tree of Life, Dor Hadash and New Light congregations.  While inside the Tree of Life Synagogue, the defendant made statements indicating his desire to "kill Jews."  Law enforcement responded to the scene and the defendant also opened fire upon them, injuring four public safety officers.  Doc. No. 10 at 1.

As alleged in the 63-count Superseding Indictment, prior to October 27, 2018, the defendant, using his public account on the website Gab.com, posted his belief that "jews are the children of satan;" authored several other posts that referred to Jewish people using anti-Semitic slurs; and demonstrated deep animosity toward those of the Jewish faith, extolling violence and death.  See Doc. No. 44 at 1.  On or about October 10, 2018, also on Gab.com, Bowers posted a

criticism of the Hebrew Immigrant Aid Society (HIAS) and a link to a HIAS webpage listing Jewish congregations that were hosting refugee-related events. That list of congregations included the Dor Hadash Jewish congregation of Pittsburgh. In the posting, Bowers wrote, "Why hello there HIAS! You like to bring in hostile invaders to dwell among us? We appreciate the list of friends you have provided[.]" On the morning of October 27, 2018, just prior to entering the building, Bowers again publicly posted on Gab.com: "HIAS likes to bring invaders in that kill our people. I can't sit by and watch my people get slaughtered. Screw your optics, I'm going in." Doc. No. 44.

Later that day, the defendant was charged by complaint with 11 counts of violating 18 U.S.C. §§ 247(a)(2) and 247(d)(1) (Obstruction of Exercise of Religious Belief Resulting in Death), 11 counts of violating 18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1) (Use of a Firearm to Commit Murder During and In Relation to Crime of Violence), four counts of violating 18 U.S.C. §§ 247(a)(2) and 247(d)(3) (Obstruction of exercise of Religious Belief Resulting in Bodily Injury to a Public Safety Officer), and three counts of violating 18 U.S.C. § 924(c)(1)(A)(iii) (Use and Discharge of a Firearm During and in Relation to a Crime of Violence). Doc. No. 1.

On October 28, 2018, the day after the defendant's lethal attack on the Synagogue and the filing of the criminal complaint, the government sought and obtained a search warrant pursuant to Federal Rule of Criminal Procedure 41 ("Rule 41") authorizing the search of ███████████, which had already been recovered by the FBI from inside the Tree of Life Synagogue. In support of the warrant, the government set forth the same facts that had supported the complaint as well as additional information ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

3

██████████████████████████████████████████████████████

████████████████████████████████   Doc. No. 291, Exh. B at 3.   The affidavit further

explained ███████████████████████████████████████████████████

██████████████████████████████████████████████████████

Doc. No. 291, Exh. B at 4.

Specific to the defendant's ████████████, the affidavit describes the ██████████ █

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Id. at ¶ 19.

████████████████████, the crux of the defendant's argument, ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████, █████████████,

████████████████████████████████████████████   Id. at

¶ 20.

In fact, as described in detail in the government's response (Doc. No. 345) to the defendant's motion to suppress evidence from the defendant's social media account (Doc. No. 292), ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

Notwithstanding the voluntary provision of ██████████████████████ by ████████ ██, on October 28, 2018, the United States still sought a search warrant for the ████████ account. ████████████████████████████, Doc. No. 291, Exh. C at 6-7, ████████████ ███████████████████████████████

████████████████████████████████████████████



### III.    LEGAL STANDARD AND ANALYSIS

The Fourth Amendment protects against "unreasonable searches and seizures," mandating that "no warrants shall issue, but upon probable cause, supported by oath or affirmation."  U.S. Const. Amend. IV.   Federal Rule of Criminal Procedure 41 – which governs the issuance, execution, and return of federal search warrants – further provides that "[a]fter receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize" the property.   Fed. R. Crim. P 41(d)(1).

Probable cause is a "fluid concept" that turns on the "assessment of probabilities in particular factual contexts" and is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).  It is a "commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act."  United States v. Laville, 480 F.3d 187, 196 (3d Cir. 2007) (citing Ornelas v. United States, 517 U.S. 690, 695 (1996)) (internal quotations marks omitted); Gates, 462 U.S. at 231 (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).

