IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE
MOTION TO SUPPRESS EVIDENCE SEIZED DURING SEARCH OF RECORDS
FROM MEDICAL RECORDS FACILITIES IDENTIFIED AS TARGET LOCATION 1
AND TARGET LOCATION 2 (MOTION TO SUPPRESS NO. 14)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and submits this Response in Opposition to Defendant Robert Bowers's Motion to Suppress Evidence Seized During Search of Records From Medical Records Facilities Identified as Target Location 1 and Target Location 2 (Motion to Suppress No. 14) (Doc. No. 301).

**I.   SUMMARY**

The defendant moves to suppress documents obtained pursuant to search warrants for his 2015 and 2017 medical examination records created in conjunction with his application and certification by the Department of Transportation for his Commercial Driver's License ("CDL"). Doc. No. 301. Bowers makes three primary arguments in support of his motion: (1) the warrants are not supported by probable cause; (2) the evidence of the 2017 medical certificate is the fruit of an illegal search; and (3) the warrants are invalid because they are prohibited general warrants. Id. at 1. The defendant's motion should be denied because he expressly acknowledged that the records could be disclosed without his authorization for multiple reasons, and he thus has no reasonable privacy interest in the documents. The motion should also be denied because the warrants are

supported by probable cause, are not fruits of illegal searches, and are sufficiently particularized, as they seek a limited, well-defined set of records.  Finally, if this Court were to find any defects in the warrants, the good faith exception applies.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     Government Filings

On October 27, 2018, the defendant was charged by federal criminal complaint with multiple federal crimes related to the mass shooting at the Tree of Life Jewish Synagogue which resulted in the deaths of 11 individuals and the wounding of many others.  See Doc. No. 1 (Complaint).

On October 31, 2018, the defendant was indicted by a federal grand jury sitting in the Western District of Pennsylvania and charged with 44 counts of civil rights and firearms offenses. See Doc. No. 10 (Indictment).

On January 29, 2019, a superseding indictment was filed, charging the defendant with 63 counts of civil rights and firearms offenses.  See Doc. No. 44 (Superseding Indictment). Specifically, based upon the defendant's killing and injuring of multiple congregants and police officers, which involved an attempt to kill and the use of a dangerous weapon and a firearm, the defendant was charged with:  25 counts of Obstruction of Free Exercise of Religious Beliefs, in violation of various subsections of 18 U.S.C. § 247; 13 counts of committing a Hate Crime, in violation of various subsections of 18 U.S.C. § 249; and 25 counts of Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of various subsections of 18 U.S.C. § 924(c).  Id.  Sections 247 and 249 are specific intent crimes and require the government to prove that the defendant acted intentionally and willfully.  Doc. No. 45 (Superseding Indictment

Memorandum). The Superseding Indictment further specifies that the defendant took actions such as: creating an account on the website Gab.com; posting on his Gab.com account; driving to the Tree of Life Synagogue, which housed three congregations; carrying firearms; discharging firearms at congregants; and discharging firearms at public safety officers. Doc. No. 44 at 1-2.

On February 10, 2020, the government sought and obtained search warrants authorizing the seizure of "[a]ny and all records related to Robert Bowers (DOB: 9/04/1972) pertaining to Bowers's 2015 and 2017 medical examinations in accordance with the Department of Transportation Commercial Driver's License application and certification." Doc. No. 301, Exh. A, at 18-25.

