IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 18-292 |
| ROBERT BOWERS | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTION TO
SUPPRESS EVIDENCE FROM SOCIAL MEDIA ACCOUNT
(MOTION TO SUPPRESS NO. 5)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files its response in opposition to the defendant's motion to suppress evidence from a social media account, Gab.com, (Motion to Suppress No. 5) (Doc. No. 292).

I.   <u>SUMMARY</u>

Defendant Bowers makes two arguments in support of his motion: (1) that there existed a reasonable expectation of privacy in the non-public account[1] information disclosed by Gab.com; and (2) that although non-public information was provided unprompted by Gab.com to the United States prior to obtaining a search warrant, the court should suppress evidence obtained through a subsequent, valid search warrant.  Significantly, in his challenge to the evidence seized from the defendant's Gab.com account, the defendant does not raise any arguments about the form or content of the search warrant itself.

---

[1]      Defendant Bowers erroneously refers to the Gab.com account as a "private" account.  In fact, posts and communications were accessible by the public.

The law is clear that because Gab.com provided information voluntarily there was no search, no Fourth Amendment violation, and suppression is utterly unwarranted. Even if there was some impropriety in the provision of account information by a private party, the United States, in an abundance of caution, sought a valid search warrant to re-acquire evidence based upon probable cause exclusive of the information voluntarily provided by Gab.com. Doc. No. 292, Exh. A. The search warrant functionally cured any speculative taint.

As a threshold matter, the defendant fails to establish standing to challenge the search of the @onedingo Gab account and cannot assert a reasonable expectation of privacy in the non-public account information that he voluntarily provided to a third party, Gab.com. In its terms of use, Gab.com put users on notice that they "cooperate with government and law enforcement officials" and that "[w]e may disclose any information about you to government or law enforcement officials or private parties …." Doc. No. 292, Exh. A at 7.

Federal agents executed the search warrant upon the defendant's Gab.com account in good faith and would have inevitably discovered relevant non-public information through other independent means.

## I.   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On October 27, 2018, the defendant, Robert Bowers, drove to the Tree of Life Synagogue and entered the building carrying multiple firearms, including a high-powered AR-15 rifle. The defendant opened fire, killing 11 congregants and injuring additional members of the Tree of Life, Dor Hadash and New Light congregations. While inside the Tree of Life Synagogue, the defendant made statements indicating his desire to "kill Jews." Law enforcement responded to the scene and the defendant also opened fire upon them, injuring four public safety officers. Doc. No. 10 at 1.

As alleged in the 63-count Superseding Indictment, prior to October 27, 2018, the defendant, using his public account on the website Gab.com, posted his belief that "jews are the children of satan;" authored several other posts that referred to Jewish people using anti-Semitic slurs; and demonstrated deep animosity toward those of the Jewish faith, extolling violence and death. See Doc. No. 44 at 1.  On or about October 10, 2018, also on Gab.com, Bowers posted a criticism of the Hebrew Immigrant Aid Society (HIAS) and a link to a HIAS webpage listing Jewish congregations that were hosting refugee-related events.  That list of congregations included the Dor Hadash Jewish congregation of Pittsburgh.  In the posting, Bowers wrote, "Why hello there HIAS! You like to bring in hostile invaders to dwell among us? We appreciate the list of friends you have provided[.]"  On the morning of October 27, 2018, just prior to entering the Synagogue, Bowers again publicly posted on Gab.com: "HIAS likes to bring invaders in that kill our people.  I can't sit by and watch my people get slaughtered.  Screw your optics, I'm going in." Doc. No. 44 at 2.

On October 27, 2018, at approximately 11:36 a.m., the CEO of Gab.com contacted the FBI public access line to report that he believed that the shooter in Pittsburgh was active on Gab.com. Among other things, he told the FBI that he believed that an account belonging to Robert Bowers, username "@onedingo" was that of the shooter in Pittsburgh.  After learning of Bowers's name by listening to the police scanner, the CEO of Gab searched the system and found that before the shooting, Bowers made the second HIAS post quoted above, ("HIAS likes to bring invaders … Screw your optics, I'm going in.").  The CEO of Gab also relayed that he had suspended the account, archived the information, and would supply copies upon request.  See Gov. Exh. 1; see also Biesecker, Kunzelman, Balsamo, Suspect in synagogue slaying spewed online hate for Jews, Associated Press (Oct. 27, 2018), https://apnews.com/b1c50ba4f0964df89a266e490aea6961 ("In

a statement, Gab.com said it suspended the alleged gunman's account Saturday morning shortly after his name was mentioned on police radio chatter.  The company said it backed up the content of the account and notified the FBI.").

