IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENSE MOTIONS TO SUPPRESS RECORDS OBTAINED UNDER
AUTHORITY OF 18 U.S.C. § 2703(d) (MOTIONS TO SUPPRESS NOS. 3, 10, AND 11)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files its response in opposition to defendant's motions to suppress evidence obtained through orders issued under the authority of 18 U.S.C. § 2703(d) (the "ECPA Orders"), a part of the Electronic Communications Privacy Act ("ECPA"). Doc. Nos. 290 (Motion to Suppress No. 3) (Google Order), 297 (Motion to Suppress No. 10) (Comcast Order), and 298 (Motion to Suppress No. 11) (Tucows Order).

I.   <u>**SUMMARY**</u>

Defendant Bowers makes two primary arguments in support of his motions to suppress: (1) that the ECPA Orders are not supported by reasonable belief and/or were overbroad; and (2) that the Comcast Order is a fruit of the allegedly overbroad Tucows Order.

The defendant's motions must be denied because: the § 2703(d) applications established reasonable belief for all records sought; the motion is moot as to Google; suppression is not an available remedy under ECPA; and the defendant lacks standing to challenge the ECPA Orders. The motions should also be denied because, even if the defendant did have standing, it is well-

settled that the defendant has no privacy interest in the data, which was maintained by third parties. Finally, federal agents executed the ECPA Orders in good faith and would have inevitably discovered relevant evidence through other independent means.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On the morning of October 27, 2018, defendant Robert Bowers, armed with multiple firearms, entered the Tree of Life Synagogue building.  The Synagogue housed three separate Jewish congregations, and at the time Bowers entered the building, people had already gathered within the building or were arriving to engage in religious services and worship.  Once inside the Synagogue, Bowers opened fire, killing or injuring several congregants, and wounding multiple law enforcement officers.  The defendant also made repeated statements expressing anti-Semitic beliefs, suggesting that his actions were motivated by animus toward Jewish people.  See Doc. No. 44 (Superseding Indictment).

The government's investigation of the attack indicated that Bowers's conduct violated 18 U.S.C. §§ 247 (Obstruction of Free Exercise of Religious Beliefs), 249 (Hate Crime Acts), and 924 (Use of a Firearm in Connection with a Crime of Violence).  Such violations variously require proof that the offense was motivated by a victim's actual or perceived religion or race, were committed in or affecting interstate commerce, involved the use of a firearm, resulted in bodily injury, resulted in death, or involved an attempt to kill.  See, e.g., 18 U.S.C. §§ 247(d)(1), (d)(3); 249(a)(1); 924(c), (j).

From the date of the defendant's attack at the Tree of Life Synagogue on October 27, 2018, through November 6, 2018, the government sought and obtained three orders pursuant to 18 U.S.C. § 2703(d) for records from Google, Comcast, and Tucows (collectively, the "ECPA Orders" and individually the "Google Order," the "Comcast Order," and the "Tucows Order").  Throughout the

investigation, the United States has focused on gathering evidence related to elements of the crimes charged and has also focused on determining whether or not any other individuals were involved in the planning or execution of the offenses with which defendant Bowers is charged.

       **A.**    <u>**Google**</u>

On October 27, 2018, the government sought and obtained an order pursuant to 18 U.S.C. § 2703(d) directing Google to disclose records pertaining to the IP address 2601:548:4100:552c:dead:beef:cafe:a ("dead beef café IP") for the time period July 27, 2018, through October 27, 2018.  The requested records included account/subscriber information for accounts that accessed Google services with the dead beef café IP address ("identified accounts") and tracked the statutory language of 18 U.S.C. § 2703(c)(2).  <u>See</u> Doc. No. 290, Exh. A at 9.  The Google Order also authorized the disclosure of additional information for any identified account, whether or not said information was related to the dead beef café IP.  No content was requested.  On November 13, 2018, Google responded that it had conducted a diligent search and "found no accounts with a login event from IP address(es), for the date range provided, as specified in your request."

