IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 18-292 |
| ROBERT BOWERS | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTION TO SUPPRESS HISTORIC CELL SITE INFORMATION (MOTION TO SUPPRESS NO. 6)**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files its response in opposition to defendant's motion to suppress historic cell site information (Doc. No. 293).

I.  **SUMMARY**

Defendant Bowers makes two primary arguments in support of his suppression motion: (1) that the warrant is not supported by probable cause and is based upon information analogous to an anonymous tip; and (2) that the warrant is not sufficiently particularized.

The defendant's motion must be denied because the defendant lacks standing to challenge the warrant; because the warrant is supported by probable cause provided by known, presumptively reliable law enforcement sources; and because the warrant sought to search a circumscribed, carefully-drawn set of cell phone records.  Moreover, federal agents executed the search warrant for historic cell site information in good faith and would have inevitably discovered relevant evidence through other independent means.

II.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On October 27, 2018, the defendant, Robert Bowers, drove to the Tree of Life Synagogue and entered the building carrying multiple firearms, including a high-powered AR-15 rifle. The defendant opened fire, killing 11 congregants and injuring additional members of the Tree of Life, Dor Hadash, and New Light congregations. While inside the Tree of Life Synagogue, the defendant made statements indicating his desire to "kill Jews." Law enforcement responded to the scene and the defendant also opened fire upon them, injuring four public safety officers. Doc. No. 10 at 1.

Later that day, the defendant was charged in a criminal complaint with 11 counts of violating 18 U.S.C. §§ 247(a)(2) and 247(d)(1) (Obstruction of Exercise of Religious Belief Resulting in Death), 11 counts of violating 18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1) (Use of a Firearm to Commit Murder During and In Relation to Crime of Violence), four counts of violating 18 U.S.C. §§ 247(a)(2) and 247(d)(3) (Obstruction of Exercise of Religious Belief Resulting in Bodily Injury to a Public Safety Officer), and three counts of violating 18 U.S.C. § 924(c)(1)(A)(iii) (Use and Discharge of a Firearm During and in Relation to a Crime of Violence). Mag. No. 18-1396, Doc. No. 1.

On October 28, 2018, the day after the mass killing was committed and the complaint filed, the United States sought and obtained a search warrant pursuant to Federal Rule of Criminal Procedure 41 ("Rule 41") authorizing the government to obtain historical cell site information from T-Mobile for two phone numbers: one ending in -6352 and another ending in -1826 ("the Target Telephones"). In support of the warrant, the government set forth the same facts which had supported the complaint as well as additional information about statements made by the defendant at the scene, the location of the defendant's vehicle at the scene, weapons recovered from the scene

2

and vehicle, an email sent by the defendant identifying the 6352 number as his "main" phone (the "main number") and the 1826 number as his "backup" phone (the "backup number"), and a call the defendant made to his mother using the main number two days prior.  Doc. Nos. 1, 293, Exh. B at 2.  The search warrant authorized the government to obtain subscriber information, account records, and location information for the time period July 1, 2018, through October 27, 2018.  See Doc. No. 293, Exh. A at 2.  The language specifying the scope of the requested records generally tracked the statutory language of 18 U.S.C. § 2703(c)(2).  Id.

On October 28, 2018, the government also subpoenaed subscriber and call detail records for the main number for the preceding 30 days.  On that same date, T-Mobile responded and produced call detail records for the previous 30 days.  T-Mobile also provided account information indicating that there were no subscribers or authorized users on file for the main number.

On October 29 and October 30, 2018, T-Mobile returned the executed search warrant and provided account information for both Target Telephones which reflected that the accountholder for each number provided no subscriber, authorized user, or payment information.  T-Mobile also provided call detail records, data session information (including IP addresses), cell tower information, and timing advance data for the Target Telephones.  In an effort to expedite the results, timing advance data sought for the main number was only provided for the period of October 1, 2018, through October 27, 2018.  No significant timing advance data was provided for the backup number.  See Gov. Exh. 1 (subscriber information for Target Telephones).

The FBI was also able to identify the defendant's main number through interviews with family members, including the defendant's aunt on October 27, 2018, and his cousin on October 30, 2018.[1]

---

[1]     This information has previously been provided to the defense in discovery.

