IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO
MOTIONS TO SUPPRESS NOS. 1 AND 2**

On October 1, 2020, the defendant, Robert Bowers, filed two motions to suppress evidence seized from his residence, P.O. Box, and vehicle. (ECF 288, 289.) The government responded on November 4, 2020. (ECF 351.) Mr. Bowers now replies and requests an evidentiary hearing in connection with these motions.

**I.      Mr. Bowers had a reasonable expectation of privacy in his residence and vehicle.**

The government asserts that the defense "fails to assert any privacy interest in the targets of these searches." (ECF 351 at 7.) The defense did not envision that the government would challenge Mr. Bowers' privacy interest in his own residence and vehicle when its affidavit clearly and indisputably recognizes and asserts that the residence and vehicle are in fact Mr. Bowers' and his alone.

The law governing reasonable expectation of privacy is well-established. Fourth Amendment standing "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Baker,* 221 F.3d 438, 441 (3d Cir. 2000). For the objective prong, the Court asks "whether the

1

individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States,* 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland,* 442 U.S. 735, 740 (1979)). Regarding the subjective prong, the Court asks "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Id.*

The government produced in discovery . With respect to the Target Vehicle, the government produced . However, now that the government has raised a disputed factual issue regarding Mr. Bowers' reasonable expectation of privacy, the defense requests an evidentiary hearing to put in the record evidence establishing his privacy interest in the residence and vehicle.

> **II.  The government ignores the requirement than an affidavit must establish a nexus between the items sought and criminal activity and between the items sought and the place to be searched.**

The government incorrectly portrays the defense as "parsing the language of the affidavit, viewing its assertions in isolation, and positing that the affidavit is deficient because additional facts could have provided direct evidence." (ECF 351 at 9.) The defense only asks, however, that the Court apply the law requiring a warrant affidavit to establish a nexus between the items sought and criminal activity and between the items sought and the place to be searched. (*See* ECF 288 at 7.) In its response, the government misstates the defense position, misunderstands the governing law, and asks this Court to

make inferential leaps unsupported by the facts set forth within the four corners of the warrant affidavit.

    A.    **The affidavit in support of the first search warrant for the Target Residence. (ECF 351 at Exhibit I, Exhibit A.)**

    **(i) Lack of nexus between** ▅▅▅▅▅▅▅▅▅▅ **and criminal activity.**

The government expends much ink asserting the obvious point that a defendant who ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. (*See* ECF 351 at 10.) But the issue the defense raises is that the government's premise—that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅—is unsupported. The sole allegation in the affidavit linking ▅▅▅▅▅▅▅▅▅



(ECF 288, Exhibit I at 4.) As the defense argued, the law requires the affiant to attest to the source of his information, and absent the affiant providing the source, the information lacks the reliability required to form any part of a probable cause finding. (*See* ECF 288 at 11 (citing *Giordenello v. United States*, 357 U.S. 480, 486 (1958)).)

The government attempts in its response to do what the affiant failed to do in the affidavit: source the claim that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. The problem for the government is that because the affiant failed to source his claim in the affidavit, all it can do now is attempt to conjure up a source and ask this Court to make inferential leaps unsupported by the facts set forth in the affidavit. For example, the

3

government asks the Court to accept that because the affiant ███████████ ███████████████████████████████████████ ███████████████████████████████████████████ the Court should accept the conclusion that all allegations, including the allegation that Mr. Bowers ██████████████████████, are therefore ████████████████ ████████. (*See* ECF 351 at 19 (citing and quoting warrant affidavit).) If all allegations in the affidavit were attributable to known witnesses and that alone is sufficient to source allegations, then there would be no need for the affiant to identify specific witnesses. But, at other instances in the affidavit, the affiant does just that. For example, the affiant writes: ████████████████████████████████████████ ██████████████ (ECF 288, Exhibit I at 4.) The point is that the affiant was fully aware that the law required him to source his information. With respect to the claim that Mr. Bowers ████████████████████████, however, the affiant failed to identify the claim's source. Under the law, that claim cannot form any part of probable cause. *See Giordenello v. United States*, 357 U.S. 480, 486 (1958). Absent that allegation, the affidavit fails to provide a basis for a nexus between ████████████ at the Target Residence and criminal activity.

