IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 18-292 |
| | ) |
| ROBERT BOWERS | ) |

**REPLY TO GOVERNMENT'S RESPONSE
TO MOTION TO SUPPRESS NO. 5**

On October 1, 2020, the defendant, Robert Bowers, filed a motion to suppress the evidence seized from his ▮▮▮▮ account because government agents searched the private account without having first obtained a search warrant, in violation of the Fourth Amendment. (ECF 292.) The government responded on November 4, 2020, acknowledging that it obtained and "viewed" the private ▮▮▮▮ information without a warrant, but claiming that Mr. Bowers lacked a reasonable expectation of privacy in the data. (ECF 345.) The government also attempts to rely upon a "private search" theory to justify its actions. It further argues that any unlawful conduct is excused by the good faith, independent source, or inevitable discovery doctrines. Because the government disputes issues of fact relevant to this motion, an evidentiary hearing is required.

**I.   Mr. Bowers has a reasonable expectation of privacy in the non-public information of his ▮▮▮ account.**

The government asserts that Mr. Bowers "fails to establish standing to challenge the search of the ▮▮▮▮▮▮▮ account **and** cannot assert a reasonable expectation of privacy in the non-public account information that he voluntarily provided to a third party, ▮▮▮▮." (ECF 345 at 2 (emphasis added).) The law governing reasonable

1

expectation of privacy is well-established. Fourth Amendment standing "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Baker,* 221 F.3d 438, 441 (3d Cir. 2000). For the objective prong, the Court asks "whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States,* 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland,* 442 U.S. 735, 740 (1979)). Regarding the subjective prong, the Court asks "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Id.*

First, to the extent the government is disputing whether the ▇ account was set up and used by Mr. Bowers, an evidentiary hearing is required. At that hearing, Mr. Bowers will rely upon records produced by the government in discovery linking his name, personal information, and photograph to the ▇ account.

Second, to the extent the government is disputing whether Mr. Bowers had a reasonable expectation of privacy in the non-public information of his ▇ account based upon ▇ privacy policy, an evidentiary hearing is required. The government asserts that the ▇ privacy policy, as posted on its website on October 28, 2018, controls this issue. However, the government does not show – presumably because it cannot – (i) that this was the privacy policy in effect when the ▇ account was created, or (ii) that Mr. Bowers was required to view, acknowledge, or accept the terms of **any** ▇ privacy policy at any point in time. Moreover, it cannot establish that any privacy policy of ▇

was sufficient to waive Mr. Bowers' reasonable expectation of privacy in his non-public account information.

Third, to the extent the government is disputing whether, regardless of any applicable privacy policy, Mr. Bowers had a reasonable expectation of privacy in the particular information provided by ▇ and used by government agents before obtaining a warrant, an evidentiary hearing is required. According to the government, ▇ provided agents with both public and non-public data before they obtained a warrant. Public data includes posts that are intentionally shared with all members of the ▇▇▇▇▇. But that is a small fraction of the data ▇ collected and provided to the FBI without a warrant. The non-public data that was collected by ▇ can be broken down into two categories: (i) content, such as private or non-public messages; and (ii) non-content metadata, which includes (a) the operating system used to access the site, (b) the type of device used to access the site, and (c) the IP Address associated with the account.

A user maintains a reasonable expectation of privacy in both content and non-content non-public data. With respect to content, a person has a reasonable expectation of privacy in private and non-public messages, regardless of whether they are oral or in writing. *See Katz v. United States*, 389 U.S. 347, 359 (1967). That messages are sent via a website does not change this analysis.

A user likewise maintains an objectively reasonable expectation of privacy in his IP address and related subscriber information – the former of which can be used to

establish physical location.[1] Indeed, federal law confirms IP addresses and related subscriber information are in fact private. Under 18 U.S.C. § 2702(a)(3) (a provision of the Stored Communications Act), "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service," unless an enumerated exception applies. *Telecomms. Regulatory Bd. v. CTIA - The Wireless Ass'n*, 752 F.3d 60, 64 (1st Cir. 2014) (quoting 18 U.S.C. § 2702(a)(3)). Therefore, as recognized by the SCA, a user has a legitimate expectation of privacy in non-public/non-content data.

A user does not abandon an otherwise reasonable expectation of privacy when information is provided to a third-party. Under the government's view, a cellphone user does not have a reasonable expectation of privacy in a text message sent to a friend because the user first provided the message to the phone carrier. This position is incorrect. At its core, the Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." And "the fact that a third party has access to or possession of your papers and effects does not necessarily eliminate your interest in them." *Carpenter v. United States*, 138 S. Ct. 2206, 2268 (Gorsuch, J., dissenting). Rather, that relationship is a bailment,

---

[1] The government's claim that Mr. Bowers "voluntarily and willingly provided" information to ▮ is a stretch. (ECF 345 at 10.) For instance, Mr. Bowers was not required to enter his IP Address every time he logged into the account, yet that non-public information was logged. In other words, it is more accurate to say that ▮ collected the information without the consent or likely knowledge of the user.

and the "bailee normally owes a legal duty to keep the item safe[.]" *Id.* As such, "[j]ust because you entrust your data . . . to a third party may not mean you lose any Fourth Amendment interest in its contents." *Id*. at 2269. Applying these principles here demonstrates that, although the third-party providers are entrusted with information, it does not mean the individual users, like Mr. Bowers, forfeit their Fourth Amendment interests in that information.

Because there are multiple disputed issues of fact regarding Mr. Bowers' expectation of privacy in the ▮ records, an evidentiary hearing is warranted.

II. **The government's reliance on a "private search" theory also requires an evidentiary hearing.**

In its response to Mr. Bowers' motion to suppress, the government recites a narrative of events, which it supports with only a heavily redacted ▮▮▮▮▮▮▮▮▮▮▮ (ECF 345 at 3-5; *id*. at Exhs. 1-2.) The government claims that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ The government does not provide a recording of that call, nor does it state what communication between the government and ▮ occurred during or immediately after that call. The government does allege that, within approximately one hour of ▮▮▮▮ , it ▮▮▮▮▮▮▮▮ (ECF 345 at Exh. 2.) The government does not provide the ▮ itself, instead attaching only ▮▮▮ ▮▮▮▮▮

5

██████████ (ECF 345 at Exh. 2.) The government then claims that ████████████

████████████████████████████████████████████████████████████████████

████████ (ECF 345 at 4.) Again, the government fails to provide a ████████████

████████████████████

The government disputes Mr. Bowers' assertion that law enforcement agents searched the ██ records provided by the ██ prior to obtaining a warrant. Instead, it alleges that agents merely "viewed" the records, and such "viewing" does not implicate Fourth Amendment concerns. (ECF 345 at 7-8.) But the agents did more than "view" the records. At the very least, they searched the records and found non-public information, ████████████████████████████████████████████████████████████████████ ████████████████████ The agents then used this information to obtain a warrant for the ██████████████. (ECF 292 at Exh. C, at ¶ 20.)

Despite its inadequately supported representations, the government asserts that this alleged series of events amounted to a "private search" by the ██████████, thereby falling outside of the scope of the Fourth Amendment. (ECF 345 at 6-8.) In order to qualify as a "private search," there must be a search conducted by a private individual acting without the participation or knowledge of any government official. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In addition, the scope of the government official's search must not exceed the scope of the private party's search. *Id*. at 119-120.

In order to be considered a "private search," it had to be conducted without the participation or knowledge of any government official. As set forth above, not only is the government's evidentiary support for its version of events insufficient, it also strongly

6

suggests that ▮ acted with the knowledge and at the behest of the government. Finally, the "private search" theory, to the extent it is applicable at all, does not excuse any government search that extends beyond that conducted by the private individual.

An evidentiary hearing to determine what actions the ▮ took, as well as the actions taken by law enforcement agents prior to obtaining a warrant, is required before the Court accepts the government's "private search" theory.

### III. The government has not met its burden of establishing good faith.

The government claims that the good faith doctrine excuses any improper conduct by its agents. (ECF 345 at 14-16.) However, the government bears the burden of establishing good faith. *United States v. Rodriguez*, No. 13-619, 2014 WL 4413606, at *4 (E.D. Pa. 2014). Here, the government simply asserts that "the United States did nothing to compel or persuade the CEO of Gab.com to provide records prior to the issuance of a warrant." (ECF 345 at 14.) As the Third Circuit recognizes, "'Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.'" *Zimmerman*, 277 F.3d 426, 438 (3d Cir. 2002) (internal citation omitted). As noted above, the government's version of events is not adequately supported in its response, and an evidentiary hearing is required before this Court may accept the government's reliance on the good faith doctrine.

### IV. The independent source and inevitable discovery doctrines do not apply.

Like the good faith doctrine, the government bears the burden of establishing the applicability of the independent source and inevitable discovery doctrines. *Nix v. Williams*, 467 U.S. 431, 444 (1984). The government's mere assertion that its search of

the records provided by the ███████ did not taint and had no effect on the government's efforts to procure the records by way of a warrant is insufficient. (ECF 349 at 16–19.) In addition, the government's citation to the purported preservation and dissemination of Mr. Bowers' ███████ information – without specifying whether this includes the non-public information Mr. Bowers challenges – by "the media and private parties" is inadequate. (ECF 349 at 18-19.) Without further evidentiary support, this Court should reject the government's attempts to justify its unlawful conduct with the inevitable discovery and independent source doctrines.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender