IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.            ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO SUPPRESS NO. 7**

On October 1, 2020, the defendant, Robert Bowers, filed a motion to suppress evidence seized during the search and seizure from ▇▇▇ of information associated with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (ECF 294.) The government responded on November 4, 2020. (ECF 346.) Mr. Bowers now replies and requests an evidentiary hearing in connection with this motion.

**I.    Mr. Bowers had a reasonable expectation of privacy in the information associated with the ▇▇▇▇▇▇▇▇▇ and the ▇▇▇▇▇▇.**

The government argues that Mr. Bowers has not established a reasonable expectation of privacy in the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The law governing reasonable expectation of privacy is well-established. Fourth Amendment standing "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Baker,* 221 F.3d 438, 441 (3d Cir. 2000). For the objective prong, the Court asks "whether the individual's

1

expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States,* 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland,* 442 U.S. 735, 740 (1979)). Regarding the subjective prong, the Court asks "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Id.*

Mr. Bowers had a subjective privacy interest in both ▮▮▮▮ and that privacy interest was reasonable. Mr. Bowers owned and used the ▮▮▮▮ ▮▮▮▮ and considered them his ▮▮▮▮ accounts. The government's own affidavit establishes that the ▮▮▮▮ ▮▮▮▮ belonged to him. The affidavit itself states: ▮▮▮▮



▮▮▮▮ 294, Exhibit B at ¶ 23. It further states that ▮▮▮▮ ▮▮▮▮ *Id*. at ¶¶ 24–25. However, now that the government has raised a disputed factual issue, the defense requests an evidentiary hearing to put in the record evidence concerning Mr. Bowers' subjective expectation of privacy and facts establishing that his subjective privacy interest was one that society would accept as reasonable.

    **II.**     **The government eviscerates the probable cause standard in arguing that there existed probable cause for records associated with the ▮▮▮▮.**

Under the guise of "reasonable inferences," the government extinguishes the requirement that a warrant affidavit establish a nexus between the items sought and criminal activity. It claims the defense "asserts that there is no direct evidence connecting

the phone and his Gmail accounts to the crimes" and that therefore there is no probable cause. (ECF 346 at 7.)

The government misstates the defense argument. The crux of the defense argument is that the affidavit must establish a nexus between the items sought and criminal activity. *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010) (recognizing there must exist "a nexus between" the particular place—the defendant's private space—"and the crime under investigation"). Under the guise of "reasonable inferences," the government eviscerates the probable cause standard. It asks the Court to make inferential leaps unsupported by the facts set forth in the affidavit.

For example, the government writes: "It is eminently reasonable to infer that someone who ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████ (ECF 346 at 8.) First, as noted by the defense, the Court should not credit the affiant's assertion that Mr. Bowers ███████████████ ███████. (*See* ECF 294 at 8–10.) Second, even if the Court credited the affiant's assertion, it remains an unsupported inferential leap to conclude that, because ██ ███████████████████████████████████████, his ██████████████████████████ would contain evidence of ██████████████████. This is so because the affidavit is devoid of any facts that Mr. Bowers in any way used the ██████████████ ██████████ to post political, religious, or social commentary.

3

Far from being "eminently reasonable," such an inferential leap eviscerates the requirement that the affidavit establish a nexus between the items sought and criminal activity. The affidavit similarly asserts without basis that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (ECF 346 at 10.) The government suggests that more people "may have" been involved and Mr. Bowers "could have" communicated with them. Relying on what "may have" been or what "could have" happened falls far below what the probable cause standard requires.

The government further repeatedly asserts that the affidavit should be taken "as a whole." (ECF 346 at 2, 4, 5, 6, 8, 9, 12.) The notion of taking the affidavit "as a whole," however, is merely an attempt to mask that the facts set forth in the affidavit fail to establish a nexus between the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and criminal activity. Zero plus zero plus zero still equals zero, whether you view it in whole or in part. The affidavit here, taken "as a whole," failed to provide a substantial basis for finding probable cause that records from ▆▆▆ associated with the ▆▆▆▆▆▆▆▆ would yield evidence of criminal activity. For this reason, the ill-gotten evidence must be suppressed.

  **III.**  **The government fails to identify a nexus between the criminal activity described in the affidavit and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆**

The government asks the Court to conclude that because the warrant affidavit asserted that because Mr. Bowers ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, there is a fair probability that Mr. Bowers had been planning this crime in some form since December 2007. This is an unreasonable inferential leap, unsupported by any evidence.

While the government is correct that it "cannot be held to the standard of knowing the exact date when Bowers began his planning and when he formed his anti-Semitic bias" (ECF 346 at 15), the law requires that it be held to the standard of establishing a nexus between the records it seeks and criminal activity. Simply suggesting, without actually setting forth facts, that the offense in October 2018 may have or could have involved planning dating back twelve years does not establish probable cause to search for those records. The government's fact-free analysis cannot stand. Facts matter, and the affidavit failed to set forth facts establishing a nexus between criminal activity and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Should the Court find the Magistrate had a basis for finding probable cause for the August – October 2018 records, the Court should still recognize that probable cause was utterly lacking for records from December 2007 through March 2008.

### IV. Good faith does not apply.

The defense challenges the application of the good faith exception to the exclusionary rule. The warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002) (internal quotation marks and citation omitted). The question is "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States*

*v. Loy,* 191 F.3d 360, 367 (3d Cir. 1999) (internal citation omitted). The government cannot simply cite good faith and assert the conclusion that agents relied in good faith on the Magistrate issuing the warrant. As the Third Circuit recognizes, "'Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.'" *Zimmerman*, 277 F.3d at 438 (internal citation omitted).

While the government asserts that the defense "has not 'demonstrated that a reasonably well-trained officer would have known that the search was illegal, despite the magistrate's authorization,'" (ECF 346 at 18 (citation omitted)), it is the government who bears the burden of establishing good faith. *United States v. Rodriguez*, No. 13-619, 2014 WL 4413606, at *4 (E.D. Pa. 2014). It has not done so with the ▮▮▮▮ records from August 27, 2018 through October 27, 2018, the ▮▮▮▮ records from August 27, 2018 through October 27, 2018, or with the ▮▮▮▮ records from December 2007 through March 3, 2008.

Good faith does not apply to an affidavit containing "mere conclusory assertions" or "a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). As in *Rodriguez*, the facts in the affidavit supporting the search warrant "are slim." *Rodriguez*, 2014 WL 4413606 at *5. The government does not offer facts to connect the ▮▮▮▮ ▮▮▮▮ to criminal activity. It offers conclusory assertions and then takes it a step further by asking the Court to draw unreasonable inferences, inferences that find no support in the facts actually set forth. This is particularly so with respect to the ▮▮▮▮ records from December 2007 through March 3, 2008. There was no

basis to search and seize those records, and any "reasonably well trained officer" would know that.

Good faith cannot save any of the searches, and particularly it cannot save the search and seizure of records more than ten years removed from the criminal behavior. The government has not met its burden of establishing good faith and the Court, therefore, should suppress the evidence seized.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender