IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )
          )
          v.                )       Criminal No. 18-292
          )
ROBERT BOWERS           )

## REPLY TO GOVERNMENT'S RESPONSE TO
## MOTION TO SUPPRESS NO. 13

On October 1, 2020, the defendant, Robert Bowers, filed a motion to suppress

evidence seized during searches of records associated with Mr. Bowers' ███████

████████████████████████████████████████ (ECF 300.) The

government responded on November 4, 2020. (ECF 348.) Mr. Bowers now replies and

requests an evidentiary hearing in connection with this motion.

     I.     **Mr. Bowers had a reasonable expectation of privacy in the information
associated with the** ████████████████████████████

With respect to the Comcast account, the government concedes that Mr. Bowers

has a legitimate privacy interest in ████████████████████████, but

claims that Mr. Bowers had no reasonable expectation of privacy in the ████████

████████████████████████████████████████████

████████████████ (ECF 348 at 6.)

The defense asserts that Mr. Bowers had a reasonable expectation of privacy in all

of the materials produced by █████. The law governing reasonable expectation of

privacy is well-established. Fourth Amendment standing "requires that the individual

challenging the search have a reasonable expectation of privacy in the property searched

. . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Baker,* 221 F.3d 438, 441 (3d Cir. 2000). For the objective prong, the Court asks "whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States,* 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland,* 442 U.S. 735, 740 (1979)). Regarding the subjective prong, the Court asks "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Id.*

A user maintains a reasonable expectation of privacy in both content and non-content non-public data. With respect to content, a person has a reasonable expectation of privacy in private and non-public messages, regardless of whether they are oral or in writing. *See Katz v. United States*, 389 U.S. 347, 359 (1967). That messages are sent via a website does not change this analysis.

A user likewise maintains an objectively reasonable expectation of privacy in his IP address and related subscriber information – the former of which can be used to establish physical location. Indeed, federal law confirms IP addresses and related subscriber information are in fact private. Under 18 U.S.C. § 2702(a)(3) (a provision of the Stored Communications Act), "a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service," unless an enumerated exception applies. *Telecomms. Regulatory Bd. v. CTIA - The Wireless Ass'n*, 752 F.3d 60, 64 (1st Cir. 2014) (quoting 18 U.S.C. § 2702(a)(3)). Therefore, as

recognized by the SCA, a user has a legitimate expectation of privacy in non-public/non-content data.

Accordingly, Mr. Bowers had a subjective privacy interest in the information associated with ████████████ and his privacy interest was reasonable. Now that the government has raised a disputed factual issue regarding his privacy interest, the defense requests an evidentiary hearing to put in the record evidence produced in discovery by the government establishing Mr. Bowers' subjective expectation of privacy in the ████████ and evidence establishing that his privacy interest was one that society would accept as reasonable.

## II.     The government eviscerates the probable cause standard in arguing that there existed probable cause for records associated with ████████████

The warrant affidavit, with respect to records associated with ████████████ failed to establish a nexus between those records and criminal activity. Under the guise of viewing the affidavit "as a whole" and "reasonable inferences," the government extinguishes the requirement that a warrant affidavit establish a nexus between the items sought and criminal activity. It claims that the defense argues that the government must "establish a direct link to criminality" for the ████████. (ECF 348 at 12.)

The government misstates the defense argument. The crux of the defense argument is that the affidavit must establish a nexus between the items sought and criminal activity. *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010) (recognizing there must exist "a nexus between" the particular place – the defendant's private space –

"and the crime under investigation"). Under the guise of viewing the affidavit "as a whole" and "reasonable inferences," the government asks the Court to make inferential leaps unsupported by the facts set forth in the affidavit.

For example, the government asserts that "it was fairly probable the ███████ ██████ could have evidence that it was used to communicate . . . with coconspirators." (ECF 348 at 13.) Not a single fact set forth in the affidavit suggested coconspirators. Yet the government here suggests the Magistrate could "reasonably conclude that it was fairly probable" that the records associated with ██████████████ would yield evidence of communication with coconspirators. The government asserts these kinds of wildly unsupported inferential leaps throughout its response.

While the affidavit establishes a nexus between Mr. Bowers' ██████████ ████████████████ and criminal activity, the government cannot escape the reality that the facts set forth in the affidavit do not establish a nexus between ████████████████ and criminal activity. The government's argument, which eviscerates the probable cause standard, reduces to the claim that if it can establish probable cause for one form or method of communication, then probable cause exists for other unrelated forms or methods of communication.

The affidavit, taken "as a whole" and with all "reasonable inferences," failed to provide a substantial basis for finding probable cause that records from ████████████████ would yield evidence of criminal activity. For this reason, the ill-gotten evidence must be suppressed.

### III.     To the extent that the government relies on inevitable discovery, an evidentiary hearing is necessary to elicit relevant facts.



The government argues that the ▮▮▮▮▮ at issue would have been inevitably discovered. The government asserts that it received information from ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would have led it to inevitably discovery the ▮▮▮▮▮▮▮. It concludes that "through this independent source, [it] was aware that there was a fair probability that relevant communications would be found in the ▮▮▮▮▮▮." (ECF 300 at 16.) The defense disputes the government's factual assertion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would yield evidence of ▮▮▮▮▮▮▮▮. At an evidentiary hearing, the government must set forth the evidence in support of its argument for inevitable discovery.

The government ignores the fact that still it would have had to apply for a warrant for those ▮▮▮▮▮▮▮▮. It would not have actually discovered ▮▮▮ ▮▮▮; it just would have learned that there may be relevant information. And should the Court grant the defense motion to suppress the evidence obtained from ▮▮▮▮ ▮▮ (ECF 298), the government would not have even known of the ▮▮▮ ▮▮▮▮▮ The inevitable discovery doctrine is not applicable here.

### IV.     Good faith does not apply.

The defense challenges the government's contention that the good faith exception to the exclusionary rule excuses any Fourth Amendment violation. The warrant here was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Zimmerman*, 277 F.3d 426, 437

(3d Cir. 2002) (internal quotation marks and citation omitted). The question is "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Loy,* 191 F.3d 360, 367 (3d Cir. 1999) (internal citation omitted). The government cannot simply cite good faith and assert the conclusion that agents relied in good faith on the Magistrate issuing the warrant. As the Third Circuit recognizes, "'Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.'" *Zimmerman*, 277 F.3d at 438 (internal citation omitted). The government bears the burden of establishing good faith. *United States v. Rodriguez*, No. 13-619, 2014 WL 4413606, at *4 (E.D. Pa. 2014). It has not done so.

Good faith does not apply to an affidavit containing "mere conclusory assertions" or "a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). As in *Rodriguez*, the facts in the affidavit supporting the search warrant here "are slim." *Rodriguez*, 2014 WL 4413606 at *5. The government does not offer facts to connect ▮▮▮▮▮▮▮▮▮▮▮ to criminal activity. It offers conclusory assertions based on unsupported inferential leaps, such as when arguing that the ▮▮▮▮▮▮▮ "could have evidence that it was used to communicate . . . with coconspirators," when not a single fact in the affidavit connected the criminal activity to coconspirators. It does this because the affidavit was so lacking in probable cause.

There was no basis to search and seize records associated with ▮▮▮▮▮▮▮▮▮▮▮ and any "reasonably well trained officer" would know that.

6

Good faith cannot save the search. The government has not met its burden of establishing good faith and the Court, therefore, should suppress the evidence seized.

  Dated: November 18, 2020                    Respectfully submitted,


                                             /s/Judy Clarke
                                             Judy Clarke
                                             Clarke Johnston Thorp & Rice, PC

                                             /s/ Michael J. Novara
                                             Michael J. Novara
                                             First Assistant Federal Public Defender

                                             /s/ Elisa A. Long
                                             Elisa A. Long
                                             Supervisory Assistant Federal Public Defender