IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO SUPPRESS NO. 15**

On October 1, 2020, the defendant, Robert Bowers, filed a motion to suppress evidence of the location and movement of his vehicle. (ECF 302). The government responded on November 4, 2020. (ECF 343). Mr. Bowers now replies and requests an evidentiary hearing in connection with this motion.

**I.    Factual background**

In his motion to suppress, Mr. Bowers argues that querying an Automated License Plate Reader ("ALPR") database to find precise location and movement data for a four-and-a-half-month time frame constitutes a search under the Fourth Amendment. The government frames the use of ALPRs as follows: "Photographing license plates on public roads and reviewing police databases for public information are not searches; and, accordingly, neither is the combination of these two techniques using ALPR." ECF 343 at 2. But law enforcement's use of ALPRs and their databases are much more intrusive and involved than what the government describes.

The precise location data in this case comes from a database that aggregates over 350 distinct location points in and around Pittsburgh. With each location point, the

1

database also contains photographs of the license plate number, the state that issued the license plate, vehicle make, vehicle model, vehicle color, and (at times) the person or persons in the vehicle. The date and time is captured, as is the precise (meaning within meters) location of the vehicle. The license plate number is converted into readable format, and saved in a database, which allows law enforcement officers to search for and determine the precise location of a vehicle at any given date and time. Because of the prolonged nature of the location and movement data in this case, Mr. Bowers had a reasonable expectation of privacy in the location data, which the government gained access to without a warrant.

The use of ALPRs involves much more than photographing license plates and reviewing police databases. ALPRs a vehicle's make, model, and color, the vehicle's location within meters, the time of day, and also potentially capture the person or persons in the vehicle. When law enforcement search a database with ALPR data, as it did in this case, it potentially captures over four-and-a-half months of location and movement data not just for Mr. Bowers' vehicle, but also for Mr. Bowers himself, or the persons in his vehicle. Because the government has raised a disputed factual issue regarding the nature and scope of this technology, an evidentiary hearing is required to set forth the above-described facts that bear on Mr. Bowers' reasonable expectation of privacy in the use of ALPRs and databases collecting ALPR information.

    **II.**    **The Warrantless Search Violated Mr. Bowers' Fourth Amendment Rights and the Evidence Obtained must be Suppressed.**

The government does not address the arguments set forth in Mr. Bowers' motion; instead the government focuses on isolated surveillance methods, such as a single photograph or a single tracking device, to argue that querying a database with precise location data compiled from multiple tracking devices over a significant geographic area does not constitute a search under the Fourth Amendment. Under the government's view, over four months of location and movement data does not interfere with a person's reasonable expectation of privacy. The government further contends that, even if a warrantless search occurred, the Court should decline to suppress evidence because federal agents acted in good faith.

The government is incorrect on all points. First, Mr. Bowers retained a constitutionally protected reasonable expectation of privacy in the entirety of four months of location and movement data.  Second, the good faith exception is inapplicable because the actions of the agents were neither consistent with binding precedent nor reasonable. Therefore, the remedy for the warrantless search is suppression.

> **A.** **Mr. Bowers had a reasonable expectation of privacy in the location and movement data captured.**

In his motion, Mr. Bowers argued that he had a reasonable expectation of privacy in his location and movement over a four and half month period. ECF 302 at 7-11.[1] Instead of addressing this issue, the government argues that neither the use of a camera

---

[1] This argument is consistent with *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018), where the Court held that a Fourth Amendment search occurs when the government tracks an individual's movements by accessing seven or more days of Cell Site Location Information ("CSLI") data.

3

"to photograph the rear portion of a vehicle," nor the act of "drawing from a law enforcement database" to find the license plate number, constitutes a search under the Fourth Amendment. ECF 343 at 3. These arguments fail.

First, despite the government's insistence, an ALPR system does not merely consist of a camera that takes photographs. Instead, ALPR systems are a combination of high-speed cameras and computers using advanced algorithms, storing large amounts of location data in searchable databases. *See, e.g.*, *Privacy Impact Assessment for the CBP License Plate Reader Technology* (July 6, 2020). These cameras do record license plate numbers, which are then converted into computer-readable text. *Id.* But the photographs (and sometimes video) may capture the number of people in the vehicle, the make, model, and year of the vehicle, the direction of travel, and the precise time and location of the vehicle. Thus, the government's claim that only the license plate is captured is simply inaccurate.[2]

Second, the government fails to address Mr. Bowers' argument that the analytical framework employed by *Carpenter* demonstrates that querying an ALPR database for over four months on location and movement data violated his reasonable expectation of privacy. ECF 302 at 9-11. As Mr. Bowers noted, "the [*Carpenter*] Court discussed the

---

[2] The technology at issue in this case provides far more precise location and movement data than that at issue in *Carpenter*. There, the government indicated that through the use of CSLI, it could place a person "within a wedge-shaped sector ranging from one-eighth to four square miles." 138 S.Ct. at 2218. Here, the technology places a car at an exact location. It also may show the person driving the vehicle, and the presence of passengers. As such, the precision of the location data with ALPRs is far greater than the technology at issue in *Carpenter*.

following factors in finding that the use of historical cell site location information implicates the Fourth Amendment: (i) the detailed nature of the data collected, (ii) the indiscriminate nature of the data collection, and (iii) the ability to conduct retrospective searches. ALPR data implicates all of these factors." ECF 302 at 9. Because ALPR data meets these requirements, "it invaded [Mr. Bowers'] reasonable expectation of privacy in the whole of his physical movements." *Carpenter*, 138 S.Ct. at 2219.

The government focuses its attention on cases dealing with short term active surveillance, which is not what occurred in this case. The government states that "a person has no privacy interest in car [SIC] travel[ing] on public streets . . . ." ECF 343 at 3. The government seeks support for this proposition by citing to *United States v. Knotts*, 460 U.S. 276, 281–82 (1983). But, as explained in *Carpenter*, *Knotts* and related cases dealt with a single movement, not long-term location and movement data: "This Court in *Knotts*, however, was careful to distinguish between the rudimentary tracking facilitated by the beeper and more sweeping modes of surveillance. The Court emphasized the 'limited use which the government made of the signals from this particular beeper' during a discrete 'automotive journey.'" *Carpenter*, 138 U.S. at 2215 (citing *Knotts*, 460 U.S. at 284-285). Therefore, because we are not dealing with a "discrete automotive journey," but instead over four months of location and movement data, the search is within the ambit of the Fourth Amendment. Therefore, *Knotts* is inapplicable. Accessing the long-term location and movement data constitutes a search, and a warrant was thus required.

    B.    **The Good Faith Exception is Inapplicable.**

The good faith exception "applies not only where law enforcement agents act on binding appellate precedent but also, **and** more fundamentally, where the officers act 'upon an objectively reasonable good faith belief in the legality of their conduct.'" *United States v. Vasquez-Algarin*, 821 F.3d 467, 483 (3rd Cir 2016) (citing U*nited States v. Katzin*, 769 F.3d 163, 182 (3d Cir. 2014) (en banc) (emphasis added)).  Here, the government incorrectly contends that, "[b]ased on available precedent, a reasonably well-trained officer would not have known that" querying a database for long term location data required the use of a warrant. ECF 343 at 9. The government's argument is unavailing because it cannot show both that (1) there was binding precedent the agents acted upon **and** (2) that the actions were reasonable.

At the time agents conducted the search, there was no binding case law supporting the warrantless search of over four months of location and movement data. *See Katzin*, 769 F.3d at 174 ("For a law enforcement officer's conduct to fall under the ambit of [*United States v. Davis*, 131 S. Ct. 2419, 2428 (2011),]  a court must answer in the affirmative that the officer has "conduct[ed] a search [or seizure] in objectively reasonable reliance on binding judicial precedent."). In fact, at the time, the available case law counseled **against** searching over four months of location data without a warrant.  In particular *Carpenter*, which was decided four months prior to the search, established that a Fourth Amendment search occurs when law enforcement obtained more than seven days of CSLI data. 138 S. Ct. at 2219.

The government responds that the Court in *Carpenter* "made clear that its holding was 'narrow' and not intended to 'call into question conventional surveillance techniques

6

and tools, such as security cameras.'" ECF 343 at 10 (citing *Carpenter*, 138 S. Ct. at 2220). The government's reading of *Carpenter* is too narrow, as illustrated by the Supreme Court's warning to law enforcement in *Katzin*.

In *Katzin*, law enforcement officers attached a GPS tracking device to a vehicle in the absence of a warrant. *Katzin*, 769 F.3d at 167-68. This occurred in 2010, which was two years before *United States v. Jones*, where the Court found that a warrant was required to use GPS devices to track a vehicle. 565 U.S. 400 (2012). Ultimately, the *Katzin* court found that the good faith exception applied because "at the time of the agents' conduct [which was prior to the opinion in *Jones*], the Supreme Court's decisions in [*Knotts*]*,* and *United States v. Karo*, 468 U.S. 705, 104 S. Ct. 3296, 82 L.Ed.2d 530 (1984), were binding appellate precedent upon which the agents could reasonably have relied under *Davis*." *Id.* at 173. But the *Katzin* Court "caution[ed that] after *Jones*, law enforcement should carefully consider that a warrant may be required when engaging in such installation and surveillance." *Id.* at 170.

By October 2018, the Fourth Amendment landscape was dramatically different than it was in 2010. And the clear warning in *Katzin* was echoed in the various dissents in *Carpenter*. This is particularly true in Justice Kennedy's dissenting opinion, where he warns, "[T]he Court today declares that *Jones* applied the 'different constitutional principles' alluded to in *Knotts* to establish that an individual has an expectation of privacy in the sum of his whereabouts." 138 S. Ct. at 2231 (Kennedy, J., dissenting) (citations omitted). In other words, by October 2018, when the ALPR query was run here, law enforcement officers should have known that the ability to track a person's location

and movement data over a four month period constitutes a search under the Fourth Amendment. And because the warrantless search of Mr. Bowers' location and movement data was neither consistent with binding case law nor reasonable, the government did not meet is burden that good faith applies. *See Vasquez-Algarin*, 821 F.3d at 483.

### III. Conclusion

Mr. Bowers had a reasonable expectation of privacy in over four months of his location and movement data. The collection and use of the data by the government constitutes a search. Because the search occurred without a warrant and in the absence of demonstrable good faith, suppression is required. *See, e.g., Jones*, 565 U.S. at 413. Because of the disputed facts, an evidentiary hearing is required.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender