IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )          Criminal No. 18-292<br>)<br>ROBERT BOWERS      ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO SUPPRESS NO. 6**

On October 1, 2020, the defendant, Robert Bowers, filed a motion to suppress evidence of ████████████████████████████████████████████████ ██████████████████████ (ECF 293.) The government responded on November 4, 2020. (ECF 354.) Mr. Bowers now replies and requests an evidentiary hearing in connection with this motion.

**I.    Mr. Bowers had a reasonable expectation of privacy in the information associated with the ██████████████████████████████ ████████.**

The government contends that Mr. Bowers has not established a reasonable expectation of privacy in the ████████████████████████████████ ████████████ (ECF 354 at 5–7.) The law governing reasonable expectation of privacy is well-established. Fourth Amendment standing "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Baker,* 221 F.3d 438, 441 (3d Cir. 2000). For the objective prong, the relevant question is "whether the individual's expectation of privacy is 'one that society is prepared to

1

recognize as reasonable.'" *Bond v. United States,* 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland,* 442 U.S. 735, 740 (1979)). Regarding the subjective prong, the question is "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Id.*

Mr. Bowers had a subjective privacy interest in data obtained pursuant to the warrant, and that interest was objectively reasonable. The records seized by the government include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ It also contains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, the type of location data in this case appears to be far more accurate than the location data at issue in *Carpenter v. United States,* 138 S. Ct. 2206, 2218 (2018), wherein the government indicated that, through the use of CSLI, it could place a person "within a wedge-shaped sector ranging from one-eighth to four square miles."

Now that the government has raised a disputed factual issue, the defense requests an evidentiary hearing to put in the record evidence concerning Mr. Bowers' subjective expectation of privacy and facts establishing that his subjective privacy interest was one that society would accept as reasonable. The evidence will include discovery provided by the government that indicates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

More fundamentally, the thrust of the government's main argument, that one lacks a privacy interest in an anonymous account, is based on a misunderstanding of the facts

of this case and mobile networks generally. Specifically, the government claims that ▇

▇

▇ (ECF 354 at 3.) While this factual recitation is central to the government's argument, it fails to provide a complete and accurate picture of what transpired. This is because it is common for smaller phone companies, such as Ting, to purchase access to networks of larger carriers, such a T-Mobile, and sell that access to individual subscribers. This process is referred to as a mobile virtual network operator ("MVNO"). The FBI understood this situation, which is why the FBI requested ▇. To the extent the government contends that the account was anonymous, and that anonymous accounts are not entitled to privacy protections, an evidentiary hearing should be conducted to resolve this issue.

II. **The government eviscerates the probable cause standard in arguing that there existed probable cause for** ▇.

Under the guise of "reasonable inferences," the government extinguishes the requirement that a warrant affidavit establish a nexus between the items sought and criminal activity. It asks the Court to find a reasonable inference that, despite the affidavit containing **no** facts indicating that Mr. Bowers ever used the ▇

▇, records associated with ▇

▇ would yield evidence related to the shooting

3

incident. The government asks the Court to conjure up scenarios rather than rely on the facts actually set forth in the affidavit.

For example, despite the fact that the affidavit ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the government asserts "it was reasonable for the magistrate judge to conclude that the evidence sought would help investigators determine, for instance, the defendant's movement between his home and the Tree of Life synagogue on the date of the incident." (ECF 354 at 10.) It further asserts the following remarkable inferences, which are wholly unsupported by any of the facts set forth in the affidavit: "it was reasonable for the magistrate judge to conclude that the evidence sought would help investigators determine . . . whether or not the defendant had previously surveilled the Tree of Life Synagogue, whether or not the defendant had surveilled other synagogues or gathering locations for Jewish individuals, whether or not the defendant had contact with possible coconspirators, whether the defendant had contact with possible victims, and whether or not the defendant traveled to meet with possible co-conspirators who could eventually be identified through the records sought or through other records obtained in the investigation." *Id*. No facts in the affidavit suggested surveillance; no facts suggested coconspirators, let alone contact with coconspirators; and no facts suggested contact with victims. The probable cause standard means something more than conjuring up scenarios and labeling them as a "reasonable inferences."

The facts set forth in the affidavit do not support the inferences the government asks the Court to draw. The government asserts that it "need not establish that ▓▓▓▓ ▓▓▓▓▓▓ were instrumentalities of the crime or were actively deployed in the commission of the offense." (ECF 354 at 10–11.) The defense does not ask the Court to hold the government to that burden. It asks the Court only to require that the government set forth facts establishing a nexus between the items sought and criminal activity, which is what the law requires. The affidavit fails to meet that standard.

Probable cause existed with respect to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[1] The facts set forth in the affidavit established a nexus between ▓▓▓▓▓▓▓▓▓▓ and criminal activity ▓▓▓▓▓▓▓▓▓▓. Probable did not exist for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

### III. The search warrant is invalid because it failed to satisfy the Fourth Amendment's particularity requirement.

The government describes the requirement that a warrant cite to or identify the criminal behavior at issue as a "technical citation." (ECF 354 at 14.) The warrant here, however, was not one that limited the search to specific items such that citation to the criminal behavior at issue would be technical rather than necessary. Rather, the warrant permitted agents to search and seize  (ECF 293, Exhibit A at 3.) In this context, it was necessary for the warrant to cite to or describe the

---

[1] The government mistakenly indicates that "the defendant argues that the time period sought should be limited to ▓▓▓▓▓▓▓▓▓." (ECF 354 at 11.)

5

criminal behavior at issue to guide the officers executing the warrant. Absent that information, the warrant permitted agents to search "for any unspecified criminal offense." *Mink v. Knox*, 613 F.3d 995, 1011 (10th Cir. 2010).

The government cites *United States v. $92,422.57*, 307 F.3d 137 (3d Cir. 2002), for the proposition that if the warrant "failed to specify even the 'generic types of crimes' to which the items sought pertained," it still "was sufficiently particular because reference to the criminal conduct would not have usefully delimited the scope of the search." (ECF 354 at 15.) But in that case, the Court noted that the warrant sought seizure specifically of "legitimate transactions" and so the breadth of the warrant was necessary. *$92,422.57*, 307 F.3d at 150. It was "necessary to examine *all* of Kim's 'receipts, invoices, lists of business associates, records of telephone numbers, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence' – at least for the relevant period of time." *Id.* (emphasis in original). Here, the warrant, as the government would concede, was not directed at the universe of legitimate "records and other information," but rather only at those items with a nexus to criminal activity. The warrant's failure to describe in any way the criminal conduct at issue failed to guide the officers in seizing only those items connected with criminal activity. For this reason, the warrant was a general warrant and all evidence seized must be suppressed.

    **IV.** **To the extent that the government relies on inevitable discovery or the independent source doctrine, an evidentiary hearing is necessary to elicit relevant facts.**

The government cites what it alleges are multiple independent sources for the information it sought to seize and argues therefore that the Court should not suppress the evidence. It states, for example, that ███████████████████████████

███████████████████████████████

███████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████ ECF 354 at 17. The government must establish at an evidentiary hearing the factual basis for its reliance on the independent source doctrine.

**V.      Good faith does not apply.**

The defense challenges the application of the good faith exception to the exclusionary rule. The warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002) (internal quotation marks and citation omitted). The question is "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Loy,* 191 F.3d 360, 367 (3d Cir. 1999) (internal citation omitted).

The government bears the burden of establishing good faith. *United States v. Rodriguez*, No. 13-619, 2014 WL 4413606, at *4 (E.D. Pa. 2014), and it cannot simply cite good faith and assert the conclusion that "agents relied in good faith on a detailed and well-supported affidavit." ECF 353 at 23. As the Third Circuit recognizes, "'Good faith is

7

not a magic lamp for police officers to rub whenever they find themselves in trouble.'" *Zimmerman*, 277 F.3d at 438 (internal citation omitted).

Good faith does not apply to an affidavit containing "mere conclusory assertions" or "a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). As in *Rodriguez*, the facts in the affidavit supporting the search warrant here "are slim." *Rodriguez*, 2014 WL 4413606 at *5. The affidavit in support of the warrant utterly failed to establish a nexus between either ▮▮▮▮ and criminal activity, other than for ▮▮▮▮▮▮▮▮▮▮. Agents appear to have assumed that because of the nature and scale of the shooting incident, they had license to search and seize any and all location records associated with the ▮▮▮▮. The law is clear, however, that the government must establish a nexus between items the government seeks to seize – here, ▮▮▮▮ormation – and criminal activity. The warrant affidavit here was so deficient in probable cause that a reasonably well-trained officer would have known that the search was illegal. Good faith does not apply. The government has not met its burden of establishing good faith and the Court, therefore, should suppress the evidence seized.

                                      Respectfully submitted,

                                      */s/ Judy Clarke*
                                      Judy Clarke
                                      Clarke Johnston Thorp & Rice, PC

                                      */s/ Michael J. Novara*

Michael J. Novara
First Assistant Federal Public Defender

*s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender