IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

**UNITED STATES' OMNIBUS SURREPLY TO DEFENDANT'S REPLIES TO GOVERNMENT'S RESPONSES IN OPPOSITION TO DEFENSE MOTIONS TO SUPPRESS EVIDENCE**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, Troy Rivetti and Soo C. Song, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files its Omnibus Surreply to Defendant's Replies to Government's Responses in Opposition to Defense Motions to Suppress Evidence (Doc. Nos. 377-386).

## I. INTRODUCTION

The United States filed comprehensive responses in opposition to the defendant's motions to suppress evidence which set forth the governing legal authority for the Court to utilize in resolving those motions. See Doc. Nos. 342-346, 348-354. As amply demonstrated, the defendant's motions to suppress lack merit and they should be denied.

The United States files the instant Omnibus Surreply to address arguments raised by defendant Robert Bowers in his replies.

## II. THE DEFENDANT'S BELATED ASSERTIONS REGARDING STANDING DO NOT ENTITLE HIM TO EVIDENTIARY HEARINGS

In his replies, the defendant rationalizes his failure to assert or establish standing by arguing that he did not anticipate that the government would point out this omission and that his standing

was self-evident from discovery provided and/or the government's pleadings. But, as the defendant concedes, the law on standing is well-established and the defendant has the burden of asserting and establishing standing. United States v. Stearn, 597 F.3d. 540, 551-53 (3d Cir. 2010) (defendant has burden of demonstrating standing, a "black-letter precept[] of Fourth Amendment law"). Moreover, the defendant may not simply rely on the government's pleadings or its intention to link a location to the defendant; instead, he must at least identify specific evidence in the record to establish standing. See, e.g., United States v. Gatson, 744 F. App'x 97, 100 (3d Cir. 2018), cert. denied, 140 S. Ct. 124 (2019); United States v. Watson, 404 F.3d 163, 166–67 (2d Cir. 2005); United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995).

While the government did not (and does not) argue that defendant Bowers cannot establish standing with respect to certain of his motions, the government accurately explained that the defendant had failed to meet this basic requirement and that the defendant's standing cannot simply be assumed. United States v. Padilla, 508 U.S. 77, 81 (1993) (citation omitted) (emphasis in original) (defendant may invoke the exclusionary rule "only if [he] demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure."); Minnesota v. Olson, 495 U.S. 91, 95–97 (1990) (burden is upon defendant to establish that he had a reasonable expectation of privacy in the property searched and the item seized.); United States v. Correa, 653 F.3d 187, 190 (3d. Cir 2011) ("[t]he proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated.").

The government submitted detailed responses addressing the legal standards pertaining to each of the defendant's motions, including standing. As clarified in those responses, a defendant is not entitled to an evidentiary hearing on a pretrial motion in a criminal case unless he meets his

"burden of establishing that a hearing is necessary," and that he has "stated a colorable claim." United States v. Solomon, No. 02:05-CR-385, 2007 WL 927960, at *1 (W.D. Pa. March 26, 2007).

An evidentiary hearing is not necessary or warranted to resolve the vast majority of defendant Bowers's 15 suppression motions, most of which require the Court to confine its review to the "four corners" of the warrant affidavit. United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993); United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000). See United States Responses in Opposition, Doc. Nos. 351 (residence, P.O. Box, and vehicle, Motion to Suppress Nos. 1 and 2); 352 (2703(d) orders, Motion to Suppress Nos. 3, 10, and 11); 353 (Target Device, Motion to Suppress No. 4), 345 (social media account, Motion to Suppress No. 5); 354 (historical cell site, Motion to Suppress No. 6); 346 (internet service provider account, Motion to Suppress No. 7); 342 (gun shot residue, Motion to Suppress No. 8); 350 (internet service provider, Motion to Suppress No. 12); 348 (geolocation, Motion to Suppress No.13); 349 (CDL medical forms, Motion to Suppress No. 14); 343 (vehicle location data, Motion to Suppress No. 15).

In his replies, the defendant has now asserted standing as to each of his motions and contends that these new assertions create factual disputes that warrant a hearing. The defendant is wrong.[1] The government's pleadings did not rest solely on the defendant's failure to assert standing, but also carefully addressed the merits of each motion and explained why each fails as a

---

[1] In his attempt to portray the ALPR technology (Motion to Suppress No. 15) as "intrusive" or "involved," defendant Bowers unremarkably points out that ALPR can capture an image of a vehicle's exterior ("a vehicle's make, model, and color," Doc. No. 384 at 2) as it passes the camera's fixed location ("location within meters, the time of day," id.). Although Bowers tries to raise the specter of continuous, all-encompassing surveillance by suggesting that the technology "potentially captures over four-and-a-half months of location and movement data," id., he does not dispute that the information captured is not continuous but rather is limited to whenever a vehicle happens to pass a particular fixed ALPR camera location.

The defendant's characterization of ALPR does not alter the basic, undisputed fact that the technology captures what is viewable to the naked eye. ALPR cameras cannot track the movement of vehicles beyond their fixed locations, and they certainly cannot "faithfully follow[]" individuals "beyond public thoroughfares and into private residences." Carpenter v. United States, 138 S. Ct. 2206, 2218 (2018). Even accepting the defendant's additional factual assertions about ALPR as true, the technology does not offer the "all-encompassing" "near perfect surveillance" provided by the cell site location information at issue in Carpenter. Id. at 2217-18

matter of law. Accordingly, even if this Court were to presume the defendant's standing, the motions still should be denied for the reasons articulated in each of the government's responses (e.g., probable cause and good faith). This Court may dispose of the motions on the merits and need only address the issue of standing in the unlikely event that the Court were to resolve those issues in favor of suppression. See Stearn, 597 F.3d at 553 (government suggestion that Court address other issues prior to standing "reflected its belief that the Court would not need to reach the 'standing' issue because it would resolve the … issues in the Government's favor. When this did not happen, the Court was obligated to address the 'standing' issue anew."); United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (finding that good faith exception applies and thus "We [] need not reach the issue of whether [defendants] have standing to challenge the agents' conduct because, even assuming so, the outcome—admission of the evidence at trial—would remain unchanged").

The United States does acknowledge that the defendant may be entitled to an evidentiary hearing on his motion to suppress statements, Motion to Suppress No. 9 (Doc. No. 296). The government also concurs that defendant has asserted adequate standing in his motion to suppress cell site location records, Motion to Suppress No. 6 (Doc. No. 293). Both telephone numbers at issue were registered in the name of the defendant and the address provided by the subscriber corresponds to one affiliated with the defendant. Accordingly, the numbers were not held anonymously and, in his reply, the defendant has asserted adequate standing as to Motion to Suppress No. 6 (Doc. No. 293). In its response, Doc. No. 354, the government inadvertently overlooked the connection between Ting and T-Mobile when analyzing the main and backup numbers at issue in the defendant's motion to suppress evidence of historical cite location information (Motion to Suppress No. 6).

## III. THE COURT SHOULD REJECT BOWERS'S LEGALLY UNSUPPORTED HEIGHTENED PROBABLE CAUSE REQUIREMENTS

In his reply briefs, defendant Bowers endeavors to supplant well-established, legally-supported probable cause requirements with his own. First, the defendant makes much of his argument that an "affidavit must establish a nexus between the items sought" and the criminal activity or the places to be searched, challenging "nexus" for almost every category of items seized. See, e.g., Doc. Nos. 377 at 2, passim; 380 at 3; 381 at 2; 382 at 3 (citing Stearn, 597 F.3d at 560). Although Bowers does not define the term, the nature of his argument suggests that the "nexus" he envisions requires that the affidavit spell out every inference and explicitly describe a direct link between the criminal activity and a specific item of evidence in a precise location, to the exclusion of other types of evidence or other possible locations. See, e.g., Doc. Nos. 377 at 5-6 (seeking to require affidavit to specify cell phone, as opposed to another device, and platform for Bowers's anti-Semitic internet posts); 380 at 3 (seeking to require affidavit to assert that Bowers posted anti-Semitic statements using specific cell phone or account).

This is definitively not what the law requires. In United States v. Stearn, the only case Bowers cites to support his "nexus" argument, the Third Circuit reiterated the longstanding rule that a magistrate's probable cause determination involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place."[2] 597 F.3d at 554 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). The Third Circuit expressly eschewed any

[2] Stearn discussed the link between items sought and a location to be searched, rejecting the district court's restrictive "assessment of what constitutes a nexus sufficient to justify a search" and its attempt to limit the normal inferences available to a magistrate judge. 597 F.3d at 558, 560. The decision did not impose a "nexus" requirement between items sought and the criminal activity investigated. Rather, it repeated the enduring principle that probable cause is a fact-based "assessment of probabilities" about where contraband or evidence of a crime might be. Id. at 554; Gates, 462 U.S. at 232. Bowers's suggestion that an affidavit must establish a heightened, direct connection between the evidence sought and the criminal conduct is therefore without any legal underpinning.

requirement that direct evidence link the crime with the place to be searched, Stearn, 597 at 554, and further made clear that a magistrate may infer probable cause to search a location even if the contraband or evidence could be found elsewhere, id. at 560 (rejecting district court's assumption that magistrate may not infer probable cause to search drug dealer's residence if dealer had any other place to hide contraband). Instead, Stearn stated that the "starting point" for "what constitutes a nexus sufficient to justify a search" is that a magistrate "may infer probable cause from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide evidence." Id. at 558 (citations and quotations omitted); see also id. at 559-60 (considering non-exhaustive factors such as "conclusions of experienced officers 'regarding where evidence of a crime is likely to be found,'" and "the proximity of the defendant's residence to the location of criminal activity," to uphold the magistrate's probable cause determination).

The Third Circuit has made absolutely clear that this connection, or "nexus," may be determined by inference. In United States v. Jones, the Third Circuit held that probable cause – including the connection between the crime and the place to be searched – could be inferred from the type of crime or items sought, the opportunity for concealment, and other "normal inferences" about where the evidence might be. 994 F.2d at 1056 (citing cases). Acknowledging that "most of the information in the affidavit served to link the defendants to the crime in general," the court found that inferences from other facts in the affidavit "provided a sufficient link" for the warrants to issue. Id.; see also id. at 1057 (considering inferences drawn from defendants' opportunity to hide contraband, proximity of defendants' home to crime scene, type of evidence sought, and existence of probable cause to arrest defendants, among other things).

Subsequent Third Circuit and district court decisions have similarly relied on inferences drawn from the facts in a warrant affidavit to reject defense arguments, like those made here, about the affidavit's failure to establish a "nexus." See United States v. Hodge, 246 F.3d 301, 306-07 (3d Cir. 2001) (rejecting defendant's nexus argument and instead considering, inter alia, inferences from existence of probable cause to arrest defendant and police officer's belief that defendant's home would contain evidence); Whitner, 219 F.3d at 299 (rejecting nexus argument where inferences from affidavit, assessed "as a whole, in a commonsense manner," supported magistrate's probable cause finding); United States v. Golden, No. CR 19-545, 2020 WL 2848183, at *3 (E.D. Pa. June 2, 2020) (rejecting nexus argument where facts in affidavit provided substantial basis to infer probable cause from "suspect's opportunity for concealment and normal inferences about where a suspect might hide the fruits of his crime"); United States v. Harris, 884 F. Supp. 2d 383, 394 (W.D. Pa. 2012) (direct evidence not required for "nexus" between criminal activity and place to be searched, which was established via "several reasonable inferences from the facts"). Ultimately, these courts have recognized that, even where an affiant "might have been able to supply the magistrate judge with a stronger link to the [place to be searched], the fact remains that he did bring the evidence to a magistrate judge, who determined that there was probable cause to issue the warrants." Whitner, 219 F.3d at 299 (quoting Jones, 994 F.2d at 1057). As the Third Circuit has reminded, "a grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Id. (quotations and citations omitted).

Bowers seeks to super-impose another novel requirement when he focuses on the affidavits' assertion that the defendant made numerous anti-Semitic internet posts, claiming that "the law requires the affiant to attest to the source of [this] information" in order for it to provide

any support for the probable cause finding. Doc. No. 377 at 3. Yet again, Bowers's argument has no basis in the law. The single case he cites in support of this claim, Giordenello v. United States, establishes no such requirement. In Giordenello, the Supreme Court considered an arrest warrant affidavit that summarily asserted: "That on or about January 26, 1956, at Houston, Texas in the Southern District of Texas, Veto Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation; in violation of Section 174, Title 21, United States Code. And the complainant further states that he believes that _ _ _ _ are material witnesses in relation to this charge." 357 U.S. 480, 481 (1958). Noting that a magistrate "should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime," the Court found this bare recitation of essential elements insufficient to sustain the warrant because it did "not provide any basis for" the probable cause determination. Id. at 486 (emphasis added). The Court explained that the warrant affidavit had come up short by not alleging the affiant's personal knowledge, "indicat[ing] any sources for the complainant's belief," and "set[ting] forth any other sufficient basis upon which a finding of probable cause could be made." Id. (emphasis added). But the Giordenello Court nowhere held that an affidavit must individually source each factual assertion in order for that assertion to stand.

As the United States detailed in its opposition to the defendant's motions, the search warrant affidavits in question provide a substantial basis for the magistrate to credit their assertions and to find probable cause. The affidavits lay out far more than the elements of the crime under investigation. They source to "information provided by witnesses," to observations by law enforcement officers, to the affiant's own investigation, and to the affiant's training and experience. See, e.g., Doc. Nos. 288, Exh. I; 289, Exhs. A and B; 291, Exh. B; 294, Exh. B. And the information they contain is roundly corroborated. See, e.g., Doc. No. 351 at 19-20 (assertion

that Bowers made numerous anti-Semitic internet posts is corroborated by his similarly anti-Semitic statements to law enforcement and his clear expression of anti-Semitic animus in choosing to attack Jewish victims engaged in religious worship at a synagogue); cf. United States v. Williams, 3 F.3d 69, 73 (3d Cir. 1993) (magistrate could find informant's assertions credible based on corroboration, apparent disinterest of informant, and absence of suggestion of unreliability). Because the affidavits' assertions contain no suggestion of unreliability, the magistrate could, and did, reasonably credit them in making his probable cause determinations.

Although the defendant may wish it otherwise, a magistrate need not demand direct evidence, conclusive proof, or individual sourcing of each assertion in an affidavit to find probable cause. Rather, a warrant affidavit must simply lay out circumstances establishing "a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. In this case, the issuing magistrate made the "practical, common-sense decision" that the challenged affidavits did just that. Id. That another court – or the defendant – may have found otherwise is immaterial; these findings "are entitled to a great deal of deference" and should be left to stand. United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005); United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993); Stearn, 597 F.3d at 554.

## IV. THE GOOD FAITH EXCEPTION APPLIES TO VALIDLY AUTHORIZED WARRANTS

Defendant Bowers's seriatim assertions that the good faith exception to the exclusionary rule does not apply to any of the search warrants that were properly obtained, signed, and authorized by a magistrate judge misapprehend the law and implausibly strain credible legal and factual analysis. See Doc. Nos. 377-386. The defendant's arguments completely disregard the judicial principle that suppression "has always been our last resort, not our first impulse." Hudson v. Michigan, 547 U.S. 586, 591 (2006).

"The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting United States v. Leon, 468 U.S. 897, 922 n.23 (1984)). "'[A] warrant issued by a magistrate judge normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" Leon, 468 U.S. at 922 (quoting United States v. Ross, 456 U.S. 798, 823 n.32 (1982)); United States v. Zimmerman, 277 F.3d 426, 436 (3d. Cir. 2002). "In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination. Leon, 468 U.S. at 921; Williams, 3 F.3d at 74. The Supreme Court refused "to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984). Even if any of the warrant affidavits "presented a close call," then "once the magistrate judge made that call, it was objectively reasonable for the officers to rely on it." Hodge, 246 F.3d at 309. "[P]enalizing the officer for the magistrate's error, rather than his own, cannot logistically contribute to the deterrence of Fourth Amendment violations." Leon, 468 U.S. at 921; Sheppard, 468 U.S. at 990-91; Illinois v. Krull, 480 U.S. 340, 349-50 (1987). In Davis v. United States, the Supreme Court observed that "in 27 years of practice under Leon's good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct," 564 U.S. 229, 238-40 (2011) (also noting that deterrent value is strong only when police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights).

Here, a magistrate judge issued a valid warrant that underpinned every search that was executed. Bowers, however, incredibly contends that every single affidavit was "so lacking in

indicia of probable cause as to render official belief in its existence entirely unreasonable." Doc. Nos. 377-386. By its very breadth, such an assertion defies the careful, "fact-specific analysis" and weighing of the "costs and benefits of exclusion" required by the Third Circuit. United States v. Franz, 772 F.3d 134, 145-46 (3d Cir. 2014). As this Court can ascertain through its four-corners review, the defendant strains all credibility by alleging that the warrants authorized by a magistrate here are so "bare bones" and conclusory that no reasonable FBI agents, as a matter of law, could have relied upon them.

The defendant liberally cites United States v. Williams in support of his argument that good faith should not apply here because the affidavits purportedly contain "mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient," 3 F.3d at 74. Despite its colorful language, the case utterly fails to support his argument. In Williams, confronted with a succinct affidavit in support of searches of motel rooms for evidence of drug trafficking, the Third Circuit determined that the affidavit contained sufficient probable cause and found the officers' reliance upon the warrant to be objectively reasonable under Leon. 3 F.3d at 73-74. In so doing, the Court generously and flexibly applied permissive inferences in its analysis of the affidavit. For example, the Third Circuit determined that a common sense reading of the affidavit suggested that the referenced informant was the motel housekeeper. Id. at 72 ("While it is conceivable to us that the informant was someone other than the housekeeper as the district court speculated, we do not think such a conclusion flows from a common sense reading of the affidavit."). Assessing the other facts in support of the warrant, the Court similarly construed the facts to find probable cause:

> We agree with the district court that innocuous explanations could exist for each of these phenomena in isolation. Moreover, we acknowledge that even taken in combination, they do not prove beyond doubt that the occupants were guilty of a crime. The magistrate was entitled to infer, however, that the occupants probably

> were engaged in illegal activity, that the illegal activity probably involved drug trafficking, and that, more likely than not, a search of the rooms would reveal drugs, drug paraphernalia, illegally generated cash, and/or weapons.

Id. at 73. This careful review is precisely the fact-specific, pragmatic, and methodical analysis envisioned by the Supreme Court in Leon and its progeny.

In his replies, Bowers also erroneously asserts that "[t]he government bears the burden of establishing good faith," misconstruing an unpublished district court decision, United States v. Rodriguez, Cr. No. 13-619-6, 2014 WL 4413606, at *4 (E.D. Pa. Sept. 8, 2014) (citing Leon, 468 U.S. at 924). Doc. Nos. 377-386. To the contrary, the government does not have a "burden" of showing good faith. The good faith analysis is objective; an officer's subjective good or bad faith is immaterial. Leon confirms that courts are to "eschew inquiries into the subjective beliefs of law enforcement officers" because "'sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources.'" 468 U.S. at 922 n.23 (citing Massachusetts v. Painten, 389 U.S. 560, 565 (1968) (White, J., dissenting)); United States v. Correa, No. 11-CR-750, 2015 WL 300463, at *5 (N.D. Ill., Jan. 21, 2015).

Further, in Herring v. United States, the Supreme Court reiterated that the "pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers." 555 U.S. 135, 145 (2009) (internal quotation marks and citations omitted). The Court has thus confined the good-faith inquiry to the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." Id. (quoting Leon, 468 U.S. at 922 n.23) (internal quotation marks omitted). These are determinations that this Court can readily make based upon its four-corners review of the

search warrants in question. Although the defendant may urge otherwise, the United States need not produce additional evidence in support of the good faith exception to the exclusionary rule.[3]

The search warrants in this case were supported by affidavits with detailed, developed facts given the dynamic and rapidly evolving investigative response to the defendant's mass killings of Jewish congregants at the Tree of Life Synagogue. Here, the bulk of the search warrants were authorized by the magistrate contemporaneously or in close proximity to the filing of a criminal complaint against defendant Bowers for his commission of multiple violations of 18 U.S.C. §§ 247 and 924(c), predicated upon an investigation of Bowers's conduct for violating those statutes as well as 18 U.S.C. § 249. Given the overwhelming evidence presented, the magistrate judge readily determined that Bowers had committed multiple, lethal, targeted, federal crimes and that evidence of defendant Bowers's crimes likely would be found in his home, in his car, on his electronic devices, and in his online accounts.

[3] As with standing, there is no need at this juncture for the Court to hold an evidentiary hearing to address the government's alternative arguments based on the doctrines of Inevitable Discovery and/or Independent Source. Those arguments should be considered only in the unlikely event that the Court were to resolve the issues of probable cause and good faith in favor of suppression.

## V. CONCLUSION

For the reasons explained above, as well as those set forth in the government's previously-filed comprehensive responses in opposition, the defendant's motions to suppress evidence should be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By: s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Julia Gegenheimer
JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475