# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) CR 18-292 |
| | ) |
| ROBERT BOWERS | ) |
| | ) |

## SEALED OPINION AND ORDER

## SYNOPSIS

Defendant has filed a Motion to Suppress Evidence Seized During Searches of Target Residence, Target P.O. Box, and Target Vehicle (Motion to Suppress No. 1). [288 (Redacted Motion), 303 (Sealed Motion), 408 (Sealed Exhibits to Motion)].  The Government has responded, Defendant has filed a reply, and the Government has filed a sur-reply. [351 (Redacted Response), 364 (Sealed Response), 377 (Redacted Reply), 387 (Sealed Reply), 401 (Sur-reply)]. Defendant contends that the affidavits submitted in support of the pertinent search warrants failed to establish probable cause, that the warrants lacked the requisite particularity, and that searches were conducted after the warrants expired.

In addition, Defendant has filed a Motion to Suppress Evidence Seized During the Second and Third Searches of the Target Residence (Motion to Suppress No. 2). [289 (Redacted Motion), 317, 394 (Sealed Motions).[1] The Government has responded, Defendant has replied, and the Government has filed a sur-reply. [352 (Redacted Response), 364 (Sealed Response), 377 (Redacted Reply), 387 (Sealed Reply), 401 (Sur-reply)]. In Defendant's Motion, he contends that the Affidavits in support of the second and third searches of the Target Residence were based on the fruits of the illegal first warrant.

---

[1] Docket Nos. 317 and 394 are duplicate filings.

1

For the following reasons, Defendant's Motions will be denied.[2]

## OPINION

### I. MOTION TO SUPPRESS NO. 1

#### a. PROBABLE CAUSE[3]

Defendant argues that the affidavit filed in support of the first warrant to search the Target Residence [408, Ex. I (Affidavit)] failed to establish the required nexus between the certain items the Government sought to seize and criminal activity or the Target Residence.[4] In particular, Defendant challenges the nexus between criminal activity and electronic devices such as computers, laptops, and cell phones, communications, cell phone records, social media accounts, communications, and indicia of residency. Separately, he also challenges the nexus between the Target Residence and "[a]ny and all evidence of motive related to race and religion, including but not limited to writings, literature, communications, objects, and paraphernalia indicating hatred, bias, or prejudice based upon race and/or religion"; firearms, ammunition, firearms related paraphernalia, and evidence related to firearms purchase or use; and any

---

[2] A hearing is required on a suppression motion if it raises issues of fact material to the resolution of the defendant's constitutional challenge. United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010). The defense bears the burden of demonstrating entitlement to a hearing. United States v. Stevenson, No. 16-189, 2019 U.S. Dist. LEXIS 172592, at *4 (W.D. Pa. Oct. 4, 2019). For the reasons stated in the body of the Opinion, no hearing is required on the Motions at bar.

[3] The Government asserts that Defendant lacks standing to challenge the searches of the Target Residence and Target Vehicle. The Government relies on United States v. Gatson, 744 F. App'x 97, 100 (3d Cir. 2018), in which the lone fact that the Government "attributed" a cell phone to defendant was insufficient to establish defendant's expectation of privacy in the cell phone. It also cites to United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995), in which the allegations in a complaint, along with the Government's position that defendant leased and operated a "stash house" at the searched residence, were insufficient when defendant did not reside at the residence. In this case, which clearly differs from Gatson, Defendant has not disputed the pertinent averments. If necessary, Defendant requests a hearing to establish standing. The Government, however, insists that no hearing is warranted. Under the circumstances and for present purposes, the Court will assume without deciding that Defendant has standing to challenge the subject searches and proceed to adjudicate the substance of his Motions.

[4] Defendant also challenges the second and third warrants to search the Target Residence, averring that they relied on evidence impermissibly seized during the first search. Those arguments are addressed infra in the body of the Opinion, in connection with Motion to Suppress No. 2.

2

evidence of reconnaissance or research of the Tree of Life or any other synagogues, social media accounts, and receipts of purchase.

The existence of probable cause is to be assessed through "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], …there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). A court does not conduct a de novo determination of probable cause, but determines whether a "substantial basis" existed for the magistrate's finding. United States v. Carney, No. 06-350, 2007 U.S. Dist. LEXIS 46640, at *20 (W.D. Pa. June 27, 2007). In this context, "[a] court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Hodge, 246 F.3d 301, 305-06 (3d Cir. 2001). The Court's review rests on the affidavit of probable cause placed before the magistrate. United States v. Zimmerman, 277 F.3d 426, 431, n.3 (3d Cir. 2002).

In addition, the inquiry rests on the totality of the circumstances; each piece of information in an affidavit is not assessed in isolation. See Gates, 462 U.S. at 230-31. Accordingly, our Court of Appeals has cautioned against "'overly compartmentaliz[ing]' the determination of probable cause." United States v. Yusuf, 461 F.3d 374, 390 (3d Cir. 2006). Instead, the Court must "consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." Id. "The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Hodge, 246 F.3d at 305. A reviewing Court is to "give great deference to the magistrate judge's probable cause determination." Id. at 305.

As Defendant argues, probable cause requires some connection between the place to be searched, the suspected criminal activity, and the items to be seized. This "nexus" is an expression of the requirement that there must be cause to believe that evidence of an offense will be found at the place to be searched. Cf. United States v. Tsarnaev, 53 F. Supp. 3d 450, 462 (D. Mass. 2014). Consistent with the applicable common-sense inquiry, direct evidence linking the place to be searched with criminal activity is not required to establish probable cause to search. United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002).[5] Further, specifically with respect to a residence, probable cause to believe someone committed a crime increases the possibility that his residence contains evidence of the crime. United States v. Jones, 994 F.2d 1051, 1055-56 (3d Cir. 1993). Likewise, inferences alone may establish a sufficient nexus between the items to be seized and the place to be searched. United States v. Slotcavage, No. 97-00225-01 & 02, 1997 U.S. Dist. LEXIS 10798, at *11-12 (E.D. Pa. July 16, 1997). As our Court of Appeals has stated:

> [P]robable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested. … probable cause "can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about [pertinent conduct].'

Burton, 288 F.3d at 103.

Consistent with these principles, courts have warned against a hypertechnical approach in this context. Therefore, "probable cause does not require that each factual allegation which the affiant puts forth must be independently documented." Jaben v. United States, 381 U.S. 214, 224-25 (1965). Otherwise stated, each fact set forth does not have to be attributed to a particular

---

[5] Defendant points to United States v. Rowland, 145 F. 3d 1194 (3d Cir. 1988), which involved an anticipatory warrant, contingent on the occurrence of a triggering event, and involved a controlled delivery. The Court considered principles applicable to that situation, such as the principle that "when a controlled delivery is not made to the place to be searched, such as when a defendant is required to pick up a package containing contraband at a post office, the warrant application must present additional facts establishing the contraband will be taken to the place designated for search." Id. at 1203. The case at bar involves neither a controlled delivery nor an anticipatory warrant, and Rowland does not govern here.

source.  United States v. Piquet, 372 F. App'x 42, 45 (11th Cir. 2010).  Similarly, the police are "not required to track the details of how they become acquainted with widely known facts."[6] United States v. Berland, 1979 U.S. Dist. LEXIS 12983, at *29 (S.D.N.Y. Apr. 18, 1979).  In addition, an affidavit need not negate every possible argument against the probability that particular evidence will be found in a particular place.  Slotcavage, 1997 U.S. Dist. LEXIS 10798 at *13.  The Supreme Court has observed that "[i]n dealing with probable cause…we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 462 U.S. at 230-31.  For these reasons, probable cause is a fluid concept that turns on the particular factual context at hand.  Id. at 232.

In this case, the subject Affidavit was sworn and subscribed before Magistrate Judge Mitchell on October 27, 2018.  It states that it is based, in part, on information provided by witnesses and the Affiant's investigation. [408, Ex. I, ¶6]. The Affidavit states that Defendant entered the Tree of Life Synagogue, armed with multiple weapons, on October 27, 2018 at 9:50 AM.  Id. at ¶¶ 8, 9.  There, he shot and killed eleven individuals, and wounded others, including law enforcement officers. Id. at ¶¶ 10, 14.  The Affidavit further states that Defendant "has made numerous anti-Semitic statements on internet posts, indicating the individual has access to the internet and/or internet capable devices."  ¶ 13.  It avers that Defendant made audible statements regarding genocide, a desire to kill Jewish people, and that Jewish people needed to die; he stated to a law enforcement officer, "I just want to kill Jews."  Id. at ¶ 12.

---

[6] As an aside, the Court notes that Defendant's social media posts were widely reported in the national media on October 27, 2018, the date of the alleged crime and the date appearing on the Affidavit. See, e.g., https://www.theatlantic.com/technology/archive/2018/10/what-gab/574186/; https://apnews.com/article/b1c50ba4f0964df89a266e490aea6961 (accessed Feb. 12, 2021).  .

The Affidavit further states that "[e]arly indications through the investigation are that [Defendant] engaged in planning and premeditation prior to executing the killings." Id. at ¶ 20. "Based upon your affiant's training and experience, [Defendant] very likely has evidence related to these offense [sic] at his home and in his storage unit…." Id. at ¶ 20. Law enforcement confirmed with the landlord that Defendant lived at the Target Residence, and that he had a locked storage facility on the curtilage of the property. Id. at ¶17. ATF confirmed that firearms recovered at the scene had traveled through interstate commerce to the Commonwealth of Pennsylvania, at some point after manufacture. Id. at ¶ 19. Records indicated that Defendant had at least fourteen weapons registered in his name. Id. at ¶16. In addition to the weapons carried into the synagogue, law enforcement observed a shotgun in Defendant's vehicle; the FBI confirmed that the vehicle was registered to Defendant. Id. at ¶15. Further, the Affidavit details, based on the affiant's knowledge, training, and experience, information regarding the storage and recovery of electronic media and forensic electronic evidence. Id. at ¶¶ 23-26.

As listed in identical language contained in both Attachments A and B to the Affidavit [303, Ex. 1; 408, Ex. C], the agents sought the following items from the Target Residence and the Target Vehicle:

> Any and all evidence of motive related to race and religion, including but not limited to writings, literature, communications, objects, and paraphernalia indicating hatred, bias, or prejudice based upon race and/or religion, as well as any firearms, electronic devices, including but not limited to computers, laptops, cell phones, ammunition, firearms related paraphernalia, communications, evidence related to firearms purchase or use, cell phone records (phone at scene), social media accounts, indicia of residency, receipts of purchase, any evidence of reconnaissance or research of the Tree of Life or any other synagogues.

The Court agrees with the Government's assessment that the Affidavit reasonably gives rise to inferences that, for example, Defendant engaged in a planned shooting incident, involving

multiple firearms, motivated by anti-Semitic views that were posted online prior to the attack and stated verbally during the course of the attack. It would be eminently reasonable to conclude that the sources of the information in the Affidavit were those identified in the Affidavit – i.e., witnesses and the affiant's investigation, experience, and knowledge. Defendant alleges no misrepresentation, and there is no suggestion that any information came from a confidential informant or anonymous tipster.[7] The Attachments to the Affidavit tie the items sought to motive related to race and religion, which is part and parcel of the criminal activity at issue.[8] Taken together, the nature of the suspected criminal activity, the nature of the items sought, the entirety of the Affidavit, and reasonable inferences that could be drawn therefrom provided the requisite nexus between the items sought and criminal activity, and between the items sought and the places to be searched. Defendant's arguments – such as the lack of evidence that Defendant drove his car to the synagogue directly from his residence, or the lack of other direct, explicit connections – impose demands over and above those imposed by applicable standards. The totality of the Affidavit supplied adequate bases for finding the requisite "fair probability," and thus for Magistrate Judge Mitchell's findings of probable cause.

### b. PARTICULARITY

Next, Defendant contends that the warrants issued on October 27, 2018, for the search of the Target Residence and Target Vehicle, are impermissible general warrants, because they lack

---

[7] As one Court found, "[The agent] stated at the outset that the affidavit was based on personal observation, information from other agents involved in the investigation, and his review of investigation-related documents. That is all that was required." Piquet, 372 F. App'x at 48.

[8] For example, 18 U.S.C. § 247 applies to one who "intentionally obstructs, by force or threat of force, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so…" and 18 U.S.C. §249(a)(1) applies to one who causes or attempts to cause bodily injury "because of the actual or perceived race, color, religion, or national origin of any person." While the Paragraph in the Attachments could have been more clearly stated, it is reasonable to interpret the phrase "as well as" as augmenting the listed items specified in the phrase "including but not limited to" those indicating motive or prejudice.

7

the required particularity.[9] He raises similar challenges to the warrant to search the Target Residence ("second Target Residence warrant"), issued on October 28, 2018, and the warrant to search the Target Residence issued on November 11, 2018 ("third Target Residence Warrant"). In particular, Defendant objects that the warrants did not tie the approved searches and seizures to any particular crime or criminal behavior.

As Defendant submits, the Fourth Amendment requires that a search warrant be sufficiently particular. The warrant's description must be such that "the officer with a search warrant can with reasonable effort ascertain and identify the place intended…The standard . . . is one of practical accuracy rather than technical nicety." United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975). A warrant that lacks particularity -- one that "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence" – is subject to invalidation as a general warrant. United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982). In that regard, the particularity requirement is an expression of the prohibition against general warrants. Particularity must be assessed by reference to the contents of the warrant alone. United States v. Wecht, 619 F. Supp. 2d 213, 228 (W.D. Pa. 2009).

To meet particularity standards, a warrant need not specify the crime under investigation. United States v. Kofsky, No. 06-392, 2007 U.S. Dist. LEXIS 64161, at *44 (E.D. Pa. Aug. 28, 2007). Likewise, the failure to incorporate an affidavit in a warrant is not fatal if the warrant is otherwise sufficiently particular. Cf. Yusuf, 461 F.3d at 394. Moreover, it is relevant whether

---

[9] As argued here, generality or lack of particularity differs from overbreadth. Lack of particularity refers to ambiguity, while an overbroad warrant is overinclusive in that it describes what is to be seized, but authorizes the seizure of items for which probable cause is absent. Yusuf, 461 F. 3d at 39 n. 19; Wecht, 619 F. Supp. at 233. The Motion at bar does not address overbreadth; nor shall I. To the extent that Defendant contends the warrant is overbroad due to its failure to tie the items sought to criminal behavior, I reject that contention for the reasons stated in the body of the Opinion.

8

the warrant was as specific as possible under the circumstances, or instead whether the Government possessed information, omitted from the warrant, that would have allowed greater specificity.  See United States v. American Investors of Pittsburgh, 879 F.2d 1087, 1105-06 (3d Cir. 1989).  "Sometimes only generic description is possible, such as when law enforcement agents, while having probable cause to believe that evidence of a crime will be found in a particular place, simply lack information about what specific form that evidence will take."  United States v. Tsarnaev, 53 F. Supp. 3d 450, 457 (D. Mass. 2014).  Moreover, the search for motive evidence is a legitimate purpose for a search warrant.  United States v. Scovens, 2005 U.S. Dist. LEXIS 42565, at *5 (D. Md. June 14, 2005).

Here, the warrant that Judge Mitchell issued on October 27, 2018 included the reference, "SEE ATTACHMENT B, incorporated herein."  [303, Ex. 1] ("first Target Residence warrant"). The warrant issued for the Target Vehicle on the same date included the reference, "SEE ATTACHMENT A, incorporated herein."  [408, Ex. C] ("Target Vehicle warrant"). Attachments A and B both specified the premises to be searched, as well as the evidence to be seized:  "any and all evidence of motive related to race and religion, including but not limited to" items such as writings, literature, electronic devices, and "cell phone records (phone at scene)." [303, Ex. 1, ¶ II.1; 408, Ex. C, ¶ II.1]. For any computer, laptops, cell phones or storage medium "whose seizure is otherwise authorized by this warrant," the Attachments further specify, "[a]ny and all motive related to race and religion." [303, Ex. 1, ¶ II.2; 408, Ex. C, ¶ II.2].

The second Target Residence warrant, issued on October 28, 2018, incorporated by reference Attachment A, which authorized the seizure of "Any and all evidence of indicia of bomb-making materials and/or explosives, including but not limited to precursor chemicals, powders, electrical wires, and ball bearings…" [408, Ex. J, ¶ 2].  The third Target Residence

9

warrant, issued on November 2, 2018, incorporated by reference Attachment A, which authorized the search of a range of electronic devices, for evidence including evidence of motive related to race and religion, evidence related to use, control, and ownership, and evidence of counter-forensic programs. [408, Ex. K, ¶II] ("third Target Residence warrant").

Contrary to Defendant's characterization, the warrants did not afford executing agents unbridled or unfettered discretion to rummage. Attachments A and B, incorporated into the first Target Residence warrant and Target Vehicle warrant, limit permission to listed items and by reference to specific motive; the motive, in turn, is part of the specific crimes at issue. The third Target Residence warrant contained a similar limitation, and the second Target Residence warrant referred specifically to evidence of bomb-making and explosives. The warrants thus distinguished the specified items from the multitude of items unrelated to defined criminal behavior; they did not authorize a wholesale, exploratory rummaging.[10] There is no suggestion, by Defendant or otherwise in the record, that the circumstances allowed greater specificity or particularity.[11] Thus, applying all the principles discussed supra, the warrants are not impermissible "general warrants," and Defendant's argument will be rejected.

---

[10] In Wecht, the Court noted that courts have upheld the generic seizure of electronic equipment when the equipment is being used as an instrumentality of crime – such as with child pornography. Wecht, 619 F. Supp. 2d. at 247. Courts have subsequently found that a warrant was sufficiently particular when it listed devices, along with probable cause that evidence of unlawful communications could have taken place on the listed devices. United States v. Karrer, No. 08-236, 2010 U.S. Dist. LEXIS 100430, at *23 (W.D. Pa. Sep. 23, 2010). As Wecht recognized, there is no way for investigating officers to know which electronic device will contain contraband; it may be reasonable for them to seize any that may contain the contraband. Wecht, 619 F. Supp. 2d 213 at 247. While Wecht discussed contraband different from the motive evidence at issue here, such as pornography on a computer, these principles remain instructive.

[11] The present case differs from United States v. Wecht, 619 F. Supp. 2d 213 (W.D. Pa. 2009), to which Defendant cites. Defendant specifically discusses the warrant, in Wecht, that authorized the seizure of boxes from defendant's private office. In Wecht, the government wanted to seize only particular boxes that had been moved from a county office to defendant's private office, but the warrant failed to so specify. Id. at 229. "[T]he Government was possessed of information which, had it been incorporated into the warrant, would have substantially clarified the description of items to be seized so as to focus the executing officers' attention on the actual target of the search." Id. at 231. Descriptive, limiting information was included in the warrant affidavit, but not the warrant itself. Id. at 230. The case at bar differs from Wecht, as there is no suggestion here that the Affidavit contained limiting information that could have been included in the warrant.

10

### c. TIMING

Defendant contends that agents seized a Garmin GPS unit during the Target Vehicle search, and seized various computers and electronic records during the Target Residence search. Defendant does not contend that agents seized this evidence after the warrants' expiration, but asserts that agents illegally searched the evidence after the warrants expired. Defendant does not identify when the allegedly illegal searches took place.

As the Government states, Fed. R. Crim P. 41(e)(2)(B), relating to electronically stored information, specifically contemplates later, off-site review outside of the time for executing the warrant:

> Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

The Court notes that once agents obtained the evidence, there was no danger that probable cause would dissipate as to its contents; in addition, there is no suggestion here that agents unreasonably delayed their search, or that the electronic evidence at issue changed after the items were seized.[12] Defendant's arguments are rejected.

### d. GOOD FAITH EXCEPTION

For the sake of completeness, I note agreement with the Government's argument that even if the warrants were deemed invalid, the good faith exception to the exclusionary rule would render suppression of the evidence unwarranted.

The goal of the exclusionary rule is to deter Fourth Amendment violations. See, e.g., United States v. Caesar, No. 19-3961, 2021 U.S. App. LEXIS 18692, at **15-17 (3d Cir. June

---

[12] "Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance… Rather it should be functionally measured in terms of whether probable cause still existed at the time the warrant was executed." United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975).

11

23, 2021); United States v. Werdene, 883 F.3d 204, 215 (3d Cir. 2018). If officers acted with an "objectively reasonable good-faith belief that their conduct [was] lawful," deterrence is not a justification for exclusion of evidence. United States v. Katzin, 769 F. 3d 163, 171 (3d Cir. 2013). The good faith inquiry rests on "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" United States v. Horton, 863 F.3d 1041, 1051 (8th Cir. 2017) (quoting Herring v. United States, 555 U.S. 135, 145, 129 S. Ct. 695, 172 L. Ed. 496 (2009)). Given the social cost of suppressing evidence, the Supreme Court has described the remedy as a "last resort" rather than a "first impulse." Hudson v. Michigan, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L.Ed. 2d 56 (2006). Had this Court determined that the warrants were illegal, the discussion supra makes clear that they were not so facially deficient, or so lacking in indicia of probable cause, as to warrant suppression of the subject evidence.

## II.     MOTION TO SUPPRESS NO. 2

Defendant's second Motion to Suppress rests entirely on the premise that the initial warrant to search the Target Residence, addressed supra, was invalid. In particular, he contends that the second and third warrants were based on affidavits that in turn rested on fruits of the initial illegal warrant. In the Affidavit for the second warrant, the affiant stated that agents observed explosive materials during the initial search of the Target Residence, but did not seize the materials. Accordingly, the Affiant sought a warrant to seize "evidence of indicia of bomb-making materials and/or explosives." [408, Ex. J]. The subsequent Affidavit for the third warrant stated that during the initial search, agents observed a computer "running live [with]…a sophisticated destruct command (counting down from 200 minutes before it would self-destruct)." Id. at Ex. K. Because I have rejected Defendant's arguments regarding the initial

warrant, his second Motion will be denied as well. In addition, as with Motion to Suppress No. 2, even had probable cause been lacking, the good faith exception to the exclusionary rule would apply to the circumstances surrounding the second and third searches.

## CONCLUSION

In conclusion, Defendant's Motion to Suppress Evidence Seized During Searches of Target Residence, Target P.O. Box, and Target Vehicle. [288, 303], and his Motion to Suppress Evidence Seized During the Second and Third Searches of the Target Residence (Motion to Suppress No. 2) [289, 317, 304] will be denied. An appropriate Order follows.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated: July 8, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) CR 18-292 |
| | ) |
| ROBERT BOWERS | ) |
| | ) |

**ORDER**

AND NOW, this 8th day of July, 2021, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's a Motion to Suppress Evidence Seized During Searches of Target Residence, Target P.O. Box, and Target Vehicle (Motion to Suppress No. 1) [288, 303] and Motion to Suppress Evidence Seized During the Second and Third Searches of the Target Residence (Motion to Suppress No. 2) [289, 304, 317] are DENIED.

BY THE COURT:

_Donetta F. Ambrose_
_____

Donetta W. Ambrose
Senior Judge, U.S. District Court