IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | 2:18-CR-00292-DWA |
| vs. | ) ) | |
| ROBERT BOWERS, | ) ) | |
| Defendant. | ) ) | |

AMBROSE, United States Senior District Judge

## MEMORANDUM OPINION AND ORDER OF COURT
## RE: MOTION TO SUPPRESS NO. 4

*Summary*

The Defendant filed a Motion to Suppress Evidence Seized During Search of Target Device (LG cell phone, Model G6, with SIM identifier 8901260096100614381) – Motion to Suppress No. 4. (ECF Nos. 291/314). The Defendant's Motion to Suppress is brought pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the U.S. Constitution. *Id.* The Government filed a Response in Opposition thereto. (ECF Nos. 353/368). The Defendant filed a Reply and the Government filed a Surreply. (ECF Nos. 378/388 and 401). After careful consideration and for the reasons set forth below, Motion to Suppress No. 4 (ECF Nos. 291/314) is denied.

*Analysis*

Pursuant to the Fourth Amendment, the Defendant seeks to suppress evidence seized during search of the Target Device (LG cell phone) because the "warrant was overbroad in failing to limit the data seized to that for which there was probable cause." (ECF No. 291/314, p. 1). To that end, the Defendant raises two arguments: 1) there was no probable cause that the Target Device would contain any records (other than social media communications) related to the subject crimes "indicating hatred, bias, or prejudice based upon race and/or religion," and 2) while

admitting the application for the warrant "established probable cause to search social media communications," it was "only because it included ill-gotten evidence from an illegal warrantless search" and without the same the application failed to establish probable cause for the social media communications. *Id.* at pp. 1-2. In opposition, the Government argues, *inter alia,* there is a substantial basis set forth in the Application for the warrant to establish probable cause to search the Target Device for the particularized records that relate to Defendant's crimes and that there was no warrantless search such that there was no ill-gotten evidence therefrom. (ECF No. 353/368). The Government continues that even if there was ill-gotten evidence, there was still probable cause even without the inclusion of the same. *Id.* The Government also contends that even if there was a Fourth Amendment violation, the good faith exception to the exclusionary rule applies and no suppression is warranted. *Id.* In Reply, the Defendant continues to submit that probable cause is lacking and argues, *inter alia,* that the good faith doctrine does not apply. (ECF No. 388).[1]

The Fourth Amendment prohibits "unreasonable searches and seizures" stating that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend IV. To that end, a warrant is overbroad when it permits the search and seizure of items for which there is no probable cause. *See, United States v. Yusuf,* 461 F.3d 374, 395 (3d Cir. 2006). Probable cause is a fluid concept that turns on the particular factual context at hand. *Illinois v. Gates,* 462 U.S. 213, 232 (1983). The existence of probable cause is to be assessed through "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. In other words, the inquiry rests on a common-sense, the totality of the circumstances analysis; each piece of information in an affidavit

---

[1] The parties have touched on the issue of standing in their submissions. For argument sake, I am assuming the Defendant has standing, without deciding the issue.

is not assessed in isolation. *See Gates*, 462 U.S. at 230-31; *United States v. Conley*, 4 F.3d 1200, 1205–06 (3d Cir. 1993). Accordingly, our Court of Appeals has cautioned against "'overly compartmentaliz[ing]' the determination of probable cause." *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006).

A reviewing court does not conduct a *de novo* determination of probable cause, but determines whether a "substantial basis" existed for the magistrate's finding of probable cause. *Gates,* 462 U.S. at 236*; United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002). In making the determination of whether there was a substantial basis for finding probable cause, "the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'" *Hodge*, 246 F.3d at 305, *quoting Jones,* 994 F.2d at 1055; *Zimmerman*, 277 F.3d 426, 430, n.3 (3d Cir. 2002).

In this context, "[a] court 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir. 2001), *quoting United States v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000); *United States v. Jones,* 994 F.3d 1051, 1056 (3d Cir. 1993). "The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Hodge*, 246 F.3d at 305, *quoting Jones,* 994 F.2d at 1057-58. A reviewing Court is to "give great deference to the magistrate judge's probable cause determination." *Id.* at 305; *Zimmerman,* 277 F.3d at 432. That said, it does not "mean that reviewing courts should rubber stamp a magistrate's conclusions." *Jones*, 944 F.2d at 1055.

Probable cause requires certain connections between the place to be searched, the suspected criminal activity, and the items to be seized. This connection or "nexus" is an expression of the requirement that probable cause exists to believe that evidence of an offense will be found at the place to be searched and can be made by inference. *See, United States v. Stearn,* 597 F.3d 540 (3d Cir. 2010); *Hodge*, 246 F.3d at 305-07; see *also, United States v. Tsarnaev*, 53 F. Supp. 3d 450, 462 (D. Mass. 2014). Thus, consistent with the applicable

common-sense inquiry, direct evidence linking the place to be searched with criminal activity is not required to establish probable cause to search. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002); *Hodge,* 246 F.3d at 305; *Jones,* 994 F.2d at 1056.

There is no doubt that the Fourth Amendment applies to cellular phones. *Riley v. California,* 573 U.S. 373, 394 (2014). The Defendant begins by suggesting that the warrant to search the LG cell phone was overbroad in that it allowed for the seizure of "[a]ll records….that relate to violations of" the crimes at issue when the Application for the warrant failed to provide probable cause for "all records," excluding the social media applications. (ECF No. 291/314, p. 6). The Defendant argues that because the search of a cell phone is more intrusive than a search of a home, warrants authorizing cell phone searches must specify those locations within the phone that support probable cause. (ECF No. 291/314). Along those lines, the Defendant asserts that in this case the affidavit failed to establish a nexus between "all records" on the Target Device (excluding the social media application) and criminal activity. *Id*. at p. 7.

To begin with, I find this assertion disingenuous. Attachment B to the Application and incorporated by the warrant identifies the property to be seized as follows:

> 1. All records on the Target Device described in Attachment A that relates to violations of Title 18, United States Code, Section 247(a)(2) and (d)(1) and (d)(2); 249 (a)(1); and 924(c) and (j)(1), and involve Robert Bowers since September 18, 2018, including:
>
>> a. Any and all evidence of motive related to race and religion, including but not limited to: writings, literature, communications, objects, and paraphernalia indicating hatred, bias, or prejudice based upon race and/or religion.
>>
>> b. Any and all evidence of any communication through any social media accounts or otherwise that reflect evidence of motive related to race and religion indicating hatred, bias, or prejudice based upon race and/or religion.
>>
>> c. Records of Internet activity, including logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses which reflect evidence of motive related to race and religion indicating hatred, bias, or prejudice based upon race and/or religion.

4

(ECF No. 318-2, p. 3). As indicated above, the universe of "[a]ll records" on the LG cell phone is specifically limited to those records insofar as they pertain or relate only to the charged crimes, that involve the Defendant, are temporally limited to September 18, 2018 through the date of the incident of October 27, 2018, and are particularly limited to the topics/subject matters and categories set forth in 1(a)-(c) above. *Id.* Thus, the universe of "all records" is far from limitless as the Defendant suggests.[2]

Moreover, I disagree with the Defendant that the affidavit provided only probable cause to believe the Target Device was used minutes before the shooting to make an anti-Semitic post on a social media site. (ECF No. 291/314, p. 9). "[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate." *Yusuf*, 461 F.3d at 395. Upon review, the affidavit specifically connected the Defendant to the Target Device and the Target Device to the alleged crime and further making sufficient averments suggesting more than a substantial basis that the records sought from the LG cell phone would contain evidence of the charged offenses including motive, bias, hatred and prejudice related to race and/or religion. For example, the Application states "[e]arly indications through the investigation are that BOWERS engaged in planning and premeditation prior to executing the killings and injury associated with this crime." (ECF No. 318-2, p. 8). To that end, the Application states that prior to the incident, dating back to September 18, 2018, the Defendant "made numerous anti-Semitic statements on internet posts, indicating that BOWERS had access to the internet and/or internet capable devices." (ECF No. 813-2, p. 7). The affidavit also sets forth that on October 27, 2018, the Defendant drove to the Tree of Life Jewish Synagogue

---

[2]The cases cited by the Defendant provide no further support. *See,* ECF No. 291/314, pp. 6-9. As I point out above, the Attachment B of the warrant contained various restrictions and limited the property to be seized to those items only in so far as they relate to the charged crimes, that are temporally limited (approximately a six week time period), and to particular categories of evidence outlined in paragraphs 1(a)-(c) specifically indicating "hatred, bias, or prejudice based upon race and/or religion."

("Synagogue") a Synagogue containing three congregations in active worship. (ECF No. 318-2). According to the application, minutes prior to entering the Synagogue, the Defendant placed an anti-Semitic post on a social media site. *Id.* It further states that the Defendant entered the Synagogue with multiple weapons, including an assault-style rifle, killing multiple individuals and wounding many others. *Id.* The affidavit continues that the Target Device was recovered at the scene in the Synagogue near a red jacket and that law enforcement officers learned through investigations that the Defendant was described as wearing a red jacket. (ECF No. 318-2). Additionally, at least one Pittsburgh Bureau of Police officer observed a cell phone (which appeared to be highly encrypted and required a security start) where the Defendant had been lying, along with multiple magazines, a pistol, and a wallet. *Id.* During the incident, the Affidavit provides, the Defendant made audible statements indicating an animus towards people of the Jewish faith. *Id.*

The affidavit also provided, based on the affiant's knowledge, training, and experience, the capability of a wireless telephone (or cell phone).

> A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through raid signals. These telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a 'call log," which records the telephone number, date and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global position system ("GPS") technology for determining the location of the device.

(ECF No. 318-2, p. 9). Considering this information, along with the rest of the information in the affidavit, and given the circumstances of this mass shooting, the magistrate was permitted to make reasonable inferences and such decisions are entitled to deference. *See, Jones,* 994 F.2d at 1056 (A magistrate judge is permitted to make reasonable inferences in connection with

6

statements made in an affidavit in support of an application for a warrant.). In light of the information set forth in the Affidavit, I find there was a substantial basis for the magistrate judge to conclude that there was probable cause that evidence of the charged crimes as listed in the Application would be found on the Target Device (LG cell phone). *See, id.* In so doing, I reject the Defendant's suggestion that the magistrate judge made unreasonable inferential leaps in finding probable cause.

I note that "as a practical matter, '[w]hen a search requires a review of a large collection of items,…it is certain that some innocuous [items] will be examined, at least cursorily, in order to determine whether they are, in fact, among those authorized to be seized.'" *United States v. Stabile,* 633 F.3d 219, 234 (3d Cir. 2011), *quoting, Andersen v. Maryland,* 427 U.S. 463, 482 n. 11(1976). "[B]ecause criminals can - and often do – hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search…may be required." *Stabile,* 633 F.3d at 237. As a result, the review of some records that ultimately may not be authorized to be seized from the Target Device cell phone does not make the warrant overly broad.

Reading the Application as a whole and using a common-sense, totality of the circumstances approach, I find there was a substantial basis for the magistrate to conclude that there was a probable cause that the specified and limited categories of records on the Target Device cell phone that were sought in the Application would uncover evidence of the charged offense. Thus, I find the warrant was not overly broad.

In so making this finding, I also reject the Defendant's argument that the affiant provided no information about the basis for his claims and provided no information about his source such that his assertions were akin to an uncorroborated claim of an unidentified, anonymous informant. (ECF No. 291/314, pp. 9-11). "Courts have routinely recognized a distinction between information provided by an informant and that provided by a law enforcement officer or other government agency." *United States v. Yusuf,* 461 F.3d 374, 384 (3d Cir. 2006). Magistrate judges "may give considerable weight to the conclusions of experienced law enforcement officers…." *United States*

7

*v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000); *see also, Yusef*, 461 F.3d at 385 (Information received from other law enforcement officials during the course of an investigation is generally presumed to be reliable.). In this Application, the affiant specifically and aptly set forth breadth of his knowledge, training, and experience and that claims in his affidavit were based on the same.

> I am a Special Agent with the FBI, and have been since February 2000. My main investigative focus has been in the white collar crime are (sic), including mail fraud, wire fraud, bank fraud, identity theft and bankruptcy fraud. As an FBI Special Agent, I have investigated possible violations of federal civil rights and firearms law, including violations of Title 18, United States Code, Sections 247, 249, and 924. During my career as an FBI Special Agent, I have been involved in the execution of numerous search and seizure warrants, arrests for violations of state and federal laws, and have authored affidavits in support thereof.

(ECF No. 318-2, p. 5). The affiant also provided that his statements were based on open source information, investigations and witness interviews by law enforcement officers, and audible statements heard by a law enforcement officer. (ECF No. 318-2). There is no suggestion of unreliability as to these sources. As a result, I find the magistrate judge was permitted to rely on all of the assertions made by affiant in the Application.

Thus, based on the above, as it relates to records (other than social media communications), I find the warrant at issue here was not overbroad and suppression is not warranted.

Defendant next argues that the application failed to establish probable cause for the social media communications because he contends it contained "ill-gotten evidence from an illegal warrantless search." (ECF No. 291/314, pp. 1-2, 13-14). To that end, Defendant specifically cites to paragraph 20 and which provides:

> 20. Records were obtained by FBI from a social media site that included an anti-Semitic post on Bowers' account. The records indicate that the post was made from an Android phone at 13:49 UTC on October 27, 2018, which corresponds to 9:49 AM EST. The first 911 call was placed at approximately 9:54 AM, which indicates that Bowers posted on the internet almost immediately prior to beginning his deadly firearms assault. As a cell phone, the Target Device may contain relevant communications set and received by Bowers.

(ECF No. 318-2, p. 8 ¶20). Defendant contends that without this paragraph, the affidavit failed to establish probable cause to search and seize even for the social media communication records on the Target Device. (ECF No. 291/314, pp. 13-14). This argument is denied. In an Opinion and Order ruling on the Defendant's Motion to Suppress No. 5, filed simultaneously with this Opinion and Order, I find suppression of such evidence is not warranted. *See,* Memorandum Opinion and Order of Court Re: Motion to Suppress No. 5. Therefore, the premise of the argument is incorrect.

Furthermore, even absent the allegation set forth in paragraph 20 linking a post made on a social media site by an Android phone just prior to the Defendant entering the Synagogue, based on the analysis above, I still find there was a substantial basis for the magistrate to conclude there was probable cause that the LG cell phone Target Device to be searched would uncover evidence of the charged offense. Thus, I find suppression is not warranted.

Finally, even if the Defendant'S argument had merit, the good faith doctrine applies such that suppression of the evidence is not warranted. *Herring v. United States,* 555 U.S. 135, 137 (2009) ("[S]uppression is not an automatic consequence of a Fourth Amendment violation."). The goal of the exclusionary rule is to deter Fourth Amendment violations. *Id.* at 139-140*; see also, United States v. Werdene,* 883 F.3d 204, 215 (3d Cir. 2018). Exclusion is a "last resort, not our first impulse." *Id.* at 140; *U.S. v. Caesar,* No. 19-3961, 2021 WL 2559471, at *6 (3d Cir. June 23, 2021)("Exclusion is a 'bitter pill' swallowed only where it would result in a 'substantial deterrent effect' that outweighs its resulting costs, [*U.S. v.*] *Leon,* 486 U.S. [897] at 907 [1984]."). Accordingly, if officers acted with an "objectively reasonable good-faith belief that their conduct [was] lawful or when their conduct involve[d] only simple, isolated negligence," there is no deterrent effect justifying exclusion of evidence. *United States v. Katzin,* 769 F.3d 163, 171 (3d Cir. 2013); *Caesar,* 2021 WL 2559471 at *6. Thus, "to trigger the exclusionary rule, law enforcement conduct must be 'deliberate, reckless, or grossly negligent,' or involve 'recurring or systemic negligence.' *Caesar,* 2021 WL 2559471 at *6, *quoting, Herring,* 555 US at 143-44.

Therefore, the good faith inquiry rests on "'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *United States v. Horton,* 863 F.3d 1041, 1051 (8th Cir. 2017), *quoting, Herring*, 555 U.S. at 145.

In this case, there is no suggestion of deliberate, reckless, or grossly negligent disregard of the Fourth Amendment. I find suppression would have no appreciable deterrent effect because a reasonable officer would not have known that the detailed and limiting list of items be seized in the warrant was invalid despite the magistrate judge's authorization. Moreover, contrary to the Defendant's position, and as set forth above, the allegations set forth in the Application provide a substantial basis to establish probable cause. Therefore, I find suppression would have no appreciable deterrent effect because a reasonable officer would not have known that the detailed and limiting list of items be seized in the warrant was "so deficient" despite the magistrate judge's authorization. Consequently, even if there was a Fourth Amendment violation, I find the good faith exception to the exclusionary rule applies and suppression is not warranted.

Based on the foregoing, the Defendant's Motion to Suppress Evidence Seized During Search of Target Device (LG cell phone, Model G6, with SIM identifier 89012600961006143 81) – Motion to Suppress No. 4 – shall be denied.

An appropriate order shall follow.[3]

---

[3] In his Reply to the Government's Opposition, the Defendant seeks an evidentiary hearing. (ECF No. 378/388). Based on the discussion above, I find a hearing is not necessary.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROBERT BOWERS, )<br>)<br>Defendant. ) | 2:18-CR-00292-DWA |

AMBROSE, United States Senior District Judge

## ORDER OF COURT
## RE: MOTION TO SUPPRESS NO. 4

AND now, this 8th day of July, 2021, upon consideration of the Defendant's Motion to Suppress Evidence Seized During Search of Target Device (LG cell phone, Model G6, with SIM identifier 8901260096100614381) – Motion to Suppress No. 4 (ECF Nos. 291/314) and the related submission, it is ordered that Motion to Suppress No. 4 is denied.

BY THE COURT:

_____
Donetta W. Ambrose
United States Senior District Judge