IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION FOR AN EVIDENTIARY HEARING, PRODUCTION OF
COMMUNICATIONS AND ANY OTHER RELEVANT MATERIALS TO
DETERMINE THE NATURE AND EXTENT OF ANY CONFLICT OF
INTEREST BY THE CLERK OF COURT, AND APPROPRIATE RELIEF**

The defendant, Robert Bowers, through counsel, files this Motion for an

Evidentiary Hearing, Production of Communications and Any Other Relevant Materials

to Determine the Nature and Extent of Any Conflict of Interest by the Clerk of Court, and

Appropriate Relief.

**I.     Introduction**

The Clerk of Court works for and is essentially an arm of the Court. *See Williams

v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) ("[T]he clerk of court acts as the arm of the

judge and comes within his absolute immunity.") (citing *Barr v. Matteo*, 360 U.S. 564,

569 (1959)). The Clerk should not be aligned with any party to a lawsuit, and certainly

not with either party in a criminal case. Indeed, as set forth on the uscourts.gov website:

> The clerk of court is the executive hired by the judges of the court to carry
> out the court's administrative functions. The clerk manages the court's non-
> judicial functions according to policies set by the court and reports directly
> to the court through the chief judge.

https://www.uscourts.gov/about-federal-courts/judicial-administration.

1

In the midst of litigation over the Clerk of Court's compliance with this Court's orders permitting Mr. Bowers access to various Western District of Pennsylvania jury records, and simultaneously with the Clerk's Office's postponement of the defense expert's requested date to review certain available jury records, the Clerk of Court sent the prosecution team the following email:

> I think that **our interests likely are aligned** on the jury challenge issue, and it therefore may make sense to have a conversation. **We are trying our best to provide the requested information and be transparent, but also are sensitive to some broader implications.**
>
> If you think a conversation might be helpful, do you have time Monday or Tuesday to set up a call?

(Email from Joshua Lewis to Julia Gegenheimer, Soo Song, Troy Rivetti, and Eric Olshan, July 9, 2021, attached as Exhibit A (emphasis added).)

The Clerk of Court has asserted the troubling belief that his interests are "aligned" with the government against Mr. Bowers. Referencing concerns about "the broader implications" of Mr. Bowers' request for records related to the Court's selection of jurors and recent changes to its Jury Plan, and suggesting those concerns were interfering with his efforts at transparency, the Clerk proposed a private meeting with the government to discuss the disclosure of the requested (and ordered) information to the defense. In light of this email, and for the circumstances set forth below, Mr. Bowers, through counsel, requests that an evidentiary hearing be held, and that the Clerk's Office be required to produce in advance all communications and other relevant materials, as specified below.

## II.     Factual Background

Litigation regarding potential challenges to this district's Jury Plan, which could result in dismissal of the Indictment and Superseding Indictment in this case, dates to December 2019 when the defense filed a Motion for Disclosure of Jury Records. (ECF 158.) In February 2020, the Court issued the first Order regarding production of jury related information. (ECF 206.) More recently the Clerk of Court was directed to provide "all records, papers, or other documents, if any, explaining the reasoning behind the amendment of Section 9" of the Jury Plan. (ECF 442 at 14.)

The Clerk of Court has twice notified the Court of compliance with Court orders. (*See* ECF 337, filed Oct. 30, 2020 (notice of compliance with ECF 206); ECF 476, filed May 26, 2021 (notice of compliance with ECF 442).)[1] However, questions as to the Clerk's compliance have persisted. (*See* ECF 347 (Motion to Vacate the Notice of Compliance); ECF 498 (Motion to Clarify or Amend Court's Order).) The Clerk's recent email communication, indicating that full transparency may only be aspirational given the "broader implications" of disclosing the ordered records, as well as its "alignment" with the prosecution team, raise further questions as to whether this alignment or the

---

[1] The first "compliance" notice was filed on behalf of the Clerk of Court by Deputy Clerk Michael Palus. (ECF 337.) The second notice of "compliance" was filed on behalf of the Clerk of Court by Attorney Advisor Theresa Nixon. (ECF 476.) This was the first notice the defense had of any involvement by Ms. Nixon. Ms. Nixon's role as an "Attorney Advisor" remains unclear to the defense, particularly in light of her July 9, 2021, email stating that the Clerk of Court was seeking an attorney to represent him in regard to the "Bowers jury challenge." (Exhibit C.)

institutional interests of the Court have interfered with the Clerk's ability to act in an unbiased manner.

### A.  The defense disputes compliance with ECF 206 (Jury Records).

Disagreeing that the Clerk complied with the Court's Order at ECF 206, on November 4, 2021, the defense filed a Motion to Vacate the Notice of Compliance. (ECF 347). The government opposed, asserting that "[i]t is not the province of the defendant to adjudge the compliance of the Clerk of Court. . . . The Clerk's Office, not the defendant, is the custodian of the relevant records and is best situated to know what materials it possesses and whether the required productions are complete." (ECF 399 at 4.)

On April 2, 2021, this Court denied the Motion to Vacate the Notice of Compliance. (ECF 443.) However, it ordered the parties to confer with each other regarding the materials received and to meet and confer jointly with a representative of the Clerk's Office. (ECF 443.) On April 20, 2021, the parties met via Zoom with representatives of the Clerk's Office and asked a range of questions regarding the materials that had been produced and made available for inspection. The parties agreed to submit their questions in writing, and on May 3, 2021, the parties provided a combined list of questions to the Clerk of Court.

On July 9, 2021, Attorney Advisor Theresa Nixon represented to the parties that "the Clerk of Court has been methodically working toward responding to those questions since their receipt. Several of counsel's astute questions required significant consideration and revealed the possibility that additional data collection and processing

4

may be needed in order to provide adequate answers." (Email from Theresa Nixon to counsel, July 9, 2021, attached as Exhibit C.)

### B. The defense disputes compliance with ECF 442 (Jury Plan Amendment Materials).

On May 26, 2021, the Clerk notified the parties and the Court that the Jury Plan amendment materials ordered to be produced by ECF 442 were available for inspection. (ECF 476.) On June 2, 2021, defense counsel inspected the materials. On June 15, 2021, defense counsel wrote to Attorney Advisor Theresa Nixon expressing concern about the completeness of the production. (*See* ECF 498-1.)

Failing to resolve the completeness concerns informally, on July 8, 2021, the defense filed a Motion to Clarify or Amend ECF 442. (ECF 498.) This Motion, which included the correspondence with Ms. Nixon about the production of materials, was filed at 7:12 pm Thursday evening (July 8, 2021). The next morning at 11:27 am (July 9, 2021), Joshua Lewis sent his email to the prosecution team referencing the "alignment of interests" with the government and the apparent conflict between providing the ordered materials and "broader implications." (Exhibit A.)

On the following business day, Monday, July 12, 2021, the Court held a status conference. During the status conference, the government advised that it would not file an opposition to this Motion. (*See* ECF 506 ("Government declines to file Opposition to Defendant's Motion for Clarification").) Nevertheless, stating that it had "no reason to

disbelieve the Clerk's Office's representations to Defendant," the Court denied the

unopposed defense request to clarify or amend the Order.[2] (ECF 509.)

### C. The defense attempts to arrange expert access to the ECF 206 Materials (Jury Records).

After discussion with its experts regarding the practicalities of reviewing the

"source list" onsite,[3] the defense filed a Motion to Clarify and Amend the Order

Regarding Disclosure of Jury Records (ECF 206) on June 8, 2021 to permit the experts to

download the source data onto their computers. (ECF 478.) On June 28, 2021, the Court

granted this request. (ECF 483.) On July 1, 2021, the defense emailed the Clerk of Court

Joshua Lewis, Clerk's Office staff Michael Palus and Colleen Willison, and Attorney

Advisor Theresa Nixon, copying the prosecution team, seeking to schedule access on July

12 and13 to the materials ordered in ECF 206 and the source list data as amended by ECF

483:

> Ms. Nixon, Mr. Lewis, and Mr. Palus:
>
> Judge Ambrose has entered the attached order permitting the defense experts
> "to import the source data for the Master Jury Wheel used to summon grand
> jurors in this case into their specialized software programs." (ECF 483 at 2.)

---

[2] During the status conference, the defense expressed concern about the Clerk's
email and Ms. Nixon's emails seeking to explain it. As discussed more fully below, the
issue of whether the government should represent the Clerk in the "Bowers jury
challenge" matter is only one aspect of the series of emails that raise serious questions
about whether the Clerk's Office has and can perform its duties with respect to that
challenge in an impartial way.

[3] While one defense counsel was able to inspect the ECF 206 materials onsite
during the pandemic, out of town experts were not able to safely travel until recently.

The order also allows the defense experts to "retain a copy of their analyses on their computers." (ECF 483 at 3.)

Our defense expert is available to review all of the materials provided for in Judge Ambrose's original order (ECF 206 (attached)) and import the data as permitted by her more recent order (ECF 483) on July 12 and 13. Would you please let us know if these dates work for you?

Thank you,
Elisa Long, Michael Novara, and Judy Clarke

(Email from Elisa Long to Theresa Nixon, Mike Palus, Joshua Lewis, and government

counsel, July 1, 2021, attached as Exhibit C.)

Having not heard back by July 7, 2021, defense counsel sent a follow up email to

the same group of individuals:

Ms. Nixon, Mr. Lewis, and Mr. Palus:

Would you please let us know if the Clerk's Office can accommodate our expert, Jeffrey Martin, on July 12 and 13? He would like to make his travel plans as soon as possible.

Thank you,
Elisa

(Email from Elisa Long to Theresa Nixon, Mike Palus, Joshua Lewis, and government

counsel, July 7, 2021, attached as Exhibit C.) Through Theresa Nixon, Attorney Advisor,

the Clerk's office responded that same day to the same group of individuals:

Elisa:

We are in receipt of the request that you sent Thursday evening to bring your expert to the Jury Office to review materials and copy certain data Monday and Tuesday. Given the activities being conducted by the Jury Office during this shortened week and early next week related to both grand and petit juries, we are unable to accommodate your proposed schedule. Furthermore, given

that the "Questions from Counsel" document is outstanding (regarding Judge Ambrose's original order (Order #206)), we suggest that your expert's visit be delayed until after we can provide a response to that document in the event that the response results in supplementation or amendment. As soon as the Clerk of Court is in a position to provide a response to counsel's inquiries, I will notify all counsel. I anticipate that the unredacted source data will be ready for production (Order #483) prior to that time, and I will let you know when that item may be obtained from the Jury Office.

Theresa

(Email from Theresa Nixon to counsel, Mike Palus, Joshua Lewis, and Colleen Willison, July 7, 2021, attached as Exhibit C.)

Concerned about the Court's 30-day filing deadline, and noting that the materials the expert sought to review had already been collected by the Clerk and reviewed by government and defense counsel months ago, defense counsel responded on July 8, 2021, again copying the same group:

Theresa-

To correct any misunderstanding, we sent our request on Thursday, July 1, seeking access to the materials ordered by the Court on Monday and Tuesday, July 12 and 13. Regardless, we agree with you that the answers to the "Questions from Counsel" may well require an additional review of materials. However, because of the Court's anticipated 30-day deadline to file challenges . . . , we believe it prudent for our expert to review the materials and obtain the unredacted source data as soon as possible. Mr. Martin remains available the week of July 12 and anticipates needing two days to review the materials, including downloading the source data.

All of the materials Mr. Martin seeks to review were collected by the Clerk's Office months ago and reviewed by counsel for both parties prior to our April 20, 2021, meeting with the Clerk of Court, so they should be readily available. It is our understanding that the unredacted source data was on a CD included in the materials previously made available for review. Thus,

this data should also already be readily available for Mr. Martin to download to his computer.

We understand from your response that there are activities related to the grand and petit juries the week of July 12, however, we ask that Mr. Martin be permitted to review the materials already collected by the Clerk's Office in a conference room, an attorney meeting room, or any other of the many rooms in the courthouse.

Thank you,

Elisa Long, Judy Clarke, and Michael Novara

(Email from Elisa Long to Theresa Nixon, Joshua Lewis, Mike Palus, Colleen Willison, and counsel, July 8, 2021, attached as Exhibit C.)

Ms. Nixon responded the next morning, July 9, 2021, at 10:58 a.m., but dropped Mr. Lewis, Ms. Willison, and Mr. Palus from the copy. Ms. Nixon attributed the delay in scheduling to her time "out of the office," the need for "adequate personnel" from the Clerk's Office to prepare for the visit, and her assertion that she will now "be present for any future inspections."

Good Morning:

I do not believe that there is any misunderstanding about the timeline. I wrote to you on a Wednesday (7/7/21), about your request to visit on Monday and Tuesday (7/12-13/21), which was received on Thursday (7/1/21). To the extent you believe I understood, or wanted to create the impression, that you wished to visit the Jury Office on July 5th and 6th, I did not. First, those dates had already passed when I wrote to you on the 7th. Second, your request explicitly states that you wished to visit on the 12th and 13th. And, finally, Monday the 5th was a Federal holiday and the Courthouse was closed. To reiterate, you sent your request to visit the Jury Office at 7:08 pm on Thursday, July 1st, having been previously informed, by me personally via email, that I would be out of the office until after the July 4th holiday. Upon return (on July 6th), I conferred with Jury Office officials and the Clerk of

9

Court to determine whether your proposal to visit the Jury Office on Monday, July 12th and Tuesday, July 13th was feasible. I discovered that it was not, and I promptly notified you of the same. The issue is not having a room in which an expert can sit, but having adequate jury personnel onsite to prepare for the visit and to assist you, while also attending to the routine work of the Jury Office. As you are certainly aware, the Court has recently resumed jury trials, which, in the COVID era is a substantial undertaking. I will also be present at any future inspections, and my schedule will need to be coordinated. I am unavailable to be onsite on July 12 and 13.

Your July 1st request was the first communication of any kind that the Clerk of Court received about the Jury Office records since having received counsels' detailed lists of questions. The Clerk of Court received no prior indication that any counsel intended to review Jury materials before the Clerk of Court had an opportunity to answer the written questions that were asked. I am representing to you that the Clerk of Court has been methodically working toward responding to those questions since their receipt. Several of counsel's astute questions required significant consideration and revealed the possibility that additional data collection and processing may be needed in order to provide adequate answers. This is, obviously, taking time to accomplish, and we recognize has required patience from all counsel. If any counsel nevertheless intends to conduct onsite inspection at the Jury Office before the questions can be answered, please be aware that (1) Mondays and Tuesdays are, in general, difficult days on which to conduct those inspections due to Jury Office responsibilities, and (2) the Jury Office will require more than 4 business days' notice to ensure that appropriate staff are onsite both before and during the visit.

The Clerk of Court has familiarized himself with the Court's orders concerning this matter and is keenly aware that certain pretrial deadlines will emanate from his compliance with the Court's orders. Should you believe that the procedural circumstances set forth above are impacting your client's substantive rights in any way, the Clerk of Court is willing to participate in a conference with the Court to explain the manner in which he is proceeding in response to the Court's orders and counsels' extensive questions.

Theresa

(Email from Theresa Nixon to counsel, July 9, 2021, attached as Exhibit C.)

10

Notably, the Clerk of Court sent his email to the prosecution team seeking an *ex parte* meeting and referencing their "aligned interests" and "broader implications" **less than 30 minutes later**, at 11:27 am. (Exhibit A.)

Unaware of the Clerk of Court's email, defense counsel responded to Ms. Nixon's email, repeatedly thanking her for her work and proposing additional dates for the expert review:

> Theresa:
>
> Thanks for your prompt response. We're all navigating scheduling issues, and we fully appreciate that the careful work you are doing responding to the parties' questions has taken substantial time.
>
> When we sent our request on July 1 to Mr. Palus, Mr. Lewis, and you, we were unaware that you were the only person who could do the scheduling. We appreciate your clarifying that.
>
> Mr. Martin is available from July 15 through 16 or on any two consecutive days the week of July 26 to review the materials that were already collected by the Clerk's Office and reviewed by the parties (most recently by government counsel in April 2021) and to download the unredacted source data, which we understand to be on a CD included in the materials. Do either of these time frames work for you?
>
> Again, thank you for all of your work on this matter.
>
> Elisa Long, Judy Clarke, and Michael Novara

(Email from Elisa Long to Ms. Nixon and counsel, July 9, 2021, attached as Exhibit C.)

Soon thereafter, Ms. Nixon responded:

> I will look at all of those time frames with the Jury Office and against my schedule and get back to you with (hopefully) a few options that work on our end. I can't promise I'll be able to get that arranged by COB today but, if not,

you will hear from me Monday. If we don't further communicate today, have a good weekend.[4]

(Email from Theresa Nixon to counsel, July 9, 2021, attached as Exhibit C.)

> **D. The Clerk of Court believes his "interests likely are aligned" with prosecution and expresses concern that "transparency" and the provision of the "requested information" are in conflict with "broader implications."**

Apparently while defense counsel were seeking unsuccessfully to schedule expert access to the ECF 206 materials (originally ordered jury records) and ECF 483 (unredacted source list), the Clerk of Court was reaching out *ex parte* to the prosecution team, with regard to "Mr. Bowers Jury Challenge," to arrange a time to talk with them. (Exhibit A.)[5] In his email, the Clerk of Court expressed his belief that the Clerk's Office and prosecution had interests that were likely "aligned." (*Id*.) The email also indicated

---

[4] Although Ms. Nixon did not make the necessary arrangements for the defense expert to review the available materials by the close of business on Friday, emails that day from both she and Mr. Lewis revealed that the Clerk's Office was instead contacting the prosecution team in what appears to be an effort to avoid the production of the materials ordered by the Court. (*See* Exhibits A and B, referenced *infra*).

On Monday morning, July 12, 2021, after the Clerk's *ex parte* communication was revealed to the Court, Ms. Nixon did confirm that the "source data" would be available on a CD on July 15, 2021, and that the defense expert could review the available materials on July 28-29, 2021.

[5] Ms. Nixon and Ms. Willison were copied on the Lewis email.

that disclosure of the materials ordered by this Court and an effort at "transparency" may

be in conflict with "broader implications." (Exhibit A (hereafter "Lewis email").)[6]

> Subject: Bowers Jury Challenge
>
> All:
>
> I think that our interests likely are aligned on the jury challenge issue, and it therefore may make sense to have a conversation.  We are trying our best to provide the requested information and be transparent, but also are sensitive to some broader implications.
>
> If you think a conversation might be helpful, do you have time Monday or Tuesday to set up a call?
>
> Josh

(Exhibit A.)

Ms. Nixon then provided two unprompted, consecutive, and unusual explanations

for the Lewis email, both of which focused exclusively on the fact that the email was an

*ex parte* communication with the prosecution team. (Emails from Theresa Nixon to the

Court's law clerks, counsel, Joshua Lewis, and Colleen Willison, July 9, 2021, attached

as Exhibit B.) The explanatory emails did not mention, much less address, the more

problematic aspects of the Lewis email, namely, (i) the Clerk's "alignment of interests"

with the prosecution team, and (ii) the conflict between the Clerk's compliance with the

_____

[6] Defense counsel only received a copy of the Lewis email because Julia Gegenheimer, the D.C.-based member of the prosecution team, copied defense counsel (as well as this Court's four law clerks) on a reply to Mr. Lewis, reminding him of the "no *ex parte*" contact Order of this Court.  (*See* Exhibit A)

Court's orders and "broader implications." Instead, Ms. Nixon, although repeatedly representing herself as the "attorney advisor" to the Clerk of Court in matters relating to the jury materials in this case, wrote that the Clerk was seeking legal representation on these same matters. According to Ms. Nixon's first response, the Office of General Counsel of the Administrative Office of the United States Courts informed the Clerk of Court that the United States Attorney's office provides representation to the Clerks of Court in matters relating to requests for jury records. In her  second response, Ms. Nixon stated that she, as counsel to the Clerk of Court, was responsible for the *ex parte* email sent from the Clerk's email address. She offered that the only reason the Clerk of Court sent the email himself was because of his "existing business relationships with counsel." (Exhibit B.) Notably, the attorneys to whom the email was addressed were the three local Western District of Pennsylvania prosecutors on this very case, and a D.C.-based prosecutor who has never entered her appearance in any case in this district other than this one.

III.     **AN EVIDENTIARY HEARING IS NECESSARY TO DETERMINE THE EXTENT OF ANY CONFLICT OF INTEREST BEARING ON THE CLERK'S IMPARTIALITY AND THE APPROPRIATE RELIEF, INCLUDING THE APPOINTMENT OF A SPECIAL MASTER TO MANAGE THE PRODUCTION OF JURY DATA AND JURY PLAN MATERIALS IN THIS CASE.**

It is unclear what production Order, request, or concerns motivated the Clerk of Court to send an *ex parte* email to the prosecution team suggesting that the Clerk's and prosecution's "interests likely are aligned on the jury challenge issue," and expressing

concerns about "transparency" given the "broader implications" of Mr. Bowers' challenge. The consecutive attempts by Attorney Advisor Theresa Nixon at damage control fail to explain: (1) how the interests of the Clerk (a representative of the Court) and the prosecution are aligned; (2) how broader implications impact the Clerk's ability to be fully transparent; (3) if the purpose of the Lewis email was to obtain legal representation, why it does not mention legal representation; (4) if the purpose of the Lewis email was to obtain legal representation, why the Clerk of Court would need representation; (5) if the purpose of the Lewis email was to obtain legal representation, why the Clerk selected the same prosecutors representing the government in this capital case as those from whom to seek legal counsel or advice; (6) what prior "existing business relationships" between the Clerk and the three local prosecutors and the DC-based prosecutor caused the Clerk to send the email to these four particular prosecutors; and (7) whether these "existing business relationships" with the prosecutors are in connection with this case.[7] All of these are factual matters that this Court should resolve at an evidentiary hearing with sworn testimony and evidence.

--------

[7] Notably, the government has asserted its "position" that "Miss Nixon's emails explain the clerk's office position. She was clearly very apologetic. And the government has no indication or any information indicating that the rationale behind the initial email was anything other than what was laid out in Miss Nixon's responses." (Transcript of Status Conference, July 12, 2021, at 11.)

Both the request for historical data and the materials related to the Court's recent changes to its Jury Plan have "broader implications" for the Court and the government if those materials reveal what Mr. Bowers seeks to prove: that, at the time the indictment against him was returned, the Court's Jury Plan and jury selection process violated the JSSA and did not ensure a fair cross section of the community. A fair cross section is constitutionally and statutorily required for Mr. Bowers and all other individuals indicted and tried in the district. As a result, a successful challenge here could provide a basis for others indicted and convicted by grand and petit juries selected under the Court's 2009 Jury Plan to raise statutory and constitutional challenges to their indictments and convictions –which may very well explain why the Lewis email suggested that the Clerk's and prosecution's "interests likely are aligned on the jury challenge issue."

There is some evidence in the materials already produced that the Court amended its Jury Plan to address fair cross section concerns. In a letter seeking approval from the Chief Judge of the Third Circuit for the changes to the Jury Plan, the Chief Judge explained that, "[o]n advice of our Jury Committee, the Board of Judges has approved certain incremental changes that it believes will help to ensure the jury wheel contains a fair cross section of the persons residing in our District pursuant to 28 USC § 1863." (Letter from Chief Judge Hornak to Chief Judge D. Brooks Smith, 12/10/2020.)[8] The

---

[8] The Clerk of Court made the letter available for inspection only, and the quoted sections are from counsel's notes from the inspection. Given the events subsequent to this

letter pointed out that "[t]he only substantive changes . . . reflect the way additional jurors are selected when a prospective juror fails to respond to the Western District of Pennsylvania's jury qualification questionnaire. Notably, the drawing of additional names in the same zip code is a process that we understand has been successfully employed by the United States District Court for the Eastern District of Pennsylvania." (*Id.*)

Finally, the letter noted that "these changes are at this point described as 'incremental' in the sense that mechanisms for jury pool selection will remain under review by our Court over time, with a focus on incorporating 'best practices' in assuring that our Plan allows for broad participation in federal jury service. Therefore, it is anticipated that our Court will likely advance further proposed modifications over time." (*Id.*)

The letter did not specify what specific information or data led the Court to review its 2009 Jury Plan,[9] why the Jury Committee believed changes were needed, what led to the adoption of the one change the Court made, or why it chose an incremental approach rather than a more aggressive approach that might more likely produce results

_____

inspection, as set forth in detail in this motion, counsel asks that the letter be made a part of the record and provided to counsel.

[9] *See* Jeffrey Abramson, *Jury Selection in the Weeds: Whither the Democratic Shore?* 52 U. MICH. J.L. REFORM (2018) ("The research shows a persistent and substantial loss of representation for African Americans and Hispanics on federal juries, even though no intentional discrimination took place.")

17

immediately.[10] It is reasonable to expect that additional materials, which answer these

questions and that further support Mr. Bowers' challenge, are available from the Court –

even if they are not currently in the possession of the Clerk of Court, as has been

represented.[11]

---

[10]  *See* Juan R. Sánchez, *A Plan of Our Own: The Eastern District of Pennsylvania's Initiative to Increase Jury Diversity*, 91 TEMPLE L. REV. ONLINE 1, 18-19 (2019) (describing four recent structural changes made to increase jury diversity in the Eastern District of Pennsylvania: (1) adding more names from the source list to the master list; (2) increasing the frequency with which the court conducts change of address checks; (3) if a reasonable period of time has passed after the Clerk's Office has received a questionnaire as undeliverable, a second questionnaire is to be mailed, at random, to a different address in the same zip code; and (4) implementing a community outreach and education program.); United States District Court for the Eastern District of Pennsylvania, *Plan for the Random Selection of Grand and Petit Jurors* (2017), available at https://www.paed.uscourts.gov/documents/jury/Jury%20Plan.pdf.

[11]  The plain language of the Lewis email, which was sent after the defense was told it was given everything in the Clerk's possession related to the amendment of the Jury Plan and the morning after the defense filed a Motion to Clarify or Amend ECF 442 (ECF 498), demonstrates that the Clerk had continuing concerns about providing the ordered materials and being transparent because doing so had broader implications.

Nonetheless, after learning of the Lewis email, the Court denied the unopposed Motion to Clarify or Amend, stating that it had "no reason to disbelieve the Clerk's Office's representations to Defendant." (ECF 509). The Court need not disbelieve the Clerk's Office representations to reach the conclusion that additional materials exist that have not been produced. The Clerk's own words in his email (albeit to the government *ex parte* and not intended for the defense), as well as the Clerk's purported need for legal counsel regarding the "Bowers Jury Challenge," reveal that the Clerk was still struggling with whether and how to comply with the Court's orders.

The Clerk of Court, the executive hired by the judges of the court to carry out the court's administrative tasks, operates as an arm of the Court.[12] "The role of the Clerk of Court includes performing functions at the direction of judges, as well as performing purely administrative tasks." *Isasi v. Heinemann*, 08-CV-5284, 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009). There is "'general agreement that court officials ... who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity from suit as to those actions.'" *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quoting *Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir. 1991).

Accordingly, the Clerk of Court should not be aligned with any party to a lawsuit, and certainly not with either party in a capital criminal case. The "alignment of interests" suggested by the Lewis email indicates bias (or the appearance thereof) in favor of the interests of one party – here, the prosecution. Similarly, the Clerk's *ex parte* expression of concern about the "broader implications" of disclosing historical information about the jury selection process in the district and/or the recent changes to the Jury Plan reveals  a loss of the impartiality expected of all court staff. Such views should be explored and explained at an evidentiary hearing, and appropriate steps taken to ensure the completeness of production of jury data and other relevant records.

The fact that the Lewis email was an *ex parte* communication – which Ms. Nixon defends and attempts to explain – would not by itself be a grave concern, though possibly

---

[12] *See* https://www.uscourts.gov/about-federal-courts/judicial-administration.

a violation of the Court's prohibition on *ex parte* contact. Nevertheless, of significant concern is the substance of the communication that establishes an alliance with the prosecution – against the defense – in this case, with a vague reference to broader implications and the possibility of less than full transparency. In addition, the fact the Lewis communication occurred during the defense attempts to seek access to materials and clarify the Court's intention with regard to the Jury Plan amendment, only heightens the concerns about bias and partiality.

The Court's prior decisions indicate that the Court has delegated a good deal of decision-making responsibility to the Clerk of Court concerning the issue of compliance with the Court's orders. (*See, e.g.*, ECF 443, 509.) That being the case, it is critical, especially in a capital case, that that decision-making responsibility be exercised in a fair and impartial manner. Indeed, "[n]ot only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin,* 421 U.S. 35, 46-47 (1975) (quoting *In Re Murchison*, 349 U.S. 133, 136 (1955)).

To determine the motivation for the Lewis email, Mr. Lewis's concerns about production of materials, and why he views the Clerk's (and possibly, the Court's) interests as aligned with the prosecution, the Court should set this matter for an evidentiary hearing. At the very least, the Court should hear sworn testimony from Mr. Lewis and Ms. Nixon, and any other individual who has communicated with Mr. Lewis or Ms. Nixon about the issues of production of the materials the Court ordered in ECF

20

206, 442, and 483. In advance of the hearing, the Court should direct the Clerk of Court

to produce all materials and communications regarding Mr. Bowers' requests for

materials and data. *Cf. Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984) (overturning a

district court's denial of discovery relevant to a claim of bias by an administrative law

judge).

Production of such materials, along with sworn testimony, will permit the Court to

determine whether what appears to be an effort to protect the Court (and possibly the

government in leaving undisturbed the numerous indictments and convictions that could

be impacted if the defense receives full and transparent information leading to a

successful jury challenge), warrants the appointment of a special master to manage the

identification and production of information requested by the parties and directed by the

Court, or other appropriate relief. *See, e.g., Shakman v. Clerk of Cir. Ct., of Cook County*,

69 C 2145, 2019 WL 3842328, at *1 (N.D. Ill. Aug. 15, 2019) (appointing a special

master to "actively monitor the Clerk of Court's Office's compliance with [a consent

decree and order]" and to "advise the Court as to whether 'the Clerk of Court's Office is

or is not in Substantial Compliance with [the consent decree and order]'").

## IV.    Conclusion and Requested Relief

An evidentiary hearing is required to reveal and assess the extent, and impact, of

any conflict of interest or partiality of the Clerk of Court. A hearing is needed to explore

the timing and content of the *ex parte* email to the prosecution team advising of "aligned"

interests with the prosecution and concerns about "broader implications," to identify the

21

interests that are "aligned" with the prosecution, to determine the "broader implications" of the production of court-ordered materials to the defense, and to order the relief appropriate to address the interested party role of the Clerk of Court. The need for this evidentiary hearing surfaced during defense attempts to obtain court ordered data and jury plan related records, while facing resistance and at the same time that the Clerk of Court – an arm of the Court – was purportedly attempting to obtain legal representation by the prosecution team in this very case.

The defense asks the Court to order the the following:

1. Production of all communications (*e.g.*, written documents, notes of oral communications) and other materials by and between the Clerk of Court, his staff and/or Theresa Nixon, with members of the U.S. Attorneys' Office, staff of the Administrative Office of the U.S. Courts, judges and staff of the Western District of Pennsylvania, and other Clerks of Court regarding the defense requests in this case for (i) information regarding the 2020 amendment to the Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors (Jury Plan) (ECF 442) and (ii) information regarding the implementation of the Jury Plan in effect when the Superseding Indictment was returned in this case (ECF 206, 483).

2. An evidentiary hearing to determine whether the Clerk of Court has demonstrated partiality or the appearance of partiality warranting the

appointment of a special master to manage the identification and production of information requested by the parties and directed by the Court, or other appropriate relief.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender

23