IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 2:18-CR-00292-DWA |
| vs. | ) |
| ROBERT BOWERS, | ) |
| Defendant. | ) |

AMBROSE, United States Senior District Judge

**MEMORANDUM OPINION AND ORDER OF COURT**
**RE: MOTION TO SUPPRESS NO. 15**

**SUMMARY**

Defendant filed a Motion to Suppress Evidence of Vehicle Location Data – Motion to Suppress No. 15. [ECF Nos. 302/306]. Defendant brings his Motion to Suppress pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the U.S. Constitution. Id. The Government filed a Response in Opposition thereto. [ECF Nos. 343/355]. The Defendant filed a Reply, and the Government filed a Surreply. [ECF Nos. 384/396 and 401]. After initial briefing was complete, Defendant supplemented his motion with additional authority. [ECF No. 510/512]. The Government filed a supplemental Response, and Defendant filed a Reply thereto. [ECF Nos. 520/522, 535]. After careful consideration and for the reasons set forth below, the Motion to Suppress No. 15 [ECF Nos. 302/306] is denied.

**I. BACKGROUND**

On October 29, 2018, two days after the date of the offense, the Allegheny County District Attorney's Office, at the request of the FBI, conducted a full historical query of Automatic License Plate Reader ("ALPR") data from all sites for Defendant's license plate number. [ECF No.

302/306, 302-1/306-1 (Ex. A)]. The query returned 106 results, which were given to the FBI. See id. According to Defendant, the county's automatic license plate readers captured Defendant's license plate on 106 occasions in 33 different ALPR locations between June 1, 2018 and October 18, 2018. See id. at 2-3. The data captured and provided included the license plate number, that it was a Pennsylvania plate, the GPS coordinates of the camera, the vehicle's direction of travel, the time of capture, the vehicle's make, model, and color, and video for 36 of the captured events. See id.[1] The ALPR information was obtained without a warrant.

Defendant argues that the Government violated the Fourth Amendment by conducting a warrantless search of the ALPR database and, therefore, the ALPR data obtained must be suppressed. In particular, Defendant compares the acquisition of the ALPR records to the acquisition of historical cell site location information ("CSLI"), which the Supreme Court held in Carpenter v. United States, 138 S. Ct. 2206 (2018), was a Fourth Amendment search ordinarily requiring a warrant. The Government responds that the use of ALPR data is not a search within the meaning of the Fourth Amendment, and, although ALPR reveals some information about a person's travel, not enough data is gathered to implicate the privacy rights outlined in Carpenter. [ECF No. 343/355]. Alternatively, the Government argues that the good faith exception to the exclusionary rule applies to save the ALPR evidence from suppression. Id.

## II. ANALYSIS[2]

In Carpenter v. United States, the Supreme Court held that the Government conducts a search within the meaning of the Fourth Amendment when it "accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." 138 S. Ct. at 2233. Noting that individuals have a legitimate expectation of privacy in "the whole of [their] physical movements," the Court found that the all-encompassing and revealing nature of historical

---

[1] According to the Government, the 106 reports include a photo of the license plate and a photo of the back of the car. They also indicate when the car passed by a particular ALPR camera. [ECF No. 343/355, at 2].
[2] After careful review of the submissions, and based on the discussion herein, I find a hearing is not necessary on the instant Motion.

CSLI data collected over a period of time implicates those privacy rights.[3] Consequently, the Government generally must obtain a warrant supported by probable cause before acquiring CSLI; a court order under Section 2703(d) of the Stored Communications Act, which requires a lesser showing, is not enough. Id. at 2221. In so holding, the Supreme Court rejected the view that a warrant was not required simply because the records were held by a third party. Id. at 2222. The Supreme Court cautioned, however, that its holding was a "narrow one" and that it was not expressing a view on matters not before it or calling into question conventional surveillance tools and techniques such as security cameras. Id. at 2220; see also id. at 2221 ("We hold only that a warrant is required in the *rare case* where the suspect has a legitimate privacy interest in records held by a third party." (emphasis added)).

Defendant's argument that the Supreme Court's holding in Carpenter should extend to the ALPR data in this case is unavailing. As set forth in the Government's Brief, ALPR systems "combine high-speed cameras and sophisticated software to capture and convert license plate images into data that can be compared with information in other databases." [ECF No, 343/355, at 1 (quoting Pam Greenberg, Automated License Plate Readers, National Conference of State Legislatures (Feb. 2015))]. Cameras often are placed "in fixed locations" and "automatically and without direct human control locate, focus on, and photograph license plates and vehicles that come within range of the device." Id. at 1-2 (quoting Privacy Impact Assessment for the CBP

---

[3] In describing the unique nature of historical CSLI, the Court noted how it presents even greater privacy concerns than other location monitoring methods, including GPS monitoring of a vehicle, in that, unlike a car, "a cell phone – almost 'a feature of human anatomy,'--tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." Carpenter, 138 S. Ct. at 2218. Thus, "when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." Id.; see also id. ("Whoever the suspect turns out to be, he has effectively been tailed every moment of every day for five years . . . . Only the few without cell phones could escape this tireless and absolute surveillance."). In declining to extend the third-party doctrine to the historical CSLI at issue, the Court reiterated that "[t]his case is not about 'using a phone' or a person's movement at a particular time. It is about a detailed chronicle of a person's physical presence compiled every day, every moment, over several years. Such a chronicle implicates privacy concerns far beyond those [previously] considered." Id. at 2220 (citing Smith v. Maryland, 442 U.S. 735 (1979) and United States v. Miller, 425 U.S. 435 (1976)).

License Plate Reader Technology (July 6, 2020) at 1). ALPRs then convert the license plate number into a computer-readable format, uploading the number, an image of the license plate, and the date and time the photograph was taken into a searchable database. See id.; see also ECF No. 302/306, at 2-3. According to Defendant, the Allegheny County District Attorney's Office operates 350+ ALPRs in and around Allegheny County. As set forth above, the Government, as part of its investigation of this case, obtained ALPR information for Defendant's vehicle from the District Attorney's database, including 106 reports associated with Defendant's license plate number, showing that Defendant's vehicle drove past 33 ALPR locations between June 1 and October 18, 2018. [ECF No. 302/306 & Ex. A]. In its Brief, Defendant provides a map showing the locations of the cameras at issue. Id. at 3.

After careful consideration, I agree with the Government that its acquisition of ALPR data was not a search within the meaning of the Fourth Amendment. A search under the Fourth Amendment occurs where a defendant has a subjective expectation of privacy "that society is prepared to recognize as reasonable." Smith, 442 U.S. at 740. Supreme Court Fourth Amendment jurisprudence has long recognized that a person traveling in a vehicle on public streets does not have a reasonable expectation of privacy in his movements from place to place. See United States v. Knotts, 460 U.S. 276, 281-82 (1983). Likewise, the use of a camera to capture a photograph or a video of an object in plain view is not a Fourth Amendment search, even if the object is on private property or the image is enhanced beyond the vision of the naked eye. See, e.g., Dow Chem. Co v. United States, 476 U.S. 227, 238-39 (1986); California v. Ciraolo, 476 U.S. 207, 214 (1986). With respect to vehicle information, the Supreme Court has specifically stated that "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search'." New York v. Class, 475 U.S. 106, 114 (1986).

Applying this reasoning, courts have overwhelmingly found that there is no reasonable expectation of privacy in the information on license plates. See ECF No. 343/355, at 4-5 (citing numerous cases). As one circuit court has explained, "No argument can be made that a motorist

seeks to keep the information on his license plate private. The very purpose of a license plate number . . . is to provide identifying information to law enforcement and others." United States v. Ellison, 462 F.3d 557, 561-62 (6th Cir. 2006). Similarly, it has been held that the use of cameras for video surveillance of public spaces is not a Fourth Amendment search because individuals do not have a reasonable privacy expectation in such spaces. See ECF No. 343/355 at 5 (citing cases). Finally, courts have held that using a license plate number to retrieve information from a law enforcement database likewise does not constitute a search. See, e.g., Ellison, 462 F.3d at 562; United States v. Diaz-Castaneda, 494 F.3d 1146, 1150-1152 (9th Cir. 2007); Albert v Schwartz, 173 F. App'x 106, 107-08 (3d Cir. 2008).

      Applying these precedents to the case at hand, I find that the FBI's collection of data from the District Attorney's ALPR system pertaining to Defendant's vehicle was not a search under the Fourth Amendment because Defendant did not have a reasonable expectation of privacy in his license plate, the location of his vehicle on a public thoroughfare, or any of the other data retrieved by the ALPR system.

      Contrary to Defendant's arguments, the Supreme Court's narrow holding in Carpenter does not extend to the ALPR technology at issue in this case. Unlike the all-pervasive cell-site location data collection in Carpenter, and its "all-encompassing" and "near-perfect surveillance" of a cell phone user's comings and goings, the ALPR technology at issue captures only the public movements of vehicles that happen to pass by locations on a public street in view of an ALPR camera. Moreover, the cameras capture a snapshot of the rear of the vehicles as they pass by and cannot follow the vehicles or record their every movement. Even in the aggregate, the ALPR cameras 'capability to capture multiple shots of a single vehicle and/or store historical data does not approach the near-constant surveillance of cell-phone users 'public and private moves that so concerned the Court in Carpenter. Rather, the technology is more akin to the conventional surveillance methods, such as security cameras, that the Carpenter Court was careful not to call into question. See Carpenter, 138 S. Ct. at 2220.

5

The few cases to discuss Carpenter in the context of ALPR technology support this finding. For example, in Commonwealth v. McCarthy, 484 Mass. 493 (2020), the Massachusetts Supreme Court reasoned that, although the use of ALPR technology might someday rise to the level of a Fourth Amendment violation if enough ALPRs were used to create a comprehensive picture of an individual's movements, the limited number of ALPRs in the case before it did not reach that threshold. Id. at 509 (noting that the ALPRs did "not divulge the whole of the defendant's physical movements, or track enough of his comings and goings so as to reveal the privacies of life"). Similarly, in a concurring opinion, Judge Bey of the Court of Appeals for the Ninth Circuit stated that he would affirm the district court's finding that the government's warrantless search of a database that aggregated ALPR data did not violate the Fourth Amendment "because the information in the database did not reveal 'the whole of [Yang's] physical movements, 'and therefore did not infringe on that reasonable expectation of privacy." United States v. Yang, 958 F.3d 851, 862 (9th Cir. 2020) (Bey, J. concurring) (citing Carpenter, 138 S. Ct. 2219).[4] Judge Bey expressed doubt that ALPR technology will ever "provide the same 'near-perfect surveillance 'that cell phone location data does," and stated that, regardless, "[c]ontrasted with the nearly 13,000 unique data points—more than 100 per day—that the search of cell phone records in Carpenter revealed, it's not hard to see how that search infringed on Fourth Amendment rights while the search here did not." Yang, 958 F.3d at 863 (Bey, J. concurring); see also United States v. Rubin, No. 18-CR-00568-CRB-1, 2021 WL 3773609, at *5 (N.D. Cal. Aug. 25, 2021) (citing Yang); Chaney v. City of Albany, 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at **8-9 (N.D.N.Y. Aug 16, 2020). Although none of these opinions is binding, I find the judges 'application of Carpenter to ALPR technology to be apt.

---

[4] The majority in Yang did not reach this question because it held that Defendant lacked standing to raise the issue since the vehicle was a rental car that was past due at the time of the surveillance in question. 958 F.3d at 861.

In short, the ALPR cameras in this case captured Defendant's license plate on 106 occasions in thirty-three unique public locations over a four-and-a-half-month period. This limited data collection does not even begin to approach the same degree of information as that gathered in Carpenter, nor does it otherwise implicate similar privacy concerns. Because Defendant did not have a reasonable expectation of privacy in the collection of ALPR data pertaining to his vehicle under the facts of this case, the Government's warrantless acquisition of that third-party data was not a search under the Fourth Amendment and does not implicate any constitutional concerns.

Even if Defendant's Fourth Amendment argument had merit, the good faith exception to the exclusionary rule would render suppression of the ALPR evidence unwarranted. Herring v. United States, 555 U.S. 135, 137 (2009) ("[S]uppression is not an automatic consequence of a Fourth Amendment violation."). The goal of the exclusionary rule is to deter Fourth Amendment violations. Id. at 139-140; see also United States v. Werdene, 883 F.3d 204, 215 (3d Cir. 2018). Exclusion is a "last resort, not our first impulse." Herring, 555 U.S. at 140. If officers acted with an "objectively reasonable good-faith belief that their conduct [was] lawful or when their conduct involve[d] only simple, isolated negligence," there is no deterrent effect justifying exclusion of evidence. United States v. Katzin, 769 F.3d 163, 171 (3d Cir. 2013). The good faith inquiry rests on "'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal 'in light of 'all of the circumstances.'" United States v. Horton, 863 F.3d 1041, 1051 (8th Cir. 2017) (quoting Herring, 555 U.S. at 145).

In this case, there is no suggestion of deliberate, reckless, or grossly negligent disregard of the Fourth Amendment. Carpenter was not decided until spring of 2018, only a few months prior to the shooting in this case and did not involve ALPR technology. Thus, even if courts were to extend Carpenter to ALPR cases, a reasonably well-trained officer would not be expected to make that leap, especially given the Supreme Court's cautionary language that its holding was a narrow one and not intended to overrule prior precedent. Consequently, even if there was a Fourth

7

Amendment violation, the good faith exception to the exclusionary rule applies, and suppression is not warranted.[5]

The recent *en banc* decision of the Court of Appeals for the Fourth Circuit in Leaders of a Beautiful Struggle v. Baltimore Police Dep't, 2 F.4th 330, 333 (4th Cir. 2021) does not change this result. In Beautiful Struggle, a civil case brought by grassroots community activists in Baltimore, Maryland, a divided Fourth Circuit Court of Appeals reversed the denial of Plaintiffs 'motion for a preliminary injunction enjoining the implementation of the Baltimore Police Department's Aerial Investigation Research ("AIR") Program and the Police Department's access to data collected by the AIR program. Id.[6] The AIR program used aerial photography to track movements related to serious crimes. Specifically, multiple planes would fly distinct orbits above Baltimore, equipped with camera technology that captured roughly 32 square miles per image per second. The planes would fly at least forty hours per week, obtaining an estimated twelve hours of coverage of around ninety percent of the city each day, weather permitting. Id. at 334. Each AIR image could be magnified to a point where people and cars were individually visible, but only as blurred dots or blobs. See id. The Baltimore Police Department employed contractors to use the data to track individuals and vehicles from a crime scene and extract information to assist BPD in the investigation of certain violent crimes. See id. The Court of Appeals applied Carpenter to the AIR technology, finding that, similar to the CSLI data in Carpenter, the AIR program "track[ed] every movement" of every person outside in Baltimore and created a "detailed, encyclopedic," record of where everyone came and went within the city during daylight hours over the prior month-and-a-half. Id. at 341. The Court further likened the AIR data collection to attaching an ankle monitor to

---

[5] Indeed, on remand in Carpenter, the Court of Appeals ultimately affirmed the lower court's decision not to suppress CSLI data because it found that the good-faith exception applied. United States v. Carpenter, 926 F.3d 313 (6th Cir. 2019), sentence vacated on other grounds by United States v. Carpenter, 788 F. App'x 364 (6th Cir. 2019).

[6] Prior to the rehearing *en banc*, the Baltimore Police Department had voluntarily discontinued the AIR program. The Court of Appeals, however, rejected the argument that the issue was moot because the Police Department continued to access data collected by the program. See id. at 336-37.

every person in the city. Id. Because the AIR program opened "an intimate window" into a person's associations and activities, the Court held that it violated the reasonable expectation of privacy individuals have in the whole of their movements and, thus, constituted a search within the meaning of the Fourth Amendment. Id. at 342.

I find that Beautiful Struggle is not analogous to the ALPR technology in the case at hand. In addition to the fact that Beautiful Struggle is a case out of the Fourth Circuit and, therefore, is not binding on this court, it was a civil case brought against the police by concerned citizens, and, thus, did not address or involve individual suppression concerns such as those at issue here. Even if I were to agree that the AIR technology in Beautiful Struggle approached the all-encompassing and near-perfect surveillance with which the Carpenter court was concerned, an issue I need not decide, the ALPR technology and data-collection at issue here simply do not approach those levels.

Moreover, and in any event, nothing in Beautiful Struggle alters the good-faith analysis set forth above. It would be unreasonable to expect an officer in 2018 to predict that a non-binding decision in 2021 extending Carpenter to a non-ALPR technology would pull the ALPR system at issue here within the Fourth Amendment's ambit. Because the agents in 2018 acted with an objectively reasonable good-faith belief that a warrant was not required to access the ALPR data, and exclusion would not have a deterrence benefit, suppression is not appropriate.

For all of these reasons, Defendant's Motion to Suppress Evidence of Vehicle Location Data – Motion to Suppress No. 15 – shall be denied.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 2:18-CR-00292-DWA |
| ) | |
| vs. ) | |
| ) | |
| ROBERT BOWERS, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, United States Senior District Judge

### ORDER OF COURT
### RE: MOTION TO SUPPRESS NO. 15

AND now, this 11th day of October, 2021, upon consideration of the Defendant's Motion to Suppress Evidence of Vehicle Location Data – Motion to Suppress No. 15 [ECF Nos. 302/306] and the related submissions, it is ordered that Motion to Suppress No. 15 is denied.

BY THE COURT:

*Donetta F. Ambrose*
_____
Donetta W. Ambrose
United States Senior District Judge