IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) CR 18-292 |
| | ) |
| ROBERT BOWERS | ) |
| | ) |

COLVILLE, District Judge

**OPINION AND ORDER**

**SYNOPSIS**

Defendant has filed a Motion to Transfer Venue Pursuant to Federal Rule of Criminal Procedure 21 and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. (ECF No. 669).[1] The Government has responded (ECF No. 699), and Defendant has filed a Reply (ECF No. 707). Additionally, the Government has filed a Notice of New Authority. (ECF No. 710). For the following reasons, Defendant's Motion will be denied without prejudice.

**OPINION**

In brief, Defendant contends that pretrial publicity in this case warrants a presumption of juror prejudice and consequent change of venue. He seeks relief pursuant to Fed. R. Crim. P. 21(a), which provides as follows: "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." In support of his Motion, Defendant invokes several aspects of the United States Constitution: the Fifth Amendment's guarantee of due process; the Sixth Amendment's guarantee of an impartial jury; and the Eighth Amendment's requirement that a

---

[1] Defendant has filed a separate Motion relating to jury procedures in the Western District of Pennsylvania. (ECF No. 650). No part of today's Opinion relates to, or indicates the Court's position on, that pending Motion.

1

capital jury be able to consider and give effect to mitigation evidence. In this context, this Court is mindful of both the gravity of the constitutional rights at issue and the premise that "[w]e cannot ask for opinion free, blank slate juries, just fair ones." *United States v. Hanes*, No. CR 16-3463 RB, 2017 WL 3602056, at *3 (D.N.M. Jan. 20, 2017).

A defendant seeking a change of venue based on pretrial publicity bears a heavy burden. *United States v. Smith*, No. 4:CR-05-0428, 2006 WL 299863, at *1 (M.D. Pa. Feb. 8, 2006). The Constitution provides that criminal trials shall be held before "an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. However, a court may presume prejudice requiring a new venue "[w]here media or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to preclude a rational trial process[.]" *Rock v. Zimmerman*, 959 F.2d 1237, 1252 (3d Cir. 1992), *overruled on other grounds by Brecht v. Abrahamson*, 507 U.S. 619 (1993). To merit a venue change, that reaction must have been must be "so hostile and pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury." *Id.* at 1252. Otherwise stated, prejudice may be presumed when "publicity in essence displaced the judicial process." *United States v. McVeigh*, 153 F.3d 1166, 1181 (10th Cir. 1998).

Consistent with these principles, "the mere existence of any preconceived notion as to the guilt or innocence of an accused" does not "rebut the presumption of a prospective juror's impartiality." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Similarly, juror exposure to news coverage alone does not deprive a defendant of his constitutional rights. *Skilling v. United States*, 561 U.S. 358, 360 (2010) (quoting *Murphy v. Florida*, 421 U.S. 794, 798-799 (1975)). "Prominence does not necessarily produce prejudice, and juror *impartiality*…does not require *ignorance*." *Id.* (emphasis in original). Indeed, the Supreme Court recently observed that

"[n]otorious crimes are 'almost, as a matter of necessity, brought to the attention' of those informed citizens who are 'best fitted' for jury duty." *United States v. Tsarnaev*, 142 S. Ct. 1024, 1034 (2022) (quoting *Reynolds v. United States*, 98 U. S. 145, 155-156 (1879)). Thus, presumed prejudice is "exceedingly rare," and is employed only under extreme circumstances. *Zimmerman*, 959 F. 2d at 1253; *see also United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010).

In assessing whether a particular matter presents such a rare, extreme case, a court is to assess the totality of the circumstances. *E.g., United States v. Ruedlinger*, No. 97-40012-01-RDR, 1997 WL 752438, at *2 (D. Kan. Nov. 25, 1997). The United States Supreme Court has endorsed the relevance of various factors, including the time elapsed between significant events and trial, and whether the level of media attention has declined over time; the size and characteristics of the community in which the crime occurred; and the content of the news coverage.[2] *Skilling*, 561 U.S. at 361; *see also United States v. Diehl-Armstrong*, 739 F. Supp. 2d 786, 793 (W.D. Pa. 2010).

Here, Defendant is charged with crimes arising out of an attack that occurred on October 27, 2018, more than three years ago. Because no trial date has been set, this interval will have grown by the time a petit jury is empaneled. As Defendant acknowledges, publicity has diminished since the date of the attack. (ECF No. 669 at 22). A close review of the newspaper articles filed of record reveals that initially feverish media attention has cooled markedly over time, in both tone and frequency. Many articles are primarily event-directed and factual; several describe Court proceedings. Others refer to Defendant or the attack only in passing, with the primary focus on another event, person, or concept. Many of the potentially inflammatory

---

[2] Other matters addressed in *Skilling*, such as whether the jury acquitted a defendant of any charges, are inapplicable at this juncture. *See Skilling*, 561 U.S. at 382–83.

articles appeared years ago, in temporal proximity to the attack. Other such articles relate to the public docket and the Government's theory of the case.³ Overall, the publicity did not contain a "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Skilling*, 130 S. Ct. at 2916. The Court further notes that Defendant's Motions to suppress various materials covered by the media, including his statements and social media evidence, have been denied. *See, e.g.*, (ECF Nos. 501, 677). While one would not describe the publicity as advantageous to Defendant, it falls far short of the grossly damaging coverage present in cases in which a change of venue was constitutionally required. *See Rideau v. Louisiana*, 373 U.S. 723 (1963).⁴

Together with the tone, timing, volume, and content of the pretrial publicity to date, the Court has evaluated Defendant's other submissions and arguments, including those concerning the nature of Squirrel Hill and Pittsburgh's Jewish population, and the outpouring of community support following the attack. The Court has also thoroughly reviewed Dr. Bryan Edelman's report regarding news coverage and the results of a telephone survey, as well as the data underlying that report, and the declaration of Dr. Veronica Dahir endorsing the survey.⁵ (ECF

---

³ Articles that are inherent to legal proceedings, even if they recount sensational or inflammatory subject matter, may be "as factual and objective as possible under the circumstances." *See Diehl-Armstrong*, 739 F. Supp. 2d at 795; *see also, e.g.,* (ECF Nos. 44, 86).

⁴ *Rideau* is one of only a handful of cases in which the Supreme Court has found presumed prejudice justified. In *Rideau*, the defendant confessed to his crime on film, in response to leading questions and without counsel present, while flanked by three officers. *Rideau*, 373 U.S. at 724, 726. The confession was broadcast on television for three consecutive days. *Id.* at 724. On those days, the broadcast was viewed by estimated audiences of 24,000, 53,000, and 29,000, respectively, in a parish with a population of 150,000. *Id.* Swiftly thereafter, defendant was convicted and sentenced. *Id*. The Court characterized the proceedings as a "kangaroo court," observing that the televised confession was "in a very real sense … [defendant's] trial -- at which he pleaded guilty to murder. Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." *Id.* at 726. Other cases in which the Supreme Court has endorsed the presumption, *Estes v. Texas*, 381 U.S. 532 (1965), and *Sheppard v. Maxwell*, 384 U.S. 333 (1966), rested, in large part, on the effects of the media's physical presence during courtroom proceedings. Defendant raises no such argument here.

⁵ The Government raises several concerns about the survey and resulting report. (ECF No. 699 at 14-18). Dr. Dahir's declaration, which supports the survey's soundness, responds to the Government's concerns. (ECF No. 707-1). An evidentiary hearing to delve into the survey's reliability is not necessary at this time. The Court has

Nos. 669-1, 669-2, 707-1).  Alongside these materials lie other significant facts.  For example, this judicial district's 2016 Master Jury Wheel was created from a voter registration list of 1,920,222 voters from the 13 counties that make up this Court's Pittsburgh Division. (ECF No. 699 at 10, citing ECF No. 659-2 at 2).  Those 13 counties encompass both rural and urban areas, with various metrics of population diversity readily discernible via census data.[6]  Moreover, the Government points to 2020 census data indicating that the Citizen Voting Age Population of the Pittsburgh Division is 2,168,838.  (ECF No. 699 at 10).  "Given this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain."  *Skilling*, 561 U.S. at 382.

At this stage of the proceedings, and considering all pertinent factors individually and together, the Court concludes that a presumption of prejudice and consequent change of venue are not warranted. Under applicable standards, the publicity at issue does not present the type of relentless, saturating, and blatantly prejudicial exposure that warrants the relief sought.  It is not now apparent that any reasonably constructed, let alone "even the most careful," voir dire process would be insufficient to ensure an impartial jury.  The issues, however, may be revisited at a later stage in this proceeding, if circumstances suggest that the ability to empanel a fair and impartial jury has been compromised.  Therefore, Defendant's Motion will be denied without prejudice. An appropriate Order follows.

---

considered Defendant's submissions alongside the other evidence and the Government's contentions, and in accordance with applicable law.

[6] *See, e.g.*, https://www.census.gov/quickfacts/fayettecountypennsylvania; https://www.census.gov/quickfacts/alleghenycountypennsylvania (Accessed March 3, 2022).  While this comparison of Fayette and Allegheny counties is used here solely for the purpose of rudimentary illustration, courts may take judicial notice of census data. *See, e.g., Taza Sys., LLC v. Taza 21 Co., LLC*, No. 2:11cv073, 2013 WL 5145859, at *10 (W.D. Pa. Sept. 13, 2013)

BY THE COURT:

/s/Robert J. Colville

Robert J. Colville
United States District Judge

Dated: March 18, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) CR 18-292 |
| | ) |
| ROBERT BOWERS | ) |
| | ) |

COLVILLE, District Judge

## ORDER

AND NOW, this 18th day of March, 2022, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Transfer Venue Pursuant to Federal Rule of Criminal Procedure 21 and the Fifth, Sixth, and Eighth Amendments to the United States Constitution (ECF No. 669) is DENIED without prejudice, as stated in the foregoing Opinion.

BY THE COURT:

/s/Robert J. Colville

_____

Robert J. Colville
United States District Judge

cc: All counsel of record