IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

**UNITED STATES' MOTION FOR PRETRIAL DISCLOSURE OF DEFENDANT'S PROPOSED MITIGATING FACTORS, FOR MEANINGFUL NOTICE PURSUANT TO RULE 12.2(b)(2), AND TO APPROVE THE USE OF FIREWALL COUNSEL**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, Troy Rivetti, Soo C. Song, and Eric G. Olshan, Assistant United States Attorneys for said district, and Julia Gegenheimer, Special Litigation Counsel, Civil Rights Division, and hereby files the following motion requesting that this Court: (1) order defendant Robert Bowers to provide pretrial notice of proposed penalty phase mitigating factors; (2) order sufficiently detailed notice of the defendant's anticipated mental health evidence pursuant to Fed. R. Crim. P. 12.2(b)(2); and (3) approve the appointment of firewall counsel.  The requested pretrial disclosures and procedures will ensure meaningful compliance with Rule 12.2, provide for fundamental fairness and judicial economy, and will ameliorate the risk of substantial delay between the guilt and penalty phases of the trial.  See Doc. No. 723 at 2-3 (recognizing that the issue of pretrial production of mitigating factors is "intertwined, at least to some extent, with the Government's request to submit supplemental briefing as to the content of Rule 12.2(b)(2) Notice and the use of firewall counsel").

I.     **The Court Should Order Disclosure of Defendant's Proposed Mitigating Factors 60 Days Prior to Trial**

The United States respectfully requests pretrial disclosure of the defendant's proposed mitigating factors to coincide with the filing of his Rule 12.2(b)(2) notice; that is, 60 days prior to trial, (i.e., the commencement of voir dire).  See Doc. No. 640 (resetting the deadline for providing Rule 12.2(b)(2) notice to 60 days prior to trial).  Requiring timely disclosure of the defendant's proposed mitigating factors will assure the fair and meaningful exercise of the government's statutory right of rebuttal, aid in the selection of an impartial jury, and contribute to the truth-seeking process of trial.  See United States v. Tsarnaev, No. 13-CR-10200-GAO, 2014 WL 4823882, at *5 (D. Mass. Sept. 24, 2014).

To achieve individualized capital sentencing, the Eighth Amendment permits broad consideration of, among other things, evidence of the defendant's character and background.  See Woodson v. North Carolina, 428 U.S. 280, 304 (1976).  Consistent with this principle, the Federal Death Penalty Act ("FDPA") requires the United States to give notice of aggravating factors at a reasonable time before trial.  18 U.S.C. § 3593(a).  The FDPA also expressly provides the United States with the right to rebut mitigating factors, although it does not impose an express temporal, reciprocal notice duty on the defense: "The government and the defendant shall be permitted to rebut any information received at the [penalty phase] hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death."  18 U.S.C. § 3593(c).

This Court should exercise its inherent authority and discretion to ensure timely disclosure of proposed defense mitigation factors.  The Federal Rules of Criminal Procedure provide for such discretion: "A judge may regulate practice in any manner consistent with federal law, these rules,

and the local rules of the district." Fed. R. Crim. P. 57(b); see Tsarnaev, 2014 WL 4823882, at *9 (citing United States v. Wilson, 493 F. Supp. 2d 464, 466-67 (E.D.N.Y. 2006)); United States v. Taveras, 2006 WL 1875339, at *8-9 (E.D.N.Y Jul. 5, 2006); United States v. Catalan Roman, 376 F. Supp. 108, 115-17 (D.P.R. 2005).

Courts routinely require disclosure of defense mitigation in federal capital cases pursuant to this broad authority.  See, e.g., Wilson, 493 F. Supp. 2d at 466 (finding that "in order for the Government to have the 'fair opportunity' [of rebuttal] required by statute, it is necessary that the Government have notice of the mitigating factors that Wilson intends to prove");[1] United States v. Christensen, Case No. 17-cr-20037-JES-JEH, 2019 WL 1976442 at *6-7 (C.D. Ill., May 3, 2019); United States v. Roof, No. 2:15-cr-00472-RMG, Doc. No. 281 (D.S.C. July 26, 2016) (ordering pretrial production of mitigation: "Subject to Defendant's reservation of his objection to any requirement that he provide notice of mitigating factors, the parties have agreed that Defendant will provide notice of mitigating factors not related to mental health no later than August 22, 2016, and that Defendant will promptly provide supplemental notice of additional mitigating factors not known to Defendant by August 22, 2016 promptly. The Court GRANTS the joint motion, and ORDERS Defendant to provide the Government notice of mitigating factors not related to mental health by August 22, 2016 and to promptly supplement that notice if additional mitigating factors become known to Defendant after August 22, 2016."); Tsarnaev, 2014 WL 4823882, at *5; United States v. Sampson, No. 1:01-cr-10384-MLW, Doc. No. 1319 (D. Mass. Mar. 19, 2014) (attached as an Exhibit); Taveras, 2006 WL 1875339, at *8-9; Catalan Roman, 376 F. Supp. 2d at 114-15; United States v. Lujan, 2011 WL 13210665, at *1-3 (D.N.M. Aug. 24, 2011) (affirming district court's authority to require disclosure of list of mitigating factors prior to sentencing phase of trial).

---

[1]      The court later struck certain mitigating factors for which the defendant failed to give timely notice and did not have good cause for such non-disclosure.  See United States v. Wilson, 493 F. Supp. 2d 520, 524 (E.D.N.Y. 2007).

But see United States v. Smith, 2019 WL 11863733 at *1-2 (D. Alaska Dec. 9, 2019) (requiring pretrial disclosure of the defendants penalty phase witness list, but allowing defendant to withhold mitigating factors until the beginning of the penalty phase); United States v. Council, 2018 WL 2090643, at *1-5 (D.S.C. May 2, 2018) (denying government's motion for disclosure of mitigating factors); United States v. Con-Ui, No. 3:13-cr-00123-ARC, Doc. No. 1157 (M.D. Pa. June 2, 2017) (text order) (same); United States v. McCluskey, 2013 WL 12329717, at *2 (D.N.M. July 2, 2013) (same before guilty verdict).  The Court should follow the line of cases in which courts have recognized their authority to order pretrial disclosure of mitigating factors.

Without sufficient time to investigate and prepare to rebut the defendant's proposed mitigating factors, the United States' statutorily granted right of rebuttal would be illusory, undermining the fairness and truth-seeking function of sentencing.  The district court in Catalan Roman recognized as much, explaining that "[w]here faced with procedural gaps arising under the FDPA because of its silence regarding disclosure, courts are crafting appropriate procedures pursuant to their inherent powers, importing standards from the Federal Rules." 376 F. Supp. 2d at 115 (applying Fed. R. Crim. P. 16 and 57(b) to capital sentencing hearing to require disclosure of non-mental health mitigation).  Thus, the court held that "the fair and efficient administration of justice, avoiding surprise and ensuring an informed sentencing determination" militated in favor of pre-trial disclosure of non-mental health mitigating factors.  Id. at 114; see also Sampson, Doc. No. 1319 (ordering the defendant to provide pretrial notice of the mitigating factors he may seek to prove at trial); Taveras, 2006 WL 1875339, at *8-9 (noting that the defendant provided a pretrial list of 109 mitigating factors pursuant to court order granting government's motion for reciprocal discovery of mitigating factors).

Pretrial disclosure of proposed mitigators will permit efficient litigation of their legality and propriety under the FDPA.  Almost three years ago, the United States provided notice to defendant Bowers of the aggravating factors that it intends to prove during the penalty phase— both through the Notice of Intent, see Doc. No. 86, and its production of voluminous discovery. In response, the defendant has attempted to strike multiple aggravating factors, with the Court denying relief after full briefing and careful consideration.  See, e.g., Doc. Nos. 241, 250, 253, 335.  Similarly, the United States anticipates challenging mitigating factors proposed by the defendant.  This Court's ability to thoroughly review any such challenges and the propriety of Robert Bowers's proposed mitigation will be substantially enhanced by a pretrial disclosure schedule.  Deferring notice until after the guilt phase of trial is far more likely to result in hasty briefing and deliberation, would be inimical to judicial economy, and risks unfairly skewing the penalty phase evidence. Catalan Roman, 376 F. Supp. 2d at 114 ("the adequate preparation eased by early disclosure will contribute to the truth-seeking process, resulting in a more reliable sentencing determination").  Pretrial disclosure of mitigating factors will also eliminate any unwarranted surprise.  See Williams v. Florida, 399 U.S. 78, 82 (1970) (a criminal trial is not a "poker game in which the players enjoy an absolute right always to conceal their cards until they are played").

Nor does pretrial disclosure of mitigating factors impose an onerous burden on the defense, who has been preparing his defense for the last 44 months.  The defendant has already been ordered to provide his penalty phase expert notice regarding any mental disease or defect 60 days prior to trial.  See Doc. No. 640.  Defendant Bowers should be able to reasonably assess any other anticipated mitigation no later than the filing of his Rule 12.2 notice. The pretrial disclosure of defense mitigation also does not raise Fifth Amendment concerns because the United States will

not seek to use defense mitigation against the defendant at trial.  See Tsarnaev, 2014 WL 4823882, at *9.  Moreover, in the course of litigating the penalty phase of the trial, Robert Bowers will have to disclose his proposed mitigating factors to the jury.  "[T]here is no constitutional violation by requiring a defendant to disclose mitigating information he intended to offer the jury anyway." Catalan Roman, 376 F. Supp. 2d at 117.

Finally, "the disclosure of [mitigating] information may be necessary to select a fair and impartial jury."  Tsarnaev, 2014 WL 4823882, at *9.  This Court and the parties have and will continue to invest substantial time and resources to develop thorough juror questionnaires and voir dire procedures.  The pretrial disclosure of defense mitigating factors will better enable the selection of unbiased jurors who are neither positively or negatively predisposed in relation to Robert Bowers's proposed mitigating factors.

## II.    Notice Under Rule 12.2(b)(2) Must be Detailed and Complete

The United States has consistently encouraged the Court to order Robert Bowers to file meaningful pretrial notice of mental health evidence pursuant to Rule 12.2 in the interests of fairness and to avoid undue delay.  Beginning on January 22, 2020, and continuing through the present, the United States has filed numerous pleadings urging the Court to advance the mental health aspect of the prosecution against Robert Bowers, an issue that will require significant deliberation and court intervention to resolve.  See Doc. Nos. 180, 195, 197, 245, 275, 340, 372, 409, 446, 470, 591, 628, 639, 719-1, 724.

As early as January 2020, the government sought a briefing schedule for defendant to provide notice under Fed. R. Crim. Pro. 12.2(a) and (b).  See Doc. No. 180.[2]  The Court agreed to

---

[2]     The United States' Motion to Set Deadlines for Meaningful Notice of Defendant's Intent to Use Mental Health Evidence, Doc. No. 180, which fully addresses these issues both at the guilt and penalty phase of a federal criminal trial involving a death-eligible offense, is fully incorporated here by reference.  See also Response in Opposition by United States to Defendant's Request to File Document Concerning Confidential Defense Mental Health Investigation Information Under Seal and Ex Parte, Doc. No. 372, and attached Exhibits, Doc. Nos. 372-1 and

consider the issue prospectively while declining to order the immediate production of such notice by the defendant.  Doc. No. 208.  The parties attempted to reach agreement regarding the timing of mental health notices throughout 2020, and in April 2021, the United States filed a motion seeking the defendant's meaningful notice pursuant to Rule 12.2 and also seeking the Court's approval and appointment of firewall counsel to facilitate the exchange of information.  See Doc. No. 446.  The United States also provided substantial legal support for the requirements of notice meaningful enough to enable the United States' preparation of rebuttal evidence.  See id.

After multiple defense-driven extensions of the date upon which the defendant's 12.2 notice had to be filed, the Court eventually acquiesced to a defense request that Rule 12.2(b)(1) and (b)(2) notice be bifurcated.  See e.g., Doc. Nos. 507, 519 at 6-8 (Transcript of July 12, 2021, Status Conference), 588, 640.

On January 31, 2022, the defendant filed a one-sentence notice that he did not have a "present intent to introduce expert testimony relating to a mental disease, defect or other mental condition bearing on the issue of guilt."  Doc. No. 687 (caveating the phrase "present intent," and citing multiple historic defense requests for delay predicated upon COVID-19).[3]  Thus, the defendant's critical notice pursuant to Rule 12.2(b)(2), pertaining to penalty phase mental health evidence, remains outstanding.  Per Judge Ambrose's order, that notice is to be filed not later than 60 days prior to trial.  Doc. No. 640.  In anticipation of that deadline, the government requests the Court establish the following parameters for the defendant's Rule 12.2(b)(2) notice.

### A.  All Testing Should Be Complete

---

372-2 (mental health expert affidavits explaining manner in which mental health assessments and examinations continued despite COVID-19).

[3]       See Doc. Nos. 218, 227, 243, 273, 338, 404, 588, 592, 636.

As a threshold matter, the United States requests that the Court require that all testing, examinations, and evaluations of the defendant by any defense mental health expert be completed prior to any deadline that the Court sets for the defendant's Rule 12.2 notice.  Requiring completed examinations prior to the notice deadline ensures that any such notice is, in fact, meaningful and complete, and that the defendant does not inadvertently and unnecessarily cause delay in these proceedings by way of belated mental health examination and testing.

Requiring meaningful notice predicated upon completed testing and examination of the defendant will ameliorate the risk of any potential delay between the guilt and penalty phases of trial in this case and enable the United States to prepare an appropriate rebuttal.  Therefore, the United States requests an order requiring the defendant to complete all testing, evaluations, and examinations prior to the Rule 12.2 notice deadline.

### B.  Content of Defendant's Penalty-Phase Rule 12.2 Notice

Although Rule 16 applies to the penalty phase of a capital case, not all of the reciprocal notice obligations contained in Rule 16(b) can be fulfilled at the time a defendant files his Rule 12.2(b)(2) notice because of the restrictions on penalty-phase mental health disclosures imposed by Rule 12.2(c)(3).  Accordingly, the contents of a Rule 12.2(b)(2) notice (addressing penalty-phase mental health evidence) will differ from other Rule 12.2 notice (addressing guilt-phase mental health evidence).  The United States therefore requests that this Court order that the defendant's Rule 12.2(b)(2) penalty-phase notice include (1) the name of each mental health expert who the defendant will rely upon, including those who reviewed records and/or testing results but did not personally examine the defendant; (2) each expert's qualifications; and (3) a list of the specific tests administered to the defendant by each expert, including any tests not personally administered by the testifying expert, but upon which the expert will rely.

Courts have routinely construed Rule 12.2(b) to require <u>meaningful</u> notice to the prosecution team of the defendant's anticipated mental health examinations and evidence – not just perfunctory notice of a defendant's general intent to introduce mental health evidence during the penalty phase.  Meaningful Rule 12.2(b) notice must "provid[e] the government with an opportunity to conduct the kind of investigation needed to acquire rebuttal testimony."  <u>United States v. Johnson</u>, 362 F. Supp. 2d 1043, 1079 (N.D. Iowa 2005) (citing <u>United States v. Sampson</u>, 335 F. Supp. 2d 166, 242-43 (D. Mass. 2004)).  Providing meaningful notice to the prosecution team in advance of trial is critical to the United States' ability to adequately identify, investigate, and, where appropriate, rebut the defendant's claims regarding his mental condition.  <u>See Kansas v. Cheever</u>, 571 U.S. 87, 94 (2013) (failing to allow government to present rebuttal psychiatric evidence would "undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime").

Accordingly, the defendant's Rule 12.2(b) notice should include the names and professional qualifications of the defense mental health experts upon whom the defendant may rely at trial.  <u>See United States v. Beckford</u>, 962 F. Supp. 748, 763-64 (E.D. Va. 1997); <u>United States v. Taylor</u>, 320 F. Supp. 2d 790, 791 (N.D. Ind. 2004) (referencing prior order requiring defendant to provide identities and qualifications of mental health experts who will testify or whose opinions will be relied upon); <u>Johnson</u>, 362 F. Supp. 2d at 1079-81 (concluding that disclosure of experts' "specific identities, and hence, their qualifications" sufficiently narrowed the scope of conditions they might reasonably diagnose and was adequate under Rule 12.2 without further disclosure of the experts' actual diagnoses); <u>United States v. McCluskey</u>, No. 10-CR-2734, Doc. No. 219 at 1 (D.N.M. Sept. 9, 2011) (ordering that defendant's Rule 12.2 notice include "the

name and professional qualifications of any mental health professional who will testify as an expert and a brief, general summary of the topics to be addressed that is sufficient to permit the Government to determine the area in which its expert must be versed") (Attached as an Exhibit); United States v. Cramer, No. 1:16-CR-26, Doc. No. 378 at 1 (E.D. Tex. Feb. 21, 2018) (requiring that Rule 12.2 notice "include the names of each expert, types of experts, and the specific tests administered in their examination of Defendants") (Attached as an Exhibit).[4]  Indeed, as one district court found, "the right to offer rebuttal testimony . . . would be a hollow one indeed without discovery into the mental condition of an accused."  United States v. Fell, 372 F. Supp. 2d 753, 759 (D. Vt. 2005); see also Wilson, 493 F. Supp. 2d at 355-56 (applying reciprocal discovery provisions of Rule 16(b) to penalty-phase mental health evidence).

Adequate notice also requires identification of "the nature of the tests that the defendant's experts have performed or will perform, e.g., the MMPI-2, the WAIS-2, etc., in the course of their evaluations of the defendant." Johnson, 362 F. Supp. 2d at 1080 (citing Sampson, 335 F. Supp. 2d at 242-43).  Requiring this type of information in the defendant's notice is necessary to permit the prosecution team to hire the appropriate expert(s) to respond meaningfully to any mental health claims the defense asserts.  Thereafter, pursuant to a scheduling order set by the Court, the United States will file any related motions seeking the court-ordered examination of the defendant.

In recognition of both the strictures of Rule 12.2(c)(3) and the government's need for meaningful notice under 12.2(b)(2), the United States therefore requests that the Court order that the defendant's Rule 12.2(b)(2) penalty-phase notice include (1) the name of each mental health expert who the defendant will rely upon, including those who reviewed records and/or testing

---

[4]     Some courts have ordered defendants to produce only the types of experts upon which they would rely in penalty hearing Rule 12.2 notices.  Based upon the cases cited herein and in order to avoid unnecessary delay, the better practice is for the defendant to provide meaningful notice and for the Court to require disclosure of the identities of the experts.

results but did not personally examine the defendant; (2) each expert's qualifications; and (3) a list of the specific tests administered to the defendant by each expert, including any tests not personally administered by the testifying expert, but upon which the expert will rely.

### III.   Approval of Firewall Counsel

The United States renews its request that the Court approve the appointment of firewall counsel from outside the Western District of Pennsylvania to handle all pretrial matters – including any issues that need to be negotiated or presented to the Court – relating to Rule 12.2(b)(2) mental health issues.  See Doc. No. 446.  Use of firewall counsel will avoid trial delay by enabling the government to timely prepare for mental health aspects of the penalty phase, while simultaneously protecting Robert Bowers's Fifth Amendment privilege against self-incrimination.   Firewall counsel will not provide any information to the United States' trial team until after the defendant's disclosures are required by Rule 12.2(c)(2) (i.e., after a death-eligible conviction and subsequent reassertion of the defendant's intention to offer mental health evidence in the penalty phase of the trial).

In the interests of full and fair discovery regarding penalty-phase mental health evidence, many courts have approved the use of firewall counsel in the context of Rule 12.2(b).  See, e.g., Wilson, 493 F. Supp. 2d at 350-60; Sampson, 335 F. Supp. 2d at 243-45; Johnson, 362 F. Supp. 2d at 1082-84; United States v. Northington, No. 07-550-05, 2012 WL 2873360, at *7-8 (E.D. Pa. July 12, 2012).  Indeed,

> Rule 12.2's goal of avoiding delays in capital sentencing proceedings would not be served if any problems with the government testing were not revealed until after the guilt phase.  The defendant could suffer no prejudice from the fire-wall procedure.  Indeed, the procedure might provide the defendant with an even greater sense of security that his defense strategy … would remain hidden from the prosecution team.

Sampson, 335 F. Supp. 2d at 245; see also Northington, 2012 WL 2873360, at *7 ("[T]he use of this firewalled attorney will sufficiently safeguard Defendant's constitutional rights.").

The utilization of firewall counsel protects the defendant's rights while enabling the United States to fairly and timely respond to defense mental health evidence.  The appointment of government firewall counsel allows an earlier exchange of mental health evidence and assures that a defendant is insulated against any potential acquisition and improper use of court-compelled statements by the prosecution team during the guilt phase of trial.  United States v. Williams, 731 F. Supp. 2d 1012, 1026 (D. Haw. 2010); United States v. Umana, 2009 WL 2489309, *3-4 (W.D.N.C. Aug. 12, 2009); United States v. Lujan, 530 F. Supp. 2d 1224, 1239-40 (D.N.M. 2008); Wilson, 493 F. Supp. 2d at 353–57; Johnson, 362 F. Supp. 2d at 1082–84.

Accordingly, the United States hereby requests that the Court approve the appointment of an Assistant United States Attorney from another district to serve as government firewall counsel under terms and conditions to be set forth in the appointment order.  The United States is prepared to submit the name, address, and capital-litigation experience of proposed firewall counsel for the Court's consideration, as well as a proposed order addressing restrictions and specifics upon the sharing of information.

### IV.    Conclusion

This Court is vested with discretion to craft procedures that serve judicial economy and the interests of justice, conform to the parameters of Rule 12.2, and minimize potential delay between the guilt and penalty phases of the impending trial against Robert Bowers.  Given the challenges and protracted delays wrought by the COVID-19 pandemic, it is imperative that this Court and the parties avoid any and all unwarranted future delay.  Thus, the United States respectfully requests that the Court order the defendant to (1) provide pretrial notice of the mitigating factors he intends

to present in an eventual penalty phase proceeding; (2) provide meaningful notice of any mental health evidence under Rule 12.2(b)(2), including names and qualifications of experts and any specific examinations those experts performed (as further outlined above); and (3) approve the appointment of firewall counsel to facilitate full and fair discovery regarding penalty-phase mental health evidence.  A Proposed Order is attached for the Court's consideration.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

By:     s/Troy Rivetti
        TROY RIVETTI
        Assistant U.S. Attorney
        PA ID No. 56816

        s/Soo C. Song
        SOO C. SONG
        Assistant U.S. Attorney
        DC ID No. 457268

        s/Eric G. Olshan
        ERIC G. OLSHAN
        Assistant U.S. Attorney
        IL ID No. 6290382

        s/Julia Gegenheimer
        JULIA GEGENHEIMER
        Special Litigation Counsel
        Civil Rights Division
        NY ID No. 4949475

.