IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**RESPONSE IN OPPOSITION TO GOVERNMENT MOTION FOR PRETRIAL DISCLOSURE OF DEFENDANT'S PROPOSED MITIGATING FACTORS, CONTENT OF RULE 12.2 NOTICE AND FIREWALL (ECF 742)**

Robert Bowers, through counsel, files this response in opposition to the government's motion for pretrial disclosure of proposed mitigating factors (seeking notice 60 days before trial begins). ECF 742 at 1-6. As its primary reason for requesting pretrial production of the proposed mitigating factors, the prosecution relies on its need for time to rebut the defense case in mitigation. Given the government's admitted use of its considerable resources to conduct multiple interviews with Mr. Bowers' family and associates, subpoena voluminous documents, and compel witnesses to testify before the grand jury, such a request for time rings hollow.

With respect to the its Rule 12.2 and firewall counsel requests, ECF 742 at 6-13, the government repeats—mostly verbatim—its prior briefing on these topics. The government's expansive view of a Rule 12.2(b)(2) notice, its proposed severe restrictions on the defense use of its experts, and its request for firewall counsel over defense opposition are not supported by any statute or rule and have not been adopted by the majority of district courts.

## I.    Opposition to Pretrial Disclosure of Mitigating Factors

"Mitigating factors" are anything about the defendant's background, character, the circumstances of the crime, or any other circumstance that any individual juror or jurors concludes favors a life without release sentence. These "factors" arise primarily out of evidence presented by the defense during the penalty phase of the case. The scope and language of the "factors" are defined by the evidence presented to the jury, not merely speculative or vague expectations of what will be presented. Some courts have, nevertheless, compelled the defendant to disclose a list of mitigating factors prior to presentation of the penalty phase evidence, yet the cases cited by the government do not support production of such a "list" 60 days before the trial begins.

The prosecution asks this Court to compel disclosure of "mitigating factors" on the same date as the Rule 12.2(b)(2) notice deadline, which is set 60 days before trial. The motion alternatively refers to "proposed mitigating factors," "defense mitigation," "proposed mitigators," and "anticipated mitigation." *E.g.,* ECF 742 at 2-3, 5. Regardless of the shifting terminology in the pleading, the government appears to seek a list of "mitigating factors" that might ultimately be included on a penalty phase verdict form. *See, e.g.,* Special Verdict Form, Penalty Phase*, United States v. Con-Ui,* No. 13-cr-123, ECF 1242 (M.D. Pa., July 11, 2017), attached as Exhibit A, at 11-19, 35-45.

The prosecution does not base its request on any statute or rule and does not make any rational connection between the Rule 12.2(b)(2) notice and other mitigating factors.[1] It instead relies on a handful of district courts that have ordered the defense to produce a list of mitigating factors and seeks to invoke the inherent authority of this Court to compel disclosure. The stated reasons for this request is to allow time for the prosecution to investigate rebuttal, to challenge mitigating factors, and to aid in the selection of an unbiased jury. The request for pretrial disclosure of mitigating factors should be denied.

(1)     The prosecution's complaint that it needs pretrial discovery of the defendant's mitigating factors in order to have time to prepare a rebuttal case rings hollow, particularly in light of (i) the multiple interviews of family members and associates of Mr. Bowers already conducted by the FBI, including some in which the prosecution's attorneys participated, and (ii) the use of the grand jury to subpoena voluminous documents and interrogate family members about Mr. Bowers. Indeed, the prosecution has belittled the defense team for delaying field investigation because of COVID-19 pandemic related concerns, essentially advising the Court that it had already, pre-pandemic, developed and provided substantial information about the case in mitigation. *See, e.g.,* ECF 724, at 5 ("[T]he United States gathered and disclosed to the defendant voluminous records pertaining to [Bowers] life history, including information about his employment, educational background, financial history, cell phone usage,

---

[1] The government simply guesses that the defendant "should be able to reasonably assess any other anticipated mitigation no later than the filing of his Rule 12.2 notice." ECF 742 at 5.

online activity, and medical history . . . copies of interviews of the defendant's

employers, as well as extensive statements by the defendant's family members regarding

his life history."); ECF 409, at 4 ("[A] great deal of this type of information [mitigation

evidence], in fact, was collected by the United States and provided to the defendant as

part of pretrial discovery in this case."); ECF 370, at 13 ("In terms of the fieldwork and

doing interviews with family members or historical [sic], we have provided a great deal

of that information to defense counsel"). And yet, in this current motion, the government

pretends to be in the dark, without any information on which to prepare its rebuttal case.

The bottom line is the prosecution has vast resources available to it, and it has deployed

these resources to investigate this case. Indeed, when it serves its purposes, the

government has repeatedly asserted it has already investigated the defense case in

mitigation.

    (2)    Neither the Federal Death Penalty Act (FDPA) nor the Federal Rules of

Criminal Procedure allow for the early disclosure the government seeks. In effect, the

government attempts to circumvent the law in an apparent attempt to gain an undue

advantage and potentially prejudice Mr. Bowers. Had Congress intended this sort of

discovery, it could have included it in the FDPA or the Federal Rules of Criminal

Procedure. The government invites the Court to insert an additional defense obligation to

the FDPA under Federal Rule of Crim. Pro. 57(b)[2] that does not exist, and which would

---

[2] Rule 57(b) provides, in pertinent part: "Procedure When There Is No Controlling Law. A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district court."

further tip the advantage to the government at the cost of Mr. Bowers' constitutional rights.

Under the FDPA, if a defendant is found guilty of an offense for which a death sentence is provided, the trial proceeds to a penalty phase, where the jury considers both mitigating and aggravating factors to determine the punishment. Sections 3592 and 3593 establish the government's obligation to provide notice of any aggravating factors upon which it intends to rely. Section 3592 contains four distinct subsections – subsection (a) addresses mitigating factors, and subsections (b) through (d) address aggravating factors. Subsections (b) through (d) each include two references to the government's obligation to provide notice of aggravating factors. *See* 18 U.S.C. §3592 (b), (c), (d) (limiting aggravating factors to those "for which notice has been given"). Section 3593 further explains the government's obligation to provide notice of aggravating factors.

By comparison, there is no suggestion of a notice requirement with regard to the mitigating factors in either §3592 or §3593. Indeed, the government's attempt to craft and impose such an off-books discovery obligation on the defense follows failed efforts in Congress to amend the statute to impose such an obligation. The 110th Congress (January 2007-January 2009) considered three separate bills proposing an amendment to 18 U.S.C. § 3593 to add a new section, proposed 18 U.S.C. §3593(b)(1), as follows:

(b) Notice by the defendant. --
(1) If, as required under subsection (a), the government has filed notice seeking a sentence of death, the defendant shall, a reasonable time before the trial, sign and file with the court and serve on the attorney for the government, notice setting forth the mitigating factor or factors that the defendant proposes to prove mitigate against imposition of a sentence of death.

Congressional Research Service, CRS Report for Congress, The Death Penalty: Capital

Punishment Legislation in the 110th Congress (2007), at 12.[3] The proposed legislation

did not pass. This Court should not impose a duty of disclosure on the defense that

Congress considered and rejected. *See United States v. Fell*, Case No. 01-12, Order On

Motion For Disclosure of Mitigating Factors, ECF 1144 (D. Vt., Jan. 27, 2017), attached

as Exhibit B, at 1 (noting that Congress declined to enact an amendment to

the FDPA requiring such disclosure, and ruling that "[t]he court will not impose

discovery obligations on the defendant which exceed the specific requirements of

the FDPA and the federal rules.").

  (3)  Premature disclosure of mitigating factors interferes with Mr. Bowers'

Fifth and Sixth Amendment rights. Disclosure of mitigating factors even before a

defendant is found guilty necessarily reveals defense strategies for sentencing, which is

privileged work product. And, though the government denies that pretrial disclosure will

raise Fifth Amendment concerns because it "will not seek to use defense mitigation

against the defendant at trial," ECF 742 at 5-6, the government fails to recognize that the

Fifth Amendment protects against compelled production of potentially incriminating

information, regardless of any promises by the prosecution. Indeed, compelled

production based on such promises by the prosecution would likely end in a complicated

pretrial "taint hearing" to determine whether the government's guilt phase presentation,

including its witness preparation, was in any way influenced by advance knowledge of

---

[3] https://www.govtrack.us/congress/bills/110/hr851/text/ih#link=4_7_~Q1_b&nearest=H

Mr. Bowers' mitigating factors. A less subtle impact of pretrial disclosure would be the

government's use of its vast resources to contact potential defense witnesses, deterring

some from being willing to testify. Considering these concerns, it is not surprising that

over the course of the 28-year history of the FDPA and its narcotics-related predecessor

at 21 U.S.C. § 848(e), and over 200 trials involving even more defendants, the

government cites to just a handful of cases in which courts have ordered pretrial

disclosure of mitigating factors. The Third Circuit has not addressed the issue, and the

courts in the cases cited by the government did not give serious treatment to these

weighty Fifth and Sixth Amendment concerns.

      (4)    The cases cited by the government in support of pretrial disclosure either

contain little analysis, or the disclosure timing was substantially different than what is

requested here. In *United States. v. Wilson*, 493 F. Supp. 2d 464 (E.D.N.Y. 2006), the

court ordered notice three days **after the start of trial** and did not engage in any

meaningful analysis of the issues. *See United States. v. McCluskey,* CR 10-2734, 2013

WL 1239717 at *3 (D.N.M., July 2, 2013) ("[T]he [] opinion contains little analysis on

the issue of timing, merely making a conclusory statement the defendant would not be

prejudiced."); *United States v. Council*, 17-CR-0866, 2018 WL 2090643 at *4 (D.S.C.,

May 2, 2018) (same).[4] Similarly, the court  in *Christensen* **did not order pretrial**

---

[4] The prosecution notes that the *Wilson* court later struck certain mitigating factors
for which the defendant failed to give timely notice and did not have good cause for the
non-disclosure. ECF 742 at n. 1. The prosecution's request risks imposing a prejudicial
limitation on the defense case in mitigation if mitigating factors are developed as the guilt
phase is in progress and the prosecution seeks to preclude those factors. Given the

**disclosure** and did little analysis of the propriety of a disclosure order. *United States v.*

*Christensen*, 17-cr-20237 (C.D. Ill., May 13, 2019) (Minute entry: "If found guilty,

defense to provide list of mitigating factors within 24 hours thereafter.").

The cases cited by the government that appear to order pretrial discovery suffer

from an absence of analysis of the issues. *See United States v. Roof*, 15-cr-472, ECF 281

(D.S.C., July 16, 2016) (minute order granting the parties' **joint** motion, subject to

defendant's reservations); *United States v. Tsarnaev*, 2014 WL 4823882 (D. Mass., Sept.

24, 2014) (granting government request in an order that does not discuss relevant

statutory framework); *United States v. Taveras*, 2006 WL 1875339, *8-9 (E.D.N.Y., July

5, 2006) (scheduling order referencing prior disclosure order and offering no analysis of

statute).

The government cites *United States v. Lujan*, 2011 WL 13210666 (D.N.M., May

18, 2011), indicating that it affirmed the district court's authority to require disclosure

prior to the sentencing phase (not pretrial). ECF 742 at 3. Even there, assuming it

affirmed its authority to act, the Court, after an analysis of the issues, distinguished

*Catalan Roman*, 376 F. Supp. 2d, 108 (D.P.R. 2005),[5] and concluded:

---

COVID-related concerns and delays experienced by the defense team, and the suggestion
that a trial could begin as early as spring 2023, this is a likely scenario.

[5] In many cases, including this one, the government cites to *Catalan Roman* in
support its request for pretrial disclosure of mitigating factors. However, as noted by the
Court in *Lujan*, "the facts of *Catalan Roman* are materially distinct from the case at hand.
The disclosure in *Catalan Roman* was ordered after the trial phase and the day before the
penalty phase commenced. *Catalan Roman*, 376 F. Supp. 2d at 110. The disclosure was
limited to non-mental health mitigating evidence from expert witnesses. *Catalan Roman*,
376 F. Supp. 2d at 111." *Lujan*, 2011 WL 13210666, *2.

The requested discovery is neither legally required nor practically necessary. Section 3592 lists potential mitigating factors. *See* 18 U.S.C. § 3592(a)…. The United States has performed an extensive investigation into the circumstances of the crime and should be familiar with Mr. Lujan's background, record, and character. Accordingly, the Court declines to exercise its inherent authority to require Mr. Lujan to disclose a list of the specific mitigating factors he intends to establish and a list of witnesses, including non-mental health expert witnesses, he intends to present during the penalty phase of trial. After a guilty verdict, the Court will consider whether to recess the proceedings to allow the Government to prepare for the penalty phase. Any disclosure will be subject to a protective order.

THEREFORE, IT IS ORDERED that Plaintiff's Motion to Compel Discovery of Mitigating Factors (Doc. 757), filed on April 7, 2011, is DENIED.

*Lujan*, 2011 WL 13210666, *2-3.

The government acknowledges several cases that have denied pretrial disclosure, ECF 742 at 4, but urges this Court to follow those few that have apparently offered no supportive analysis. Should this Court overrule the defense objections and find it has the authority to order disclosure at all, it should follow the more persuasive view that disclosure can only be ordered following a guilty verdict. *See United States v. McCluskey*, 2013 WL 12329717 (ordering disclosure on next business day after guilty verdict, if any); *Council*, 2018 WL 2090643 (engaging in thorough review of statute, principles of statutory construction, and case decisions and denying pretrial disclosure; ordering, with defendant's agreement, disclosure within twelve hours of a guilty verdict on any homicide counts); *United States v. Con-Ui*, 13-CR-123, ECF 1149 (M.D. Pa., June 2, 2017) (denying government motion in a minute order and ordering disclosure within 24 hours of a guilty verdict, if any); *United States v. Smith*, 2019 WL 11863733,

*1-2 (D. Alaska, Dec. 9, 2019) (ordering disclosure within 12 hours of a guilty verdict on any capital count).

**II.    Opposition to the Limits on Defense Work, the Unsupported and Expansive Notice Under Rule 12.2(b)(2), and Firewall Counsel**

**Completion of Testing.** The government renews its request for an expansive Rule 12.2(b)(2) notice, as well as its request that "all testing, examinations and evaluations of the defendant by any defense mental health expert be completed prior to any deadline set for the defendant's Rule 12.2 notice." The government has never cited to any authority, including in this most recent pleading, that supports its request that the defense mental health expert work be completed 60 days before the trial, the currently set deadline for Rule 12.2(b)(2) notice. While it is likely that most of the expert work will need to be completed before the defense can competently provide Rule 12.2 notice, nothing in the rule indicates the notice must be the end of the defense expert work. Certainly, a defense expert may be asked to conduct a follow-up interview or testing as necessary and appropriate to ensure a reliable presentation of the evidence. The restriction requested by the government would, without any purpose beyond providing a litigation advantage to the government, unduly limit the work of the defense.

**Content of Notice.** The defense has previously addressed the issue of the appropriate content of a Rule 12.2(b)(2) notice in responding to the government's prior, nearly identically worded request for expansive information about Mr. Bowers' mental health, and it repeats much of that argument below. *See* ECF 462, at 5-8 (Defendant's Response to Government Motion Regarding 12.2 Notice and Use of Firewall Counsel).

To permit the government to prepare to meet expert mental health testimony during a penalty phase, courts have read Rule 12.2(b)(2) (penalty phase notice) to also require notice of (i) the types of experts the defense intends to call, and (ii) the names of any tests administered by the defense experts. *See*, *e.g., United States v. Sampson* 335 F. Supp. 2d 166, 242 (D. Mass 2004) (requiring notice of "the kinds of mental health professional who have evaluated [the defendant] (*e.g.*, forensic psychiatrist, neuropsychologist, clinical psychologist) as well as the specific nature of any testing that these experts have performed) (*e.g.*, MMPI-2, WAIS-2, *etc.*) in the course of their evaluations of [the defendant]"); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1230 (D.N.M. 2008) (requiring notice of the kinds of mental health experts to be called and the nature of the tests performed).

With the Rule 12.2(b)(2) notice of intent to introduce mental health expert testimony, as well as supplemental information about the kinds of mental health professionals who will be called to testify and the specific nature of tests conducted by these experts, the government can select appropriate experts who will know what testing they will need to meet. Such information is adequate for the government to conduct a rebuttal examination and to preserve the protections of the Fifth and Sixth Amendments. *See Lujan*, 530 F. Supp. 2d at 1239 ("Notice as described herein should be sufficient to allow the government to find mental health experts from the same field without requiring early disclosure of defense expert 'results and reports.'"); *Sampson*, 335 F. Supp. 2d at 243 (notice of the kinds of experts and the tests performed is the "type of information that

was necessary to enable the government to hire the right type of rebuttal experts and

conduct the proper tests."); *Johnson*, 362 F. Supp. 2d at 1081 (rejecting government's

argument that additional notice was necessary for preparation of rebuttal case).

The Court in *Sampson* recognized the balance required, and rejected the expansive

information that the government's motion requests:

> [T]he need for meaningful notice must be balanced against the special
> considerations present when a capital defendant intends to use his mental
> condition at the sentencing phase only. To allow the government to use the
> results of a defendant's mental examination, or any information derived from
> it, for a purpose other than rebuttal at sentencing would violate the
> defendant's Fifth Amendment right against self-incrimination. [citing *Estelle
> v. Smith*, 451 U.S. 454 (1981)]. Moreover, the defendant's Sixth Amendment
> right to the effective assistance of counsel could be compromised if defense
> counsel was required to reveal his strategy or to disclose materials he
> provided to his experts.
>                     * * *
> Under the new Rule [12.2], however, requiring the defendant to
> provide such information is no longer permissible because "the nature of the
> proffered mental condition(s)" [or the "conduct" of the expert] is essentially
> the same as the "results and reports" for which early disclosure is barred.

*Sampson*, 335 F. Supp. 2d at 243 (footnote omitted).[6]

 Similarly, the court in *United States v. Wilson*, 493 F. Supp. 2d 348, 353

(E.D.N.Y 2006), rejected the government's notion of "meaningful notice." There the

government urged the court to require the defendant to disclose not only the kind of

experts he intended to use and the nature of the tests, but also (i) the names, areas of

expertise and curriculum vitae of the experts, (ii) the identities of lay witnesses, and (iii)

---

[6] Citing *Johnson,* 362 F. Supp. 2d at 1079 (discussing *Sampson*), the government
argues that the "notice" it seeks is necessary to provide the government with an
opportunity to conduct the kind of investigation needed to acquire rebuttal testimony.
ECF 742 at 9. As noted, both *Sampson* and *Johnson* rejected the government's overreach.

any research or studies the experts relied on. The court, in rejecting the government's

position, found "no support in the Rule or caselaw for requiring the Defendant to turn

over such extensive discovery" and determined that disclosure of the kinds of mental

health experts the defendant intends to call, and the nature of the tests performed, was

sufficient to provide meaningful notice. *Id.* (footnote omitted).[7]  *See also Lujan*, 530 F.

Supp. 2d at 1239 (noting that "[t]he courts that have considered the scope of the requisite

notice since the adoption of the 2002 amendments have generally limited what the notice

must include to simply the kinds of mental health professionals who have evaluated the

defendant and the specific nature of any testing that the defense experts would perform or

have performed;" rejecting the government's request for more than notice of the type of

expert and the nature of the tests performed); *United States v. Umana*, 2009 U.S. Dist.

Lexis 75324 (W.D.N.C., Aug. 11, 2009) (same); *United States v. O'Reilly*, 2010 U.S.

Dist. Lexis 14621, 7-8 (E.D. Mich., Feb. 19, 2010) (limited penalty phase notice to the

kinds of mental health experts and the nature of the tests)."

    **Firewall Counsel.**  Mr. Bowers continues to oppose the use of "firewall counsel."

As noted in prior briefing, *see* ECF 462, at 10-13, repeated in substantial part below,

approval of such would be contrary to the nearly universal rejection of the use of firewall

counsel **unless** requested by the defense or jointly agreed to by the parties. *Compare*

---

[7] The government cites *Wilson* for the proposition that Rule 16(b) reciprocal provisions apply. ECF 742 at 10. Again, while Mr. Bowers disagrees, the issue of reciprocal discovery of penalty phase mental health evidence is not before the Court. The government also cites to *United States v. Fell,* 372 F. Supp. 2d 753, 759 (D.Vt. 2005), for the proposition that discovery is required, suggesting that "notice" requires discovery. It does not.

*United States v Roof*, 225 F. Supp. 3d 419 (D.S.C. 2016) ("Because Defendant has not agreed to waive the sealing requirements of Rule 12.2(c)(2), the Court will not authorize the appointment of firewall counsel to receive the results of mental health examinations conducted pursuant to Rule 12.2 before trial."); *United States v. Ciancia*, 2015 WL 13798684 (C.D. Cal. May 13, 2015) (denying government request for firewall counsel where defendant objects to procedure); *United States v. Richardson*, 2010 WL 11665018 (N.D. Ga. July 12, 2010) (same); *United States v. O'Reilly*, No. 05-80025 (E.D. Mich. Feb. 19, 2010) (vacating order appointing firewall counsel where defendant withdrew his earlier motion for the appointment and requested alternative procedure); *United States v. Council*, 2018 WL 7821137 (D.S.C. Aug. 29, 2018) ("The Court finds it unnecessary and inappropriate to appoint firewall counsel over the defendant's objection and declines to appointment government firewall counsel) *with Wilson,* 493 F. Supp. 2d at 357-358 ("Both sides are in agreement that a firewalled AUSA must be appointed in this case to oversee the Government's mental condition mitigation rebuttal case in the time before the penalty phase begins."); *Johnson*, 362 F. Supp. 2d at 1083-1085 (appointing a firewalled attorney upon motion of the defendant); *Sampson*, 335 F. Supp. at 243-244 (designating, with the agreement of the parties, two AUSAs to serve as firewalled attorneys); *Umana* 2009 WL 2489309 at *4 (granting government motion regarding designation of a firewalled AUSA with the defendant's agreement).[8]

---

[8] *See United States v. Minerd*, 197 F. Supp. 2d 272, 276 (W.D. Pa. 2002) (concluding, prior to the 2002 amendments to Rule 12.2, that sealing the government's report and prohibiting disclosure of the government and defense materials until after a capital conviction and the defendant's reconfirmation of an intent to introduce expert

The reason courts have nearly universally rejected the use of firewall counsel without, at the very least, the concurrence of the defense is because Rule 12.2 does not provide for such a procedure. In fact, it explicitly precludes "any attorney for the government" from receiving penalty phase expert reports or results until after conviction of a capital crime and after the defense reaffirms the notice of intent to introduce mental health expert testimony. *See* Rule 12.2(c)(2) ("The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.").

Here, Mr. Bowers continues to decline to waive the requirements of Rule 12.2 and objects to the appointment of a firewalled AUSA. Accordingly, this Court should deny the request.

## CONCLUSION

For the reasons set forth above, Mr. Bowers asks the Court to deny the government's (i) request to compel pretrial disclosure of mitigating factors, (ii) its proposed restrictions on defense mental health expert work, (iii) its request for expansive Rule 12.2 notice, and (iv) its request for the use of firewall counsel.

---

mental health evidence at sentencing better protects the defendant's constitutional rights than the government's proposed firewall approach).

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael N. Burt*
Michael N. Burt
Law Offices of Michael Burt, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender