# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

### MEMORANDUM ORDER

Presently pending before the Court is Defendant's "Motion for an Order Directing the Clerk's Office to Conduct a One-Question Survey of Potential Jurors in the Current Master Jury Wheel to Determine Religious Affiliation, or, in the Alternative, for an Order Allowing the Defense to Conduct Such a Survey, and Request to Substitute the Single Question on Religious Affiliation for a Similar Question on the Defense Proposed Jury Questionnaire." (ECF No. 780). The government opposes the motion in its entirety. The matter has been fully briefed and is ripe for disposition. For the reasons stated herein, the motion will be denied.

At its core, under the Sixth Amendment, a criminal defendant is entitled to a trial by an "impartial" jury. One important step in furthering impartiality is to draw jurors from diverse segments of the population. *See Holland v. Illinois*, 493 U.S. 474, 480, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). The Supreme Court has declared this method a constitutional guarantee by concluding that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

The Jury Selection and Service Act of 1968 ("JSSA") codifies this principle and provides that federal juries are to be "selected at random from a fair cross section of the community." 28 U.S.C. § 1861. Federal district courts are tasked with creating jury-selection plans consistent with

1

this fair-cross-section principle. § 1863(a).  The fair cross section standard is equivalent for claims

under the Sixth Amendment and the JSSA.  *United States v. Savage*, 970 F.3d 217, 254 n. 32 (3d

Cir. 2020), citing *United States v. Weaver*, 267 F.3d 231, 236-37 (3d Cir. 2001).  Defendant has

previously challenged this Court's jury selection plan, principally on race and ethnicity grounds,

in connection with the creation and use of the 2016 wheels.  *Plan of the United States District*

*Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors*

("Jury Plan"), ECF No. 659, Ex. 1 at 281-300.  Moreover, a challenge to the 2020 wheels is

possible, if not anticipated.

Defendant now argues that neither the JSSA, nor the Court's Jury Plan implementing the

same, sufficiently addresses and protects Sixth Amendment and Equal Protection Clause rights

with respect to religious affiliation.  Defendant's argument fails because even if the Jury Plan as

currently implemented is deficient, which we conclude it is not, the baseline dataset proffered by

Defendant to establish that deficiency is inadequate because it is not measured over time, is

arguably outdated, relies upon the underinclusive geographic dataset of the "Pittsburgh

Metropolitan Area," and stems from a potentially unreliable source.

In the original challenge to the 2016 wheel, and again now, Defendant relies upon the

sworn statement of facts of John R. Weeks, Ph.D., Distinguished Professor Emeritus of Geography

and Director of the International Population Center at San Diego State University. (ECF No. 650-

3).  Here, Defendant cites to the second to last paragraph of his 38-page statements:

> 80. An additional flaw with the AO 12 form is that it fails to collect any information
> about religion. The Third Circuit ruled long ago that recognized religious groups such as
> Catholics are a "classifiable category of our society which cannot be wrongfully
> excluded." A 20[14] Pew Research Survey indicates that one in three (32%) adults in the
> Pittsburgh Metropolitan Area is Catholic. Because the AO 12 form does not ask about a
> person's religion in the same way that race and ethnic data are collected, there is no way
> short of an independent jury survey to ascertain whether Catholics or any other cognizable
> religious groups are being improperly excluded.

(ECF No. 650-3 at 37) (citing *Dow v. Carnegie-Illinois Steel Corp.*, 224 F. 2d. 414 (3rd

Cir.1955) and https://www.pewresearch.org/topic/religion/.

The government argues, Defendant concedes,[1] and we agree that the express terms of the

JSSA do not require the court to gather or collect religious-affiliation information for the

prospective jurors on the 2020 Master Jury Wheel. Moreover, Defendant cites neither binding nor

persuasive case law directly holding otherwise. The JSSA statute provides:

> For purposes of this chapter—
>
> (h) "juror qualification form" shall mean a form prescribed by the Administrative Office of the United States Courts and approved by the Judicial Conference of the United States, which ***shall elicit the name, address, age, race, occupation, education, length of residence within the judicial district***, distance from residence to place of holding court, prior jury service, and citizenship of a potential juror, and whether he should be excused or exempted from jury service, has any physical or mental infirmity impairing his capacity to serve as juror, is able to read, write, speak, and understand the English language, has pending against him any charge for the commission of a State or Federal criminal offense punishable by imprisonment for more than one year, or has been convicted in any State or Federal court of record of a crime punishable by imprisonment for more than one year and has not had his civil rights restored. The form shall request, but not require, any other information not inconsistent with the provisions of this title and required by the district court plan in the interests of the sound administration of justice. The form shall also elicit the sworn statement that his responses are true to the best of his knowledge. Notarization shall not be required. ***The form shall contain words clearly informing the person that the furnishing of any information with respect to his religion,*** national origin, or economic status is not a prerequisite to his qualification for jury service, that such information need not be furnished if the person finds it objectionable to do so, and that information concerning race is required solely to enforce nondiscrimination in jury selection and has no bearing on an individual's qualification for jury service.

28 U.S.C. 1869(h) (emphasis added).  Religion or religious affiliation is not listed as information

required to be elicited.  Defendant explains that the JSSA was amended in 1972, at Section

---

[1] "Specifically, the government asserts that this Court should not order (or permit) a survey of the jury wheel for religious affiliation because the JSSA "by its express terms" does not require the Court to gather that information. ECF 790 at 1. This is true, and that is the reason that the defense motion makes no such assertion."  (Def.'s Reply, ECF No. 798, at 2).

1869(h), to include the requirement that potential jurors provide data on their race and ethnicity. The amendment did not include religion, but Defendant argues that religion should nevertheless be elicited because Section 1862 broadly states that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status."

Even if religious affiliation information were to be gathered at this stage of this criminal case, whether by the Clerk of Court's or Defendant's inquiry,[2] applying the standard for a fair-cross-section challenge to the question of religion, or religious affiliation, would be unworkable and/or futile. To establish such a violation, Defendant must identify (1) "a 'distinctive' group in the community" (2) that was "not fair[ly] and reasonab[ly]" represented among potential jurors compared with its representation in the community (3) because of "systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979). As to the third prong – systematic exclusion — this analysis requires the Defendant to show that the underrepresentation of the cognizable group is due to *systematic* exclusion in the jury selection process. *Id*. at 366. As noted in *United States v. Weaver*, 267 F.3d 231, 244 (3d Cir. 2001), "[u]nder *Duren*, "systematic exclusion" can be shown by a large discrepancy *repeated over time* such that the system must be said to bring about the underrepresentation." (emphasis added). Each method to assess a fair-cross section challenge – absolute disparity, comparative disparity or standard deviation, *see Berghuis v. Smith*, 559 U.S. 314, 329-30, 130 S.Ct. 1382, 176 L.Ed.2d 249 (2010), would require a form of comparative analysis over time such that the system must be said to bring

---

[2] Defendant has proposed in the alternative that he be permitted to contact prospective jurors on the 2020 Master Jury Wheel, to survey religious information, rather than having the Court require the Clerk's Office to conduct said survey.  Again, such a request has not been ordered by any other court, at least so far as the defendant's briefing and our separate research shows, other than in the context of challenge to the appropriate venue for trials, which is not an issue before the Court.

about the underrepresentation.  *Weaver,* 267 F.3d at 244; *Savage*, 970 F.3d at 259.     Here,

Defendant requests the religious affiliation of prospective jurors measured in the year 2022,

however, no reliable, historical data is proffered that could be used as a comparator as required by

the standard of underrepresentation on an ongoing basis over time. Even if the defense's proffered

2014 Pew Research Study were utilized, that data, as proffered by the defense, provides only a

"snapshot in time," and thus is insufficiently available over time.  Moreover, the "snapshot in time"

data available from the 2014 study is, on its face, presently 8 years old.

Even if data considered as a "snapshot in time" (dated or otherwise) were adequate for the

asserted purpose, which we believe it is not, the defense fails to proffer a source of adequately

reliable data.  No United States Census Bureau data exists.[3]  Nor is the Court aware of any other

source of data that could serve as a reliably authoritative quantifier of the baseline religious

affiliation of prospective jurors in the Western District of Pennsylvania (Pittsburgh Division)[4]

community.  Defendant proffers information putatively available from a 2014 Pew Research Study

for this purpose.  While the Court has no reason to question the validity of that study,[5] the Court,

likewise, has no reason to accept the validity of that study.  Significantly, Defendant's expert, Dr.

Weeks, explains that the "Pittsburgh Metropolitan Area includes 7 of the 13 counties in the

Pittsburgh Division of the Western District of Pennsylvania--Allegheny, Armstrong, Beaver,

Butler, Fayette, Washington, and Westmoreland."   (ECF No. 650-3 at 17).   This is facially

underinclusive as it simply fails to embrace a matching geographic area. The Pittsburgh Division

---

[3] Indeed, as the government aptly notes, the Census Bureau is prohibited from requiring respondents to disclose religious affiliation information.  13 U.S.C. § 221(c) ("Notwithstanding any other provision of this title, no person shall be compelled to disclose information relative to his religious beliefs or to membership in a religious body.")
[4] The Western District of Pennsylvania comprises "the counties of Allegheny, Armstrong, Beaver, Bedford, Blair, Butler, Cambria, Clarion, Clearfield, Crawford, Elk, Erie, Fayette, Forest, Greene, Indiana, Jefferson, Lawrence, McKean, Mercer, Somerset, Venango, Warren, Washington, and Westmoreland.  Court for the Western District shall be held at Erie, Johnstown, and Pittsburgh." 28 U.S.C. § 118. The Jury Plan applies to all three divisions of the District Court for the Western District of Pennsylvania (Erie, Johnstown, and Pittsburgh). Jury Plan § 3.
[5] Aside from the obvious fact that it is presently eight years old.

comprises 6 additional counties, namely, Clarion, Greene, Indiana, Jefferson, Lawrence, and

Mercer. Jury Plan, ECF No. 659, Ex. 1 at 281-300, at §3. Even with the benefit of the information

sought by the Defendant's request, the Court could not analyze even a limited "snapshot in time"

disparity of religious affiliation in the Jury Plan, and therefore, Defendant would not be able to

establish a prima facie violation of the JSSA.

Defendant also relies upon the fair-cross section analysis to seek permission to substitute

or supplement a question on religious affiliation on the defense proposed questionnaire, which was

previously filed with the Court under seal (ECF No. 738-B).  He has attached the proposed

modification to the motion as Exhibit 2.  (ECF No. 780-3). The proffered question mirrors the

religious affiliation question asked in the 2014 Pew Research Study cited in the present motion,

which Defendant asserts would allow a direct comparison of religious affiliation data, and thus

would allow him to assess whether the fair cross-section requirement is being satisfied with respect

to the qualified jury wheel.  For the reasons discussed above, the Court would lack an authoritative

or meaningful comparator.

Defendant also argues that the addition of the proffered question would allow the Court

and the parties to determine whether any *Batson* violations were occurring with respect to religious

affiliation.  The government opposes defense's request, in part, on the grounds that it is not within

the mandate of our previous order dated August 17, 2022, which permitted Defendant to file the

instant motion "seeking an order directing the *Clerk's office to conduct a survey* of potential jurors

in the current Master Jury Wheel to determine religious affiliation, see Joint Status Report ¶ G,

ECF No. 770, by August 30, 2022."  (ECF No. 778 at 2) (emphasis added). Recognizing the

accuracy of the government's argument, however, and setting it aside, the content of the proposed

juror questionnaire has been discussed and debated within prior filings (ECF Nos. 757, 763), and

the Court has tentatively ruled on the content of the juror questionnaire, pending final argument

and objection from the parties.  Accordingly, the request to modify the Defendant's proposed juror

questionnaire is denied without prejudice.

AND NOW, this 24th day of October, 2022, Defendant's Motion for an Order Directing

the Clerk's Office to Conduct a One-Question Survey of Potential Jurors in the Current Master

Jury Wheel to Determine Religious Affiliation, or, in the Alternative, for an Order Allowing the

Defense to Conduct Such a Survey, and Request to Substitute the Single Question on Religious

Affiliation for a Similar Question on the Defense Proposed Jury Questionnaire, (ECF No. 780) be

and the same is hereby DENIED.


*/s/ Robert J. Colville*
Robert J. Colville
United States District Judge


cc:  record counsel via CM-ECF Electronic Notice Filing