IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS   ) | |

**DEFENDANT'S MOTION TO BIFURCATE THE SENTENCING PHASE (TRIFURCATE THE PROCEEDINGS)**

Robert Bowers, through counsel, respectfully requests that the Court divide the proceedings in this matter into three phases: (i) a "merits phase" on the elements of the offenses; (ii) an "eligibility phase" on the elements required for imposition of the death penalty; and (iii) a "selection phase" involving a determination of and a weighing of aggravating and mitigating factors.

Before jurors may consider whether a sentence of death is justified, the jury must unanimously find beyond a reasonable doubt (i) that Mr. Bowers was at least 18 years old at the time of the offense, (ii) that at least one of the intentionality factors in 18 U.S.C. § 3591(a)(2) applies, and (iii) that at least one of the statutory aggravating factors in 18 U.S.C. § 3592(c) applies. *See* ECF 86 (alleging intentionality factors and statutory aggravating factors). These factors are the "functional equivalent" of elements of a crime: they must be "charged in the indictment, submitted to the jury, subject to the rules of evidence, and

1

proved beyond a reasonable doubt." *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002).

Finally, in the "selection phase," the jury would determine whether the government has proven beyond a reasonable doubt any of the non-statutory aggravating factors alleged. It would also determine whether Mr. Bowers has proven by a preponderance of the evidence any mitigating factor alleged. Each juror would then consider whether all of the aggravating factors (statutory and non-statutory) "sufficiently outweigh" all of the mitigating factors "to justify a sentence of death." 18 U.S.C. 3593(c). "Based upon this consideration, the jury by unanimous vote" would recommend whether Mr. Bowers should be sentenced to death. *Id.*

In addition to the legal reasons set forth below, trifurcation of the proceedings would conserve judicial resources. If the jury finds Mr. Bowers guilty of a death-eligible offense in the merits phase, the jury would then reconvene for the eligibility phase, where it would determine whether the government has proven beyond a reasonable doubt at least one of the alleged mental state gateway factors and the statutory aggravating factors. If the jury does not find those factors, there could be no death sentence because Mr. Bowers would be ineligible for capital punishment, and the third, far more extensive selection phase would not be necessary.

Mr. Bowers urges this Court to follow the well-reasoned opinions of Judge Bennett in *United States v. Johnson*, 362 F. Supp. 2d 1043 (N.D. Iowa 2005), and Judge Berrigan in *United States v. Davis*, 912 F. Supp. 938, 949 (E.D. La. 1996), and order a trifurcated proceeding as outlined below. *See also Basham v. United States*, 2013 WL 2446104 *85 (D.S.C. June 5, 2013) ("Federal appellate courts that have considered the issue have held that although the FDPA contemplates a single sentencing hearing, it does not prohibit a district court from bifurcating a sentencing hearing (and thus trifurcating the trial) to avoid confusion of the issues before the jury.") (citing *United States v. Bolden*, 545 F.3d 609, 618 (4th Cir. 2008), and *United States v. Fell*, 531 F.3d 197, 240, n. 28 (2d Cir. 2008)); *United States v. Basciano,* 763 F. Supp. 2d 303, 341 (E.D.N.Y. 2011) ("In light of the Second Circuit's guidance in *Fell*, the court has considered penalty-phase bifurcation and deems it appropriate."); *United States v. Natson*, 444 F. Supp. 2d 1296, 1309 (M.D.Ga. 2006) ("Although the Government initially opposed this motion, it informed the Court at the hearing on the motion that it no longer opposed trifurcation. The Court finds trifurcation to be appropriate and grants Defendant's motion."); *United States v. Mayhew*, 380 F. Supp. 2d 936, 955– 57 (S.D.Ohio 2005) ("The Court agrees with *Davis* and *Johnson* and will bifurcate the sentencing phase on the theory that victim impact evidence has no probative value with regard to the statutory aggravating

factors or the mens rea requirement in this case, but that such evidence carries with it a substantial risk of prejudicing the jury."); *United States v. Jordan,* 357 F. Supp. 2d 889 (E.D.Va. 2005) (adopting the same procedure); *United States v. Bodkins*, 2005 WL 1118158 (W.D.Va.2005) (same). The necessity for such a procedure is described in more detail below.

The state of mind (gateway) factors and at least one aggravating factor function as elements of a capital offense. *See Sattazahn v. Pennsylvania,* 537 U.S. 101, 111 (2003) ("[A]ggravating circumstances that make a defendant eligible for the death penalty operate as the functional equivalent of an element of a greater offense."). There can be no fair determination of these "gateway" mental state and statutory aggravating factors when they are being considered in the same proceeding in which highly inflammatory evidence, especially victim impact evidence, is also allowed.[1]

---

[1] In ordering trifurcation in *Johnson* after sitting through the capital trial of a co-defendant, Judge Bennett remarked: "I can say, without hesitation, that the 'victim impact' testimony presented in [the co-defendant's] trial was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing attorney and federal judge spanning nearly 30 years." *United States v. Johnson,* 362 F. Supp.2d at 1107.

4

A.   **Without trifurcation to isolate the determination of death eligibility, the proceedings combine proof of guilt with the determination of punishment.**

The Supreme Court has held that a criminal defendant is not guilty of a capital offense until a jury finds at least one statutory aggravating factor beyond a reasonable doubt. *Sattazahn,* 537 U.S. at 110-11. Jurors must also find, as a separate statutory element, that the defendant possessed the necessary mental state to have committed a capital crime. 18 U.S.C. § 3591. Thus, the "intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offense and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt." *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *accord United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) (*en banc*); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *United States v. Quinones*, 313 F.3d 49, 53 n. 1 (2d Cir. 2002). *See also United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (*en banc*) (holding the functional equivalent of an element of a crime must be treated as "any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt").

5

As the Supreme Court has held, combining the guilt and penalty determinations into the same proceeding risks arbitrary or capricious death sentencing verdicts. *Gregg v. Georgia*, 428 U.S. 153, 188, 189, 195 (1976) ("As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information."). A lot has happened since *Gregg*, and the law now recognizes findings that make a crime death eligible must be made by a jury with all the attendant procedural protections of a guilt phase trial. Under the FDPA, the only way to ensure procedurally that those protections rationally guide the jury's determination whether the crime is capital is to break out its consideration of the gateway mental state and statutory aggravators into a separate proceeding.

> **B.   In a bifurcated proceeding, evidence relevant to non-statutory aggravating factors such as victim impact testimony has no probative value and is unfairly prejudicial to consideration of the gateway and statutory aggravating factors.**

Under 18 U.S.C. § 3593(c), at a federal capital sentencing hearing, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials..." § 3593(c). However, "Section 3593(c) provides the district court with greater discretion to exclude

6

unfairly prejudicial or confusing information than the district court has during the guilt phase. This is so because § 3593(c) requires only that the countervailing interests 'outweigh' the information's probative value, while Federal Rule of Evidence 403 permits exclusion only where the countervailing interests 'substantially outweigh[]' the evidence's probative value." *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010). In addition, "'[e]ven without the protections of the Evidence Rules, it remains for the [district] court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial.'" *Id.* at n. 2 (quoting *United States v. Fulks*, 454 F.3d 410, 438 (4th Cir. 2006)).

The FDPA thus contemplates an elastic sentencing hearing where virtually any evidence may be admitted unless the judge finds its admission would unfairly prejudice a party, confuse the issues, mislead the jury, or is barred by the Constitution. 18 U.S.C. § 3593(c). Judge Bennett undertook such an analysis in *Johnson*, 362 F. Supp. at 1043, and determined that evidence proving non-statutory factors such as victim impact testimony has no probative value to the consideration of gateway or statutory aggravating factors, and that such evidence is extremely prejudicial, confusing, and misleading. Other courts have agreed, as set forth above.

7

### C. In a bifurcated proceeding, a jury considering gateway and statutory aggravating factors is improperly exposed to irrelevant, highly prejudicial and otherwise inadmissible evidence.

#### 1. Victim impact information

While generally not admissible at a guilt phase trial, at a capital sentencing hearing it is common for the prosecution to introduce information about the effect of the victim's loss upon others. *Jones*, 527 U.S. at 401. Surviving family members have been allowed to provide compelling testimony reflecting deep sadness and regret. *See, e.g., United States v. Barnette*, 211 F.3d 803, 818 (4th Cir. 2000); *United States v. McVeigh*, 153 F.3d 1166, 1201-03 (10th Cir. 1998). As indicated above, Judge Bennett found in *Johnson* that the victim impact evidence was "the most forceful, emotionally powerful, and emotionally draining evidence that [he had] heard in any kind of proceeding in any case, civil or criminal, in [his] entire career as a practicing attorney and federal judge spanning nearly 30 years." 362 F.Supp.2d at 1107. Yet, if the sentencing is not trifurcated, the jury will hear the highly emotional and prejudicial victim impact evidence in the same proceeding in which they consider whether the elements of a federal capital crime have been proven.

In Mr. Bowers' case, the government has noticed its intent to introduce

8

considerable victim impact testimony at the sentencing hearing. ECF 86 at 3-5 (Mr. Bowers "caused injury, harm, and loss to" the eleven deceased victims "as well as [their] family, friends, and co-workers."); *id.* ("The injury, harm, and loss caused by [Mr. Bowers] with respect to each deceased victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family, friends, associates, and co-workers."); *id.* (Mr. Bowers "caused serious physical and emotional injury, including maiming, disfigurement, permanent disability, severe psychological impacts, and grievous economic hardship to [twenty-seven] individuals who survived the offense….") This is evidence the jury should not be exposed to while deciding whether the gateway and statutory aggravators have been proven.

## 2. Hearsay

Subject to limited exceptions, hearsay is not allowed to prove a defendant's guilt at a trial. *Moore v. United States,* 429 U.S. 20, 22-23 (1976). After *Ring v. Arizona,* 536 U.S. 584 (2002), and *Apprendi v. New Jersey,* 530 U.S. 466 (2000), it is similarly inadmissible to prove the gateway or death eligibility factors. A selection proceeding that allows hearsay is entirely different in nature from a trial or eligibility hearing that requires the declarant to testify, subject to limited exceptions. *Nichols v. United States*, 511 U.S. 738, 747 (1994). While presentence reports, police reports, out-of-

court witness statements, and other second-hand information are regularly admitted at the selection phase, this is not true during the guilt and eligibility phases.

### D. The remedy

A remedy to the problems discussed above was first adopted in *United States v. Davis*, 912 F. Supp. 938, 949 (E.D. La. 1996), where the Court ruled:

> In addition, if the penalty phase is reached in this case, the court is considering bifurcating the hearing into two parts. The first part would focus exclusively on the two findings the jury must make in order to consider the death penalty--whether the intent element was established and whether at least one statutory aggravating factor was proven. This phase of the penalty hearing presumably would rely almost entirely upon the evidence already presented in the guilt phase and involve little, if any, additional information. It would nonetheless insure that the jury's findings as to intent and the statutory factors would not be influenced by exposure to the separate and unrelated nonstatutory factors and information. Should the jury make the two requisite threshold findings, the hearing would then continue into the presentation of the nonstatutory aggravating and mitigating information.

This same procedure was then adopted in United *States v. Johnson*, after extended discussion of the issue. Other courts have also followed this procedure, as indicated above. As stated by the Second Circuit in *United States v. Fell*, 531 F.3d 197, 240 (2d Cir. 2008):

> A trifurcated proceeding allows a district court not only to avoid the admission of prejudicial evidence before the eligibility decision, *see Johnson*, 362 F.Supp.2d at 1110 (describing trifurcation as a "cure" for the "potential unfair prejudice, confusion, and

10

misdirection"), but also to delineate clearly between the applications of the Confrontation Clause in the eligibility and selection phases.

Finally, as the court in *Johnson* also ruled, any potential problems the government can foresee with such a trifurcated trial can adequately be dealt with through jury instructions. 362 F. Supp 2d at 1101.

## CONCLUSION

For all of the foregoing reasons, Mr. Bowers moves the Court for an order trifurcating the proceedings into three phases: a merits phase, and eligibility phase, and a selection phase.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael Burt*
Michael Burt
Law Offices of Michael Burt, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender

11