**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 18-292-RJC |
| vs. ) | |
| ) | Judge Robert J. Colville |
| ROBERT BOWERS ) | |

**OPINION**

Robert J. Colville, United States District Judge.

     Defendant Robert Bowers asks this Court to reconsider its ruling that two federal criminal statutes charged in the Superseding Indictment are "crimes of violence" such that they can support separate charges in the Superseding Indictment for using a firearm during or in relation to a crime of violence.  He argues that intervening decisions of the Supreme Court have changed the prevailing law such that reconsideration is appropriate and that his motion must now be granted.  The government opposes the motion.  For the reasons discussed below, Defendant's motion for reconsideration will be granted in part and denied in part.

## I.    INTRODUCTION

     Defendant is charged in a 63-count Superseding Indictment (ECF No. 44) with violating federal statutes prohibiting the obstruction of the free exercise of religion, 18 U.S.C. § 247(a)(2), hate crimes, 18 U.S.C. § 249(a)(1), and the use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c).

     The firearms charges under Section 924(c) (Counts 23–33, 38–39, and 52–63) depend on the predicate obstruction and hate crimes charges and can be analytically divided into three groups. In the first group, Counts 22 through 33 depend on violations of Sections 247(a)(2) and 249(a)(1), resulting in the deaths of eleven individuals, that are charged at Counts 1 through 22.  In the second group, Counts 38 and 39 depend on completed and attempted violations of Sections 247(a)(2) and

249(a)(1) involving an attempt to kill and/or causing bodily injury to two individuals, charged at Counts 34 through 37.   In the final group, Counts 52 through 63 depend on completed and attempted violations of Section 247(a)(2) involving an attempt to kill and/or the use of a dangerous weapon against twelve individuals, five of whom were public safety officers who sustained bodily injury as a result, charged at Counts 40 through 51.

The defendant previously filed a motion to dismiss the Section 924(c) charges of the Superseding Indictment.   He argued, in part, that Sections 247(a)(2) and 249(a)(1) are not "crime[s] of violence" because they do not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."   *See* Mot. to Dismiss Counts 23–33, 38–39, and 52–63 of the Indictment Charging the Use of a Firearm in Connection with a Crime of Violence at 4–11 (ECF No. 237).   This Court[1] rejected that argument, relying substantially on Judge Gergel's analysis of the same issue in *United States v. Roof.   See* Opinion and Order at 2–3 (ECF No. 325) (citing *United States v. Roof*, 225 F. Supp. 3d 438 (D.S.C. 2016) and *United States v. Roof*, 252 F. Supp. 3d 469 (D.S.C. 2017)).

Defendant filed the instant motion following the Supreme Court's decisions in *Borden v. United States*, 141 S. Ct. 1817 (2021) and *United States v. Taylor*, 142 S. Ct. 2015 (2022).   He argues that those decisions have changed the legal landscape and called into question Judge Gergel's analysis.   According to Defendant, considering these new precedents, his motion to dismiss the firearms charges must now be granted.   The government opposes reconsideration and reiterates its opposition to dismissal on the merits.

---

[1] This case was previously assigned to The Honorable Donetta W. Ambrose.   It was reassigned to the undersigned when Judge Ambrose took inactive senior status, after Defendant's motion to dismiss was decided.   *See* Order of Court (ECF No. 664).

## II.        ANALYSIS

### A.        Reconsideration is Proper

Defendant argues that reconsideration in this case is proper because, after this Court denied his motion to dismiss, the Supreme Court decided *Borden* and *Taylor*, which changed the controlling law relevant to his motion.  .  Mot. for Recons. Of Order Den. Mot. to Dismiss Counts 23–33. 38–39, and 52–63 of the Indictment Charging the Use of a Firearm in Connection With a Crime of Violence at 5 (ECF No. 787) ("Mot.").  The government urges that *Borden* and *Taylor* did not change the controlling law.  United States Opp'n to Def.'s Mot. for Recons. of Order Den. Mot. to Dismiss Counts 23–33. 38–39, and 52–63 of the [Superseding] Indictment Charging the Use of a Firearm in Connection with a Crime of Violence at 11–15 (ECF No. 804) ("Opp'n").  Having reviewed both decisions, the Court finds that reconsideration is proper because *Taylor* changed the controlling law in ways material to this Court's decision on Defendant's motion to dismiss.

Though not expressly provided for by the Federal Rules of Criminal Procedure, "motions for reconsideration may be filed in criminal cases."  *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003).  Courts apply the same standards to motions for reconsideration filed criminal and civil cases.  *See United States v. Lawrence*, Crim. No. 3:13-41, 2015 WL 9027037 at *8 (W.D. Pa. Dec. 15, 2015) (applying the civil standard and collecting cases).  "A motion to reconsider 'must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice.'"  *Geneva College v. Sebelius*, 929 F. Supp. 2d 402, 452 (W.D. Pa. 2013) (quoting *Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310, 313–14 (M.D. Pa. 1994)).

The Court begins with *Borden*.  In *Borden*, a divided court held that a criminal offense requiring proof of only a *mens rea* of recklessness could not qualify as a "violent felony" as defined

by the elements clause of the Armed Career Criminal Act.  141 S. Ct. at 1821.  The plurality and the concurrence both looked to the language of the elements clause, which defines a violent felony as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  The plurality found that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual."  *Borden*, 141 S. Ct. at 1825.  Because "[r]eckless conduct is not aimed in that prescribed manner," the plurality reasoned that offenses with that *mens rea* fall outside the ACCA's definition of a violent felony.  *Id.*  In his concurrence, Justice Thomas reached the same conclusion, reasoning that the phrase "the use of physical force" alone necessitated proof of more than reckless conduct.  *Id.* at 1835 (Thomas, J., concurring in the judgment).

Borden does not reflect a change in the law necessitating reconsideration for two reasons.  First, as the government points out, the Third Circuit has long held that a crime of violence must require proof of intent to use force.  *See Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005) (describing the principle that "an offender has committed a 'crime of violence' under 18 U.S.C. § 16(a) only if he acted with an intent to use force" as the "settled law of this Circuit"); *United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007) (finding counsel insufficient for failing to object to the application of a sentencing enhancement predicated on a previous conviction for a "crime of violence" where state offense required less than intentional conduct).  *Borden* is consistent with this long-standing precedent.

Moreover, *Borden* does not apply to either of the statutes at issue in this case for the simple reason that Sections 247(a)(2) and 249(a)(1) apply to intentional and willful conduct, respectively.  *See* 18 U.S.C. § 247(a)(2) (requiring intentional conduct); 18 U.S.C. § 249(a)(1) (requiring willful conduct).  Both statutes thus require that the government prove a defendant acted with the intent

4

to bring about a certain result.  Even if Third Circuit law had conflicted with *Borden* before it was decided, the decision would not reach these statutes that plainly require a more culpable *mens rea* than recklessness.

The Court next addresses *Taylor*.  In *Taylor*, the Supreme Court held that attempted Hobbs Act Robbery, 18 U.S.C. § 1951 is not a crime of violence under the elements clause of Section 924(c).  142 S. Ct. at 2021.  The Court agreed with the defendant's argument that attempted Hobbs Act Robbery could be committed by an attempt to threaten, illustrating the point with a would-be robber who is caught on his way to the bank with a threatening note that he intends to pass to the teller.  *Id.*  Such a defendant could be convicted for attempted Hobbs Act Robbery even if the note were a bluff.  *Id.*  Because the least culpable conduct criminalized by the attempt statute was an attempt to threaten that was a bluff, "no element of attempted Hobbs Act robbery require[d] proof that the defendant used, attempted to use, or threatened to use force."  *Id.*  And because attempted Hobbs Act Robbery is not a crime of violence, it could not serve as a predicate for charges under Section 924(c).

In reaching that conclusion, the Court rejected the government's argument that the defendant had to show, with some empirical evidence, that the statute was applied to attempted threats of force in the way that the defendant suggested.  *Id.* at 2024–25.  The government's argument that the defendant show a realistic probability that the statute's application conflicted with the elements-based inquiry that Section 924(c) requires:

> To determine whether a federal felony qualifies as a crime of violence, [Section] 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force.

*Id.* at 2024 (emphasis in original).  The Court distinguished *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), in which it had required the defendant to show that state courts applied a state criminal statute in a "'special (nongeneric) manner'" such that it fell outside of the generic definition of theft provided by a federal immigration statute.  *Taylor*, 142 S. Ct. at 2025 (quoting *Duenas-Alvarez*, 549 U.S. at 193).  That case implicated federalism concerns that required an inquiry into how state courts interpreted state laws, concerns not present in the analysis of federal attempted Hobbs Act Robbery.  *Id.*  After *Taylor*, at least where a Section 924(c) charge rests on a federal predicate offense, defendants need not show a "reasonable probability" that the statute will be applied in a particular manner.

Turning to the pending motion, *Taylor*'s rejection of the "reasonable probability" test reflects a change in the law that requires reconsideration of this Court's prior order denying Defendant's motion to dismiss.  This Court's prior order adopted the reasoning employed by Judge Gergel in *United States v. Roof* to conclude that Sections 247(a)(2) and 249(a)(1) are crimes of violence.  *See* Opinion and Order at 2–3 (ECF No. 325) (citing *United States v. Roof*, 225 F. Supp. 3d 438 (D.S.C. 2016) and *United States v. Roof*, 252 F. Supp. 3d 469 (D.S.C. 2017)).  Judge Gergel, in turn, relied (at least in part) on the principle that "[t]here must be a 'realistic probability, not a theoretical possibility that,' a statute could apply to the imagined conduct."  *Roof*, 252 F. Supp. 3d at 483 (quoting *Duenas-Alvarez*, 549 U.S. at 193).  In doing so, Judge Gergel refused to entertain the "farfetched hypotheticals" offered by the defendant.  *Id.*

In adopting Judge Gergel's reasoning, this Court implicitly adopted Judge Gergel's reliance on the now-defunct "realistic probability" inquiry.  *Taylor* commands that inquiry be set aside in favor of a focus solely on the elements of the offense.  That command reflects a substantial change in the law necessitating reconsideration.

The government raises two principal objections.  First, it objects that *Taylor* did not address the specific offenses charged in this case, most—although not all—are completed rather than attempted offenses.  Opp'n at 13.  But it is *Taylor*'s holding respecting the categorical approach, not its holding respecting attempted Hobbs Act Robbery, that primarily motivates this Court to reconsider its prior decision.  All parties concede that the categorical approach applies here.  Indeed, the government appears to concede that *Taylor* altered how courts must apply the categorical approach when it "held that the categorical approach requires courts to analyze the elements of the federal statutes as written when determining if they are [crimes of violence], and should not look to how those federal statutes are typically applied . . . ."  *Id.* at 14.

Second, the government argues that reconsideration is inappropriate because "the text, structure, history, and ordinary canons of statutory construction establish that the charged violations of [Sections] 247(a)(2) and 249[(a)(1)] are, as written, categorically crimes of violence." *Id.*  But that argument puts the cart before the horse.  The Court must first decide whether reconsideration is appropriate.  It is, so the Court will turn to the merits of the motion to dismiss.

**B.      The Merits of Defendant's Motion to Dismiss**

Defendant's motion to dismiss challenges the Section 924(c) charges of the Superseding Indictment on the grounds that the predicate offenses for those charges, Sections 249(a)(1) and Section 247(a)(2), are not crimes of violence.

Section 924(c)—a provision of the Gun Control Act of 1968, as amended—provides for several penalties of increasing severity for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ."  18 U.S.C. § 924(c)(1)(A).  When a person "causes the death of a person through the use of a firearm" during a violation of Section 924(c), that person is subject to punishment "by

death or by imprisonment for any term of years or for life" if the killing is a murder under federal law.  18 U.S.C. § 924(j)(1).

Section 924(c) provides two definitions of a "crime of violence."  The first, known as the "elements clause," looks to whether a felony offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."  18 U.S.C. § 924(c)(3)(A).  The second, known as the "residual clause," asks whether a felony offense, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  In *United States v. Davis*, the Supreme Court held that the residual clause of Section 924(c) is unconstitutionally vague, leaving only the elements clause to define a "crime of violence."  139 S. Ct. 2319, 2336 (2019).

"To determine whether [an offense] is a crime of violence, [courts] employ the categorical approach, which 'requires [them] to compare the elements of the statute under which the defendant was convicted to the . . . definition of 'crime of violence'" under Section 924(c).  *United States v. Johnson*, 899 F.3d 191, 203 (3d Cir. 2018) (quoting *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018)).  "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  *Taylor*, 142 S. Ct. at 2020.  "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute . . . does not categorically match the federal standard, and so cannot serve" as a predicate for the Section 924(c) charges.  *Borden*, 141 S. Ct. at 1822.

Section 247(a)(2) applies to anyone who "intentionally obstructs, by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of

that person's free exercise of religious beliefs, or attempts to do so . . . ."  18 U.S.C. § 247(a)(2).

To secure a conviction, the government must prove that the defendant: (1) used or threatened force;

(2) with the intent to obstruct others in their free exercise; (3) resulting in actual obstruction of

their free exercise.

Section 247(a)(2) includes several different permutations which incur heightened penalties.

When "death results" from the defendant's conduct or where that conduct includes "an attempt to

kill," the defendant is subject to "imprisonment for any term of years or for life . . . or may be

sentenced to death."  18 U.S.C. § 247(d)(1).  When "bodily injury to any person, including any

public safety officer . . . results from the acts committed in violation of this section or if such acts

include the use, attempted use, or threatened use of a dangerous weapon" the defendant is subject

to "imprisonment for not more than 20 years . . . ."  18 U.S.C. § 247(d)(3).

Section 249(a)(1) applies to anyone who "willfully causes bodily injury to any person or,

through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device,

attempts to cause bodily injury to any person, because of the actual or perceived race, color,

religion, or national origin of any person . . . ."  18 U.S.C. § 249(a)(1).  To secure a conviction, the

government must prove that the defendant: (1) willfully; (2) caused bodily injury; (3) because of

the actual or perceived race, color, religion, or national origin of any person.  When "death results"

or the defendant's conduct includes "an attempt to kill," the defendant is subject to imprisonment

"for any term of years or for life . . . ."  18 U.S.C. § 249(a)(1)(B)(i)–(ii).

Defendant's motion to dismiss asserts that neither Section 247(a)(2) nor Section 249(a)(1)

codifies a crime of violence within the meaning of the elements clause.  To resolve the motion, the

Court must examine the elements of each crime and ask whether the government must prove that

the defendant used, attempted to use, or threatened to use force to secure a conviction.  The Court

ultimately concludes that Section 249(a)(1) does not codify a crime of violence, so it begins with that statute.

> i.      *Section 249(a)(1) is not a Crime of Violence Because it Can be Violated by Omission*

Defendant principally argues, as he did in support of his original motion to dismiss, that Section 249(a)(1) is not a crime of violence because a defendant can be convicted under the statute for an omission that results in bodily injury. Mot. at 15.  Under binding Third Circuit precedent, Defendant says, crimes that can be committed by omission are not crimes of violence. *Id.*  Before *Taylor*, this argument might have required Defendant to offer cases showing a realistic probability that Section 249(a)(1) can be violated by omission; however, as discussed, realistic probability has no place in the categorical approach after *Taylor*.

Defendant relies on the Third Circuit's decision in *United States v. Mayo*, 901 F.3d 218 (3d Cir. 2018).  In *Mayo*, the Third Circuit held that Pennsylvania's first-degree aggravated assault statute was not a violent felony under the elements clause of the Armed Career Criminal Act, 18 U.S.C. § 922(e).  That clause asks, in familiar terms, whether an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ."  18 U.S.C. § 924(e)(2)(B)(i).  The court reasoned that the statute's prohibition on "'caus[ing] serious bodily injury to another'" did not require "proof that a defendant engaged in any affirmative use of 'physical force' against another person."  *Id.* at 220, 225–26 (quoting 18 Pa. Cons. Stat. § 2702(a)(1)) (alteration in original).  Pennsylvania courts had upheld convictions under the statute even where force had not been used, such as "with the deliberate failure to provide food or medical care." *Id.* at 227–28 (citing cases).  Because a conviction under the statute could be sustained with proof of an omission resulting in bodily injury, the statute did not require proof of force and therefore was not a violent felony under the elements clause of the ACCA.

*Mayo* stands for the proposition that a statute that can be violated by omission does not have "as an element the use, attempted use, or threatened use of physical force" for purposes of the ACCA. Such a statute cannot satisfy the nearly identical elements clause of Section 924(c). The government conceded as much in its Response in opposition to Defendant's motion to dismiss. Government's Opp'n to Def.'s Mot. to Dismiss Counts 23–33, 38–39 and 52–63 of the [Superseding] Indictment Charging the Use of a Firearm in Connection with a Crime of Violence at 3 (ECF No. 248) ("[I]n the Third Circuit, an act of omission currently does not qualify as the 'use of force' as contemplated by the force clause.")

Nothing in the text of Section 249(a)(1) requires the government to prove that the defendant used force to obtain a conviction. The statute focuses on the willful causation of a result—bodily injury—without reference to how that result is caused. Indeed, the government does not contest that the statute may be satisfied when a defendant causes bodily injury to a person by omission. Accordingly, it cannot be a crime of violence for purposes of Section 924(c).

Considering the "death results" or "attempt to kill" elements in conjunction with the causation of bodily injury does not, as the government suggests, change that conclusion. Opp'n at 35–36. This case does not turn on the quantum of force used such that proof of a specific intent to injure could indicate that the statute requires sufficiently severe or violent force. Instead, this case turns on whether Section 249(a)(1) requires that the government prove the use, attempted use, or threatened use of force at all. Neither the defendant's intent nor the severity of the result changes the fact that the mechanism employed to effectuate the intent or cause the result—an omission— does not constitute "the use, attempted use, or threatened use of force" under *Mayo*.

The government also mounts several counterarguments, none of which are successful. First, the government argues that *Mayo* was wrongly decided because it ignores the Supreme

Court's decision in *United States v. Castleman*, 572 U.S. 157 (2014).  Opp'n at 37.  In *Castleman*, the Supreme Court considered the quantum of violence necessary to satisfy the definition of a "misdemeanor crime of domestic violence" under the federal statute prohibiting the possession of a firearm or ammunition for anyone "who has been convicted . . . of a misdemeanor crime of domestic violence."  18 U.S.C. § 922(g)(9).  It held that "that the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction."  *Castleman*, 572 U.S. at 168.

The *Castleman* Court went on to find that the defendant's conviction for Tennessee domestic assault under a statute barring "[i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another" fit comfortably within that common-law definition.  *Id.* (quoting Tenn. Code Ann. § 39-13-101(a)).  In reaching that conclusion, it noted that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force."  *Id.* at 169.  The Court considered and rejected the defendant's arguments that affirmative but indirect acts that cause bodily injury, such as administering poison via someone's drink, did not constitute force because "the common-law concept of 'force' encompasses even its indirect application."  *Id.* at 170.  On that understanding, the Court thought it "impossible to cause bodily injury without applying force in the common-law sense."  *Id.*

Read literally, *Castleman*'s admonition that causing bodily injury must entail some force conflicts with the Third Circuit's holding in *Mayo*.  However, the *Mayo* court considered and rejected the same reading of *Castleman* now advanced by the government.  *Mayo*, 901 F.3d at 228.  It recognized *Castleman*'s focus on "examples of causing bodily injury through 'the knowing or intentional application of force,' which it went on to say could be applied directly, 'as with a kick or a punch,' or indirectly, as in 'the act of employing poison knowingly as a device to cause

physical harm.'" *Id.* (quoting *Castleman*, 572 U.S. at 171).  So understood, *Castleman* did not reach the question "whether causing serious bodily injury without any affirmative use of force would satisfy the violent force requirement of the ACCA" or under the analogous elements clause of Section 924(c).  *Id.*  The Third Circuit answered that question in *Mayo* and its resolution of that question binds this Court.

To be sure, other circuits have come to the opposite conclusion.  At least the First, Second, Fourth, Seventh, Eighth, and Eleventh Circuits have held that statutes criminalizing omissions can nonetheless be crimes of violence (or violent felonies).  *United States v. Báez-Martínez*, 950 F.3d 119, 131–33 (1st Cir. 2020) (Puerto Rico second-degree murder); *United States v. Scott*, 990 F.3d 94, 108–11 (2d Cir. 2021) (New York first-degree manslaughter); *United States v. Thomas*, 27 F.4th 556, 558–59 (7th Cir. 2022) (Wisconsin child abuse); *United States v. Peeples*, 879 F.3d 282, 286–87 (8th Cir. 2018) (Iowa attempted murder); *United States v. Ontiveros*, 875 F.3d 533, 538 (10th Cir. 2017) (Colorado second-degree assault); *United States v. Sanchez*, 940 F.3d 526, 535 (11th Cir. 2019) (New York attempted second-degree murder).

But the Third Circuit does not stand alone.  The Fifth, Sixth, and Ninth Circuits have each held that statutes criminalizing omissions do not require the proof of "physical force" for purposes of the elements clause.  *United States v. Resendiz-Moreno*, 705 F.3d 203, 205 (5th Cir. 2013) (Georgia child-endangerment) *overruled on other grounds by United States v. Reyes-Contreras*, 910 F.3d 169, 183–84 (5th Cir. 2018) (en banc) (discarding the circuit's "bodily contact" requirement); *United States v. Burris*, 912 F.3d 386, 388–402 (6th Cir. 2019) (en banc) (Ohio felonious assault and aggravated assault); *United States v. Trevino-Trevino*, 178 F. App'x 701, 703 (9th Cir. 2006) (North Carolina involuntary manslaughter).

And, even though it considered itself bound by *Castleman*'s considered dicta, the First Circuit explained that omissions such as the failure to feed a child do not logically entail the use of 'force:'

> When a child dies from not being fed, the death is not—in nonlegal terms—a result of "force." Nor is it the result of "forceful physical properties as a matter of organic chemistry" as where a defendant "sprinkles poison in a victim's drink." The human body is a highly organized organic system that requires input (energy in the form of food) to sustain itself. Without that input, the body naturally tends toward a state of disorder and eventually death as a result of entropy.

*Báez-Martínez*, 950 F.3d at 131 (internal citations omitted).

However this split of authority is ultimately resolved, the current law in this Circuit holds that a statute that criminalizes an omission does not have, as an element, the use, attempted use, or threatened use of physical force.

Not deterred, the government argues that *Mayo*'s holding is limited to Pennsylvania's first-degree aggravated assault statute. Opp'n at 41. The government points to a quote from *Mayo* where the court observed "that 'physical force and bodily injury are not the same thing,' at least not as interpreted by Pennsylvania courts." *Mayo*, 901 F.3d at 227. The government interprets this quote as limiting *Mayo*'s holding to the specific statute at issue, but this Court cannot read it so expansively. The *Mayo* court made two findings: first, that the statute at issue could be violated by an omission; second, that the statute therefore did not require proof of force. It left open the possibility that other states' statutes, also penalizing the causation of bodily injury, might be interpreted to exclude omissions, thus avoiding the problem posed by the Pennsylvania statute.

But where, as here, the government does not contest that the statute at issue can be violated by an omission that causes bodily injury, the statute does not require the proof of force under *Mayo*. [2]

---

[2] The government cites several Third Circuit cases which, it contends, show that the Third Circuit "had held" before *Mayo* "that an element requiring proof of 'bodily injury' by itself satisfied the 'physical force' requirement" and that it returned to this reading after *Mayo* was decided.  Opp'n at 38 n.19.  If so, *Mayo* might be understood as limited to the precise statute considered there.  However, none of the cases cited by the government contradicts the holding in *Mayo* that proof of the causation of bodily injury alone does not satisfy the physical force requirement.

Two cases cited by the government are distinguishable because they analyzed state statutes penalizing the causation of bodily injury with a deadly weapon.  *United States v. Ramos*, 892 F.3d 599, 610–12 (3d Cir. 2018); *United States v. Abdullah*, 905 F.3d 739, 747–48 (3d Cir. 2018).  A defendant cannot use a deadly weapon by omission, so causing injury by using a deadly weapon necessarily involves the use of force.

In another case, the Third Circuit held that the federal statute penalizing the communication through the mail of a "threat to injure the person of the addressee or of another," 18 U.S.C. § 876(c), is a crime of violence under the elements clause of the career offender sentencing enhancement.  *United States v. Chapman*, 866 F.3d 129, 130 (3d Cir. 2017).  That case is distinguishable for at least two reasons:  First, the Third Circuit discussed the difference between direct and indirect uses of force but was not confronted with the question of whether an omission can constitute force.  *Id.* at 133; see also *Mayo*, 901 F.3d at 228–29 (distinguishing *Chapman*).  It therefore had no occasion to consider whether the statute could be violated by a threat to injure by omission.

Second, this Court is not convinced that it is possible to communicate a threat to injure without threatening force.  Communicating an intent to injure another by failing to take an action, e.g. by omission, is not properly understood as a threat.  Generally, a defendant is liable for an omission only where the defendant fails to take an act that they had voluntarily undertaken a duty to perform.  Communicating one's intent not to comply with a duty to act that one has voluntarily undertaken is akin to voluntarily relinquishing the duty to act, even if failing to act would ultimately result in injury.  This Court is not aware of any authority holding that such a communication is a threat.

The government also cites a case in which the Third Circuit found that a subsection of New Jersey's robbery statute, which penalizes threatening another with or purposefully putting another in fear of bodily injury during the course of a theft, is a crime of violence under the elements clause of the career offender sentencing guideline.  *United States v. McCants*, 952 F.3d 416, 428 (3d Cir. 2020); N.J. Stat. Ann. § 2C:11-1(a)(2).  Again, the Third Circuit was not confronted with any argument that this robbery statute could be committed by threatening an omission.  Nor does this Court see how one could threaten to inflict bodily injury on another—or put another in fear of bodily injury—without using force, particularly where that threat is made during the course of a theft.

Next, the government suggests that *Mayo* has been abrogated by the Supreme Court's decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019).  Opp'n at 39–40.  In *Stokeling*, the Court considered whether a conviction for robbery under a Florida statute required proof of sufficiently severe force to constitute the use of "physical force" under the elements clause of the ACCA.  *Stokeling*, 139 S. Ct. at 554.  Florida courts had interpreted the statute to require proof of "'resistance by the victim that is overcome by the physical force of the offender'" rather than "[m]ere 'snatching of property from another.'"  *Id.* at 554–55 (quoting *Robinson v. State*, 692 So.2d 883, 886 (Fla. 1997)).  The Supreme Court had previously defined the quantum of force required to constitute "physical force" in that context as "violent force—i.e., force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  The *Stokeling* Court held that *Johnson*'s articulation of violent force "includes the amount of force necessary to overcome a victim's resistance."  *Stokeling*, 139 S. Ct. at 555.

While *Stokeling* arguably articulated a broader standard for the quantum of force necessary to meet the requirement of "physical force" under the ACCA's elements clause, it did not hold that an omission constitutes force.  The government suggests that some of the hypotheticals used by the Defendant—e.g., a "physician withholding life-saving medication on the basis of religion, or

---

Finally, the government cites a case in which the Third Circuit found that a subsection of a federal statute, 18 U.S.C. § 111(b), which prohibits a defendant from committing a forcible assault on a federal official "and either (1) using a deadly or dangerous weapon, or (2) inflicting bodily injury," is a crime of violence under the elements clause of the career offender sentencing guidelines.  *United States v. Bullock*, 970 F.3d 210, 215 (3d Cir. 2020).  The Court considered and rejected the defendant's argument that the statute could be violated by a defendant who did not use any force.  *Id.* at 215–17.  The statute's requirement that the bodily injury be inflicted, or the deadly or dangerous weapon be used, in the commission of a forcible assault necessarily required that the defendant have used or threatened physical force.  *Id.*

None of these cases conflict with *Mayo*'s holding that a statute requiring the government to prove a defendant caused bodily injury, without more, does not require proof that the defendant used, attempted to use, or threatened the use of physical force.

the racially-driven starvation of a child"—would necessarily involve overcoming a victim's resistance such that they would satisfy the physical force requirement under *Stokeling*. Opp'n at 39–40. But even if some instances of withholding medication or food might involve "the amount of force necessary to overcome a victim's resistance," such as when the victim is restrained or when food or medicine is removed from the victim's presence, the government does not need to prove that force to prove that bodily injury was caused by a defendant. Further, some victims might be incapable of resistance, in which case no resistance was overcome at all.

Finally, the government argues that the Rules of Construction, Findings, and legislative history of the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, Pub. L. No. 111-84, Division E, 123 Stat. 2190 (2009) (the "HCPA")—of which Section 249(a)(1) is a part—indicate that Section 249(a)(1) was intended to apply only to violent conduct. Opp'n at 41–42. One such rule does indicate that the HCPA was intended to address "violent acts motivated by" bias against certain groups. HCPA § 4710(2). Several findings explain that the widespread problem of "violence," or "violent acts," motivated by bias against certain groups spurred Congress to pass the HCPA. HCPA § 4702(1)–(3), (5)–(7), & (9). The avowed intent to punish violent acts is consistent with the House Committee for the Judiciary's statement that the HCPA covers only "violent actions that result in death or bodily injury committed because the victim has one of the specified actual or perceived characteristics." H.R. Rep. at 111-86 at 16 (2009).

It is undeniable that Congress intended the HCPA to cover "violent acts." The government goes further, suggesting that "Congress's determination that the language of [Section] 249 covers 'violent' force (without limitation on whether those acts are accomplished by commission or omission) should control the analysis of this particular statute." Opp'n at 42. This argument is puzzling, given the government's concession that an omission is not force in this Circuit.

17

Regardless, none of the legislative materials cited by the government shows a Congressional intent to limit Section 249(a)(1) to only violent force, just violent acts.  "Violent acts" is left undefined, and it is not at all clear that "violent acts" is coextensive with Section 924(c)'s requirement that an offense require proof of "physical force" to qualify as a crime of violence.  An omission resulting in bodily injury or death might constitute a "violent act," but it does not constitute "physical force"—at least, not under *Mayo*.

Because Section 249(a)(1) does not require the government to prove, in every case, "the use, attempted use, or threatened use of physical force against the person or property of another," it does not qualify as a "crime of violence."[3]  The Section 924(c) charges in the indictment must therefore be dismissed to the extent (and only to the extent) that they are predicated on primary violations of Section 249(a)(1).

> ii.       *Section 247(a)(2) is a Crime of Violence*

Holding that Section 249(a)(1) is not a crime of violence does not dispose of the Section 924(c) charges.  Those charges also rest on a second predicate offense, Section 247(a)(2).  Section 247(a)(2) penalizes the willful obstruction, by force or threat of force, of individuals in the enjoyment of their free exercise of religious beliefs.  Defendant raises four arguments as to why Section 247(a)(2)'s prohibition on the obstruction of free exercise by force or threat of force does not have, as an element, the use, attempted use, or threatened use of force.  The Court addresses each in turn.

---

[3] Because the Court finds that Section 249(a)(1) does not require proof of force, it does not consider Defendant's additional argument that Section 249(a)(1) requires proof of only *de minimis* force.

a.      Section 247(a)(2) Requires Proof of Physical Force

First, Defendant argues that Section 247(a)(2) requires proof of only nonviolent force. Mot. at 20.  This minimal level of force, he says, is not sufficiently severe to constitute "violent force—i.e., force capable of causing physical pain or injury to another person."  *Id.*  It therefore does not rise to the level of "physical force" under the elements clause of Section 924(c).

Defendant rests this argument on the purported breadth of the term "obstruct."  That term is broad, he says, and therefore the statute criminalizes any force, no matter how slight, so long as it has the effect of obstructing a victim.  Mot. at 22.  Taking that argument one step further, Defendant claims that one who, intending to obstruct participants in a religious ceremony, erects a barricade blocking the ceremony (or threatens to do so) violates Section 247(a)(2).  *Id.*

The Supreme Court has described "physical force" under the analogous elements clause of the ACCA as "violent force—i.e., force capable of causing physical pain or injury to another person."  *Johnson*, 559 U.S. at 140.  In *Johnson*, the Court reviewed Florida's battery statute, which required the government to prove "that the defendant "[i]ntentionally caus[ed] bodily harm," that he "intentionally str[uck]" the victim, or that he merely "[a]ctually and intentionally touche[d]" the victim.  *Id.* at 137 (quoting *State v. Hearns*, 961 So. 2d 211, 218 (Fla. 2007)).  The least of these acts—intentionally touching the victim—could not satisfy the force requirement that the government prove physical, i.e. violent, force in every case.  *Id.* at 145.

In *Stokeling*, the Court returned to its definition of "physical force" under the ACCA.  It held that ""physical force,' or 'force capable of causing physical pain or injury,' includes the amount of force necessary to overcome a victim's resistance."  139 S. Ct. at 555.  Florida's robbery statute, which required proof of that level of force, thus qualified as a "violent felony" under the elements clause of the ACCA.  *Id.*  After *Stokeling*, a statute that requires proof of at least force

necessary to overcome a victim's resistance satisfies the analogous elements clause of Section 924(c). The question, then, is whether Section 247(a)(2) requires proof of at least that much force.

The text of Section 247(a)(2) establishes that it does. It requires force (or a threat of force) that is sufficiently strong that it obstructs an individual in the free exercise of religion. That requirement necessarily implies that the force used be enough to overcome the victim's resistance.

Defendant's hypothetical prosecution of a person who barricades the way to a religious ceremony suffers from two defects. First, it is not clear that a barricade would "obstruct" anyone within the meaning of the statute. This Court is not convinced that the interruption posed by a barricade that can be removed or circumvented is the type of "obstruction" of religious free exercise contemplated by Section 247(a)(2).

Second, even assuming the barricade does obstruct within the meaning of the statute, it is not the force used to install the barricade that obstructs; the thing that obstructs is the barricade itself. Section 247(a)(2) criminalizes only obstruction "*by* force or threat of force . . . ." 18 U.S.C. § 247(a)(2). The thing that obstructs must itself be forceful. *Cf. Castleman*, 572 U.S. at 170 (explaining that it is not the act of "'sprinkl[ing]' the poison" that makes poisoning a use of force, "it is the act of employing poison knowingly as a device to cause physical harm"). Erecting a barricade is not obstruction "by force" because the barricade is not forceful, even if force was used to place it.

Accepting Defendant's argument to the contrary would expand the scope of Section 247(a)(2) to embrace any instance where any person physically exerts themself on the tangible world with the result, however attenuated, that another's free exercise is obstructed (however slightly). This Court is aware of no court that has adopted such a broad view of Section 247(a)(2) and it declines to do so here.

Defendant also claims that Section 247(a)(2) can be violated by nonviolent force against property.  Mot. at 21.  Defendant cites a portion of the legislative history which, he says, shows that Section 247(a) "was intended to broadly address the problem of '[r]eligiously motivated incidents,' including 'simple vandalism' such as defacing a religious building with graffiti or defacing a religious text." *Id.* (quoting H.R. Rep. No. 99-820 at 1–2 (1986)) (alteration in original).  Considering this history, Defendant suggests, Section 247(a)(2) could be violated where someone engages in simple vandalism that has the effect of obstructing.

That legislative history (and Defendant's argument) rests on the broader language of a separate part of the same statute, Section 247(a)(1).  That section penalizes anyone who "intentionally defaces, damages, or destroys any religious real property, because of the religious character of that property, or attempts to do so . . . ."  18 U.S.C. § 247(a)(1).  The language "defaces, damages, or destroys" plainly encompasses the type of non-violent force against property—e.g., simple vandalism—contemplated by Defendant and discussed in the legislative history.  Nothing in the statute's text suggests that the more stringent terms of Section 247(a)(2)—requiring obstruction by force—are violated by simple vandalism unless that vandalism independently constitutes a threat of force.

If there were any doubt that Section 247(a)(2) requires sufficiently severe force, it is resolved by the fact that Defendant is charged with several statutory aggravating factors set forth under Section 247(d).  Those aggravating factors provide for enhanced penalties where: "death results" from the defendant's conduct, 18 U.S.C. § 247(d)(1); the defendant's conduct includes an "attempt to kill;" "bodily injury results" form the defendant's conduct, 18 U.S.C. § 247(d)(3); or the conduct includes "the use, attempted use, or threatened use of a dangerous weapon, explosives,

or fire," *id.*   Each of these statutory aggravating factors, coupled with Section 247(a)(2)'s requirement of force used to obstruct, implies force well above that required by *Stokeling*.

Defendant concedes that these statutory aggravating factors set forth additional elements that the government must prove to secure a conviction.  Mot. at 20.  But Defendant contends that Sections 247(d)(1) and 247(d)(3) each set forth indivisible alternative means of violating those sections and incurring the heightened penalties, some of which do not require proof of the use of force at all.  Reply in Supp. of Def.'s Mot. for Recon. of Order Den. Mot. to Dismiss Counts 23–33, 38–39, and 52–63 of the Indictment Charging the Use of a Firearm in Connection with a Crime of Violence at 17 (ECF No. 811).  On that understanding, none of the statutory aggravating factors charged in this case count because each appears in a statutory subsection alongside other potential aggravating factors—such as "kidnapping"—that do not necessarily require proof of force.

A statute is indivisible where it "enumerates various factual means of committing a single element."  *Mathis v. United States*, 579 U.S. 500, 506 (2016).  On the other hand, a statute is divisible where it "list[s] multiple elements in the alternative, thereby defin[ing] multiple crimes." *Id.* at 505.  Where a statute is divisible, courts employ the "modified categorical approach" to determine "what crime, with what elements, a defendant was convicted of" (or charged with).  *Id.* at 505–06.  To do so, courts look to "a limited class of documents" including, among others, "the indictment . . . ."  *Id.*  Once identified, courts look at the elements of the crime to determine whether it has "as an element the use, attempted use, or threatened use of physical force against the person or property of another."

At least two courts of appeals have held that the statutory aggravating factors enumerated by Section 247(d)(1)–(5) are internally divisible.  *See United States v. Doggart*, 947 F.3d 879, 888 (6th Cir. 2020) (finding that Section 247(d)(3) is internally divisible with respect to the various

enumerated factors therein); *United States v. Roof*, 10 F.4th 314, 402–03 (4th Cir. 2021) (finding that "the 'death results' offense under [Section] 247(a)(2) is divisible"). Indeed, this Court is not aware of any Court that has held that either Section 247(d)(1) or Section 247(d)(3) set forth indivisible alternative means by which they can be violated, rather than divisible elements defining multiple crimes.

Nor does the text support such a reading. It would "strain[] conventional English to read an end" (here, death results or bodily injury) "and a means" (here, kidnapping, sexual assault, or the use of a deadly weapon) "as alternative ways of committing the same offense . . . ." *Doggart*, 947 F.3d at 879. That is because they are not. The various statutory aggravating factors charged in the Superseding Indictment are elements of separate crimes, divisible from the others contained in each subsection.

Accordingly, the Court may consider the aggravating factors in its analysis of whether Section 247(a)(2) requires sufficiently strong force when charged along with those aggravating factors. Although Section 247(a)(2) satisfies the elements clause in the absence of any aggravating factor, their presence here clarifies that the Section 247(a)(2) charges in the Superseding Indictment require proof of violent "physical force" under the elements clause.

        b.      Section 247(a)(2) Requires Force or Threatened Forced Targeted Against Another Person or Another's Property

Next, Defendant suggests that Section 247(a)(2) can be violated with force that is not "targeted" at another. Mot. at 22. Defendant illustrates this argument with two hypotheticals: someone could rev their car's engine or set off fireworks in the parking lot of a religious building, thereby obstructing the worshippers in their free exercise of their religion. Revving a car engine or setting off fireworks, he says, are forceful acts that could have the effect of obstructing another's free exercise.

This argument fails for the same reason as Defendant's hypothetical barricade.  To be sure, the noise generated by a revving car engine or setting off fireworks could interrupt a religious service.  But the Court doubts that such an interruption would constitute an obstruction within the meaning of Section 247(a)(2).  And, even if it did, it is not the force that is doing the obstructing.  Rather, it is the noise, an attenuated result of the force, that is causing the obstruction.  The Court does not read Section 247(a)(2)'s language broadly enough to cover such attenuated results of force and Defendant points to no case in which any other court has done so.

To the contrary, Section 247(a)(2) requires proof of force that the defendant: (1) used or threatened force; (2) with the intent to obstruct others in their free exercise; (3) resulting in actual obstruction of their free exercise.  Force that is intended to, and does, obstruct another person's free exercise is force targeted at another.

> c.     Section 247(a)(2) Cannot be Violated by Force Used Only Against One's Own Property

Relatedly, Defendant claims that Section 247(a)(2) can be violated by force against one's own property, so long as that force has the effect of obstructing a person in the free exercise of their religion.  Mot. at 23.  If Defendant is correct, he says, then Section 247(a)(2) does not satisfy the elements clause because Section 247(a)(2) does not require proof of "the use, attempted use, or threatened use of force against the person or property *of another*."

Defendant again brings to bear several hypotheticals.  First, he supposes that a person could burn their own cross in front of a religious building.  Mot. at 23.  This conduct, Defendant says, might obstruct a worshipper's free exercise, but it would involve only force against the defendant's own property.

Defendant does not explain *why* a worshipper might be obstructed in exercising their religion when confronted with a cross burning in front of their church, synagogue, or mosque.  As

the Supreme Court has recognized, "the history of cross burning in this country shows that cross burning is often intimidating, intended to create a pervasive fear in victims that they are a target of violence." *Virginia v. Black*, 538 U.S. 343, 360 (2003).  Intimidation may not be the only possible interpretation of a burning cross.  But anyone who, intending to obstruct worshippers in their religious free exercise, burns a cross in front of a religious building has availed themselves of this history to threaten and intimidate those inside.  And a threat against the person of another independently satisfies the terms of the elements clause, even if it is accomplished through force against only one's own property.

The Fourth Circuit addressed and rejected a similar argument in *Roof*.  There, the court doubted that force against one's own property could violate Section 247(a)(2), particularly where—as here— the defendant is also charged with the "death results" aggravating factor.  *Roof*, 10 F.4th at 405.  But, the Court explained, even if Section 247(a)(2) could be violated by force on one's own property, the conduct would necessarily be of a type that is inherently threatening:

> Even if we assume that a defendant could use force against his own property—as opposed to the "property of another" like the elements clause requires, 18 U.S.C. § 924(c)(3)(A)—as a means to obstruct another person from exercising his or her religious beliefs, that force would necessarily amount to a threat of force against that person as well, since a threat to property must "cause[] such intimidation to intentionally obstruct an individual's ability to exercise his or her religious beliefs."

*Id.* at 405 n.67 (quoting H.R. Rep. No. 115-456 at 2 (2018)) (alteration in original).  This Court is hard-pressed to imagine a scenario in which a worshipper could be obstructed in their free exercise through force used against the defendant's own property unless that force independently constitutes a threat.[4]

---

[4] Defendant also offers a second hypothetical: "a disillusioned member of a religious group may damage his own property."  Mot. at 23.  According to Defendant, "[w]here such conduct

> d. Section 247(a)(2) is Divisible as Between Attempted and Completed Obstruction

Finally, Defendant argues that Section 247(a)(2) is not a crime of violence because it can be violated by attempted threat. Mot. at 24. He relies on *Taylor*'s holding that attempted Hobbs Act Robbery is not a crime of violence under Section 924(c) because the statute is satisfied by evidence of an attempt to threaten, even where the defendant's attempted threat was ultimately a bluff. 142 S. Ct. at 2021. Where a statute is satisfied by proof of an attempt to threaten, it does not meet the elements clause's requirement that an offense have as an element the use, attempted use, or threatened use of force. *Id.*

Same here, says Defendant. He points to the language of Section 247(a)(2), which penalizes a defendant who willfully obstructs another's enjoyment of their free exercise of religious beliefs by force or threat of force "or attempts to do so." Defendant says that the "attempts to do so" clause means that Section 247(a)(2), like attempted Hobbs Act Robbery, is satisfied by proof of an attempted threat. Therefore, the argument goes, Section 247(a)(2) is not a crime of violence under the elements clause.

The government primarily argues that Section 247(a)(2) is divisible as between attempted and completed violations. And one cannot commit a completed violation of Section 247(a)(2) by

---

interferes with another's exercise of religion, it would violate [Section] 247(a)(2), but it does not require force against property of another." *Id.* As an example, Defendant cites *Andrade v. United States*, a civil suit against the government under the Federal Tort Claims Act for damages sustained after members of the Branch Davidian organization allegedly burned the organization's compound following a 51-day siege by federal agents. 116 F. Supp 2d 778, 784–86 (W.D. Tex. 2000).

Defendant does not develop this line of argument further, and the Court finds it unhelpful. *Andrade* is inapposite, as it involved a civil suit against the government under a disputed set of facts that do not portray the scenario Defendant offers. *Id.* Moreover, force against one's own property does not constitute obstruction unless it "'cause[s] such intimidation to intentionally obstruct an individual's ability to exercise his or her religious beliefs.'" *Roof*, 10 F.4th at 405 n.67 (quoting H.R. Rep. No. 115-456 at 2 (2018)). Force used to intimidate, even when that force is against one's own property, is a threat that independently satisfies the elements clause. *Id.*

attempted threat, only by force or threat of force.  Thus, the government says, completed violations of Section 247(a)(2) are crimes of violence even if attempted violations are not.

Defendant does not point to any case holding that Section 247(a)(2) is indivisible as between completed and attempted offenses.  Nor could he.  To be indivisible, an offense must set out alternative means of committing the same offense.  *Mathis*, 579 U.S. at 505–06.  But attempts, like conspiracies, are inchoate offenses; they are separate offenses requiring proof of different elements from the completed offense.  *See United States v. Macias-Valencia*, 510 F.3d 1012, 1014 (9th Cir. 2007) ("By definition, conspiracy and attempt are inchoate crimes that do not require completion of the criminal objective."); *United States v. Khatallah*, 41 F.4th 608, 632 (D.C. Cir. 2022) ("The law has long treated conspiracy to commit a crime and the substantive crime that is the object of the conspiracy as distinct offenses rather than alternative means.").

Here, attempted obstruction under Section 247(a)(2) requires proof of only: (1) an intent to obstruct another's free exercise by force or threat; and (2) a substantial step toward that obstruction.  *Cf. Taylor*, 142 S. Ct. at 2020 (defining the elements of attempted Hobbs Act Robbery as (1) "inten[t] to unlawfully take or obtain personal property by means of actual or threatened force," and (2) "a 'substantial step' toward that end").  On the other hand, the completed offense requires proof of a force or threat and actual obstruction.  Attempted and completed obstruction require proof of different elements; therefore, they are separate, divisible crimes.

This conclusion is consistent with the post-*Taylor* treatment of completed Hobbs Act Robbery.  The text of the Hobbs Act Robbery statute, much like the text of Section 247(a)(2), provides for inchoate offenses in the same sentence as it defines the completed offense.  18 U.S.C. § 1951 ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to

27

do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.").  Yet, courts have consistently rejected the argument that *Taylor* applies only to the completed version of the offense, holding that the Hobbs Act Robbery statute is divisible between inchoate and completed versions of the offense.  *See United States v. Eccleston*, No. 20-2119, 2022 WL 3696664, at *2 (10th Cir. Aug. 26, 2022) (holding that the Hobbs Act Robbery statute codifies three separate crimes, each requiring proof of different elements: Hobbs Act Robbery, attempted Hobbs Act Robbery, and conspiracy to commit Hobbs Act Robbery); *Crocker v. United States*, No. 2:16-cv-681-HCN, 2022 WL 16553185, at *3 (D. Utah Oct. 31, 2022) (same).

Concluding that Section 247(a)(2) is divisible between completed and attempted offenses resolves only part of the Defendant's argument.  The second and third groups of firearms charges, Counts 38–39 and 52–63 of the Superseding Indictment, charge violations of Section 924(c) based on completed *and* attempted violations of Section 247(a)(2) charged at Counts 34–35 and 40–51. The Court must still determine whether the attempted violations of Section 247(a)(2) are crimes of violence such that they can support the second and third groups of firearms charges.

The attempted violations of Section 247(a)(2) charged Counts 34–35 and 40–51 are crimes of violence.  The Court assumes that attempted obstruction under Section247(a)(2), like attempted Hobbs Act Robbery, may be committed by an attempt to threaten that is only a bluff.  And a statute that criminalizes an attempt to threaten that is only a bluff does not require proof of the use, attempted use, or threatened use of physical force.  *Taylor*, 142 S. Ct. at 2021.  But Counts 34–35 and 40–51 also charge Defendant with statutory aggravating factors under Sections 247(d)(1) and 247(d)(3).  An attempt to obstruct an individual's free exercise by threat resulting in death,

including an attempt to kill, including the use of a dangerous weapon, or resulting in bodily injury surely requires proof of "physical force" (or an attempt to use physical force) in each instance. The aggravating factors charged in this case are not satisfied by proof of an attempt to threaten that is only a bluff.  Accordingly, the attempted violations of Section 247(a)(2) charged at Counts 34–35 and 40–51 also support the second and third groups of firearms charges.

## III.      CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration will be granted in part and denied in part.  The violations of Section 924(c) charged at Counts 22–33 and 38–39 of the Superseding Indictment will be dismissed to the extent (and only to the extent) that they are predicated on violations of Section 249(a)(1).  The motion will be denied in all other respects.  An appropriate order follows.


BY THE COURT:


*/s/Robert J. Colville*
Robert J. Colville
United States District Judge


DATED: December 15, 2022

cc: All counsel of record