IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS ) | |

**MOTION TO COMPEL PRODUCTION OF DNA EXTRACTS AND SWABS OR PORTIONS OF SWABS, PERMIT CONSUMPTIVE TESTING OF SAMPLES WITH MINIMAL LIQUID, AND COMPEL AN EXPLANATION FOR WHY THE FBI LABORATORY PRODUCED EMPTY PLASTIC TUBES AND WHETHER THERE EXIST SWABS OR PORTIONS OF SWABS**

Defendant Robert Bowers, through counsel, moves the Court to compel the government to produce the "swabbings" from crime scene evidence samples identified in the "DNA inventory" it provided to defense counsel and permit consumptive testing of samples with 5 microliters or less of liquid. The defense also moves the Court to compel the government to explain (1) why eleven of the samples in the bag of 17 tubes for item 1B501, which relate to crime scene evidence samples, consisted of empty plastic tubes rather than extract material and (2) whether there exist remaining swabs or portions of swabs for the samples in the bag of 17 tubes for item 1B501 for which the defense expert could perform non-consumptive testing.

Over the government's objection, this Court ordered that the defense "may retrieve the DNA extracts and any swabs or portions of swabs that may exist pertaining to these items of evidence." ECF 829 at 5 (emphasis added). This order was to ensure meaningful access to evidence for independent testing pursuant to the federal rules of criminal procedure. At no time did the government advise the Court or counsel for Mr. Bowers that

1

the requested extracts and swabs did not exist. Indeed, the government provided an inventory of the DNA-related items, listing "swabbings" and "cuttings" from the many samples that were subject to the Court's Order permitting defense testing. *See* Exhibit A (inventory provided with government's November 10, 2022, letter). After substantial time and expense involved in arranging for shipment of the items to the defense retained laboratory, however, the defense discovered that the government produced **empty** plastic tubes for the majority of samples for item 1B501, and, for a handful of other samples for item 1B501, it produced tubes with a volume of liquid so miniscule, less than 5 microliters, that any testing would be consumptive.

## I. Background

After extensive litigation in which the government resisted defense independent testing of DNA evidence at every turn, the Court ordered that the defense "may retrieve the DNA extracts and any swabs or portions of swabs that may exist pertaining to these items of evidence." ECF 829 at 5. The Court ordered the government to produce "any swabs or portions of swabs" despite the government's baseless claim that the defense sought "to expand" its request for independent testing. ECF 817 at 2 n.1. Additionally, the Court ordered that the defense independent laboratory only "perform non-consumptive DNA testing." ECF 829 at 5.

On December 6, 2022, the defense retrieved the items the government produced, kept them in their original packaging, placed them in a refrigerated/temperature-controlled FedEx box, and shipped the box to the defense laboratory, Cellmark Forensic Services. The

defense expert, Andrew McDonald, opened the package and prepared a declaration reporting his findings. *See* Exhibit B (Declaration of Andrew McDonald).

In his declaration, Mr. McDonald states: "On 8th Dec 2022, Cellmark Forensic Services received a sealed box from FedEx (tracking number 770688400034), which contained a number of items among which was item 1B501." Exhibit B at 1. With respect to item 1B501, he noted that it "contained two bags of DNA extracts - one bag with 17 tubes and one bag with 12 tubes." *Id.* For the bag of 17 tubes, the plastic tubes of DNA extracts "were placed into a centrifuge to spin down their contents to the bottom of the tube to determine which contained any remaining DNA extract." *Id.* at 3. He determined that "[w]ith the exception of tubes 08NO1, 08NO6, 08NO7, 08NON, 08NOO and 08NOX, all of the tubes were found to be empty." *Id.* For the six tubes that were not empty—tubes 08NO1, 08NO6, 08NO7, 08NON, 08NOO and 08NOX—"the volume of remaining liquid appeared to be very small (estimated to be $\leq 5 \mu l$)."[1] *Id.*

The government failed to produce "any swabs or portions of swabs," as ordered by the Court. ECF 829 at 5. Mr. McDonald observed: "No actual swabs, portions of swabs or other samples have been received for further testing to supplement the empty tubes for independent DNA testing." Exhibit A at 3. He explained that "[t]o avoid consumption and to provide the best chance of obtaining independent DNA testing results, the remaining swab material collected from the evidence items should be submitted for further testing." *Id.*

---

[1] The designation "μl" refers to microliters. None of the plastic tubes in the bag of 12 tubes relate to evidentiary items collected from the crime scene. They relate to known samples collected from the victims and Mr. Bowers.

> II. **The Court should compel the government to produce extracts and swabs or portions of swabs of DNA evidence samples, permit consumptive testing of samples with 5 microliters or less of liquid, and compel the government to provide an explanation for why the FBI laboratory produced eleven empty tubes and whether there exist swabs or portions of swabs for the samples in item 1B501.**

The government failed to produce to the defense "any swabs or portions of swabs" pertaining to samples of DNA evidence. Instead, it turned over at least eleven empty plastic tubes and six tubes with a miniscule amount of liquid. *See* Exhibit B at 3. As noted by defense expert Andrew McDonald, "No actual swabs, portions of swabs or other samples have been received for further testing to supplement the empty tubes for independent DNA testing." *Id*.

Previously, the government sought to prevent the defense from gaining access to the swabs or portions of swabs. It argued that the defense sought "to expand [its] testing to include '**the DNA extracts and any swabs or portions of swabs that may exist pertaining to these items of evidence.**'" ECF 817 at 2 n.1 (citation omitted) (emphasis in original). It stated: "Counsel for the United States, through discussions with FBI agents and laboratory personnel, is ascertaining the feasibility of this expanded request." *Id.* The defense pointed out the absurdity of the government's claims, noting:

> The government also writes that the defense "seeks to expand" its testing to include DNA extracts and any swabs or portions of swabs that may exist pertaining to these items of evidence." ECF 817 at 2 n.1. Nothing in the defense motion limited the defense testing to only any remaining DNA extracts. In the event that Cellmark may recommend that additional swabs may be needed for testing, the defense should be able to perform such testing, which is standard practice for independent laboratory testing. In fact, additional swabs are generated in DNA screening so that independent testing can be performed in the future, if requested. There is no compelling reason to restrict independent testing to DNA extracts alone if extracts would fail to have enough quantity of

>DNA for new testing or if there would be a risk of consuming the extract during the defense testing.

ECF 826 at 6 n.3. The Court agreed with the defense positions, ordering that the defense "may retrieve the DNA extracts and any swabs or portions of swabs that may exist pertaining to these items of evidence during office hours at the Federal Bureau of Investigation (FBI) located at 3311 E. Carson Street, Pittsburgh, PA, 15203." ECF 829 at 5. The defense thought it was doing just that, retrieving DNA extracts and any swabs or portions of swabs, when it went to the FBI on December 6, 2022. As it stands now, because the government produced eleven empty plastic tubes and six tubes with 5 microliters or less of liquid, the defense expert cannot perform any "non-consumptive DNA testing" the Court ordered.

In its seminal report, *The Evaluation of Forensic DNA Evidence* (1996), the National Research Council recommended:

> Whenever feasible, forensic samples should be divided into two or more parts at the earliest practicable stage and the unused parts retained to permit additional tests. The used and saved portions should be stored and handled separately. Any additional tests should be performed independently of the first by personnel not involved in the first test and preferably in a different laboratory.

*Id.* at 4. In making this recommendation, the National Research Council stressed the point that "[n]o amount of effort and improved technology can reduce the error rate to zero" and "an independent retest" is the best protection. *Id.*

Though the government has had exclusive control over the evidence in this case, it has now produced empty plastic tubes and an extraordinarily small amount of liquid in other tubes, essentially preventing the defense from independent testing of the crime scene DNA

evidence. The Court should compel the government to produce extracts or swabs or portions of swabs for defense independent testing of DNA evidence samples and permit consumptive testing of samples with 5 microliters or less of liquid and, in light of the January 31, 2023, deadline for defense independent testing, compel the government to provide a declaration from FBI laboratory personnel concerning (1) why the FBI laboratory produced empty plastic tubes rather than extract material and (2) whether there exist remaining swabs or portions of swabs for the samples in item 1B501.

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael N. Burt*
Law Office of Michael Burt PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender