**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Bifurcate the Sentencing Phase (Trifurcate the Proceedings) ("Motion to Trifurcate") (ECF No. 854) filed by Defendant Robert Bowers. Defendant requests that the Court divide the trial in this matter into three, as opposed to two, phases, specifically proposing the following:

> (i) a "merits phase" on the elements of the offenses; (ii) an "eligibility phase" on the elements required for imposition of the death penalty; and (iii) a "selection phase" involving a determination of and a weighing of aggravating and mitigating factors.

Mot. to Trifurcate 1, ECF No. 854. The Government has filed a Response in Opposition (ECF No. 868) to the Motion to Trifurcate, and Defendant has filed a Reply (ECF No. 880). The Motion to Trifurcate has been fully briefed and is ripe for disposition.

## I.      Background

Defendant is the alleged perpetrator of an October 2018 attack on worshippers at the Tree of Life Synagogue in Pittsburgh. He is charged in a 63-Count Superseding Indictment with violations of federal statutes prohibiting obstruction of the free exercise of religion, hate crimes, and using and possessing a firearm during and in relation to a crime of violence. As noted by the Government, "Counts One through Eleven (Obstruction of Free Exercise of Religious Beliefs

1

Resulting in Death) and Twenty-Three through Thirty-Three (Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence) of the Superseding Indictment[] carry a possible sentence of death," and the United States has filed a notice of its intent to seek the death penalty with respect to each of the capital counts.  Resp. 2, ECF No. 868.

## II.    Relevant Statutory Background

Before a jury can consider whether the imposition of a sentence of death is justified, they must unanimously find beyond a reasonable doubt find that the defendant committed a capital offense, and that the defendant is eligible for the death penalty, specifically that the defendant was at least 18 years old at the time of the offense, that at least one of the intentionality factors set forth at 18 U.S.C. § 3591(a)(2) applies, and that at least one of the statutory aggravating factors set forth at 18 U.S.C. § 3592(c) applies.  18 U.S.C. § 3591(a); 18 U.S.C. §§ 3593(b)-(e).  The intentionality factors are outlined in Section 3591(a)(2), requiring a finding beyond a reasonable doubt that the Government has proven the requisite mental state, and specifically requiring that the defendant:

> (A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury that resulted in the death of the victim; (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act[.]

18 U.S.C. § 3591(a)(2).  The Government has asserted that each of these factors applies in this case.  Notice of Intent 1-2, ECF No. 86.  The Government has also alleged that the following statutory aggravating factors set forth at Section 3592(c) Subsections (5), (9), (11), and (16) apply in this case: grave risk of death to additional persons; substantial planning and premeditation;

vulnerability of certain victims; and multiple killings or attempted killings.  Notice of Intent 3, ECF No. 86.  In addition, the Government has alleged the following non-statutory aggravating factors: victim impact; killings motivated by religious animus; selection of site; lack of remorse; and injury to surviving victims.  *Id.* at 3-5.[1]

Should a guilty verdict be returned on an offense punishable by death, the Federal Death Penalty Act ("FDPA") requires that a court then conduct a separate sentencing hearing.  18 U.S.C. § 3593(b).  During a capital sentencing hearing, "information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under Section 3592."  18 U.S.C. § 3593(c).  The Government must prove the existence of an aggravating factor beyond a reasonable doubt, and the Defendant bears the burden of establishing a mitigating factor by a preponderance of the evidence.  *Id.*  During the sentencing hearing, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  *Id.*; *see also United States v. Taylor*, 635 F. Supp. 2d 1236, 1242 (D.N.M. 2009) ("By

---

[1] With respect to non-statutory aggravating factors, the United States District Court for the Eastern District of Louisiana has explained:

> While 18 U.S.C. § 3591, et seq., expressly defines both the "intent" requirement and the statutory aggravating factors necessary to allow consideration of the death penalty, the statute provides no specific guidance as to what constitutes an appropriate non statutory aggravating factor.  For example, after specifically enumerating 15 possible statutory aggravating factors, § 3592(c) simply adds in an unnumbered paragraph: "The jury ... may consider whether any other aggravating factor for which notice has been given exists."  Under § 3593(a), the government is required to give notice of its proposed aggravating factors, but other than mentioning victim impact, no boundaries are given on the scope of the nonstatutory factors. . . .

> While the statute contains no specific guidelines for the nonstatutory factors, it does impose substantial responsibility and considerable discretion to the trial judge in deciding admissibility. The statute, as noted, requires that the proffered information be "relevant." Significantly, the statute also provides that even relevant information "may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."

*United States v. Davis*, 912 F. Supp. 938, 941 (E.D. La. 1996).

making the Federal Rules of Evidence inapplicable to the penalty phase, the FDPA helps ensure that the jury can consider all relevant aggravating and mitigating evidence, some of which may otherwise be inadmissible under traditional evidentiary restraints.   Additionally, the FDPA provides even greater protection against prejudicial information than the Federal Rules of Evidence, because the FDPA permits a judge to exclude information whose probative value is outweighed by the danger of unfair prejudice, rather than the 'substantially outweighed' standard set forth in Rule 403.").[2]  If a defendant is found to be eligible for the death penalty:

> [T]he jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

18 U.S.C. § 3593(e).

---

[2] The United States Court of Appeals for the Fourth Circuit has explained:

> Even if the [Supreme] Court in *[Ring v. Arizona*, 536 U.S. 584 (2002)] mandated that a defendant receive, with respect to a jury finding of an aggravating factor, the protections applicable to a guilt-or-innocence trial, it does not follow that the defendant is entitled to the protections of the Evidence Rules.  The Evidence Rules "do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the [Evidence Rules] in place." *United States v. Fell*, 360 F.3d 135, 144 (2d Cir.2004).  Indeed, as a general matter, the Evidence Rules provide greater protection than that which is constitutionally mandated.  *See, e.g., Dowling v. United States*, 493 U.S. 342, 352–54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (ruling that due process was not violated by introduction of evidence made inadmissible under Rule 404(b) of the Evidence Rules).

> Moreover, the FDPA provides a capital defendant with constitutionally sufficient evidentiary protections.  Even without the protections of the Evidence Rules, "it remains for the [district] court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial." *Fell*, 360 F.3d at 145.  The FDPA provides a ready mechanism for a trial court to fulfill this function, permitting the exclusion of evidence "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  § 3593(c).  We must rely on the trial courts, in applying this provision, to exclude evidence that transgresses a defendant's constitutional rights. For these reasons, the evidentiary standard of the FDPA withstands constitutional scrutiny.  *See United States v. Lee*, 374 F.3d 637, 648 (8th Cir.2004) (reaching same conclusion); *Fell*, 360 F.3d at 138 (same).

*United States v. Fulks*, 454 F.3d 410, 438 (4th Cir. 2006)

## III.    Discussion

By way of his Motion to Trifurcate, Defendant proposes that the Court separate the sentencing hearing/penalty phase in this matter, should one be necessary, to allow for a jury determination first on the issue of Defendant's eligibility for the death penalty, and then on the issue of the selection of a sentence.  The Defendant's proposal would result in the trial in this matter involving: (1) a guilt phase, wherein the jury would consider whether Defendant committed any of the charged offenses; (2) an eligibility phase, if necessary, wherein the jury would consider: (a) whether Defendant was at least 18 years old at the time of the offenses of conviction, if any; (b) whether at least one of the intentionality factors set forth at 18 U.S.C. § 3591(a)(2) has been established; and (c) whether one (or more) of the statutory aggravating factors set forth at 18 U.S.C. § 3592(c) has been established; and (3) a sentence selection phase, if necessary, wherein the jury would be presented with information respecting non-statutory aggravating factors and mitigating factors, and would then weigh *all* sufficiently established aggravating and mitigating factors in determining whether a sentence of death is justified in this matter.

Defendant suggests that trifurcation is in the interest of judicial economy and efficiency, as an "eligibility phase" in this case could negate the need for a "far more extensive selection phase" should the jury determine that the Government failed to establish the existence of either an intentionality factor or a statutory aggravating factor.  Mot. to Trifurcate 2, ECF No. 854. Defendant further asserts that the FDPA's requirement that at least one of the mental state/intentionality factors and at least one of the statutory aggravating factors be established before a defendant is eligible for the death penalty results in these factors constituting elements of a capital offense, and that these "gateway" factors should be considered before, and in the absence of, information supporting the non-statutory aggravating factors alleged by the Government, and, in

particular, information regarding victim impact.  *Id.* at 4; *see also United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) ("[T]hose intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt.").  Defendant argues that information supporting non-statutory factors such as victim impact testimony "has no probative value to the consideration of gateway or statutory aggravating factors [that are relevant to the eligibility determination], and that such evidence is extremely prejudicial, confusing, and misleading."  Mot. to Trifurcate 7, ECF No. 854.  Defendant argues that the jury should not be exposed to such evidence while deciding whether the gateway or statutory aggravators have been proven.  *Id.* at 9.  Defendant further argues that hearsay, which is regularly admitted with respect to non-statutory aggravating factors, is inadmissible to prove the gateway or death eligibility factors, and that this distinction further warrants bifurcation of the penalty phase of this trial.  Id. at 9.

The Government asserts that trifurcation is the exception, and not the rule, under the FDPA, and that granting such relief in this case has the potential to prolong and complicate what already projects to be a long and complicated process.  Resp. 6, ECF No. 868; *see also id.* at 8 ("Bifurcation wastes time, creates unnecessary repetition in the presentation of evidence, and potentially requires testimony from the same witnesses multiple times.").  It further argues that trifurcation is particularly inappropriate in this case, where the Government believes that "the proof of the intentionality, statutory aggravating, and non-statutory aggravating factors overlaps substantially." *Id*.  With respect to this overlap, the Government specifically avers as follows:

> Concerns about the potential for spillover from victim impact information are substantially mitigated where, as here, evidence establishing the eligibility factors (as well as many of the non- statutory aggravators) will have been admitted at trial and considered by the jury in determining guilt of the charged offenses.  To that

end, various counts in the Superseding Indictment require, among other elements, proving that the defendant[:]

- caused the death of or attempted to kill multiple victims in this case (*see* Counts One through Thirty-Three and Thirty-Six through Thirty-Seven);

- intentionally obstructed by force victims' enjoyment of their free exercise of religious beliefs resulting in their deaths (Counts One through Eleven);

- willfully caused bodily injury resulting in death or involving an attempt to kill (Counts Twelve through Twenty-Two and Thirty-Six through Thirty-Seven);

- intentionally obstructed, or attempted to obstruct, by force or threat of force, the enjoyment of the victims' free exercise of religious beliefs, and that he attempted to kill; used, attempted to use, or threatened to use a dangerous weapon; or caused bodily injury to the congregants or to responding law enforcement officers (Counts Thirty-Four through Thirty-Five; *see also* Counts Forty through Fifty-One);

- acted because of the actual or perceived religion of the victim (Counts Twelve through Twenty-Two and Thirty-Six through Thirty-Seven);

- used, carried, brandished, or discharged a firearm causing death through the use of a firearm (Counts Twenty-Three through Thirty-Three);

- knowingly used or carried a firearm during and in relation to the commission of a crime of violence (Counts Twenty-Three through Thirty-Three, Thirty-Eight through Thirty-Nine, and Fifty-Two through Sixty-Three); and

- committed murder (as defined in Title 18, United States Code, Section 1111) (Counts Twenty-Three through Thirty-Three).

Resp. 14-15, ECF No. 868 (citing Superseding Indictment Mem. ECF No. 45).

The Government further argues that a conviction for the charged offenses will "leave little likelihood for a rejection of the intent factors (including allegations that the defendant intentionally killed each of the eleven deceased victims)," as well as the statutory aggravating factors, as the Government has alleged that Defendant "killed or attempted to kill multiple individuals; that he created a grave risk of death to others; that he substantially planned and premeditated that attack;

and that he committed the offenses against victims who were vulnerable due to old age and infirmity."  Resp. 15, ECF No. 868.  The Government asserts that, while victim vulnerability and premeditation are not elements of the charges at issue, "evidence of the victims' ages and mental and physical limitations will support proof of causation" and that proof of Defendant's "substantial preparations for the attack and anti-Semitic animus will still be relevant to establish his intent for the hate crime charges."  *Id.* at 15-16.  Accordingly, the Government argues, the jury will have heard and relied upon extensive evidence relevant to the eligibility factors even prior to the commencement of the penalty phase. *Id.* at 16.

The Government argues that proper jury instruction can avoid the risk of unnecessary spillover among the statutory and non-statutory factors, and that this risk is, in any event, outweighed by the risk of unnecessary protraction and complication of the proceedings, jury confusion, hardship to witnesses, and delay for victims.  Resp. 6; 9, ECF No. 868.  In particular, the Government avers that jury confusion is likely to result from trifurcation because any proven statutory aggravating factors are relevant to both eligibility and the selection of a sentence, as a jury is required to weigh all proven aggravating (both statutory and non-statutory) and all proven mitigating factors in determining what sentence to impose.  *Id.* at 9.  The Government asserts that separating the statutory and non-statutory aggravating factors could confuse the jurors as to what they should consider at a "selection phase," resulting in potential dilution of the weight the jury gives to any statutory aggravating factors they found to exist at the "eligibility phase."   The Government avers that "there is no valid basis for the Court to depart from the FDPA's clear preference for a single penalty phase proceeding," and requests that the Court deny Defendant's Motion.  *Id.* at 6.

While the Court agrees that the FDPA contemplates a single penalty phase encompassing both eligibility and sentence-selection determinations by the jury, *see* 18 U.S.C. §§ 3593(b)-(e); *United States v. Bolden*, 545 F.3d 609, 618 (8th Cir. 2008), and therefore does not require a bifurcated penalty phase, the Court also notes that several courts have granted requests for relief materially identical to that which has been requested by the Defendant in this action.  *See United States v. Johnson*, 362 F. Supp. 2d 1043, 1106-07 (N.D. Iowa 2005*), aff'd in part*, 495 F.3d 951 (8th Cir. 2007) (granting motion to trifurcate, explaining that: "Courts and commentators alike have recognized that evidence of 'non-statutory' aggravating factors, in particular 'victim impact' evidence, while relevant to the 'selection' phase, simply is not relevant to the 'eligibility' phase[,]" and observing: "[t]o pretend that such [victim impact] evidence is not potentially unfairly prejudicial on issues to which it has little or no probative value is simply not realistic, even if the court were to give a careful limiting instruction.  Rather, such potent, emotional evidence is a quintessential example of information likely to cause a jury to make a determination on an unrelated issue on the improper basis of inflamed emotion and bias—sympathetic or antipathetic, depending on whether one is considering the defendant or the victims' families.); *United States v. Davis*, 912 F. Supp. 938, 949 (E.D. La. 1996) ("In addition, if the penalty phase is reached in this case, the court is considering bifurcating the hearing into two parts.  The first part would focus exclusively on the two findings the jury must make in order to consider the death penalty—whether the intent element was established and whether at least one statutory aggravating factor was proven.  This phase of the penalty hearing presumably would rely almost entirely upon the evidence already presented in the guilt phase and involve little, if any, additional information.  It would nonetheless insure that the jury's findings as to intent and the statutory factors would not be influenced by exposure to the separate and unrelated nonstatutory factors and information.

Should the jury make the two requisite threshold findings, the hearing would then continue into the presentation of the nonstatutory aggravating and mitigating information."); *United States v. Mayhew*, 380 F. Supp. 2d 936, 957 (S.D. Ohio 2005) (discussing a court's gatekeeper role to temporarily exclude information that is more prejudicial than probative, and holding: "[t]he Court agrees with *Davis* and *Johnson* and will bifurcate the sentencing phase on the theory that victim impact evidence has no probative value with regard to the statutory aggravating factors or the mens rea requirement in this case, but that such evidence carries with it a substantial risk of prejudicing the jury."); *United States v. McCluskey*, No. CR 10-2734 JCH, 2013 WL 12329093, at *5 (D.N.M. Sept. 12, 2013) (granting motion to trifurcate and explaining that the court believed "that juror confusion would be more likely in a unitary penalty phase, when the jurors have heard much evidence and argument that is not relevant to the first issue they must decide—the eligibility determination" and concluding that "bifurcation of the penalty phase will make it clearer to the jury what evidence is to be considered and for what purpose."); *United States v. Savage*, Crim. No. 07-550, ECF No. 510 at 1-2 n.1 (E.D. Pa., June 4, 2012) (granting motion to trifurcate which the government did not oppose before later proceeding with a unitary penalty phase at the request of all parties); *United States v. Smith*, No. 3:16-CR-00086-SLG-1, 2020 WL 8910884, at *1 (D. Alaska Jan. 14, 2020) (indicating intent to trifurcate proceedings and explaining: "[t]rifurcation appears the best way to distinguish for the jury its role in the eligibility phase (considering intent and threshold statutory aggravators) from its role in the selection phase (individualized determination based on finding and weighing of aggravating and mitigating factors).  It also helps '[e]nsure that the jury's findings as to intent and the statutory factors w[ill] not be influenced by exposure to the separate and unrelated non-statutory factors and information.'"); *United States v. Jordan*, 357 F. Supp. 2d 889, 903 (E.D. Va. 2005) (granting Government's request for

trifurcation); *United States v. Madison*, 337 F. Supp. 3d 1186, 1205 (M.D. Fla. 2018) (granting motion to trifurcate and explaining: "[a]t this juncture, decently apprised of the type of evidence the Government would put on for victim impact and pattern of domestic abuse factors, the Court is absolutely persuaded of its prejudicial import. And hearing this evidence before deciding whether Defendant is eligible for the death penalty carries a high, if not insurmountable, risk that it will unfairly skew that finding. Jury instructions may and likely will effectively curb this, but trifurcation portends certainty." (citation omitted)); *United States v. Natson*, 444 F. Supp. 2d 1296, 1309 (M.D. Ga. 2006) (granting unopposed motion to trifurcate); *see also Bolden*, 545 F.3d at 618 (collecting cases and noting that "[a] number of district courts have nonetheless granted pre-hearing motions to bifurcate the penalty phase (or, as some have phrased it, 'trifurcate' the entire trial) into an 'eligibility phase,' limited to evidence relevant to mental state and to the existence of one or more statutory aggravating factors, and, if the defendant is found eligible, a 'selection phase,' at which evidence relevant to mitigating factors and non-statutory aggravating factors such as victim impact and other crimes is received and weighed by the jury."); *United States v. Fell*, 531 F.3d 197, 239 (2d Cir. 2008) (explaining that "the victim impact evidence and character evidence constitutionally required for sentencing purposes can sometimes be unduly prejudicial, inflammatory, or irrelevant to guilt."); *United States v. Solomon*, Crim. No. 05-cr-385, ECF No. 432 at 18 (W.D. Pa., April 25, 2007) (taking under "serious consideration" bifurcation of penalty phase materially similar to that requested by Defendant in this case, before defendant eventually withdrew motion to trifurcate).[3]  In fact, where a request for trifurcation has been made, the majority of courts grant such relief, *see* Reply 6-8, ECF No. 880 (collecting cases), and the

---

[3] The Court agrees with Defendant that neither *Savage* nor *Solomon*, each of which the Government cites in support of its opposition to the Motion to Trifurcate and each of which involved a defendant's withdrawal of a trifurcation request, stands for the proposition that a unitary penalty phase is the norm among district courts in the Third Circuit.

Government points to very few cases where such relief was outright denied.  The Court finds, and the Government concedes, that it is within this Court's discretion to grant the relief requested by Defendant.

While the Court acknowledges and understands that the United States Court of Appeals for the Eighth Circuit has cautioned that a motion seeking trifurcation "should not be routinely granted because it further extends and complicates what is already a long and complicated proceeding," *Bolden*, 545 F.3d at 619, the Court finds that Defendant, in this case, articulates a sufficient basis to warrant the relief he requests, and particularly his assertions as to potential prejudicial introduction of extensive victim impact testimony that may otherwise be irrelevant to an eligibility determination.  When balancing the potential benefits of trifurcation, specifically prevention of the introduction of information that may be prejudicial to Defendant while the jury considers, if necessary, whether Defendant is eligible for the death penalty and, relatedly, elimination of potential juror confusion as to what information the jury should consider in determining eligibility for the death penalty, with the potential harm posed by trifurcation, this Court will, in an abundance of caution, join those district courts who have permitted bifurcation of the penalty phase in a capital case.  While the Court understands and acknowledges the arguments raised by the Government as to potential juror confusion as a result trifurcation, the Court notes that the Government's own proposed solution to the Defendant's concerns, specifically proper and effective jury instructions, can and will address any concern that jurors will improperly fail to take into consideration any statutory aggravating factors they previously found to exist should a sentence selection phase ultimately prove necessary in this matter.  *See Bolden*, 545 F.3d at 619 ("Jurors are presumed to follow their instructions . . . .").  Further, while the Court is not unsympathetic to the Government's concerns over unnecessary protraction and complication of the proceedings, hardship to witnesses,

and delay for victims, the Court must also consider and safeguard the fairness of the proceedings in this matter and prevent any potential unfair prejudice to the parties.  While trifurcation may not be required under the FDPA, the Court believes, as other courts have found, that it is warranted in this matter.  Accordingly, the Court will exercise its discretion and bifurcate the penalty phase in this matter.

Consistent with the Court's analysis above, the trial in this case will be divided into three phases.  In the interest of consistency, the Court will, as it has in most of its filings, refer to the first phase as the "guilt phase," which will involve consideration of the elements of the charged offenses.  The Court anticipates that the bifurcated penalty phase will commence, consistent with this Court's prior Order at ECF No. 920, one week after the return of a guilty verdict, should one be entered.  The second phase overall, and first of the penalty phase, will be referred to as the "eligibility phase," and, if it proves necessary, will involve consideration of the elements required for imposition of the death penalty and, specifically, consideration of whether the Government has established at least one applicable state of mind factor and the existence of at least one statutory aggravating factor.  The third phase overall, and second of the penalty phase, will be referred to as the "sentence selection phase," and, should it be necessary, will involve the determination of and weighing of all established aggravating and mitigating factors.  The Court notes that it perceives that no deadline previously imposed by Court Order will be drastically, if at all, impacted by this determination, and now clarifies that previous references to "the return of a guilty verdict, should one be entered" refers to the conclusion of the "guilt phase" in this matter.  The Court does anticipate, however, that its holding herein may result in either party wishing to supplement or alter their previous submissions respecting jury instructions and verdict forms.  Any party wishing to be heard on this issue should bring the same to the Court's attention forthwith.

**IV.     Conclusion**

For the reasons discussed above, the Court will grant Defendant's Motion to Trifurcate.

An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: January 30, 2023

cc: All counsel of record