IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Prohibit the Death Qualification of the Jury ("Motion to Prohibit") (ECF No. 759) filed by Defendant Robert Bowers in this matter. The Government filed a Response in Opposition (ECF No. 799) to the Motion to Prohibit on September 30, 2023, and the deadline for the filing a reply has passed, *see* ECF No. 778. Accordingly, the Motion to Prohibit has been fully briefed and is ripe for disposition.

The Court foregoes a detailed recitation of either the factual background or procedural history of this case in this Memorandum Opinion, as such a recitation is unnecessary to resolution of the Motion to Prohibit. Relevant herein are the following facts: (1) Defendant is charged in a 63-Count Superseding Indictment in this matter; (2) Counts One through Eleven (Obstruction of Free Exercise of Religious Beliefs Resulting in Death) and Twenty-Three through Thirty-Three (Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence) of the Superseding Indictment carry a possible sentence of death; and (3) the Government has filed a notice of its intent to seek the death penalty with respect to each of the capital counts. Notice of Intent to Seek the Death Penalty, ECF No. 86. By way of the Motion to Prohibit, Defendant seeks an order prohibiting the

1

death qualification of his jury on the grounds that death qualification contravenes the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because it will produce a jury that is "statistically less likely to include legally cognizable groups opposed to capital punishment, is skewed toward conviction, and is more likely to sentence him to death." Mot. to Prohibit 1-2, ECF No. 759.  For the reasons that follow, the Court will deny the Motion to Prohibit.

With respect to death qualification of a petit jury in a capital case, the Honorable Richard Mark Gergel of the United States District Court for the District of South Carolina has explained:

> In *Wainwright v. Witt*, the Supreme Court held that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)).  The Supreme Court later held "that a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Morgan v. Illinois*, 504 U.S. 719, 728, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).  This is binding precedent this Court is commanded to follow.

*United States v. Roof*, 225 F. Supp. 3d 413, 416 (D.S.C. 2016), *aff'd*, 10 F.4th 314 (4th Cir. 2021); *see also Morgan*, 504 U.S. at 729 ("A juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do.  Indeed, because such a juror has already formed an opinion on the merits, the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror.  Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains such views.  If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence.").

With respect to the relief requested by way of the Motion to Prohibit, the Court initially notes that Defense Counsel candidly acknowledge that they "are not aware that any Federal District Court has granted such a motion." Mot. to Prohibit 1-2 n.1, ECF No. 759. The Court appreciates counsels' candor, and further notes that the Motion to Prohibit relies on arguments that have been consistently rejected by the Supreme Court, as well as by the district and appellate courts to have considered such arguments. Indeed, the Supreme Court has explicitly held that the Constitution does not prohibit death qualification of a jury. *Lockhart v. McCree*, 476 U.S. 162, 173 (1986); *see also United States v. Schlesinger*, No. CR-18-02719-001-TUC-RCC (BGM), 2021 WL 5578900, at *4 (D. Ariz. Nov. 29, 2021) ("The Supreme Court has repeatedly rejected the argument that death-qualifying potential jurors violates a defendant's constitutional rights." (citing *Uttecht v. Brown*, 551 U.S. 1, 19 (2007); *Buchanan v. Kentucky*, 483 U.S. 402, 414–16 (1987); *McCree*)). Given the same, and in the interest of efficiency, the Court briefly addresses the arguments raised by Defendant, as well as relevant authorities, as follows.

Defendant argues that "[d]eath qualifying the jury, in combination with the Western District's jury selection system, will disproportionally exclude minorities, women, and other cognizable groups based upon their opposition to capital punishment." Mot. 3, ECF No. 759. With respect to his assertion that the Western District's jury selection system will contribute to the exclusion of cognizable groups from the potential jury panel/venire in this matter, the Court notes that it previously rejected Defendant's challenge to this District's jury selection system, *see* ECF No. 714, and that Defendant has recently renewed his efforts to challenge the same at ECF No. 916. That motion is not yet ripe, and the Court will consider any arguments raised therein respecting purported exclusion of cognizable groups from the qualified juror wheel under the Western District's Jury Plan at the appropriate juncture.

As to Defendant's more general assertion that death qualification of a petit jury itself disproportionately excludes cognizable groups from participation in the petit jury based upon their opposition to capital punishment, and that "[d]eath qualification [thus] violates Mr. Bowers' right to a jury selected from a fair cross-section of the community" under the Sixth and Fourteenth Amendments, Mot. 47, ECF No. 759, the Supreme Court has held that the fair-cross-section requirement under the Sixth and Fourteenth Amendments applies only to jury panels or venires, but does not extend to individual petit juries. *McCree*, 476 U.S. at 173-74 ("We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large."). In *McCree*, the Supreme Court further explained:

> But even if we were willing to extend the fair-cross-section requirement to petit juries, we would still reject the Eighth Circuit's conclusion that "death qualification" violates that requirement. The essence of a "fair-cross-section" claim is the systematic exclusion of "a 'distinctive' group in the community." [*Duren v. Missouri*, 439 U.S. 357, 364 (1979)]. In our view, groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors, such as the "*Witherspoon* - excludables"[1] at issue here, are not "distinctive groups" for fair-cross-section purposes.
>
> . . . .
>
> The group of "*Witherspoon*-excludables" involved in the case at bar differs significantly from the groups we have previously recognized as "distinctive." "Death qualification," unlike the wholesale exclusion of blacks, women, or Mexican-Americans from jury service, is carefully designed to serve the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial. There is very little danger, therefore, and McCree does not even argue, that "death qualification" was instituted as a means for the State to arbitrarily skew the composition of capital-case juries.

---

[1] "*Witherspoon*-excludables," as used in this quoted language, are prospective jurors "whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial." *McCree*, 476 U.S. at 165.

> Furthermore, unlike blacks, women, and Mexican-Americans, "*Witherspoon*-excludables" are singled out for exclusion in capital cases on the basis of an attribute that is within the individual's control. It is important to remember that not all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law. Because the group of "*Witherspoon* -excludables" includes only those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case, "death qualification" hardly can be said to create an "appearance of unfairness."
>
> Finally, the removal for cause of "*Witherspoon*-excludables" in capital cases does not prevent them from serving as jurors in other criminal cases, and thus leads to no substantial deprivation of their basic rights of citizenship. They are treated no differently than any juror who expresses the view that he would be unable to follow the law in a particular case.
>
> In sum, "*Witherspoon*-excludables," or for that matter any other group defined solely in terms of shared attitudes that render members of the group unable to serve as jurors in a particular case, may be excluded from jury service without contravening any of the basic objectives of the fair-cross-section requirement. *See Lockett v. Ohio*, 438 U.S. 586, 597, 98 S.Ct. 2954, 2961, 57 L.Ed.2d 973 (1978) ("Nothing in *Taylor*, however, suggests that the right to a representative jury includes the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge"). It is for this reason that we conclude that "*Witherspoon*-excludables" do not constitute a "distinctive group" for fair-cross-section purposes, and hold that "death qualification" does not violate the fair-cross-section requirement.

*McCree*, 476 U.S. at 174-177 (footnotes omitted); *see also Schlesinger*, 2021 WL 5578900, at *4–5 (explaining that the social studies, data, and statistics submitted by the defense did not provide the court with the authority to overlook Supreme Court precedent establishing that the process of death-qualification does not violate a defendant's rights.). Consistent with the Supreme Court's holding in *McCree*, the Court rejects Defendant's assertion that death qualification of the jury will violate the fair-cross-section requirement.

Defendant further argues that "[d]eath qualification violates Mr. Bowers' right to a fair trial by an impartial jury," Mot. 52, ECF No. 759, and that "[d]eath qualifying Mr. Bowers' jury will

5

result in a jury biased in favor of conviction and death," Mot. 32, ECF No. 759.  The Court notes that Judge Ambrose, to whom this case was originally assigned, previously rejected a materially similar argument, relying on *Morgan*, *McCree*, and *Buchanan*.  *See* ECF No. 216 at 3.  In considering Defendant's "argument that death-qualified jurors are more prone to convict," Judge Ambrose explained that "[t]he selection system affords protections, as a juror who will never vote for capital punishment or a juror who will always vote for capital punishment is not impartial and must be removed for cause," and ultimately found no merit to Defendant's argument.  *Id.*  The Court agrees with Judge Ambrose's holding, which is consistent with the holdings of the various courts to have considered and rejected arguments similar to those advanced by Defendant.

In *U.S.A. v. Ciancia*, the United States District Court for the Central District of California explained:

> Defendant devotes a substantial portion of his briefing to argue that death qualification violates his Sixth Amendment right to an impartial jury by empaneling juries prone to convict and sentence defendants to death, and by introducing implicit racism and sexism into the jury process.  Defendant does not deny the existence of Supreme Court authority directly on point, which expressly rejected a similar challenge, but argues instead that recent empirical studies on the issue call for a different outcome.  This Court, however, does not have the authority to overrule binding Supreme Court precedent. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (noting that only the Supreme Court has "the prerogative of overruling its own decisions."); *United States v. Mitchell*, 502 F.3d 931, 982 (9th Cir. 2007) ("Whether contemporary values dictate a different answer today is for the Supreme Court to decide.").

*U.S.A. v. Ciancia*, No. CR 13-902 PSG, 2015 WL 13798665, at *4 (C.D. Cal. Sept. 9, 2015) (relying on Supreme Court's holding *McCree*) (*citations* to record omitted); *see also McCree*, 476 U.S. at 173 ("Having identified some of the more serious problems with McCree's studies, however, we will assume for purposes of this opinion that the studies are both methodologically valid and adequate to establish that 'death qualification' in fact produces juries somewhat more 'conviction-prone' than 'non-death-qualified' juries.  We hold, nonetheless, that the Constitution

does not prohibit the States from 'death qualifying' juries in capital cases.");.*Buchanan*, 483 U.S. at 416 (1987) ("The analysis in *McCree* also forecloses petitioner's claim that he was denied his right to an impartial jury because of the removal of 'Witherspoon-excludables' from the jury at his joint trial."). Further, while Defendant relies heavily on citation to *United States v. Fell*, 224 F. Supp. 3d 327 (D. Vt. 2016), a case that involved many similar arguments to those raised by Defendant in this matter, the Court notes that the *Fell* court ultimately held: "Institutional authority to change this body of law is reserved to the Supreme Court. For this reason, the trial court is required to deny the defense motions related to the constitutionality of the death penalty." *Fell*, 224 F. Supp. 3d at 359. The Court agrees with the *Ciancia* court, and, consistent with binding Supreme Court precedent, rejects Defendant's assertion that death qualification violates Defendant's right to an impartial jury.

Defendant further asks this Court to "find that death qualification violates the Eighth and Fourteenth Amendments" on the bases that "death qualification undermines the Eighth Amendment's requirements of heightened reliability and individualized capital sentencing" and that "[d]eath qualification prevents courts from evaluating society's evolving standards of decency through the objective indicator of jury determinations." Mot. 66-75, ECF No. 759. Relying on the same Supreme Court authority discussed above, courts have consistently rejected such arguments. *See United States v. Brown*, 441 F.3d 1330, 1354 (11th Cir. 2006) ("Second, Brown contends that the use of a death-qualified jury during the guilt-innocence stage violates his Eighth Amendment and due process rights by subjecting him to a conviction-prone jury. Constitutional challenges to the use of a death-qualified jury in the guilt-innocence portion of the trial have been soundly and repeatedly rejected. . . . Again, in *Lockhart*, the Supreme Court held that the use of a death-qualified jury during the guilt-innocence stage neither deprives a defendant of his Sixth

7

Amendment right to a jury drawn from a representative cross section of the community nor his right to an 'impartial' jury.  The Supreme Court flatly rejected the claim that excluding jurors from the guilt-innocence phase who could not be impartial during the punishment phase resulted in a jury 'slanted' in favor of conviction.  Brown provides no rationale for why the identical argument would be any more persuasive if considered under the rubric of the Eighth Amendment, and he offers no case law in support of his position."); *see also United States v. Mitchell*, 502 F.3d 931, 982 (9th Cir. 2007) ("Similarly unavailing is his contention that capital punishment is incompatible with society's values or otherwise categorically violates the Eighth Amendment.  *See* [*Gregg v. Georgia*, 428 U.S. 153, 187 (1976)].  Whether contemporary values dictate a different answer today is for the Supreme Court to decide; the Eighth Amendment does not authorize this court to overrule Supreme Court precedent 'even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for [an] earlier holding.'" (quoting *Roper v. Simmons*, 543 U.S. 551, 594 (2005) (O'Connor, J., dissenting) (internal quotations and citation omitted)); *Ciancia*, 2015 WL 13798665, at *4 (rejecting defendant's argument relying on assertion "that death qualification did not exist at common law or in Blackstone's England.").

### Conclusion

For the reasons discussed above, the Court concludes that Defendant fails to provide the Court with any basis to prohibit the death qualification of the petit jury in this matter.  Accordingly, the Court will deny the Motion to Prohibit.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: February 8, 2023
cc: All counsel of record