IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

### UNITED STATES' MOTION TO EXAMINE DEFENDANT AND PROPOSED EXAMINATION PROCEDURES

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney, Trial Attorney, Capital Case Section, and pursuant to this Court's December 1, 2022 Order, Doc. No. 855, respectfully moves this Court for an Order authorizing the government's expert witnesses to examine the defendant, Robert Bowers, pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B) and to further adopt the mechanics, parameters, and conditions for the requested examinations as set forth below.

### INTRODUCTION

Pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure, the Court ordered the defendant to provide notice whether he intended to present expert testimony during the penalty phase, if any, relating to a mental disease, defect, or condition. Doc. No. 855 at 3. The Court permitted the government until March 3, 2023, to request that its retained experts be permitted to examine the defendant and to propose the mechanics, parameters, and conditions of the evaluations. Id. The Court further ordered the parties to confer on the proposed procedures, to file a joint statement as to areas of agreement, and to brief separately any disagreements by March

1

9, 2023. Id. at 4.  On March 2, 2023, the Court extended this deadline to March 20, 2023.  Doc. No. 988.

On February 23, 2023, the defendant filed notice of his intent to raise mental health evidence in the penalty phase pursuant to Federal Rule of Criminal Procedure 12.2(b)(2).  Doc. No. 972. Separately, the defendant supplemented his Rule 12.2(b)(2) notice with a letter to the government on the same date.  In compliance with the Court's order, the government presents the following motion to examine the defendant.

I.  **AUTHORITY FOR EXAMINATION**

Rule 12.2 obliges a defendant to give the government time to prepare its response to mental health claims, forestalling unnecessary trial delays. See Fed. R. Crim. P. 12.2 advisory committee's notes ("The objective is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony.  Failure to give advance notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administration of justice.").  As the Eleventh Circuit has explained,

> Rule 12.2 serves both efficiency and fairness purposes in criminal trials.  It implicates fairness because it alerts the Government to a defendant's intention to introduce expert mental-health evidence, thereby giving the Government a chance to prepare its own mental-health evidence in rebuttal.  This, in turn, implicates efficiency in the courts because the preparation of mental-health evidence frequently requires the use of expensive and time-consuming experts.  Early notice and reciprocity, then, motivate the Rule 12.2 requirement.

LeCroy v. United States, 739 F.3d 1297, 1305 n.6 (11th Cir. 2014); see generally United States v. Wilson, 493 F. Supp. 2d 348, 350-51 (E.D.N.Y. 2006) (citing the Rule 12.2 Advisory Committee notes regarding the purposes of Rule 12.2 procedures); United States v. Johnson, 362 F. Supp. 2d 1043, 1076-82 (N.D. Iowa 2005) (discussing the purposes of Rule 12.2's notice and examination requirements).

If the defense provides notice of a mental defense, Rule 12.2(c) vests trial courts with the authority to order examinations by government experts.  See United States v. Lewis, 53 F.3d 29, 35 n.9 (4th Cir. 1995) (affirming an order for a government-funded mental health examination of a defendant who provided Rule 12.2(b) notice).  Such orders permit the government to develop appropriate rebuttal evidence.  See United States v. Sampson, 335 F. Supp. 2d 166, 243 (D. Mass. 2004).  In short, "a district court has the authority to order a defendant who states that he will use evidence from his own psychiatric examination in the penalty phase of a trial to undergo a psychiatric examination by a government-selected psychiatrist before the start of the penalty phase."  United States v. Allen, 247 F.3d 741, 773 (8th Cir. 2001) vacated on other grounds, 536 U.S. 953 (2002); see also United States v. Webster, 162 F.3d 308, 340 (5th Cir. 1998) (holding a district court has "inherent authority" to compel a government mental health examination and characterizing the procedure as "fair").

Beyond this Court's general authority to compel a government examination, it should permit independent in-person evaluations of the defendant.  "[T]he basic tool of psychiatric study remains the personal interview . . . [and] [t]he Government's expert cannot meaningfully address the defense expert's conclusions unless the Government's expert is given similar access to the 'basic tool' of his or her area of expertise: an independent interview with and examination of the defendant."  United States v. Haworth, 942 F. Supp. 1406, 1407-08 (D.N.M. 1996).  Indeed, "the Government's ability to rebut a defendant's evidence of mental condition would be sharply curtailed, if not entirely eviscerated, if notice of a mental health defense is not required and if, thereafter, the Government is not afforded the opportunity to have the defendant examined by an independent mental health expert."  United States v. Beckford, 962 F. Supp. 748, 758 (E.D. Va.

1997). For the government to fairly develop rebuttal evidence, its experts should have the opportunity to independently examine the defendant.

## II.     REQUESTED PROCEDURES FOR EXAMINATION

In order to allow the United States a fair opportunity to acquire full and proper evidence to rebut or confirm the matters set forth in the defendant's Rule 12.2(b)(2) notice and supplemental letter, the government requests the following mechanics, parameters, and conditions for the requested examinations:[1]

1. Government mental health experts shall be permitted to examine the defendant as necessary and probative to rebut or confirm defense experts' anticipated mental health testimony.

2. The Government mental health experts shall initially be limited to the following kinds of experts:

    a. A psychiatrist, who will conduct interviews of the defendant to complete a forensic psychiatric evaluation of the defendant.

    b. A neuropsychologist, who will observe the psychiatric interviews, conduct additional interviewing, and administer psychological and neuropsychological tests to complete a neuropsychological evaluation of the defendant.

    c. A neurologist, who will interview and conduct a neurological examination of the defendant to complete a neurological evaluation of the defendant.

    If based on initial examinations, the government requires additional evaluations by experts in other specialties or any laboratory tests or imaging studies, it shall seek leave of the court.

3. The examinations may be conducted on multiple days, as deemed necessary by the experts.

4. The examinations shall take place at the Joseph F. Weis, Jr. United States Courthouse, in a secure, private spaced associated with the U.S. Attorney's Office, such space already having been approved by the U.S. Marshal for in-custody interviews. The government and defense counsel shall meet and confer on the timing of the examinations. If no agreement

---

[1] As noted, the Court ordered the parties to outline agreed mental health testing procedures by March 20, 2023. Doc. No. 888. In anticipation of substantive briefing on any points of disagreement, the government presents only its proposed procedures. It defers the recital of legal justification for such proposals pending the outcome of the meet-and-confer process.

is reached regarding timing, the government shall give three days' notice to defense counsel of the date, time, and length of the examinations.

5. The examinations shall be limited to testing deemed necessary by the government's experts to develop evidence that will rebut or confirm the defense experts' anticipated testimony, including the existence of a diagnosable mental illness, its identification, and the validity of any diagnoses set forth in the defendant's Rule 12.2(b) notice and supplemental letter or if another diagnosis is more accurate or whether the defendant suffers from no diagnosable mental health condition at all. The United States need not give advance notice of the testing to be employed.

6. The government's experts may question the defendant about the charged crimes and his conduct before and after committing the crimes, and any other matter as is necessary and probative to rebut or confirm the anticipated defense expert mental health testimony.

7. No counsel from the defense or the prosecution may be present during the examinations.

8. The government's psychiatrist shall be permitted to record the interview of the defendant. At the discretion of the government's psychiatrist, a neuropsychologist may be present during the interview. With the exception of the psychiatric interview of the defendant, no recording of any psychological or neuropsychological testing may be made, but government experts agree to make their raw results available to the defense.

9. As previously ordered, the appointment of firewall counsel has been denied. However, the Court, at its discretion, may appoint standby firewall counsel for the government for the purpose of briefing and arguing any issues that arise after the government's experts have started the evaluation process as directed by the Court as it deems necessary. The United States trial team and firewall counsel, if so appointed, may not communicate regarding any issue requested to be briefed unless, pursuant to Rule 12.2(c)(2), the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition. If the Court does not elect to appoint firewall counsel in connection with any issues that arise during the examination process, the government's experts shall be permitted to communicate directly with the Court and its staff regarding such issues.

10. The defense shall disclose to a designated government expert all the medical, mental health, and other records of the defendant that were provided to his mental health experts. The designee shall have unfettered discretion to disseminate those records to other government experts.

11. By March 27, 2023, the defense shall provide to a designated government expert:

    a. A complete statement of all opinions to which the defense's experts will testify during the penalty phase;
    b. The results of tests and reports of examinations administered to the defendant in the course of reaching the opinions set forth in the defendant's Rule 12.2(b) notice,

5

      including any tests not personally administered by the defense expert, but upon which the expert will rely and/or testify;

    c. All raw data obtained by the defense experts;

    d. The witness's qualifications, including a list of all publications authored; and

    e. A list of all other cases in which, during the previous four years, the witness has testified as an expert at trial or by deposition.

12. Pursuant to separate order, declaring that the defendant's assertion of a mental health defense has impliedly waived all legal privileges with regard to the records of anyone who has ever examined his mental health, the United States may subpoena any such records from any such source.

13. After completing the examinations, each government expert will create two copies of his or her report, two copies of his or her CV, and two copies of all raw data, storage media, or documentation in two labeled, sealed envelopes, one of which is labeled "For Defense" and the other of which is labeled "For Government."  Each rebuttal expert will deliver their materials to the designated government expert, who will deliver all of the sealed envelopes to the Clerk, together with signed statements from the experts indicating their understanding that they may not discuss the examinations with anyone unless, pursuant to Rule 12.2(c)(2), the defendant is convicted of a capital crime and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.  The Clerk shall hold these sealed reports until a verdict is returned, without opening them or uploading them to the electronic filing system.

14. If the defendant is acquitted, the rebuttal expert reports may be destroyed upon order of the Court.  If he is convicted of a capital crime, the envelopes labeled "For Defense" will immediately be provided to defendant.  He will have 24 hours to confirm or withdraw his intent to offer mental health evidence.  If he withdraws the intent, the reports may be destroyed upon order of the Court and never provided to the government.  If he confirms the intent, pursuant to Rule 12.2(c)(2), the envelopes labeled "For Government" will be provided to the government, at which time defense counsel should also provide the government with their own expert reports, pursuant to Rule 12.2(c)(3).

15. The defendant may withdraw a notice of intent to raise mental health evidence at any time before actually introducing evidence on it. In that event, neither the fact of the notice, nor the results or reports of any mental examination by either party, nor any facts disclosed only therein shall be admissible against the defendant.

16. No result, report, or recording of the government's examinations of the defendant, or medical record provided by the defense pursuant to Paragraph 3 of this Order, shall be used by the government for any purpose except to rebut expert testimony relating to defendant's mental condition offered by the defense during sentencing proceedings.

## CONCLUSION

Wherefore, the United States requests that the Court permit its rebuttal experts to conduct mental health examinations of the defendant, as needed and consistent with the parameters outlined above, to ensure the fairness and efficiency of the penalty phase of trial, if any.

Respectfully submitted,

TROY RIVETTI
ACTING UNITED STATES ATTORNEY

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/ Barry K. Disney
Barry K. Disney
Trial Attorney
Capital Case Section
KS ID No. 13284