IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS ) | |

**DEFENSE RESPONSE TO GOVERNMENT PROPOSED "DECORUM ORDER" FOR TRIAL PROCEEDINGS (ECF 1098)**

Although the parties began meeting with the Clerk of Court regarding trial logistics in November 2022, it was not until late March 2023 that counsel for Mr. Bowers learned for the first time that there were plans for an overflow courtroom for victims only (as well as an overflow area in the courthouse for media only) with a live feed of the trial. In response to an email from counsel, the Clerk of Court only recently confirmed that discussions about a "Victim Overflow Courtroom" and a "Media Room" had been ongoing since last fall. *See* Exhibit A (email exchanges with the Clerk of Court, dated Nov. 21, 2022, through Mar. 21, 2023).

Prosecution counsel have now filed a Proposed Decorum Order for Trial, recommending three overflow courtrooms, one for the "general public," one for "victims only," and one for "media only," as well as a variety of rules regarding entry into the courthouse, courtroom seating, and other procedures for the public who may plan to observe trial proceedings in this case. ECF 1098-1, ¶ 9a (overflow courtroom for public

and media), ¶ 9b (restricted access courtroom for victims and family members), ¶ 10a (designated media area with live feed).[1]

Given that the Court has the ultimate responsibility for ensuring fair trial rights, as well as public access under the First and Sixth Amendments, the Court should determine whether the "private viewing" – essentially restricted access – courtrooms for media only and for victims only are permissible. *See Weaver v. Massachusetts*, 198 L. Ed. 2d 420, 137 S. Ct. 1899, 1909-1910 (2017) ("[T]he right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused.")

The prosecution's Proposed Decorum Order also requests reserving approximately one-half of the seats in Courtroom 5B (20 of approximately 40-42 seats) for victims and their families.[2] Mr. Bowers has no objection to allocating a reasonable number of reserved seats for victims and their families, given the limits on available seats in Courtroom 5B. In addition, Mr. Bowers requests that the seats immediately behind the defense tables be reserved for use by the defense team and the family of Mr. Bowers, some of whom are disabled and will need defense team assistance when they are able to attend the trial proceedings.

---

[1] The proposal includes requests that "overflow" seating for "the general public and members of the media" to be monitored by a Court Security Officer or other Court staff, while the private overflow courtroom for victims and family members is to be controlled by the prosecution. The proposal further includes a request for the media to also have access to a live feed in a room within the courthouse cafeteria. ECF 1098-1, ¶ 10.

[2] Prosecution counsel have identified 38 crime victims, 30 in the Superseding Indictment and 8 additional in the Notice of Intent. ECF 1098, at 2, ¶ 4.

Where there is insufficient seating available in a courtroom, an "overflow" public courtroom may be necessary and appropriate to make the trial proceedings reasonably available to the public, including victims and their families.[3] *See, e.g., United States v. Gutierrez-Calderon,* 2019 WL 3859753, *10 (D. V.I. 2019) (holding that no Sixth Amendment structural error occurred because "the Court made efforts to ensure that members of the public were permitted to view the jury selection proceedings via live feed in the overflow room—a room that was specifically established by the Court as an extension of the courtroom . . . . Thus, far from barring the public from the jury selection proceedings, the Court took proactive steps to comply with its obligation 'to take every reasonable measure to accommodate public attendance at criminal trials' by establishing the overflow room to accommodate members of the public who wished to view the jury selection proceedings.") (quoting *Weaver,* 137 S. Ct. 1899). However, because an "overflow" courtroom is an extension of the courtroom in which the trial proceedings are taking place, restrictions (exclusions) on who has access could constitute a partial closure of the courtroom. Thus, it is incumbent on the Court to first determine whether an overflow courtroom is necessary, and if so whether the restrictions on access can be constitutionally and legally justified. If so, the Court would also need to determine that the government's proposal that it control access to one of the private courtrooms is legally appropriate and factually necessary.

---

[3] Alternatively, the Court could also choose to move the trial to Courtroom 8B, where there is substantially more public seating available.

The First and Sixth Amendments guarantee the right to a public trial. *See Press Enterprise Co. v. Superior Court of Cal.* 464 U.S. 501, 505 (1984) (finding a First Amendment right to public jury selection); *Waller v. Georgia,* 467 U.S. 39, 46 (1984) ([T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective a public trial than the implicit First Amendment right of the press and public."). In addition, the federal courts have long resisted cameras in the courtroom, or broadcasting of court proceedings. Fed. R. Crim. Pro. 53 ("Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom.").

The prosecution has not provided justification for a partial courtroom closure and has not made a showing that access to publicly available overflow courtrooms is insufficient to ensure appropriate access for anyone who wishes to attend the court proceedings. Likewise, it has not made a showing that members of the media, who need to rely on electronic devices to provide public reporting, cannot be accommodated in the same overflow courtroom where jurors, witnesses, and other spectators would not be distracted by their discrete use of electronic devices.

## CONCLUSION

For the forgoing reasons, the defense requests that the Court determine both the necessity and legal propriety of the use of an overflow courtroom to provide public

access to the trial proceedings and determine whether restricted access overflow courtrooms are legally justified and meet constitutional standards.

          Respectfully submitted,

          */s/ Judy Clarke*
          Judy Clarke
          Clarke Johnston Thorp & Rice, PC

          */s/ Michael N. Burt*
          Michael N. Burt
          Law Offices of Michael Burt, PC

          */s/ Michael J. Novara*
          Michael J. Novara
          First Assistant Federal Public Defender

          */s/ Elisa A. Long*
          Elisa A. Long
          Supervisory Assistant Federal Public Defender

          */s/ Ashwin Cattamanchi*
          Ashwin Cattamanchi
          Assistant Federal Public Defender