IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 18-292 |
| ROBERT BOWERS | |

**UNITED STATES' MEMORANDUM OF LAW
REGARDING CAPITAL CASE JURY SELECTION**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney, Trial Attorney, Capital Case Section, and respectfully submits this memorandum of law regarding the selection of the jury in a capital case. The United States urges the Court to apply the principles set forth below when evaluating the grounds for excusing prospective jurors for cause and the scope of permissible questioning.

A.   **Standard of Judicial Review**

A venire member may be properly challenged for cause and excluded from capital jury service when the trial judge is left with a "definite impression" that the juror would not be able to faithfully and impartially follow the law applicable to capital trials. Wainwright v. Witt, 469 U.S. 412, 425-26 (1985). The trial court's determination that a venire member is unqualified to serve in a fair and impartial manner on a capital jury, based on perceived bias, is a finding of fact entitled to great deference or a presumption of correctness. Id. at 428-29. Juror bias need not be proven with "unmistakable clarity." Id. at 424.

Thus, decisions to excuse prospective jurors based upon their death penalty views expressed during in-court voir dire are generally given considerable deference on appeal because such decisions are based in large part on face-to-face credibility assessments of the prospective jurors. See id. at 426-29 (noting that the trial court's determination of juror bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province," therefore "deference must be paid to the trial judge who sees and hears the jurors"); United States v. Chanthadara, 230 F.3d 1237, 1269 (10th Cir. 2000) (noting "the trial judge's unique ability to observe demeanor and assess credibility").

**B.      Standard for Juror Qualification**

The Court may properly excuse a prospective juror for cause because of his or her death penalty views if those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Witt, 469 U.S. at 424; Morgan v. Illinois, 504 U.S. 719, 728 (1992). This legal standard applies equally to venire members who strongly favor and those who strongly oppose capital punishment, Morgan, 504 U.S. at 734 n.7, and protects the defendant's right to a fair and impartial jury and the legitimate state interest in administering constitutional capital sentencing schemes. Witt, 469 U.S. at 418-23.

A person's views would "prevent" impartial performance when they would cause the venire member to vote for or against the death penalty, "automatically" or "always," regardless of the facts and the law. Witt, 469 U.S. at 422; Morgan, 504 U.S. at 733. A person's views "substantially impair" impartial performance when they would interfere with or obstruct impartial consideration of the law and the facts. See Witt, 469 U.S. at 433-34 (noting that relevant voir dire questions on this issue "need not be framed exclusively in the language of the controlling appellate opinion"). The Court should not excuse prospective jurors "simply because they expressed general

2

objections to the death penalty or voiced conscientious or religious scruples against its infliction." Witherspoon v. Illinois, 391 U.S. 510, 522 (1968). Likewise, a juror is not partial merely because he or she states personal support or even preference for capital punishment, so long as the panelist can distinguish between those personal views and the requirements of the law. See Miniel v. Cockrell, 339 F.3d 331 (5th Cir. 2003).

The burden for proving bias rests on the party seeking to excuse the venire member for cause. Chanthadara, 230 F.3d at 1270 (citing Witt, 469 U.S. at 423). The crucial inquiry is whether the venireperson will follow the court's instructions and obey the juror's oath, notwithstanding any personal views on capital punishment. Id.

Ultimately, four principles guide jury selection in a capital case: (1) defendants have the right to an impartial jury drawn from a venire that is not biased toward the death penalty by selective prosecutorial challenges for cause; (2) the United States has a strong interest in having jurors who can apply capital punishment within the framework provided by governing law; (3) a juror who is substantially impaired can be removed for cause; and (4) in determining whether removal for cause would vindicate the government's interests without violating the defendant's rights, the trial court may make judgments based on the demeanor of the juror, and those judgments are entitled to deference on appellate and post-conviction review. Uttecht v. Brown, 551 U.S. 1, 9 (2007).

**C.     Juror Responses Justifying Exclusion for Cause**

Prospective jurors are properly excused when they express a categorical unwillingness to impose the death penalty, see Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992), or where they would make the decision based solely on their own values and would not follow the law, see United States v. Brown, 441 F.3d 1330, 1357 (11th Cir. 2006). Jurors should also be stricken for

3

cause as "substantially impaired" if they would consider the death penalty only in limited or extreme situations, such as the following:

  1.  **Mass murders/Multiple murders.**  See, e.g., United States v. Moore, 149 F.3d 773, 780 (8th Cir. 1998) (affirming strike based on venire member's response that he would consider the death penalty "if a person murdered like maybe 100 or 200 people," but not for "one or two"); Fuller v Johnson, 114 F.3d 491, 499-501 (5th Cir. 1997) (upholding exclusion of prospective juror who would only consider the death penalty for serial murderers or those who murder "more than one"); United States v. Tipton, 90 F.3d 861, 880 (4th Cir. 1996) (holding prospective juror properly excused for showing opposition to death penalty but affirmatively stating he could impose death for multiple murders).

  2.  **Extreme hypothetical situations.**  See, e.g., Antwine v. Delo, 54 F.3d 1357, 1369 (8th Cir. 1995) (holding jurors' "willingness to consider the death penalty in extreme hypothetical situations did not 'render either of them immune from exclusion from the jury for cause'"); Riles v. McCotter, 799 F.2d 947, 949-50 (5th Cir. 1986) (upholding exclusion for cause for prospective juror who said she could not impose the death penalty unless the murder involved mutilation).

  3.  **Benchmark personalities.**  See, e.g., United States v. Mitchell, 502 F.3d 931, 956 (9th Cir. 2007) (finding prospective juror properly removed even though she said she could possibly have sentenced Charles Manson or Ted Bundy to death); Stewart v. Dugger, 877 F.2d 851, 855-57 (11th Cir. 1989) (finding prospective juror properly excused when he said he would have to think hard about imposing death for a person such as Charles Manson); Antwine, 54 F.3d at 1369 (finding prospective juror properly excused when he expressed doubts as to whether he could impose death penalty, but wavered when asked if he could impose it against Adolf Hitler).

4

4. **Special victims/family members.** See, e.g., United States v. Flores, 63 F.3d 1342, 1356 (5th Cir. 1995) (affirming excusal of venire member who would impose death penalty only if the defendant had abused and murdered a small child); Antwine, 54 F.3d at 1369 (holding venire member who expressed doubt as to whether she could impose the death penalty, but hesitated when asked if she could consider imposing it if a small child had been brutally murdered, was properly excluded for cause); Bell v. Lynaugh, 828 F.2d 1085, 1092 (5th Cir.1985) (upholding strike of venire member who stated she could never impose the death penalty but qualified her answer by stating she could impose it on the killer of a family member); Larette v. Delo, 44 F.3d 681, 689 (8th Cir. 1995) (affirming strike for case of venire member who would vote against the death penalty unless the victim "was extremely close to" her).

5. **Arbitrary burdens of proof.** See, e.g., Flores, 63 F.3d at 1355-56 (holding it was proper to excuse prospective juror who would impose the death penalty only if the defendant confessed or juror witnessed murder); Drew v. Collins, 964 F.2d 411, 416-17 (5th Cir. 1992) (proper to excuse venire member who would hold government to higher standard than reasonable doubt).

Moreover, the Court may exclude a venire member for substantial impairment of his/her ability to apply the law fairly when answers to key voir dire questions are equivocal, uncertain, ambiguous, contradictory, or conflicting. For example, in Uttecht, a prospective juror ("Juror Z") expressed general support for the death penalty and stated that he could "consider" it. 551 U.S. at 14-15. However, he also provided contradictory answers and expressed "confus(ion) about the conditions under which the death penalty could be imposed." Id. at 15. The Supreme Court held that the trial court did not abuse its discretion in excluding the juror. Id. at 17. The Court explained

that Juror Z's assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inferences from his other statements. Id. at 18.[1]

Similarly, in United States v. Mitchell, 502 F.3d 931, 955-56 (9th Cir. 2007), the Ninth Circuit affirmed the excusal for cause of a juror ("Juror #39") whose answers to written and oral questions were equivocal and ambiguous. The Court found that Juror #39's answers to a written questionnaire showed that her beliefs against the death penalty would have substantially impaired her ability to perform her duties. Mitchell, 502 F.3d at 955 (noting Juror #39 checked a box indicating she "'could never, under any circumstances, return a verdict which recommended a sentence of death,'" and answered several other questions indicating she would not follow the law and would automatically vote for life sentence). The Court further recognized, however, that Juror #39's responses at voir dire were "more nuanced." Id. at 956 (noting Juror #39 made statements such as she would have a "difficult time" imposing the death penalty; she would "probably" vote for a life sentence, but wouldn't automatically; and, in response to court's question if she "could set aside her views and listen to the facts and law," the juror responded, "I could only try").

The Mitchell court concluded that the trial court did not abuse its discretion in excusing Juror #39. Id. (crediting trial court's ruling that the court "was left with the 'firm impression, based on [Juror #39's] demeanor here in court, that she would struggle to the point that I don't think she would honestly consider the death penalty in accordance with the instruction and her duty as an oath'"). See also Riley v. Taylor, 277 F.3d 261 (3d Cir. 2001) (en banc) (upholding excusal of potential juror who said, "I would say yes, I think so," when asked if she had scruples against the death penalty and could not state with certainty whether she would be able to find

---

[1] In Uttecht, another venire member (but not the subject of the appeal) provided "equivocal statements" and was excused for cause over defense objections that the remarks "reflected careful thinking and responsibility, not substantial impairment." See 551 U.S. at 11.

capital defendant guilty based on the evidence). Tipton, 90 F.3d at 880-81 (holding trial court properly excluded for cause three potential jurors who, after first expressing strong opposition to the death penalty, gave equivocal, ambiguous, and contradictory responses to questions during in-court voir dire); United States v. Webster, 162 F.3d 308, 340-41 (5th Cir. 1998) (finding equivocal venireman, who could not offer consistent opinion as to whether he could follow the law, was properly excused); Morales v. Mitchell, 507 F.3d 916, 942 (6th Cir. 2007) (comparing juror's conflicting answers to similar situation in Uttecht and holding that venireman was properly removed after stating he was generally opposed to the death penalty but might be able to impose it in limited circumstances).

### D.   Appropriate Scope of Questioning

Voir dire must be adequate to assure the defendant of a jury whose members can impartially follow the Court's instructions and evaluate the evidence. Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981); see also Hodges v. Colson, 727 F.3d 517, 526-27 (6th Cir. 2013). Generally, the exact nature and scope of the questioning is committed to the discretion of the district court and is subject to review only for abuse of that discretion. Tipton, 90 F.3d at 877 (citing Rosales-Lopez, 451 U.S. at 188; Ham v. South Carolina, 409 U.S. 524, 527 (1973)); accord Fed. R. Crim. P. 24(a). Thus, subject to limited exceptions,[2] no particular questions are constitutionally required, unless a failure to ask them would "render the trial fundamentally unfair." See Mu'Min v. Virginia, 500 U.S. 415, 425-26 (1991) (rejecting any requirement to ask questions about the content of pretrial publicity to which prospective jurors were exposed).

As discussed below, the Court in this case should permit questions directed at determining whether jurors would automatically vote for or against the death penalty. Then, the Court should

---

[2] For example, questions regarding racial bias may be required in certain cases. See Ham v. South Carolina, 409 U.S. 524, 526-27 (1973).

generally permit only limited, open-ended questions pertaining to prospective jurors' basic beliefs and core values. See United States v. McVeigh, 153 F.3d 1166, 1208 (10th Cir. 1998); Tipton, 90 F.3d at 878-79. Case-specific questions regarding the persuasiveness of specific aggravators or mitigators, or similar hypotheticals, should be strictly prohibited.

### 1. Morgan v. Illinois requires certain inquiries

Despite a trial court's generally discretion in voir dire, certain areas of inquiry are required in capital cases under Morgan. First, the voir dire must consist of more than general fairness and "follow the law" questions. Morgan, 504 U.S. at 734-35. Such inquiries are inadequate to determine if a prospective juror has personal views for or against the death penalty that would prevent him or her from following the law (i.e., considering all aggravating and mitigating evidence). See id. at 735.

Further, upon request of a capital defendant, the court must ask whether a prospective juror would automatically vote for the death penalty regardless of the facts, if the defendant is convicted of a capital offense. Id. at 726-27. In essence, this is the reverse of the Witherspoon/Witt inquiries, discussed above, which permits inquiries into views that would compel a venire member to vote automatically against the death penalty, regardless of the facts and circumstances of the case. Thus, the Court should permit direct questions aimed at determining whether a prospective juror would vote for or against the death penalty if the defendant is convicted of a capital offense. See Morgan, 504 U.S. at 733-34, 738; Tipton, 90 F.3d at 878 (stating that the best method for determining whether a prospective juror would automatically vote for the death penalty is to ask the question directly).

Beyond these dictates, basic beliefs and core values are appropriate areas of inquiry. See United States v. McVeigh, 153 F.3d at 1208; Tipton, 90 F.3d at 878-79. These subjects should be

explored with open-ended questions.  See State v. Williams, 550 A.2d 1172, 1182 (N.J. 1988).  But the Court should not allow any efforts, premised upon Morgan, to expand questioning to permit inquiries about how a juror would vote in advance of trial, when faced with case-specific hypothetical facts, factors, or personal traits.

### 2. This Court should reject case-specific questions

Relying on Morgan, capital defendants commonly claim that they may inquire about prospective jurors' views regarding the specific aggravating and mitigating evidence that may be presented in a case.  Such questions are not, in fact, constitutionally required.  Rather, such questioning undermines the deliberative process by forcing jurors, who have yet to be instructed on the law, to stake out or forecast positions on evidence they have not yet heard.  Allowing the defendant to question the venire as to how its members might weigh or react to certain types of evidence will necessarily invite confusion about the scope of the jurors' duty to consider evidence during the penalty phase.

In fact, the Supreme Court has recognized that it is unreasonable to expect a venireman to predict how they would vote in a case in which they have not yet heard evidence or instructions:

> A prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him.  The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by . . . law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.

Witherspoon, 391 U.S. at 522 n.21.  Similarly, the Morgan Court held that general fairness or follow-the-law questions are insufficient, but it did not hold that capital defendants have a right to inquire regarding specific facts or circumstances.  Rather, it held only that a capital defendant has the right to determine if a prospective juror would automatically vote for the death penalty upon conviction.  See Morgan, 504 U.S. at 736-38.  "Any juror who states that he or she will

9

automatically vote for the death penalty . . . is announcing an intention not to follow the instructions to consider the mitigating evidence and to decide if it is sufficient to preclude imposition of the death penalty." Id. at 738.

Although the Court has held that jurors must be willing to "consider" mitigation evidence as a general matter, see Buchanan v. Angelone, 522 U.S. 269, 276 (1998); Eddings v. Oklahoma, 455 U.S. 104, 114-15 (1982), inquiries into the specific mitigating evidence that may be presented is not required. The Constitution does not require a juror's willingness to give a particular mitigating factor any particular weight; it only requires that the juror manifest an ability to consider such factors in determining whether death is an appropriate punishment. See United States v. Hall, 152 F.3d 381, 409 (5th Cir. 1998), abrogated on other grounds by United States v. Martinez-Salazar, 528 U.S. 304, 310-11 (2000) (quoting Eddings, 455 U.S. at 114-15); Hodges v. Colson, 727 F.3d 517, 527-29 (6th Cir. 2013) (holding trial court did not act contrary to Supreme Court precedent in restricting defense counsel from questioning prospective juror whether he could impose a life sentence on a defendant who had a prior first-degree murder conviction).

The federal courts of appeals to have considered this issue have unanimously ruled that case-specific questioning is not required. See McVeigh, 153 F.3d at 1207-08 (discussed in detail below); United States v. McCullah, 76 F.3d 1087, 1114 (10th Cir. 1996) (holding under Morgan that the trial court was not required to allow inquiry into each juror's views of specific mitigators as long as voir dire was adequate to detect venire members who would automatically vote for the death penalty); Tipton, 90 F.3d at 879 (holding the district court's refusal to allow questioning on specific mitigators was not an abuse of discretion); Richmond v. Polk, 375 F.3d 309, 329-31 (4th Cir. 2004) (holding that "Morgan does not require that a capital defendant be able to determine at voir dire what prospective juror's sentencing decision will be if presented with specific state of

evidence or circumstances" and precluding questioning of jurors regarding the effect defendant's prior murder conviction would have on their deliberations); Trevino v. Johnson, 168 F.3d 173, 182-83 (5th Cir. 1999) (denying habeas petition in which defendant claimed he was not permitted to question potential jurors' views on youth as a mitigating factor).[3]

In McVeigh, the Tenth Circuit affirmed the rejection of questions seeking to determine what prospective jurors think about imposing the death penalty in a particular case, or upon consideration of potential evidence:

> Morgan was written as a reciprocal case to Witherspoon, and is designed to identify potential jurors who would automatically impose the death penalty for conviction of a capital offense. When a defendant asks a juror to speculate or pre-commit on how that juror might vote based on any particular facts, the question strays beyond the purpose and protection of Morgan.

McVeigh, 153 F.3d at 1207 (emphasis added).

Thus, the McVeigh court held that Morgan does not require case-specific factual questions about the evidence to be presented in the guilt phase or a juror's inclinations regarding specific aggravating or mitigating factors. Id. at 1207-09. Additionally, questions seeking case-specific predisposition, pre-commitment, or speculation are prohibited, since Morgan does not allow defendants to pre-determine jurors' views of the appropriate punishment for the charged crime. Id. at 1208. Questions are also objectionable when predicated on facts specific to the case or upon speculation about facts to be proven at trial. Id. at 1207.

---

[3] State courts have also rejected any requirement for case-specific questioning. See, e.g., State v. Wilson, 659 N.E.2d 292, 300-03 (Ohio 1996) ("Realistically, jurors cannot be asked to weigh specific factors until they have heard all the evidence and been fully instructed on the applicable law"); Sellers v. State, 809 P.2d 676, 682-83 (Okla. 1991) ("To permit such questioning would make voir dire an open forum for discussion of any circumstances accompanying the murder, both mitigating and aggravating"); Evans v. State, 637 A.2d 117, 124-25 (Md. 1994) (precluding questions designed to ask jurors "to provide advance clues as to how they would vote based on the facts of the case"); Witter v. State, 921 P.2d 886, 891-92 (Nev. 1996) (precluding questions geared at reading "how a potential juror would vote during the penalty phase"); State v. Fletcher, 500 S.E.2d 668, 679 (N.C. 1998) (holding defendant was not entitled to ask juror what his or her position would be given a particular aggravating factor); People v. Jackson, 695 N.E.2d 391, 407 (Ill. 1998); Holland v. State, 705 So.2d 307, 338-39 (Miss. 1997).

Accordingly, this Court should prohibit case-specific questioning that pertains to the weight prospective jurors would give certain mitigating or aggravating evidence, or questions that specifically stake-out how jurors would vote when faced with certain evidence or facts, particular the evidence and facts expected to be presented in this case. Such questions would improperly require potential jurors to voice positions on hypothetical scenarios before hearing the evidence or instructions. They would confuse and mislead venire members regarding their duty to consider mitigating evidence, particularly given that jurors are not required to give any particular weight to any mitigating evidence. See Fulks, 454 F.3d at 414; Hall, 152 F.3d at 412.

**E.     Questioning Regarding Unanimity**

The Court should not permit voir dire designed to inform jurors of a power to nullify or the consequences of a failure to reach a unanimous decision. Fundamentally, it should be obvious that such remarks are not designed to ferret out biased venire members. Rather, such information is calculated to encourage a lack of unanimity and to advocate for an unwillingness to consider the death penalty as an appropriate punishment.

Moreover, any proposed voir dire discussing or informing the prospective jurors of the consequences of their failure to agree on a sentence is arguably inconsistent with the language of the Federal Death Penalty Act ("FDPA"), which provides,

> [T]he jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based **upon this consideration, the jury by unanimous vote**, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

18 U.S.C. § 3593(e) (emphasis added). Accordingly, by its terms, the FDPA requires unanimity for either a verdict of death or a non-capital sentence.

Indeed, the Supreme Court has approved the use of an Allen charge in the penalty phase of a contemporary capital prosecution. See Lowenfield v. Phelps, 484 U.S. 231, 238-9 (1988). In that case, the defendant argued that an Allen charge in the penalty phase of a capital prosecution presented a particular danger of coercion because the state statute at issue, like the FDPA, called for the imposition of a life sentence in the event of a hung jury. The Supreme Court disagreed:

> The difference between the division of function between the jury and judge in this case and the division in Allen obviously weighs in the constitutional calculus, but we do not find it dispositive. The State has in a capital sentencing proceeding a strong interest in having the jury "express the conscience of the community on the ultimate question of life or death." Witherspoon v. Illinois, 391 U.S. 510, 519, 88 S. Ct. 1770, 1775, 20 L. Ed. 2d 776 (1968). Surely if the jury had returned from its deliberations after only one hour and informed the court that it had failed to achieve unanimity on the first ballot, the court would incontestably have had the authority to insist that they deliberate further. This is true even in capital cases such as this one and Allen, even though we are naturally mindful in such cases that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978).

Lowenfield, 484 U.S. at 238-39.

In short, the government has a strong interest in unanimity in the penalty phase. A defendant's repeated and excessive identification of the consequences of a deadlock in the penalty phase of a capital prosecution undermines that principle. Thus, the Court should not permit discussion of non-unanimity during voir dire.

F. **Questioning Regarding Government's Burden of Proof**

During voir dire, the defense should not be permitted to question the prospective jurors in such a manner as to imply that the government must prove that the aggravators outweigh the mitigators beyond a reasonable doubt. Seven circuits have decided this issue, and all have rejected an argument that the reasonable doubt standard applies to the weighing process. See United States v. Gabrion, 719 F.3d 511, 531-32 (6th Cir. 2013) (en banc) (citing cases); see also Zant v. Stephens,

13

462 U.S. 862, 875-76 n.13 (1983) (holding that "[i]t is settled law that, under the federal constitution, specific standards for balancing aggravating against mitigating circumstances are not constitutionally required"); Sampson (holding that the "FDPA makes no mention of the reasonable doubt standard in the context of weighing aggravating and mitigating factors" and that "Congress did not intend the reasonable doubt standard to apply to the weighing process").

Based on the foregoing, it would be improper to inform the jury that it must weigh the sentencing factors under the reasonable doubt standard and this Court should prohibit any such remarks during voir dire.

G.     **Questioning Regarding the Weighing Process**

Under the FDPA, the jury weighs aggravators and mitigators in a single process and renders a single decision. The FDPA provides that a "defendant who has been found guilty of [a capital offense] shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified." 18 U.S.C. § 3591(a); see also TENTH CIRCUIT CRIMINAL PATTERN INSTRUCTION 3.02 ("If you determine that the factors do justify a death sentence, that sentence must be imposed"). In view of this unambiguous rule, this Court should restrict any attempts by the defense, during voir dire, to suggest the jury somehow retains discretion to choose an alternative sentence even if it finds in the weighing process that a sentence of death is justified.

The Court should bar any voir dire questioning that suggests the jury retains discretion to decide the sentence even after it has engaged in the weighing process and found it justifies a death sentence. This bar should preclude any suggestion that the concept of "mercy" may alter the outcome after completion of the weighing process. To permit otherwise would inject arbitrariness into the capital decision-making process.

14

**H.     Scope of Mitigation**

As noted, the Court should prohibit case-specific questioning, including those concerning speculative reactions to specific mitigators—which the defendant has yet to provide. The defendant should not be permitted to use the voir dire process to ascertain which potential mitigators might resonate with prospective jurors. The government also recommends that the Court limit questioning regarding the concept of mitigation as discussed above.

The FDPA codifies the common law definition of mitigators: "factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Prior to the FDPA's enactment, the Supreme Court defined "relevant mitigating evidence" as "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978); see also Eddings v. Oklahoma, 455 U.S. 104, 110 (1982); Franklin v. Lynaugh, 487 U.S. 164, 174 (1988). Thus, defendants enjoy broad, but not limitless, discretion to introduce mitigating evidence.

In rejecting a claim that the forum state's lack of a death penalty constituted a mitigator, the Western District of Michigan examined the appropriate scope of mitigation under the FDPA and Supreme Court precedent. See Gabrion, 719 F.3d at 520-24 (concluding that state penal law was "irrelevant to a reasoned moral response to Gabrion's background, character, and crime" and was not mitigation under the Eighth Amendment).

The Gabrion court stated in pertinent part:

> A capital defendant's "punishment must be tailored to his personal responsibility and moral guilt." Enmund v. Florida, 458 U.S. 782, 801, 102 S. Ct. 3368, 73 L.Ed. 2d 1140 (1982). Accordingly, the two seminal cases that require the admission of mitigation evidence—Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978) and Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S. Ct. 869, 71 L.Ed. 2d 1 (1982)—are based upon "the principle that punishment should be directly

15

>related to the personal culpability of the criminal defendant." Penry v. Lynaugh, 492 U.S. 302, 319, 109 S. Ct. 2934, 106 L.Ed. 2d 256 (1989), overruled on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L.Ed. 2d 335 (2002).
>
>. . .
>
>That Michigan lacks a death penalty has nothing to do with these things. It has nothing to do with Gabrion's background or character. It has nothing to do with the reasons why he chose to kill Rachel Timmerman. It has nothing to do with the utter depravity of the manner in which he killed her. And above all it has nothing to do with his culpability for that offense or with any other consideration the Supreme Court has ever flagged as mitigating. Gabrion does not even argue the contrary.

Id. at 520-23. This well-reasoned analysis should apply in this case.

The Gabrion court also explained that the bedrock limitations of Lockett and the FDPA remain undisturbed and that the only mitigation that is permissible is evidence that a juror may "reasonably" find relevant to the defendant's background, character, and crime:

>[T]he Supreme Court has said that mitigation evidence includes evidence that "the sentencer could reasonably find . . . warrants a sentence less than death." Tennard v. Dretke, 542 U.S. 274, 285, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004) (quotation marks omitted). But the key word there is "reasonably"; and read in the context of the rest of the Supreme Court's mitigation-evidence caselaw, and Penry in particular, that passage simply refers to evidence relevant to "a reasoned moral response to the defendant's background, character, and crime." Penry, 492 U.S. at 319, 109 S. Ct. 2934. Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense—so long as he can show that at least one juror is a firm believer in astrology. To read the Tennard passage (and others like it) in the manner that Gabrion suggests would be to transform mitigation from a moral concept to a predictive one, and make a caricature of the law.
>
>. . .
>
>And even in Tennard—upon which the dissent mistakenly relies here—the Court said that mitigation evidence does not include evidence of "the circumstances of the crime [that] is unlikely to have any tendency to mitigate the defendant's culpability." 542 U.S. at 286, 124 S. Ct. 2562 (emphasis added).

Id. at 522-23.

16

The sound reasoning of the Gabrion court should limit any discussion of mitigation during this trial, especially during jury selection.

## I.      Peremptory Challenges

Peremptory challenges "allow parties to exclude a given number of persons who otherwise would satisfy the requirements for [jury] service." Edmondson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991). They are "part of our common law heritage" and have long been used to "secure [the] constitutional guarantee of trial by an impartial jury." United States v. Martinez-Salazar, 528 U.S. 304, 311, 316 (2000); see also Swain v. Alabama, 380 U.S. 202, 219 (1965) (noting that the function of peremptory challenges "is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise").

The Supreme Court, however, has also consistently "recognized . . . that such challenges are auxiliary" to a defendant's right to trial by an impartial jury. Martinez-Salazar, 528 U.S. at 311. In other words, peremptory challenges "are not of constitutional dimension;" rather, they are just one "means to achieve the end of an impartial jury." Ross v. Oklahoma, 487 U.S. 81, 88 (1988) (internal citations and quotation marks omitted); see also Rivera v. Illinois, 556 U.S. 148, 157 (2009) (recognizing there is no free-standing right to peremptory challenges). Because peremptory challenges are a statutory creation, "it is for the [legislature] to determine the number . . . and to define their purpose and the manner of their exercise." Ross, 487 U.S. at 89; see also Frazier v. United States, 335 U.S. 497, 506 n. 11 (1948) ("The right is in the nature of a statutory privilege, variable in the number of challenges allowed."); Stilson, 250 U.S. at 586 ("The number of challenges is left to be regulated by the common law or the enactments of Congress.").

Federal Rule of Criminal Procedure 24(b) authorizes 20 peremptory challenges per side in a federal capital case. Fed. R. Crim. P. 24(b)(1). Non-capital felony defendants received 10 peremptory challenges to the government's six. Fed. R. Crim. P. 24(b)(2). Rule 24 further provides that the "court may allow additional peremptory challenges to multiple defendants." Fed. R. Crim. P. 24(b) (emphasis added). The rule does not provide grounds for a court to grant a single defendant additional peremptory challenges.

In permitting the parties to exercise peremptory challenges in this single-defendant case, this Court should adhere strictly to Rule 24, which provides for an equal number of peremptory strikes for both parties. The defendant and the government have compelling, and arguably equal, interests in prospective jurors' views on the death penalty, exposure to pretrial publicity, and ability to follow the legal instructions. See, e.g., United States v. Johnson, 495 F.3d 951, 963 (8th Cir. 2007) (affirming decision to apply rational basis review to a capital defendant's equal protection challenge to Rule 24).

Although the defendant has not moved for additional peremptory challenges, in the event that he does, the government respectfully requests that this Court follow the dictates of Rule 24, which does not afford any discretion to award additional peremptory challenges in this case. Indeed, multiple courts have rejected requests for additional peremptory challenges based on equal protection grounds. See Johnson, 495 F.3d at 963; United States v. Williams, 2013 WL 1563708, at *1 (M.D. Pa. Apr. 12, 2013); United States v. Williams, 2014 WL 712598, at *3 (D. Haw. Feb. 21, 2014).

## CONCLUSION

The United States respectfully requests that this Court apply the law and principles set forth above when presiding over the in-court voir dire process.

Respectfully submitted,

TROY RIVETTI
ACTING UNITED STATES ATTORNEY

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
Barry K. Disney
Trial Attorney
Capital Case Section
KS ID No. 13284
