IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

**UNITED STATES' OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR COURT ORDER COMPELLING GOVERNMENT TO CONFIRM PRODUCTION OF ALL RULE 16 AND BRADY MATERIAL (Doc. No. 1113)**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney, Trial Attorney, Capital Case Section, and respectfully files this opposition to the defendant's renewed Motion for Court Order Compelling the Government to Confirm Production of All Rule 16 and Brady Material in Its Possession, Doc. No. 1113.

Over three years ago, the defendant filed essentially this exact same motion. Doc. No. 153. The United States filed a fulsome response in opposition to that motion which explained the government's Rule 16 and <u>Brady</u> disclosure obligations, the fact that the defendant had failed to establish any deficiencies or noncompliance in this regard, that there is no requirement or precedent that would authorize this Court to "compel" the United States to provide a certification to the defense regarding Rule 16 and/or <u>Brady</u>, and that courts routinely deny these types of motions. Doc. No. 173. The United States hereby incorporates by reference those arguments and legal authority.

1

In February 2020, Judge Ambrose summarily denied the defense motion: "The Motion is DENIED. The government is aware of its ongoing discovery obligations." Doc. No. 201.

The same holds true today. The United States is aware of its discovery obligations and will continue to meet and exceed its obligations. There is nothing in the defendant's renewed motion that calls into question Judge Ambrose's ruling, and it should likewise be summarily denied.

The defense implies that they only recently learned about an alleged statement by the defendant when a report was provided to them on February 23, 2023. Doc. No. 1113 at 1 & n.1. The defense contends that the United States was required to disclose this report under Rule 16(a)(1)(B)(ii), as it purportedly contains an "oral statement attributed" to the defendant that has "substantive information about his actions and state of mind at the time that he first encountered law enforcement." Id. at 2, 3. The defense is wrong and misrepresents the record.

As an initial matter, a cursory review of defendant's Exhibit A to his motion demonstrates that this document does not contain a "statement" by the defendant that is subject to Rule 16; rather it contains hearsay from other officers (whose statements were disclosed to the defendant, as summarized more fully below). It is clear from defendant's Exhibit A that the Pittsburgh Police officer in question never entered the Tree of Life Synagogue on October 27, 2018, had no personal interactions with the defendant that day, did not personally observe the defendant that day, did not personally overhear any statements made by the defendant that day, and—with respect to the particular statements at issue in the motion—could not even specifically recall with whom he discussed the fact that officers overheard the defendant speaking about his initial encounter with responding officers while on the way to his car. See Doc. No. 1113, Exhibit A. This particular Pittsburgh Police officer is not an anticipated trial witness, as the defendant concedes, Doc. No.

1113 at 4 n.3, and he has no personal knowledge of these particular statements (i.e., the information in his report is hearsay and further speculation by him about that hearsay).

The United States has complied with Rule 16 by providing the "substance of any relevant oral statement made by the defendant …" Fed. R. Crim. P. 16(a)(1)(A). The defendant has been aware of his "on my way to my car" statements <u>for over four years</u> and, in fact, filed a motion to suppress those and any other statements made inside the Tree of Life Synagogue. <u>See</u> Doc. No. 296.

On January 14, 2019, pursuant to Rule 16, the United States provided the defendant with a copy of the Police Radio Dispatch calls which broadcast the substance of the defendant's statements on October 27, 2018, at 11:22 a.m.[1] In addition, the United States provided the defendant with copies of all statements by officers who <u>actually</u> heard any of the defendant's statements that day—including Officer Clint Thimons, who is identified in the report attached as Exhibit A to the defense motion, and who testified at the October 2021 evidentiary hearing on the defendant's motion to suppress. Officer Thimons' report detailing the defendant's "on my way to the car" statements was provided to the defense on November 19, 2019—almost two years prior to the October 2021 suppression hearing. <u>See</u> copy of report, attached hereto as Exhibit A (filed under seal).

Further, the defendant's "on my way to the car" statements were expressly addressed at the October 2021 suppression hearing. The evidence established that after the defendant was taken into custody at 11:13 a.m. on October 27, 2018, and in an effort to assess and mitigate ongoing threats to officer and public safety, the on-scene SWAT commander, Officer Stephen Mescan,

---

[1] Importantly, a significant amount of the Pittsburgh Bureau of Police radio traffic from October 27, 2018, including the statement about the defendant having been on the way to his car when he engaged patrol officers, has been available through public sources since immediately following the incident and readily accessible to the defendant.

3

directed Officer Thimons to conduct a "ruse" to determine whether there was another shooter. As Commander Mescan testified, he "told Officer Thimons [to] tell [Bowers] that we got him and his partner coming in on camera, and we know that he's in the building … to tell him that with the idea that he would assume that there were cameras in the synagogue and that we actually knew something that we didn't." See October 12, 2021, Transcript (Oct. 12 Tr.) at 85; see also id. at 117, 132-33, 194, 210-11. Bowers, in response to this public-safety inquiry, denied that he had an accomplice: "Mr. Bowers took full responsibility and said, 'That must have been some f***ing Jew.' He goes, 'I came in here all by myself.'" Id. at 85.

To ascertain whether the defendant had any accomplices and/or had brought additional weapons and explosives, which is common in active shooter scenarios, officers asked how Bowers had arrived at the Synagogue that morning. Id. at 83-85, 117-18, 131, 195-96; Radio Call Transmissions (Suppression Hearing Gov. Exh. 3) 430 (11:22:33), 431 (11:22:54), 432 (11:22:59). Bowers stated that his green Hyundai Sonata was parked along the side of the building, and that he was "headed to [his] vehicle when he engaged [the initial PBP] officers responding." Radio Tr. 432 (11:22:59):

> 432-11:22:59
>
> MESCAN: Seven one. Further intel, actor's saying he was headed to his car after the uh, shooting um, here in the uh, location. Was headed to that vehicle when he engaged officers responding.

4

In response, Commander Mescan directed the Explosive Ordinance Disposal (EOD) Team to set up a perimeter around the vehicle and make it safe. Oct. 12 Tr. at 84; Radio Tr. 430 (11:22:33). On cross-examination, defense counsel asked Commander Mescan about both the ruse question regarding an accomplice and about the defendant's car. Oct. 12 Tr. at 117-18. Significantly, despite having ample notice of the "on my way to the car statement" from the transcript of the radio calls, from the audio played during the hearing, and from the testimony of Commander Mescan, defense counsel did not make any further inquiry regarding the defendant's statement on cross examination.

The other officer who heard this statement, Officer Thimons, also testified at length at the October 2021 suppression hearing, including direct testimony concerning the defendant's statements about being on the way to his car when he encountered patrol officers: "I'm not sure who exactly he spoke with, but I overheard him speaking of his vehicle being parked out front. And he indicated that initially that's where he was heading when he saw police officers." Oct. 12 Tr. at 195. On cross examination, defense counsel did not pose further questions to Officer Thimons on the subject. See Oct. 12 Tr. at 196-211. (Again, the defendant was in possession of the report documenting Officer Thimons' account of the subject's statements since November 19, 2019.)

After two days of hearings and her review of briefs and the transcripts, Judge Ambrose ruled that these—and all of the defendant's other statements—are properly admissible against him at trial. Doc. No. 677.

The defendant's motion is completely without merit, as the foregoing makes clear. Over four years ago, the United States complied with Rule 16 with respect to the statements at issue.

5

The defendant has been on actual notice of the statements for years, filed an unsuccessful motion to suppress those statements, and had the opportunity to cross-examine the officers who actuallyheard the statements to test the circumstances and content of those statements. The exhibit that the defendant attaches to his motion is that of a non-witness who had not interacted with the defendant at all. The instant motion, like the defendant's prior motion at Doc. No. 153, should be summarily denied.

Respectfully submitted,

Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
BARRY K. DISNEY
Trial Attorney
Capital Case Section
KS ID No. 13284