IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 18-292-RJC |
| vs. | ) |
| | ) Judge Robert J. Colville |
| ROBERT BOWERS | ) |
| | ) |

**MEMORANDUM ORDER OF COURT**

Robert J. Colville, United States District Judge

Before the Court is the Renewed Motion to Dismiss the Notice of Intent to Seek the Death Penalty Based on Arbitrary Decision Making by the Department of Justice ("Motion to Dismiss") (ECF No. 1096) filed by Defendant Robert Bowers. The Government filed a Response (ECF No. 1127) to the Motion to Dismiss on April 19, 2023. The Defendant's deadline to file a reply with respect to the Motion to Dismiss was April 24, 2023, and no such reply was filed. Accordingly, the Court considers the Motion to Dismiss to be fully briefed and ripe for disposition. For the reasons that follow, the Court will deny the Motion to Dismiss.

The Motion to Dismiss requests that the Court dismiss the Government's Notice of Intent to Seek the Death Penalty (ECF No. 86) "based on the arbitrary pursuit of the federal death penalty, including the bureaucratic, arbitrary decision-making process that sought to force an unconditional waiver of the protections of the Fifth Amendment, and appears to have precluded Attorney General Garland from personally making the decision and thus bearing direct responsibility for authorizing a capital prosecution in this case." Mot. 1, ECF No. 1096. Defendant brings this Motion following a recent denial of Defendant's "request to withdraw the death notice and permit settlement of this

1

case, including a stipulation to imposition of multiple sentences to life in prison without the possibility of release, and waiver of post-conviction challenges." *Id.* at 1-2. Defendant asserts that Attorney General Merrick Garland has not made any decision with regard to this case,[1] and that Defendant's most recent request was considered by a committee of unidentified rotating Department of Justice staff and field prosecutors who "sought to obtain an unconditional waiver of Fifth Amendment and statutory protections in exchange for meaningful consideration of the request to withdraw the death notice."[2] *Id.* at 2. In so doing, Defendant argues that unaccountable members of the Department of Justice, and not the Attorney General, have authorized a capital prosecution to go forward. *Id.*

Defendant further asserts that there is no discernible, principled basis as to why the death penalty continues to be pursued in this case while capital prosecution was not pursued, or the death notice was withdrawn, in other cases. Mot. 3, ECF No. 1096. Alternatively, Defendant requests that the Court "order discovery as to the reasons for the withdrawn death notices and the 'no-seeks' in the cases [cited in the Motion to Dismiss]." *Id.* at 10; *see also id.* ("Discovery should be ordered as to the reasons for withdrawing the death notices as to the twenty-seven (27) other individuals, many of whom have prior violent criminal histories, and/or were alleged to be a future danger to others in prison, as well as the several hundred other capital eligible cases in which this DOJ and Attorney General have decided not to seek the death penalty.").

Initially, the Department of Justice's Justice Manual, which sets out the internal process by which the Government determines whether to seek, and continue to seek in the face of a withdrawal

---

[1] This case was authorized for a capital prosecution in August 2019 by then Attorney General William Barr.

[2] The waiver Defendant refers to is described as follows: "In an ongoing attempt to side-step the federal rules and constitutional principles which govern the government's access to a criminal defendant, counsel were advised that someone in D.C. also requested to have access to Mr. Bowers for a government-sponsored psychiatric evaluation." Mot. 5, ECF No. 1096.

request, the death penalty in a case, does not create an enforceable individual right. *See United States v. Hammer*, No. 4:96-CR-239, 2011 WL 6020170, at *3 (M.D. Pa. Dec. 1, 2011) ("Accordingly, the Court agrees with those courts that have concluded that the Department of Justice Protocol does not create an enforceable individual right or entitlement."). "The Protocol only sets forth a means to make that determination. Once that determination is made, the right of a defendant named in the notice of intent to seek the death penalty is protected by the adversarial system of justice." *Hammer*, 2011 WL 6021070 at * 3 (citing *Nichols v. Reno*, 931 F.Supp. 748, 751–52 (D.Colo. 1996)); *see also id.* ("Since the Protocol does not create individual rights that Defendant Hammer can enforce, any alleged violation is not a basis to preclude convening a new penalty hearing.").

    The Court notes that the Motion to Dismiss fails to set forth a violation of the Justice Manual. As described in the Motion to Dismiss, the procedure utilized by the Government with respect to Defendant's request to withdraw the Notice of Intent in this case is consistent with the Justice Manual's provisions regarding a defense request for a withdrawal of the notice of intention to seek the death penalty. *See* J.M. § 9-10.160(B) ("Upon receipt of [a defense request for withdrawal], the Capital Case Section will seek review of the request by the Capital Review Committee. To the extent possible, the Capital Review Committee should include the members who originally considered the case. Reviewers should evaluate the withdrawal request under the principles used to make an initial determination set forth in Sections 9-10.030 and 9-10.140, and focus the evaluation on determining if changed facts and circumstances make it no longer appropriate to seek the death penalty. For this reason, information or arguments that had been advanced initially are not normally appropriate bases for withdrawal requests. In all cases, however, reviewers should consider all necessary information to ensure every defendant is given

the individualized consideration needed for full review and appropriate decision-making. If the Capital Review Committee unanimously disagrees with the defendant's request to withdraw the notice of intention to seek the death penalty, the Assistant Attorney General for the Criminal Division will inform the United States Attorney or Assistant Attorney General that the request has been denied. If one or more members of the Capital Review Committee recommend withdrawing the notice of intention to seek the death penalty, then the Capital Review Committee will convey the matter, along with the Committee's analysis, to the Attorney General, through the Deputy Attorney General, for decision."). Accordingly, Defendant fails to assert a violation of the Justice Manual, and, even if he had, the same would not be sufficient to allow for the relief requested in the Motion to Dismiss.

With respect to Defendant's assertion that Attorney General Garland was uninvolved with the review of Defendant's withdrawal request, the Court notes that Section 3593 simply provides that the decision whether to pursue the death penalty rests with "the attorney for the government," not any specific attorney. 18 U.S.C. § 3593; *see also Hammer*, 2011 WL 6021070 at * 3 ("The decision whether to seek the death penalty is within the discretion of the prosecutor."). The United States District Court for the Southern District of New York has explained:

> Kee also advances a statutory argument against the Attorney General's decision to seek the death penalty against Kee in spite of the contrary recommendation of the United States Attorney for this District. The FDPA provides that the Government shall provide notice of its intent to seek the death penalty "[i]f the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified." 18 U.S.C. § 3593(a). Kee argues that the Attorney General, who has not filed a notice of appearance in this case, is not an "attorney for the government." As a consequence, Kee argues, the Notice is invalid here, where the Government's attorneys of record, the local United States Attorney and the Assistant United States Attorneys working on the case, presumably did not "believe ... that a sentence of death [was] justified" at the time the Notice was issued.
>
> This Court joins those that have held that Section 3593 simply requires that it be "the institutional belief of the government, by virtue of its internal decision-making

4

> process, that it is appropriate to seek the death penalty." *Cooper*, 91 F.Supp.2d at 114.  The internal hierarchy of the Department of Justice, as well as the Attorney General's statutory authority to supervise litigation to which the United States is a party, permits the decision making protocol under which the Government determined to seek the death penalty against Kee in this case. *See United States v. Lee*, 89 F.Supp.2d 1017, 1035 n. 16 (E.D. Ark. 2000) (Attorney General's authority over decision to seek death penalty derives from her authority to supervise litigation to which United States is party).

*United States v. Kee*, No. S1 98 CR 778 (DLC), 2000 WL 863119, at *5 (S.D.N.Y. June 27, 2000). The Government asserts that Defendant "cites no statute, case, or regulation that requires the Attorney General to decide whether to withdraw [a notice of intent to seek the death penalty]," and that "[h]e also cites no authority to show that the identity of the decision-maker is relevant to the reliability or supposed arbitrariness of the decision."  Resp. 7, ECF No. 1127.  The Court agrees, and rejects any assertion by Defendant that the Notice of Intent in this case should be dismissed because Attorney General Garland purportedly had no role in the review of Defendant's request to withdraw the Notice of Intent.[3]

The Court also agrees with the Government's assertion that the existence of purportedly similar cases that were treated differently than this case does not render arbitrary the Department of Justice's determination to deny Defendant's request to withdraw the Notice of Intent in this matter.  "Together, *Furman* and *Gregg* require that a death penalty statute '(1) rationally narrow

---

[3] The Court further credits the following argument made in the alternative by the Government:

> But even if the Court were to entertain this argument, the defendant still fails to make even a colorable claim that the decision-making process is arbitrary or otherwise unfair.  At most, he posits that a presidentially appointed, Senate-confirmed Attorney General decided to seek the death penalty against the defendant and that a different presidentially appointed, Senate-confirmed Attorney General ratified the process under which the Department decided not to withdraw the NOI, therefore maintaining the position of his predecessor.  The processes by which the defendant came to face, and continues to face, capital punishment carried the imprimatur of two Cabinet officials and involved them or their designees, consistent with applicable Department policy.  He cannot meaningfully complain about inattention to this single charging decision, given the personal attention it received at the highest levels of a prosecutorial agency that managed more than 80,000 criminal cases last year.

Resp. 7, ECF No. 1127 (citation omitted).

5

the class of death-eligible defendants[ ] and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime.'" *United States v. Sampson*, 486 F.3d 13, 24 (1st Cir. 2007) (quoting *Kansas v. Marsh*, 548 U.S. 163 (2006)). Courts faced with similar arguments to those raised in the Motion to Dismiss involving one- or two-sentence case descriptions/comparisons have routinely rejected the assertion that the existence of cases with certain, though limited, similarities constitute evidence that the death penalty was arbitrarily sought. *See McCleskey v. Kemp*, 481 U.S. 279, 306–07 (1987) ("On the other hand, absent a showing that the Georgia capital punishment system operates in an arbitrary and capricious manner, McCleskey cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not receive the death penalty."); *see also Sampson*, 486 F.3d at 25 ("In all events, the 'evidence' that Sampson submits is wholly inadequate to prove that the death penalty has been imposed in an arbitrary manner. The summaries on which Sampson relies to demonstrate inconsistency are devoid of details and fail to account for the objective circumstances of the underlying crimes. Even the more detailed verdict sheets that he submitted to the district court fail to establish arbitrary imposition of the death penalty. On this record and mindful of the teachings of *McCleskey*, we decline Sampson's invitation to ignore individual differences across offenders and offenses. Consequently, there is no principled basis for finding that similar cases are treated differently."); *United States v. Solomon*, No. 02:05CR385, 2007 WL 1468794, at *2 (W.D. Pa. May 14, 2007) ("In support of this argument, Defendants present pages of synopses from cases with reprehensible conduct that in some instances resulted in a death finding and in others a lesser sentence. What is notably missing from their argument, however, is any case law which specifically adopted the

Defendants' view.  Absent such authority, the Court is not willing to strike down an Act of Congress that has consistently withstood various constitutional challenges.").

In addressing a similar argument, the United States District Court for the District of New Mexico has explained:

> Defendant argues there is a similar lack of consistency and predictability with respect to which capital cases the Government agrees to plead out to life sentences or less and which capital cases the Government takes to trial.
>
> . . . .
>
> These case summaries certainly paint a vivid picture, however, they are ultimately not persuasive. The summaries are very short-almost all of them are between one and three sentences long.  In many cases they do not provide enough detail to allow the reader to determine whether or not the crimes they describe are comparable to each other.  Moreover, they do not provide any information about the various aggravating or mitigating factors that existed in those cases and that the juries would have considered under the FDPA when deciding whether or not to impose the death penalty.  This was exactly the concern expressed by the First Circuit in *United States v. Sampson*, 486 F.3d 13 (1st Cir.2007), a case in which the defendant apparently provided similar summaries in support of a similar argument. . . .
>
> This conclusion is also urged by the very case on which Defendant relies for legal support for his proposition, *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).  Defendant draws the Court's attention to one selected quote from that opinion in which the Supreme Court reiterated its insistence "that capital punishment be imposed fairly, and with reasonable consistency, or not at all." *Id.* at 112.  However, to use this quotation in support of an argument that two-sentence case summaries that do not include any aggravating or mitigating factors can demonstrate the arbitrary application of the FDPA is to take the quotation entirely out of context.  The Court in *Eddings* reversed a state death sentence precisely because the trial court in that case refused to consider crucial individual mitigating circumstances.  Indeed, in the same paragraph from which Defendant draws his quotation, the *Eddings* court stated that "a consistency produced by ignoring individual differences is a false consistency." *Id.*  The defendant in *Sampson* relied on the same quotation on which Defendant Taylor relies.  The First Circuit was unpersuaded by the similarly relied on quotation from *Eddings* and rejected his argument, stating:
>
>> This argument ignores the remainder of the *Eddings* Court's discussion of consistency, in which the Court recognized that "a consistency produced by ignoring individual differences is a false consistency."  Indeed, the thrust of *Eddings* is that those who make sentencing decisions must be permitted to

7

> focus on the individual characteristics of the defendant and the circumstances of the crime. And, finally, the argument cannot survive *McCleskey*, in which the Court stated that "the Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his guilt."
>
> *Sampson*, 486 F.3d at 24–25 (internal citations omitted).
>
> This Court adopts the reasoning of the First Circuit in *Sampson* and holds that the case summaries Defendant points to do not demonstrate the arbitrary and capricious application of the FDPA.

*United States v. Taylor*, 648 F. Supp. 2d 1237, 1241–43 (D.N.M. 2008).

The Court agrees with this rationale and finds that Defendant fails entirely to establish a basis upon which the Court could conclude that the Government has arbitrarily sought the death penalty in this case. *See* Response 8-11, ECF No. 1127. The Motion to Dismiss sets forth the type of case summaries that courts have repeatedly determined are insufficient to establish that the death penalty has been sought arbitrarily. As the Government argues, Defendant "does not address the myriad distinctions between his case and the other defendants[], crimes, and prosecutions." Resp. 9, ECF No. 1127. The Court further notes the Government's argument that Defendant fails to acknowledge the case of *United States v. Dylann Storm Roof*, a case involving the same statutes at issue in this case wherein the Government sought, and the jury voted to impose, the death penalty. *Id.* at 10-11 n.4. Moreover, despite being ordered to do so, Defendant failed to file a reply addressing the case law cited by the Government.

Further, the Department of Justice's request for further information in support of Defendant's withdrawal request does not render arbitrary its decision to deny Defendant's request to withdraw the Notice of Intent in this matter. The Court credits the Government's argument that the Department of Justice made a decision about withdrawal based on the information available to

it.  The Justice Manual requires reviewers to consider all necessary information in rendering a decision.  *See* J.M. § 9-10.160(B) ("In all cases, however, reviewers should consider all necessary information to ensure every defendant is given the individualized consideration needed for full review and appropriate decision-making.").  The Department apparently determined that additional information could potentially be helpful in rendering a decision on the withdrawal request, and requested that Defendant waive his Fifth Amendment rights for the limited purpose of verifying Defendant's factual claims about his mental condition.  Defendant declined to provide the information requested, and his withdrawal request was ultimately denied.  Defendant fails, however, to provide the Court with any basis to conclude that the fact that the Department sought, and the Defendant refused, a mental health examination somehow undermines the rejection of his withdrawal request.

As to Defendant's discovery request, specifically seeking information as to "the reasons for the withdrawn death notices and the 'no-seeks'" in the cases Defendant compares to this case, the Court agrees with the Government's argument that Defendant has not made a credible showing of selective prosecution to warrant production of the discovery sought.  "[A] defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent."  *United States v. Bass*, 536 U.S. 862, 863 (2002).[4]  The United States District Court for the Southern District of New York has explained:

> "A selective-prosecution claim asks a court to exercise judicial power over a special province of the Executive."  *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (internal quotations omitted).  The Attorney General and U.S. Attorneys have broad discretion to enforce the country's laws, and a "presumption of regularity" supports their prosecutorial decisions.  *Id.*  Thus,

---

[4] While Defendant does not cite to *Bass* in the Motion to Dismiss, the document attached as Exhibit A to his Motion to Dismiss and incorporated by reference did rely on *Bass* in arguing that the discovery sought by way of the motion was warranted.  The Court takes the same, as well as Defendant's failure to file a reply challenging the Government's argument respecting this standard, as an acknowledgement that the requirements set forth in *Bass* apply to Defendant's request for discovery.

> "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* In *Armstrong*, the Supreme Court held that a "credible showing of different treatment of similarly situated persons" is necessary before a defendant is entitled to discovery for a selective prosecution claim. *Id.* at 470, 116 S.Ct. 1480

*United States v. Barnes*, 532 F. Supp. 2d 625, 637 (S.D.N.Y. 2008).

Defendant has not made a sufficient showing as to either discriminatory effect or intent. With respect to effect, Defendant fails entirely to satisfy his burden of providing some evidence that the defendants in the cases he cites are "similarly situated" to him, instead relying again on limited, one- or two-sentence descriptions of these other cases. Given the limited record before the Court, the Court agrees that Defendant's attempt to analogize his case to others "based on the number of victims or the motive for the murders involves 'a gross over-simplification' of the variables at hand." Resp. 14, ECF No. 1127 (quoting *United States v. Johnson*, 900 F. Supp. 2d 949, 972 (N.D. Iowa 2012)). Defendant has not sufficiently shown discriminatory effect such that the Court could permit the discovery he seeks.

Defendant also fails entirely to show any evidence of, or advance any argument regarding, discriminatory intent on the part of the prosecutors in this case. "[T]o comport with the substantive requirements of a selective prosecution claim, to establish the discriminatory intent element in support of a request for discovery on a selective prosecution claim, a defendant must produce some evidence that 'the decisionmakers in his case acted with discriminatory purpose.'" *Barnes*, 532 F. Supp. 2d at 637 (quoting *McCleskey*, 481 U.S. at 292). On this record, the Court is constrained to conclude that Defendant has come up well short of his burden of showing discriminatory intent. Because Defendant has not met his burden of showing evidence of both discriminatory effect and discriminatory intent, and consistent with the overwhelming weight of authority, the Court denies Defendant's request for discovery.

For the reasons discussed above, it is hereby ORDERED that the Motion to Dismiss is denied.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: May 2, 2023

cc: All counsel of record