**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 18-292-RJC |
| vs. | ) | |
| | ) | Judge Robert J. Colville |
| ROBERT BOWERS | ) | |
| | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Government's Motion to Examine Defendant and Proposed Examination Procedures ("Motion to Examine") (ECF No. 1001). By way of the Motion to Examine, the Government seeks an order authorizing the Government's expert witnesses to examine the Defendant, Robert Bowers, pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B), and further requests that the Court adopt the mechanics, parameters, and conditions for the requested examinations as set forth in the Motion to Examine. The Motion to Examine has been fully briefed and ripe for disposition.

### I.    Background

The deadline for Defendant to provide notice pursuant to Fed. R. Crim. P. 12.2(b)(2) as to whether he intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of Defendant bearing on the issue of punishment during the penalty phase of this capital case was February 23, 2023. ECF No. 855. On February 23, 2023, Defendant provided Notice (ECF No. 972) that he intends to introduce evidence within the meaning of Rule 12.2(b)(2) during the penalty phase of trial. On March 3, 2023, the Government filed the Motion to Examine,

1

including proposed mechanics, parameters, and conditions of the examination and tests.  Pursuant

to this Court's December 1, 2022 Order, the parties subsequently conferred to attempt to reach

agreement as to specifications and conditions of any mental health examination of the Defendant

by Government experts, as well as the exchange of Rule 12.2 mental health discovery.  On March

15, 2023, the parties filed a Joint Statement Regarding Rule 12.2(b)(2) Penalty Phase Mental

Health Procedures (ECF No. 1029) advising the Court that no meaningful agreement could be

reached between the parties, and that the parties intended to separately file their respective

positions, as well as any corresponding legal support, by March 20, 2023.  On March 20, 2023,

Defendant filed his Opposition (ECF No. 1058) to the Government's Motion and the Government

file its Brief in Support (ECF No. 1059).  The Government filed a Reply (ECF No. 1073) on March

28, 2023, and the Defendant filed a Response (ECF No. 1082) to that Reply on March 31, 2023.

The Government filed a Reply (ECF No. 1089) to the Defendant's March 31, 2023 Response on

April 3, 2023.

## II.    Legal Standard

Fed. R. Crim. P. 12.2(c)(1)(B) provides that, where a defendant provides notice under Rule

12.2(b), a court may, upon the Government's motion, order a defendant to be examined under

procedures ordered by the court.  Where a Defendant has indicated an intent to introduce mental

health testimony during the penalty phase of a capital trial, courts implement safeguards to protect

a defendant's constitutional rights while also "allowing the Government a meaningful right of

rebuttal on mental health issues" by permitting a mental health expert selected by the Government

to examine the defendant.  *United States v. Taylor*, 320 F. Supp. 2d 790, 792 (N.D. Ind. 2004); *see

also United States v. Vest*, 905 F. Supp. 651, 653 (W.D. Mo. 1995) ("[U]nless a government-

selected mental health expert is permitted to examine defendant, the provision authorizing rebuttal

is rendered meaningless."). "The results and reports from a rebuttal exam must be sealed and not given to the prosecution or the defense unless the defendant is found guilty and confirms his intent to rely on mental-condition evidence during the penalty phase." *United States v. Tsarnaev*, 968 F.3d 24, 75 (1st Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 1024 (2022); *see also United States v. Coonce*, 932 F.3d 623, 636 (8th Cir. 2019) ("The rules also prohibit the government from using any statement made by the defendant in the course of the government's examination, or any opinion based on such a statement, unless the defendant has introduced evidence on that particular issue. The rules even prohibit using fruits of any statement by the defendant unless in rebuttal. These protections limit the admissibility, not the scope, of the interview." (internal citations omitted)).

When faced with a similar scenario to the one presented herein, the United States District Court for the Western District of Missouri explained and held:

> Defendants may, in any and all circumstances, exercise their Constitutionally-guaranteed rights. However, exercise of these rights does not provide an unrestrained free for all for death penalty defendants. If a defendant elects, with the advice of counsel, to put his mental status into issue in the penalty phase, then he has waived his right to refrain from self-incrimination arising from a mental health examination, and there is no Fifth Amendment implication. If a defendant elects to present mitigation testimony addressing his mental status, then the government is free to rebut such testimony. Unless the government is allowed to conduct its own mental health examination, it may be deprived "of the only effective means it has of controverting . . . proof on an issue that [defendant has chosen to] interject [ ] into the case." [*Estelle v. Smith*, 451 U.S. 454, 465 (1981)].

> Even though "death is different," *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), the consequence of any "difference" between death penalty cases and other cases is that "a greater degree of reliability [is required] when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). Clearly, affording the government equal access to critical mental health information enhances the ultimate reliability of the sentence.

> The Court will, of course, provide defendants with sufficient Constitutional protection[.] Examinations will be ordered and results will be disclosed if, and only

if, a defendant chooses to introduce evidence or other testimony relating to issues of his mental health.

*Vest*, 905 F. Supp. at 653; *see also Taylor*, 320 F. Supp. 2d at 793 ("The Court finds that while requiring a defendant to undergo a psychiatric examination may in some circumstances infringe on a defendant's rights under the Fifth and Sixth Amendments, in this case Thomas' rights are not infringed by this Court's Order directing him to submit to a mental health exam conducted by the Government's mental health expert since he has indicated that he intends to introduce mental health evidence during the penalty phase.").

## III.    Discussion

The Government proposes the following mechanics, parameters, and conditions for its requested examinations:

1.   Government mental health experts shall be permitted to examine the defendant as necessary and probative to rebut or confirm defense experts' anticipated mental health testimony.

2.   The Government mental health experts shall initially be limited to the following kinds of experts:

   a.   A psychiatrist, who will conduct interviews of the defendant to complete a forensic psychiatric evaluation of the defendant.

   b.   A neuropsychologist, who will observe the psychiatric interviews, conduct additional interviewing, and administer psychological and neuropsychological tests to complete a neuropsychological evaluation of the defendant.

   c.   A neurologist, who will interview and conduct a neurological examination of the defendant to complete a neurological evaluation of the defendant.

   If based on initial examinations, the government requires additional evaluations by experts in other specialties or any laboratory tests or imaging studies, it shall seek leave of the court.

3.   The examinations may be conducted on multiple days, as deemed necessary by the experts.

4. The examinations shall take place at the Joseph F. Weis, Jr. United States Courthouse, in a secure, private space associated with the U.S. Attorney's Office, such space already having been approved by the U.S. Marshal for in-custody interviews.   The government and defense counsel shall meet and confer on the timing of the examinations.   If no agreement is reached regarding timing, the government shall give three days' notice to defense counsel of the date, time, and length of the examinations.

5. The examinations shall be limited to testing deemed necessary by the government's experts to develop evidence that will rebut or confirm the defense experts' anticipated testimony, including the existence of a diagnosable mental illness (if any), its identification, and the validity of any diagnoses set forth in the defendant's Rule 12.2(b) notice and supplemental letter or if another diagnosis is more accurate or whether the defendant suffers from no diagnosable mental health condition at all.   The United States need not give advance notice of the testing to be employed.

6. The government's experts may question the defendant about the charged crimes and his conduct before and after committing the crimes, and any other matter as is necessary and probative to rebut or confirm the anticipated defense expert mental health testimony.

7. No counsel from the defense or the prosecution may be present during the examinations.

8. The government's psychiatrist shall be permitted to record the interview of the defendant.   At the discretion of the government's psychiatrist, a neuropsychologist may be present during the interview.   With the exception of the interview of the defendant, no recording of any psychological or neuropsychological testing may be made, but government experts agree to make their raw results available to the defense.

9. As previously ordered, the appointment of firewall counsel has been denied. However, the Court, at its discretion, may appoint standby firewall counsel for the government for the purpose of briefing and arguing any issues that arise after the government's experts have started the evaluation process and that the Court believes would benefit from such appointment.   The United States trial team and firewall counsel, if so appointed, may not communicate regarding any issue requested to be briefed unless, pursuant to Rule 12.2(c)(2), the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition. If the Court does not elect to appoint firewall counsel in connection with any issues that arise during the examination process, the government's experts shall  be permitted to communicate directly with the Court and its staff regarding such issues.

10. The defense shall disclose to a designated government expert all the medical, mental health, and other records of the defendant that were provided to his mental health experts.   The designee shall have unfettered discretion to disseminate those records to other government experts.

11. By April 10, 2023, the defense shall provide to a designated government expert:

   a. A complete statement of all opinions to which the defense's experts will testify during the penalty phase;

   b. The results of tests and reports of examinations administered to the defendant in the course of reaching the opinions set forth in the defendant's Rule 12.2(b) notice, including any tests not personally administered by the defense expert, but upon which the expert will rely and/or testify;

   c. All raw data obtained by the defense experts;

   d. The witness's qualifications, including a list of all publications authored; and

   e. A list of all other cases in which, during the previous four years, the witness has testified as an expert at trial or by deposition.

12. Pursuant to separate order, declaring that the defendant's assertion of a mental health defense has impliedly waived all legal privileges with regard to the records of anyone who has ever examined his mental health, the United States may subpoena any such records from any such source.

13. After completing the examinations, each government expert will create two copies of his or her report, two copies of his or her CV, and two copies of all raw data, storage media, or documentation in two labeled, sealed envelopes, one of which is labeled "For Defense" and the other of which is labeled "For Government."   Each rebuttal expert will deliver their materials to the designated government expert, who will deliver all of the sealed envelopes to   the   Clerk,   together   with   signed statements   from   the   experts   indicating   their understanding that they may not discuss the examinations with anyone unless, pursuant to Rule 12.2(c)(2), the defendant is convicted of a capital crime and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.   The Clerk shall hold these sealed reports until a verdict is returned, without opening them or uploading them to the electronic filing system.

14. If the defendant is acquitted, the rebuttal expert reports may be destroyed upon order of the Court.   If he is convicted of a capital crime, the envelopes labeled "For Defense" will immediately be provided to defendant.   He will have 24 hours to confirm or withdraw his intent to offer mental health evidence.   If he withdraws the   intent,   the   reports   may   be   destroyed   upon   order   of   the   Court   and   never

provided to the government.  If he confirms the intent, pursuant to Rule 12.2(c)(2), the envelopes labeled "For Government" will be provided to the government, at which time defense counsel should also provide the government with their own expert reports, pursuant to Rule 12.2(c)(3).

15. The defendant may withdraw a notice of intent to raise mental health evidence at any time before actually introducing evidence on it.   In that event, neither the fact of the notice, nor the results or reports of any mental examination by either party, nor any facts disclosed only therein shall be admissible against the defendant.

16. No result, report, or recording of the government's examinations of the defendant, or medical record provided by the defense pursuant to Paragraph 3 of this Order, shall be used by the government for any purpose except to rebut expert testimony relating to defendant's mental condition offered by the defense during sentencing proceedings.

ECF No. 1089-1 at 1-4.

Defendant objects to nearly all of the Government's proposal.  Defendant asserts that, under the Sixth Amendment and Supreme Court precedent, he must be afforded the opportunity to discuss the nature and scope of the proposed evaluation with his counsel.  ECF No. 1058 at 5. Defendant provides:

To facilitate this constitutionally-mandated consultation, the prosecution must disclose to defense counsel, in advance of any proposed evaluation, the following: (1) the name, profession and qualifications of the proposed expert; (2) the referral question that the expert has been directed to answer; and (3) the names of any tests that the expert proposes to administer to respond to the referral question.  As this is a rebuttal examination, the scope of which is limited by the detailed notice provided by defense counsel, this information has the additional import of permitting a determination of whether the experts seek to exceed the scope of the evaluation.

*Id*.  Defendant argues that, because his Rule 12.2(b)(2) notice identifies the conditions he intends to offer evidence regarding (schizophrenia, epilepsy, and structural and functional impairments of the brain) and each type of expert the Defense intends to introduce, including details of the bases for the opinions the experts will offer, whether a clinical interview was part of the basis for an opinion, and a list of every test conducted, "proper rebuttal is limited to a determination of whether

there is support for the defense assertion that Mr. Bowers is a person with schizophrenia, epilepsy, and structural and functional impairments of his brain." *Id.* at 6.

Initially, the Court notes that even a cursory review of the briefing on this issue makes clear that neither the Government nor the Defense has set forth an entirely reasonable set of requests with respect to the Government's potential examination of Defendant. Each side has proposed diametrically and fundamentally opposed positions on the issue. For obvious reasons, this creates a challenging set of questions on an exceptionally important issue. Despite being afforded a more than adequate opportunity to agree on even the most basic terms of a potential Government-conducted examination of Defendant, the parties failed to reach any meaningful agreement, and subsequently filed five substantive briefs, concluding on April 3, 2023 (three weeks prior to the commencement of voir dire). Neither side is without fault. The Government has repeatedly insisted, over the objection of Defendant, that the examination take place at the Joseph F. Weis, Jr. U.S. Courthouse, which is also the location of the U.S. Attorney's Office, i.e., the prosecutors in this case. Given the nature of this case and the Government's request that Defense counsel not be present during the examination, the Court finds the Government's refusal to compromise on this simple issue to be, quite simply, unsupportable. Any examination permitted by the Court will take place at the location of Defendant's current incarceration.

Further, despite acknowledging the vast range of authority holding that an examination of a defendant is appropriate to allow for meaningful rebuttal of a Defendant's mental health evidence during a penalty phase of a capital case, Defendant has insisted that the information provided to the Department of Justice in support of Defendant's request that the Notice of Intent to Seek the Death Penalty be withdrawn in this case negates the need for a Government-selected mental health

expert to examine the Defendant.  Given the overwhelming weight of the authority on this issue,[1] to which the Court cites throughout this opinion, this position is also, quite simply, unsupportable. The Court will permit such an examination to take place, though, necessarily given the parties' stated positions, under conditions different than those purposed by either party.

Turning to the examination itself, the examination will take place prior to the commencement of the Guilt Phase of the trial in this matter, in order to prevent unnecessary delays between the Guilt Phase and a potential Eligibility Phase.  *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1239 (D.N.M. 2008) ("Rule 12.2(c)(1)(B) plainly permits a court to order a pretrial examination of a capital defendant by government experts, and many courts have permitted the government to examine a capital defendant prior to trial.").  In this case, where the Government's lead expert has represented that the examination will take approximately four-and-a half days, *see* ECF No. 1059-2 at ¶ 30, and that the preparation of reports will take approximately four weeks, *see* ECF No. 1073-1 at ¶ 21, the Court will direct that the examination take place forthwith, following the parties' compliance with the preliminary deadlines set forth in this Court's Order. The Court thus rejects Defendant's request that the Government's examination of Defendant not take place until the conclusion of the Guilt Phase, should a guilty verdict as to a capital offense or offenses be returned and should Defendant reiterate his intent to introduce mental health testimony during the Eligibility and Sentence Selection Phases.

In so holding, the Court finds particularly persuasive the reasoning set forth by the United States District Court for the Eastern District of Virginia in *United States v. Beckford*:

> To defer the notice requirement until then, however, presents serious difficulties for the defendant, the Government and the judicial system.  If, at that point, the defendant for the first time discloses his intent to offer mental health evidence in

---

[1] *See Vest*, 905 F. Supp. at 653 ("[U]nless a government-selected mental health expert is permitted to examine defendant, the provision authorizing rebuttal is rendered meaningless.").

mitigation, there would be a lengthy delay before the commencement of the sentencing phase while the Government experts examine the defendants.

To a jury which likely will have been sitting for several weeks on the guilt phase, the prospect of a lengthy delay before sentencing commences is fraught with difficulty. Most troublesome is the fact that evidence for the guilt phase, which usually is adopted at sentencing, will fade from the minds of the jurors; thus, content and context will be harder for the jurors to remember, and the relative roles played by the defendants will be harder for jurors to recall. This is prejudicial to the Government and the defendants equally.

Further, evidence offered only in the penalty phase will be more protracted because of the need to link it logically to the guilt phase issues. The greater the delay between phases, the greater is the need to re-establish, by testimony previously offered, the essential nexus between purely penalty phase evidence and the offenses to which it relates.

Moreover, because the same jury which determines guilt will determine the penalty, delay between guilt and penalty phases increases the risk that a juror will fall ill or pass away or otherwise will become unavailable. Of course, that risk is present even if there is only a brief delay between the guilt and penalty phases. But, that risk is materially increased by an extensive delay between the proceedings while the Government experts conduct mental examinations of the defendants. And, although the use of alternate jurors is possible, it is quite undesirable at that point in the case.

A related consequence of the delay inherent in deferring the Government's examination until after the guilt phase is the increased difficulty in securing jurors in the first instance. The longer the expected duration of a case, the greater the risk that qualified jurors will be unable to serve. This, of course, works to the prejudice of the defendants, the Government and the judicial system.

For the foregoing reasons, it is essential to strike the appropriate balance between the constitutional rights of the defendants, the Government's rebuttal right, and the interests of the Court and the litigants in fairness and judicial efficiency. The requirements of pre-trial notice and pre-trial examination secure the Government's rebuttal right and ensure that extensive post-guilt phase delay does not compromise considerations of fundamental fairness to the litigants and of judicial efficiency. And, strict prohibition on the release to the Government of reports prepared by its experts and by the defense experts until after a finding of guilt preserves the defendants' constitutional rights.

*United States v. Beckford*, 962 F. Supp. 748, 762–63 (E.D. Va. 1997) (citations omitted) (footnotes omitted).[2]  The Court agrees with this reasoning, and finds that a pre-Guilt Phase examination is appropriate and will not infringe upon the Defendant's constitutional rights.

The Government's request for the appointment of "standby firewall counsel" for the purpose of briefing and arguing any issues that arise after the Government's experts have started the evaluation process, which the Court agrees with Defendant is, in all but name, a request for reconsideration of the Court's denial of the Government's previous request for the appointment of firewall counsel, is denied.  Because the Court has elected not to appoint firewall counsel in connection with any issues that arise during the examination process, the Government's experts shall be permitted to communicate directly with the Court and its staff regarding any such issues, should they arise.  The Court notes that the Government's lead expert's Affidavits at ECF Nos. 1059-2 and 1073-1 make clear that this individual has served as an expert in many cases and has experience teaching at law schools.  This background tempers any concern that this individual would have difficulty in explaining issues that arise during examinations to the Court.

Turning to the substance of the examination that the Government will be permitted to perform, the Court will follow the lead of those courts that have not limited experts prior to examination, and the Court will defer addressing the issue of the scope of the examination until ruling on the admissibility of any evidence gained from the examination.  The Court is persuaded

---

[2] The Court notes that, with respect to the issue of securing jurors in the first instance, the Court has instructed potential jurors, upon agreement of the parties, that the trial in this matter may run through the end of the July, which is based on the parties' estimate of trial length and a one- (Government proposal) or two-week (Defense proposal) period between the Guilt and Eligibility Phases, should a guilty verdict on a capital offense be returned.  Defendant's proposal for any examination to take place following the Guilt Phase will certainly risk a delay that will render the Court's representation to potential jurors inaccurate, and will further assuredly render the deadlines set by this Court's January 20, 2023 Order infeasible.  *See* ECF No. 920 ("Defendant shall, if previously asserted, reassert or withdraw his penalty-phase mental health expert notice within twenty-four hours after the return of a guilty verdict, should one be entered. Rule 12.2(c)(2) disclosure, to the extent necessary/appropriate, shall occur within thirty-six hours after the return of a guilty verdict, should one be entered. Rule 12.2(c)(3) disclosure, to the extent necessary/appropriate, shall occur within forty-eight hours after the return of a guilty verdict, should one be entered.").

that such a procedure is the most efficient manner to allow for the Government to prepare meaningful rebuttal testimony while protecting the Defendant's rights. The Court finds the analysis set forth by the United States Court of Appeals for the First Circuit in *United States v. Tsarnaev* to be instructive on the limited risk posed by this procedure:

> To get anywhere, he must show that he had "reasonable cause to apprehend danger" from submitting to interviews with the government experts, *see Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) — for as the Supreme Court has long emphasized, "the privilege protects against real dangers, not remote and speculative possibilities," *see Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). But the judge here said over and over again that he would not automatically admit the results of the government experts' exams, and that even if he did admit them, prosecutors could use them only for "rebuttal" — which is copacetic under the Fifth Amendment. *See Cheever*, 571 U.S. at 94, 98, 134 S.Ct. 596. So no appreciable danger of a Fifth Amendment violation would have arisen unless (1) Dzhokhar incriminated himself during the government experts' exams, (2) he still chose to present mental-health evidence, (3) the judge let a government expert testify based on Dzhokhar's self-incriminating comments, and (4) the expert's testimony was not proper rebuttal. To ask us to find this rank conjecture sufficient (as Dzhokhar does) is asking too much. *See Minor v. United States*, 396 U.S. 87, 98, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969) (explaining that one must show "'real and appreciable' risks to support a Fifth Amendment claim").

*Tsarnaev*, 968 F.3d at 78–79; *see also United States v. Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5414786, at *5 (N.D. Cal. Sept. 9, 2020) ("However, the Court is persuaded that, in light of the breadth and complexity of the noticed defense, litigating the proposed testing or topics of inquiry in advance of the examination would not be practicable or productive. The Government's experts will be permitted to administer any tests and ask any questions they deem necessary to form an expert opinion on the above topics. If, after the examination has been conducted, Defendant Holmes believes the Government has gone beyond what is reasonably necessary for rebuttal, she will have the opportunity to bring an appropriate motion to the Court."); *United States v. Hardy*, 644 F. Supp. 2d 749, 751 (E.D. La. 2008). ("[T]he Court will not restrict the scope of the examination. The Court is simply not in a position to know what lines of inquiry are

appropriate from the standpoint of the experts.  As the entire interview and examination will be videotaped, defense counsel can lodge objections to the admissibility of whatever portions deemed inappropriate or violative of Hardy's rights, and also object to the admission of any conclusions by the government expert that is found to be based on improper lines of inquiry.").  This Court, like the trial court in *Tsarnaev*, hereby affirmatively states that it will not automatically admit the results of the Government experts' examinations, and, even if it does admit them, the Government will be permitted to use them only for rebuttal.

That said, the Court will also require that, within forty-eight hours of the entry of the Court's Memorandum Opinion and Order, the Government's experts provide Defendant notice of their identities and CVs, and the proposed testing the Government's experts intend to perform. The Court orders the same not for purposes of Defense objections to such testing and the Court's review of the same, but rather so that counsel and Defendant are sufficiently aware in advance of the nature of the examination to allow for appropriate discussions between counsel and Defendant ahead of the examination.  *See United States v. Sampson*, 335 F. Supp. 2d 166, 246 (D. Mass. 2004) ("For example, if defense counsel were given notice of the government's experts and the tests they intended to conduct, a defendant could decide to withdraw his notice rather than proceed with the possibility of presenting evidence concerning his mental condition.  In addition, a defendant, with or without his lawyer's advice, might refuse to participate in certain tests or to answer certain questions.  Such conduct would subject him to the risk of forfeiting his right to present evidence of his mental health."); *see also Estelle v. Smith*, 451 U.S. 454, 471 (1981)  ("As the Court of Appeals observed, the decision to be made regarding the proposed psychiatric evaluation is 'literally a life or death matter' and is 'difficult . . . even for an attorney' because it requires 'a knowledge of what other evidence is available, of the particular psychiatrist's biases

and predilections, [and] of possible alternative strategies at the sentencing hearing.'  It follows logically from our precedents that a defendant should not be forced to resolve such an important issue without 'the guiding hand of counsel.'"); *United States v. Wilson*, 920 F. Supp. 2d 287, 305 (E.D.N.Y. 2012) ("[T]he Supreme Court has held only that counsel must be 'notified in advance' of the examination so that counsel may advise the defendant regarding 'the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.'").  To the extent that the Government's lead expert, who the Court again notes has vast experience in his field and in capital cases, determines that additional testing is necessary, he may request the Court's leave to conduct such testing.  The Court notes the obvious, however, that any such request risks delay of the commencement of the Guilt Phase in this matter, and the Government should not presume that such a request would be liberally granted.

The Court will also not prohibit the Government from performing tests already administered by Defense experts.  Again, the issue of the admissibility of the results of any such tests may be addressed at a later date, and, in any event, the Defendant will certainly not be prevented from performing cross-examination of the Government's rebuttal experts regarding the reliability of the results of any such tests.

As to offense-specific questioning during examination, Defendant does not set forth any substantive opposition to the same, and the Court finds persuasive the following analysis set forth by the United States District Court for the Central District of Illinois:

> The Government's expert himself indicated that he would not need to question Defendant about the offense if the only use of the mental health evidence would be to support a claim of "Other factors" rather than impaired capacity or disturbance. Because Defendant will not be required to disclose the specific mitigating factors he intends to rely upon until a later date, the Court cannot resolve that question in advance.  However, if the Court bars the United States' expert from questioning Defendant on the offense conduct and Defendant later does offer offense-specific mental health arguments, these proceedings could become stalled while the United

14

States attempts to re-examine Defendant with the appropriate scope. The alternative is to allow the United States' expert to question Defendant about the offense—if it later becomes clear that Defendant will not claim offense-specific mitigation, the Court can limit evidence based on offense questioning.

The Court finds this latter alternative preferable. Defendant's Fifth Amendment right against self-incrimination is sufficiently protected by the already-instituted procedure whereby the prosecution team will not receive any information disclosed during the rebuttal examination unless and until (1) Defendant is found guilty of the offense beyond a reasonable doubt and (2) Defendant reaffirms his intent to offer mental health evidence at the penalty phase. The Court may also restrict the rebuttal expert's testimony to non-offense-specific evidence and opinions, should Defendant choose only to pursue the mental health mitigation under the "Other factors" category rather than impairment, duress, or disturbance. The United States' Motion for this Court to reconsider its Rule 12.2 procedures is GRANTED, and the United States' rebuttal expert will be permitted to question Defendant on the offense.

*United States v. Christensen*, No. 17-CR-20037-JES-JEH, 2019 WL 1569348, at *2 (C.D. Ill. Apr. 11, 2019). In this case, Defendant's deadline to provide a Notice of Proposed Mitigating Factors is twenty-four hours after the return of a guilty verdict on a capital offense, should one be entered. *See* ECF No. 920 at ¶ 5. Like the court in *Christensen*, the Court finds that the risk of delay posed by barring the Government's expert from questioning Defendant on offense conduct during the initial examination of Defendant is legitimate, and further finds that any risk of harm is abated by the timing of disclosure and the Court's ability to restrict the admission of any information that is not properly characterized as rebuttal evidence.

The Court also joins those courts that have not permitted defense counsel to be present during the Government's examination of a defendant or to be provided with a "live," simultaneous video or audio feed of a defendant's examination. *See Wilson*, 920 F. Supp. 2d at 304-06 (holding that neither the Fifth Amendment nor the Sixth Amendment require the presence of counsel during a mental examination conducted to rebut a psychiatric defense the defendant has initiated, and further rejecting defense requests that the examination be videotaped and that the defense be

provided the ability to watch the examination in a nearby venue via a simultaneous video and audio feed); *see also id.* at 305-06 ("Defense counsel proposes to alleviate these problems by 'sitt[ing] out of Wilson's sight and remain[ing] silent except when imposing an objection.'  But that option—which presumably would have been available in each of the cases cited above—still leaves us with the problem that the defense might pose objections, and that those objections (1) would interfere with the examinations, (2) would likely be meritless given the court's conclusions about Wilson's Fifth Amendment rights, and (3) could be made just as effectively after the examinations are over, in the event that the Government seeks to introduce evidence from the examinations that the defense believes would violate Wilson's constitutional rights." (citations omitted)); *Sampson*, 335 F. Supp. 2d at 247 (explaining that "a substantial majority of state and federal jurisdictions have held that a defendant does not have the right to counsel during a psychiatric examination" and holding that "[i]n the circumstances of this case, the tape-recording of the examinations was a reasonable exercise of the court's discretion."); *United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005) (counsel's presence during examination not permitted).

Further, in light of Defendant's vehement opposition to the recording of any examination, the Court denies the Government's request for the same.  *See Nelson v. United States*, No. 4:04-CV-8005-FJG, 2010 WL 2010520, at *3 (W.D. Mo. May 18, 2010) ("The Court agrees and finds that since the purpose of the recording is to protect the defendant, if Nelson's counsel does not wish the examination to be recorded, the Government has no right to insist on this condition. Accordingly, the examination by the Government's mental health professional shall not be either audio or videotaped."); *see also Christensen*, 2019 WL 1569348, at *3 ("In *Nelson v. United States*, a district court found that even though such a recording might protect the defendant, it was not warranted when the defense counsel objected to it. . . . This Court agrees.  Although the rebuttal

16

expert indicates that recording the interview would protect both parties and ensure transparency, there are no special circumstances that justify recording the rebuttal expert's interview over Defendant's objection."); *United States v. Minerd*, 197 F. Supp. 2d 272, 278 (W.D. Pa. 2002) ("The government will not electronically record the examination of the defendant, whether by audiotape or videotape, except with the express written consent of defense counsel."); *Wilson*, 920 F. Supp. 2d at 304-06 (rejecting defense request that the examination be videotaped); *but see Holmes*, 2020 WL 5414786, at *4 ("It is true that the Government 'has no right to insist' on recording the examination, *Nelson v. United States*, 2010 WL 2010520, at *3.  The Court nevertheless concludes that, for the reasons given by the Government, recording the examination would serve all the parties' interests and the interests of justice.  In particular, Defendant Holmes has argued vehemently in her motion papers that the examination raises Fifth Amendment concerns and will only be admissible for certain purposes.  The recording will facilitate her bringing any such issues to the Court, as well as an efficient and fair adjudication of those issues. The Court also acknowledges that the presence of a recording device can be [a] stressor.  But again, for the reasons already given, that risk is outweighed by the many benefits of video recording. Accordingly, the Government's request to video record the examination is granted.").  Defendant has elected to strongly oppose any videotaping of the Government's examination, and has done so presumably fully aware that the Court might deny his requests for counsel to be present for the examination or for counsel to otherwise simultaneously observe the examination.  He has made no request in the alternative, and the Court joins those courts who have held that videorecording is improper where the defense objects to the same.

As noted, the Government requests that its experts be provided the following in advance of the examination in this matter: (1) All the medical, mental health, and other records of the

defendant that were provided to his mental health experts; (2) A complete statement of all opinions to which the defense's experts will testify during the penalty phase; (3) The results of tests and reports of examinations administered to the defendant in the course of reaching the opinions set forth in the defendant's Rule 12.2(b) notice, including any tests not personally administered by the defense expert, but upon which the expert will rely and/or testify; (4) All raw data obtained by the defense experts; (5) The witness's qualifications, including a list of all publications authored; and (6) A list of all other cases in which, during the previous four years, the witness has testified as an expert at trial or by deposition.  Defendant has already agreed to provide the following to the appropriate Government expert: raw data from neuropsychological tests, the CT scan, the MRI, the PET, and the EEG.  ECF No. 1058 at 22.

In addressing a similar request, another judge of this District explained that "[t]he defendant correctly argues that there is no statutory authority for the specific relief the government seeks.  Neither Fed.R.Crim.P. 12.2 nor 16(b)(1) applies to the penalty phase of a trial.  Other courts, however, have relied upon the inherent power of the district court to provide the procedures necessary for a just and efficient resolution of the sentencing phase of a capital trial to order a mental health examination such as this, and we agree with the rationale underlying those decisions."  *United States v. Minerd*, 197 F. Supp. 2d 272, 275 (W.D. Pa. 2002).[3]  The *Minerd* court ultimately provided that "[t]he defendant is not required to provide the government with any of the materials supplied to defense experts other than defendant Minerd's medical records."  *Id.* at 278; *see also United States v. Edelin*, 134 F. Supp. 2d 45, 59 (D.D.C. 2001) ("Defendant Edelin

---

[3] It bears noting, as Defendant has, that the Government has previously argued that "[t]he government's discovery obligations under Rule 16 are limited to the evidence that will be presented *during the guilt phase of the trial*," ECF No. 877 (emphasis added), and that the Government now cites to Rule 16 as supporting the Government's discovery requests for mental health evidence, which is relevant only to the potential Eligibility and Sentence Selection Phases of the trial in this matter.  The Government's briefing fails to address this discrepancy.

is not required to provide the Government with any of the materials supplied to the defense experts other than defendant Edelin's medical records."); *id.* at 52 n.11 ("This is true as it applies to information provided to the defense expert witnesses other than the medical records of the defendant, which will likely be relevant and discoverable given the indications that the defense is considering the presentation of information regarding an organic brain disorder caused damage done by a gunshot to the head of the defendant when he was a teenager.  It is important that the Government expert witnesses have access to the same medical records relevant to a potential organic brain disorder as the defense expert witnesses.  As has been established in other courts, the experts for both the Government and the defense need accurate information in order to come to a reliable determination of the mental health of the defendant." (collecting cases)); *United States v. Dylann Storm Roof*, 225 F. Supp. 3d 419, 421 (D.S.C. 2016) ("Defendant's mental health experts shall provide the Government's experts with all of Defendant's past medical records that were provided to Defendant's mental health experts."); *United States v. Smith*, No. 3:16-CR-00086-SLG-1, 2020 WL 8910892, at *1 (D. Alaska Oct. 2, 2020) ("[T]he Court has directed that 'Mr. Smith's mental health experts who are expected to testify at trial shall provide the government examiner(s) with all of Mr. Smith's past medical records that were provided to the testifying defense mental health experts.") (citation omitted)).

The United States District Court for the Northern District of California, also faced with similar requests, has held:

> The Government moves to compel discovery of (1) all psychological and/or mental health records for Defendant Holmes currently in her custody or control, and (2) all reports, test results, raw testing data, and notes, for any and all examinations and interviews completed by Dr. Mechanic (and any other retained Rule 12.2 mental health expert).  Mot. at 7-8, 10.  The Government asks that the defense produce both sets of discovery in advance of the examination.

As to the first request, Defendant Holmes responds that she will "produce medical records prepared or considered by Dr. Mechanic or those on which Ms. Holmes will rely in her case-in-chief at trial," but that the Government is not entitled to any mental health records not relied upon by Dr. Mechanic.  Opp. at 9.  The Court agrees with Defendant Holmes.  The Government has not cited any authority for the proposition that Ms. Holmes must produce records beyond those relied upon by Dr. Mechanic or to be introduced at trial in support of her Rule 12.2(b) defense.  In particular, the Government has not shown that such records would be "relevant" to Ms. Holmes's Rule 12.2(b) defense, or that the Government might otherwise need the records "to effectively contest or impeach" the defense.  Reply at 11 (quoting *United States v. Wilson*, No. 04-CR-1016 NGG, 2012 WL 3890951, at *5 (E.D.N.Y. Sept. 7, 2012)).  The Court therefore finds that Defendant Holmes's proposed discovery is sufficient and will not compel additional discovery at this time.  However, the Government may renew its motion as to specific categories of documents, as such issues arise.

As to the second request, Defendant Holmes acknowledges that she is obligated to produce such information pursuant to Federal Rules of Criminal Procedure 16(b).  Opp. at 8.  The Government's request for all reports, test results, raw testing data, and notes, for any and all examinations and interviews completed by Dr. Mechanic (and any other retained Rule 12.2 mental health expert) is therefore granted.

The only remaining dispute is the deadline for the discovery granted above.  The Government would like to receive it in advance of the examination; Defendant Holmes would like to defer "until after the charging document is settled and the government has made any intended or required updates to its own expert and Rule 404(b) disclosures."  Opp. at 10.  Defendant Holmes is correct that neither Rule 12.2 nor Rule 16 requires disclosure of the defendant's expert discovery in advance of any government examination.  On the other hand, it is not clear that discovery must be deferred until the parties' litigation regarding the charging document— which may extensive—is complete; moreover, the case schedule has shifted significantly since the parties submitted their briefing.  Accordingly, the Court will deny the Government's request for discovery in advance of its examination; the Court will otherwise defer its decision regarding the deadline for the defense's disclosures.  The parties shall prepare a proposed schedule for Rule 16 disclosures by September 18, 2020.

*Holmes*, 2020 WL 5414786, at *5–6; *see also United States v. Catalan Roman*, 376 F. Supp. 2d 108, 113 (D.P.R. 2005) ("It has been held that Fed.R.Crim.P. 16(b)(1) does not provide authority for notice and reciprocal discovery of a mental expert relevant to the penalty phase of capital murder trial.").

The Defendant in this case, unlike the defendant in *Holmes*, has not conceded that he has an obligation under Rule 16 to provide the documents sought by the Government in advance of the Government's examination. Defendant further correctly asserts that the Government has previously argued in this case that Rule 16 is applicable only to the Guilt Phase of a capital case. The Court, however, has inherent authority to regulate practice where there is no controlling law, *see* Fed. R. Crim. P. 57(b), and does find that the provision of only Defendant's relevant medical records to the Government's designated expert in advance of any Government examination is necessary to allow for an effective examination in this case.[4] Consistent with the cases cited above, the Court will require that such records be provided to the Government's designated expert ahead of the Government's examination of Defendant. These medical records do not include "the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence." Fed. R. Crim. P. 12.2(c)(3). Defendant will also be required to provide raw data from neuropsychological tests, the CT scan, the MRI, the PET, and the EEG to the appropriate Government expert ahead of the examination.

All other requests for discovery made by way of the Motion to Examine constitute, in this Court's estimation, information that must be withheld from the Government until the return of a guilty verdict on a capital offense, should one be entered, Defendant's confirmation of his intent to introduce mental health evidence, should he do so, and the disclosure of the Government's reports pursuant to Rule 12.2(c)(2). *See* Fed. R. Crim. P. 12.2(c)(3) ("After disclosure under Rule 12.2(c)(2) of the results and reports of the government's examination, the defendant must disclose to the government the results and reports of any examination on mental condition conducted by

---

[4] This is especially so given each party's representation that the mental health conditions at issue in this case necessarily implicate the entire medical history of the Defendant. *See* ECF Nos. 1059-2; 1083. The provision of such records might also serve to streamline some of the Government's proposed examination.

the defendant's expert about which the defendant intends to introduce expert evidence."). In the absence of citation to a case on point where a court required similar production, the Government's request for discovery under Rules 12.2 and 16 and the Court's inherent authority, other than relevant medical records and the information that Defendant has agreed to provide, is denied. The information that the Court has directed be provided to the Government shall be provided within forty-eight hours of the entry of this Memorandum Opinion and Order.

With respect to timing, the examination at issue shall commence no earlier than five days after the Government's experts' provision of notice of their identities, CVs, and anticipated testing to the Defense consistent with this Court's Memorandum Opinion and Order. Again, the Court anticipates that the examination will be conducted as soon as feasible, and hereby orders that the examination take place before the commencement of the Guilt Phase of trial in this matter. In any event, the Government's examination will take place, at the latest, directly following the completion of voir dire or five days after the Government's experts' provision of notice, whichever date is later. The parties should begin making preparations consistent with this timeline immediately.

Finally, in light of the clear requirements of Rule 12.2, the Court perceives no basis to require the Government's experts to sign a protective order. The Government has made clear that its experts understand their obligations. Further, Rule 12.2 also prescribes the timing for provision of the Government's experts' reports to the Defense. The Court denies Defendant's request that he be immediately provided such reports upon their completion.

The Court again notes that it has reached the determinations set forth herein in the face of diametrically opposed arguments. To the extent that the parties can reach any agreement, with the benefit of the Court's holdings herein, as to modification of any aspect of the holdings of this

Memorandum Opinion and accompanying Order, the Court will certainly entertain the same.  That said, the Court will not permit unnecessary delay to the start of trial, or any subsequent phase of the trial, in this matter to allow for such negotiations to take place, and the parties should begin discussions forthwith for that reason.

### IV.    Conclusion

For the reasons discussed above, the Court will grant in part the Government's Motion to Examine Defendant, consistent with the holdings set forth above.  An appropriate Order of Court follows.

BY THE COURT:

/s/Robert J. Colville
Robert J. Colville
United States District Judge

DATED: May 8, 2023

cc: All counsel of record