```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

            vs.                       Criminal No. 18-292

       ROBERT BOWERS

     Transcript of PRIVATE Voir Dire held on Monday,
April 24, 2023, in the United States District Court,
700 Grant Street, Pittsburgh, PA  15219 before Honorable
Robert J. Colville, United States District Judge.
```

APPEARANCES:

```
   For the Government:   U.S. Attorney's Office
                         by Soo C. Song, Esq., and
                         Troy Rivetti, Esq., and
                         Eric G. Olshan, Esq., and
                         Nicole A. Vasquez Schmitt, Esq.,
                         Barry Disney, Esq., and
                         Mary J. Hahn, Esq.


   For the Defendant:    Federal Public Defender's Office
                         by Elisa A. Long, Esq., and
                         Michael J. Novara, Esq.
                         Ashwin Cattamanchi, Esq., and
                         Matthew Rubenstein, Esq.
                              and
                         Clarke, Johnston, Thorp & Rice, PC
                         by Judy Clarke, Esq.
                              and
                         Law Office of Michael Burt
                         by Michael N. Burt, Esq.

   Court Reporter:       Noreen A. Re, RMR, CRR
                         Barbara Metz Loch, RMR, CRR
                         700 Grant Street
                         Suite 6260
                         Pittsburgh, PA  15219

        Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.
                           VOLUME 1
```

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | (PRIVATE SESSION FROM PAGE 2) |
| 3 | THE COURT:  Are we on the record?  Are we closed?  Is |
| 4 | there any member of the public in the courtroom?  I don't know |
| 5 | who these folks are. |
| 6 | MS. SONG:  Case agents from the FBI. |
| 7 | THE COURT:  Not a big deal.  Just a couple quick |
| 8 | questions.  I can talk to one or two of you, but since you're |
| 9 | here.  I'm going to give a blank copy of the questionnaire to |
| 10 | Noreen, because it will much assist her and her colleague. |
| 11 | Hearing no objection. |
| 12 | May I ask, I intend to ask the hardship question |
| 13 | first.  Can we reach an agreement?  Once we have satisfactory |
| 14 | responses to the hardship situation, can I turn to each of you |
| 15 | and say just simply, any further questioning required?  And |
| 16 | you can both say none. |
| 17 | How do you want to handle that, I guess is what I'm |
| 18 | trying to say?  Do you want me to say "stipulate to hardship"? |
| 19 | Who just entered the room? |
| 20 | MR. KLEIN:  Court employees, Judge. |
| 21 | THE COURT:  Okay. |
| 22 | MR. RIVETTI:  We believe it is appropriate if we |
| 23 | think there is an obvious hardship to address that first |
| 24 | rather than go through all the other questions that might be |
| 25 | needed. |

1               THE COURT:  Once those questions are done, I can ask
2   both sets of counsel stipulation to hardship?  That's a fair
3   way to say it right in front of the juror?
4               MS. SONG:  Right.  I think there could be an occasion
5   where there might be a follow-up on the hardship.
6               THE COURT:  Understood.
7               MS. SONG:  We agree with the sequence.
8               THE COURT:  I permit any questioning that was sought.
9   Okay.  So motions for strikes for cause and argument
10  respecting those motions, my understanding was that counsel
11  wanted to do those after each juror.  That would require
12  clearing the courtroom unless we're going to do it publicly.
13              We're only talking about six or seven in the morning,
14  seven or eight in the afternoon.  I would rather do them all
15  at once rather than clearing the courtroom and then clearing
16  the courtroom.
17              MR. RIVETTI:  We don't need to clear the courtroom.
18  It can be done publicly.
19              THE COURT:  Any objection to open argument and
20  rulings on the strikes for cause?
21              MR. RIVETTI:  Unless there is something private
22  that's addressed.
23         (Defense counsel confer.)
24              MR. RUBENSTEIN:  Your Honor, we agree with that,
25  doing it at the end of the morning session and the afternoon

1     session.  At least try for today.
2             THE COURT:  The government's point was that they
3     didn't think we needed to do it in closed session at all, that
4     we could have an open session motion to strike for cause and a
5     ruling on it, and if that's the case, we can do it one juror
6     at a time.  Is there an objection to that procedure?
7             MS. SONG:  I thought we agreed we should do it
8     immediately following the juror's questioning while it's fresh
9     in everyone's mind.
10            THE COURT:  It would be easier because it would be
11    fresh in our minds.  If there is any concern about doing it in
12    closed session, I would rather do it at the end.
13            MR. RUBENSTEIN:  That's fine.
14            THE COURT:  Unless -- if someone has an objection to
15    doing it in open session, we'll hold it until the lunch break
16    or at the end of the day for that juror.  If there is no such
17    request, we'll do the argument, and to the extent I'm prepared
18    to rule then and there, I'll make the ruling on the motions to
19    strike for cause between each juror.
20            Do counsel have a preference or do they believe they
21    have a right to assert an order of questioning?  Once I'm done
22    with the initial set of questions, I'm expecting to permit at
23    least some questioning from both sides.  Do you care if I give
24    the government or defense the first shot?  Should I go back
25    and forth?  Do you care?

1           MS. SONG:  We think alternating is fair and we're
2    fine if the defense goes first.
3           MR. RUBENSTEIN:  That's great, Judge.
4           THE COURT:  We have a number of stipulated strikes we
5    discussed previously we're going to talk about this morning.
6    Can we wait until the end of the day when we have a little
7    more time?  I don't think it's that complicated just so we
8    know what we're doing, and we don't feel rushed about it.
9           We'll deal with those later, but before the end of
10   the day.  Any other issues preliminary matters?
11          MS. SONG:  I wanted to clarify, when I said we're
12   fine alternating and the defense goes first, as to each juror.
13   Then for the next juror, our thought was the government would
14   go first and the defense.
15          THE COURT:  That's fair.  I'll do everything in my
16   power to keep an accurate accounting of who is next.  Feel
17   free to kick me if I'm falling out of line in some way.
18          MS. SONG:  I will not kick you.
19          MR. RUBENSTEIN:  Thank you.
20          THE COURT:  Or nudge me.  Thank you all very much.
21      (Short pause taken.)
22          THE COURT:  I don't mean to interrupt but are we
23   good?
24          MS. SONG:  Ms. Clark wanted to move her chair in
25   front of the table and the government thinks it's best if the

1    parties are similarly situated behind the table.  We have
2    people on the side.  There is no reason defense counsel can't
3    do the same.
4               THE COURT:  We can certainly move -- Tyler, in fact
5    I'm not saying can we.  Let's move that device into our
6    hallway here.
7               MR. KLEIN:  Okay.
8               THE COURT:  That will give you some space there.  I
9    understand the tables may need to come around.  I don't want
10   the -- they're going to come around and stay on that end.  I
11   guess can you show me what you're suggesting by way of
12   configuration?  Right there is not okay.
13              MS. CLARKE:  Right there is not okay.
14              MS. SONG:  That's Noreen.
15              MS. CLARKE:  Is there not enough room to communicate
16   with counsel?  I was going to move over here on this side of
17   the table.  Not to get close to the jurors but to have access
18   to the lawyers who are likely doing the follow-up voir dire
19   today.
20              THE COURT:  I appreciate your point.  Can I just --
21   can you not just sit in the middle on this side of the table
22   and have a lawyers move around?  My point is just as the
23   government is just sort of curling around the outside end of
24   the table, can we keep it like that, as opposed to --
25              MS. CLARKE:  We'll try, Your Honor, and we'll get a

1  pipe to talk.
2          THE COURT:  Thank you.  That's another question.  We
3  may need more microphones.  I appreciate your accommodating
4  that request.  Anything else before I step back?  Can we let
5  the public in?
6          MS. HAHN:  For the government, Your Honor, I think
7  the answer is no.
8          THE COURT:  Thank you.
9     (Defense counsel confer.)
10         MS. CLARKE:  I think we'll have to clear out some of
11 our legal team.  We're just trying to figure out.
12         THE COURT:  I don't mean that to have to happen.  Do
13 we have more chairs we can bring in?
14         MR. KLEIN:  From the conference room, yes.
15         THE COURT:  Let's roll them down.  I don't know where
16 you want to put them.  Can we do that now rather than --
17         THE MARSHAL:  Can we put Bowers in the back so we can
18 handle this?
19         THE COURT:  You can do whatever you deem necessary
20 and appropriate.  I don't want anyone being discourteous, but
21 if it's convenient.
22         MR. OLSHAN:  Judge, one clarification.  For counsel
23 or representatives of the parties who are not immediately
24 involved with a particular juror's questioning, are we
25 permitted to sit in the gallery if we need to, so sort of

1    lighten up the load in front of the bar?
2            THE COURT:  Any objection -- the observer attendees
3    are basically going to be in that back row.  I think the
4    proposition is if members of either legal team, lawyers or
5    assistants or other paralegals, etcetera, are sitting sort of
6    in the front two rows off to the side, is that acceptable?
7    Hearing no objection --
8            MS. CLARKE:  I defer to the Court.  We defer to the
9    Court's decision.
10           THE COURT:  I'm okay with that.  I would just like to
11   keep everyone sort of away from the juror and not a
12   distraction to what we're doing.  If they can obviously sit
13   quietly in those front two far ends of the two front rows,
14   that's fine.  The other attendees and observers will be all
15   the way in the back.
16           MR. OLSHAN:  Your Honor, part of the reason I ask
17   that question is because, at certain times, there might be a
18   need for somebody to come and go.  So it might be easier, if
19   they're not involved with a particular juror, to sit off to
20   the side and can kind of go around the side and back.
21           THE COURT:  I'm okay with that.  Both sides, if
22   people need the restroom, feel free.  If they need to get up
23   for work reasons, they can do that.
24           MR. OLSHAN:  Thank you.
25           THE COURT:  Thank you.  Anything else?  Did we get

1    enough chairs yet?  How many more chairs do you need?
2            MS. CLARKE:  We're trying to count.
3            THE COURT:  As far as I'm concerned, we can go off
4    the record when we're talking about chairs.
5        (Counsel confer.)
6            THE COURT:  Forgive my interruption, but I am told we
7    have smaller chairs available.  We can't do it today.  We'll
8    talk about bringing up slightly smaller chairs.  Maybe it will
9    be more workable.
10           MR. RUBENSTEIN:  That sounds great.
11           MS. CLARKE:  Could I ask one more question?
12           THE COURT:  Sure.
13           MS. CLARKE:  Can we set somebody here?
14           THE COURT:  That's fine by me.
15           MS. CLARKE:  Any objection?
16           MS. SONG:  Making a second row, that's fine.
17           THE COURT:  Sure.
18           MS. CLARKE:  Thank you, Soo.
19           MS. SONG:  You're welcome, Judy.
20       (Counsel confer.)
21           THE COURT:  I'm sorry to interrupt.  Counsel, are we
22   ready to bring Mr. Bowers back so we can let the public in?
23   Once the public's in, we'll bring the jurors up?
24           MS. CLARKE:  Yes.
25           THE COURT:  Okay.  Thank you.

1        (Short pause taken.)
2                               -----
3        (PRIVATE SESSION FROM PAGE 2)
4        (At sidebar.)
5               THE COURT:  Apparently, Mr. Novara brought to
6    Tyler's attention that his understanding was that the com
7    system had a one-way video feed.  It is a two-way feed.  I can
8    see the other room.  I don't care.  I don't know if it's an
9    issue or how big an issue.  Is it something we can deal with
10   later?
11              MS. CLARKE:  Yes.
12              MS. SONG:  Yeah.  I think we can proceed.
13              THE COURT:  Thank you.
14                              -----
15   (PRIVATE SESSION FROM PAGE 14)
16              THE COURT:  Do we want to discuss now the issue of
17   the two-way camera.  Frankly, what is the concern, I suppose?
18   That we can see the other -- you're right.  Someone asked.  I
19   think I did answer.  Someone answered it was at a one-way
20   camera, but it obviously is not.
21              MS. CLARKE:  For the voir dire, I think --
22              MS. SONG:  I think we can proceed if it's easily
23   remediable, then we can take care of it.
24              THE COURT:  I began this discussion without our court
25   reporter.

1            THE COURT REPORTER:  I'm over here.

2            THE COURT:  You are getting it.  Thank you, Noreen.

3       (Counsel confer.)

4            MR. RUBENSTEIN:  We simply want to ensure that the

5    public access issue is preserved, and one of the alternative

6    feeds is going to a room where the -- feeds to one of the

7    rooms where the public -- where it's not publicly -- it's not

8    open to the public.  We just want to preserve that issue.

9            THE COURT:  I'm not sure I follow you.  You're just

10   saying you still maintain that having any overflow room

11   constitutes a closed proceeding to some degree?  Am I hearing

12   that; right?

13           MS. CLARKE:  Private overflow.

14           THE COURT:  Private overflow.  I understand that's a

15   position -- argument you've advanced.  You're not waiving it

16   certainly by bringing it to my attention.

17           MS. SONG:  I would just make a record that in fact

18   the number of spaces allotted to the public were not used by

19   the public, and so there are additional individuals associated

20   with the case that took those seats in the courtroom today.

21           THE COURT:  I've just decided to not wear my robe.

22   I'm wearing a suit jacket.  Are we ready to bring down No. 1?

23   Bring down the first juror, please.

24                              -----

25

```
 1      (PRIVATE SESSION FROM PAGE 71)
 2            THE COURT:  We have been turning off the camera and
 3      the sound feed when the jurors are coming in and out.  The
 4      suggestion has been made we not do that.  I'm fine with not
 5      doing that.
 6            The other issue is if Mr. Bowers needs a restroom
 7      break, are you okay with him walking to the restroom and back
 8      with the camera on?
 9            MS. CLARKE:  We probably shouldn't have it on.
10            THE COURT:  In that case, you'll need to request one
11      of the clerks to make sure that it's off.  We'll accommodate
12      that whenever a request is made.
13            MS. SONG:  Okay.
14            THE COURT:  So it's off now?
15            THE DEPUTY CLERK:  We're muted and off.
16            THE COURT:  Mr. Bowers can come in.  (Pause.)  I
17      didn't ask if there were motions for the last juror.
18            MS. CLARKE:  There will be.
19                              -----
20       (PRIVATE SESSION FROM PAGE 156)
21            THE COURT:  Let's go on the record very briefly.
22            You are going to explain your issue.  Do I need to
23      address this with counsel?
24            LAW CLERK LEWIS:  It's worth asking the question,
25      Judge, but I'm not sure --
```

1            THE COURT:  You can ask the question better than I
2    can.  Mr. Klein brought to my attention whether or not my
3    rulings on motions to strike should be publicly made or not
4    for this potential reason but I'm not sure it's an issue.
5            LAW CLERK LEWIS:  Somebody viewing the public
6    transcripts might be able to figure out their numbers.
7    Because they are identified by number, it's probably not an
8    issue but it's something I flagged.  Anyone would be able to
9    figure out each of the numbers who were struck and who was
10   not, and they'll get the final whatever the number is.
11           THE COURT:  They would be able to figure out the
12   numbers of the final jurors.
13           LAW CLERK LEWIS:  Maybe if they were keeping close
14   track, they could figure it out.
15           THE COURT:  Here's my question:  Do you want me to
16   make rulings on the record or off the record?  I don't have
17   any personal preference other than I'd like to create as few
18   waves as possible across the board.
19           MR. RUBENSTEIN:  On the record, Your Honor.
20           MS. SONG:  On the record.  Public record.
21           MR. OLSHAN:  Public record.
22           THE COURT:  We'll do that.  I'm going to let you all
23   talk about when we are going to reconvene.  I'm voting for as
24   soon as you can do it without collapsing the afternoon
25   session, but we do have jurors waiting who are expecting to

1    begin at 1:00.
2              MR. OLSHAN:  Judge, may I ask a question?  I think
3    the Court mentioned you were going to hold off on ruling on
4    the cause challenges until we had this conversation.  Is the
5    Court prepared to rule?
6              THE COURT:  Can I wait until right before we begin
7    the afternoon session?
8              MR. OLSHAN:  That is what I asked for.
9                                -----
10      (PRIVATE SESSION FROM PAGE 270)
11             THE COURT:  We're still on the record, but there is
12   no public or media watching anymore.  The only people here are
13   the lawyers in this case and the staff.  At this point I am
14   going to hand it off to counsel to make whatever relevant
15   inquiry is pertinent.
16             MR. RUBENSTEIN:  Ma'am, you're not in trouble at all.
17   Nothing to be concerned about.  Just there is some paperwork
18   where every juror who came in, they're running a history.  It
19   looked like -- I don't understand these things very well, but
20   it looked like there might be a receiving stolen property from
21   1994.  30 years ago.
22             PROSPECTIVE JUROR:  Yeah.
23             MR. RUBENSTEIN:  I guess the question is, is that
24   you?  And can you explain?  Is it something you forgot about?
25   Can you describe the circumstances?

1           PROSPECTIVE JUROR:  It was real old.  I think it was
2    about -- I was kind of young back then.  It was a license
3    plate, I believe.  A friend of mine, her sister had like gave
4    me a license plate back then to drive and I think I put it on
5    my car, but it was so old.  I was so young.  I honestly did
6    forget about it.  It ended up being not guilty, I think.
7    Nothing really happened with it.
8           MR. RUBENSTEIN:  The question the parties and the
9    Court would have would be is that something you intentionally
10   kept secret or is it something you simply forgot about?
11          PROSPECTIVE JUROR:  I really forgot.  Because it
12   really wasn't nothing.  It wasn't a big deal.  I honestly did
13   forget.  It was almost 20-some years ago.  I forgot about it.
14          MR. RUBENSTEIN:  Got it.  I don't know if the
15   government --
16          MR. RIVETTI:  No follow-up questions, Judge.
17          THE COURT:  Very good.  Can we reopen the courtroom?
18          MR. RIVETTI:  Yes.
19          THE COURT:  Would you be kind enough just to let the
20   folks in the hallway know.  Thank you very much.  We can open
21   up the video.  I take it people in the over flow courtrooms
22   are reconnected.  We're going to give members of the public in
23   this courtroom a minute to return.
24          (Whereupon, the above-captioned matter was
25   concluded.)

16

                          -----

              C E R T I F I C A T E

          I, NOREEN A. RE, RMR, CRR, certify that the
foregoing is a correct transcript from the record of
proceedings in the above-entitled case.


s\ Noreen A. Re                    April 24, 2023
NOREEN A. RE, RMR, CRR             Date of Certification
Official Court Reporter