IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

**UNITED STATES' NOTICE OF REGARDING THE COURT'S REQUEST FOR ADDITIONAL AUTHORITY**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney and Aaron J. Stewart, Trial Attorneys, Capital Case Section, and respectfully submits the following in response to the Court's request for additional authority regarding the defendant's Motion to Clarify Order, Doc. No. 1214.

The Court should first recognize that whatever privilege the defendant is asserting, be it the Fifth Amendment privilege, a work-product privilege, the attorney-client privilege, or the psychotherapist-patient privilege, such privilege or privileges are not absolute. Those privileges can be waived.

In United States v. Nobles, the Supreme Court discussed this concept of waiver in relation to the attorney work product privilege. 422 U.S. 225, 239-240 (1975). In Nobles, the Court explained

> The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived. Here respondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product

> doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

Id.

The Court's comparison of the work product privilege to the Fifth Amendment privilege is especially apt here. The Court has already determined that the defendant may be questioned about the crimes at issue, which certainly implicates the defendant's Fifth Amendment rights. But the Court recognized, as have other courts, that the procedures of Rule 12.2 adequately protect the defendant's constitutional rights by ensuring that the disclosure of information otherwise privileged by the Fifth Amendment is not produced to the prosecution until the defendant has waived such privileges. If Rule 12.2 adequately protects the defendant's Fifth Amendment rights, it follows that those same procedures will adequately protect other privileges, particularly non-constitutional evidentiary privileges like the attorney-client privilege or the psychotherapist-patient privilege. The cases below support that conclusion.

The defendant has asserted that communications with his mental health experts are covered by attorney-client privilege. The defendant relies on United States v. Alvarez, 519 F.2d 1036 (3d Cir. 1975). In Alvarez, the defendant's counsel retained a mental health expert who examined the defendant. Id. at 1045. The expert found that the defendant "did know the nature and quality of his act, did know that he was doing what was wrong and did not lack substantial capacity to conform his conduct to the requirements of the law which he is alleged to have violated." Id. The government sought the expert's report through subpoena, but the defense sought to quash on the basis of attorney-client privilege, as well as the Fifth and Sixth Amendments. Id.

The Third Circuit began by recognizing that defense counsel should be free to consult with experts, and that for effective representation and consultation, the defendant should be able to talk

freely to such experts.  Id. at 1046.  However, the Circuit recognized that the privilege "obviously ends" if "the expert is later used as a witness on behalf of the defendant."  Id.  The Court concluded that because the expert was not called at trial by the defense, the government was not entitled to his report, as it was covered by attorney-client privilege.  Id. at 1047.  Importantly, the Court stated "disclosures made to the attorney's expert should be equally unavailable, at least until he is placed on the witness stand."  Id.

Alvarez did not involve Rule 12.2 or its procedural safeguards, and it is not applicable to this case.  Indeed, Alvarez predated the promulgation of Rule 12.2, further limiting its utility.  This Court has permitted government experts to conduct examinations that are "necessary and probative to rebut or confirm Defense experts' anticipated mental health testimony."  Doc. No. 1202 at 1.  These experts are walled off from the prosecution team unless and until the defendant is convicted of a capital offense and reasserts his intent to place his mental health at issue.  This is a far cry from the situation in Alvarez, where the government affirmatively subpoenaed a defense expert to testify on behalf of the government.  The government has not subpoenaed any defense expert in this case and, indeed, pursuant to Rule 12.2(c)(3) will not even obtain the defense experts' results and reports until after the guilt phase.  Alvarez therefore does not stand for the proposition that the government's walled-off mental health experts are prohibited from inquiring about the defendant's communications with defense experts so long as such lines of inquiry are "necessary and probative."

Other cases have taken an even more expansive view of the waiver issue.  In United States ex rel. Edney v. Smith, 425 F. Supp. 1038 (E.D.N.Y. 1976), a state habeas petitioner argued that his attorney-client privilege was violated in his trial when the government was allowed to present one of his two retained experts as a government witness.  Id. at 1039.  The defendant had been

3

examined by two defense-retained experts and chose to present one of those experts to support his insanity defense. Id. The government presented the other expert to counter that defense. Id.

The court recognized that the attorney-client privilege can extend to communications with mental health experts, but also acknowledged that the privilege can be waived. Id. at 1049. The court discussed cases in which the defendant waived the privilege by putting an expert on the stand. Id. But the court then acknowledged that in the case at bar, the defense did not present that expert—the government did.

The court noted that the waiver of the privilege under the facts of the case depended "at least in part, on considerations of fairness and the salutary concept that the trier of fact should have adequate access to as much of the available psychiatric testimony as possible where the defendant's mental state is in issue." Id. The court discussed both 18 U.S.C. § 4244 and Rule 12.2 and explored the way in which a defendant waives their privilege against self-incrimination when asserting mental health issues. Id. at 1050-52. The court then compared the waiver of the privilege against self-incrimination with the waiver of the attorney-client privilege, stating:

> In essence, defendant insists that he should have been permitted to produce psychiatric evidence to the effect that he was not responsible for his criminal acts by reason of mental disease or defect, while at the same time he precludes the State from offering an expert witness, who had formulated a contrary opinion, simply because the latter had examined defendant at the behest of a former defense counsel as opposed to being court-appointed or retained by the prosecution. Thus, defendant suggests that he be permitted to suppress any unfavorable psychiatric witness whom he had retained in the first instance, under the guise of attorney-client privilege, while he endeavors to shop around for a "friendly" expert, and takes unfriendly experts off the market."

Id. at 1052. The court ultimately rejected the defendant's petition. Id. at 1055.

In another case, United States v. Sturman, No. Crim. 96-318 (BSJ), 1998 WL 126066 at *1 (S.D.N.Y. Mar. 20, 1998), a defendant gave notice under Rule 12.2(b) that he would present evidence regarding his ability to form the specific intent his charged crime required. Id. at *1. The

4

government attempted to subpoena four doctors that had treated the defendant, including two that were retained by the defense. Id. at *3. The court recognized that the subpoenas implicated the psychotherapist-patient privilege, and possibly the attorney-client privilege in relation to the retained experts. Id. at *3 & n.5. The court acknowledged that a defendant waives his psychotherapist-patient privilege "by raising his mental condition as an element of his claim or defense." Id. However, the court quashed the subpoenas, because the defendant was not raising his mental health status as an affirmative defense or claim, but rather was raising it to negate a specific element of the crime that the government was required to prove. Id. at 4.

These cases show clearly that where a defendant places his mental health status at issue as an affirmative claim, he has waived any privilege as it relates to those issues. Here, the defendant has given notice that he will affirmatively present evidence in mitigation as to his mental health status. He has listed his experts in a witness list and has explained their potential testimony in his supplemental Rule 12.2 notice. There is no colorable argument that he can now shield his mental health evidence behind attorney-client privilege in the context of mental health examinations permitted by law that are occurring outside the purview of the prosecution.

At bottom, Rule 12.2—the basis for the Court's ruling—provides sufficient protection to ameliorate the defendant's newly raised privilege concerns. Rule 12.2's capital case procedures implicitly recognize potential privilege by requiring the government expert's reports to be filed with the Court under seal and not provided to the government at all unless the defense expressly confirms its intention to present mental health evidence in the penalty phase. And, even then, if the defense changes its position and does not present such evidence, the government cannot then introduce its own experts as there would be nothing to rebut. Nor does the government even receive the mental health reports. In that situation, the government itself will never have access to

the privileged information, and it will never be used at trial. See United States v. White, 970 F.2d 328, 336 (7th Cir. 1992) ("The attorney-client privilege is a testimonial privilege. Consequently, so long as no evidence stemming from the breach of the privilege is introduced at trial, no prejudice results."). Moreover, as the Court acknowledged, Doc. No. 1200 at 11-12, it performs a gate-keeping function and will be in a position to decide what rebuttal evidence the government will be permitted to offer in response to whatever mental health evidence the defendant advances within the scope of his renewed notice under Rule 12.2.

To accept the defendant's argument would undermine the very purpose of Rule 12.2, which is to ensure fairness when dealing with mental health examinations. If the Court prevents the government's expert from posing questions that would plainly be within the scope of a valid mental health examination simply because they might implicate what the defendant claims is attorney-client information, the government experts will be foreclosed from entire categories of questioning merely because the defendant "might" withdraw his Rule 12.2 notice. If, however, the defendant opts not to withdraw the notice, the die will have been cast—the government's experts will have been effectively blocked in their examinations with no recourse.

This situation is why Rule 12.2 exists. It provides the protection for the defendant—and all his attendant rights and privileges—by walling off government counsel from any information that a mental health examination might uncover. But it still provides a means for the government experts to conduct a full and thorough search for the truth, so that the trier of fact is presented the full picture of the defendant's mental health status.

        Respectfully submitted,

        TROY RIVETTI
        ACTING UNITED STATES ATTORNEY

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
BARRY K. DISNEY
Trial Attorney
Capital Case Section
KS ID No. 13284

s/Aaron J. Stewart
AARON J. STEWART
Trial Attorney
Capital Case Section
OK ID No. 31721