IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 18-292-RJC |
| vs. | ) |
| | ) Judge Robert J. Colville |
| ROBERT BOWERS | ) |
| | ) |

**MEMORANDUM ORDER**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Clarify Order and Compel Reciprocal Discovery ("Motion for Clarification") (ECF No. 1214) filed by Defendant Robert Bowers. By way of the Motion for Clarification, Defendant seeks clarification regarding the Court's recent Order (ECF No. 1202) authorizing the Government's expert witnesses to examine the Defendant pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B), and more specifically requests the following:

> The defense requests that the Court (i) clarify the scope of the evaluation, as set forth [in the Motion for Clarification], and in particular by preventing the Government evaluators from interrogating Mr. Bowers about or discussing with Mr. Bowers his relationship with his legal team, including his work with defense experts. This includes but is not limited to what he has said to them, what they have said to him, what he thinks of them, and what they are claiming about him or intending to do; (ii) permit Mr. Bowers['s] lawyers to be reasonably available to him on site during the evaluations; (iii) compel immediate production of statements made by Mr. Bowers during the evaluations; (iv) compel the production of reciprocal discovery; and (v) include a requirement that the Government provide a proffer of the aggravating evidence it intends to introduce during the eligibility and selection phases at the conclusion of the guilt phase of this case.

ECF No. 1214 at 8. The Government filed a Response (ECF No. 1224) in opposition to the Motion for Clarification on May 15, 2023. Defendant filed a Reply (ECF No. 1228) on May 15, 2023. Following inquiry from the Court, each party filed a supplemental brief (ECF Nos. 1230 and 1231)

1

on May 16, 2023. Given the time-sensitive nature of the Motion for Clarification, the Court considers the Motion for Clarification to be fully briefed and ripe for disposition.

With respect to Defendant's request that the Court clarify the scope of the examinations at issue, Defendant correctly notes that the Court previously provided in its Memorandum Opinion on this issue:

> Turning to the substance of the examination that the Government will be permitted to perform, the Court will follow the lead of those courts that have not limited experts prior to examination, and the Court will defer addressing the issue of the scope of the examination until ruling on the admissibility of any evidence gained from the examination.

ECF No. 1200 at 11. The Court also noted: "[a]s to offense-specific questioning during examination, Defendant does not set forth any substantive opposition to the same," *id.* at 14, and ultimately ordered as follows with respect to this issue:

> The Government's experts may question Defendant about the charged crimes and his conduct before and after committing the crimes, and any other matter as is necessary and probative to rebut or confirm the anticipated Defense expert mental health testimony.

ECF No. 1202 at ¶ 5.

The Defense acknowledges the Court's deferral of the issue of the scope of the Government's experts' examinations until the Court rules on the admissibility of any evidence gained from the examinations, but requests that the Court clarify the breadth of questioning about "conduct before and after committing the crimes" permissible under the Court's Order. ECF No. 1214 at 2. The Defense asserts:

> For example, counsel would like to inform Mr. Bowers of whether he may be questioned about events or conduct subsequent to his arrest; whether he may be asked about his communications with his legal team, including the defense experts, or the contents of his Rule 12.2 supplemental notice; whether interrogation about his communications with family members after his arrest is permitted; and whether the Government's experts are allowed to probe for evidence that solely constitutes additional aggravating evidence.

*Id.* at 2-3.  The Defense candidly acknowledge that their primary concern lies with Defendant's interactions and "relationship with his legal team, including his work with the defense experts[,] . . . [including] what Mr. Bowers has said to them, what they have said to him, what he thinks of them, what they are claiming about him or intending to do, etc." *Id.* at 3 n.1.  By way of argument, the Defense provides:

> It is hard to imagine why any mental health rebuttal expert would need to interrogate a defendant about his communications or relationship with his counsel in order to confirm or rebut a mental health diagnosis.  And unlike any Fifth Amendment concerns, the damage done by compelled disclosure of attorney-client communications or by subtle or not so subtle interference with the attorney-client relationship cannot be undone or addressed at a later time.

*Id*.

Initially, other than argument respecting interactions with his legal team, the Defense provides no substantive argument as to why the Court should prohibit questioning regarding events or conduct subsequent to Defendant's arrest, questions about his communications with family members after his arrest, and questions seeking to probe for evidence that solely constitutes additional aggravating evidence.  With respect to events or conduct subsequent to Defendant's arrest and his communications with family members after his arrest, questioning related to the same is clearly permissible under the plain language of the Court's Order at ECF No. 1202, and the Court perceives, and Defendant provides, no basis for concern as to why such questioning would be inappropriate and/or why any information obtained from such questioning cannot be adequately addressed when the Court considers the admissibility of evidence gained from the examinations.  Further, the Court's Order limits the Government to examining the Defendant as necessary and probative to *rebut or confirm* the Defense experts' anticipated mental health testimony. Questioning intended to elicit evidence that *solely* constitutes additional aggravating

3

evidence would seemingly go beyond the scope of the Court's Order, and would be improper, but, in any event, that issue can effectively be addressed when the Court considers the admissibility of the evidence obtained from the examination.

Turning to the heart of the issue, the Court acknowledges the argument that, theoretically, questions posed to, and information provided to, a defendant by a Government examiner respecting the defendant's interactions with his defense team could pose some possible risk of interference with the attorney-client relationship, depending, of course, upon what was said to that defendant. While acknowledging this argument generally, the Court notes that the Government and its experienced lead expert are presumably very cognizant of the importance of the attorney-client relationship, and the Court is confident that an order requiring the Government's experts to refrain from engaging in questioning that could rise to the level of impermissibly violating or interfering with that relationship is unnecessary. Nonetheless, in an abundance of caution, such an order hereby issues.

The Court will not, however, engage in conjecture or guesswork in determining every line of questioning that may or may not be permissible during the course of the examinations at issue. The Court appreciates that the Government has represented in open court that no questions respecting Defendant's private communications with counsel will be asked of the Defendant during examination. The Court cautions the Government's experts to be mindful in pursuing questions regarding Defendant's communications with Defense experts that may implicate the attorney-client privilege in this case. The Court notes Defendant's concern regarding the consequences that could result from impermissible compelled disclosure of attorney-client communications or from impermissible interference with the attorney-client relationship, and in

particular the possible exclusion of evidence.[1]  The Court's prior Order limits the Government to examining the Defendant as necessary and probative to rebut or confirm the Defense experts' anticipated mental health testimony.  The Court anticipates that the examinations at issue will be so limited.

The Defense next requests that the Court order that counsel be permitted to be on the premises at the location of the examinations while the examinations are being conducted so as to be available in the event that Defendant asks for the opportunity to consult with his counsel at any point.  ECF No. 1214 at 3.  In its Memorandum Opinion at ECF No. 1200, the Court cited to case law for the proposition that there is no requirement that counsel be permitted to be present during a mental health examination initiated because a defendant had given notice of an intent to introduce mental health evidence, and that such presence poses a risk of interfering with an examination.  *See United States v. Wilson*, 920 F. Supp. 2d 287, 304-06 (E.D.N.Y. 2012) (holding that neither the Fifth Amendment nor the Sixth Amendment require the presence of counsel during a mental examination conducted to rebut a psychiatric defense the defendant has initiated, and further rejecting defense requests that the examination be videotaped and that the defense be provided the

---

[1] The Court makes no final determination on the waiver issue presented in the Government's Brief submitted on May 16, 2023.  The Court does acknowledge the Government's argument that the firewall between the Government and its experts, which will only be lifted if and when the Defendant expressly confirms his intention to present mental health evidence, i.e. potential expert testimony, in the penalty phases of this trial, adequately addresses Defendant's concerns regarding potentially privileged statements made to a Defense expert during the course of testing and examinations performed by said experts.  The Government's experts' examination is limited to examining the Defendant as necessary and probative to rebut or confirm the Defense experts' *anticipated mental health testimony*.  The Defense itself acknowledges: "Unless and until the defense calls a particular mental state defense witness to the stand, however, Mr. Bowers' communications with counsel and defense-retained experts are privileged." ECF No. 1230 at 3.  While again not making a final ruling on the issue, there is logic to the argument that the firewall, the notice requirement, and the rebuttal nature of the evidence acquired by the Government will ensure that only communications involving a waiver of privilege, and opinions based on those communications, are presented to the jury.  As noted by the Government, "the procedures of Rule 12.2 adequately protect the defendant's constitutional rights by ensuring that the disclosure of information otherwise privileged by the Fifth Amendment is not produced to the prosecution until the defendant has waived such privileges." ECF No. 1231 at 2.  The Government's argument that Rule 12.2 similarly safeguards privileged attorney-client communications is persuasive.  The Court notes that this is not to mention the Court's authority to restrict the admission of any evidence that is tainted in any way by impermissible questioning, as the Court noted above.

ability to watch the examination in a nearby venue via a simultaneous video and audio feed); *see also id.* at 305-06 ("Defense counsel proposes to alleviate these problems by 'sitt[ing] out of Wilson's sight and remain[ing] silent except when imposing an objection.' But that option—which presumably would have been available in each of the cases cited above—still leaves us with the problem that the defense might pose objections, and that those objections (1) would interfere with the examinations, (2) would likely be meritless given the court's conclusions about Wilson's Fifth Amendment rights, and (3) could be made just as effectively after the examinations are over, in the event that the Government seeks to introduce evidence from the examinations that the defense believes would violate Wilson's constitutional rights." (citations omitted)); *United States v. Sampson*, 335 F. Supp. 2d 166, 247 (explaining that "a substantial majority of state and federal jurisdictions have held that a defendant does not have the right to counsel during a psychiatric examination" and holding that "[i]n the circumstances of this case, the tape-recording of the examinations was a reasonable exercise of the court's discretion."); *United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005) (counsel's presence during examination not permitted).

The Court will, however, permit Defense counsel to be present on the premises to consult with their client *during breaks*. *See Hess v. Macaskill*, 67 F.3d 307 (9th Cir. 1995) ("Thus, Hess' counsel had notice of the examinations, was able to consult with Hess concerning the nature and scope of the examinations, was present in the waiting room during the examinations and was able to consult with Hess during breaks. This was constitutionally sufficient."). The Court anticipates, given the protections set in place by this Memorandum Order and the Court's prior Memorandum Opinion and Order, that the Defendant and Defense counsel will be reasonable in both their requests for breaks and the length of consultation during breaks. Any attempt to cease an examination due to perceived inadequacies or overreaching will not be viewed favorably by the

Court, and, more importantly, risks both a delay to the start of trial and a finding of a failure to submit to an examination ordered by the Court pursuant to Rule 12.2(c). *See* Fed. R. Crim. P. 12.2(d) ("(d) Failure to Comply. (1) Failure . . . to Submit to Examination. The court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt or the issue of punishment in a capital case if the defendant fails to . . . (B) submit to an examination when ordered under Rule 12.2(c)."); *see also Sampson*, 335 F. Supp. 2d at 246 ("In addition, a defendant, with or without his lawyer's advice, might refuse to participate in certain tests or to answer certain questions. Such conduct would subject him to the risk of forfeiting his right to present evidence of his mental health.").

      Defendant next requests that the Court order immediate disclosure to Defense counsel of all statements made by Defendant during the Government-sponsored examinations, "whether in the form of contemporaneous notes or a compiled document." ECF No. 1214 at 5. The cases cited by Defendant in support of this particular request did not involve a request for a defendant to be provided with the contemporaneous notes of the Government's expert,[2] as each such case involved the video or audio recording of a defendant's examination, and such recordings being provided to defense counsel. *See United States v. Johnson*, 362 F. Supp. 2d 1043, 1091 (N.D. Iowa 2005), *aff'd in part*, 495 F.3d 951 (8th Cir. 2007) ("Furthermore, all testing or interviews conducted by the government's mental health experts pursuant to Rule 12.2(c)(1)(B) shall be audiotaped in their entirety and those tapes shall be provided to defense counsel by same-day or next-day delivery upon the conclusion of each testing or interview session. The recordings shall not be disclosed to the prosecutors in this case until and unless disclosures pursuant to Rule 12.2(c)(2) become

---

[2] And Defendant does not explain what he means by a "compiled document."

appropriate, as explained below.") At the Defendant's repeated request, the Court has prohibited recording of the Government's examinations unless Defendant consents to such recording. Accordingly, Defense counsel have available to them, at least at this juncture, a manner by which they may request Defendant's statements be accurately preserved, and have simply elected to not pursue the same.[3] In any event, Defendant provides the Court with no authority supporting his request to be provided with the notes of a mental health expert regarding Defendant's statements made during mental health examinations.[4]

Defendant also seeks "reciprocal discovery" of all records provided to the Government examiners ahead of examination, the raw data resulting from the upcoming Government testing and examinations, and a proffer of the evidence the Government intends to offer on the aggravating factors it will seek to prove at sentencing. With respect to "raw data," the Court's Order at ECF No. 1202 provided, consistent with the Government's proposal, that the Government's experts agree to make their raw results available to the Defense. The Order further provided:

> If Defendant is acquitted, the rebuttal expert reports may be destroyed upon order of the Court. If Defendant is convicted of a capital crime, the envelopes labeled "For Defense" will immediately be provided to Defendant. Defendant will have 24 hours to confirm or withdraw his intent to offer mental health evidence. If Defendant withdraws the intent, the reports may be destroyed upon order of the Court and never provided to the Government. If Defendant confirms the intent, pursuant to Rule 12.2(c)(2), the envelopes labeled "For Government" will be provided to the Government within thirty-six hours after the return of a guilty verdict, should one be entered, and Defense counsel shall provide the Government with their own expert reports, pursuant to Rule 12.2(c)(3), within forty-eight hours after the return of a guilty verdict, should one be entered.

ECF No. 1202 at ¶ 12.

---

[3] The parties may interpret this Memorandum Order as allowing the parties, at any point prior to the commencement of the examinations at issue, to agree to appropriate audio and/or video recording of the examinations.

[4] The same would require, or at least intimate the expectation, that the expert would write down every word uttered by Defendant, a patently unreasonable request.

The Court agrees with the Government that the information requested by the Defense's Motion is not "reciprocal" discovery.  Rather, the Defense seeks the impermissibly premature release of the results of the Court-ordered testing of Defendant to attorneys for the Defendant.  The Government correctly notes that, in the context of the Rule 12.2 examination of Defendant, the raw data and records that have been produced by the Defense to date have been provided to the *Government's experts*, and not attorneys for the Government.  Rule 12.2 explicitly provides that the results and reports of the Government's examination pursuant to Rule 12.2(c)(1) must be sealed and must not be disclosed to any attorney for the government *or the defendant* unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition. Fed. R. Crim. P. 12.2(c)(2).  By way of the Motion for Clarification, Defendant seeks production of the "raw data *resulting* from the upcoming Government testing and examinations," ECF No. 1214 at 5 (emphasis added), to "defense counsel within 48 hours of the completion of [Government's experts'] testing," *id.* at 7. Rule 12.2 applies to attorneys for the Government and attorneys for the Defense, and the relief requested by Defendant is directly contrary to Rule 12.2.  Defense counsel will be provided the Government experts' "raw data, storage media, or documentation" only if, and *after*, Defendant is convicted of a death-eligible offense, consistent with Rule 12.2.

In support of his request for medical records that were or will be provided to the Government's experts, Defendant again relies on a request for "reciprocal" discovery, providing:

> Given that Mr. Bowers has been required to disclose to the Government's designated expert "all the medical and mental health records of the Defendant that were provided to Defendant's mental health experts," ECF No. 1202 at ¶ 9, due process requires that the Government be directed to provide reciprocal discovery of all such materials that it has provided to its own experts.

ECF No. 1214 at 6. Again, the Government's experts are firewalled at this juncture, and an order requiring disclosure of such records to Defense counsel within forty-eight hours of an examination would not constitute "reciprocal" discovery. Should Defendant be convicted of a death-eligible offense, the Court will require that all medical and mental health records of the Defendant that were provided to the Government's mental health experts be provided to Defense counsel along with the envelopes labeled "For Defense," consistent with the timeline set forth in the Court's prior Order at ¶ 12.

The Defense further requests that the Court order the Government to provide a proffer of the aggravating evidence that the Government intends to introduce during the Eligibility and Sentence Selection Phases of this trial at the conclusion of the Guilt Phase. Defendant cites to *United States v. Edelin* in support of this request, wherein the United States District Court for the District of Columbia provided:

> In order to [e]nsure that discovery related to the sentencing phase of the trial is not unbalanced, the Court finds that the Government shall provide a proffer of the evidence it intends to offer on the aggravating factors it will seek to prove at sentencing. The proffer shall be provided to the defendant when the jury begins deliberations regarding the guilt or innocence of the defendants. The information included in the Government's proffer will allow the defense to carefully weigh the desirability of presenting mental health information during sentencing.

*United States v. Edelin*, 134 F. Supp. 2d 45, 54–55 (D.D.C. 2001) (footnote omitted).

In this Court's estimation, this request is unrelated to the other requests made by way of the Motion for Clarification. The Court perceives no basis, and Defendant fails to articulate a basis, as to why this issue must be resolved before the Court-ordered examination of Defendant takes place, particularly where, even if the Court were to grant the relief requested, the Defense will not have the benefit of a review of such information until the conclusion of the Guilt Phase.

Accordingly, this request is denied without prejudice to Defendant seeking such relief by way of a separate, non-emergency, motion.

Finally, the Court notes that Defense counsel have requested, on the record, that the Court allow for a period of time (by the Court's recollection, "a couple of days") between the completion of voir dire and the commencement of the Government's experts' examinations. The Government objected to that request, noting that its experts have already provided notice of their identities, CVs, and anticipated testing, and that the Government has provided notice of the date, time, and length of the examinations, to Defendant consistent with this Court's Order at ECF No. 1202, and that no delay is warranted. The Court previously ordered that the Government's experts' examination would take place, at the latest, directly following the completion of voir dire or five days after the Government's experts' provision of notice, *whichever date is later*. At this juncture, it is certain that the completion of voir dire will be the later date, and the Court hereby holds that the Government's experts' examinations will not commence prior to that time. The Court finds Defendant's request for additional time between voir dire and the commencement of the examinations to be reasonable, and hereby provides that no examination shall take place until two full days following the completion of voir dire, but that such examinations shall, in the absence of truly good cause or an agreement between the parties, commence on the beginning of the third day after the completion of voir dire, even if that day falls on a weekend.

For the reasons discussed above, the Court hereby grants in part and denies in part Defendant's Motion for Clarification, consistent with the holdings set forth above.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: May 16, 2023
cc: All counsel of record