IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                        ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS              ) | |

**BRIEF IN SUPPORT OF REQUEST FOR FURTHER INQUIRY
REGARDING JURORS 132 AND 189**

Robert Bowers, through counsel, submits this brief in support of his motion for further inquiry regarding Jurors 132 and 189.

**Juror 132**

In his questionnaire, Juror 132 indicated in Question 89 that his work responsibilities required him to travel weekly to Virginia and Delaware and that he "would need to discuss with [his] employer" his potential jury service. During voir dire on May 9, 2023, when the Court asked whether Juror 132 had spoken with his employer, he responded:

> Yeah, I did talk to them a little bit. It would be very difficult to step away from my job right now to sit for two months on a jury. I travel every week down to Virginia. I've been doing that for a year and a half. I'm a senior project manager for a construction general contractor. We build bridges, so it's just important for me to be on the project.

Tr. May 9, 2023, at 16. Although not raised by Juror 132 in his questionnaire or during voir dire, the Court asked whether he would be paid for his service. When the juror responded that he did not know his company policy, the Court asked him to follow up:

> I will ask you now, if you determine that you will not be paid, I would ask you to call the jury office forthwith and provide them whatever information you can, documentation of that fact if possible, but that information is relevant to the request for excusal.

1

*Id.* at 17.

Later that same day, Juror 132 sent an email to the Clerk of Court asking that he be excused based upon his work responsibilities and his company's ties to the Jewish community in Squirrel Hill, where the Tree of Life is located:

> I attended court today as a potential juror for the Tree of Life case. I was questioned regarding my current job and if I would be able to be a juror. Currently, I am traveling to Ashburn, Virginia to manage a new bridge project. Due to this required travel it will be very difficult for me to serve for 2 or more months on a jury. The judge suggested I write letter and request I not be required to serve as a juror for this case.
>
> Additionally, as I spoke with my employer today I was informed that our parent company, [name redacted], based in Israel, is our owner and there are several employees who are from Squirrel Hill and live and attend synagogue in the community.
>
> Therefore, I respectfully request that I not be required to serve as juror due to the hardship that it will cause me and members of the company.

Exhibit A at 2. He attached to the email a letter from his employer providing much of the same information as above and requesting that Juror 132 be excused based upon his work responsibilities and the company's ties to Israel and the Jewish community in Squirrel Hill. Exhibit A at 3.

On May 16, 2023, the parties agreed that Juror 132 had not established a hardship warranting excusal. However, the defense asked that the Court either bring the juror back to Court for questioning regarding his company's ties to Israel and the Jewish community in Squirrel Hill, or, in the alternative, direct the Clerk of Court to submit questions regarding this issue. Tr. May 16, 2023, at 113. The Court declined. *Id.* The Court suggested that there was a "fair opportunity" for these matters to be discussed. *Id.* But the assertions made by

Juror 132 and his employer in the email received following voir dire were not matters brought to the parties' attention before voir dire. The parties did not have a fair opportunity to address during voir dire the new issues raised by Juror 132.

For this reason, consistent with questions this Court asked similarly situated jurors—those jurors with connections to the Tree of Life Synagogue, the Squirrel Hill community, or the victim community—the defense asks the Court to direct the Clerk of Court to submit the following questions to Juror 132:

> You indicated in your email and the attachment of May 9, 2023, that you spoke with your employer and were informed that your parent company is based in Israel and that "several of the employees are from Squirrel Hill and live and attend synagogue in the community."
>
> a. Was the conversation with your employer with only one person, or more than one? If more than one person, how many?
>
> b. What did your employer say to you in this conversation about the case or Robert Bowers? Were any opinions expressed? If so, what were those?
>
> c. Do you know any of the employees who are from, live, or attend synagogue in Squirrel Hill? If so, please state any professional or personal relationship you have with them.
>
> d. Are any of the synagogues they attend involved in this case? If so, which ones?

  e. As far as you know, has your parent company in Israel taken part in any activities as a result of the October 27, 2018 shooting at the Tree of Life Synagogue?

  f. As a result of you learning this information, have you formed any opinions regarding this case or that would impact your service as a juror? If so, what are those opinions?

**Juror 189**

In his questionnaire, Juror 189 indicated in Question 89 that his jury service would pose a hardship to his company, and he was "not sure how to request a leave of absence." During voir dire, he explained that the construction company he works for "run[s] pretty lean" and his absence could result in layoffs and loss in revenues. Tr. May 1, 2023, at 201-202, 225-227. Juror 189 also indicated that his service would have a "significant economic impact" on his employer and himself. *Id.* at 227. The Court inquired about whether Juror 189 would be paid during his jury service, and the juror responded that he was "trying to keep things kind of quiet" and that he did not yet know whether he would be paid. *Id.* at 228. He explained that he intended to talk to his "HR person" if he was selected. *Id.* There was no further inquiry.

The Court has directed the Clerk of Court to reach out to other jurors who raised similar issues regarding payment for jury service. These include Jurors 26, 126, 132, 203, and 322. Juror 189 is similarly situated to those jurors, and the defense asks that the Court direct the Clerk of Court to reach out to him with the same inquiry. Considering the "significant economic impact" that jury service would

have on Juror 189 and the Court's direction to the Clerk to contact similarly situated jurors to inquire whether those jurors would get paid for service by their employers, in order to fairly determine whether Juror 189 is subject to a hardship, the Court should direct the Clerk to contact Juror 189.

                Respectfully submitted,

                */s/ Judy Clarke*
                Judy Clarke
                Clarke Johnston Thorp & Rice, PC

                */s/ Michael N. Burt*
                Michael N. Burt
                Law Office of Michael Burt, PC

                */s/ Michael J. Novara*
                Michael J. Novara
                First Assistant Federal Public Defender

                */s/ Elisa A. Long*
                Elisa A. Long
                Supervisory Assistant Federal Public Defender

                */s/ Ashwin Cattamanchi*
                Ashwin Cattamanchi
                Assistant Federal Public Defender