IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 18-292 |
| | ) |
| ROBERT BOWERS | ) |

**JOINT PROPOSED PROCEDURES FOR EXERCISING PEREMPTORY STRIKES**

The parties, through undersigned counsel, submit this joint filing regarding proposed procedures for exercising peremptory strikes.

1. The 69 jurors will be brought into the courtroom and seated in order of juror number. The Court can make short remarks thanking them for returning and explaining the general process.

2. Before strikes occur, the jurors will return to the jury assembly room.

3. The parties will pass the juror list back and forth, each striking one juror. The government will strike first.

4. The first 20 strikes for each side will be for the main panel, may only be used on the first 52 jurors, and may be exercised against any juror in any order in the group of the first 52 jurors.

5. If a party chooses not to use a peremptory strike in a round, that strike is permanently forfeited.

6. If all strikes are not used by a party, the remaining jurors from the initial pool of 52 will slide into the alternate pool (i.e., they will not be dismissed unless expressly

stricken). For strikes exercised in the alternate pool, a party may strike from anywhere within the alternate pool in any order.

7. The first 12 remaining jurors (by number) in the main panel will be the jury.

8. The next 6 remaining jurors (by number) will be the alternates.

9. A party may raise a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), and argue a prima facie case for an improper strike. Should the Court find a prima facie case has been made, the opposing party must provide its justification for the peremptory strike. The party raising the challenge bears the burden of proving purposeful discrimination by a preponderance of the evidence. The parties do not agree on the final part of the process for making a *Batson* challenge and set forth their respective positions below:

    a. The government requests that any argument on *Batson* challenges be heard in person and be completed at the end of the hearing on Thursday, May 25, 2023. Challenges made under *Batson* in this district are routinely made and decided by the Court immediately after in-person voir dire; the United States stated on the record that the jury will be empaneled on Thursday and the defense did not object. The need for timely decisions on *Batson* challenges is especially important, where the Court's "firsthand observations [are] of even greater importance," and the Court's determination of a *Batson* challenge depends, in part, on the Court's assessment of the demeanor and credibility of the attorney opposing that challenge. *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008). Moreover, the parties in this case should be well prepared for any *Batson* challenges by Thursday. Unlike the typical case, in which peremptory challenges are exercised and are decided by the Court immediately after in-person voir dire,

the parties have had a week to review the questionnaires and transcripts.  This is ample time for the parties to be prepared with the challenges they intend to make.  Providing the party making the challenge with an additional twelve hours to review the record, revise their arguments, and bolster their position with a written, final submission is unnecessary and provides that party with an unfair tactical advantage to which the opposing party has no opportunity to respond.

          b.     The defense requests that the party raising the *Batson* challenge have until 10 AM on Friday, May 26, to reply in writing with argument to meet its burden to prove purposeful discrimination by a preponderance of the evidence. *See Williams v. Beard*, 637 F.3d 195, 213 (3d Cir. 2011) ("*Batson* announced a three-step burden-shifting framework for judges to employ in order to determine whether racial discrimination is at work in jury selection. That procedure, which we have set forth above, requires a defendant to make out a prima facie case of purposeful discrimination before the prosecutor must articulate race-neutral justifications for her strikes. [Citation omitted.] After the parties have satisfied their respective burdens of production in these first two steps, the defendant must prove purposeful discrimination by a preponderance of the evidence.").[1]

---

[1] The government previously recognized the need to defer ruling on peremptory challenges pending review of the pattern of peremptory challenges should a *Batson*-related claim be made:

> The Court will defer final ruling on the peremptory challenges raised by the parties until the parties have an opportunity to make appropriate motions under *Batson v. Kentucky*, 476 U.S. 79 (1986) (or until the time for making such motions has elapsed). In order for the parties to consider and raise appropriate *Batson* and related challenges, it is anticipated that the parties will be required to review the pattern of peremptory challenges raised over the course of jury

Critical to the step three burden is a review of the pattern of peremptory strikes over the course of jury selection and a comparative juror analysis. *See Riley v. Taylor*, 277 F.3d 261, 282 (3d Cir. 2001) ("A comparison between a stricken black juror and a sitting white juror is relevant to determining whether the prosecution's asserted justification for striking the black juror is pretextual."); *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003) (noting that "a comparative juror analysis . . . does make debatable the District Court's conclusion that no purposeful discrimination occurred"); *Miller–El v. Dretke,* 545 U.S. 231, 241–52 (2005) (finding *Batson* violation based in part on juror comparison evidence); *id.* at 241 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination."); *Snyder v. Louisiana*, 552 U.S. 472, 483 (2008) (noting appropriateness of comparative juror analysis at trial and appellate stages). In *Snyder*, the Supreme Court noted the importance of the trial court's assessment of a juror's demeanor and the attorney's demeanor at step two, at the time the attorney sets forth a purported race-neutral reason for the peremptory strike. This has no bearing on the need at step three for time to prepare a comparative analysis. Only after strikes are completed and the parties know which jurors the opposing party struck can the parties develop a comparative analysis. These cases establish that effective representation requires counsel to assess the proffered

---

selection and perform comparative juror analysis. *Riley v. Taylor*, 277 F.3d 261, 282 (3d Cir. 2001).

ECF 755 (Joint Proposed *Voir Dire* Procedures and Joint Proposed Jury Questionnaire), Exhibit A at 2 n.4

basis the for the peremptory strike, review the voir dire transcript, identify similarly situated jurors who were not struck, and prepare argument. This is not the usual case where voir dire is completed in a single day, a party has limited peremptory strikes, and comparative assessments can be made on the spot.

In a capital case such as this, where voir dire was conducted over the course of 17 court days, the qualified panel consists of 69 jurors, and each party may exercise 20 peremptory strikes on the main panel and additional strikes on the alternate panel, additional time is needed to perform comparative juror analysis. In the most recently tried federal capital case, the Court granted additional time for the parties to brief *Batson* challenges. *See United States v. Saipov*, No. 17-cr-722 (Dec. 19, 2022, S.D.N.Y.) (Transcript at 4974:7–9) ("[the prosecution] did confer with the capital case section and understand that this practice of sort of giving 24 hours has happened in some cases and not in others."). The district court ultimately permitted the parties until the following morning to file *Batson* challenges, gave the opposing party two days to respond, and then permitted the party that filed the challenge until the next morning to reply. *See id.* at ECF 653, 654, 656, and 658. The court then issued its ruling the same date that the party raising the *Batson* challenge filed its step three reply.

Here, the defense proposes a significantly shorter time for *Batson* challenges than what the district court in *Saipov* permitted. The defense proposes that a party raising a challenge must make that challenge orally in court and the party subject to the challenge must then rebut orally. The third step, requiring a comparative juror analysis, as noted above and as recognized as relevant by the Third Circuit and the U.S. Supreme Court, requires time and cannot be made orally in court, considering the volume of material necessary to

review, which includes over 4,000 pages of transcripts. The Court should permit the party raising a *Batson* challenge until 10 AM, May 26, to file a reply to any oral response to the *Batson* challenge. Should a sur-reply be requested, the Court can give the party subject to the *Batson* challenge until 4 PM to file a sur-reply.

Finally, with respect to the government's "state[ment] on the record that the jury will be empaneled on Thursday," it is the Court, not the government, that determines when the jury will be empaneled.[2] In addition, the government offers no reason why allowing a modest amount of time to raise *Batson* challenges and empaneling the jury on Tuesday, May 30, 2023, results in any prejudice to the government.

10. After the strikes are exercised, the 51 potential jurors who were not selected will be called into the courtroom and instructed that they are still under consideration,

---

[2] The May 17, 2023 transcript at pages 108–109 does not support the claim that "the United States stated on the record that the jury will be empaneled on Thursday and the defense did not object":

> MR. RUBENSTEIN: Judge, we agree with the Court's schedule in terms of the examination to be done on Wednesday. Thursday, if all the jurors could come in and we would exercise peremptory challenges on Thursday. We think that's a good schedule.
> THE COURT: Ms. Song?
> MS. SONG: Yes, we have the same position. We think that all of the striking should be concluded on Thursday and they should be impaneled.
> THE COURT: What I would ask counsel to do is – I don't know what mechanics need to be agreed to. We can figure it out on the fly. I would ask you to pick up the phone and call each other just to talk through exactly how are we doing this. If there are any bones of contention, feel free to put it in an email, if appropriate; otherwise, a motion. We're happy to discuss it with you. But I would invite you to work out anything you think you can work out.

Thus, it appears that the Court asked the parties to confer, rather than calling upon the defense to state a position regarding timing.

should abide by instructions previously given, and will be informed as soon as possible (following any *Batson* rulings) whether they have been officially excused or not, and then dismissed for the day. The twelve jurors and six alternates who were not stricken will then be called to the courtroom gallery and seated in order of juror number. The Court should notify these jurors that they have been preliminarily selected as jurors for this case and that they should return to the courtroom for the start of trial, and the Court should instruct the jurors that they should abide by instructions previously given. The jury will not be sworn until *Batson* rulings have been made and any necessary curative action taken.

11. Jurors will not be advised of their status as jurors or alternate jurors until the jury begins deliberations.

Respectfully submitted,

| | |
|---|---|
| */s/ Judy Clarke* | TROY RIVETTI |
| Clarke Johnston Thorp & Rice, PC | Acting United States Attorney |
| Judy Clarke | |
| | |
| */s/ Michael N. Burt* | */s/ Troy Rivetti* |
| Michael N. Burt | Troy Rivetti |
| Law Offices of Michael Burt, PC | Assistant U.S. Attorney |
| | PA ID No. 56816 |
| */s/ Michael J. Novara* | |
| Michael J. Novara | */s/ Soo C. Song* |
| First Assistant Federal Public Defender | Soo C. Song |
| | Assistant U.S. Attorney |
| */s/ Elisa A. Long* | D.C. Bar No. 457268 |
| Elisa A. Long | |
| Supervisory Assistant Federal Public Defender | */s/ Eric G. Olshan* |
| | Eric G. Olshan |
| */s/Ashwin Cattamanchi* | Assistant U.S. Attorney |
| Ashwin Cattamanchi | IL ID No. 6290382 |
| Assistant Federal Public Defender | |
| | */s/ Nicole Vasquez Schmitt* |
| | Nicole Vasquez Schmitt |
| | Assistant U.S. Attorney |
| | PA ID No. 320316 |
| | |
| | */s/ Mary J. Hahn* |
| | Mary J. Hahn |
| | Trial Attorney |
| | Civil Rights Division |
| | DC ID No. 500193 |
| | |
| | */s/ Barry K. Disney* |
| | Barry K. Disney |
| | Trial Attorney |
| | Capital Case Section |
| | KS ID No. 13284 |