IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**GOVERNMENT'S MOTION TO LIMIT DISSEMINATION OF CERTAIN EVIDENCE INCLUDING DEPICTIONS OR RECORDINGS OF DECEASED VICTIMS**

The Protective Order in this case provides that the "procedures for use of discovery during . . . trial . . . shall be determined by the parties and the Court in advance of . . . trial." Doc. No. 24, at ¶ 5. The discovery materials in this case include evidence depicting the bodies of deceased victims at the crime scene and during autopsies, as well as 911 call recordings in which the deceased victims can be heard being fired upon.

The families of the murder victims have a very significant interest, which has existed "in almost all civilizations from time immemorial," to protect the memories of their deceased loved ones, including how they are portrayed in death. Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 168-71 (2004). The United States requests that a very narrow subset of the trial evidence—namely, the evidence depicting the bodies of the deceased victims and certain recordings of 911 calls involving deceased victims—not be posted on the Court's website or otherwise made available for rebroadcast, copying, or any other form of republication by the public, including the media. Granting this limited request preserves access to the public and the media to view the evidence admitted during trial, while ensuring that the victims' families are shielded from the proliferation of death-scene depictions of their loved ones on the internet and in the media. See United States v. Roof, CR 2:15-472, Order (attached as Exhibit A) (granting

government's motion that "[d]epictions of the deceased victims at the crime scene will not be posted to the Court's website and will not be available for copying").

The defendant does not oppose this request. See Joint Status Report, Doc. No. 1118 at 3.

I.  ARGUMENT

The Third Circuit has recognized that the common law right to public access to judicial proceedings creates a strong presumption in favor of access to evidence introduced at trial. See United States v. Criden, 648 F.2d 814, 829 (3rd Cir. 1981); see also Nixon v. Warner Communications, Inc., 435 U.S. 589, 607 (1978) (holding that the common law right applies to trial evidence). However, this right is not absolute, and the Third Circuit has made clear that "courts may appropriately exercise their discretion to deny copying for rebroadcast of evidence which may inflict unnecessary and intensified pain on third parties who the court reasonably finds are entitled to such protection." Criden, 648 F.2d at 829; see also Warner Communications, Inc., 435 U.S. at 599 (holding that "[i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute" and that access to copy judicial records may be restricted where the files "might have become a vehicle for improper purposes" or to "gratify private spite").

**A. The Families of the Victims Have a Substantial Right to Limit the Dissemination of the Images of Their Deceased Family Members**

The Crime Victims Rights Act (CVRA) affords crime victims "[t]he right to be treated with **fairness** and with **respect** for the **victim's dignity and privacy**." 18 U.S.C. § 3771(a)(8) (emphasis added). Courts have recognized that "the 'broad language' of § 3771(a)(8) seeks 'to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity.'" Medina v. Shin, No. CV-21-00889-PHX-GMS, 2022 WL 325707, at *2 (D. Ariz. Feb. 3, 2022) (quoting United States v. Turner, 367 F. Supp. 2d 319, 335 (E.D.N.Y. 2005)). "The legislative history is clear": "[T]hese rights . . . are intended to be expansive,

2

enforceable, and not merely symbolic." Id. (internal quotations omitted); see also United States v. BP Products North America Inc., No. CRIM. H-07-434, 2008 WL 501321, *15 (S.D. Tex. Feb. 21, 2008) ("the Senate sponsors of the law were clear in their articulation of the overall import of the provision: to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity").  Thus, the statutory rights of crime victims to respect for their privacy and dignity must prevail over any prurient desire to publish images more broadly.

Concomitantly, the Supreme Court has declared that the right of family members to exert "control over the body and death images of the deceased has long been recognized at common law."  Favish, 541 U.S. at 168.  The Supreme Court has explained that "[w]e have little difficulty . . . in finding in our case law and traditions the right of family members to direct and control disposition of the body of the deceased and to limit attempts to exploit pictures of the deceased family member's remains for public purposes." Id. at 167.

This right exists not only to protect the memory of the deceased victim, but also "'for the benefit of the living, to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased.'" Id. at 168-69 (quoting Schuyler v. Curtis, 147 N.Y. 434, 447 (1895)); see also, e.g., Marsh v. County of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) ("Few things are more personal than the graphic details of a close family member's tragic death. Images of the body usually reveal a great deal about the manner of death and the decedent's suffering during his final moments . . . .); Accuracy in Media v. Nat'l Park Serv., 194 F.3d 120, 123 (D.C. Cir. 1999) (hereinafter "AIM") (stating that "obviously [the party seeking photographs of the deceased] cannot deny the powerful sense of invasion bound to be aroused in close survivors by wanton publication of gruesome details of death by violence").

Thus, in addition to the rights to privacy and dignity under the CVRA, the potential release of crime scene evidence depicting deceased victims directly implicates their families' legal rights to control the images of their loved ones.  Marsh, 680 F.3d at 1154 (holding that, in the absence of a legitimate governmental purpose, the submission of autopsy photograph of deceased son to a newspaper violated the privacy and due process rights of the mother); AIM, 194 F.3d at 123 (holding that autopsy photos should not be released under FOIA exemption and holding that "the release of photos of the decedent at the scene of his death and autopsy qualifies as such an invasion [of the family's privacy]").[1]

Although the United States' prosecution of the defendant necessitates the admission of images of the crime scene as evidence at trial to meet its burden of proof, these images should not be available for re-publication in order to protect the interests of the victims and their families. Roof, CR 2:15-472, Attachment A at 1 (in prosecution of white supremacist for murders of congregants killed in a house of worship, granting the government's motion to preclude republication or dissemination of images of victims' bodies); see also United States v. Dimora, 862 F. Supp. 2d 697, 707 (N.D. Ohio 2012) (holding that in evaluating common law right to access to judicial records, "the privacy rights of disinterested, uninvolved third parties . . . weigh against allowing inspection and copying" of trial exhibits and denying request to copy photographs showing the images of third parties); United States v. Troup, No. 3:12-cr-36, 2012 WL 3818242,

---

[1]   See also, e.g., Katz v. Nat'l Archives and Records Admin., 862 F. Supp. 476, 485 (D.D.C.1994) (exempting from FOIA disclosure autopsy X-rays and photographs of President Kennedy on the ground that their release would cause "additional anguish" to the surviving family); New York Times Co. v. Nat'l Aeronautics and Space Admin., 782 F. Supp. 628, 631, 632 (D.D.C.1991) (sustaining a privacy claim under FOIA with respect to an audiotape of the Space Shuttle Challenger astronauts' last words, because "[e]xposure to the voice of a beloved family member immediately prior to that family member's death ... would cause the Challenger families pain" and inflict "a disruption [to] their peace of mind every time a portion of the tape is played within their hearing").

at * 6 (N.D. Ind. Aug. 31, 2012) (ordering that pornographic images of minors would not be visible to the gallery because it would be detrimental "to put their victimization on display"); see also AIM, 194 F.3d at 123 (recognizing that family privacy interests exist even though "law enforcement sometimes necessitates the display of such ghoulish materials").

These privacy interests are substantially heightened in this case. This prosecution has received national and international coverage. Given the "viral nature of the Internet," it is reasonable for the victims' families to be apprehensive that they "might easily stumble upon photographs of [their deceased relatives] on news websites, blogs or social media sites." Marsh, 680 F.3d at 1155 (describing "intrusion into the grief of a mother over her dead son" based on the fear that her son's autopsy photograph would be published on the internet); see also Favish, 541 U.S. at 167.

In addition, the nature of the crimes charged in the Superseding Indictment render these depictions of the victims particularly susceptible to misuse by third parties. The defendant actively posted white supremacist, anti-Semitic violent images and tropes on the social media platform, Gab.com. Making these images available for reproduction and exploitation by those who might share his white supremacist and violent ideologies would serve no purpose other than to cause pain to the victims and their families. See, e.g., Warner Communications, 435 U.S. at 598; Melton v. Bd. of County Comm'rs, 267 F. Supp. 2d 859, 864 (S.D. Ohio 2003) ("[F]amilies have a right not to be embarrassed or humiliated by the outrageous display or exposure to public view of the remains of a loved one."); In re Application of KSTP Television, 504 F. Supp. 360, 362 (D. Minn. 1980) (rejecting request to copy videotapes made by the defendant before raping a kidnap victim because further broadcast would "serve only to accent the morbid and lurid details of the crime and pander to lascivious curiosity"); see also Favish, 541 U.S. at 168, 170 (noting that withholding

photographs of a deceased family member guards against "unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord to the deceased person who was once their own").

This trial will exact an emotional toll on the victims' families. Controlling the reproduction and dissemination of the images of their deceased family members will help to mitigate further pain and anguish. See Favish, 541 U.S. at 166 (noting that family members should be able to take "refuge from a sensation-seeking culture for their own peace of mind and tranquility.").

**B. The Government's Request is Narrowly Tailored**

The United States' proposed Protective Order is the least restrictive alternative available that would both accord crime victim their rights and assure a fair trial. Accordingly, the government seeks to exclude from dissemination a narrow subset of evidence, i.e., images depicting the deceased victims and 911 calls of the deceased victims, leaving the media and public with full access to the vast majority of the evidence in this case.

Significantly, the courtroom will remain open throughout the trial and the evidence will be shown in the courtroom. All attendees will be able to view the trial, hear the testimony, and evaluate the government's case against the defendant. See Application of KSTP Television, 504 F. Supp. at 363 (holding release of trial exhibit for copying "can serve little, if any, purpose" where the trial was open and the media was assured adequate seating).

**II.   CONCLUSION**

To respect the memories of the murdered victims and to ensure that their families are not subjected to additional, undue anguish, the United States respectfully requests that this Court order that the evidence depicting the bodies of the deceased victims, as well as the recordings of 911 calls in which the deceased victims can be heard being fired upon, not be made available for

rebroadcast, copying, or any other form of republication (including in sketch artist renderings) by the public.

          Respectfully submitted,

          Troy Rivetti
          TROY RIVETTI
          Acting U.S. Attorney
          PA ID No. 56816

          s/Soo C. Song
          SOO C. SONG
          Assistant U.S. Attorney
          DC ID No. 457268

          s/Eric G. Olshan
          ERIC G. OLSHAN
          Assistant U.S. Attorney
          IL ID No. 6290382

          s/Nicole Vasquez Schmitt
          NICOLE VASQUEZ SCHMITT
          Assistant U.S. Attorney
          PA ID No. 320316

          s/Mary J. Hahn
          MARY J. HAHN
          Trial Attorney
          Civil Rights Division
          DC ID No. 500193

          s/ Barry K. Disney
          BARRY K. DISNEY
          Trial Attorney
          Capital Case Section
          KS ID No. 13284

          s/Aaron J. Stewart
          AARON J. STEWART
          Trial Attorney
          Capital Case Section
          OK ID No. 31721