IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                      ) | Criminal No. 18-292 |
| ) | |
| ROBERT BOWERS           ) | |

**MOTION FOR HEARING ON GOVERNMENT VIOLATIONS OF FED. R. EVID. 12.2 AND COURT ORDER (ECF 1202)**

Defendant Robert Bowers, through undersigned counsel, submits this Motion for Hearing on Government Violations of Fed. R. Evid. 12.2 and Court Order (ECF 1201) to determine the extent to which the government has violated Rule 12.2 and the Court's previous order and to impose appropriate sanctions. Documents disclosed as part of a June 1, 2023, discovery production make clear that members of the government trial team have been actively participating in Dr. Dietz's evaluation process, including participating in witness interviews with primary government expert Dr. Park Dietz, to include observing Dr. Dietz's interviews of at least four witnesses.

In its Brief in Support of Proposed Examination Procedures, the government argued strenuously that no member of Mr. Bowers' defense team should be permitted to observe its expert's evaluations via live video feed, asserting that "[d]oing so would provide defense counsel with unwarranted access to the government's mental health evidence," because "Rule 12.2(c)(2) requires sealing of the results and reports of the government's experts [and] allows disclosure to the defendant only after conviction of a capital crime and the defendant's confirmation of an intent to offer mental health evidence at the penalty phase." ECF 1059 at 15. It continued:

> This Court should reject any defense requests for "live" video monitoring of the evaluations because monitoring the government's experts' evaluations would violate the clear dictates of Rule 12.2(c)2). [sic]. **Providing defense counsel a preview of the information gathered and lines of questioning by the government's expert would effectively provide the defense a preview of the content of the government expert's evaluation** well before such disclosure is authorized by Rule 12.2.

*Id.* at 16 (emphasis added). It then accused defense counsel of "seek[ing] to gain a tactical advantage by attempting to secure insight into the government's rebuttal evidence before even the start of the guilt phase of trial," and insisted that "the Court should therefore bar counsel from monitoring the examinations." *Id.* at 17.

Again, in its Reply in Support of its Motion to Examine Defendant and Proposed Examination Procedures, the government stated:

> Allowing defense counsel to be physically present for the government's experts examinations . . . would provide the defense **an unwarranted preview of the government's mental health rebuttal** . . . [F]airness dictates that the defense should not **leverage an advantage by observing the government's experts' examination** while the prosecution team is not permitted, under Rule 12.2, to learn its own experts' opinions until after the guilt phase. Defense counsel's presence would violate the spirit of Rule 12.2 and should not be permitted.

ECF 1073 at 10-11 (emphasis added). *See also* ECF 1089 at 2 (reasserting that allowing defense counsel to observe any part of government's experts' evaluations would give the defense "an early and unfair tactical advantage that the rule does not authorize. *See* Fed. R. Crim. P. 12.2(c)(2) (precluding disclosure of the results and reports of examinations until after guilty verdict)").

Eventually, the Court adopted the government's position on the issue and entered an Order directing that "[n]o counsel from the defense or the prosecution may be present during the examinations." ECF 1202 at ¶ 6. In its Memorandum Opinion filed contemporaneously with that

2

Order, the Court made clear that it was also denying Mr. Bowers' request for defense counsel to observe the examinations over live video feed. ECF 1200 at 15. The Court further directed that:

> After completing the examinations, each Government expert will create two copies of his or her report, two copies of his or her CV, and two copies of all raw data, storage media, or documentation in two labeled, sealed envelopes, one of which is labeled "For Defense" and the other of which is labeled "For Government." Each rebuttal expert will deliver their materials to the designated Government expert, who will deliver all of the sealed envelopes to the Clerk of Court, together with signed statements from the experts **indicating their understanding that they may not discuss the examinations with anyone** unless, pursuant to Rule 12.2(c)(2), Defendant is convicted of a capital crime and the Defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition. The Clerk shall hold these sealed reports until a verdict is returned, without opening them or uploading them to the electronic filing system.

ECF 1202 at ¶ 11.

Clearly, the intent of the Court was that the government experts have no substantive contact with any member of the government trial team until after a guilty verdict is entered and the defense has reasserted its intent to present its own mental health evidence. This intent is underscored by the further provision that the government's experts communicate directly (and only) with the Court if any issues arise during the evaluation process. *Id.* at ¶ 8; ECF 1200 at 11.

Against this backdrop, however, it is clear that at least one of the government's experts has been in communication with at least two members of the government trial team and has indeed permitted that attorney and that FBI agent to attend and observe part of his evaluation of Mr. Bowers, namely telephonic interviews of collateral witnesses conducted by the expert. On June 1, 2023, the government produced discovery that included three FBI 302 reports documenting telephone interviews of witnesses conducted by government expert Dr. Park Dietz that focused specifically on mental health symptoms and behaviors observed by the witness. *See* Exhibit A (copies of FBI 302 report) (filed under seal). Those reports reveal that on May 10, 2023, two days after the Court entered the Rule 12.2 Order, Dr. Dietz conducted three separate

telephone interviews of Butler County Prison Officers Mike Williams, Adam Pry, and Jeff Kenjerski. FBI Agent Samantha Bell, who is the government's case agent and has been an integral part of the prosecution team throughout the pendency of this case, and AUSA Vasquez Schmitt were present on the line for all three interviews. The FBI 302 reports span 5, 4 and 6 pages and are accompanied by 8, 5 and 9 pages of notes taken by Agent Bell, respectively. Exhibit A.

Dr. Dietz has previously explained that collateral witness interviews are an integral and important part of a forensic mental health evaluation. *See* ECF 1059, Ex. B (Declaration of Park Dietz) at ¶ 17 ("The validity and reliability of a mental health evaluation depend in part on the completeness of the data available. These data ideally derive from multiple sources, including . . . witness interviews conducted by various interviewers"). Undoubtedly, aspects of these interviews will form a part of Dr. Dietz's report of his evaluation of Mr. Bowers. By arranging for one of its trial lawyers and its case agent to be present during these interviews, the government has done precisely what it fought so hard and so successfully to prevent defense counsel from doing, i.e., access a portion of the expert's evaluation process prior to the conclusion of the guilt phase of the trial. Clearly, the government's observations in all four instances have afforded it "a preview of the information gathered and lines of questioning by the government's expert," thereby providing it with "a preview of the content of the government expert's evaluation well before such disclosure is authorized by Rule 12.2," ECF 1159 at 16, and giving it "an early and unfair tactical advantage that the rule does not authorize," ECF 1089 at 2.

Disclosure of the FBI 302 reports and agent's notes regarding these interviews to the defense makes clear the violation of the Court's Order that the government evaluation and opinions not be disclosed to or discussed with the prosecution until after a guilty verdict and after

the defense re-affirmed its intent to present expert mental health evidence. The 302 reports do not, however, adequately disclose the nature of the communication between Dr. Dietz and the prosecution, requiring a hearing to establish the scope and nature of the violations. The reports also do not disclose the extent of information provided to Dr. Dietz and the timing of its provision by the prosecution team.

Even if the materials disclosed contain the full substance of all communications between Dr. Dietz, the witnesses and members of the government trial team including, but not limited to, AUSA Vasquez Schmitt and Agent Bell, the government is still privy to important information that the defense has no access to. For the most part, the reports and notes purport to summarize what the witness reported to Dr. Dietz. They clearly fail to capture the all-important "lines of questioning" that Dr. Dietz used with each witness, as well as discussions with Dr. Dietz regarding the significance of the interviews, and how and why certain individuals were selected to interview. As a result of this process, the government has a window into Dr. Dietz's intellectual and clinical process, and consequently part of its mental health rebuttal evidence, that it should not have under Rule 12.2. It further has the benefit of having heard the witnesses' answers verbatim and having been able to assess their tone of voice and manner of speaking during Dr. Dietz's examinations.

To attempt to appropriately address this situation, the Court should hold a hearing to establish, at a minimum:

- the full extent of all communications between members of the government's trial team and its experts, including Dr. Dietz, and including communications regarding which witnesses the experts wished to interview and why;

- the full extent of all materials provided to the government's Rule 12.2 experts and the timing of the provision of those materials;
- whether there are additional witness interviews or other parts of its experts' evaluations that members of the government trial team have been present for, observed, or communicated about; and
- a recreation to the extent possible of the precise lines of questioning that any expert employed and whether the expert utilized any structured interviews or similar instruments.

Prior to the hearing, the Court should order that the government produce to the defense all notes taken by all parties, not only during witness interviews that trial team members have observed but also during any additional communications between trial team members and their experts, and any audio recordings that have been made. At the conclusion of the hearing, the Court should determine the appropriate sanctions to be imposed on the government for its violations of Rule 12.2 and the Court's Order (ECF 1202).

Respectfully submitted,

*/s/ Judy Clarke*
Judy Clarke
Clarke Johnston Thorp & Rice, PC

*/s/ Michael N. Burt*
Michael N. Burt
Law Offices of Michael Burt, PC

*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender

*/s/ Elisa A. Long*
Elisa A. Long
Supervisory Assistant Federal Public Defender

*/s/ Ashwin Cattamanchi*
Ashwin Cattamanchi
Assistant Federal Public Defender