IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

## SENTENCE SELECTION PHASE VERDICT FORM

Section I:  Counts to Consider ...........................................................................................2

Section II:  Non-Statutory Aggravating Factors..................................................... 4

Section III:  Mitigating Factors ............................................................................... 7

Section IV:  Determination of Sentence................................................................ 23

Section V:  Justice Without Discrimination .......................................................... 26

Section I:  Counts to Consider

## Section I:  Counts to Consider

"Capital counts" refers to the following:

Count 1: Obstruction of free exercise of religious beliefs resulting in the death of Joyce Fienberg

Count 2: Obstruction of free exercise of religious beliefs resulting in the death of Richard Gottfried

Count 3: Obstruction of free exercise of religious beliefs resulting in the death of Rose Mallinger

Count 4: Obstruction of free exercise of religious beliefs resulting in the death of Jerry Rabinowitz

Count 5: Obstruction of free exercise of religious beliefs resulting in the death of Cecil Rosenthal

Count 6: Obstruction of free exercise of religious beliefs resulting in the death of David Rosenthal

Count 7: Obstruction of free exercise of religious beliefs resulting in the death of Bernice Simon

Count 8: Obstruction of free exercise of religious beliefs resulting in the death of Sylvan Simon

Count 9: Obstruction of free exercise of religious beliefs resulting in the death of Daniel Stein

Count 10: Obstruction of free exercise of religious beliefs resulting in the death of Melvin Wax

Count 11: Obstruction of free exercise of religious beliefs resulting in the death of Irving Younger

Count 23: Use of a firearm to murder Joyce Fienberg during and in relation to a crime of violence

Count 24: Use of a firearm to murder Richard Gottfried during and in relation to a crime of violence

Count 25: Use of a firearm to murder Rose Mallinger during and in relation to a crime of violence

Section I:  Counts to Consider

>Count 26: Use of a firearm to murder Jerry Rabinowitz during and in relation to a crime of violence

>Count 27: Use of a firearm to murder Cecil Rosenthal during and in relation to a crime of violence

>Count 28: Use of a firearm to murder David Rosenthal during and in relation to a crime of violence

>Count 29: Use of a firearm to murder Bernice Simon during and in relation to a crime of violence

>Count 30: Use of a firearm to murder Sylvan Simon during and in relation to a crime of violence

>Count 31: Use of a firearm to murder Daniel Stein during and in relation to a crime of violence

>Count 32: Use of a firearm to murder Melvin Wax during and in relation to a crime of violence

>Count 33: Use of a firearm to murder Irving Younger during and in relation to a crime of violence

You have found Robert Bowers was 18 years old or older at the time he committed Counts 1-11 and 23-33, that a threshold intent factor applied, and that the listed statutory aggravating factors applied to each of those counts:

Statutory Aggravating Factors:

- Robert Bowers knowingly created a grave risk of death to one or more persons in addition to the victim of the specific offense.

- Robert Bowers committed the offenses after substantial planning and premeditation to cause the death of a person.

- Robert Bowers committed the offenses charged in Counts 1 and 23 (relating to killing Joyce Fienberg), Counts 3 and 25 (relating to killing Rose Mallinger), Counts 5 and 27 (relating to killing Cecil Rosenthal), Counts 6 and 28 (relating to killing David Rosenthal), Counts 7 and 29 (relating to killing Bernice Simon), Counts 8 and 30 (relating to killing Sylvan Simon), Counts 9 and 31 (relating to killing Daniel Stein), and Counts 10 and 32 (relating to killing Melvin Wax) on victims who were particularly vulnerable due to old age or infirmity.

- Robert Bowers intentionally killed and attempted to kill more than one person in a single criminal episode

Section II:  Non-Statutory Aggravating Factors

## Section II:  Non-Statutory Aggravating Factors

General Directions for Section II:

- As used in this section, the term "capital count(s)" refers to the Counts listed in Section I.

- In this section, please indicate which, if any, of the following five (5) non-statutory aggravating factors you unanimously find the Government has proven beyond a reasonable doubt.  For each of the proposed factors, you must mark one of the responses provided.

1. Robert Bowers caused injury, harm, and loss to the victims named in each capital count, as well as to the family, friends, and co-workers of those victims.  The injury, harm, and loss caused by the defendant with respect to each victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family, friends, and co-workers.

    ____✓____ We unanimously find that this factor has been proven beyond a reasonable doubt with regard to *all* of the applicable capital counts.

    _____ We unanimously find that this factor has not been proven beyond a reasonable doubt with regard to *any* of the applicable capital counts.

    _____ We unanimously find that this factor has been proven beyond a reasonable doubt only with regard to the following capital counts.  *Identify each count by its number in the space provided below.*

    _____

    _____

2. Robert Bowers expressed hatred and contempt toward members of the Jewish faith and his animus toward members of the Jewish faith played a role in the killings of the victims.

    ____✓____ We unanimously find that this factor has been proven beyond a reasonable doubt with regard to *all* of the applicable capital counts.

    _____ We unanimously find that this factor has not been proven beyond a reasonable doubt with regard to *any* of the applicable capital counts.

    _____ We unanimously find that this factor has been proven beyond a reasonable doubt only with regard to the following capital counts.  *Identify each count by its number in the space provided below.*

    _____

    _____

4

Section II:  Non-Statutory Aggravating Factors

3. Robert Bowers targeted men and women participating in Jewish religious worship at the Tree of Life Synagogue, located in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania, which is home to one of the largest and oldest urban Jewish populations in the United States, in order to maximize the devastation, amplify the harm of his crimes, and instill fear within the local, national, and international Jewish communities.

_____✓_____ We unanimously find that this factor has been proven beyond a reasonable doubt with regard to *all* of the applicable capital counts.

_____ We unanimously find that this factor has not been proven beyond a reasonable doubt with regard to *any* of the applicable capital counts.

_____ We unanimously find that this factor has been proven beyond a reasonable doubt only with regard to the following capital counts. *Identify each count by its number in the space provided below.*

_____

_____

4. Robert Bowers demonstrated a lack of remorse for the charged offenses as evidenced by his statements and actions during the course of and following the commission of the offenses.

_____✓_____ We unanimously find that this factor has been proven beyond a reasonable doubt with regard to *all* of the applicable capital counts.

_____ We unanimously find that this factor has not been proven beyond a reasonable doubt with regard to *any* of the applicable capital counts.

_____ We unanimously find that this factor has been proven beyond a reasonable doubt only with regard to the following capital counts. *Identify each count by its number in the space provided below.*

_____

_____

Section II:  Non-Statutory Aggravating Factors

5.  In committing the charged offenses, Robert Bowers caused serious physical and emotional injury, including maiming, disfigurement, permanent disability, severe psychological impacts, and grievous economic hardship to individuals who survived the offense, to include: 1) physically injured civilian survivors, Daniel Leger and Andrea Wedner; 2) otherwise injured civilian survivors, Carol Black, Doris Dyen, Joseph Charney, Louis Fienberg, Audrey Glickman, Martin Gaynor, Jeffrey Myers, Jonathan Perlman, Deane Root, August Siriano, Judah Samet, Stephen Weiss, and Barry Werber; 3) physically injured law enforcement survivors, Anthony Burke, Timothy Matson, Daniel Mead, John Persin, and Michael Smidga; and 4) otherwise injured law enforcement survivors, John Craig, Jeffrey Garris, Jeremy Hurley, Andrew Miller, Joshua Robey, Michael Saldutte, and Clint Thimons.

_____✓_____  We unanimously find that this factor has been proven beyond a reasonable doubt with regard to *all* of the applicable capital counts.

_____  We unanimously find that this factor has not been proven beyond a reasonable doubt with regard to *any* of the applicable capital counts.

_____  We unanimously find that this factor has been proven beyond a reasonable doubt only with regard to the following capital counts. *Identify each count by its number in the space provided below*.

_____

_____

Directions:

- After you have completed your findings in this section (whether or not you have found any of the above non-statutory aggravating factors to have been proved), continue on to Section III.

Section III: Mitigating Factors

## Section III:  Mitigating Factors

General Directions for Section III:

- As used in this section, the term "capital count(s)" refers only to the counts listed in Section I.

- As to the alleged mitigating factors listed below, please indicate which, if any, you find Robert Bowers has proven by a preponderance of the evidence.

- Recall that your vote as a jury need not be unanimous with regard to each question in this section.  A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor shall consider such a factor established in making his or her individual determination of whether or not to impose a sentence of death, regardless of the number of other jurors who agree that the factor has been established.

- In the space provided, please indicate the number of jurors who have found the existence of that mitigating factor to be proven by a preponderance of the evidence with regard to each of the capital counts.

1. The limitations and impairments of Robert Bowers' parents negatively influenced his development as a child and adult.

     Number of Jurors Who So Find:  _10_

2. Robert Bowers' mother was hospitalized at Western Psychiatric Hospital in Pittsburgh with post-partum depression shortly after Robert was born.

     Number of Jurors Who So Find:  _12_

3. Robert Bowers' mother was subsequently diagnosed with chronic depression.

     Number of Jurors Who So Find:  _0_

4. Robert Bowers' mother was ill equipped to become a parent and became increasingly overwhelmed by her circumstances.

     Number of Jurors Who So Find:  _12_

Section III:  Mitigating Factors

5.  Robert Bowers' father attempted suicide by jumping off a naval ship two years before Robert was born.

    Number of Jurors Who So Find: ___0___

6.  Robert Bowers' father was diagnosed with schizophrenia.

    Number of Jurors Who So Find: ___0___

7.  Robert Bowers' father was discharged as unsuitable for military service.

    Number of Jurors Who So Find: ___12___

8.  Robert Bowers' father was arrested on a charge of rape when Robert was seven years old.

    Number of Jurors Who So Find: ___11___

9.  Robert Bowers' father committed suicide by shooting himself with a shotgun when Robert was seven years old.

    Number of Jurors Who So Find: ___7___

10. The risk of Robert Bowers committing or attempting to commit suicide was increased because his father committed suicide.

    Number of Jurors Who So Find: ___4___

11. The envelope that once contained Robert Bowers' father's suicide note, along with his father's birth announcement, baptismal certificate, and death certificate, were found among Robert's possessions at the time of his arrest.

    Number of Jurors Who So Find: ___0___

12. Robert Bowers' mother was in the first trimester of her pregnancy with Robert when she had to jump out of an apartment window to escape a fire in the building.

    Number of Jurors Who So Find: ___10___

Section III: Mitigating Factors

13. When Robert Bowers' mother was eight months pregnant with Robert, she sustained a concussion when Robert's father knocked her down a flight of stairs.

    Number of Jurors Who So Find: __12__

14. When Robert Bowers was a baby, Children and Youth Services (CYS) was called after his father threatened to kill him by turning on the gas in the apartment.

    Number of Jurors Who So Find: __12__

15. When Robert Bowers was a baby, Children and Youth Services (CYS) was called after his mother threatened to kill him by throwing him out of the apartment window.

    Number of Jurors Who So Find: __12__

16. When Robert Bowers was nineteen months old, he saw a doctor twice in one month for ingesting toxic substances that his mother left within his reach.

    Number of Jurors Who So Find: __12__

17. When Robert Bowers was twenty months old, his language regressed from forming words to only making high-pitched squealing sounds.

    Number of Jurors Who So Find: __12__

18. Because of very limited income, Robert Bowers and his mother often lived in marginal housing.

    Number of Jurors Who So Find: __12__

19. Because of very limited income, Robert Bowers and his mother moved frequently.

    Number of Jurors Who So Find: __12__

20. In one marginal housing setting, Robert Bowers and his mother lived with two men both of whom were having sex with Robert's mother.

    Number of Jurors Who So Find: __12__

Section III:  Mitigating Factors

21. Robert Bowers' mother took Robert to Florida to live with Bob Saiter, after spending a week

    with him.

        Number of Jurors Who So Find: ___12___

22. After months of conflict, Robert Bowers' mother became afraid that Robert's stepfather would

    harm her or himself.

        Number of Jurors Who So Find: ___12___

23. During Robert's mother's marriage to Bob Saiter, Saiter was admitted to the Eglin Air Force

    Base psychiatric hospital for inpatient treatment.

        Number of Jurors Who So Find: ___12___

24. During Robert's mother's marriage to Bob Saiter, his mother was admitted to a psychiatric

    hospital in Florida for treatment of her depression and anxiety.

        Number of Jurors Who So Find: ___6̶ 5___   8/1/23  Juror 152

25. Bob Saiter later admitted to molesting a child in 1978, two years after Robert Bowers and his

    mother lived with him.

        Number of Jurors Who So Find: ___12___

26. Robert Bowers' maternal grandmother was a severe alcoholic when Robert Bowers was in her

    care.

        Number of Jurors Who So Find: ___12___

27. Robert Bowers' maternal grandmother was arrested for public intoxication both before and

    after she brought Robert from Florida back to Pittsburgh.

        Number of Jurors Who So Find: ___12___

Section III:  Mitigating Factors

28. Teachers and other professionals identified the need for Robert Bowers to receive mental health counseling and treatment from an early age.

      Number of Jurors Who So Find: __12__

29. In the first grade, Robert Bowers was referred to a school psychologist for counseling.

      Number of Jurors Who So Find: __12__

30. When his mother learned that Robert Bowers had been seeing the school psychologist, she demanded that the counseling stop.

      Number of Jurors Who So Find: __12__

31. When Robert Bowers was in the fourth grade, his teacher expressed concerns to Robert's mother about his emotional well-being.

      Number of Jurors Who So Find: __12__

32. At age ten, Robert Bowers became preoccupied with suicide.

      Number of Jurors Who So Find: __2__

33. Between the ages of thirteen and seventeen, Robert Bowers was committed to multiple psychiatric institutions for care and treatment.

      Number of Jurors Who So Find: __12__

34. When Robert Bowers was thirteen years old, he threatened his mother and threatened to kill himself.

      Number of Jurors Who So Find: __12__

35. When Robert Bowers was thirteen years old, he had his first psychiatric commitment.

      Number of Jurors Who So Find: __12__

Section III:  Mitigating Factors

36. After sixteen days in the adult psychiatric unit at McKeesport Hospital, doctors determined that Robert Bowers needed ongoing treatment and sent him to Southwood Psychiatric Hospital.

Number of Jurors Who So Find:  12

37. Dr. Brink, the McKeesport' Chief Psychiatrist, recommended that Robert Bowers be evaluated, including for possible incipient schizophrenia, at Southwood Psychiatric Hospital.

Number of Jurors Who So Find:  12

38. After forty-one days of inpatient treatment at Southwood Psychiatric Hospital, Robert Bowers was placed at the Bradley Center, a child and adolescent psychiatric residential treatment center.

Number of Jurors Who So Find:  12

39. Robert Bowers remained a resident at the Bradley Center for six months and he began to respond positively to treatment.

Number of Jurors Who So Find:  12

40. When Robert Bowers was returned home, the Bradley Center recommended follow up with counseling, but his family stopped attending after one session.

Number of Jurors Who So Find:  12

41. When Robert Bowers was sixteen, he threatened to shoot himself and was involuntarily committed to St. John's Hospital.

Number of Jurors Who So Find:  ~~11~~ 8       8/1/23    Juror #52

42. After Robert Bowers was involuntarily committed to St. John's Hospital, he was transferred to Southwood Psychiatric Hospital for seven days.

Number of Jurors Who So Find:  12

Section III:  Mitigating Factors

43. Robert Bowers attempted suicide as a sixteen-year-old by ingesting a bottle of aspirin and he

    was hospitalized at Braddock Hospital.

    Number of Jurors Who So Find: ___8___

44. When Robert Bowers was seventeen, he attempted suicide, was severely burned, and was

    hospitalized at Mercy Hospital. .

    Number of Jurors Who So Find: ___0___

45. After Robert Bowers was treated at Mercy Hospital for his burns, he wastransferred to St.

    Francis Hospital for psychiatric care.

    Number of Jurors Who So Find: ___12___

46. Although Robert Bowers dropped out of high school, he obtained a GED.

    Number of Jurors Who So Find: ___12___

47. From 1990 to 2004, Robert Bowers held a job as a delivery driver at Potomac Bakery.

    Number of Jurors Who So Find: ___12___

48. In 2004, at the age of thirty-two, Robert Bowers was voluntarily committed to a psychiatric

    unit at St. Clair Hospital.

    Number of Jurors Who So Find: ___12___

49. At the age of thirty-three, Robert Bowers sought disability, reporting tremendous depression,

    social anxieties, and that he very infrequently left his home.

    Number of Jurors Who So Find: ___12___

50. After a series of short-term jobs, Robert Bowers completed trucking school in 2008 and

    became a long-haul truck driver.

    Number of Jurors Who So Find: ___12___

Section III:  Mitigating Factors

51. In 2010, Robert Bowers worked for CLASS as an aide for two individuals with traumatic brain injuries, and he did well providing care for them.

    Number of Jurors Who So Find: ___12___

52. Robert Bowers' work with two individuals with traumatic brain injuries showed that he has positive qualities.

    Number of Jurors Who So Find: ___10___

53. While Robert Bowers worked for CLASS, his supervisor considered him to be a good worker and gave him a positive evaluation.

    Number of Jurors Who So Find: ___12___

54. After Robert Bowers left CLASS, he continued to have contact with the two individuals with traumatic brain injuries

    Number of Jurors Who So Find: ___12___

55. In 2011, Robert Bowers worked more short-term jobs trying to make a living.

    Number of Jurors Who So Find: ___12___

56. Between 2011 and 2014, Robert Bowers provided care for his grandfather and disabled cousin.

    Number of Jurors Who So Find: ___12___

57. Robert Bowers has a multigenerational family history of mental illness and neurological problems.

    Number of Jurors Who So Find: ___9___

58. Robert Bowers' multigenerational family history of mental illness and neurological problems created a greater risk of Robert developing mental illness.

    Number of Jurors Who So Find: ___8___

Section III:  Mitigating Factors

59. Robert Bowers has brain abnormalities.

Number of Jurors Who So Find: ___6___

60. The results of an EEG performed on Robert Bowers' brain were abnormal.

Number of Jurors Who So Find: ___2___

61. Robert Bowers' brain is abnormal in that he has abnormal metabolism as well as asymmetries.

Number of Jurors Who So Find: ___0___

62. Robert Bowers' brain has twenty-eight white matter hyperintensities, which is highly unusual in a 49-year-old male.

Number of Jurors Who So Find: ___0___

63. The white matter hyperintensities in Robert Bowers' brain are damaged or dead areas of the brain.

Number of Jurors Who So Find: ___11___

64. The hippocampi in Robert Bowers' brain are abnormally asymmetrical.

Number of Jurors Who So Find: ___0___

65. Neuropsychological and neurological evaluations of Robert Bowers found that his brain is impaired.

Number of Jurors Who So Find: ___0___

66. A quantitative analysis of both Robert Bowers' PET scan and MRI showed abnormalities in his brain.

Number of Jurors Who So Find: ___0___

67. Robert Bowers' brain functioning may have been affected by dysfunctional electrical activity.

Number of Jurors Who So Find: ___0___

Section III: Mitigating Factors

68. Even though experts disagree about the specific diagnosis of Robert Bowers' mental condition, all of the experts agree that he suffers from a mental disorder that has affected his life and behavior.

    Number of Jurors Who So Find: __0__

69. Features of schizoid personality disorder, diagnosed by one expert, include the negative symptoms of schizophrenia.

    Number of Jurors Who So Find: __12__

70. In the presence of delusions or formal thought disorder, the agreed-upon negative symptoms mean that Robert Bowers has Schizophrenia.

    Number of Jurors Who So Find: __0__

71. Robert Bowers is a person with schizophrenia.

    Number of Jurors Who So Find: __0__

72. Robert Bowers' offense was motivated by a delusional belief that Jewish people were responsible for the deaths of children in America.

    Number of Jurors Who So Find: __0__

73. Robert Bowers' offense was motivated by a delusional belief that Jewish people are the tools of Satan and are being used to bring about the end of the world.

    Number of Jurors Who So Find: __0__

74. Robert Bowers suffers from delusions that include the belief that he was a soldier in a war between Satan and God.

    Number of Jurors Who So Find: __0__

75. Robert Bowers believed he was acting on the side of God against Satan.

    Number of Jurors Who So Find: __8__

Section III:  Mitigating Factors

76. When committing the offenses, Robert Bowers believed the world was coming to an end and that Jews were acting for Satan by bringing invaders into the United States and destroying white persons.

    Number of Jurors Who So Find: ___0___

77. Robert Bowers' disordered thinking convinced him that his crimes were necessary in order to save lives.

    Number of Jurors Who So Find: ___0___

78. Robert Bowers' acts of violence were brought about by the impact of his delusional beliefs that the victims were an imminent threat to the world and, by extension, God's kingdom.

    Number of Jurors Who So Find: ___0___

79. Robert Bowers committed the offense under mental or emotional disturbance.

    Number of Jurors Who So Find: ___0___

80. Robert Bowers' capacity to conform his conduct to the requirements of law was impaired.

    Number of Jurors Who So Find: ___0___

81. Robert Bowers' capacity to appreciate the wrongfulness of his conduct was impaired.

    Number of Jurors Who So Find: ___0___

82. Robert Bowers' belief system was fixed and false.

    Number of Jurors Who So Find: ___1___

83. Robert Bowers had multiple adverse childhood experiences.

    Number of Jurors Who So Find: ___12___

84. The adverse childhood experiences Robert Bowers had included neglect by his mother, who was not always able to provide him with adequate food, warmth, or clothing.

    Number of Jurors Who So Find: ___11___

Section III:  Mitigating Factors

85. The adverse childhood experiences Robert Bowers had included living with someone who was depressed or mentally ill (his mother).

   Number of Jurors Who So Find:  12

86. The adverse childhood experiences Robert Bowers had included living with someone who had a problem with drinking and misusing prescription drugs (his maternal grandmother).

   Number of Jurors Who So Find:  12

87. The adverse childhood experiences Robert Bowers had included frequent moves and unstable housing.

   Number of Jurors Who So Find:  12

88. The adverse childhood experiences Robert Bowers had included violence in the home.

   Number of Jurors Who So Find:  12

89. It is well established that adverse childhood experiences like those in Robert Bowers' life have a cumulative impact and are associated with increased risk of a wide variety of adverse outcomes, including schizophrenia or other mental disorders.

   Number of Jurors Who So Find:  8

90. The adverse childhood experiences in Robert Bowers' life are worthy of consideration in mitigation.

   Number of Jurors Who So Find:  11

91. Robert Bowers has no prior criminal record.

   Number of Jurors Who So Find:  11

92. Robert Bowers has no prior arrests.

   Number of Jurors Who So Find:  12

Section III:  Mitigating Factors

93. Robert Bowers has no prior incarcerations.

Number of Jurors Who So Find: __12__

94. Robert Bowers does not have a significant prior history of other criminal conduct.

Number of Jurors Who So Find: __3__

95. Lifetime imprisonment without the possibility of release is a severe punishment.

Number of Jurors Who So Find: __10__

96. There is no parole in the federal system.

Number of Jurors Who So Find: __12__

97. Robert Bowers has maintained good behavior in a highly structured prison environment.

Number of Jurors Who So Find: __12__

98. Robert Bowers has been a model pre-trial inmate.

Number of Jurors Who So Find: __0__

99. Robert Bowers' status as a model inmate enhances the security of a prison.

Number of Jurors Who So Find: __0__

100.    Robert Bowers has created no difficulties for guards or prison staff.

Number of Jurors Who So Find: __12__

101.    The Department of Justice has the power to restrict and monitor any or all of Robert

Bowers' communications with the outside world.

Number of Jurors Who So Find: __12__

102.    During Robert Bowers' pre-trial confinement he has not communicated or attempted to

communicate with anyone other than family.

Number of Jurors Who So Find: __2__

Section III:  Mitigating Factors

103.    Correctional staff at Butler County Prison confirm that Robert Bowers has not influenced

or attempted to influence others to adopt antisemitic views.

Number of Jurors Who So Find: ~~X~~ 12    8/1/23    Juror #52

104.    Robert Bowers is not a social, charismatic person, and so is unlikely to influence other

inmates.

Number of Jurors Who So Find: 0

105.    If sentenced to imprisonment without the possibility of release, Robert Bowers will be

designated to a highly secure federal prison.

Number of Jurors Who So Find: 12

106.    Robert Bowers once saved the life of a childhood friend by rescuing him from drowning.

Number of Jurors Who So Find: 12

107.    Robert Bowers' mother loves him.

Number of Jurors Who So Find: 5

108.    Robert Bowers' mother believes she failed him as a parent.

Number of Jurors Who So Find: 10

109.    While Robert Bowers' aunt condemns her nephew's actions, she still loves him.

Number of Jurors Who So Find: 12

110.    Robert Bowers' aunt believes that she and other adults in Robert's life failed him.

Number of Jurors Who So Find: 12

111.    Robert Bowers' uncle loves him and prays for him.

Number of Jurors Who So Find: 12

112.    Robert Bowers behaved respectfully in court.

Number of Jurors Who So Find: 0

Section III:  Mitigating Factors

113.    A sentence of life imprisonment without the possibility of release provides hope that Robert

Bowers may one day come to understand the wrongfulness of his conduct.

Number of Jurors Who So Find: _8_  4   8/1/23    Juror #152

114.    A sentence of life in prison without the possibility of release offers the possibility of

redemption and change.

Number of Jurors Who So Find: _8_

115.    There are other factors in Robert Bowers' life, personal traits, character, or background, or

any other circumstance of the offense that suggest, for any individual juror, that life

imprisonment without the possibility of release rather than death is the appropriate punishment.

Number of Jurors Who So Find: _X_ 0   8/2/23    Juror #152

<u>General directions for Section III, continued</u>:

- The law does not limit your consideration of mitigating factors to those that can be
  articulated in advance.  Therefore, you may consider during your deliberations any other
  factor or factors in Robert Bowers' background, record, character, or any other
  circumstances of the offense that mitigate against imposition of a death sentence.

- The following extra spaces are provided to write in additional mitigating factors, if any,
  found by any one or more jurors.

- If more space is needed, write "CONTINUED" and use the reverse side of this page.

1.   Additional mitigating factor: _____

_____

_____

Number of jurors who so find: _____

Section III:  Mitigating Factors

2.  Additional mitigating factor:

    _____

    _____

    Number of jurors who so find: _____

3.  Additional mitigating factor:

    _____

    _____

    Number of jurors who so find: _____

Directions:

- After you have completed your findings in this section (whether or not you have found any mitigating factors in this section), continue on to Section IV.

Section IV:  Determination of Sentence

<u>**Section IV:  Determination of Sentence**</u>

<u>General directions for Section IV</u>:

- As used in this section, the term "capital count(s)" refers to the counts listed in Section I.

- In this section, enter your determination of Robert Bowers sentence with regard to each of the capital counts.

Based upon consideration of whether the aggravating factors found to exist for each count sufficiently outweigh the mitigating factor or factors found to exist for that count to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factors alone are sufficient to justify a sentence of death:

Section IV.A: Determination of death sentence for all capital counts:

 We, the jury, unanimously find, for all of the capital counts, that the aggravating factors found to exist sufficiently outweigh the mitigating factor or factors found to exist, or, in the absence of any mitigating factors, that the aggravating factors alone are sufficient, so that death is the appropriate sentence for the defendant.  We vote unanimously that Robert Bowers shall be sentenced to death separately as to each count.

Section IV.B: Determination of life imprisonment without the possibility of release for all capital counts:

_____ We, the jury, unanimously find, for all of the capital counts, that the aggravating factors found to exist do not sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or in the absence of any mitigating factors, the aggravating factors alone are not sufficient to justify a sentence of death, so that a sentence of life in prison without the possibility of release is the appropriate sentence for the defendant for all of the capital counts.  We vote unanimously that Robert Bowers shall be sentenced to life imprisonment without the possibility of release separately as to each count.

Section IV:  Determination of Sentence

Section IV.C: Mixed determination of sentences: After considering whether the aggravating factors found to exist as to each count sufficiently outweigh the mitigating factor or factors found to exist for that count to justify a death sentence or, in the absence of any mitigating factors, whether the aggravating factors alone are sufficient to justify a death sentence:

a. _____ We, the jury, unanimously find that death is the appropriate sentence for Robert Bowers with regard to each of the following capital counts only (identify each count by number):

_____

_____

b. _____ We, the jury, unanimously find that life in prison without the possibility of release is the appropriate sentence for Robert Bowers with regard to each of the following capital counts only (identify each count by number):

_____

_____

_____ **Failure to Reach Unanimous Decision.** We, the jury, are unable to reach a unanimous decision on any capital count regarding whether life imprisonment without the possibility of release or death is the appropriate sentence in this case.

Directions: After you have completed your sentence determination in this section (regardless of what determination was made), continue on to Section V.

24

Section IV: Determination of Sentence



Sentence Decision



Foreperson

Date: _____*August*_____   _2_ , 2023

Section V: Justice Without Discrimination

## <u>Section V: Justice Without Discrimination</u>

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of Robert Bowers or the victims was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.



Foreperson

Date: ___August____ ___2___ , 2023