A magistrate judge's probable cause determination thus involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United

States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010) (citing Gates, 462 U.S. at 238).  The judge must read a warrant's supporting affidavit "in its entirety and in a common sense, nontechnical manner." United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011); United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993).  Indeed, "statements in an affidavit may not be read in isolation – the affidavit must be read as a whole."  Conley, 4 F.3d at 1208 (citations omitted).  This totality-of-the-circumstances approach requires that a judge "focus on what the affidavit includes, not what is missing."   Miknevich, 638 F.3d at 184.   Furthermore, in making the probable cause determination, the judge is permitted to draw reasonable inferences from the facts set forth in an affidavit.  United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993).

A magistrate judge's conclusions regarding probable cause "are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided."  United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005).  The reviewing court may not conduct a de novo review of a probable cause determination.  Gates, 462 U.S. at 236.  It must instead cabin its "after-the-fact scrutiny" to whether the magistrate judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing[.]"  Id. (internal quotations and modifications omitted); Stearn, 597 F.3d at 554; United States v. $92,422.57, 307 F.3d 137, 146 (3d Cir. 2002) ("a deferential standard of review is applied in determining whether the magistrate judge's probable cause decision was erroneous").  In conducting this review, the court is limited to the facts that were before the magistrate judge – that is, the "four corners" of the warrant affidavit.  Jones, 994 F.2d at 1055; United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000).  If the magistrate judge's finding "was made consistent with the minimal substantial basis standard[,]" the court must uphold that finding.  Conley, 4 F.3d at 1205.  This is so even if

the reviewing court, or a different magistrate judge, might not have found probable cause in that particular case.  Id.; Stearn, 597 F.3d at 554.

Thus, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."  United States v. Ventresca, 380 U.S. 102, 109 (1965); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).  Moreover, the Third Circuit has affirmed that "[w]e have contrasted a "general warrant" with a warrant that is simply overly broad.  An overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized," but it authorizes the seizure of items as to which there is no probable cause.  United States v. Christine, 687 F.2d at 753–54 (quoted in $922, 422.57, 307 F.3d at 149).  An overly broad warrant can be cured by redaction, "striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment."  Id. at 754.

### A.  Probable Cause Exists to Seize Records in Attachment B to the Search Warrant

The defendant concedes that the affidavit sets forth ample facts to establish probable cause to believe that a crime had been committed and that the search of ▮▮▮▮▮▮▮▮▮▮ for social media account evidence is warranted.  Without a sound legal or factual basis, the defendant alleges overbreadth only insofar as the warrant for ▮▮▮▮▮▮▮▮▮▮ authorized a search for "records other than communications through social media accounts."  Doc. No. 291 at 5.

Making express that which the defendant obliquely argues, he appears to challenge probable cause with respect to records that relate to violations of the charged offenses, including:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████ Doc. No. 291,

Exh. B at 7.

Taken as a whole, the search warrant affidavit sets forth more than a "fair probability" that

these categories of records on the defendant's ████████ would contain evidence of criminality.

See Conley, 4 F.3d at 1205 ("[A] reviewing court is to uphold the warrant as long as there is a

substantial basis for a fair probability that evidence will be found.").   "A warrant is not

unconstitutionally general 'unless it can be said to vest the executing officer with unbridled

discretion to conduct an exploratory rummaging ... in search of criminal evidence.'"   United States

v. Karrer, 460 Fed. App'x. 157, 161 (3d Cir. 2012) (quoting United States v. Leveto, 540 F.3d 200,

211 (3d Cir. 2008)).

The search warrant affidavit affirmatively connects the defendant to ████████████ , and

the ████████████ to the crime. ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ . Doc. No. 291, Exh.

B at 4. ██████████████████████████████████

██████████████████████████████████████████████████

████████ . Id. ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ -- even without the association to Bowers, there was a fair probability that the ████ could contain evidence of the charged offenses.  Affidavits of probable cause are to be assessed "in [their] entirety and in a common sense and nontechnical manner."  Conley, 4 F.3d at 1206 (citing Gates, 462 U.S. at 230-31).

The government need not establish that the defendant's ███████ was an instrumentality of the crime or was actively deployed in the commission of the offense (although it was).  See, e.g., United States v. Diaz, 1999 WL 622698, at *1 (E.D. La. Aug. 13, 1999), aff'd in part sub nom United States v. Brown, 263 F.3d 161 (5th Cir. 2001) (rejecting defendant's argument that magistrate judge used inappropriate standard and noting that judge "simply recognized that probable cause to believe that a certain phone will be used in a crime is different from probable cause to believe that evidence will be found at a certain location…[which is] merely application of the appropriate standard[]").  The affidavit provides sufficient information for the magistrate judge to conclude that there was a "fair probability" that many categories of records contained in the cell phone, not merely those that were specified, would provide evidence of the enumerated offenses.  Gates, 462 U.S. at 238-39 (probable cause only requires issuing authority to conclude "there is a fair probability that contraband or evidence of a crime will be found in a particular place."). ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████.

Doc. No. 291, Exh. B at 2-4.  In light of all of these facts, it was reasonable for the magistrate

judge to conclude that ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████. <u>United States v.</u> <u>Yusuf</u>, 461 F.3d

374, 395 (3d Cir. 2006) ("[T]he breadth of items to be searched depends upon the particular factual

context of each case and also the information available to the investigating agent that could limit

the search at the time the warrant application is given to the magistrate.").

     1.  <u>Evidence of</u> ████████████████████████████

"Cell phones have become important tools in facilitating coordination and communication

among members of criminal enterprises, and can provide valuable incriminating information about

dangerous criminals."  <u>Riley v. California</u>, 573 U.S. 373, 401 (2014).  As to the enumerated

categories of records that were sought ███████████████████, their seizure was clearly

supported by probable cause. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████. Doc. No. 291, Exh. A at 3. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████. Doc. No. 291, Exh. B at

3. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. Id. at 2.  Bowers ultimately killed 11

Jewish  congregants  in  the  course  of  his  attack.  ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████.  Cf. Jones, 994 F.2d at 1057 (In a search for evidence of a robbery, the presence of

some stolen property in defendant's residence "could have suggested to the magistrate judge that

other contraband was not far away.").  Because the statutory violations at issue require proof of

bias motivation and of violent interference with religious worship, such items plainly supply

evidence of criminality.

2.  <span style="background:black;color:black">████████████████████</span>

While the defendant has not sufficiently developed his argument, and without citing a single case that would so hold, Bowers implicitly contests the search for ███████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████. See <u>United States v. Gholston</u>, 993 F. Supp. 2d 704, 708 n.2 (E.D. Mich. 2014) ("'user attribution' evidence typically found on a cell phone, which 'indicate[s] who has used or controlled the device,' is analogous to the 'indicia of occupancy' that officers look for 'while executing a search warrant at a residence.'").  Accordingly, this Court should not countenance the defendant's argument ███ █████████████████████████████.

As to other records ███████████, because the defendant concedes that the search warrant contains probable cause to search for ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████.[1]  This is particularly so because ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████ Doc. No. 291, Exh. A at 3. ████████████ ████████████████████████████████████████████████

---

[1]   As to ████████████████████████████, probable cause is clear and sufficient for all of the reasons articulated above.



██████████████████████████████████. Doc. No. 291, Exh. A at 4.  "[A]s a practical matter,

when a search requires review of a large collection of items, ... 'it is certain that some innocuous

[items] will be examined, at least cursorily, in order to determine whether they are, in fact, among

those [items] authorized to be seized.'" United States v. Stabile, 633 F.3d 219, 234 (3d Cir. 2011)

(quoting Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976)) (citation and internal quotation

marks omitted).   Further, ████████████████████████████████

██████████████████████████████████████. "[I]t is clear that because criminals can - and often do - hide,

mislabel, or manipulate files to conceal criminal activity, a broad, expansive search … may be

required." Stabile, 633 F.3d at 237.

██████████████████████████████████. Doc. No. 291, Exh. B at 5.

The defendant cannot credibly assert that probable cause exists only to search ████████

██████████████████████████. As the Supreme Court has explained, such "[t]echnical requirements of elaborate

specificity … have no proper place in this area." Ventresca, 380 U.S. at 108.

14

3.   Defendant's Cases are Inapposite

The cases cited by the defendant in his motion do little to salvage his argument.  The Supreme

Court in Riley v. California did expound upon the unique nature of cell phones:

> The storage capacity of cell phones has several interrelated consequences for
> privacy.  First, a cell phone collects in one place many distinct types of
> information—an address, a note, a prescription, a bank statement, a video—that
> reveal much more in combination than any isolated record.

573 U.S. 373, 394 (2014).  While those features influenced the Supreme Court to rule that a search

warrant is required for the search of a cell phone, these unique characteristics only underscore the

probative value and importance of the data ███████████████████████████████████████

████████████████████████████.[2]

4.   The Affidavit's Assertions Are Credible and Corroborated

The defendant seeks to weaken the affidavit by isolating two highly-relevant factual

assertions – ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████.  Doc. No. 288 at 11-12, 18.  Because the affidavit

sets forth credibly-sourced and corroborated facts, this comparison is unpersuasive.

Courts have often regarded tips from anonymous informants as distinct from other

categories of information alleged in a warrant affidavit.  See, e.g., Yusuf, 461 F.3d at 384 (noting

---

[2]      In his brief, the defendant cites to a magistrate judge decision and district court case, both outside of the Third
Circuit.  That magistrate's decision and commentary have no relevance to this case but did affirm that the defective
warrants in that case could have avoided overbreadth by seizing information "only insofar as it pertains to" the federal
violations at issue.  In re Nextel Cellular Telephone, 2014 WL 2898262, at *7 (D. Kan. June 26, 2014).  The warrant
here clearly specifies the federal statutes that had been charged and that were under investigation and further
particularly described several categories of evidence.  Similarly, the facts of United States v. Winn render its holding
fact-bound.  In Winn, not only was the criminal statute mis-cited in the state court warrant, but the warrant at issue
sought evidence of the state offense of public indecency which later became the basis for a federal adoption for child
pornography offenses.  79 F. Supp. 3d 904, 921 (S.D. Ill. 2015) ("it is especially hard to accept that the reference to
the criminal statute could [] constitute a meaningful limitation on the scope of the search when the warrant referred to
the wrong criminal statute").

that "[c]ourts have routinely recognized a distinction between information provided by an informant and that provided by a law enforcement officer or other government agency"). Contrary to the defendant's suggestion, however, courts do not require a strict showing of an informant's basis for knowledge and reliability. Rather, as the Supreme Court has directed, such considerations may contribute to the common-sense, "totality-of-the-circumstances analysis that traditionally has guided probable cause determinations . . .." Gates, 462 U.S. at 233-34 (rejecting a rigid test for an informant tip in favor of a totality-of-the-circumstances approach). And in contrast to anonymous tips, courts have agreed that a magistrate judge issuing a warrant "may give considerable weight to the conclusions of experienced law enforcement officers." Whitner, 219 F.3d at 296; cf. Yusuf, 461 F.3d at 385 ("[I]nformation received from other law enforcement officials during the course of an investigation is generally presumed to be reliable.").



Here, the affidavit's assertions ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████. Doc. No. 291, Exh. B at 1. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████. Id. at 2, 5. Nowhere does the affidavit reference an anonymous tip or source. Rather, context makes clear ████████████

████████████████████████████████████████████████████

██████. See id. at 3 ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████; see also Ventresca,

380 U.S. at 111 (noting that affidavits may rely on hearsay information, and rejecting "unduly technical and restrictive reading" of affidavit when, read as a whole, it rested on observations of fellow officers).  The magistrate judge could reasonably consider these sources to be reliable.

The challenged assertions bear further indicia of reliability because they are thoroughly corroborated by other facts in the affidavit.  See United States v. Williams, 3 F.3d 69, 73 (3d Cir. 1993) (magistrate entitled to credit informant's assertions based on corroboration, apparent disinterest of informant, and absence of suggestion of unreliability). ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████. Doc. No. 291, Exh. B at 2-4.

The concerns that have led courts to treat anonymous tips with special caution are simply not present here, where the source of the information alleged is known, is largely based on law enforcement observations or investigation, and is roundly corroborated.  As a result, Bowers's comparison of the affiant's factual allegations to those of an anonymous source is inapt.

**B. No Unlawful Search or Seizure** █████████

Defendant also conclusorily argues the information in paragraph 20 of the affidavit was the product of a warrantless search and it must be excised from the affidavit.  The defendant's argument focuses upon private action that was not governmental in nature at all and therefore outside the scope of Fourth Amendment analysis.  There United States hereby fully incorporates by reference its response in opposition to the defendant's motion to suppress evidence seized from a social media account, (Doc. No. 345).  Defendant Bowers cannot claim a reasonable expectation of privacy in routine account records ███████████; accordingly, ████████████████ ███████ ████████████████████████████ was at most a private search. "When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment." United States v. Meregildo, 883 F. Supp. 2d 523, 525 (S.D. N.Y. 2012) (citing Katz v. United States, 389 U.S. 347, 351 (1967)).

The Constitution does not apply to searches, reasonable or otherwise, by private individuals …" United States v. Miller, 152 F.3d 813, 815 (8th Cir. 1998).  "Private searches are not subject to constitutional restrictions." United States v. Hall, 142 F.3d 988, 993 (7th Cir. 1998) (finding Fourth Amendment inapplicable to search of defendant's computer by private computer shop technician).  The Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984)[3] (citing Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun,

---

[3]        Under facts not present here, the Supreme Court has assessed whether the government's review of evidence exceeded the scope of the private search.  For example, in United States v. Jacobsen, the Supreme Court upheld the examination and field test of white powder by federal agents of a package that had already been opened by a private freight carrier, 466 U.S. at 126 ("federal agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as a result of private conduct.  To the extent that a protected possessory interest was infringed, the infringement was de minimis and constitutionally reasonable.").  See also Miller, 152 F.3d at 816. █

J., dissenting)).  An agent's mere viewing what private parties freely make available for inspection does not violate the Fourth Amendment.  See Coolidge v. New Hampshire, 403 U.S. 443, 487-490 (1971); Burdeau v. McDowell, 256 U.S. 465, 475-76 (1921); Jacobsen, 466 U.S. at 119-20.

The Supreme Court has "uniformly ... held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by the government action." Smith v. Maryland, 442 U.S. 735, 740 (1979) (collecting cases).  For an "intrusion into [the] private sphere" to constitute a "search," a defendant must "seek[] to preserve something as private" and "society [must be] prepared to recognize [that privacy expectation] as reasonable."  Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018) (quoting Smith, 442 U.S. at 7409).  Information shared with third parties is generally not protected by the Fourth Amendment pursuant to the third-party doctrine.  See Smith, 442 U.S. at 743-44 (the Supreme Court has "consistently … held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties").



███████████████████████████████████████. These voluntary, unprompted actions ████████ cannot constitute a government search.  Further, given the defendant's open and notorious public posting ██████████████████████████████, he cannot credibly claim a reasonable expectation of privacy ████████████ ██████████████████████ ██████████.

1.  <u>No Reasonable Expectation of Privacy in Records Associated with Account</u>

The very limited ████████ information included in the affidavit ████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ could have been obtained with grand jury subpoenas that did not require probable cause.[6]

There is generally no privacy interest in records associated with electronic accounts. Accordingly, the Fourth Amendment does not protect subscribers from the production of subscriber records by third-party service providers.  <u>United States v. Perrine</u>, 518 F.3d 1196, 1204 (10th Cir. 2008) (surveying cases);[7] <u>United States v. Christie</u>, 624 F.3d 558, 573-74 (3d Cir. 2010) (citing <u>Perrine</u> with approval for proposition that there is no reasonable privacy expectation in subscriber information and finding that defendant "had no reasonable expectation of privacy in his IP address and so cannot establish a Fourth Amendment violation").

_____

████████████████████████████████████████████████████████████
[6]   Relatedly, in his motion to suppress social media account information, Doc. No. 292, the defendant rightly concedes that he cannot reasonably assert a subjective expectation of privacy in the <u>public</u> postings on ████████ ██████████.  Doc. No. 292 at 3.

18 U.S.C. § 2702 (b) (8) and (c)(4).

[7]   <u>See Perrine</u>, 513 F.3d at 1204 ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation") ( citing <u>Guest v. Leis</u>, 255 F.3d 325, 336 (6th Cir. 2001); <u>United States v. Hambrick</u>, 225 F.3d 656 (4th Cir. 2000) (unpublished), affirming <u>United States v. Hambrick</u>, 55 F. Supp.2d 504, 508–09 (W.D. Va. 1999); <u>United States v. D'Andrea</u>, 497 F. Supp.2d 117, 120 (D. Mass. 2007); <u>Freedman v. America Online, Inc.</u>, 412 F.Supp.2d 174, 181 (D. Conn. 2005); <u>United States v. Sherr</u>, 400 F.Supp.2d 843, 848 (D. Md. 2005); <u>United States v. Cox</u>, 190 F.Supp.2d 330, 332 (N.D.N.Y. 2002); <u>United States v. Kennedy</u>, 81 F.Supp.2d 1103, 1110 (D. Kan. 2000) and referencing <u>Forrester</u>, 512 F.3d at 510 (9th Cir .2008); <u>United States v. Lifshitz</u>, 369 F.3d 173, 190 (2d Cir. 2004).

█████████████████████████████████, the information in █████████████ the

affidavit does not require the government to obtain a search warrant. █████████████████

████████████████████████████████████████████████████████████████████

█████, no reasonable Fourth Amendment expectation of privacy of the defendant was breached.

    2.  <u>Probable Cause Exists Without Information</u> ████████████████

    To be clear, should the Court determine that the voluntarily-provided ████████████

information ██████████████████████████ should be excised from the probable cause

affidavit, ███████████ would be only slightly modified and need not be stricken in totality.[8] ███

████████████████████████████████████████████████████████████████████

████████████████████████████.[9] ██████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

    ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ The government was not

---

[8]    At most, the paragraph would be redacted to omit the following: █████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Def. Exh. B at 4.

[9]    The timing and content of the defendant's post were publicly reported, and captured by researchers, law enforcement and the media, within hours of the defendant's attack on the Synagogue on October 27, 2018, and well-before the search warrant for the defendant's cell phone was obtained on October 28, 2018.  <u>See</u> Perez, Murphy, Marquez, Stapleton, and Hilk, <u>On social media, suspect had posted "I'm going in" and frequently targeted Jews</u>, CNN, Oct. 27, 2018, 2:36 p m.

required to establish that the defendant's ███████ was an instrumentality of the crime; ample probable cause, ████████████████████, supported the search ███████ for the requested records.  See, e.g., Diaz, 1999 WL 622698, at *1.

### C.  Exclusionary Rule Should Not Apply – Good Faith Does Apply

The extraordinary remedy of suppression is not appropriate here even if the Court were to find the warrant deficient in some respect.  "Whether to suppress evidence under the exclusionary rule is a separate question from whether the Government has violated an individual's Fourth Amendment rights."  United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (citing Hudson v. Michigan, 547 U.S. 586, 591-92 (2006)).  A defendant thus has no constitutional right to suppression, and it "is not an automatic consequence of a Fourth Amendment violation."  Herring v. United States, 555 U.S. 135, 137 (2009).

Courts have long recognized that the exclusionary rule imposes "substantial social costs" by hiding often crucial evidence and hindering the courts' truth-seeking function.  Leon, 468 U.S. at 907.  As a result, they have repeatedly affirmed that suppression "has always been our last resort, not our first impulse."  Hudson, 547 U.S. at 591; Herring, 555 U.S. at 140; Katzin, 769 F.3d at 170.  The police conduct at issue "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144 (The exclusionary rule is meant only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").

Relying on Supreme Court precedent, the Third Circuit has demanded a case-by-case cost-benefit analysis, rather than a categorical approach, when evaluating whether officers acted with objectively reasonable good-faith belief in their actions.  United States v. Franz, 772 F.3d 134, 145

(3d Cir. 2014).   Using this approach, the Third Circuit has declined to categorically exclude evidence, even where officers relied on warrants that were facially deficient.  <u>See, e.g.</u>, <u>Franz</u>, 772 F.3d 134; <u>United States v. Wright</u>, 777 F.3d ]635 (3d Cir. 2015).  The Circuit instead affirmed the need to examine the totality of the circumstances, such as the officer's conduct and knowledge, noting that the Supreme Court has "suggested that the absence of culpability is dispositive."  <u>Franz</u>, 772 F.3d at 147 (citing <u>Davis v. Unites States</u>, 564 U.S. 229, 238 (2011).

For all of the reasons above, even if this Court were to find that the warrant was deficient in some respect, it is clear that the agents relied in good faith on a detailed and well-supported affidavit.  Exclusion would thus secure no benefit here.  It would instead inflict the significant cost of suppressing highly probative evidence that is plainly within the scope of the warrant and supporting affidavit.

D.   **Independent Source, Inevitable Discovery**

Assuming, <u>arguendo</u>, that the search warrant for the defendant's ███████ was tainted by the voluntary provision ██████████████, the defendant's motion to suppress must also be denied because the information would have been inevitably discovered.  The exclusionary rule does not apply when the prosecution has an independent, untainted source of the evidence or when the evidence would have been inevitably discovered.  <u>Murray v. United States</u>, 487 U.S. 533, 537 (1988); <u>Nix v. Williams</u>, 467 U.S. 431, 443 (1984).  Under the inevitable discovery doctrine, evidence obtained through a constitutional violation is still admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered through lawful means."  <u>Nix</u>, 467 U.S. at 444.  "The independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained

independently from activities untainted by the initial illegality.'" <u>United States v. Price</u>, 558 F.3d 270, 281 (3d Cir. 2009) (quoting <u>Murray</u>, 487 U.S. at 537).

While similar to the independent source doctrine, under the inevitable discovery doctrine, "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." <u>United States v. Vasquez De Reyes</u>, 149 F.3d 192, 195 (3d Cir. 1998) (quoting <u>Nix</u>, 467 U.S. at 431); <u>Stabile</u> at 245. The government can meet its burden by establishing "that the police, following routine procedures, would inevitably have uncovered the evidence." <u>Vasquez De Reyes</u>, 149 F.3d at 195.

Any speculative taint by the voluntary provision ███████████ was vitiated ████ ████████████████████ later on October 28, 2018. ████████████████████



Gov. Resp. to Def. Motion to Suppress Social Media Account, Exh. 2. The account records ████████████ ███████████████████████████ are not protected by the Fourth Amendment and could have been obtained with a subpoena.

As to the inevitable nature of discovery, because of the open and notorious nature of Bowers's ████████ activity, the contents of his account were preserved, saved, and disseminated by the media and private parties almost instantaneously. <u>See See</u> Phillips, Bagavathi, Reid, Valasik, and Krishnan, Washington Post, <u>The daily use of Gab is climbing. Which talker might become as violent as the Pittsburgh synagogue gunman?</u>[10] (researchers explain that they have a data set of all Gab.com posts since 2016, including all of Robert Bowers's posts). ████████

---

[10]    https://www.washingtonpost.com/news/monkey-cage/wp/2018/11/29/the-daily-use-of-gab-is-climbing-which-talker-might-become-as-violent-as-the-pittsburgh-synagogue-gunman/

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████.[11]

### E.  **The Defendant Has No Standing**

Aside from the many flaws in the defendant's challenge to the ██████ evidence, Bowers also fails to establish his standing to seek suppression of that evidence in the first place.  While the United States has set forth facts that demonstrate probable cause that the incriminating records sought were reasonably likely to be recovered from ███████, Bowers himself has failed to assert any personal privacy interest in ██████████, has failed to allege a single fact that indicates a possessory interest in the device, and phrases his arguments for suppression in the abstract.

The Fourth Amendment "protects people, not places."  Katz, 389 U.S. at 351 (1967).  A defendant may invoke the exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993) (citation omitted).  It is the defendant's burden to establish that he had a reasonable expectation of privacy in the property searched and the item seized.  Minnesota v. Olson, 495 U.S. 91, 95–97 (1990); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Stearn, 597 F.3d 540, 553 (3d Cir. 2010) (lower court "erred in ordering the suppression of evidence without regard to the defendants' ability to demonstrate legitimate expectations of privacy in the locations

---

[11]    For example, the government has independent source evidence ████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

searched").  This requires the defendant to demonstrate both that he had a "subjective expectation of privacy in the area searched and that his expectation was objectively reasonable." United States v. Burnett, 773 F.3d 122 (3d Cir. 2014).

A defendant may not simply rely on the government's intention to link a defendant to the accounts.  See e.g., United States v. Watson, 404 F.3d 163, 166–67 (2d Cir. 2005); cf. United States v. Woodley, 2014 WL 3590143, at *4-5 (W.D. Pa. July 21, 2014) (J. Diamond) (defendant failed to establish reasonable expectation of privacy in cell phone records, including data location transmitted by the phone, where defendant proffered no evidence connecting him to the phone as its owner, subscriber, or authorized user); United States v. Hanner, 2007 WL 1437436, at *3-5 (W.D. Pa. May 14, 2007) (J. McVerry) (where defendant fails to establish legitimate expectation of privacy in a phone, he is foreclosed from asserting a challenge that the search of the phone was illegally executed)).  Because the defendant failed to allege any connection or privacy interest ▆ ▆▆▆▆▆▆▆▆▆ that would justify his challenge to its search, and his motion must be denied.

### F.  No Hearing Warranted

Defendant Bowers also has not satisfied the necessary threshold for an evidentiary hearing. A defendant is not entitled to an evidentiary hearing on a pretrial motion in a criminal case unless he meets his "burden of establishing that a hearing is necessary," and that he has "stated a colorable claim."  United States v. Solomon, 2007 WL 927960, at *1 (W.D. Pa. March 26, 2007).   In Solomon, the court correctly relied upon the principles set forth in United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996), and denied several motions to suppress search warrants without holding a hearing, as the defendants had failed to satisfy their threshold burden.  Id. at *1.

Courts of appeal have long and repeatedly held that "evidentiary hearings on motions to suppress are not granted as a matter of course" but are held "only when the allegations and moving

papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004) (citations and internal quotations omitted).  This widely-accepted standard is justified by the need to avoid convening unnecessary evidentiary hearings that waste scarce judicial resources and misuse the hearing as a tool to preview the trial evidence.  "Hearings on motions to suppress are not discovery proceedings."  United States v. Harrelson, 705 F.2d 733, 738 (5th Cir. 1983).

In moving for suppression of all records obtained from the defendant's cell phone other than "social media communications," without further detail, Bowers has failed to present definite, specific, detailed facts which would justify relief in the form of suppression in relation to this search warrant.  But it is a defendant's responsibility to develop suppression arguments in a meaningful manner such that the government has an adequate opportunity to respond, and the district court is able to make an informed decision.  United States v. McClellan, 165 F.3d 535, 550 (7th Cir. 1999).  This Court can appropriately conduct its review of the search warrant within the "four corners" of the warrant affidavit.  Jones, 994 F.2d at 1055.  It can, and should, rule on the briefing alone.

## IV.    **CONCLUSION**

For the reasons herein stated, the United States opposes the defendant's motion to suppress evidence seized from ███████████, Doc. No. 291, and this Court should deny the motion in its entirety.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:    s/Troy Rivetti

27

TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475