As detailed in the search warrant affidavits at issue, on January 7, 2019, while the affiant was photographing evidence obtained in the course of this investigation, the affiant identified and photographed two medical certificates: first, a 2017 Medical Certificate, which was obtained from the defendant's wallet at the TOL building; and second, a 2015 Medical Certificate, which was obtained from the defendant's residence pursuant to a federal search warrant. See id., Exh. A (Affidavit), ¶¶ 10-12. As part of the CDL process, an applicant/licensee must obtain a medical certificate by completing a Medical Examination Report Form ("Medical Form") and submitting to a medical examination by a medical examiner every two years. See https://www.fmcsa.dot.gov/medical/driver-medical-requirements/dot-medical-exam-and-commercial-motor-vehicle-certification (United States Department of Transportation, DOT Medical Exam and Commercial Motor Vehicle Certification) (last visited November 2, 2020). The applicant answers a series of questions related to the applicant's health history, including whether the applicant has a history of "any injury or illness in the last five years," "head/brain injuries," "nervous or psychiatric disorders, e.g., severe depression," or of "narcotic or habit forming drug

use." See Gov. Exh. 1 (portion of 2015 Medical Form).  Lastly, the applicant is required to sign the certification, acknowledging that the information is complete and true.  Id.

On January 21, 2020, Concentra (a national health care provider) confirmed that the defendant obtained his 2015 and 2017 medical examinations and certifications from physicians within its network, and further provided law enforcement with the specific location where the records were maintained.  See Doc. No. 301, Exh. A, ¶¶ 14-18.  Based upon this information, on February 10, 2020, the government applied for search warrants and received authorization to seize "[a]ny and all records related to Robert Bowers (DOB: 9/04/1972) pertaining to Bowers' 2015 and 2017 medical examination in accordance with the Department of Transportation Commercial Driver's License application and certification." Id. at 18-25.

Pursuant to the warrant for the 2015 Medical Records, the government received a 23-page PDF file, of which only four pages contained medical information.  These four pages consist of two copies of a two-page 2015 Medical Form.  Included in the packet was a signed acknowledgement by the defendant that he had received a copy of Concentra's Notice of Privacy Practices.  A copy of the policy in effect in 2015, obtained from open source information,[1] sets forth "all of the ways we are permitted to use and disclose information about you" and lists 14 different situations in which the defendant's records might be disclosed.  See Gov. Exh. 2, 2-4.  The category entitled "Special Situations" lists another 14 subcategories, including disclosure to law enforcement.  Id.  The privacy notice also lists 16 total categories/subcategories for which the defendant's authorization would not be needed.  Id. at 2-4.  The notice further states that

---

[1] On January 6, 2015, the Concentra webpage was archived by the web.archive.org.  The Notice of Privacy Practices posted on the site had last been updated on https://web.archive.org/web/20150106063158/ https://www.concentra.com/about-us/hipaa/notice-of-privacy-practices/.  The next date that the Concentra webpage was archived, the same policy was in effect, https://web.archive.org/web/20160129201115/ http://www.concentra.com/-/media/files/13_nop-english.pdf.

> You have the right to ask that we limit how we use and disclose your [personal health information]. We will consider your request **but are not legally required to approve it**. If we approve your request, we will put any limits in writing and follow them except in emergency situations. **You may not limit the uses and disclosures** that we are legally required or allowed to make.

Id. at 4, Section VII(A) (emphasis added).

Pursuant to the warrant for the 2017 Medical Records, the government received an 18-page PDF file, of which only four pages contained medical information (the 2017 Medical Form). The defendant had again acknowledged that he had received a copy of the Notice of Privacy Practices.

During all of the above-referenced time period, the government's criminal investigation of the mass shooting and deaths of 11 individuals was ongoing (and will remain ongoing until the time of trial). The ongoing investigation focused on gathering evidence related to elements of the crimes charged, including the defendant's intent and capacity to form intent.[2]

### B.  Defense Filings

On October 15, 2019, the defendant opposed the government's proposed comprehensive scheduling order, including a request for the defense to provide timely notice regarding any mental health defense pursuant to Fed. R. Crim. Proc. 12.2. Defense counsel asserted that "a large part of the task of providing constitutionally adequate assistance to a defendant in a capital case involves the investigation and presentation of mental health evidence, whether at the guilt phase, the penalty phase, or both." Doc. No. 100 at 3.

On December 18, 2019, the defendant filed a Motion to Compel Production of Discovery and Brady, Doc. No. 154, where he sought, among other things, any materials relevant to his

---

[2]  On January 22, 2020, the government filed a Motion to Set Deadlines for Meaningful Notice of Defendant's Intent to Use Mental Health Evidence. See Doc. No. 180. The defendant opposed the Government's request (see Doc. No. 196), and the Court denied the government's motion. Most recently, defense counsel again asserted that they were not in position to address this issue at a November 2, 2020, status conference. See Doc. Nos. 340, 341. Notably, the defendant did not state that he would not be using any mental health evidence at trial.

psychiatric history including those that "reflect on Mr. Bowers' mental state during the shootings, as well as his overall mental condition at the time of the shootings" because "[a]ll of this requested information is both 'favorable' under Brady and 'material' under Rule 16." Doc. No. 154 at 9.

On February 7, 2020, the defendant filed a Reply to the Government's Opposition to the defendant's Motion to Compel Discovery and once again asserted the relevance of mental health records to his guilt or innocence. Doc. No. 191 at 2-3 ("[S]ome of the material … already provided [in discovery] falls within the ambit of Brady, including statements … regarding Mr. Bowers' significant mental health issues[]."). The defendant argued that witness observations of his conduct during the shooting was "important to a mental health professional's evaluation of Mr. Bowers' mental state at the time of the offenses." Id. at 6.

On February 14, 2020, the defendant filed a Position on Government Motion to Set Mental Health Notice Deadlines and reiterated that investigating mental health evidence was part of "conducting a constitutionally competent investigation and preparing for trial on a fundamental aspect of Mr. Bowers' case." Doc. No. 196 at 2. The defendant affirmed that the scope of relevant mental health history "when there are indications of serious mental health issues, which is the case here, the investigation should reach back at least three generations to document genetic history, patterns and effects of familial medical conditions and vulnerability to mental illness, as well as other factors that may have influenced the health of the defendant and his family." Id. at 4-5.

### III.   LEGAL STANDARD AND ANALYSIS

#### A.   The Defendant Does Not Have a Subjective or Reasonable Expectation of Privacy in the CDL Records

"The Fourth Amendment protects legitimate expectations of privacy rather than simply places." Illinois v. Andreas, 463 U.S. 765, 771 (1983). It is the defendant's burden to establish that he had a reasonable expectation of privacy in the property searched and the item seized.

6

Minnesota v. Olson, 495 U.S. 91, 95-97 (1990); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Stearn, 597 F.3d 540, 553 (3d Cir. 2010) (lower court "erred in ordering the suppression of evidence without regard to the defendants' ability to demonstrate legitimate expectations of privacy in the locations searched").  This requires the defendant to demonstrate both that he had a "subjective expectation of privacy in the area searched and that his expectation was objectively reasonable."  United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014).

Generally, courts have not recognized a privacy interest as objectively reasonable where individuals are forewarned of a diminished privacy interest before engaging in an activity. See, e.g., United States v. Young, 350 F.3d 1302, 1308 (11th Cir. 2003) ("No reasonable person would expect to retain his or her privacy interest in a packaged shipment after signing an airbill containing an explicit, written warning that the carrier is authorized to act in direct contravention to that interest"); Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001) (online bulletin board's "disclaimer stating that personal communications were not private … defeats claims to an objectively reasonable expectation of privacy [by bulletin board] users"); United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000) (finding no privacy interest in an employee's internet search records when an employer posted a privacy disclaimer regarding computer internet use, including file transfers).

Of particular note, in an analogous context, a court found that a defendant "could not have expected that his [Federal Aviation Administration] medical information would be held in a level of confidence that would implicate the protection of the Fourth Amendment" when he completed a medical form with a Privacy Act warning expressly stating that said information could be disclosed for multiple purposes.  United States v. Cooper, No. CR 05-0549 VRW, 2005 WL 3555713, at *5-6 (N.D. Cal. Dec. 28, 2005) ("[W]hen a defendant transmits information with the knowledge that it may be recorded and used by a third party for certain purposes unrelated to law

7

enforcement, there can be no legitimate expectation of privacy notwithstanding that the defendant did not actually anticipate that the information might be shared with law enforcement"). Courts have also found that participants in "closely regulated" industries, such as commercial trucking, are aware their property will be subject to inspection for specific purposes such that their reduced privacy interests permit the execution of warrantless searches. United States v. 4,432 Mastercases of Cigarettes, More Or Less, 448 F.3d 1168, 1176 (9th Cir. 2006); Anderton v. Texas Parks & Wildlife Dep't, 605 F. App'x 339, 344 (5th Cir. 2015) (commercial trucking is a closely regulated industry); Davis v. Lewis, 376 F. Supp. 3d 629, 641 (E.D.N.C. 2019) (same).

Here, the first question is whether the defendant has a subjective expectation of privacy in the CDL Medical Forms. He does not allege that he does, perhaps because he expressly acknowledged in completing the forms that he was aware that they could be disclosed in a multitude of situations, with or without his authorization. Gov. Exh. 2 at 2-4.

Moreover, even if the defendant had alleged a subjective privacy interest in the Medical Forms, it is clear that said interest was not a reasonable one. From the Notice of Privacy Practice, the defendant could not have expected that the information he reported on the forms, or the sections completed by the medical professional in order for him to obtain a CDL, "would be held in a high level of confidence that would implicate the protection of the Fourth Amendment." Cooper, 2005 WL 3555713, at *6. After all, the Notice provides, in no uncertain terms, that the Medical Forms can be disclosed in approximately 28 different situations, and that, had he requested to limit such disclosures (and there is no evidence he did), Concentra was "not legally required to approve" such a request.[3] In sum, the defendant has failed to allege any privacy interest in the records and he

---

[3] Given the Notice provided to the defendant, and given that commercial trucking is a closely regulated industry, a warrant was arguably unnecessary here. Cooper, 2005 WL 3555713, at *8 (noting "societal determination that records containing information knowingly and voluntarily submitted to one agency are not protected from disclosure to another agency without a warrant or consent when such disclosure is made for purposes of law

clearly had no reasonable expectation of privacy in them.  His motion must be denied.

      **B.**      <u>**Probable Cause Exists to Issue the Search Warrants**</u>

Even if the defendant has a legitimate expectation of privacy in the Medical Records (which the United States does not concede), the magistrate judge reasonably concluded that there was a fair probability that evidence of the enumerated offenses would be found therein.  The Fourth Amendment protects against "unreasonable searches and seizures," mandating that "no warrants shall issue, but upon probable cause, supported by oath or affirmation."  U.S. Const. Amend. IV. Federal Rule of Criminal Procedure 41 – which governs the issuance, execution, and return of federal search warrants – further provides that "[a]fter receiving an affidavit or other information, a magistrate judge . . . must issue the warrant if there is probable cause to search for and seize" the property.  Fed. R. Crim. P 41(d)(1).

Probable cause is a "fluid concept" that turns on the "assessment of probabilities in particular factual contexts" and is "not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983).  It is a "commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." <u>United States v. Laville</u>, 480 F.3d 187, 196 (3d Cir. 2007) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996)) (internal quotations marks omitted); <u>Gates</u>, 462 U.S. at 231 (citing <u>Brinegar v. United States</u>, 338 U.S. 160, 175-76 (1949)).

A magistrate judge's probable cause determination thus involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Stearn</u>, 597 F.3d at 554 (citing <u>Gates</u>, 462 U.S. at 238).  The judge must read a warrant's supporting affidavit

---

enforcement.").  That government agents chose to obtain the Medical Examination Report Forms by a search warrant does not create a privacy interest for the defendant.

"in its entirety and in a common sense, nontechnical manner." United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011); United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993). Indeed, "statements in an affidavit may not be read in isolation – the affidavit must be read as a whole." Conley, 4 F.3d at 1208 (citations omitted). This totality-of-the-circumstances approach requires that a judge "focus on what the affidavit includes, not what is missing." Miknevich, 638 F.3d at 184. Furthermore, in making the probable cause determination, the judge is permitted to draw reasonable inferences from the facts set forth in an affidavit. United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993).

A magistrate judge's conclusions regarding probable cause "are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005). The reviewing court may not conduct a de novo review of a probable cause determination. Gates, 462 U.S. at 236. It must instead cabin its "after-the-fact scrutiny" to whether the magistrate judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing." Id. (internal quotations and modifications omitted); Stearn, 597 F.3d at 554; United States v. $92,422.57, 307 F.3d 137, 146 (3d Cir. 2002) ("a deferential standard of review is applied in determining whether the magistrate judge's probable cause decision was erroneous"). In conducting this review, the court is limited to the facts that were before the magistrate judge – that is, the "four corners" of the warrant affidavit. Jones, 994 F.2d at 1055; United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000). If the magistrate judge's finding "was made consistent with the minimal substantial basis standard," the court must uphold that finding. Conley, 4 F.3d at 1205. This is so even if the reviewing court, or a different magistrate judge, might not have found probable cause in that particular case. Id.; Stearn, 597 F.3d at 554.

Thus, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).  Moreover, where a warrant invalidly authorizes the seizure of items, the offending phrases may be stricken and certain resulting materials excluded, such that the warrant need not fail as a whole.  United States v. Beatty, 437 F. App'x 185, 187 (3d Cir. 2011); $92,422.57, 307 F.3d at 149.

While it is the government's position that the defendant does not have a recognized privacy interest in the CDL Medical Records, it is beyond dispute that there was probable cause to issue the search warrants.  In this prosecution, the United States is required to prove that the defendant acted with specific intent, and materials related to his capacity to form that intent are necessarily relevant evidence of the charged offenses and relevant to assessments of the defendant's mens rea.  The defendant himself has repeatedly underscored the relevance of such evidence to his mental state during his commission of the offenses, contending that such evidence may in fact be Brady that may negate the requisite mens rea to be proven at trial.  See Doc. Nos. 154, 191, 193, and 196.  The defendant has also asserted that relevant materials include not only those relevant to the defendant's mental health on the date of the offense, but also those dating back to his childhood, as well as predating his birth.  Doc. Nos. 193 and 196.  It is confounding that now, however, the defendant argues that such records are "untethered to any legal – or commonsense – understanding of relevance."  Doc. No. 301 at 7.  Consistent with the view of both the defendant and the United States, a magistrate judge concluded that evidence which could bear on the defendant's mens rea was relevant evidence of the charged offenses.  See Doc. Nos. 154, 191, 193, and 196. Considering all of the facts, the magistrate found probable cause to authorize the search warrants for the defendant's CDL records.

This Court should also reject the defendant's assertion that the search warrants were overbroad. The magistrate judge could have (and did) make the reasonable inference that a person's mental health can be impacted by any number of physical ailments, trauma, and outside factors. The defendant now inexplicably argues that "the totality of the information in the 2015 and 2017 medical examination report forms" is not relevant and, if anything is relevant, it is only those directly related to mental health or substance abuse. Doc. No. 301 at 10. This contradicts his own position, taken on multiple occasions, that relevant materials include not only those bearing on the defendant's mental health on the date of the offense, but also those records informing his mental health including medical and mental health records dating back to his childhood, as well as predating his birth for a total of three generations. Doc. Nos. 193 and 196. The charged offenses are specific intent crimes, and the defendant's self-professed statements and conduct in relation to his mental health are highly relevant.

Here, the magistrate judge reasonably concluded that medical records from the three prior years could bear on the defendant's mens rea, were relevant evidence of the charged offenses, and that probable cause supported their seizure.

  **C. The Records Related to the Medical Certificate Obtained from the Defendant's Residence Are not the "Fruits of the Illegal Search of Mr. Bower's Residence" and Would Have Been Discovered Inevitably**

In light of the foregoing, the Court need not address the merits of the defendant's argument that the records related to the 2017 Medical Certificate are the fruit of the poisonous tree. Should the court so elect, as a preliminary matter, the defendant misstates the location from which each of the Medical Certificates were seized. See Doc. No. 301 at 9-10. The 2017 Medical Certificate was seized from the defendant's wallet at the Tree of Life Synagogue, not from his residence. And the 2015 Medical Certificate was seized from the defendant's residence, not from his wallet at the

Synagogue. The defendant does not contest the seizure of the 2017 Medical Certificate seized from his wallet. Thus, the government fairly construes the defendant's challenge as to the seizure of the records related to the 2015 Medical Certificate.

The defendant argues that upon the Court granting the defendant's motion to suppress evidence obtained from his residence, Doc. No. 288, the "2017 [sic] certificate itself and the affiant's questions to the Concentra employee about it are fruits of the illegal search of Mr. Bowers' residence" and "the affidavit failed to establish probable cause for records with the 2017 [sic] certificate." Doc. No. 301 at 9-10. As it relates to the legality of the seizure of the medical certificate found in the defendant's residence, the government incorporates by reference its Response in Opposition to the defendant's motion to suppress evidence from his residence, Doc. Nos. 288, 289. In sum, the search warrant of the defendant's residence was valid and, therefore, the seizure of the 2015 Medical Certificate, and records related thereto, was lawful as well.

Even if the Court were to grant the defendant's suppression motion regarding the search of his residence (which it should not do), the "fact of the [2015] certificate" would still have been inevitably discovered. Doc. No. 301 at 9. The exclusionary rule does not apply when the prosecution has an independent, untainted source of the evidence or when the evidence would have been inevitably discovered. Murray v. United States, 487 U.S. 533, 537 (1988); Nix v. Williams, 467 U.S. 431, 443 (1984). Under the inevitable discovery doctrine, evidence obtained through a constitutional violation is still admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered through lawful means." Nix, 467 at 444.

The 2015 Medical Certification would have been inevitably discovered. As of February 10, 2019, the government had the following information: (1) the defendant's CDL, which was

13

located within the defendant's wallet where the 2017 Medical Certificate was also found, was issued on July 1, 2016, and expired on September 5, 2020; (2) to obtain a CDL, the driver is required by federal law to have a medical certificate; (3) to obtain a medical certificate, the driver is required by federal law to complete a Medical Examination Report Form; (4) after completing the Medical Examination Report Form, the driver must obtain a medical examination; and (5) here, the defendant obtained a Medical Certificate with an effective date of February 17, 2017, and an expiration date of February 17, 2019.  Even if the government had not seized the 2015 Medical Certificate, the fact that the defendant's CDL was issued before the effective date of the 2017 Medical Certificate leads to no other conclusion than the defendant must have a had a prior medical certificate.  Consequently, the United States had more than sufficient information to inquire, independently, about any prior medical examinations, which would have led to their inevitable discovery.

> **D. The Warrants Were Sufficiently Particularized and Were Not Unlawful General Warrants**

The Fourth Amendment requires that a warrant issued "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.  To meet this requirement, warrants should describe the place to be searched and the items to be seized so that "it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging" through a defendant's belongings. United States v. Christine, 687 F.2d 749, 753 (1982).  A court should thus undertake its review from a practical, common-sense perspective, as "the level of specificity required [in each warrant] is case-specific and depends upon the circumstances at hand." United States v. Wecht, 619 F. Supp. 2d 213, 228 (W.D. Pa. 2009) (citing United States v. Yusuf, 461 F.3d 374, 395 (3d Cir. 2006)); see United States v. Am. Investors of Pittsburgh, Inc., 879 F.2d 1087, 1106 (3d Cir. 1989) (particularity determination must view

14

warrant "in a common sense fashion"); see also United States v. Thurman, 625 F.3d 1053, 1057 (8th Cir. 2010) ("The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." (citations and internal quotations omitted)).

Here, the issuing magistrate judge considered the necessary requisite level of specificity, based upon the case-specific facts presented in the affidavit, and concluded that all of the records sought were evidence of the enumerated offenses and could be disclosed to the government without further parsing. Doc. No. 301, Exh. A. The warrants do not request, nor do they authorize, the disclosure of a voluminous, detailed body of medical information; rather, they authorize the disclosure of a four-page form and any related records. Between the two sets of records requested, a total of 41 pages were disclosed with only six total pages of substantive medical information. Thus, read in context, the warrants contain sufficient description to guide the executing agents such that the warrants are not general warrants. The challenged warrants appropriately confined the executing officers' search, precluding their "unbridled discretion" over what to seize.

The warrants at issue here authorized Concentra to disclose to agents a circumscribed set of specific records all of which had been determined, by a fair probability, to contain evidence relevant to the enumerated offenses in the affidavit. See United States v. Karrer, 460 F. App'x 157, 161 (3d Cir. 2012) (finding a "warrant's authorization to search and seize virtually all computer-related items in [defendant's] home does not invalidate the warrant"); United States v. $92,422.57, 307 F.3d 137, 149-50 (3d Cir. 2002) (warrant to seize items like receipts, correspondence, and computers was "indubitably broad," but not unconstitutionally general); United States v. Rankin, 442 F. Supp. 2d 225, 230 (E.D. Pa. 2006) (finding warrant authorizing seizure of items within "clearly delineated categories" rather than providing "a more precisely enumerated list of items" was not a general warrant). The agents had no part of the warrant's

execution, no ability to "rummage" through the records of Concentra, and no power to expand the body of the records obtained.  United States v. Johnston, No. CR03-1167PHX-DGC, 2006 WL 359934, at *11 (D. Ariz. Feb. 15, 2006) ("If [] items [sought] are described with sufficient particularity, the warrant is valid despite not including the alternative list of the crimes for which [the defendant] was being investigated.").  In other words, the concerns raised by general warrants are completely absent here.  See Doc. No. 301 at 12 (raising concern that warrant should not permit "a general exploratory rummaging in a person's belongings" and that valid warrant leaves "nothing [] to the discretion of the officer executing the warrant").  The warrants for the defendant's CDL medical records were sufficiently particularized and the defendant's motion should be denied.

### E.    **The Good Faith Exception Applies**

The extraordinary remedy of suppression is not appropriate here even if the Court were to find the warrants deficient in some respect.  "Whether to suppress evidence under the exclusionary rule is a separate question from whether the Government has violated an individual's Fourth Amendment rights."  United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (citing Hudson v. Michigan, 547 U.S. 586, 591-92 (2006)).  A defendant thus has no constitutional right to suppression, and it "is not an automatic consequence of a Fourth Amendment violation."  Herring v. United States, 555 U.S. 135, 137 (2009).

Courts have long recognized that the exclusionary rule imposes "substantial social costs" by hiding often crucial evidence and hindering the courts' truth-seeking function.  United States v. Leon, 468 U.S. 897, 907 (1984).  As a result, they have repeatedly affirmed that suppression "has always been our last resort, not our first impulse."  Hudson, 547 U.S. at 591; Herring, 555 U.S. at 140; Katzin, 769 F.3d at 170.  The police conduct at issue "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the

price paid by the justice system." Herring, 555 U.S. at 144 (The exclusionary rule is meant only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). Where there is "an objectively reasonable good-faith belief that [the conduct] is lawful, or when [the] conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." United States v. Franz, 772 F.3d 134, 145 (3d Cir. 2014) (quoting Davis v. United States, 564 U.S. 229, 238 (2011), and citing Herring, 555 U.S. at 137, Leon, 468 U.S. at 919, Katzin, 769 F.3d at 171).

Relying on Supreme Court precedent, the Third Circuit has demanded a case-by-case cost-benefit analysis, rather than a categorical approach, when evaluating whether officers acted with objectively reasonable good-faith belief in their actions. Franz, 772 F.3d at 145. This "fact-specific analysis is required," and "the need to weigh the costs and benefits of exclusion is constant." Id. at 146. Using this approach, the Third Circuit has declined to categorically exclude evidence, even where officers relied on warrants that were facially deficient. See, e.g., Franz, 772 F.3d 134; United States v. Wright, 777 F.3d 635 (3d Cir. 2015). The Circuit instead affirmed the need to examine the totality of the circumstances, such as the officer's conduct and knowledge, noting that the Supreme Court has "suggested that the absence of culpability is dispositive." Franz, 772 F.3d at 147 (citing Davis, 564 U.S. at 238).

Here, the defendant has no constitutionally protected right of privacy in the 2015 and 2017 CDL Medical Records, which government agents could arguably have obtained without a warrant. The warrants, by their express terms, applied to records related to two medical certificates that were held by a third party (Concentra) in compliance with DOT regulations. Should the Court find that the defendant had a privacy interest in those records, and/or that there was lack of probable cause as to some aspect of the warrants, there is simply no misconduct to deter here. Even under

the defendant's strained probable cause analysis, the affidavit, if deficient at all, was not so deficient as to prevent an experienced agent from reasonably relying upon it. And even if the Court were to find the warrants overbroad as to certain records, the Court should not punish the agents who relied in good faith on the validity of the warrants and executed them dutifully.

    F.    **An Evidentiary Hearing is Not Required**

The defendant does not request an evidentiary hearing to resolve this motion. Nor is he entitled to one, where his claims lack merit and he raises no disputed issues of material fact.

An evidentiary hearing on a suppression motion is not presumed as a matter of course. United States v. Hines, 628 F.3d 101, 104-05 (3d Cir. 2010). Courts have recognized that an evidentiary hearing on a suppression motion is required only if the motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." Hines, 628 F.3d at 105 (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)); see also United States v. Brown, No. CR 15-182, 2017 WL 3593883, at *11 (W.D. Pa. Aug. 21, 2017) (to seek suppression hearing, defendant must state a colorable legal claim, identify material facts, show facts are disputed, and request a hearing to resolve the dispute (citing Hines, 628 F.3d at 108)); United States v. Solomon, No. CR 05-385, 2007 WL 9702871, at *3 (W.D. Pa. June 26, 2007) (denying hearing in capital prosecution where defendant did not demonstrate the need). This widely accepted standard is justified by the need to avoid convening unnecessary evidentiary hearings that waste scarce judicial resources and misuse the hearing as a tool to preview the trial evidence.

The defendant's objections to the warrants present no disputes of material fact. He does not lay out any factual disagreement over the process for obtaining and executing the warrants,

and he does not contest the factual allegations contained in the warrant affidavits. See Hines, 628 F.3d at 106 (affirming denial of evidentiary hearing where the defendant's motion agreed with government's version of events); Brown, 2017 WL 3593883, at *11-12 (denying suppression motion hearing because defendant did not raise a material fact or dispute government affidavit's version of events). Instead, the defendant's suppression motion presents solely legal claims – primarily, whether the undisputed facts at issue satisfy the Fourth Amendment's probable cause and particularity requirements. Accordingly, the defendant's legal claims can and should be denied on the briefing alone.

## IV.   CONCLUSION

For the reasons stated herein, the United States opposes the defendant's Motion to Suppress Evidence Seized During Search of Records From Medical Records Facilities Identified as Target Location 1 and Target Location 2 (Motion to Suppress No. 14). The motion should be denied in its entirety.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Trial Attorney
Civil Rights Division
NY ID No. 4949475