At approximately 12:42 p.m. on October 27, 2018, mere hours after the defendant's attack upon the Tree of Life Synagogue, FBI submitted an emergency preservation request via email to Gab.com.   The FBI preservation request expressly cited generally to the Electronic Communications Privacy Act ("ECPA") which pertains to account records and contents stored by internet service providers, 18 U.S.C. §§ 2701-12, and allows for and protects emergency disclosures to law enforcement in circumstances involving death or serious bodily injury.  18 U.S.C. § 2702(b)(8) and (c)(4).  In his response, the CEO of Gab.com reiterated that Gab had "already preserved the data and made a report to the FBI about it."  In addition, unsolicited and voluntarily, the Gab.com CEO attached records from defendant Robert Bowers's account.

Notwithstanding the voluntary provision of Bowers's account information by the Gab.com CEO, on October 28, 2018, the United States sought a search warrant for the defendant's @onedingo Gab account.  In the affidavit of probable cause, the government was forthcoming about what had transpired with the Gab.com CEO:

> 19.    Shortly after the FBI investigation commenced, FBI personnel searched a law enforcement database for BOWERS and learned that BOWERS is associated with the username "@onedingo."  An open source internet search revealed a screenshot of a post (attached as EXHIBIT 1) on a Gab account by an individual identified as ROBERT BOWERS with the username @onedingo.
> 20.    The Gab account contained an avatar comprised of a photo of BOWERS' face.  The post contained an anti-Semitic comment and a reference to "going in" shortly before he entered the Synagogue and began shooting.  Specifically, the post stated, "HIAS likes to bring invaders in that kill our people.  I can't sit by and watch my people get slaughtered.  Screw your optics.  I'm going in."
> 21.    On October 27, 2018, the FBI sent a preservation request to Gab asking that the @onedingo Gab Target Account be preserved.  In response, and without being requested by the FBI, Gab provided the FBI with the contents of the Target Account.  In a subsequent phone call with the founder of Gab, he confirmed that he

4

voluntarily provided the contents of the Target Account to the FBI without being asked by the FBI to do so.

Doc. No. 292, Exh. A at 6-7.

The affidavit quoted Gab's privacy policy, as it existed on October 28, 2018, and included the following attestation:

> 23.     Although Gab voluntarily provided the content of the Target Account to the FBI without being requested to do so, in an abundance of caution, the United States is nevertheless submitting this Affidavit in support of a search warrant for the Target Account to establish that the United States possessed probable cause to search the Target Account prior to receiving the content of the Target Account from Gab.   This material may have been viewed in the course of the investigation. However, material from Gab has been widely publicized by news media.

Id., Exh. A at 7.

The affidavit of probable cause submitted in support of the search warrant deliberately excluded reference to any of the content that was provided by the Gab.com CEO, instead predicating probable cause on other sources, including open source internet sources and searches of law enforcement databases.[2]  Id., Exh. A at 4-7.

Almost simultaneously with the reporting of Bowers's attack at the Tree of Life Synagogue, the media began publicly reporting upon comments and posts of the defendant's Gab.com outward-facing account and reproducing content and images of the same.  Although Gab.com had taken down Bowers's account, other users, the media, researchers, and law enforcement had already preserved its contents.  Images and posts of Bowers's communications were reproduced in the media.  See Phillips, Bagavathi, Reid, Valasik, and Krishnan, Washington Post, (The daily use of Gab is climbing.  Which talker might become as violent as the Pittsburgh

---

[2]      The defendant, confusingly, makes repeated reference to the fact that some information provided voluntarily to the United States was used in a separate search warrant affidavit for a cell phone at Mag. No. 18-1398, Doc. No. 292, Exh. B.  No such reference was included in the affidavit here and so consideration of probable cause at Mag. No. 1398 is of no moment.

synagogue gunman? (Nov. 29, 2018) (researchers explain that they have a data set of all Gab.com posts since 2016, including all of Robert Bowers's posts);[3] Amend, <u>Analyzing a terrorist's social media manifesto: the Pittsburgh synagogue shooter's posts on Gab</u>, Southern Poverty Law Center, (Oct. 28, 2018) ("While Bowers' Gab account was deactivated by the company, a screen capture of it suggests he was extremely active on the network.").[4]   The content and timing of the post that the defendant made just before entering the Synagogue was readily, publicly observed and reproduced.   <u>See</u> Perez, Murphy, Marquez, Stapleton, and Hilk, <u>On social media, suspect had posted "I'm going in" and frequently targeted Jews</u>, CNN, (Oct. 27, 2018, 2:36 p.m.).[5]

## III.   LEGAL STANDARD AND ANALYSIS

### A.   <u>No Search or Seizure</u>

Defendant Bowers conspicuously ignores the valid search warrant that was properly obtained by the United States for all material in his Gab account.   Instead, he advocates for suppression based on private action that was not governmental in nature and therefore outside the scope of the Fourth Amendment.   The voluntary provision of the Gab.com account information to FBI by the Gab CEO was at most a private search and the Fourth Amendment does not bar its use. Further, ECPA, which governs account records and contents stored by service providers like Gab.com, anticipates and protects online service providers who disclose information to law enforcement about users who use the service in the commission of a crime, or in response to an emergency involving death or serious bodily injury.   18 U.S.C. § 2702(b)(8) and (c)(4).

---

[3]         https://www.washingtonpost.com/news/monkey-cage/wp/2018/11/29/the-daily-use-of-gab-is-climbing-which-talker-might-become-as-violent-as-the-pittsburghsynagogue-gunman/
[4]         https://www.splcenter.org/hatewatch/2018/10/28/analyzing-terrorists-social-media-manifesto-pittsburgh-synagogue-shooters-posts-gab
[5]         https://www.cnn.com/us/live/news/Pittsburghsynagogueshooting/h_bfaba765e6942d3b918 78c30ba4d8bd4

Before reaching the issue of whether unlawful warrantless police conduct occurred, "the preliminary question is whether a Fourth Amendment search has taken place at all.  The Constitution does not apply to searches, reasonable or otherwise, by private individuals …"  United States v. Miller, 152 F.3d 813, 815 (8th Cir. 1998).  "Private searches are not subject to constitutional restrictions."  United States v. Hall, 142 F.3d 988, 993 (7th Cir. 1998) (finding Fourth Amendment inapplicable to search of defendant's computer by private computer shop technician).  The Fourth Amendment "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'"  United States v. Jacobsen, 466 U.S. 109, 113 (1984)[6] (citing Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).  The Supreme Court "has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."  United States v. Miller, 425 U.S. 435, 443 (1976); Hoffa v. United States, 385 U.S. 293, 302, (1966) ("Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it."); Jacobsen, 466 U.S. at 117-18.

---

[6]      Under facts not present here, the Supreme Court has assessed whether the government's review of evidence exceeded the scope of the private search.  For example, in United States v. Jacobsen, the Supreme Court upheld the examination and field test of white powder by federal agents of a package that had already been opened by a private freight carrier, 466 U.S. at 126 ("federal agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as a result of private conduct.  To the extent that a protected possessory interest was infringed, the infringement was de minimis and constitutionally reasonable.").  See also Miller, 152 F.3d at 816.  In this case, the CEO of Gab voluntarily provided the contents of defendant Bowers's account in a single file and specified that he had already searched the account to find the post that Bowers made shortly before entering the Synagogue on October 27, 2018.  Any review of the account conducted by federal agents did not exceed the scope of the private search.

An agent's mere viewing what private parties freely make available for inspection does not violate the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443, 487-490 (1971); Burdeau v. McDowell, 256 U.S. 465, 475-76 (1921); Jacobsen, 466 U.S. at 119-20 (where agent's inspection of contents of plastic bags revealed nothing more than the private search, "[i]t infringed no legitimate expectation of privacy and hence was not a 'search' within the meaning of the Fourth Amendment."). "[E]vidence secured by private searches, even if illegal, need not be excluded from a criminal trial." United States v. Ellyson, 326 F.3d 522, 527 (4th Cir. 2003) (quoted in United States v. Richardson,[7] 607 F.3d 357, 364 (4th Cir. 2010)). So too can the government permissibly use information provided to a government informant, despite a defendant's expectation that his associates would not disclose confidential information to authorities. United States v. White, 401 U.S. 745, 751-52 (1971).

As to Bowers's Gab.com account, no legally cognizable search by the government occurred until a valid warrant supported by ample probable cause was authorized by a federal magistrate judge on October 28, 2018. The defendant has raised no challenge to the search warrant itself. Doc. No. 292, Exh. A. Instead, he attempts to deflect scrutiny to the voluntary, unsolicited provision of account information by a private party, conduct that is clearly not a "search" and is outside the purview of the Fourth Amendment. Under ECPA, Gab.com had a safe-harbor under the statute to disclose information in response to an emergency involving death or serious bodily injury, conditions which were present in abundance here. See 18 U.S.C. § 2702(b)(8) and (c)(4).

---

[7]     The facts of Richardson are analogous. The defendant in Richardson sought to suppress the results of the warrantless scan of his email account by his service provider, AOL, that resulted in the discovery of child pornography. AOL submitted that information to the National Center for Missing and Exploited Children. 607 F.3d at 361. The Fourth Circuit readily concluded that AOL's "actions did not equate to governmental conduct triggering constitutional protection." 607 F.3d at 364.

Although Supreme Court jurisprudence would have supported the review and use of that privately-provided information by the FBI, in this case, the United States, in an abundance of caution, opted to seek a search warrant supported by probable cause, excluding information provided by Gab.com. Accordingly, there is no basis to suppress Gab.com evidence.

**B.  No Reasonable Expectation of Privacy**

Defendant Bowers concedes that he cannot reasonably assert a subjective expectation of privacy in the <u>public</u> postings on the @onedingo Gab account. Doc. No. 292 at 3. Instead, he alleges an impersonal, abstract interest in the <u>non-public</u> information that he voluntarily provided to Gab.com. In support of his argument, Bowers inaptly invokes <u>Carpenter v. United States</u> and <u>Riley v. California</u>, attempting to draw parallels between cell site location information, cell phone contents, and the non-public information disclosed by Gab. Any assertion of a privacy expectation by Bowers is without legal and factual support and, more importantly, is of no consequence because the ultimate search and seizure of the @onedingo Gab account by the FBI was not warrantless.

1.  <u>Third Party Doctrine</u>

The Supreme Court has "uniformly ... held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." <u>Smith v. Maryland</u>,[8] 442 U.S. 735, 740 (1979) (collecting cases).  For an "intrusion into [the] private sphere" to constitute a "search," a defendant must "seek[] to preserve something as private" and "society [must be] prepared to recognize [that privacy expectation] as reasonable." <u>Carpenter v.</u>

---

[8]      In <u>Smith</u>, the Supreme Court rejected the defendant's argument that he had a "reasonable expectation of privacy" in the numbers that he dialed on his home telephone and held that Smith's expectation of privacy was "not one that society is prepared to recognize as reasonable" because he voluntarily turned the information over to a third party, the telephone company. <u>Id.</u> at 743–44 (citing <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967)).

<u>United States</u>, 138 S. Ct. 2206, 2213 (2018) (quoting <u>Smith</u>, 442 U.S. at 740).  Information shared with third parties is generally not protected by the Fourth Amendment pursuant to the third party doctrine.  <u>See</u> <u>Smith</u>, 442 U.S. at 743-44 (the Supreme Court has "consistently … held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"); <u>United States v. Cox</u>, 2020 WL 2899685, at *1 (N.D. Ind. June 3, 2020).  The "third-party doctrine" is an exception to the Fourth Amendment warrant requirement that has its roots in <u>Katz v. United States</u> where the Supreme Court asserted that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection," 389 U.S. 347, 351 (1967).  <u>See</u> <u>Miller</u>, 425 U.S. at 443 (no Fourth Amendment violation when information revealed to third party is later conveyed to government).

Generally, courts have not recognized a privacy interest as objectively reasonable where individuals are forewarned of a diminished privacy interest before engaging in an activity. <u>See e.g.</u>, <u>United States v. Young</u>, 350 F.3d 1302, 1308 (11th Cir. 2003) ("No reasonable person would expect to retain his or her privacy interest in a packaged shipment after signing an airbill containing an explicit, written warning that the carrier is authorized to act in direct contravention to that interest"); <u>Guest v. Leis</u>, 255 F.3d 325, 333 (6th Cir. 2001) (online bulletin board's "disclaimer stating that personal communications were not private … defeats claims to an objectively reasonable expectation of privacy [by bulletin board] users"); <u>United States v. Simons</u>, 206 F.3d 392, 398 (4th Cir.2000) (finding no privacy interest in an employee's internet search records when an employer posted a privacy disclaimer regarding computer files).

Under the Fourth Amendment, Bowers's assertion of an expectation of privacy in the non-public records associated with his account is not reasonable as he voluntarily and willingly provided that information to the third party, Gab.com.  Such user data does not constitute the

"private papers" of the defendant, but rather are maintained as business records by Gab.com.  See

Miller, 425 U.S. at 440.  Further, the defendant and all Gab users were placed on notice that any

of their information may be shared with law enforcement:

> Information Disclosed for Our Protection and the Protection of Others.
> We cooperate with government and law enforcement officials or private parties to enforce and
> comply with the law. We may disclose any information about you to government or law
> enforcement officials or private parties as we, in our sole discretion, believe necessary or
> appropriate: (i) to respond to claims, legal process (including subpoenas); (ii) to protect our
> property, rights and safety and the property, rights and safety of a third party or the public in
> general; and (iii) to stop any activity that we consider illegal or legally actionable activity.[9]

Given Gab's terms of use, any subjective expectation of privacy by Bowers was not reasonable

nor one that society is prepared to recognize.  In any event, suppression would not follow even if

this Court were to find a reasonable, subjective privacy interest in the non-public records

maintained by Gab because the @onedingo account information was obtained by a valid warrant,

so no warrantless search occurred.

> 2.  Account Records Not Protected

Significantly, the defendant does not seek to suppress the more incriminating evidence

from his @onedingo Gab account – posts that evince an animosity towards Jewish people and that

immediately preceded the defendant's rampage (" … Screw your optics, I'm going in").  Doc. No.

292, Exh. A at 6.  "When a social media user disseminates his postings and information to the

public, they are not protected by the Fourth Amendment."  United States v. Meregildo, 883 F.

Supp.2d 523, 525 (S.D. NY 2012) (citing Katz, 389 U.S. at 351).  Because the defendant concedes

that his public posts are not protected by the Fourth Amendment, in the context of his motion to

suppress, it is instructive to consider what non-public records were associated with the @onedingo

Gab account.  For reasons that are unclear, the defendant cites only to the text of a different search

---

[9]     "Privacy," gab, available at https://gab.ai/about/privacy (as it appeared on October 28, 2018); Doc. No. 292
Exh. A at 7.

warrant, Mag. No. 18-1398, that listed the time of Bowers's post and that it was made from an Android phone.  Doc. No. 292, Exh. C at 4.

Non-content Gab records include information like subscriber and IP information.  They are administrative in nature, do not implicate privacy interests, are maintained by a third party, and could have been obtained with grand jury subpoenas or other process that did not require probable cause.

There is generally no privacy interest in records associated with electronic accounts held by third parties.  Accordingly, the Fourth Amendment does not protect subscribers from the production of subscriber records by third-party service providers.  United States v. Perrine, 518 F.3d 1196, 1204 (10th Cir. 2008) (surveying cases); [10] United States v. Christie, 624 F.3d 558, 573-74 (3d Cir. 2010) (citing Perrine with approval for proposition that there is no reasonable privacy expectation in subscriber information and finding that defendant "had no reasonable expectation of privacy in his IP address and so cannot establish a Fourth Amendment violation"); United States v. Stanley, 2012 WL 5512987, at *12-17 (W.D. Pa., Nov. 14, 2012) (J. Conti) (acknowledging case law that no privacy interest exists in subscriber information and IP address records and finding that defendant had no "reasonable expectation of privacy in the signal which he voluntarily conveyed to a third party"), aff'd, 753 F.3d 114 (3d Cir. 2014); United States v. Morel, 922 F.3d 1, 9 (1st Cir. 2019), cert. denied, 140 S. Ct. 283 (2019) (no privacy interest in IP address information); see also In re Nickelodeon Consumer Privacy Litig., No. 12–cv–07829, 2014

---

[10]    See Perrine, 513 F.3d at 1204 ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation") (citing Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001); United States v. Hambrick, 225 F.3d 656 (4th Cir. 2000) (unpublished), affirming United States v. Hambrick, 55 F. Supp. 2d 504, 508–09 (W.D. Va. 1999); United States v. D'Andrea, 497 F. Supp .2d 117, 120 (D. Mass. 2007); Freedman v. America Online, Inc., 412 F.Supp.2d 174, 181 (D. Conn. 2005); United States v. Sherr, 400 F. Supp. 2d 843, 848 (D. Md. 2005); United States v. Cox, 190 F. Supp. 2d 330, 332 (N.D.N.Y. 2002);  United States v. Kennedy, 81 F.Supp.2d 1103, 1110 (D. Kan. 2000) and referencing Forrester, 512 F.3d at 510 (9th Cir. 2008);  United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004).

WL 3012873, at *15 (D.N.J. July 2, 2014) ("Indeed, in the analogous Fourth Amendment context, email and IP addresses can be collected without a warrant because they constitute addressing information and do not necessarily reveal any more about the underlying contents of communications than do phone numbers, which can be warrantlessly captured via pen registers.") (citation and internal quotation marks omitted); United States v. Forrester, 512 F.3d 500, 509–10 (9th Cir. 2008) (comparing IP addresses to the outside of a letter and the monitoring of IP addresses to a pen register) (cited in United States v. Werdene, 188 F. Supp. 3d 431, 444 (E.D. Pa. 2016)).

It follows that the non-content, non-public records associated with the defendant's @onedingo account were not subject to a reasonable expectation of privacy, as they were generated by the defendant's voluntary, active use of his Gab account and constituted third party records outside of constitutional protection.

## C.  Defendant Lacks Standing

Aside from the many flaws in the defendant's challenge to the Gab.com evidence, Bowers also fails to establish his standing to seek suppression of that evidence in the first place.  While the United States has set forth facts that demonstrate the defendant's connection to the @onedingo account, Bowers himself has failed to assert any personal privacy interest in the Gab.com records that he seeks to suppress, has failed to allege a single fact that indicates a possessory interest in the account, and phrases his arguments for suppression in the abstract.

The Fourth Amendment "protects people, not places."  Katz, 389 U.S. at 351.  A defendant may invoke the exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993) (citation omitted) (emphasis in original).  It is the defendant's burden to establish that he had a reasonable expectation of privacy in the property searched and the item seized.  Minnesota v.

Olson, 495 U.S. 91, 95–97 (1990); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Stearn, 597 F.3d 540, 553 (3d Cir. 2010) (lower court "erred in ordering the suppression of evidence without regard to the defendants' ability to demonstrate legitimate expectations of privacy in the locations searched").  This requires the defendant to demonstrate both that he had a "subjective expectation of privacy in the area searched and that his expectation was objectively reasonable." United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014).

A defendant may not simply rely on the government's intention to link a defendant to the accounts.  See e.g., United States v. Watson, 404 F.3d 163, 166–67 (2d Cir. 2005); cf. United States v. Woodley, 2014 WL 3590143, at *4-5 (W.D. Pa. July 21, 2014) (J. Diamond) (defendant failed to establish reasonable expectation of privacy in cell phone records, including data location transmitted by the phone, where defendant proffered no evidence connecting him to the phone as its owner, subscriber, or authorized user); United States v. Hanner, 2007 WL 1437436, at *3-5 (W.D. Pa. May 14, 2007) (J. McVerry) (where defendant fails to establish legitimate expectation of privacy in a phone, he is foreclosed from asserting a challenge that the search of the phone was illegally executed)).  Because the defendant has not met the threshold for standing, the Court should deny the motion to suppress.

### D.  Exclusionary Rule Does Not Apply – Good Faith Does Apply

On these facts, the extraordinary remedy of suppression sought by defendant Bowers is not appropriate even if this Court were to find some legally cognizable fault in the voluntary provision of account records by Gab.com.  Exclusion of the non-public @onedingo account information would serve no meaningful, deterrent effect because the United States did nothing to compel or persuade the CEO of Gab.com to provide records prior to the issuance of a warrant.

"Whether to suppress evidence under the exclusionary rule is a separate question from whether the Government has violated an individual's Fourth Amendment rights."  United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (citing Hudson v. Michigan, 547 U.S. 586, 591-92 (2006)).  A defendant thus has no constitutional right to suppression, and it "is not an automatic consequence of a Fourth Amendment violation."  Herring v. United States, 555 U.S. 135, 137 (2009).

Courts have long recognized that the exclusionary rule imposes "substantial social costs" by hiding often crucial evidence and hindering the courts' truth-seeking function.  United States v. Leon, 468 U.S. 897, 907 (1984).  As a result, they have repeatedly affirmed that suppression "has always been our last resort, not our first impulse."  Hudson, 547 U.S. at 591; Herring, 555 U.S. at 140; Katzin, 769 F.3d at 170.  The police conduct at issue "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144 (The exclusionary rule is meant only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").  Where there is "an objectively reasonable good-faith belief that [the conduct] is lawful, or when [the] conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way."  United States v. Franz, 772 F.3d 134, 145 (3d Cir. 2014) (quoting Davis v. United States, 564 U.S. 229, 238 (2011), and citing Herring, 555 U.S. at 137, Leon, 468 U.S. at 919, Katzin, 769 F.3d at 171).

Application of the exclusionary rule requires a careful balancing of suppression's significant costs against the possible value of deterrence.  Relying on Supreme Court precedent, the Third Circuit has demanded a case-by-case cost-benefit analysis, rather than a categorical approach, when evaluating whether officers acted with objectively reasonable good-faith belief in

their actions.  Franz, 772 F.3d at 145.  This "fact-specific analysis is required," and "the need to weigh the costs and benefits of exclusion is constant."  Id. at 146.  Using this approach, the Third Circuit has declined to categorically exclude evidence, even where officers relied on warrants that were facially deficient.  See, e.g., Franz, 772 F.3d 134; United States v. Wright, 777 F.3d 635 (3d Cir. 2015).  The Circuit instead affirmed the need to examine the totality of the circumstances, such as the officer's conduct and knowledge, noting that the Supreme Court has "suggested that the absence of culpability is dispositive."  Franz, 772 F.3d at 147, citing Davis, 564 U.S. at 238.

In this case, no governmental action prompted the voluntary provision of records by a private party.  Less than two hours after the attack on October 27, 2018, at 11:36 a.m., the Gab.com CEO contacted FBI's public access line of his own accord and volunteered information about the account.  Even though the crime scene was not yet secure and the investigation was in its earliest stages, FBI took care to serve a request to preserve evidence via email at 12:42 p.m.  Unsolicited, Gab produced the contents of the account in response.  Out of an abundance of caution, the following day, the government obtained a valid search warrant to re-acquire the Gab.com account information.  That warrant, which remains unchallenged by this defendant, did not rely upon the voluntarily-provided Gab.com data.  Suppression would thus secure no benefit here.  It would instead inflict the significant cost of excluding highly probative evidence that is plainly within the scope of the warrant and supporting affidavit, which remains unchallenged by the defendant, and that the government could have obtained in any case.

**E.  Independent Source, Inevitable Discovery**

Assuming, arguendo, that the valid search warrant for the @onedingo Gab account was tainted by the voluntary provision of Bowers's Gab.com records by the Gab CEO, the defendant's motion to suppress must also be denied because the information would have been inevitably

discovered.  The exclusionary rule does not apply when the prosecution has an independent, untainted source of the evidence or when the evidence would have been inevitably discovered. Murray v. United States, 487 U.S. 533, 537 (1988); Nix v. Williams, 467 U.S. 431, 443 (1984). Under the inevitable discovery doctrine, evidence obtained through a constitutional violation is still admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix, 467 U.S. at 444 (1984).  "The independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" United States v. Price, 558 F.3d 270, 281 (3d Cir. 2009) (quoting Murray, 487 U.S. at 537).

In United States v. Herrold, the Third Circuit analyzed the acquisition of child pornography files through an independent source, inquiring "(1) whether a neutral justice would have issued the search warrant even if not presented with information that had been obtained during an unlawful search and (2) whether the first [presumptively unlawful] search prompted the officers to obtain the [subsequent] search warrant." Herrold, 962 F.2d 1131, 1144 (3d Cir. 1992); see United States v. Stabile, 633 F.3d 219, 242-45 (3d Cir. 2011); Price, 558 F.3d at 282. "If the answers to these questions are yes and no respectively ... then the evidence seized during the warranted search, even if already discovered in the original entry, is admissible." Herrold, 962 F.2d at 1144.  The effect of an independent source is to "vitiate the taint of the presumed illegal search." Stabile, 633 F.3d at 245.

While similar to the independent source doctrine, under the inevitable discovery doctrine, "if the prosecution can establish by a preponderance of the evidence that the information ultimately

17

or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." United States v. Vasquez De Reyes, 149 F.3d 192, 195 (3d Cir. 1998) (quoting Nix, 467 U.S. at 444); Stabile at 245. The government can meet its burden by establishing "that the police, following routine procedures, would inevitably have uncovered the evidence." Vasquez De Reyes, 149 F.3d at 195.

Applying the Herrold independent source analysis to the instant case demonstrates that any speculative taint by the voluntary provision of Gab.com records was vitiated by the subsequent warrant. As to the first inquiry, a neutral justice would have – and did, in fact – issue the search warrant without any of the data previously obtained from Gab.com. Second, the private search that may have occasioned the provision of @onedingo account records by Gab.com in no way prompted the FBI to obtain the subsequent search warrant. By 12:42 p.m. on October 27, 2018, the FBI had already prepared and served a preservation request upon Gab which expressly stated, "we are in the process of securing a court order, search warrant, and/or a subpoena …." Gov. Exh. 2. Clearly, prior to the provision of Gab.com records by the CEO, the FBI was already in the process of preparing a search warrant for the records. In effect, by obtaining a search warrant for the @onedingo account even though Gab.com had already provided account records, the United States prophylactically employed its own independent source procedure by re-acquiring the records via a valid search warrant.

As to the inevitable nature of discovery, because of the open and notorious nature of Bowers's Gab.com activity, the contents of his account were preserved, saved, and disseminated by the media and private parties almost immediately after the defendant's synagogue attack. In addition, the extensive process served upon Bowers's electronic devices, service providers, and

accounts would have provided multiple inevitable means to discover the Gab.com information.[11]

### F.  **Defendant Not Entitled to Hearing**

Defendant Bowers has not satisfied the necessary threshold for an evidentiary hearing.  As this district ruled in United States v. Solomon, a defendant is not entitled to an evidentiary hearing on a pretrial motion in a criminal case unless he meets his "burden of establishing that a hearing is necessary," and that he has "stated a colorable claim."  Solomon, 2007 WL 927960, at *1 (W.D. Pa. March 26, 2007).  In Solomon, the court correctly relied upon the principles set forth in United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996), and denied several motions to suppress search warrants without holding a hearing, as the defendants had failed to satisfy their threshold burden. Id. at *1.

Courts of appeals have long and repeatedly held that "evidentiary hearings on motions to suppress are not granted as a matter of course" but are held "only when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion."  United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004) (citations and internal quotations omitted); accord Wright et al., 3A Federal Practice & Procedure:  Criminal § 689 (4th Ed. 2020); 27 Moore's Federal Practice (2020) § 641.193[2] & n.1; see also United States v. Richardson, 764 F.2d 1514, 1527-28 (11th Cir. 1985); United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983); United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969); Cohen v. United States, 378 F.2d 751, 761 (9th Cir. 1967).

This widely-accepted standard is justified by the need to avoid convening unnecessary evidentiary hearings that waste scarce judicial resources and misuse the hearing as a tool to

---

[11]     For example, consistent with records provided to the defendant in discovery, the Pennsylvania State Police had captured the content of Bowers's Gab.com account by 12:43 p.m. on October 27, 2018.

preview the trial evidence.  "Hearings on motions to suppress are not discovery proceedings."
Harrelson, 705 F.2d at 738.

Here, the defendant does not challenge that a valid search warrant was served upon
Gab.com and that the defendant's account records were produced in response to that warrant.  No
evidentiary hearing is necessary for this Court to resolve defendant Bowers's legal arguments over
the search of his social media account.

## IX.     CONCLUSION

The defendant's social media account evidence was obtained with a valid search warrant
that contained ample probable cause.  The unprompted, voluntary provision of information and
records by a private, third-party provider did not constitute a warrantless search.  For the reasons
herein stated, the United States opposes the defendant's motion to suppress evidence, Doc. No.
292, and requests that this Court deny the motion in its entirety.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:      s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475