       **B.**    <u>**Tucows**</u>

On November 1, 2018, the government sought and obtained an order pursuant to 18 U.S.C. § 2703(d) directing Tucows, and its subsidiaries Hover and eNom (collectively "Tucows"), to provide the government with records related to certain specified identifiers, including "onedingo.com" for the date range May 2000 to November 1, 2018.  The language specifying the scope of the requested records tracked the statutory language of 18 U.S.C. § 2703(c)(2).  <u>See</u> Doc. No. 298, Exh. B at 3-4.  The Tucows Order also authorized the disclosure of additional information for the identified accounts, such as IP logs, messaging logs, dates and times of communications,

source and destination email addresses, and IP addresses ("email header information").  No content was requested.  On that same date, Tucows responded with information related to onedingo.com, including an event log dating back to 2011, transactions, payment information, notes from Tucows of interactions with the onedingo.com account, communications between Tucows and the onedingo.com account, and an archive of activity dating back to 2013 for the onedingo.com account that included email header information for r.bowers@onedingo.com, as well as other email addresses.

      **C.**    <u>**Comcast**</u>

On October 29, 2018, Comcast was served with a subpoena requesting account records related to the email address onedingo@comcast.net and the defendant's residence.  On October 30, 2018, Comcast returned the subpoena with basic subscriber information including that the IP assignment for the account was dynamically assigned.  <u>See</u> Gov. Exh. 1 (subpoena response).  The response did not include any actual IP information, however.  On January 15, 2019, Comcast provided an updated subpoena return which provided the same basic subscriber information, as well as an IP address history for the time period May 3, 2018 (02:36:12 Coordinated Universal time (UTC)), through October 27, 2018 (00:00 UTC).  <u>See</u> Gov. Exh. 2 (updated subpoena response).

On November 6, 2018, the government sought and obtained an order pursuant to § 2703(d) directing Comcast to disclose records related to account and subscriber information for onedingo@comcast.net for the time period December 15, 2017, to November 6, 2018.  Doc. No. 297, Exhs. A and B.  No content was requested.  The Order was served upon Comcast on November 30, 2018, and on January 16, 2019, Comcast responded and provided basic subscriber information that was duplicative of the original subpoena response on October 30, 2018, except

that the response now indicated that the account was closed.  IP history was not provided.

On December 13, 2019, an agent from the FBI contacted Comcast after realizing that the IP history previously provided in the updated subpoena response (Gov. Exh. 2) was in UTC format, rather than in Eastern Standard Time format, and thus did not cover a critical portion of the requested records.  On January 10, 2020, Comcast provided an amended response to the Comcast Order which now included IP history for the time period July 21, 2018, to October 29, 2018 (08:09:34 UTC).  See Gov. Exh. 3 (amended Comcast Order response).  All of the information provided in the amended production had already been provided to the government via subpoena response, except that Comcast now clarified that the IP address range previously identified was still in use through October 29, 2018.  See Gov. Exh. 2 (specifying that IP address range was assigned to defendant from May 3, 2018, to October 27, 2018) at 2; Gov. Exh. 3 at 2 (specifying same IP address range was assigned to defendant from July 21, 2018, to October 29, 2018).

## III.   LEGAL STANDARD AND ANALYSIS

### A.   The Motion is Moot as to the Google Order

As noted above, Google conducted a search for the records sought and found no responsive records.  Therefore, the defendant's motion, Doc. No. 290, is moot as to the Google Order and should be summarily denied as there is no evidence to suppress.

### B.   The Tucows and Comcast Applications Established Reasonable Grounds to Believe the Records Were Relevant to the Ongoing Criminal Investigation

ECPA addresses account records and contents stored by service providers at 18 U.S.C. §§ 2701-12.  This portion of ECPA is commonly referred to as the Stored Communications Act. Under § 2703(c), the government may obtain "record[s] or other information pertaining to a subscriber to or customer of [a remote computing] service."  18 U.S.C. § 2703(c)(1).  Such records include the name, address, records of session times and durations, length of service, types of

service utilized, telephone or instrument number, other subscriber number or identity, temporarily assigned network addresses, and means and source of payment for such service.  18 U.S.C. § 2703(c)(2).  Such information may be obtained via court order or via subpoena.  Id.  Section 2703(d) specifies that "[a] court order for disclosure under subsection ... (c) ... shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the ... records or other information sought[ ] are relevant and material to an ongoing criminal investigation."   18 U.S.C. § 2703(d).   This standard is analogous to the "reasonable suspicion" standard and is lower than probable cause. See United States v. Perrine, 518 F.3d 1196, 1202 (10th Cir. 2008) ("the 'specific and articulable facts' standard derives from the Supreme Court's decision in Terry [v. Ohio, 392 U.S. 1 (1968)]"); see also Navarette v. California, 572 U.S. 393, 397 (2014) (The reasonable suspicion standard requires more than a "mere hunch," but "considerably less" information than a preponderance of the evidence, and "obviously less" information than probable cause.).

1.   The Applications Set Forth Ample Facts to Find Reasonable Belief that the Records Sought Were Relevant to the Ongoing Criminal Investigation

The defendant's motions should be denied because the applications include "specific and articulable facts showing that there are reasonable grounds to believe that the [items sought] are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

The Comcast and Tucows applications contained the same facts, with the addition of one paragraph in the Comcast application.  The applications set forth facts establishing reason to believe, more than a "mere hunch," that the records sought were relevant to the ongoing investigation.  See Navarette, 572 U.S. at 397 (reasonable suspicion requires "considerably less" information than a preponderance of the evidence, and "obviously less" information than probable cause).  Specifically, the applications establish through various factual allegations that the

identified Tucows account onedingo.com (and affiliated email addresses) had been controlled by the defendant since May 2000.  Doc. Nos. 297 and 298, Exh's. A at ¶¶ 16-18.  The applications further establish that the defendant had used social media and email as a means to communicate expressions of bias against Jewish people with the public and with his relatives.  In addition, the Comcast application includes information establishing that, as of December 15, 2017, the onedingo@comcast.net account was the registered email account for correspondence with the defendant's Tucows account.  Doc. No. 297, Exh. A at ¶ 20.  While the applications expressly reference the records' relevance to animus,[1] the applications also specifically reference the defendant's advance planning and premeditation.  Doc. Nos. 297 and 298, Exhs. A at ¶ 14.  The applications further state that one of the offenses being investigated was 18 U.S.C. § 247, which has an element that the offense was committed in or affecting interstate commerce.  Id. at ¶ 4.

Given these facts, it was reasonable for the magistrate judge to infer that any social media or email account controlled by the defendant, including onedingo@comcast.net, could be relevant to the ongoing criminal investigation as any such account could be used by the defendant to communicate anti-Semitic bias to relatives or co-conspirators and could constitute evidence that the offense was in and affecting interstate commerce.  In other words, the specific facts articulated in the application established reason to believe, more than a mere hunch, that the records sought were relevant to the government's ongoing criminal investigation. The defendant concedes as much for the onedingo.com account (though he attempts to qualify this concession, addressed below).  Relevance is the only burden that the government was required to, and did, meet.

Finally, the Court should reject the defendant's claim that the Tucows Order was overbroad

---

[1]     The fact that the application was express as to animus does not bar the magistrate judge from considering all of the information provided to him and concluding that the information would also be relevant to other aspects of the investigation mentioned in the affidavit.

because it only set forth reasonable belief as to records "from, at the earliest April 27, 2018, not May 2000."[2]  As previously noted, the ongoing criminal investigation included the defendant's planning or execution of the mass killings at the Tree of Life and the specific facts articulated in the application set forth reason to believe that the records sought were relevant to that investigation. For instance, if the records (through email headers, for example) revealed long-standing, regular contact with a co-conspirator or control of the account in question by another individual, including dating back to 2000, that would be extremely relevant to the investigation.  See, e.g., United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002) (evidence of involvement in prior drug conspiracy was admissible to prove defendant's relationship with a co-conspirator and to prove defendant's knowledge of later conspiracy); United States v. Butch, 256 F.3d 171, 175-77 (3d Cir. 2001) (evidence may be offered to establish the relationship among the offenders and to show the pertinent background of the offenses); United States v. O'Leary, 739 F.2d 135 (3d Cir. 1984) (same); United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982) (In a conspiracy case, evidence may be introduced "to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme.").

       2. The Court Should Reject the Defendant's Attempt to Misstate and Heighten the Standard to One Which Even Exceeds Probable Cause

The defendant attempts to ratchet-up the more permissive § 2703(d) standard to one requiring probable cause by relying upon search warrant case law -- standards that are completely inapplicable in this context.  See Doc. No. 297 at 5, citing United States v. Stearn, 597 F.3d 540 (3d Cir. 2010) (discussing search warrants and probable cause, not ECPA orders nor reasonable

---

[2]     To the extent that the defendant moves to suppress Tucows records from 2000 through April 27, 2018, the motion is moot as to any event history prior to 2011 and as to any archived activity prior to 2013, as no such records were produced.

grounds to believe); Doc. No. 298 at 3, citing Stearn.

This effort to confuse the two standards and demand more of the government is clear from the defendant's arguments.  For example, with respect to the Comcast application, the defendant argues that "the government's application failed to set forth a basis to conclude that Mr. Bowers ever used onedingo@comcast.net 'to communicate his animus toward other races and religions.'" Doc. No. 297 at 5.  As a preliminary matter, this mischaracterizes the inference suggested by the government in its application; that is, that the facts set forth created a reasonable inference that the defendant "may have also used his email account at Comcast to communicate his animus."  Doc. No. 297, Exh. A at 6 (emphasis added).  Furthermore, even if the United States were tasked with establishing probable cause (which it is not), the government need not have established that the defendant "ever used" the account in question to communicate animus or bias.  Rather, the government need only have established that there was "a fair probability" that evidence of the defendant's crimes would be found in the records sought.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (probable cause finding is "a practical, common-sense decision" based upon "all the circumstances set forth in the affidavit … there is a fair probability that … evidence of a crime will be found in a particular place"); see also United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) (A search warrant need not contain "direct evidence linking the place to be searched to the crime.").  Here, the legal threshold was even lower -- the government need only assert facts establishing reasonable grounds to believe that relevant evidence could be found in the records. The government far exceeded this burden in its applications.

With respect to both applications, the defendant argues that the government must establish that "the items sought are connected with criminal activity,"[3] again, a quasi-probable cause

---

[3]        This standard also exceeds probable cause which does not require a connection to criminal activity, but rather, a showing that "there is a fair probability that … evidence of a crime will be found in a particular place."  Gates, 462

standard in direct contradiction to the actual statutory language.  Doc. Nos. 297 at 5; 298 at 3-4.

In fact, the statute does not require that a crime definitively have been committed at all; records

may be obtained so long as they are relevant to an ongoing criminal investigation, including those

investigations that ultimately lead to the conclusion that no crime was committed.  As is evident

from the plain language of the statute, the government need establish "considerably less" than

probable cause in obtaining an ECPA order and the Court should reject the defendant's attempt to

impose a higher burden.  Navarette, 572 U.S. at 397.

Defendant Bowers further attempts to distort the governing legal standard by claiming

(with no legal support) that as to the Comcast Order, the government must establish a specific

connection between the records sought and the defendant himself.  See Doc. No. 297 at 4 ("[T]he

application fails to allege specific facts connecting Mr. Bowers to records associated with

onedingo@comcast.net.").   The defendant then argues that the only connection between the

defendant and the Comcast account was established by "illegally obtained" evidence from the

Tucows Order.  Id.

First, the Tucows Order was clearly not overbroad for all the reasons previously stated.

Second, the defendant misstates the governing standard – the law does not require that the

government establish a connection between the defendant himself and the Comcast account.  In

conducting this investigation, the United States had broad latitude to seek relevant evidence,

whether or not it could then be definitively and directly linked to the defendant himself.[4]  Third,

---

U.S. at 238-39.  Thus, for instance, evidence of non-criminal communications between conspirators over time could still be relevant evidence to a crime though said communications might not be about, nor have a specific connection to, a criminal activity.

[4]     In any case, the government had independent evidence that the email address was controlled by the defendant. See Gov. Exh. 1.  Even if the Tucows response had been limited to providing the email address associated with the account as of "six months before October 27, 2018," the time frame that the defendant concedes was relevant to the ongoing investigation, Doc. No. 297 at 4, the end result would have been the same: Tucows would have reported that the email address was onedingo@comcast net and the government would have received the same IP history which

to the extent that the defendant is inartfully challenging the relevance of the records to the investigation, his argument also fails.  The government's investigation was ongoing and sought to determine whether or not other individuals may have been part of the planning and execution of the charged crimes.  While it was reasonable for the magistrate judge to infer that the records were relevant because the Comcast account was controlled by the defendant, it would be equally reasonable for the magistrate judge to conclude that, even if the Tucows account were accessed by another person who was using the onedingo@comcast.net email address, that information would still have been relevant to the ongoing investigation.

**C.     Suppression is not a Remedy Under ECPA as the Subscriber Records do not <u>Implicate the Fourth Amendment</u>**

Even if this Court were to find that the ECPA application did not set forth reasonable grounds that the records sought were relevant to the investigation into the defendant's mass shooting, the defendant's only recourse is to seek civil or administrative remedies.  Section 2708 of the ECPA sets forth the <u>exclusive</u> remedies for non-constitutional violations of ECPA – it makes clear that "[t]he remedies and sanctions described in this chapter are the <u>only</u> judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708 (emphasis added). The remedies are set forth in § 2707 and are limited to civil actions and administrative discipline in certain circumstances.  18 U.S.C. § 2707.  In short, violations of the ECPA may not form the basis for suppression of evidence.  See <u>Perrine</u>, 518 F.3d at 1202; <u>United States v. Steiger</u>, 318 F.3d 1039, 1049 (11th Cir.2003); <u>United States v. Smith</u>, 155 F.3d 1051, 1056 (9th Cir. 1998); <u>Bansal v. Russ</u>, 513 F. Supp. 2d 264, 282–83 (E.D. Pa. 2007); <u>United States v. Sherr</u>, 400 F. Supp. 2d 843, 848 (D. Md. 2005); <u>United States v. Kennedy</u>, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000).

---

only dated back to July 2018.  <u>See</u> Gov. Exh. 3; <u>see also</u> discussion regarding independent source and inevitable discovery below.

The defendant's challenge is necessarily non-constitutional.   Although the defendant attempts to raise a Fourth Amendment challenge to the ECPA Orders, there is no privacy interest in routine records associated with electronic accounts.  Accordingly, the Fourth Amendment does not protect subscribers from the production of subscriber records by third-party service providers. No court considering the issue has found otherwise.  Perrine, 518 F.3d at 1204-05 (surveying cases);[5]  United States v. Christie, 624 F.3d 558, 573-74 (3d Cir. 2010) (citing Perrine with approval for proposition that there is no reasonable privacy expectation in subscriber information and finding that defendant "had no reasonable expectation of privacy in his IP address and so cannot establish a Fourth Amendment violation");  United States v. Stanley, 2012 WL 5512987, at *13, *17 (W.D. Pa., Nov. 14, 2012) (J. Conti) (acknowledging case law that no privacy interest exists in subscriber information and IP address records and finding that defendant did not have a "reasonable expectation of privacy in the signal which he voluntarily conveyed to a third party"), aff'd, 753 F.3d 114 (3d Cir. 2014); United States v. Morel, 922 F.3d 1, 9 (1st Cir. 2019), cert. denied, 140 S. Ct. 283 (2019) (no privacy interest in IP address information).  As the challenged ECPA Orders were used only to obtain non-content records, records in which a subscriber has no expectation of privacy, the defendant's challenge is outside the Fourth Amendment and suppression is not an available remedy.  See 18 U.S.C. § 2708.  His motions, therefore, must be denied.

---

[5]      See Perrine, 518 F.3d at 1204-05 ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation") (citing Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001); United States v. Hambrick, 225 F.3d 656 (4th Cir. 2000) (unpublished), affirming United States v. Hambrick, 55 F. Supp. 2d 504, 508–09 (W.D. Va. 1999); United States v. D'Andrea, 497 F. Supp. 2d 117, 120 (D. Mass. 2007); Freedman v. America Online, Inc., 412 F. Supp. 2d 174, 181 (D. Conn. 2005); United States v. Sherr, 400 F. Supp. 2d 843, 848 (D. Md. 2005); United States v. Cox, 190 F. Supp. 2d 330, 332 (N.D.N.Y. 2002); United States v. Kennedy, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000) and referencing United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2008); United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004).

**D.**      **The Defendant Has Not Established Standing to Challenge the ECPA Orders**

Notwithstanding the fact that a subscriber has no privacy interest in the records obtained pursuant to ECPA orders, the defendant has failed to assert that he himself has any privacy interest in the records.  Therefore, if this Court were to somehow find that the Fourth Amendment may be used to challenge the disclosure of such non-content records, the defendant's motion must still be denied for lack of standing.

The Fourth Amendment "protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967).  A defendant may invoke the exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993) (citation omitted) (emphasis in original).  It is the defendant's burden to establish that he had a reasonable expectation of privacy in the property searched and the item seized.  Minnesota v. Olson, 495 U.S. 91, 95–97 (1990); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); Stearn, 597 F.3d at 553 (lower court "erred in ordering the suppression of evidence without regard to the defendants' ability to demonstrate legitimate expectations of privacy in the locations searched").  This requires the defendant to demonstrate both that he had a "subjective expectation of privacy in the area searched and that his expectation was objectively reasonable." United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014).

A defendant may not simply rely on the government's intention to link a defendant to the accounts or the government's pleadings and must at least identify specific evidence in the record to establish standing.  See, e.g., United States v. Gatson, 744 F. App'x 97, 100 (3d Cir. 2018) (rejecting defendant's reliance on "Government's attribution of Phone 1 to him … because [defendant himself] must demonstrate his 'expectation of privacy' in the phones"), cert. denied, 140 S. Ct. 124 (2019); United States v. Watson, 404 F.3d 163, 166–67 (2d Cir. 2005); United

13

States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) ("[The] defendant is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing. The government's assertions in its pleadings are not evidence.").

The defendant has failed to allege any connection or privacy interest in the accounts for which the records were obtained.  Absent such a claim, he lacks standing to challenge the production of said records and his motion must be denied.  Cf. United States v. Woodley, 2014 WL 3590143, at *4-5 (W.D. Pa. July 21, 2014) (J. Diamond) (defendant failed to establish reasonable expectation of privacy in cell phone records, including data location transmitted by the phone, where defendant proffered no evidence connecting him to the phone as its owner, subscriber, or authorized user); United States v. Hanner, 2007 WL 1437436, at *3-4 (W.D. Pa. May 14, 2007) (J. McVerry) (where defendant fails to establish legitimate expectation of privacy in a phone, he is foreclosed from asserting a challenge that the search of the phone was illegally executed).

### E.      The Doctrine of Inevitable Discovery Applies to the Comcast Records

The defendant's motions to suppress the records obtained through ECPA orders must also be denied because this information would have been discovered inevitably.  The exclusionary rule does not apply when the prosecution has an independent, untainted source of the evidence or when the evidence would have been inevitably discovered.  Murray v. United States, 487 U.S. 533, 537 (1988); Nix v. Williams, 467 U.S. 431, 443 (1984).  Under the inevitable discovery doctrine, evidence obtained through a constitutional violation is still admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered through lawful means."  Nix, 467 U.S. at 444.

Other than a small portion of the IP history, the records that the defendant seeks to suppress had already been provided to the government per the updated Comcast subpoena response.  See Gov. Exh. 2.  Thus, the information obtained in the amended Comcast Order response had an independent source and would have inevitably been discovered, whether it be through the Comcast Order or a subsequent subpoena.

The Court should reject the defendant's convoluted claim that the Comcast Order is an illegal fruit of the Tucows Order for the same reason.  This claim boils down to the defendant's assertion that "the records from Tucows dating to 2017 are the only facts in the application that establish any connection between Mr. Bowers and the email address onedingo@comcast.net." [6] As of October 30, 2018, however, the government had information that the defendant was the account holder for this email address.  See Gov. Exh. 1.  The Comcast subpoena was issued prior to receipt of the Tucows records and in no way relied upon the Tucows response; it is therefore, an independent source for the IP history and the records would have been inevitably discovered by the FBI.

F.    **The Good Faith Exception Applies**

Should the Court somehow find that the Fourth Amendment is implicated by non-content

---

[6]    The Comcast evidence may also be admitted pursuant to the independent source doctrine which holds that where a neutral justice would have issued the search warrant absent information that had been obtained during an unlawful search – here, (allegedly) the Tucows information predating April 2018 -- and where a search was not prompted by fruits from an unlawful search.  United States v. Herrold, 962 F.2d 1131, 1144 (3d Cir. 1992).  As noted above, had the Tucows response had been limited to providing the email address associated with the account as of "six months before October 27, 2018," the time frame that the defendant concedes was relevant to the ongoing investigation, Doc. No. 297 at 4, the end result would have been the same:  Tucows would have reported that the email address was onedingo@comcast net and the government would have sought a warrant and received the same IP history dating back to July 2018.  In other words, a neutral judge would have issued the warrant even excising the December 2017 through April 2018 portion of the Tucows records from the affidavit.  Furthermore, the Comcast search warrant was also not prompted by any alleged overbreadth of the Tucows response.  The onedingo@comcast.net was significant because it was identified by the Tucows account user as his email address not because it had been identified as of December 2017, a date which has no import.  Thus, the warrant was not prompted by the allegedly illegally obtained evidence -- the December date that the Tucows account's user identified the onedingo@comcast net address – but rather, by the identification of the email address itself.

records, that the defendant has standing to challenge the ECPA Orders, and further finds that the government did not meet the low burden of setting forth reasonable grounds, the good faith exception applies.  The good faith exception was established in United States v. Leon, 468 U.S. 897 (1984), in recognition that the suppression of valuable evidence imposes significant costs by hindering the truth-seeking function of courts; as a result, exclusion is appropriate only where its benefits outweigh its burdens.  See Davis v. United States, 564 U.S. 229, 237-38 (2011).  As the Supreme Court instructed in Leon, in the context of a search warrant, "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  468 U.S. at 922 (citations and internal quotation marks omitted).

While courts have not contemplated whether the good faith exception applies to ECPA orders for subscriber records (presumably because the Fourth Amendment is not implicated by records obtained under the authority of such orders and suppression has been specifically excluded as a remedy by Congress), the rationale behind the good faith exception clearly applies equally in the ECPA order context.  See United States v. Warshak, 631 F.3d 266, 288-92 (6th Cir. 2010) (good faith exception applied when agents obtained email content pursuant to 2703(d) rather than warrant), reh'g and reh'g en banc denied, post-conviction relief denied 2013 WL 1832668; United States v. Korte, 918 F.3d 750, 758 (9th Cir. 2019) (good faith exception applied when relying on then-lawful statute to obtain cell site information without warrant), cert. denied, 140 S.Ct. 264 (2019). United States v. Wallace, 866 F.3d 605, 609 (5th Cir. 2017) (cell site), reh'g en banc denied 885 F.3d 315, withdrawn and superseded 885 F.3d 806, post-conviction relief denied 2020 WL 2563572; United States v. Wilson, 216 F. Supp. 3d 566, 589 (E.D. Pa. 2016) (same).

In the search warrant context, suppression is appropriate only if the officers did not act with an objectively reasonable good faith belief in their actions.  United States v. Franz, 772 F.3d

16

134, 145 (3d Cir. 2014).  Here, the government's reliance upon the magistrate judge's issuance of the ECPA Orders was reasonable as they were based upon specific and articulable facts and the sought records were clearly relevant to an active investigation.  Suppression is unwarranted; the ECPA Orders were executed in good faith.

IV.   **CONCLUSION**

For the reasons herein stated, the United States opposes the defendant's motions to suppress evidence obtained under the authority of 18 U.S.C. §2703(d), Doc. Nos. 290, 297, and 298, and said motions should be denied in their entirety.[7]

<div style="margin-left:40%;">

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:   s/Troy Rivetti
      TROY RIVETTI
      Assistant U.S. Attorney
      PA ID No. 56816

      s/Soo C. Song
      SOO C. SONG
      Assistant U.S. Attorney
      DC ID No. 457268

      s/Julia Gegenheimer
      JULIA GEGENHEIMER
      Special Litigation Counsel
      Civil Rights Division
      NY ID No. 4949475

</div>

---

[7] The defendant did not request a hearing on said motions.  In any event, a hearing would be unwarranted as there are no material factual disputes in this matter.  See, e.g., United States v. Hines, 628 F.3d 101, 108 (3d Cir. 2010) (lower court exercised discretion properly in denying hearing; hearing only warranted when defendant "(1) state[s] a colorable legal claim, (2) identif[ies] facts material to that claim, (3) show[s] why the facts are disputed, and then (4) request[s] a hearing to resolve the dispute.").