## III.   LEGAL STANDARD AND ANALYSIS

### A.   Defendant Has No Standing to Challenge the Government's Acquisition of the Account Information

The Fourth Amendment "protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967).  A defendant may invoke the exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 508 U.S. 77, 81 (1993) (citation omitted) (emphasis in original).  It is the defendant's burden to establish that he had a reasonable expectation of privacy in the property searched and the item seized.  Minnesota v. Olson, 495 U.S. 91, 95–97 (1990); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Stearn, 597 F.3d 540, 553 (3d Cir. 2010) (lower court "erred in ordering the suppression of evidence without regard to the defendants' ability to demonstrate legitimate expectations of privacy in the locations searched").

#### 1.   Account Records Not Protected

While Courts have recognized a reasonable privacy interest in location records kept by third parties, Carpenter v. United States, 138 S. Ct. 2206, 2218-19 (2018), the Fourth Amendment does not protect subscribers from the production of subscriber records because they do not have a reasonable expectation of privacy in such records.  No court considering the issue has found otherwise.  United States v. Perrine, 518 F.3d 1196, 1204-05 (10th Cir. 2008) (surveying cases);[2] United States v. Christie, 624 F.3d 558, 573-74 (3d Cir. 2010) (citing Perrine with approval for

---

[2]    See Perrine, 513 F.3d at 1204 ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation") (citing Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001); United States v. Hambrick, 225 F.3d 656 (4th Cir. 2000) (unpublished), affirming United States v. Hambrick, 55 F. Supp.2d 504, 508–09 (W.D. Va. 1999); United States v. D'Andrea, 497 F. Supp.2d 117, 120 (D. Mass. 2007);  Freedman v. America Online, Inc., 412 F.Supp.2d 174, 181 (D. Conn. 2005); United States v. Sherr, 400 F.Supp.2d 843, 848 (D. Md. 2005); United States v. Cox, 190 F.Supp.2d 330, 332 (N.D.N.Y. 2002);  United States v. Kennedy, 81 F.Supp.2d 1103, 1110 (D. Kan. 2000) and referencing Forrester, 512 F.3d at 510 (9th Cir. 2008);  United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004).

proposition that there is no reasonable privacy expectation in subscriber information and finding that defendant "had no reasonable expectation of privacy in his IP address and so cannot establish a Fourth Amendment violation"); United States v. Stanley, No. 11-272, 2012 WL 5512987, at *17 (W.D. Pa. Nov. 14, 2012) (J. Conti) (acknowledging case law that no privacy interest exists in subscriber information and IP address records and finding that defendant had no "reasonable expectation of privacy in the signal which he voluntarily conveyed to a third party"), aff'd, 753 F.3d 114 (3d Cir. 2014); United States v. Morel, 922 F.3d 1, 9 (1st Cir. 2019), cert. denied, 140 S. Ct. 283 (2019) (no privacy interest in IP address information).

Because the defendant has no legitimate privacy interest in the Target Telephones' subscriber and account records obtained pursuant to the search warrant (and he does not allege otherwise), his motion must be denied as to such records.

        2.   No Legitimate Possessory Interest or Privacy Interest in Anonymous Accounts

To establish standing to seek suppression, a defendant must demonstrate both that he had a "subjective expectation of privacy in the area searched and that his expectation was objectively reasonable." United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014). A defendant may not simply rely on the government's intention to link the defendant to the accounts or on the government's pleadings and must at least identify specific evidence in the record to establish standing. See e.g., United States v. Gatson, 744 F. App'x 97, 100 (3d Cir. 2018) (rejecting defendant's reliance on "Government's attribution of Phone 1 to him … because [defendant himself] must demonstrate his 'expectation of privacy' in the phones"), cert. denied, 140 S. Ct. 124 (2019); United States v. Watson, 404 F.3d 163, 166-67 (2d Cir. 2005); see also United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) ("[The] defendant is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to

establish standing. The government's assertions in its pleadings are not evidence.").

Even where a defendant asserts a privacy interest, the privacy interest must be a <u>legitimate</u> one.  United States v. Woodley, No. 13-113, 2014 WL 3590143, at \*4-5 (W.D. Pa. July 21, 2014) (J. Diamond) (defendant failed to establish reasonable expectation of privacy in cell phone records, including data location transmitted by the phone, where defendant proffered no evidence connecting him to the phone as its owner, subscriber, or authorized user); <u>United States v. Hanner</u>, No. 05-385-02, 2007 WL 1437436, at \*3-4 (W.D. Pa. May 14, 2007) (J. McVerry) (where defendant failed to establish legitimate expectation of privacy in a phone, he was foreclosed from asserting a challenge that the search of the phone was illegally executed despite the fact that he was one of only two people who answered it, as he did not establish he was in legitimate possession of the cell phone).  Generally, there is no legitimate nor reasonable privacy interest in accounts held anonymously.  <u>United States v. Solomon</u>, No. 05-385, 2007 WL 927960, at \*3 (W.D. Pa. June 26, 2007) (J. McVerry) (no expectation of privacy where defendant was not registered account holder nor authorized user); <u>United States v. Gatson</u>, No. 13-705, 2014 WL 7182275, at \*5, \*9 (D.N.J. Dec. 16, 2014) (finding defendant lacked standing in account for which records and cell site information were obtained and noting that "even if [defendant] were to offer proof that he used the [Target] Phone, several courts have held that a defendant lacks standing to challenge cell phone records for which the defendant was not a registered subscriber"), aff'd, 744 F. App'x 97 (3d Cir. 2018); <u>United States v. Davis</u>, 2011 WL 2036463, at \*2 (D. Or. May 24, 2011) (finding defendant lacked standing in phone he used, held in fictitious name, and noting that "although an individual may have a subjective expectation of privacy in property that is attached to a fictitious name, that is not a privacy interest that society recognizes as reasonable"); <u>United States v. Wilson</u>,

2013 WL 1129199, at \*4 (N.D. Ga. Feb. 20, 2013), report and recommendation adopted, 2013 WL 1129410 (N.D. Ga. Mar. 19, 2013).

The defendant has failed to allege any connection to, or privacy interest in, the Target Telephones. Absent such a claim, he lacks standing to challenge the production of the Target Telephones' location information and his motion must be denied. In any case, even if the defendant were to assert such a claim, the defendant does not have a recognized <u>legitimate</u> privacy interest in the Target Telephones as he is neither the registered account holder nor authorized user of said accounts, and he cannot establish any legitimate connection to these anonymous accounts. <u>See</u> Govt. Exh. 1 (account held anonymously, with no account holder, authorized user, nor payment information).

### B. Warrant Affidavit Sets Forth Probable Cause That Evidence Would be Found in the Records of Both Target Telephones

Notwithstanding the defendant's failure to establish standing, the motion should also be denied because the affidavit establishes the requisite probable cause.

The Fourth Amendment protects against "unreasonable searches and seizures," mandating that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. Amend. IV. Probable cause is a "fluid concept" that turns on the "assessment of probabilities in particular factual contexts" and is "not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983). It is a "commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." <u>United States v. Laville</u>, 480 F.3d 187, 196 (3d Cir. 2007) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996)) (internal quotations marks omitted); <u>Gates</u>, 462 U.S. at 231 (citing <u>Brinegar v. United States</u>, 338 U.S. 160, 175-76 (1949)).

A magistrate judge's probable cause determination thus involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Stearn, 597 F.3d at 554 (citing Gates, 462 U.S. at 238). The judge must read a warrant's supporting affidavit "in its entirety and in a common sense, nontechnical manner." United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011); United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993). Indeed, "statements in an affidavit may not be read in isolation – the affidavit must be read as a whole." Conley, 4 F.3d at 1208 (citations omitted). This totality-of-the-circumstances approach requires that a judge "focus on what the affidavit includes, not what is missing." Miknevich, 638 F.3d at 184. Furthermore, in making the probable cause determination, the judge is permitted to draw reasonable inferences from the facts set forth in an affidavit. United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993).

A magistrate judge's conclusions regarding probable cause "are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005). The reviewing court may not conduct a de novo review of a probable cause determination. Gates, 462 U.S. at 236. It must instead cabin its "after-the-fact scrutiny" to whether the magistrate judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing[.]" Id. (internal quotations and modifications omitted); Stearn, 597 F.3d at 554; United States v. $92,422.57, 307 F.3d 137, 146 (3d Cir. 2002) ("a deferential standard of review is applied in determining whether the magistrate's probable cause decision was erroneous"). In conducting this review, the court is limited to the facts that were before the magistrate judge – that is, the "four corners" of the warrant affidavit. Jones, 994 F.2d at 1055; United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000).

If the magistrate judge's finding "was made consistent with the minimal substantial basis standard[,]" the court must uphold that finding. Conley, 4 F.3d at 1205. This is so even if the reviewing court, or a different magistrate judge, might not have found probable cause in that particular case. Id.; Stearn, 597 F.3d at 554.

"[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001). Moreover, where a warrant invalidly authorizes the seizure of items, the offending phrases may be stricken and the resulting materials seized may be suppressed, such that the warrant need not fail as a whole. United States v. Beatty, 437 F. App'x 185, 187 (3d Cir. 2011); $92,422.57, 307 F.3d at 149.

### 1.    Affidavit establishes probable cause

The defendant concedes that the affidavit sets forth sufficient facts to establish probable cause to believe that a crime had been committed. The affidavit also provides ample basis to find probable cause to believe that evidence of such crimes would be found in the records and location information sought from the Target Telephones. The affidavit establishes a substantial connection between the defendant and the Target Telephones based upon family member interviews and documents. The affidavit also provides sufficient information for the magistrate judge to conclude that there was a "fair probability" that the Target Telephones' records and location information would provide evidence of the enumerated offenses. Gates, 462 U.S. at 238 (Probable cause only requires issuing authority to conclude "there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Specifically, the affidavit sets forth information allowing the magistrate judge to reasonably infer that the defendant had been posting anti-Semitic materials for an extended period of time, that the defendant drove to the location, that the defendant

had planned the attack, and that the shooting was premeditated. In light of such facts, it was reasonable for the magistrate judge to conclude that the evidence sought would help investigators determine, for instance, the defendant's movement between his home and the Tree of Life synagogue on the date of the incident, whether or not the defendant had previously surveilled the Tree of Life Synagogue, whether or not the defendant had surveilled other synagogues or gathering locations for Jewish individuals,[3] whether or not the defendant had contact with possible co-conspirators, whether the defendant had contact with possible victims, and whether or not the defendant traveled to meet with possible co-conspirators who could eventually be identified through the records sought or through other records obtained in the investigation.

The defendant argues that, "even if the Court were to credit" the assertions in the affidavit, the Court should find that there was inadequate probable cause to establish that the main number was "connected" to the posting of the "numerous anti-Semitic internet posts" or to the planning the enumerated offenses. Doc. No. 293 at 8. Similarly, the defendant argues that "there is a complete absence of any facts linking [the backup number] to any criminal activity during any timeframe." Id. at 9. The defendant misapprehends and misstates the probable cause standard necessary to authorize the warrant. The government need only establish probable cause that a crime was committed and that evidence of the crime could be found at the target location – here, in the records of the Target Telephones. Gates, 462 U.S. at 238-39; cf. Jones, 994 F.2d at 1056 (A search warrant need not contain "direct evidence linking the place to be searched to the crime."). The government need not establish that the Target Telephones were instrumentalities of the crime

---

[3]     As discussed more fully below in Section III(D), both prior to the mass shootings, and on the morning of the mass shootings, the defendant accessed a webpage which listed locations hosting National Refugee Shabbat, including the Dor Hadash congregation and three other Pittsburgh-based National Refugee Shabbat hosts. Given the sheer amount of weaponry and ammunition that the defendant brought to the Tree of Life, it was wholly reasonable for law enforcement to investigate the possibility that the defendant researched and planned for multiple attacks.

or were actively deployed in the commission of the offense.  See, e.g., United States v. Diaz, 1999 WL 622698, at *1 (E.D. La. Aug. 13, 1999), aff'd in part sub nom. United States v. Brown, 263 F.3d 161 (5th Cir. 2001) (rejecting defendant's argument that magistrate judge used inappropriate standard and noting that judge "simply recognized that probable cause to believe that a certain phone will be used in a crime is different from probable cause to believe that evidence will be found at a certain location…[which is] merely application of the appropriate standard[]").

Finally, while the defendant argues that the time period sought should be limited to September 2018 (when, the affidavit asserts, Bowers posted numerous anti-Semitic comments), the time period specified for the warrant was not overly broad.  Given the timing of the defendant's attack to coincide with the performance of religious services, the multiple weapons and substantial ammunition that the defendant brought to the scene, and the affiant's statement that the investigation indicated that the defendant had engaged in planning and premeditation prior to the shooting, Doc. No, 293, Exh. B, it was entirely reasonable for the magistrate judge to conclude that that actions related to the attack could have covered a significant period of time.  Thus, the magistrate judge reasonably concluded that there was a fair probability that evidence of the defendant's crimes could be found in the subscriber, call detail, and location records of the Target Telephones for the time period July 2018 through the date of the defendant's attack.  Moreover, the specified time frame would allow the government to obtain any investigative leads relevant to conduct preceding the defendant's September 2018 anti-Semitic postings (such as evidence indicating his radicalization) and to obtain user attribution evidence such as call records reflecting regular, sustained contact with his relatives, evidence which would establish that the defendant was, in fact, the user of the Target Telephones (which were held completely anonymously).[4]

---

[4]    A forensic review of the defendant's LG cell phone, recovered from inside the Tree of Life Synagogue, which post-dated this warrant, established that the main number was used on the recovered phone.

2.    Affidavit Based Upon Reliable Law Enforcement Sources

The defendant seeks to challenge the affidavit by isolating two highly-relevant factual assertions – that Bowers "made numerous anti-Semitic statements on internet posts," and that he "engaged in planning and premeditation" – and dismissing those facts as "barebones" or unreliable assertions akin to anonymous informant tips.  Doc. No. 293 at 4-8.  Because the affidavit sets forth credibly-sourced and corroborated facts, this comparison is unpersuasive.

Courts have often regarded tips from anonymous informants as distinct from other categories of information alleged in a warrant affidavit.  See, e.g., United States v. Yusuf, 461 F.3d 374, 384 (3d Cir. 2006) (noting that "[c]ourts have routinely recognized a distinction between information provided by an informant and that provided by a law enforcement officer or other government agency").  Contrary to the defendant's suggestion, however, courts do not require a strict showing of an informant's basis for knowledge and reliability.  Rather, as the Supreme Court has directed, such considerations may contribute to the common-sense, "totality-of-the-circumstances analysis that traditionally has guided probable cause determinations . . .."  Gates, 462 U.S. at 233 (rejecting a rigid test for an informant tip in favor of a totality-of-the-circumstances approach).  And in contrast to anonymous tips, courts have agreed that a magistrate judge issuing a warrant "may give considerable weight to the conclusions of experienced law enforcement officers."  Whitner, 219 F.3d at 296; cf. Yusuf, 461 F.3d at 385 ("[I]nformation received from other law enforcement officials during the course of an investigation is generally presumed to be reliable.").

Here, the affidavit's assertions are made by an FBI Special Agent with over 18 years' experience, who had previous experience investigating the very civil rights and firearms violations at issue here.  Doc. No. 293, Exh. B.   The affidavit additionally sets forth the sources for this

experienced law enforcement affiant's statements with an overall attribution to his "own personal investigation, observation and knowledge as well as upon the investigation, personal observations, and knowledge of other law enforcement officers."  Doc. No. 293, Exh. B at ¶ 4.  Nowhere does the affidavit reference an anonymous tip or source.  Rather, the affidavit explicitly states that the source of information is the affiant himself as well as other law enforcement officers who investigated Bowers's criminal conduct.  See id.; see also id. at 1-2 (describing that Bowers referenced "genocide" to a law enforcement officer, that law enforcement confirmed the defendant's residence with a landlord, that FBI conducted a vehicle registration check, and that ATF identified handguns at the scene).  The magistrate judge could thus reasonably consider these sources to be reliable.

The challenged assertions bear further indicia of reliability because they are thoroughly corroborated by other facts in the affidavit.  See United States v. Williams, 3 F.3d 69, 73 (3d Cir. 1993) (magistrate could find informant's assertions credible based on corroboration, apparent disinterest of informant, and absence of suggestion of unreliability).  That Bowers made numerous anti-Semitic statements online is supported by the fact that he made multiple similarly anti-Semitic statements to law enforcement officers at the scene.  The indication of animus is further buttressed by Bowers's very decision to attack Jewish victims at a synagogue, while they were engaged in religious worship.  The assertion of planning and premeditation is, in turn, corroborated by facts supporting an inference that the defendant carefully considered the location, timing, and means of his attack: he drove to a synagogue that was not located near his residence; he arrived there at the precise time of religious services; he came armed with multiple weapons, as well as enough ammunition to shoot and kill multiple people, to wound others, and to engage in a "gunfight" with responding law enforcement officers.  Doc. No. 293, Exh. B.

The concerns that have led courts to treat anonymous tips with special caution are simply not present here, where the source of the information alleged is known, is largely based on law enforcement observations or investigation, and is roundly corroborated.  As a result, Bowers's comparison of the affiant's factual allegations to those of an anonymous source is inapt.

### C.   The Warrant is Sufficiently Particularized

This Court should also reject the defendant's argument that the warrant must cite a specific crime for the items sought.[5]  Doc. No 293 at 9.  The Fourth Amendment sets forth no such requirement.  It specifies only two matters that must be described with particularity: "the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV; United States v. Grubbs, 547 U.S. 90, 97 (2006) (noting that the Fourth Amendment contains no general particularity requirement, that it specifies only two matters that must be particularly described, and that the Supreme Court has "rejected efforts to expand the scope of this provision to embrace unenumerated matters"); see also LaFave, Search and Seizure § 4.6(a) (6th ed. 2020) ("The Fourth Amendment's particularity requirement does not 'require particularity with respect to the criminal activity suspected.").  The Federal Rules of Criminal Procedure echo these requirements, adding just that the warrant also specify "the magistrate judge to whom it must be returned."  Fed. R. Crim. P. 41(e)(2) (warrant must identify person or property to be searched, person or property to be seized, and magistrate judge for warrant return).

Moreover, the Third Circuit and district courts therein have upheld warrants without such technical citation.  In re 309 Primrose Lane Hanover, Pennsylvania 17331, No. 1:05-MC-0151,

---

[5]     The defendant cites distinguishable Second Circuit and Tenth Circuit cases to support his argument.  Doc. No. 293 at 10 (citing Mink v. Knox, 613 F.3d 995 (10th Cir. 2010), and United States v. George, 975 F.2d 72 (2d Cir. 1992)).  He identifies no Third Circuit precedent on point.  His citation to the Supreme Court's decision in Andresen v. Maryland, 427 U.S. 463 (1976), is unavailing, as the passage cited simply counsels that a warrant's phrases and clauses should be read all together.  See United States v. Johnson, 690 F.2d 60, 64 (3d Cir. 1982) (concluding, based on the same passage in Andresen, that "[c]learly," its "most important teaching is that a warrant must be read as a whole").

2007 WL 9775647, at *7 (M.D. Pa. Aug. 13, 2007), aff'd, No. 07-3689, 2009 WL 762417 (3d Cir. Mar. 24, 2009).  In United States v. $92,422.57, the Third Circuit considered a warrant that failed to specify even the "generic types of crimes" to which the items sought pertained.  The court found the warrant was sufficiently particular because reference to the criminal conduct would not have usefully delimited the scope of the search.  307 F.3d at 150.  The Eastern District of Pennsylvania has held similarly.  See United States v. Fumo, 565 F. Supp. 2d 638, 644 (E.D. Pa. 2008) (rejecting particularity challenge "because a search warrant need not specify the particular crimes for which evidence is sought"); United States v. Kofsky, No. 06–392, 2007 WL 2480971, at *16 (E.D. Pa. Aug. 28, 2007) ("[T]here is no per se requirement that a search warrant describe the criminal activity alleged" (citing United States v. Slaey, 433 F. Supp. 2d 494, 495 n.1 (E.D. Pa. 2006)).

Here, on the basis of the facts in the affidavit, the magistrate judge found that there was probable cause to believe that all of the non-content records sought were evidence of the enumerated offenses in the affidavit and could be disclosed to the government without further parsing or citation to particular statutes.  Doc. No. 293, Exh. A.  See United States v. Johnston, 2006 WL 359934, at *11 (D. Az. Feb. 15, 2006) ("If [] items [sought] are described with sufficient particularity, the warrant is valid despite not including the alternative list of the crimes for which [the defendant] was being investigated.").  For example, the warrant evidences discretion in the items sought and does not request, nor authorize, the disclosure of significant categories of information from T-Mobile such as cell tower dumps (wherein all numbers connecting with a specified cell tower in a specified time period are produced to the government), or stored photographs, and voicemail content which were likely to exist.  Furthermore, the time period in the warrant is limited to approximately four months, although T-Mobile stores such records far beyond that time period.  With the exception of cell site location information itself, the non-content

15

cell phone records sought from T-Mobile, which include information like subscriber and IP information, are administrative in nature, do not implicate privacy interests, and could have been obtained with grand jury subpoenas or other process that did not require probable cause.

The warrant at issue here authorized T-Mobile to disclose to agents a circumscribed set of specific records and location information as evidence relevant to the enumerated offenses in the affidavit.  See United States v. Karrer, 460 F. App'x 157, 161 (3d Cir. 2012) (finding a "warrant's authorization to search and seize virtually all computer-related items in [defendant's] home does not invalidate the warrant"); $92,422.57, 307 F.3d at 149-50 (warrant to seize items like receipts, correspondence, and computers was "indubitably broad," but not unconstitutionally general); United States v. Rankin, 442 F. Supp. 2d 225, 230 (E.D. Pa. 2006) (finding warrant authorizing seizure of items within "clearly delineated categories" rather than providing "a more precisely enumerated list of items" was not a general warrant).  The FBI agents executing the warrant had no role in its execution, no ability to "rummage" through the account contents and had no power to expand the body of the records obtained.  On these facts, the T-Mobile search warrant for the Target Telephones was sufficiently particularized.

### D.    The Doctrine of Inevitable Discovery Applies

The defendant's motion to suppress the records obtained pursuant to the search warrant must also be denied because the information would have been inevitably discovered.  The exclusionary rule does not apply when the prosecution has an independent, untainted source of the evidence or when the evidence would have been inevitably discovered.  Murray v. United States, 487 U.S. 533, 537 (1988); Nix v. Williams, 467 U.S. 431, 443 (1984).  Under the inevitable discovery doctrine, evidence obtained through a constitutional violation is still admissible if "the prosecution can establish by a preponderance of the evidence that the information ultimately or

inevitably would have been discovered through lawful means." <u>Nix</u>, 467 U.S. at 444.

As noted above, the government already had an independent source for the main number's subscriber information and call detail records in the form of a subpoena response. Thus, the defendant's motion should be denied as to those records.

The motion should also be denied as to the data session/IP records, and location information, of the Target Telephones as these records would have been inevitably discovered based upon independent sources. The United States has been able to independently establish through a search of an LG phone[6] left at the scene, that the phone had been used to access Gab.com on the morning of the shootings. The government has also independently determined through a search of information held by Gab.com[7] that approximately one minute later the defendant posted to Gab.com, "HIAS[8] likes to bring invaders in that kill our people. I can't sit by and watch my people get slaughtered. Screw your optics. I'm going in." Through a subpoena of HIAS records, another independent source, the government has also ascertained that earlier that morning, the defendant accessed HIAS's website and accessed a web page which listed the locations hosting a National Refugee Shabbat, including the Dor Hadash congregation and three other Pittsburgh-based Shabbat hosts. This same independent source establishes that the defendant accessed the same Shabbat page on October 6 and October 10, 2018. A short time later on October 10, 2018, the defendant posted to Gab.com a screenshot of, and link to, the Shabbat webpage and stated, "Why hello there HIAS! You like to bring in hostile invaders to dwell among us? We appreciate the list of friends you have provided," a chilling post in light of the defendant's subsequent

---

[6]     The phone search warrant application was in no way based upon the fruits of the T-Mobile search warrant, or even upon the information provided about the Target Telephones contained within the T-Mobile search warrant application. <u>See</u> Doc. No. 291, Exhibit B.

[7]     The Gab.com search warrant application was in no way based upon the fruits of the T-Mobile search warrant, or even upon the information provided about the Target Telephones contained within the T-Mobile search warrant application. <u>See</u> Doc. No. 291, Exhibit C.

[8]     "HIAS" is an acronym for the Hebrew Immigrant Aid Society.

conduct.  The independently-sourced Gab.com records also reflected that the defendant had posted anti-Semitic content since at least September 2018.

In sum, the government has independent source evidence that the defendant used a phone to access Gab.com on the date he shot the congregants at the Tree of Life Synagogue.  The government has independent source evidence that the Target Telephones were used by the defendant.  And it has independent source evidence that the defendant had researched HIAS as early as October 6, 2018, and viewed and posted a list of hosts, including a Tree of Life congregation, for a HIAS event.  Accordingly, the government would have subpoenaed or obtained an order for the data and IP records from T-Mobile associated with the Target Telephones and the materials in question would have been inevitably discovered.[9]

All of the information described in the criminal complaint and search warrant affidavit, coupled with the independent sources associating the defendant to the Target Telephones, would also have inevitably led the government to obtain historic cell site location information for the Target Telephones.  Furthermore, there would have been "fair probability" to conclude that such information would provide evidence of the enumerated offenses, in relation to the defendant's movements, surveillance, and planning and premeditation.  Gates, 462 U.S. at 238-39 (Probable cause only requires issuing authority to conclude "there is a fair probability that contraband or evidence of a crime will be found in a particular place.").  The Court should thus deny the defendant's motion because the government had independent sources which would have led to the records' inevitable discovery.

---

[9]     All of the records authorized to be seized pursuant to the search warrant, with the exception of items B(3) and (B)(4), related to location data, can be obtained by subpoena or court order, processes which do not require probable cause.  To obtain an order for such records pursuant to 18 U.S.C. § 2703(d), the government need only establish by "specific and articulable facts … that there are reasonable grounds to believe that the … the records or other information sought, are relevant and material to an ongoing criminal investigation."  The government submits that the facts set forth in the T-Mobile warrant affidavit meet this standard.

E.      **Good Faith Exception Applies**

The extraordinary remedy of suppression is not appropriate here even if the Court were to find the warrant deficient in some respect.  "Whether to suppress evidence under the exclusionary rule is a separate question from whether the Government has violated an individual's Fourth Amendment rights."  United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (citing Hudson v. Michigan, 547 U.S. 586, 591-92 (2006)).  A defendant thus has no constitutional right to suppression, and it "is not an automatic consequence of a Fourth Amendment violation."  Herring v. United States, 555 U.S. 135, 137 (2009).

Courts have long recognized that the exclusionary rule imposes "substantial social costs" by hiding often crucial evidence and hindering the courts' truth-seeking function.  United States v. Leon, 468 U.S. 897, 907 (1984).  As a result, they have repeatedly affirmed that suppression "has always been our last resort, not our first impulse."  Hudson, 547 U.S. at 591; Herring, 555 U.S. at 140; Katzin, 769 F.3d at 170.  The police conduct at issue "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144 (The exclusionary rule is meant only "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").  Where there is "an objectively reasonable good-faith belief that [the conduct] is lawful, or when [the] conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way."  United States v. Franz, 772 F.3d 134, 145 (3d Cir. 2014) (quoting Davis v. United States, 564 U.S. 229, 238 (2011), and citing Herring, 555 U.S. at 137, Leon, 468 U.S. at 919, Katzin, 769 F.3d at 171).

Deciding whether the exclusionary rule applies thus requires a careful balancing of suppression's significant costs against the possible value of deterrence.  Relying on Supreme Court

precedent, the Third Circuit has demanded a case-by-case cost-benefit analysis, rather than a categorical approach, when evaluating whether officers acted with objectively reasonable good-faith belief in their actions.  Franz, 772 F.3d at 145.  This "fact-specific analysis is required," and "the need to weigh the costs and benefits of exclusion is constant."  Id. at 146.  Using this approach, the Third Circuit has declined to categorically exclude evidence, even where officers relied on warrants that were facially deficient.  See, e.g., Franz, 772 F.3d 134; United States v. Wright, 777 F.3d 635 (3d Cir. 2015).  The Third Circuit instead affirmed the need to examine the totality of the circumstances, such as the officer's conduct and knowledge, noting that the Supreme Court has "suggested that the absence of culpability is dispositive."  Franz, 772 F.3d at 147 (citing Davis, 564 U.S. at 238).  Here, there is no reckless or negligent government conduct to deter through exclusion.

Suppression is appropriate only if an agent's reliance on the warrant was not objectively reasonable.  While the defendant claims that the affidavit is so lacking in indicia of reliability that a reasonable officer would not rely upon it, Doc. No. 293 at 7, the magistrate judge properly found the requisite probable cause, and the agents' conduct in obtaining, executing, and relying on the warrants was objectively reasonable.  The Supreme Court has held that "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search" such that the exclusionary rule should not apply.  Leon, 468 U.S. at 922 (internal quotations omitted).  Accord Stearn, 597 F.3d at 561 ("Ordinarily, the 'mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'") (citations omitted).  This is so because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination."  Williams, 3 F.3d at 74 (quoting Leon, 468 U.S. at 921).

Given the  warrant's detailed allegations and the reasonable inferences drawn from those allegations, as well as the fact that the investigation had been proceeding for only one day, Bowers has not "demonstrated that a reasonably well-trained officer would have known that the search was illegal, despite the magistrate's authorization."  United States v. American Investors of Pittsburgh, Inc., 879 F.2d at 1087, 1107 (3d Cir. 1989) (citing Leon, 468 U.S. at 919, n.20). Accordingly, the good faith exception applies.

## IV.    CONCLUSION

For the reasons herein stated, the United States opposes the defendant's motion to suppress the historical cell site location records, Doc. No. 293, and the motion should be denied in its entirety.[10]

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:    s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475

---

[10]     The defendant did not request a hearing on this motion.  In any event, a hearing would be unwarranted as there are no material factual disputes in this matter.  See, e.g., United States v. Hines, 628 F.3d 101, 108 (3d Cir. 2010) (lower court exercised discretion properly in denying hearing; hearing only warranted when defendant "(1) state[s] a colorable legal claim, (2) identif[ies] facts material to that claim, (3) show[s] why the facts are disputed, and then (4) request[s] a hearing to resolve the dispute.").