    **(ii)**    **Lack of nexus between ████████████ and criminal activity.**

For the reasons detailed above, that the affiant fails to provide a reliable source for the claim that Mr. Bowers ████████████████████████████, the affidavit fails to provide a basis for a nexus between ████████████████ and criminal activity. The government also suggests that because Mr. Bowers ████████████████████████

4

███, it then has authority to search for "any . . . communications." (*See* ECF 351 at 11–12.) But such a leap is not supported by the law. The affidavit offered no reliable basis for concluding a nexus between ███████████ and criminal activity; nor did it offer a basis for a nexus between recorded oral statements and criminal activity. The only reliable information in the affidavit concerning a nexus between communications and criminal activity were the oral statements Mr. Bowers allegedly made during the shooting incident. (ECF 288, Exhibit I at 3–4.) Those statements are wholly unconnected to the Target Residence and therefore provided no support for probable cause to search the Target Residence for ███████████.

    **(iii)**    **Lack of nexus between ███████████ and criminal activity.**

With respect to a nexus between ███████████ and criminal activity, the government again relies on the uncorroborated claim that Mr. Bowers ███████████ ███████████ (ECF 351 at 11.) As discussed above, that claim cannot support probable cause. In addition, the government asks the Court to make the further unsupported leap that Mr. Bowers used a ████████ as opposed to another internet-capable device, to ███████████ (*Id.*) The affidavit lacked information that provided a nexus between ███████████ and criminal activity.

    **(iv)**    **Lack of nexus between ███████████ and criminal activity.**

The government fails to respond at all to the defense argument that the affidavit provided a complete lack of nexus between ███████████ and criminal activity. At several points in its response, the government recharacterizes the affiant's allegations. With respect to the statement in the affidavit that Mr. Bowers ███████████

5

███████████████████████████ (ECF 288, Exhibit I at 4), the government recharacterizes this statement, claiming that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ (ECF 351 at 10.) But the affidavit in support of the first warrant to search the Target Residence did nothing of the sort. It did not assert that with regard to ██████████████████████████████ ████ It did not indicate in any way who informed the affiant ████████████████ ███████████████████████████████████████████ Indeed, there are many internet platforms unrelated to ████████████ on which individuals can make internet posts. As noted by the defense, the affidavit does not in any way refer to ████████████. It completely fails to provide a basis for a nexus between Mr. Bowers' ████████████ and criminal activity.

 (v)    **Lack of nexus between ████████████ and criminal activity.**

The government's response reduces to the claim that if there is probable cause to believe a person committed a crime, because that person has to reside somewhere, there is necessarily probable cause to search that person's residence for evidence related to the crime committed. Unfortunately for the government, the law does not support its position. Tellingly, the government fails to cite any case law supporting such a broad reading of the law; instead, it merely cites cases for the broad proposition that the analysis of whether there exists a nexus between a person's residence and criminal activity depends on the facts of the case.

The government attempts to distinguish *United States v. Rowland*, 145 F.3d 1194 (10th Cir. 1998), and *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999), by arguing that those cases involved anticipatory search warrants. But that is simply not relevant. As the Third Circuit in *Loy* points out, anticipatory warrants, like all warrants, must establish "a sufficient nexus between the contraband to be seized and the place to be searched." *Loy*, 191 F.3d at 365. The Third Circuit's analysis in *Loy* stands: the affidavit must assert a basis for finding that contraband would be at one location as opposed to another. *Id*. at 366.

The government cannot identify facts in the affidavit that establish a nexus between Mr. Bowers' residence and criminal activity and instead asks the Court to make inferential leaps. For example, it asks the Court to conclude that ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* ECF 351 at 16.) That because he had ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id*. at 15.) The case law demands more; it requires that the affiant provide a basis for concluding that Mr. Bowers' residence, as opposed to another location, would contain evidence of criminal activity.

### (vi) Lack of nexus between certain items the government sought to seize and the Target Residence.

The defense disputes that the affidavit provided a basis for a nexus between the following items the government sought to seize and the Target Residence: ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▉▉▉▉. As discussed above and argued in the defense motion, the affidavit failed to provide the required nexus. (*See* ECF 288 at 17–22.)

As noted above, rather than point to specific facts linking the items sought to the Target Residence, the government asks the Court to make what it characterizes as "reasonable inferences," which are nothing more than inferential leaps unsupported by the facts presented. For example, with respect to firearms, the government asks the Court to infer that because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, he must have stored them at his home. But the government fails to grapple with what the Third Circuit in *Loy* instructed: the affidavit must offer a basis to conclude that a defendant's residence is the storehouse for criminal activity as opposed to another location. With each of the items noted in the defense motion that the government sought to seize, the affidavit failed in this basic task. It failed to provide a basis for concluding that Mr. Bowers' residence, as opposed to another location, was the storehouse for the items the government sought to seize.

      **III.** **The warrants lacked particularity and were illegal general warrants because they failed to guide the officers executing the warrants.**

          **A.** **In failing to cite any criminal behavior on the face of the warrants, the warrants failed to limit officers' discretion in executing the warrants.**

The government asks the Court to conclude the warrants were sufficiently particular because an officer executing the warrant could stitch together various factoids included in the warrant and conclude that the offense involved ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ involved the ▬▬▬▬▬▬▬▬▬▬ and that the offense involved ▬▬▬▬▬▬▬▬▬▬. (ECF 351 at 26.) Here, the warrants' failure to describe the criminal conduct at issue enabled officers to search and seize items beyond the scope of any probable cause that existed.

The first and third warrants for the Target Residence and the warrant for the Target Vehicle, for example, authorized the agents to search and seize ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ (*See* ECF 288, Exhibit A at 3 ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ Exhibit C at 2–3; Exhibit K at 4.) Absent the warrant noting the criminal conduct at issue, either by citation to criminal statute or by describing the criminal behavior at issue, the warrants failed to guide the officers in executing the warrants.

Here, in contrast to the cases the government cites, describing the criminal conduct at issue in the first and third warrants for the Target Residence and the warrant for the Target Vehicle would have "usefully," and necessarily, "delimited the scope of the search." (ECF 351 at 26.) The government cites *United States v. $92,422.57*, 307 F.3d 137 (3d Cir. 2002), for the proposition that if the warrant "failed to specify even the 'generic types of crimes' to which the items sought pertained," it still "was sufficiently

9

particular because reference to the criminal conduct would not have usefully delimited the scope of the search." (ECF 351 at 25–26.) But in that case, the Court noted that the warrant sought seizure specifically of "legitimate transactions" and so the breadth of the warrant was necessary. *$92,422.57*, 307 F.3d at 150. It was "necessary to examine *all* of Kim's 'receipts, invoices, lists of business associates, records of telephone numbers, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence' – at least for the relevant period of time." *Id.* (emphasis in original). Here, the warrants, as the government would concede, were not directed at the universe of legitimate "electronic devices, . . . communications, . . . social media accounts, . . . [and] receipts of purchase," but rather only at those items with a nexus to criminal activity. The warrants' lack of description in any way of the criminal conduct at issue failed to guide the officers in seizing only those items connected with the specified criminal activity. For this reason, the warrants were general warrants and all evidence seized must be suppressed.

    **B.**  **In failing to more particularly describe the items to be seized, the warrants (first and third warrant for the Target Residence and warrant for the Target Vehicle) failed to guide the officers executing the warrants.**

The government mischaracterizes the warrants. It states that "the warrants here did not leave the executing officers with 'unbridled discretion'" and "[i]nstead [] permit[ted] the agents to seize categories of evidence ███████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ (ECF 351

10

at 28.) The warrants were not circumscribed in the manner the government characterizes, and that is precisely why they were general warrants.

The first warrant for the Target Residence, for example, stated that the government was authorized to seize the following:



(ECF 288, Exhibit A at 3, § II, ¶ 1 (emphasis added).) As written, the warrant authorized the seizure of more than just circumscribed categories of evidence. Rather, it authorized the seizure of ▮▮▮▮▮, for example, whether or not related to ▮▮▮▮▮ ▮▮▮▮.

The District Court's ruling in *United States v. Wecht*, 619 F. Supp. 2d 213, 229 (W.D. Pa. 2009), is directly on point. As in *Wecht*, the warrants here "provided no meaningful guidance which would have allowed the officers executing the warrant to distinguish those items of evidentiary value [that is, those communications that exhibited a defined relationship to the criminal behavior described] from those items with no evidentiary value [that is, the remaining multitude of communications unrelated to specifically defined criminal behavior]." *Id.* at 229. In this way, the warrants were unlawful general warrants and the evidence seized must be suppressed.

### IV. The second and third warrants to search the Target Residence failed to establish probable cause absent the fruits of the illegal first search.

The government stretches far beyond the limits of reason when arguing that, after excising references to the first search and seizure at the residence, the "affidavit's remaining allegations, and reasonable inferences drawn therefrom, establish the 'fair probability' necessary to search for the evidence" of ▬▬▬▬▬▬▬. (ECF 351 at 21.) The search for ▬▬▬▬▬▬▬ specifically, as opposed to weapons generally, was a direct consequence of the first illegal search. Paragraph 22 of the affidavit in support of the second warrant to search the Target Residence makes this clear. (*See* ECF 289, Exhibit A at ¶ 22.) The government cannot escape the governing law set forth in *United States v. Herrold*, 962 F.2d 1131, 1144 (3d Cir. 1992): the evidence sought and obtained pursuant to the second and third warrant affidavits is from an independent source and therefore admissible only if "(1) . . . a neutral justice would have issued the search warrant even if not presented with information that had been obtained during an unlawful search and (2)  . . . the first search [had not] prompted the officers to obtain the [subsequent] search warrant[s]." Paragraph 22 makes clear that the first search "prompted" the second search. This ends the analysis.

The same analysis applies to the affidavit in support of the third warrant to search the Target Residence. The express purpose of the third search warrant was to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (ECF 289, Exhibit B at 7.) Clearly and

indisputably, the first search "prompted the officers to obtain the [third] search warrant." *Herrold*, 962 F.2d at 1144. As with the second warrant for the Target Residence, absent the tainted evidence from the illegal first search, the affidavit in support of the third warrant to search the Target Residence lacks probable cause.

V.     **Good faith does not apply.**

The defense challenges the application of the good faith exception to the exclusionary rule to any of the warrants at issue. The warrants for the Target Residence were based on affidavits "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002) (internal quotation marks and citation omitted). Additionally, the warrants for the Target Residence and Target Vehicle were "so facially deficient that [they] failed to particularize the . . . things to be seized." *Id*. The question is "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Loy,* 191 F.3d 360, 367 (3d Cir. 1999) (internal citation omitted). The government bears the burden of establishing good faith. *United States v. Rodriguez*, No. 13-619, 2014 WL 4413606, at *4 (E.D. Pa. 2014).

The government cannot simply cite good faith and assert the conclusion that agents relied in good faith on the Magistrate issuing the warrants. As the Third Circuit recognizes, "'Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.'" *Zimmerman*, 277 F.3d at 438 (internal citation omitted).

Good faith does not apply to an affidavit containing "mere conclusory assertions" or "a single piece of evidence which the law of the stationhouse shop would recognize as

13

clearly insufficient." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). As in *Rodriguez*, the facts in the affidavits supporting the search warrants here "are slim." *Rodriguez*, 2014 WL 4413606 at *5.

The affidavit in support of the first warrant to search the Target Residence utterly failed to establish a nexus between certain items sought and criminal activity and certain items sought and the Target Residence. The affidavit was rife with missing information. For example, the affidavit failed to provide a source for the claim that Mr. Bowers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yet it relied on the claim in multiple instances to establish a nexus to criminal activity. The failure to provide a source rendered the affidavit in those instances, as well as in each of the instances described in the defense motions, so lacking in probable cause.

Similarly, the warrants for the Target Residence and Target Vehicle, in failing to guide the officers' discretion by describing the criminal behavior at issue and in failing to more specifically identify the items to be seized, were "so facially deficient" that they permitted officers to search and seize, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ whether connected to the criminal behavior at issue or not. No reasonable officer would have relied on such warrants. Good faith does not apply. The government has not met its burden of establishing good faith and the Court, therefore, should suppress the evidence seized.

### VI. Exigent circumstances did not justify a search of the Target Residence.

In a footnote, the government argues that exigent circumstances would have justified a warrantless search of the Target Residence. It argues: "Law enforcement were

14

reasonably concerned that the defendant's property ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF 351 at 37 n.6.) The government's argument is not supported by the law.

The government cites *United States v. Jones*, No. 04-3129, 2005 WL 3113573, at *65 (3rd Cir. 2005), but fails to discuss the Court's analytical framework. In *Jones*, the Court "identified certain factors as relevant to an analysis of exigent circumstances," which included: "(1) that a grave offense has been committed; (2) that the suspect sought is reasonably believed armed; (3) that a strong reason exists to believe that the suspect is on the premises; and (4) a likelihood that the suspect might escape if not caught quickly." *Id*. Other than the nature of the offense, none of the other factors were present in this case. Mr. Bowers was already in custody, he was not armed, and he could not escape. Nor was he on the premises of his home, which was miles from the location of the criminal activity.

As it did with the issue of whether the affidavits established probable cause, the government here asks the Court to make similarly wild inferential leaps. It asks the Court to conclude that because Mr. Bowers was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that there existed exigent circumstances to search the Target Residence. The government makes this argument despite the fact that at the time agents searched the Target Residence, Mr. Bowers had been in custody for hours

15

and the Target Residence was miles from the Synagogue. The law does not support the government's attempt to stretch the doctrine of exigent circumstances beyond reason.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender